## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## DAYTON DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1 | : | CASE NO.  3:22-cv-00337 |
| | : | |
| CHILD NO. 1A, a minor, by and through her legal guardians JOHN and JANE DOE NO. 1 | : | JUDGE _____ |
| | : | |
| JOHN AND JANE DOE NO. 2 | : | COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES |
| JOHN DOE NO. 3 | : | |
| CHILD NO. 3B, a minor, by and through her legal guardian JOHN DOE NO. 3 | : | PRELIMINARY INJUNCTION SOUGHT |
| CHILD NO. 3C, a minor, by and through his legal guardian JOHN DOE NO. 3 | : | JURY TRIAL DEMANDED |
| JANE DOE NO. 4 | : | |
| CHILD NO. 4D, a minor, by and through his legal guardian JANE DOE NO. 4 | : | |
| JANE DOE NO. 5 | : | |
| CHILD NO. 5E, a minor, by and through his legal guardian JANE DOE NO. 5 | : | |
| JANE DOE NO. 6 | : | |
| JANE DOE NO. 7 | : | |
| CHILD NO. 7F, a minor, by and through his legal guardian JANE DOE NO. 7 | : | |
| JOHN AND JANE DOE NO. 8 | : | |
| JOHN DOE NO. 9 | : | |

|                                  |     |
|----------------------------------|-----|
| **Plaintiffs,**                  | :   |
|                                  | :   |
| **vs.**                          | :   |
|                                  | :   |
| **BETHEL LOCAL SCHOOL**          | :   |
| **DISTRICT BOARD OF**            | :   |
| **EDUCATION**                    | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **LYDDA MANSFIELD**              | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **LORI SEBASTIAN**               | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **NATALIE DONAHUE**              | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **DANNY ELAM**                   | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **JACOB KING**                   | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  | :   |
| **MATTHEW CHRISPIN**             | :   |
| **(In official capacity)**       | :   |
| **7490 OH-201**                  | :   |
| **TIPP CITY, OHIO 45371**        | :   |
|                                  |     |
| **Defendants.**                  |     |

## <u>COMPLAINT</u>

The Plaintiffs, by and through the undersigned counsel, file this Complaint against the Defendants.

## INTRODUCTION

1.      For more than one hundred years, the Bethel School District ("<u>Bethel</u>" or "<u>District</u>") required biological males and biological females to use separate intimate facilities.

2.      In January 2022, Defendant Bethel Local School District Board of Education (the "<u>Board</u>") changed that rule in secret to avoid community opposition. The Board's actions violate both the letter and spirit of the Ohio Open Meetings Act, which renders the rule change invalid.

3.      The Board subsequently claimed that it had "no choice" but to make a secret change because Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, ("<u>Title IX</u>") required it, the Federal government was threatening school funding, and potential litigation was imminent.

4.      The Board's claims were incorrect. Among other things, the plain language of Title IX and its long-standing implementing regulations expressly provide for Bethel's historic practice of separating intimate facilities based on biological sex.

5.      The Board had no justification to change the rule in secret and without following the Ohio Open Meetings Act.

6.      The Board's actions violate the Constitutional rights of every parent in the District. The Board's actions also violate the civil rights of religious families, a protected class under its own policies, to favor another group. In addition, the Board's actions keep the community in the dark regarding its new rules and policies for

intimate facilities by refusing to answer basic questions parents need to know to make decisions about their child's education. The parental right to direct the education, safety, and upbringing of their children is the oldest fundamental right recognized by the Supreme Court. And the Board's actions deny these parents the same.

7.     The Plaintiffs seek injunctive relief enjoining enforcement of the Board's illegally adopted secret policy and requiring the Board to comply with the law.

8.     Plaintiffs seek a preliminary injunction because the Board violated Ohio's Open Meetings Act and justified its actions as necessary pursuant to Title IX. However, Bethel's long-standing practice of biologically sex-segregated intimate facilities is permitted according to Title IX.

## PARTIES

### Plaintiffs

9.     The Plaintiffs in this case are all Bethel students or the parents of Bethel students. Their claims arise from a common core of operative facts related to the Board's actions.

10.     All Plaintiffs are citizens of the United States and residents of Ohio.

11.     John and Jane Doe No. 1 are husband and wife and the parents and legal guardians of Child No. 1A.

12.     Child No. 1A is a biological girl and seventh grade student at Bethel.

13.     John and Jane Doe No. 2 are husband and wife. Their children are students at Bethel.

14.     John Doe No. 3 is the father and legal guardian of Child No. 3B and Child No. 3C.

15.     Child No. 3B is a biological girl and ninth grade student at Bethel.

16.     Child No. 3C is a biological boy and seventh grade student at Bethel.

17.     Jane Doe No. 4 is the mother and legal guardian of Child No. 4D.

18.     Child No. 4D is a biological boy and seventh grade student at Bethel.

19.     Jane Doe No. 5 is the mother and legal guardian of Child No. 5E.

20.     Child No. 5E is a biological boy and eighth grade student at Bethel.

21.     Jane Doe No. 6 is the mother of a student at Bethel.

22.     Jane Doe No. 7 is the mother and legal guardian of Child No. 7F.

23.     Child No. 7F is a biological boy and ninth grade student at Bethel.

24.     John and Jane Doe No. 8 are husband and wife. Their children are students at Bethel.

25.     John Doe No. 9 is the father of a Bethel student.

**Defendants**

26.     Defendant, the Board, is the school board for the Bethel Local School District.

27.     The Board is a public entity and political subdivision of the State of Ohio.

28.     The Board is a public body under the Ohio Open Meetings Act, O.R.C. § 121.22, and is subject to the same.

29.     Defendant Lydda Mansfield is sued in her official capacity as a member of the Board and the current President of the Board. Ms. Mansfield is a resident and citizen of the State of Ohio. At all times material, Defendant Lydda Mansfield acted in her official capacity under the color of state law.

30.     Defendant Lori Sebastian is sued in her official capacity as a member of the Board and the current Vice President of the Board. Ms. Sebastian is a resident and citizen of the State of Ohio. At all times material, Defendant Lori Sebastian acted in her official capacity under the color of state law.

31.     Defendant Jacob King is sued in his official capacity as a member of the Board and the past President of the Board. Mr. King is a resident and citizen of the State of Ohio. At all times material, Defendant Jacob King acted in his official capacity under the color of state law.

32.     Defendant Natalie Donahue is sued in her official capacity as a member of the Board. Ms. Donahue is a resident and citizen of the State of Ohio. At all times material, Defendant Natalie Donahue acted in her official capacity under the color of state law.

33.     Defendant Danny Elam is sued in his official capacity as a member of the Board. Mr. Elam is a resident and citizen of the State of Ohio. At all times material, Defendant Danny Elam acted in his official capacity under the color of state law.

34.     Under Ohio law, the school superintendent is the executive officer for the school board.

35.     Defendant Matthew Chrispin is sued in his official capacity as the current superintendent at Bethel schools. Mr. Chrispin is responsible for implementing the Board's rule change. At all times material, Defendant Matthew Chrispin acted in his official capacity under the color of state law.

## JURISDICTION AND VENUE

36.     This case arises under the Constitution and laws of the United States of America and the State of Ohio, including 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

37.     This Court has subject matter jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

38.     This Court has personal jurisdiction over the Defendants because the Defendants all reside in the State of Ohio and the conduct described herein took place in the State of Ohio.

39.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the Complaint took place in this district, the Board is constituted in this district, and all the Defendants reside in the State of Ohio.

## BACKGROUND FACTS

40.     Bethel was founded in 1917.

41.     Since the founding, Bethel has prevented biological males and biological females from sharing intimate facilities such as restrooms and locker rooms.

42.     After Title IX was passed in 1972, Bethel schools continued to maintain separate restrooms and other intimate facilities for students based on biological sex pursuant to 20 U.S.C. § 1686, which expressly provides for the same.

43. The implementing regulations to Title IX also expressly permit the same and have done so for as long as the regulations have existed.

44. Bethel has disciplined students for breaking the rules and using and/or entering the intimate facilities for the opposite biological sex.

45. Bethel has also had transgender students prior to changing the rules for intimate facilities in 2022.

46. The Plaintiffs have long enjoyed the settled expectation that Bethel would provide restrooms and other intimate facilities shared only by persons of the same biological sex.

47. This expectation is important to the Plaintiffs for a variety of reasons including safety, privacy, modesty, religion, and historical views of sex.

## The Board's Major Change in Secret

48. At the September 13, 2021, Board meeting, a faculty proponent for changing the longstanding rules asked the Board to allow students to use the intimate facilities of their preferred gender identity.

49. The faculty proponent asserted that it was not fair for transgender students to have to use a private restroom away from the main restrooms and that it was not fair for a student who identifies as female to not use the girls' restroom "because they were born a man," asking the Board, "how would you feel if you went into the restroom and saw someone of the opposite gender in your restroom?"

50.     During the discussion, the faculty proponent acknowledged that Bethel is "a very conservative area" and the Board President, Defendant Jacob King, specifically acknowledged that this would represent a change for the district.

51.     Mr. King also advised that the Board had considered the issue and would continue to consider the issue.

52.     Then, at the Board meeting on January 10, 2022, the Board announced that new rules went into effect at the beginning of the year. The Board claimed that it needed to make the change to comply with the law.

53.     Between the Board meeting on September 13, 2021, and the Board meeting on January 10, 2022, there was no public discussion, deliberation, or voting of any kind related to intimate facility use being based on gender identity instead of biological sex.

54.     Naturally, the Board's action blindsided the Plaintiffs.

55.     As admitted by the Board on January 10, 2022, the Board took official action to change the school's rules for intimate facilities at the beginning of January 2022.

56.     In doing so, the School Board violated Ohio law including O.R.C. § 121.22(H).

57.     Pursuant to O.R.C. § 121.22(H) the change is invalid.

58.     The Board's official action in violation of the law is still being unlawfully implemented, including by current superintendent Defendant Matthew Chrispin, and continues to harm the Plaintiffs.

## The Bethel Community

59.     The name Bethel means "House of God."

60.     After the Board announced its change, members of the community tried to find solutions that would value and respect all members of the community, which the Board has refused.

61.     For example, members of the Muslim community, including Plaintiffs John and Jane Doe No. 2 donated their own resources to build a sex-neutral restroom next to the other restrooms in the school. They did so with the understanding that the sex-neutral restroom would allow transgender students to use a restroom in the same area as all the other students without having to use restrooms in other parts of the building. Bethel took the donors' resources and built the restroom but continued in its present course, without telling the donors.

62.     After the Board changed the rule, Bethel issued a limited "FAQ" regarding intimate facilities. The FAQ advised that transgender students would be permitted to use the communal intimate facilities of their gender identity and, if other students did not want to use those intimate facilities, they could use a single person private restroom—including the new sex-neutral restroom provided by the Muslim community.

63.     But Bethel facilities are already overcrowded with students. And all students from kindergarten through twelfth grade attend school in the same connected facility.

10

64. Private restroom access is limited and not truly workable for large religious communities like the religious communities in Bethel. Nor has Bethel provided any private restroom access for community events like school football games.

65. To be sure, it is true that the federal government is trying to use its power to pressure local communities into adopting its policy preferences with threats to federal funding or even prosecution. But the federal executive's overreach in this area was recently enjoined by the United States District Court for the Eastern District of Tennessee. *Tennessee v. United States Dep't of Educ.*, No. 3:21-CV-308, --- F.Supp.3d---, 2022 WL 2791450, at *1 (E.D. Tenn. July 15, 2022).

### The Muslim Plaintiffs

66. Plaintiffs John and Jane Doe No. 1, Child No. 1A, John and Jane Doe No. 2, John Doe No. 3, Child No. 3B, Child No. 3C, Jane Doe No. 4, and Child No. 4D are all members of the Muslim community.

67. The Plaintiffs identified in Paragraph 66 sincerely believe that Allah makes men and women in the womb as distinct and separate genders. Allah desires modesty and separateness between the sexes. Satan attempts to entice humans to change and disobey what Allah has created and desires, and believers are to stay true to Allah's creation and commands. *E.g.*, An-Najm 45-46; Al-Hujurāt 13; An-Nisā 1 & 118-119; Ar-Rūm 30; An-Noor 31 & 60; Al-Māʾidah 87.

68. Muslim parents are responsible for raising their children in the faith including its morals and values. (*see e.g.*, At-Tahrīm 6; Ibrāhīm 35). This is a

11

fundamental part of the parents' exercise of their own faith. The Board is imposing a substantial burden on the free exercise of that faith by placing the children in intimate facilities with members of the opposite biological sex. Among other things, this directly contradicts their faith on a fundamental moral question and places their children in a situation of compromised modesty. It also substantially burdens their right to raise their children in their faith to have the school promote LGBTQ+ beliefs to their children that are not related to school curriculum.

69.     Bethel's actions substantially burden the Plaintiffs' free exercise of religion.

70.     Forcing these Plaintiffs to use intimate facilities with members of the opposite biological sex is like forcing them to eat pork.

71.     The families do not understand why the school respects their beliefs less than the beliefs of the LGBTQ+ community.

72.     The Plaintiffs' children identified in Paragraph 66 hold their urine and avoid using the restroom at school if at all possible. If the students have to use the restroom, it causes them anxiety and emotional distress because of Bethel's policies. It also assaults their modesty as they fear that they will be exposed to the opposite sex.

73.     For example, Child No. 3B tries to avoid using the restroom and it causes her anxiety and emotional distress if that is not possible. Sometimes, Child No. 3B goes with a friend to help protect her and make sure that no boy violates her modesty.

74. The Muslim families also face the burden of Bethel promoting LGBTQ+ beliefs at the school.

75. At least as young as fifth grade (and perhaps even younger), Bethel students must complete assignments promoting LGBTQ+ beliefs. One such example is a fifth-grade reading assignment testing the student's "comprehension" of a story about a queen who wanted to be a king and her noble struggle to be accepted as a boy.

76. This reading assignment was part of Bethel's planned and systematic use of methods or techniques, not directly related to academic instruction, to affect students' behavior, emotions, or attitudes regarding sex behavior and attitudes, specifically behavior, emotions, or attitudes related to sexual identity, gender, and transgenderism.

77. Plaintiff parents had no idea this was occurring. In violation of 20 U.S.C. § 1232h and 34 C.F.R. § 98.4, Bethel did not provide them prior notice and an opportunity to opt their child out of this and other similar assignments.

78. John and Jane Doe. No. 1 are the parents of one such fifth grade Bethel student. They had no idea about the assignment.

**The Christian Plaintiffs**

79. Plaintiffs Jane Doe No. 5, Child No. 5E, Jane Doe No. 6, Jane Doe. No. 7, Child No. 7F, and John and Jane Doe No. 8 are all active members of the Christian community.

80.    For thousands of years, Judeo-Christianity has taught that their identity as people comes from God, who made human beings in his image—male and female. *See, e.g.*, Genesis 1:26-28; Matthew 19:4-6. Therefore, a human being's dignity comes from the image of God himself. And God's fashioning of a human being as a man or woman at birth is a fundamental part of that dignity. One cannot impose on that dignity without transgressing the fundamental core of a Christian.

81.    The Plaintiffs' children, identified in Paragraph 79, hold their urine and avoid using the restroom at school if at all possible. It causes them anxiety and emotional distress to use the restroom if they cannot do so.

82.    Child No. 7F is a ninth-grade Christian boy who is now deeply uncomfortable using the restroom at school. He holds his urine and tries at all costs to wait until he is home to relieve himself. Already a shy boy by nature, it is an affront to his modesty and dignity to have to look over his shoulder in an intimate facility with anxiety that he will be exposed to a member of the opposite biological sex.

83.    Jane Doe No. 6 is the mother of an eighth-grade Christian girl who is also shy and suffers from anxiety. Her daughter is deeply uncomfortable using the restroom at school with a biological boy. Her daughter holds her urine to avoid the same.

84.    Child No. 5E is an eighth-grade Christian boy who is also deeply apprehensive about using the restroom at school. He holds his urine and tries to avoid using the restroom if at all possible.

85.     Jane Doe No. 5, Jane Doe No. 6, and Jane Doe No. 7 are the mothers of the children referenced in Paragraphs 82-84. They are also Christians. John and Jane Doe No. 8 are practicing Christians with multiple children at Bethel and are in the same position as the other foregoing Plaintiffs. It is a fundamental part of the exercise of their own faith to raise their children in the faith (*see, e.g.*, Proverbs 22:6; II Timothy 1:5 & 3:14-17). And the substantial burden being placed on the free exercise of their faith is similar to the burden described in Paragraph 68 for the Muslim parents.

86.     In addition to placing a substantial burden on the conscience and free exercise of the Muslim and Christian families, the Board is denying them equal protection of the law.

87.     Under its misinterpretation of Title IX, the Board is providing communal intimate facilities for transgender students in accordance with their believed core identity while denying the Muslim and Christian families communal intimate facilities in accordance with their believed core identity. The Board cannot deny this educational opportunity to these families without violating basic principles of equal protection.

88.     The Board has a policy that specifically guarantees nondiscrimination and equal educational opportunities for certain "Protected Classes," Policy 2260.

89.     "Religion" is expressly provided as a protected class under the policy.

90.     The Board has also made gender identity and transgender students a protected class under the policy.

91. Therefore, the Board is providing a long-standing educational benefit—communal intimate facilities—to one of its protected classes (transgender students) in accordance with that student's believed core identity but not providing the same educational opportunity for the Muslim or Christian students. And despite guaranteeing the Muslim and Christian families equal educational opportunities in its own policy, the Board is denying them equal opportunity and violating their right to equal protection under the law.

92. Under the Board's own view of what constitutes discrimination in the context of intimate facilities, this is unavoidable.

### All Families

93. Plaintiff John Doe No. 9 is not particularly religious. He has a third-grade son at Bethel.

94. John Doe No. 9 believes that the Board should focus on teaching his children math and science rather than getting involved in culture wars.

95. He disagrees with the Board's new rules regarding communal intimate facilities on safety and privacy grounds and what he believes is a common-sense difference between biological boys and girls.

96. All Bethel parents, whether religious or not, have the fundamental right to choose and guide the education and raising of their children.

97. To assess the full picture of the Board's rules and the parent's various safety, privacy, moral, and didactic concerns, Plaintiffs, and other Bethel parents,

have raised numerous common sense questions regarding Bethel and its rules related to the change. These include Bethel's rules for:

    a.  Locker rooms;

    b.  Adult use of restrooms of their preferred gender identity;

    c.  Adult and student use of restrooms at sporting events;

    d.  High school student use of elementary restrooms;

    e.  Bethel's safety plan to monitor restrooms;

    f.  How faculty and staff are supposed to know who is allowed to be in which intimate facilities;

    g.  How students are supposed to know who is allowed to be in which intimate facilities with them;

    h.  Overnight trips and camps and whether biological sexes will be mixed in hotel rooms and cabins; and

    i.  How Bethel is addressing the promotion of LGBTQ+ beliefs among students.

98.    Thus far, the Board has not answered these questions.

99.    Under Ohio law, Plaintiff parents must send their children to school and Plaintiff students must attend school. The Plaintiffs have no adequate remedy at law for the Board's foregoing conduct and their related harms.

100.    Parents have a fundamental right to determine whether their children should attend public school and to remove them from the public school system. Bethel's denial of information makes it impossible for the Plaintiff parents to exercise this right because they cannot obtain vital information necessary to exercise their rights with full information.

## COUNT ONE
## (OHIO OPEN MEETINGS ACT)

101. The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 100, as if fully set forth herein.

102. "The [Ohio] Open Meetings Act requires public bodies . . . to take official action and conduct all deliberations upon official business only in open meetings where the public may attend and observe." Pub. Records Unit, Ohio Attorney General Office, *Ohio Sunshine Laws 2022 An Open Government Resource Manual* 99 (2022).

103. O.R.C. § 121.22(H) specifically states: "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body."

104. In changing Bethel's longstanding rule for intimate facilities, it took official action in violation of the requirements of the Ohio Open Meetings Act, and any action the Board took in violation of the Ohio Open Meetings Act is invalid.

105. The Plaintiffs seek relief declaring the same and enjoining the Board from taking any official action on the issue except in open meeting after public deliberation as required by the Open Meetings Act.

## COUNT TWO
## (TITLE IX)

106. The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 105, as if fully set forth herein.

107. Title IX expressly authorizes separation of intimate facilities based on biological sex.

108.    The Plaintiffs want a declaratory judgment that Title IX does not require Bethel to implement an intimate facility policy based on gender identity. The Board has maintained that it *must* have intimate facilities separated by gender-identity and not biological sex because of Title IX. The Plaintiffs seek a declaration the law does not require this and that it is permissible for the Board to have biologically sex-segregated intimate facilities.

## COUNT THREE
## (PARENTAL RIGHTS - FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION)

109.    The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 108 as if fully set forth herein.

110.    A parent's right to direct the education and upbringing of his or her own children is the oldest fundamental right recognized by the United States Supreme Court.

111.    The Plaintiffs cannot exercise their fundamental right to remove their children from the public school system if they are denied the information needed to have a full picture of the Board's actions and of the non-academic instruction of their children.

112.    In addition, parents have a right to direct the care, custody, and control of their children, including inculcating moral and religious values. The government cannot intervene in the parent-child relationship and force children to share intimate facilities with members of the opposite sex in violation of the sincerely held religious beliefs of the parents and their children.

113.    The fundamental parental right itself arises from our "enduring American tradition" of self-government and that our children are not property of the state. For hundreds of years, and throughout the history of the entire American tradition, parents—including the parents of every member of the Board—counted on the benefits of safety, privacy, and modesty that separate intimate facilities based on biological sex provided in the upbringing of their children, whether the desire was driven by religious or nonreligious reasons (or a mixture of both). The Board cannot now deny these students and parents these rights.

114.    The Board neither has a compelling interest to deny the Plaintiffs their parental rights, nor has the Board employed the least restrictive means for serving any such interest.

115.    The Plaintiff parents seek declaratory judgment that the Board is violating the Plaintiffs' fundamental right to direct the education and upbringing of their children and injunctive relief requiring the Board to provide the Plaintiffs with the information they need to exercise their right and provide students and parents with intimate facilities separated by biological sex.

**COUNT FOUR**
**(EQUAL PROTECTION - FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I OF THE OHIO CONSTITUTION)**

116.    The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 115, as if fully set forth herein.

117.    The Board has adopted an anti-discrimination policy that expressly creates protected classes.

118.    Religion is one of those protected classes.

119.   The Board has also made gender identity and transgender status a protected class under the same policy.

120.   Thus, religious and transgender students are similarly situated for purposes of the Board's actions in providing educational opportunities.

121.   Communal biologically sex segregated intimate facilities are a long-standing educational benefit.

122.   Under the Board's own view of what constitutes discrimination in intimate facilities with respect to transgender students, the Board is discriminating against the Plaintiffs.

123.   The Board is providing transgender students with communal intimate facilities in accordance with those students' self-declared core identity but not providing religious students, including the Plaintiffs, with intimate facilities based on biological sex in accordance with the Plaintiffs' self-declared core identity.  And the Board is providing this educational benefit at the behest of the parents of transgender students but rejecting the same desire from the parents of religious students.

124.   As such, the Board is treating religious students and parents, including the Plaintiffs, worse than the transgender students and parents and denying religious students, including the Plaintiffs, an educational benefit that the Board is providing for the transgender students.

125.   Accordingly, the Board is denying John and Jane Doe No. 1, Child No. 1A, John and Jane Doe No. 2, John Doe No. 3, Child No. 3B, Child No. 3C, Jane Doe

No. 4, Child No. 4D, Jane Doe No. 5, Child No. 5E, Jane Doe No. 6, Jane Doe. No. 7, Child No. 7F, and John and Jane Doe No. 8 equal protection of the law and the Board's own policy.

126.    The Plaintiffs seek declaratory judgment stating that the Board is violating the Plaintiffs' right to equal protection under the law and injunctive relief remedying the same.

**COUNT FIVE**
**(FREE EXERCISE - FIRST AMENDMENT TO THE UNITED STATES**
**CONSTITUTION AND ARTICLE I OF THE OHIO CONSTITUTION)**

127.    The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 126, as if fully set forth herein.

128.    The Board is disregarding the sincerely held religious beliefs of John and Jane Doe No. 1, Child No. 1A, John and Jane Doe No. 2, John Doe No. 3, Child No. 3B, Child No. 3C, Jane Doe No. 4, Child No. 4D, Jane Doe No. 5, Child No. 5E, Jane Doe No. 6, Jane Doe. No. 7, Child No. 7F, and John and Jane Doe No. 8.

129.    The Board's actions have placed a substantial burden on the Plaintiffs' free exercise of religion. The Board's actions have also had a coercive effect on the same, as Plaintiffs must attend school and Plaintiffs are being pressured to violate their core beliefs for the use of communal intimate facilities.

130.    The Board does not have a compelling interest to do so nor has the Board chosen the least restrictive means to accomplish any compelling interest it may allege it has.

131.    Therefore, the Board is violating the Plaintiffs' rights under both the United States Constitution and the Ohio Constitution.

132.     The Plaintiffs seek declaratory judgment stating that the Board is violating the Plaintiffs' free exercise rights and injunctive relief remedying the same.

## COUNT SIX
## (VIOLATION OF 42 U.S.C. § 1983, FAILURE TO NOTIFY PARENTS AND OBTAIN WRITTEN CONSENT)

133.     The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 132, as if fully set forth herein.

134.     The Plaintiffs seeks redress for the deprivation of rights secured by the Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h.

135.     Bethel receives federal funds.

136.     The Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h, and its implementing regulations, 34 C.F.R. Part 98.4, apply to Bethel.

137.     Congress enacted the Protection of Pupil Rights Amendment to protect parents' fundamental right to make decisions concerning the care, custody, and control of their children. It prohibits, *inter alia*, "psychiatric or psychological treatment," meaning the use of methods or techniques that are not directly related to academic instruction and designed to affect behavioral, emotional, or attitudinal characteristics of an individual, without prior written consent of an unemancipated minor's parent or guardian.

138.     As a matter of federal law, Bethel's nonacademic requirements, including requiring reading books promoting transgender ideology, includes psychiatric or psychological testing and treatment because it is designed to affect behavioral, emotional, or attitudinal characteristics of a student.

139. Bethel is also administering attitudinal surveys with students regarding their views on sexual and transgender issues, without providing notice to parents or obtaining the consent of parents, including Plaintiffs.

140. The primary purpose of requiring such books and nonacademic instruction is to reveal information related to gender identity, sexual behavior, and personal attitudes. It is also to affect behavioral, emotional, or attitudinal characteristics of the Plaintiffs' children related to sex and gender. Therefore, Bethel was on notice that such testing and treatment should not be provided without prior written consent from a parent or guardian.

141. However, Bethel chose not to provide parental notice or obtain parental consent as required by 34 C.F.R. 98.4 and 20 U.S.C. § 1232h and is in violation of federal law. That decision is a functional equivalent of an intentional decision by Defendants to violate the Plaintiffs' Constitutional rights.

## **PRAYER FOR RELIEF**

WHEREFORE the Plaintiffs demand judgment against Defendants Bethel Local Schools District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin as follows:

A. Grant such preliminary and permanent injunctive relief as is necessary to require the Board to comply with the Ohio Open Meetings Act and prevent the Board from violating the Plaintiffs' rights as provided in Counts Three through Six;

B.　　Declaratory judgment that the Board's official action changing Bethel's longstanding rules for intimate facilities violates the Ohio Open Meetings Act and is invalid pursuant to O.R.C § 121.22(H);

C.　　Declaratory judgment that Title IX expressly provides for separate intimate facilities based on biological sex;

D.　　Declaratory judgment that the Board's refusal to provide vital information regarding school rules and the promotion and imposition of LGBTQ+ ideology, and the Board's refusal to provide separate communal intimate facilities for members of the opposite biological sex violate the Plaintiff parents' fundamental right to direct the education and upbringing of their children under the Fourteenth Amendment to the United States Constitution;

E.　　Declaratory judgment that the Board is violating John and Jane Doe No. 1, Child No. 1A, John and Jane Doe No. 2, John Doe No. 3, Child No. 3B, Child No. 3C, Jane Doe No. 4, Child No. 4D, Jane Doe No. 5, Child No. 5E, Jane Doe No. 6, Jane Doe. No. 7, Child No. 7F, and John and Jane Doe No. 8's equal protection rights found in the Fourteenth Amendment to the United States Constitution and Article I of the Ohio Constitution of the Plaintiffs by refusing to provide separate communal intimate facilities for members of the opposite biological sex while providing communal intimate facilities based on gender identity for transgender students;

F.　　Declaratory judgment that the Board's actions are substantially burdening John and Jane Doe No. 1, Child No. 1A, John and Jane Doe No. 2, John Doe No. 3, Child No. 3B, Child No. 3C, Jane Doe No. 4, Child No. 4D, Jane Doe No.

5, Child No. 5E, Jane Doe No. 6, Jane Doe. No. 7, Child No. 7F, and John and Jane Doe No. 8's free exercise of religion without a compelling interest to do so or being properly tailored to serve any such interest in violation of the First Amendment to the United States Constitution and Article I of the Ohio Constitution;

G.    Declaratory judgment that the Board is violating Plaintiffs' rights to notice and consent under 34 C.F.R. 98.4 and 20 U.S.C. § 1232h concerning the school's surveys and other nonacademic requirements regarding transgender ideology;

H.    Further relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2202 for violating the Plaintiffs' rights as specified in Counts Two through Six, including damages in an amount to be determined at trial;

I.    An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

J.    Such other relief as the Court deems fair and equitable.


Dated: November 22, 2022

Respectfully submitted,

s/ Joseph P. Ashbrook
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge, LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com

Nicholas Barry
(*pro hac vice* application forthcoming)

America First Legal
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Tel: (615) 431-9303
Fax: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for the Plaintiffs*