# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN AND JANE DOE NO. 1, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> BETHEL LOCAL SCHOOL DISTRICT <br> BOARD OF EDUCATION, *et al.*, <br> Defendants. | Case No. 3:22-cv-00337 <br><br> Judge: Michael J. Newman |

**PROPOSED INTERVENOR-DEFENDANT ANNE ROE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION[1]**

## I. INTRODUCTION

Anne Roe is a dynamic, active teenage girl: a social butterfly, a musician, and an eager participant in class. Anne is also transgender and, after being on the receiving end of years of bullying and harassment for her identity, finally feels like she belongs at her school. Plaintiffs' Motion for Preliminary Injunction seeks an order from this Court that would effectively expel Anne from the girls' communal restroom at Bethel High School. To do so would subject her to a range of very tangible harms, many of which she has already been subjected to in the past and would dread facing again.

In December 2021, the Bethel Local School District (the "School District") granted Anne's request to use the girls' communal restrooms at school, where previously she had chosen to use

---

[1] This proposed memorandum is submitted concurrently with, and is in part the subject of, Anne Roe's Motion to Intervene and Motion for Leave to File *Instanter* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction.

1

only single-occupancy restrooms. That previous arrangement singled her out in front of her classmates as transgender, drawing unwanted attention to her as different from other girls, and subjected her to bullying, harassment, and even the threat of physical abuse. She describes the new arrangement as "a turning point" in her life, when she stopped feeling stigmatized and targeted for her identity. And indeed, the School District's accommodation was necessary for Anne on multiple fronts, as she has been diagnosed with a medical condition that requires that she have regular and easy access to restrooms. The previous arrangement, which Plaintiffs now seek to reinstate by court order, did not provide sufficient access.

Plaintiffs are parents and students in the School District who object to Anne Roe and other transgender students using communal restrooms that correspond with their gender identity. Although it is undisputed that Plaintiffs, like all other students including Anne, are currently permitted to choose between using the communal restroom matching their gender or single-occupancy alternatives, they ask this Court to single out Anne and other transgender students and block them from this uniform arrangement. Although their Complaint asserts multiple purported bases for relief, Plaintiffs' Motion rests on only one very particular and narrow claim. They contend that the process by which the School District granted Anne's request violated Ohio's Open Meetings Act, Ohio Revised Code § 121.22. On that procedural basis alone, they ask this Court to invalidate the School District's accommodation to Anne and enjoin the School District from allowing any transgender student to use the same communal restroom facilities as other students.

Anne takes no position at this time as to whether the School District committed any violation of the Open Meetings Act, or for that matter, whether the School District's accommodation to her was subject to the Open Meetings Act at all. She thus takes no position on the first two preliminary injunction factors: whether Plaintiffs have demonstrated a substantial

2

likelihood of success on the merits of their Open Meetings Act claim, or whether they have triggered the statutory presumption of irreparable harm on which they rely.

The third and fourth factors, however—risk of harm to others, and the public interest—weigh heavily against an injunction here, and Anne opposes Plaintiffs' Motion on that basis. Anne would be severely harmed by an injunction barring her from using the girls' communal bathroom, as it would subject her to social stigma, humiliation, and serious risks of both emotional and physical injury. She is especially well-situated to confirm these risks, as she was already subjected to them during the period of time in which she used only the single-occupancy facilities. Plaintiffs' requested injunction would also stand contrary to the public interest, which would suffer gravely from a court order mandating discrimination against the vulnerable class of transgender students. The Court should deny Plaintiffs' Motion.

## II. FACTUAL BACKGROUND

Anne Roe is a 14-year-old girl in her freshman year at Bethel High School, where she plays the flute, participates in the marching band, and intends to join the theater and newspaper clubs this year. Declaration of Anne Roe, ("Anne Roe Decl."), submitted as Exhibit A to Anne Roe's Motion to Intervene and Motion for Leave to File *Instanter* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, ¶¶ 2–3. Anne is also transgender. While her sex assigned at birth was male, she identifies as a girl and lives consistently with her gender in all aspects of her life. *Id.* ¶ 4. She came out to her parents at age 8 and started treatment for gender dysphoria at age 11. *Id.* ¶¶ 5-6, 9–12. Coming out as transgender and receiving the social and medical support that she needed, "have completely changed [her] life for the better." *Id.* ¶ 14. She feels less anxious and depressed. As her mother describes, once Anne started transitioning, she flourished into "who she's supposed to be." Declaration of Joanne Roe ("Joanne Roe Decl."),

submitted as Exhibit B to Anne Roe's Motion to Intervene and Motion for Leave to File *Instanter* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, ¶ 18.

### A. Anne Moves to the School District and Starts Using the Single-Occupancy Restroom

From kindergarten through the beginning of sixth grade—the year she came out as transgender—Anne attended Fairborn City Schools in Fairborn, Ohio. Anne Roe Decl. ¶¶ 17–18. The time she spent there was extremely difficult. After coming out as transgender, she experienced constant bullying and harassment, culminating in a physical assault that was serious enough to leave her unable to remember what had happened. *Id.* ¶¶ 18–19. She quickly learned that using the boys' bathroom, as she continued to do briefly after coming out as transgender, placed her at risk. *Id.*; *see also id.* ¶ 38 ("I would not feel safe using the boys' communal restroom because I am not a boy and I have experienced very serious and scary bullying and harassment when I used the boys' communal restroom at Fairborn City Schools."). Near the end of 2019, the middle of her sixth-grade year, Anne moved to Tipp City, Ohio, and started at Bethel Middle School in January 2020. *Id.* ¶ 20.

During most of her time enrolled at Bethel Middle School, Anne chose to use the school's single-occupancy restrooms. *Id.* ¶ 22–23. She did not always have time to travel to and from the single-occupancy restrooms during her break in classes and to avoid being late, she frequently requested permission to go to the restroom during class, leading to her missing class instruction or activities, and having to catch up later. *Id.* ¶¶ 25–30. Holding her urine was risky and inadvisable for Anne: she has a medical diagnosis that makes her urination urgent and unpredictable, and has been repeatedly advised that it is critical for her to have easy access to restrooms. *Id.* ¶ 26.

Eventually, using the single-occupancy restroom became humiliating for Anne. It isolated her from her peers, called unwanted attention to her for being transgender, and "puts a target on

4

your back." Anne describes feeling humiliated as she walked to and from the single-occupancy restroom, passing the other students using the communal girls' and boys' restrooms. Anne experienced students harassing her during the walk, taunting her for using the "sissy bathroom." *Id.* ¶ 31. This bullying and harassment continued throughout middle school. Students would shout transphobic remarks or slurs, refused to use the appropriate pronouns, and asked inappropriate and invasive questions about her body. Other students routinely pushed or "shoulder-checked" her in the hallways. Once, she heard a student in the hallway proclaim "we should kill all transgenders." Another time, a student left a pair of scissors on her seat in class, pointed upwards. The harassment took many forms but was a near-daily occurrence. *Id.* ¶ 32. Though not all of it directly pertained to Anne's restroom use, requiring her to use only the single-occupancy restroom singled her out and called attention to the fact that she was transgender, which made the bullying worse. *Id.* ¶ 33.

As a result, even when she did have sufficient time between classes to reach the single-occupancy restroom, Anne frequently held her urine. She describes arriving home and running to the restroom. Holding her urine distracted Anne and impacted her ability to focus and learn in class. *Id.* ¶¶ 34-35. Anne's grades suffered; she was unable to socialize with her peers after class. *Id.* ¶ 35. During this time, Anne also frequently refrained from drinking water and suffered from dehydration. She experienced multiple urinary tract infections during this time period, and was frequently in a great deal of pain and discomfort. *Id.* ¶ 36.

### B. Anne Receives Access to the Girls' Restrooms

Over time, Anne and her mother concluded that the situation could not continue. After a doctor reminded her not to attempt to hold in her urine because of her medical condition, Anne and her mother contacted the Bethel Middle School principal and superintendent to advise them that Anne needed access to the girls' communal restroom. *Id.* ¶ 37–39. In December 2021, the School District granted Anne permission to use the girls' restrooms, which Anne started using at

5

Bethel Middle School in January of 2022. *Id.* ¶ 40. She has been using the communal girls' restroom ever since—first at Bethel Middle and then at Bethel High School, which is an attached building, without any incidents or issues with other students. *Id.* ¶ 41.

Anne is thriving at Bethel High School. Being able to focus on class rather than on holding her urine, her grades improved. Anne describes being granted access to the girls' restrooms as "a turning point." She felt "like I finally belong, and not like the outcast who has to use the separate restroom." She explains, "it wasn't everyone and then me; it was everyone *and* me." *Id.* ¶ 42–43. Anne's mother describes her as "a whole different person" after she started using the girls' restrooms at school, describing her as "visibly more invested in school and her extracurricular activities," having gone "from being anxious and depressed to extremely outgoing." Joanne Roe Decl. ¶ 36. She is, in short, "completely flourishing." *Id.* ¶ 17.

Banning Anne from the girls' restrooms would impact her mental and physical health and her ability to engage in school. She would again feel like an outcast, and be subject to the same bullying as before. *See* Anne Roe Decl. ¶¶ 44–47. She would expect the harassment to resume—and possibly even intensify, because she would be a high school student using bathrooms in the middle school wing of the school building. *Id.* ¶ 48.

### III.  ARGUMENT

Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco*, LLC, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original); *accord Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries [their] burden of

6

proving that the circumstances clearly demand it."). The movant has a burden of proof "more stringent than the proof required to survive a summary judgment motion." *Enchant*, 958 F.3d at 539 (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). A preliminary injunction involves "the exercise of a very far-reaching power," and is appropriate only in limited circumstances. *Leary*, 228 F.3d at 739 (internal citation omitted).

Such relief is "never awarded as of right," but only upon careful balancing of the relevant factors. *Winter v. NRDC*, 555 U.S. 7, 24 (2008). Those factors are: (1) whether Plaintiff has a strong likelihood of success on the merits; (2) whether Plaintiff would suffer actual, irreparable injury absent an injunction; (3) whether an injunction would cause substantial harm to others; and (4) whether the public interest is best served by issuance of an injunction. *E.g.*, *Overstreet*, 305 F.3d at 573; *Leary*, 228 F.3d at 736.

As noted above, Anne takes no position at this time on the merits of Plaintiffs' Open Meetings Act claim, the subject of the first factor. For the second factor, Plaintiffs rely primarily on the statutory presumption of irreparable harm from Open Meetings Act violations; again, as Anne takes no position on the merits of that claim, she takes no position on the second factor. *See* Motion, ECF No. 5-1, at PAGEID# 61 (citing Ohio Rev. Code § 121.22(I)(3)). This Opposition addresses the third and fourth factors, both of which weigh against an injunction. Any injunction would necessarily inflict considerable harms on Anne, as well as others who may be similarly situated. It would also stand against the public interest in preventing discrimination.

**A. Granting a Preliminary Injunction Would Cause Immediate and Irreparable Injury to Anne.**

The myriad injuries that Anne would suffer from being denied access to the girls' restrooms are neither hypothetical nor speculative. She already experienced a version of those injuries before the School District provided its accommodation: social stigma, harassment, invasion of privacy,

7

complications with her physical health, decrease in focus during class, and an inability to fully participate in school activities. *See supra* Section II.A. Federal courts, including the Southern District of Ohio, have repeatedly recognized these types of harms to be considerable and irreparable, as discussed below.

While unable to cure the full range of harms that transgender students face in schools, the District's accommodation for Anne served to alleviate the particular aspects arising from restroom access. Entry of an injunction denying Anne access to the communal girls' restroom would subject her to those harms all over again—in some ways, worse than ever.

1. <u>Banning Anne's access to the girls' restrooms is stigmatizing and would negatively impact Anne's mental health.</u>

Banning Anne from the girl's restroom would isolate her, alienate her from her peers during a vulnerable stage of her life, and communicate to her, her classmates, and even school staff that transgender students need to be segregated from other students. Numerous federal courts, including the Sixth Circuit and the Southern District of Ohio, have recognized that this exact type of isolation can cause great stress and anxiety, rising to the level of irreparable harm. *See, e.g.*, *Bd. Of Educ. Of the Highland Local Sch. Dist. v. United States Dep't of Educ.* ("*Highland Local Sch. Dist.*"), 208 F. Supp. 3d 850, 878 (S.D. Ohio 2016) (finding the "stigma and isolation" resulting from forced use of a separate restroom to "exacerbate . . . mental health challenges" and constitute irreparable harm); *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221–22 (6th Cir. 2016) (declining to stay the injunction entered in *Highland Local Sch. Dist.*, adding that a stay would inflict injuries that are "not distant or speculative," and would "further confuse a young girl with special needs who would no longer be allowed to use the girls' restroom"); *D.H. by A.H. v. Williamson Cnty. Bd. Of Educ.*, No. 3:22-CV-00570, 2022 WL 16639994, at *12 (M.D. Tenn. Nov. 2, 2022) (noting the "stress of deciding where and how to use the restroom"); *Evancho v.*

*Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 294 (W.D. Pa. 2017) (to "compel [transgender students] to use … the 'special' restrooms'" is impermissible and would "further separate [transgender students] from their peers."); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1039 (S.D. Ind. 2018) ("using the nurse's restroom is not a satisfactory option . . . because it forces him to have different restroom arrangements from his peers, undermining his social role transition" with irreparable "negative emotional consequences"); *D.H. by A.H.*, 2022 WL 16639994, at *11 (being banned from facilities that correspond with gender identity leads to bullying, isolation, and ostracization).

For students with gender dysphoria, stigma and marginalization can be particularly harmful, causing further mental and emotional pain. *See Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 529 (3d Cir. 2018) ("[M]istreatment of transgender students can exacerbate gender dysphoria, lead to negative educational outcomes, and precipitate self-injurious behavior. When transgender students face discrimination in schools … it can be life threatening.").

When Anne began using the girls' restrooms at school, the stigma and distress were lifted; she finally felt like she belonged. *See supra* Section II.B. ("It wasn't everyone and then me; it was everyone *and* me."). A preliminary injunction banning Anne's access to the girls' restrooms would reverse that progress and risk Anne's mental and emotional health.

2. <u>Requiring Anne to use the single-occupancy restroom forces disclosure of Anne's transgender identity.</u>

Using the single-occupancy restroom would "put[] a target on [Anne's] back," Anne Roe Decl. ¶ 31, by calling attention to her as transgender in a manner that invades her privacy, and possibly even subjects her to physical danger. *See also id.* ¶¶ 4, 15 (noting that Anne is treated like a girl and most people she encounters recognize and treat her as such). Again, she knows all too well what that degree of public attention would entail. She describes feeling humiliated during

9

middle school as she walked to and from the single-occupancy restroom, passing the other students using the communal girls' and boys' restrooms and being subjected to harassment. *Id.* ¶¶ 31–32.

As another judge of this Court observed recently, "the excruciatingly private and intimate nature of being transgender, for persons who wish to preserve privacy in the matter, is really beyond debate[.]" *Ray v. McCloud*, 507 F. Supp. 3d 925, 931 (S.D. Ohio 2020) (internal citation and editing marks omitted). *See also J.A.W. v. Evansville Vanderburgh Sch. Corp.,* 323 F. Supp. 3d 1030, 1039 (S.D. Ind. 2018) (using the girls' restroom at school caused a transgender boy discomfort by drawing attention to the fact that he is transgender). Even beyond the inherent harms from forcing a teenager to disclose intimate personal information, "forced disclosure of an individual's transgender status could subject them to risk of bodily harm[.]" *Ray* at 931.

The policy Plaintiffs' seek—requiring transgender students, and *only* transgender students, to use a specific restroom different from non-transgender students—outs those students as transgender and allows other students to target them for harassment and abuse. Courts routinely recognize this harm, and Anne's personal experience confirms the point.

3. <u>Requiring Anne to use the single-occupancy restroom would cause dehydration, UTIs, and other physical health consequences.</u>

Removing Anne's access to the girls' restrooms, and thereby restricting the number of restrooms to which she has access, could also have serious direct consequences for her physical health. In middle school, Anne regularly held her urine, contrary to her doctor's orders—both because she sometimes did not have time to use the single-occupancy restroom, and because even when she did, she wanted to avoid being singled out by her peers. Anne Roe Decl. ¶¶ 27-28, 34. *See H. by A.H. v. Williamson Cnty. Bd. Of Educ.,* No. 3:22-CV-00570, 2022 WL 16639994, at *11 (M.D. Tenn. Nov. 2, 2022) (students without equal access to restrooms hold their urine and limit their water and food intake, which can lead to dehydration and other health problems.). Requiring

10

her to use the single-occupancy restroom, rather than use the girls' restrooms in close proximity to her classes, risks dehydration, UTIs, and other medical complications. Anne Roe Decl. ¶ 36; *H. by A.H.*, 2022 WL 16639994, at *11.

Anne experienced a version of this harm before the School District's accommodation, but in fact, entry of an injunction now would leave her in a worse position than before the accommodation. As a high school student, Anne's classes are primarily on the far side of the building from the single-use restrooms to which she has access. Anne Roe Decl. ¶ 46. The distance she would have to travel in the time between classes, in other words, is greater now than it was when she was in middle school. *Id.* ¶ 48.

4. <u>Banning Anne from using the girls' restrooms would limit Anne's ability to fully and equally participate in school.</u>

Granting Plaintiffs' requested preliminary injunction would also limit Anne's ability to fully and equally participate in school classes and activities. When Anne was required to travel to the remote single-occupancy restroom, she was regularly late to class. It was not uncommon for her to be disciplined, and even sent to the principal's office. *See supra* Section II.B. Having to hold her urine distracted Anne and impacted her ability to focus and learn in class. She occasionally used the restroom during class time, but found it hard to catch up to the lesson when she returned. She also was unable to socialize with her peers after class because her attention was fixated on preventing herself from urinating. *Id.*; *see also Highland Local Sch. Dist.*, 208 F. Supp. 3d at 871 ("[the transgender student] often goes the entire day without using the bathroom because she hates being singled out when she is forced to use a separate bathroom, which would clearly impair her ability to focus on learning.").

The School District's accommodation alleviated these problems; granting the injunction here would reimpose them. Further, as Plaintiffs concede, access to the single-occupancy restroom

11

is not available "for community events like school football games." Complaint, ECF No. 1, ¶ 64. Prohibiting Anne from using the girls' restrooms would effectively restrict her participation in after-school activities and school events, and would further deny her equal access to the education afforded to all other students.

     5.   <u>Anne's injuries are "impossible to reverse."</u>

The negative consequences of being denied access to the girls' restrooms would be "difficult—if not impossible—to reverse." *J.A.W.*, 323 F. Supp. 3d at 1039 (citing *Hollingsworth v. Perry*, 558 U.S. 183, 195 (2010) (per curiam); *accord Highland Local Sch. Dist.*, 208 F. Supp. 3d at 878 (stigma, isolation, and resulting emotional health issues constitute "a clear case of irreparable harm"); *Dodds*, 845 F.3d at 221–22 (similar). Anne's high school years are ones she will experience "only once during [her] life." *Cf. Doe v. Wood County Bd. Of Educ.*, 888 F. Supp. 2d. 771, 778 (S.D.W.Va. 2012) (balance of harms for Title IX violation tilts in favor of preliminary injunction because "the plaintiffs Anne Doe, Beth Doe, and Carol Doe will experience their middle school years only once during their life"); *Faulkner v. Jones,* 10 F.3d 226, 233 (4th Cir. 1993) (granting preliminary injunction for Shannon Faulkner to attend The Citadel because "[d]enying Faulkner's access . . . might likely become permanent for her, due to the extended time necessary to complete the litigation"). With a preliminary injunction, Anne will have to spend each school day trying to avoid the need to use the restroom, and she will be stigmatized and isolated from her peers during those critical years of social development.

It cannot be doubted that an injunction barring Anne from the girls' communal restroom at her school would inflict "substantial harm to others"—that is, to Anne. *E.g.*, *Overstreet*, 305 F.3d at 573; *Leary*, 228 F.3d at 736. For their part, Plaintiffs argue that "[n]o cognizable harm results from stopping unconstitutional conduct." Motion, ECF No. 5-1, at PAGEID# 61. Their Motion,

12

however, asserts only a statutory violation under the Open Meetings Act. Should they fail to demonstrate a violation of that statute, they will have made no showing of any harm at all.

### B. The Public Has an Interest in Preventing Discrimination Against Transgender Students and in Providing Equal Educational Opportunities to All Students.

The public has a strong interest in preventing discrimination against a vulnerable class of persons, such as transgender students. *E.g.*, *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 222 (6th Cir. 2016) (public interest weighed "strongly" against staying an injunction allowing continued discrimination against a student based on gender identity); *Highland Local Sch. Dist.*, 208 F. Supp. 3d at 878 (same). *Cf. Ray*, 507 F. Supp. 3d at 936–37 (finding transgender individuals to be entitled to intermediate scrutiny on an equal protection claim, which entails a finding that, *inter alia*, they have historically been subject to discrimination and are a minority or politically powerless). Far from being safe havens from bullying and abuse, school environments can be especially hostile, making it particularly important for schools to take measures to affirm and protect transgender students. Supportive schools are important to all students, but particularly for transgender students who notoriously face outsized risks of all kinds, such as the harassment that Anne experienced. These harms can be amplified—or diminished—depending on the inclusiveness of the school environment. The public therefore has an interest in advancing policies that affirmatively protect transgender students and create inclusive school environments.

Further, the public has an interest in providing equal educational opportunities to all students. Students spend a substantial portion of their waking hours at school, and even more if they participate in school-sponsored activities that meet outside regular class hours. Schools offer students the opportunity to learn important social skills and cultivate responsibility and independence. A preliminary injunction removing Anne's access to the girls' restroom would burden her focus, concentration, and ability to fully participate in her education to the same extent

as all other students. The public has a strong interest in not subjecting vulnerable students to such a burden.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU OF OHIO FOUNDATION
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: 614-586-1972
Fax: 614-586-1974
dcarey@acluohio.org

Freda Levenson (0045916)
ACLU OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
Phone: 614-586-1972
Fax: 614-586-1974
flevenson@acluohio.org

Malita Picasso*
Aditi Fruitwala*
Rose Saxe*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY
Phone: 212-549-2500
Fax: 212-549-2650
mpicasso@aclu.org
afruitwala@aclu.org
rsaxe@aclu.org

Michael D. Meuti (0087233)
David M. Hopkins (0095285)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216-363-4500
Fax: 216-363-4588
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

*Counsel for Proposed Intervenor-Defendant Anne Roe (a minor, by and through her legal guardian Joanne Roe)*

## CERTIFCATE OF SERVICE

I, David J. Carey, hereby certify that on this 9th day of January, 2023, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio via the ECF system, which will send notification of such filing to all counsel of record.

*/s/ David J. Carey*