

| Book | Policy Manual |
|------|---------------|
| Section | 2000 Program |
| Title | CONTROVERSIAL ISSUES |
| Code | po2240 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | May 10, 2021 |

### 2240 - CONTROVERSIAL ISSUES

The Board of Education believes that the consideration of controversial issues has a legitimate place in the instructional program of the schools.

Properly introduced and conducted, the consideration of such issues can help students learn to identify important issues, explore fully and fairly all sides of an issue, weigh carefully the values and factors involved, and develop techniques for formulating and evaluating positions.

For purposes of this policy, a controversial issue is a topic on which opposing points of view have been promulgated by responsible opinion and/or likely to arouse both support and opposition in the community.

The Board will permit the introduction and proper educational use of controversial issues provided that their use in the instructional program:

    A. is related to the instructional goals of the course of study and level of maturity of the students;

    B. does not tend to indoctrinate or persuade students to a particular point of view;

    C. encourages open-mindedness and is conducted in a spirit of scholarly inquiry.

Controversial issues related to the program may be initiated by the students themselves provided they are presented in the ordinary course of classroom instruction and it is not substantially disruptive to the educational setting.

Controversial issues may not be initiated by a source outside the schools unless prior approval has been given by the principal.

When controversial issues have not been specified in the course of study, the Board will permit the instructional use of only those issues which have been approved by the Superintendent who shall report periodically such approval to the Board for their review and have been approved by the principal.

In the discussion of any issue, a teacher may express a personal opinion, but shall identify it as such, and must not express such an opinion for the purpose of persuading students to his/her point of view.

No classroom teacher shall be prohibited from providing reasonable periods of time for activities of a moral, philosophical, or patriotic theme. No student shall be required to participate in such activities if they are contrary to the religious convictions of the student or his/her parents or guardians.

The Board acknowledges that it may not adopt any policy or rule respecting or promoting an establishment of religion or prohibiting any student from the free, individual, and voluntary exercise or expression of the student's religious beliefs.

The Board also recognizes that a course of study or certain instructional materials may contain content and/or activities that some parents find objectionable. If after careful, personal review of the program lessons and/or materials, a parent indicates to the school that either the content or activities conflicts with his/her religious beliefs or value system, the school will honor a written request for his/her child to be excused from a particular class for specified reasons. The student, however, will not be excused from participating in the course and will be provided alternate learning activities during times of such parent requested absences.

The Superintendent shall develop administrative guidelines for dealing with controversial issues and with parental concerns about program content or the use of particular materials.

**© Neola 2021**

| Legal | R.C. 3313.601 |
|-------|---------------|

**Last Modified by Brittany Wiggins on May 20, 2021**

BOE 67

BOE 68



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | NONDISCRIMINATION AND ACCESS TO EQUAL EDUCATIONAL OPPORTUNITY |
| Code | po2260 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 1, 2022 |

## 2260 - NONDISCRIMINATION AND ACCESS TO EQUAL EDUCATIONAL OPPORTUNITY

Any form of discrimination or harassment can be devastating to an individual's academic progress, social relationship and/or personal sense of self-worth. As such, the Board of Education does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or gender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities.

The Board also does not discriminate on the basis of Protected Classes in its employment policies and practices as they relate to students, and does not tolerate harassment of any kind.

Equal educational opportunities shall be available to all students, without regard to the Protected Classes, age (unless age is a factor necessary to the normal operation or the achievement of any legitimate objective of the program/activity), place of residence within the boundaries of the District, or social or economic background, to learn through the curriculum offered in this District. Educational programs shall be designed to meet the varying needs of all students.

In order to achieve the aforesaid goal, the Superintendent shall:

A. **Curriculum Content**

   review current and proposed courses of study and textbooks to detect any bias based upon the Protected Classes; ascertaining whether or not supplemental materials, singly or taken as a whole, fairly depict the contribution of both genders, various races, ethnic groups, etc. toward the development of human society;

B. **Staff Training**

   develop an ongoing program of in-service training for school personnel designed to identify and solve problems of bias based upon the Protected Classes in all aspects of the program;

C. **Student Access**

   1. review current and proposed programs, activities, facilities, and practices to verify that all students have equal access thereto and are not segregated on the basis of the Protected Classes in any duty, work, play, classroom, or school practice, except as may be permitted under State and Federal laws and regulations;

   2. verify that facilities are made available, in accordance with Board Policy 7510 - Use of District Premises, for non-curricular student activities that are initiated by parents or other members of the community, including but not limited to any group officially affiliated with the Boy Scouts of America or any other youth group listed in Title 36 of the United States Code as a patriotic society;

D. **District Support**

   verify that like aspects of the District program receive like support as to staff size and compensation, purchase and maintenance of facilities and equipment, access to such facilities and equipment, and related matters;

E. **Student Evaluation**

   verify that tests, procedures, and guidance and counseling materials, which are designed to evaluate student progress, rate aptitudes, analyze personality, or in any manner establish or tend to establish a category by which a student may be judged, are not differentiated or stereotyped on the basis of the Protected Classes.

**Definitions:**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Complainant** is the individual who alleges, or is alleged, to have been subjected to unlawful discrimination/retaliation, regardless of whether the person files a formal complaint or is pursuing an informal resolution to the alleged discrimination/retaliation.

**Respondent** is the individual who has been alleged to have engaged in unlawful discrimination/retaliation, regardless of whether the Reporting Party files a formal complaint or is seeking an informal resolution to the alleged discrimination/retaliation.

BOE 69

**School District community** means students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties** include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Day(s)**: Unless expressly stated otherwise, the term "day" or "days" as used in this policy means a business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday - Friday, excluding State-recognized holidays).

**District Compliance Officers**

The Board designates the following individuals to serve as the District's "Compliance Officers" (also known as "Civil Rights Coordinators") (hereinafter referred to as the "COs").

High School Principal
Barrett Swope
(937) 845-9487
swopeb@blsk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Elementary Principal
Carrie Jones
(937) 845-9439
jonesc@blsk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The names, titles, and contact information of these individuals will be published annually on the School District's web site.

The COs are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding discrimination, retaliation or denial of equal access. The COs shall also verify that proper notice of nondiscrimination for Title II of the Americans with Disabilities Act (as amended), Title VI and VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 (as amended), and the Age Discrimination Act of 1975 is provided to students, their parents, staff members, and the general public. A copy of each of the Acts and regulations on which this notice is based may be found in the CO's office.

The Superintendent shall annually attempt to identify children with disabilities, ages 3-22, who reside in the District but do not receive public education.

The Board is committed to educating (or providing for the education of) each qualified person with a disability with persons who are not disabled to the maximum extent appropriate. Generally, the District will place a person with a disability in the regular educational environment unless it is demonstrated that the education of the person in the regular environment, even with the use of supplementary aids and services cannot be achieved satisfactorily. If the Board operates a separate class or facility that is identifiable as being for persons with disabilities, the facility, program, and activities and services must be comparable to the facilities, programs, and activities and services offered to students without a disability.

In addition, the Superintendent shall establish procedures to identify students who are Limited English Proficient (LEP), including immigrant children and youth, to assess their ability to participate in District programs, and develop and administer a program that meets the English language and academic needs of these students. This program shall include procedures for student placement, services, evaluation, and exit guidelines and shall be designed to provide students with effective instruction that leads to academic achievement and timely acquisition of proficiency in English. As a part of this program, the District will evaluate the progress of students in achieving English language proficiency in the areas of listening, speaking, reading and writing, on an annual basis (see AG 2260F). The Superintendent is responsible for verifying that a concentration of students who are Limited English Proficient (LEP) in one (1) or more programs is not the result of discrimination.

**Reports and Complaints of Unlawful Discrimination and Retaliation**

Students and Board employees are required, and all other members of the School District community and Third Parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. Any teacher, administrator, supervisor, or other District employee or official who receives such a complaint shall file it with the CO within two (2) days.

Members of the School District community, which includes students or Third Parties, who believe they have been unlawfully discriminated/retaliated against are entitled to utilize the complaint process set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the Complainant's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 - Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may constitute unlawful discrimination based on a Protected Class, the Principal shall report the act to one of the COs who shall investigate the allegation in accordance with this policy. While the CO investigates the allegation, the Principal shall suspend the Policy 5517.01 investigation to await the CO's written report. The CO shall keep the Principal informed of the status of the Policy 2260 investigation and provide the Principal with a copy of the resulting written report.

The COs will be available during regular school/work hours to discuss concerns related to unlawful discrimination/retaliation. COs shall accept reports of unlawful discrimination/retaliation directly from any member of the School District community or a Third Party, or receive reports that are initially filed with another Board employee. Upon receipt of a report of alleged discrimination/retaliation, the CO will contact the Complainant and begin either an informal or formal complaint process (depending on the Complainant's request and the nature of the alleged discrimination/retaliation), or the CO will designate a specific individual to conduct such a process. The CO will provide a copy of this policy to the Complainant and the Respondent. In the case of a formal complaint, the CO will prepare recommendations for the Superintendent or oversee the preparation of such recommendations by a designee. All members of the School District community must report incidents of discrimination/retaliation that are reported to them to the CO within two (2) days of learning of the incident/conduct.

Any Board employee who directly observes unlawful discrimination/retaliation of a student is obligated, in accordance with this policy, to report such observations to one of the COs within two (2) business days. Additionally, any Board employee who observes an act of unlawful discrimination/retaliation is expected to

BOE 70

intervene to stop the misconduct, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the misconduct. Thereafter, the CO/designee must contact the Complainant, if age eighteen (18) or older, or the Complainant's parents/guardians if the Complainant is under the age eighteen (18), within two (2) days to advise of the Board's intent to investigate the alleged wrongdoing.

**Investigation and Complaint Procedure**

Except for sex discrimination and/or Sexual Harassment that is covered by Policy 2266 – Nondiscrimination on the Basis of Sex in Education Programs or Activities, any student who alleges to have been subjected to unlawful discrimination or retaliation may seek resolution of the complaint through the procedures described below. The formal complaint procedures involve an investigation of the individual's claims of discrimination/retaliation and a process for rendering a decision regarding whether the charges are substantiated.

Due to the sensitivity surrounding complaints of unlawful discrimination or retaliation, timelines are flexible for initiating the complaint process; however, individuals are encouraged to file a complaint within thirty (30) days after the conduct occurs. Once the formal complaint process is begun, the investigation will be completed in a timely manner (ordinarily, within fifteen (15) business days of the complaint being received).

The procedures set forth below are not intended to interfere with the rights of a student to pursue a complaint of unlawful discrimination or retaliation with the United States Department of Education Office for Civil Rights ("OCR"). The Cleveland Office of the OCR can be reached at 1350 Euclid Avenue, Suite 325, Cleveland, Ohio 44115; Telephone: (216) 522-4970; Fax: (216) 522-2573; TDD: (216) 522-4944; E-mail: ocr.cleveland@ed.gov; Web: http://www.ed.gov/ocr.

**Informal Complaint Procedure**

The goal of the informal complaint procedure is to promptly stop inappropriate behavior and facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who alleges unlawful discrimination or retaliation. This informal procedure is not required as a precursor to the filing of a formal complaint.

The informal process is only available in those circumstances where the Complainant and the Respondent mutually agree to participate in it.

The Complainant may proceed immediately to the formal complaint process and individuals who participate in the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

All complaints involving a District employee or any other adults when taking this initial step or to intervene on behalf of the individual if requested to do so. A Complainant who is uncomfortable or unwilling to directly approach the Respondent about the inappropriate conduct may file an informal or a formal complaint. In addition, with regard to certain types of unlawful discrimination (e.g., sex discrimination), the CO may advise against the use of the informal complaint process.

As an initial course of action, if a Complainant feels comfortable and safe doing so, the individual should tell or otherwise inform the Respondent that the alleged harassing conduct is unwelcome and must stop. The Complainant should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the Complainant if requested to do so. A Complainant who is uncomfortable or unwilling to directly approach the Respondent about the alleged inappropriate conduct may file an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment the Compliance Officer may advise against the use of the informal complaint process.

A Complainant who alleges unlawful discrimination/retaliation may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one of the COs.

All informal complaints must be reported to one of the COs who will either facilitate an informal resolution as described below, or appoint another individual to facilitate an informal resolution.

The School District's informal complaint procedure is designed to provide the Complainant with a range of options aimed at bringing about a prompt resolution of their concerns. Depending upon the nature of the complaint and the Complainant's wishes, informal resolution may involve, but not be limited to, one or more of the following:

     A. Advising the Complainant about how to communicate concerns to the Respondent.

     B. Distributing a copy of Policy 2260 - Non-Discrimination and Access to Equal Educational Opportunity to the individuals in the school building or office where the Respondent works or attends.

     C. If both parties agree, the CO may arrange and facilitate a meeting or mediation between the Complainant and the Respondent to work out a mutual resolution.

While there are no set time limits within which an informal complaint must be resolved, the CO or designee is directed to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. If the Complainant is dissatisfied with the informal complaint process, the Complainant may proceed to file a formal complaint and, as stated above, either party may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

If a complaint is not resolved through the informal complaint process, if one of the parties requested that the informal complaint process be terminated to move to the formal complaint process, or if the Complainant, from the outset, elects to file a formal complaint, or the Compliance Officer(s) determines the allegations are not appropriate for resolution through the informal process, the formal complaint process shall be implemented.

The Complainant may file a formal complaint, either orally or in writing, with a teacher, Principal, or other District official at the student's school, the CO, Superintendent, or another District official who works at another school or at the District level. Due to the sensitivity surrounding complaints of unlawful discrimination, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a formal complaint within thirty (30) days after the conduct occurs. If a Complainant informs a teacher, Principal, or other District official at the student's school, Superintendent, or other District employee, either orally or in writing, about any complaint of discrimination/retaliation, that employee must report such information to the CO within two (2) business days.

Throughout the course of the process, the CO should keep the parties reasonably informed of the status of the investigation and the decision-making process.

BOE 71

All formal complaints must include the following information to the extent known: the identity of the Respondent; a detailed description of the facts upon which the complaint is based (i.e., when, where, and what occurred); a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the CO shall ask for such details in an oral interview. Thereafter, the CO will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

Upon receiving a formal complaint, the CO will consider whether any action should be taken in the investigatory phase to protect the Complainant from further discrimination or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the Respondent. In making such a determination, the CO should consult the Complainant to assess whether the individual agrees with the proposed action. If the Complainant is unwilling to consent to the proposed change, the CO may still take whatever actions deemed appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the CO or designee will initiate a formal investigation to determine whether the Complainant has been subjected to unlawful discrimination/retaliation. The Principal will not conduct an investigation unless directed to do so by the CO.

Simultaneously, the CO will inform the Respondent that a formal complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant policies and/or administrative guidelines, including Policy 2260 - Non-Discrimination and Access to Equal Educational Opportunity. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the CO or designee will attempt to complete an investigation into the allegations of discrimination/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

   A. interviews with the Complainant;

   B. interviews with the Respondent;

   C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

   D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to
       be relevant to the allegations.

At the conclusion of the investigation, the CO or designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful discrimination/retaliation as provided in Board policy and State and Federal law as to whether the Respondent has engaged in unlawful discrimination/retaliation of the Complainant. The CO's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if unlawful discrimination or retaliation occurred, a preponderance of evidence standard will be used. The CO may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within five (5) business days of receiving the report of the CO or designee, the Superintendent must either issue a written decision regarding whether the charges have been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within five (5) days. At the conclusion of the additional investigation, the Superintendent shall issue a final written decision as described above.

If the Superintendent determines the Respondent engaged in unlawful discrimination/retaliation toward the Complainant, the Superintendent must identify what corrective action will be taken to stop, remedy, and prevent the recurrence of the discrimination/retaliation. The corrective action should be reasonable, timely, age-appropriate and effective, and tailored to the specific situation.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful discrimination/retaliation regardless of whether the student alleging the unlawful discrimination/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

The parties may be represented, at their own cost, at any of the above-described meetings/hearings.

The right of a person to a prompt and equitable resolution of the complaint shall not be impaired by the person's pursuit of other remedies such as the filing of a complaint with the Office for Civil Rights, the filing of charges with local law enforcement, or the filing of a civil action in court. Use of this internal complaint process is not a prerequisite to the pursuit of other remedies.

**Privacy/Confidentiality**

The District will employ all reasonable efforts to protect the rights of the Complainant, the Respondent(s), and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. Additionally, the Respondent must be provided the Complainant's identity.

During the course of a formal investigation, the CO or designee will instruct each person who is interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of an investigation is expected not to disclose to third parties any information that is learned or provided during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful discrimination/retaliation by taking appropriate action reasonably calculated to stop and prevent further misconduct. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful discrimination/retaliation is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective

BOE 72

bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful harassment/retaliation or participates as a witness in an investigation is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a report, formal complaint, testified, assisted or participated or refused to participate in any manner in an investigation, proceeding, or hearing under those laws and/or this policy, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws and/or this policy.

Retaliation against a person for making a report of discrimination, filing a formal complaint, or participating in an investigation or meeting is a serious violation of this policy that can result in imposition of disciplinary sanctions/consequences and/or other appropriate remedies.

Formal complaints alleging retaliation may be filed according to the internal complaint process set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

**Education and Training**

In support of this policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and discrimination in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

The Compliance Officer(s) is responsible for overseeing retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy must retain all information, documents, electronically stored information, and electronic media (as defined in Policy 8315) created and received as part of an investigation, which may include, but not be limited to:

    A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

    B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

    C. any documentation that memorializes the actions taken by District personnel or individuals contracted or appointed by the Board to fulfill its responsibilities related to the investigation and/or the District's response to the alleged violation of this policy;

    D. written witness statements;

    E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

    F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

    G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

    H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

    I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

    J. documentation of any supportive measures offered and/or provided to the Complainant and/or the Respondent, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

    K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

    L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student Code of Conduct and/or Employee Handbooks);

    M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment.

The information, documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal and/or State law (e.g., student records).

These investigative records and materials created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 4/11/11
Revised 3/9/15
Revised 12/10/18
T.C. 8/10/20
T.C. 3/1/22

**© Neola 2021**

BOE 73

Legal

A.C. 3301-35-02(A)

R.C. 3301.0711, 3302.01, 3302.03, 3313.61, 3313.611, 3313.612, 3317.03

Fourteenth Amendment, U.S. Constitution

20 U.S.C. Section 1681, Title IX of Education Amendment Act

20 U.S.C. Section 1701 et seq., Equal Educational Opportunities Act of 1974

20 U.S.C. Section 7905, Boy Scouts of America Equal Access Act

29 U.S.C. Section 794, Rehabilitation Act of 1973, as amended

42 U.S.C. Section 2000 et seq., Civil Rights Act of 1964

42 U.S.C. Section 2000ff et seq., The Genetic Information Nondiscrimination Act

42 U.S.C. 6101 et seq., Age Discrimination Act of 1975

42 U.S.C. 12101 et seq., The Americans with Disabilities Act of 1990, as amended

29 C.F.R. Part 1635

34 C.F.R. Part 110 (7/27/93)

Vocational Education Program Guidelines for Eliminating Discrimination and Denial of Services, Department of Education, Office of Civil Rights, March 1979

BOE 74



| Book | Policy Manual |
| --- | --- |
| Section | 2000 Program |
| Title | NONDISCRIMINATION AND ACCESS TO EQUAL EDUCATIONAL OPPORTUNITY |
| Code | po2260 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | December 10, 2018 |
| Retired | August 10, 2020 |

**2260 - NONDISCRIMINATION AND ACCESS TO EQUAL EDUCATIONAL OPPORTUNITY**

Any form of discrimination or harassment can be devastating to an individual's academic progress, social relationship and/or personal sense of self-worth. As such, the Board of Education does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or transgender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities.

The Board also does not discriminate on the basis of Protected Classes in its employment policies and practices as they relate to students, and does not tolerate harassment of any kind.

Equal educational opportunities shall be available to all students, without regard to the Protected Classes, age (unless age is a factor necessary to the normal operation or the achievement of any legitimate objective of the program/activity), place of residence within the boundaries of the District, or social or economic background, to learn through the curriculum offered in this District. Educational programs shall be designed to meet the varying needs of all students.

In order to achieve the aforesaid goal, the Superintendent shall:

   A. Curriculum Content

     review current and proposed courses of study and textbooks to detect any bias based upon the Protected Classes; ascertaining whether or not supplemental materials, singly or taken as a whole, fairly depict the contribution of both genders, various races, ethnic groups, etc. toward the development of human society;

   B. Staff Training

     develop an ongoing program of in-service training for school personnel designed to identify and solve problems of bias based upon the Protected Classes in all aspects of the program;

   C. Student Access

     1. review current and proposed programs, activities, facilities, and practices to verify that all students have equal access thereto and are not segregated on the basis of the Protected Classes in any duty, work, play, classroom, or school practice, except as may be permitted under State and Federal laws and regulations;

     2. verify that facilities are made available, in accordance with Board Policy 7510 - Use of District Facilities, for non-curricular student activities that are initiated by parents or other members of the community, including but not limited to any group officially affiliated with the Boy Scouts of America or any other youth group listed in Title 36 of the United States Code as a patriotic society;

   D. District Support

     verify that like aspects of the District program receive like support as to staff size and compensation, purchase and maintenance of facilities and equipment, access to such facilities and equipment, and related matters;

   E. Student Evaluation
     verify that tests, procedures, and guidance and counseling materials, which are designed to evaluate student progress, rate aptitudes, analyze personality, or in any manner establish or tend to establish a category by which a student may be judged, are not differentiated or stereotyped on the basis of the Protected Classes.

**District Compliance Officers**

BOE 75

The Board designates the following individuals to serve as the District's "Compliance Officers" (also known as "Civil Rights Coordinators") (hereinafter referred to as the "COs").

High School Principal
Barrett Swope
(937) 845-9487
swopeb@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Assistant Treasurer
Lynn Serra
(937) 845-9414
serral@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The names, titles, and contact information of these individuals will be published annually on the School District's web site.

The COs are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding discrimination, retaliation or denial of equal access. The COs shall also verify that proper notice of nondiscrimination for Title II of the Americans with Disabilities Act (as amended), Title VI and VII of the Civil Rights Act of 1964, Title IX of the Education Amendment Act of 1972, Section 504 of the Rehabilitation Act of 1973 (as amended), and the Age Discrimination Act of 1975 is provided to students, their parents, staff members, and the general public. A copy of each of the Acts and regulations on which this notice is based may be found in the CO's office.

The Superintendent shall annually attempt to identify children with disabilities, ages 3-22, who reside in the District but do not receive public education. In addition, s/he shall establish procedures to identify students who are Limited English Proficient (LEP), including immigrant children and youth, to assess their ability to participate in District programs, and develop and administer a program that meets the English language and academic needs of these students. This program shall include procedures for student placement, services, evaluation, and exit guidelines and shall be designed to provide students with effective instruction that leads to academic achievement and timely acquisition of proficiency in English. As a part of this program, the District will evaluate the progress of students in achieving English language proficiency in the areas of listening, speaking, reading and writing, on an annual basis (see AG 2260F).

**Reports and Complaints of Unlawful Discrimination and Retaliation**

Students and all other members of the School District community and third parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. Any teacher, administrator, supervisor, or other District employee or official who receives such a complaint shall file it with the CO within two (2) school days.

Members of the School District community, which includes students or third parties, who believe they have been unlawfully discriminated/retaliated against are entitled to utilize the complaint process set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the complaining individual's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may constitute unlawful discrimination based on a Protected Class, the Principal shall report the act to one of the COs who shall investigate the allegation in accordance with this policy. While the CO investigates the allegation, the Principal may suspend his/her Policy 5517.01 investigation to await the CO's written report. The CO shall keep the Principal informed of the status of the Policy 2260 investigation and provide him/her with a copy of the resulting written report.

The COs will be available during regular school/work hours to discuss concerns related to unlawful discrimination/retaliation. COs shall accept complaints of unlawful discrimination/retaliation directly from any member of the School District community or a visitor to the District, or receive complaints that are initially filed with a school building administrator. Upon receipt of a complaint either directly or through a school building administrator, a CO will begin either an informal or formal process (depending on the request of the person alleging the discrimination/retaliation or the nature of the alleged discrimination/retaliation), or the CO will designate a specific individual to conduct such a process. The CO will provide a copy of this policy to any person who files a complaint. In the case of a formal complaint, the CO will prepare recommendations for the Superintendent or oversee the preparation of such recommendations by a designee. All members of the School District community must report incidents of discrimination/retaliation that are reported to them to the CO within two (2) business days of learning of the incident/conduct.

Any Board employee who directly observes unlawful discrimination/retaliation of a student is obligated, in accordance with this policy, to report such observations to one of the COs within two (2) business days. Additionally, any Board employee who observes an act of unlawful discrimination/retaliation is expected to intervene to stop the misconduct, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the misconduct. Thereafter, the CO or designee must contact the student, if age eighteen (18) or older, or the student's parents if the student is under the age eighteen (18), within two (2) school days to advise s/he/them of the Board's intent to investigate the alleged wrongdoing.

**Investigation and Complaint Procedure**

Any student who believes that s/he has been subjected to unlawful discrimination or retaliation may seek resolution of his/her complaint through the procedures described below. The formal complaint procedures involve an investigation of the individual's claims and a process for rendering a decision regarding whether the charges are substantiated.

BOE 76

Due to the sensitivity surrounding complaints of unlawful discrimination or retaliation, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs. Once the formal complaint process is begun, the investigation will be completed in a timely manner (ordinarily, within fifteen (15) business days of the complaint being received).

The procedures set forth below are not intended to interfere with the rights of a student to pursue a complaint of unlawful discrimination or retaliation with the United States Department of Education Office for Civil Rights ("OCR"). The Cleveland Office of the OCR can be reached at 1350 Euclid Avenue, Suite 325, Cleveland, Ohio 44115; Telephone: (216) 522-4970; Fax: (216) 522-2573; TDD: (216) 522-4944; E-mail: ocr.cleveland@ed.gov; Web: http://www.ed.gov/ocr.

### Informal Complaint Procedure

The goal of the informal complaint procedure is to quickly stop inappropriate behavior and facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes s/he has been unlawfully discriminated or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint.

The informal process is only available in those circumstances where the parties (the alleged target of the discrimination and individual(s) alleged to have engaged in the discrimination) agree to participate in it.

Students who believe that they have been unlawfully discriminated/retaliated against may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

All complaints involving a District employee or any other adult member of the School District community against a student will be formally investigated.

As an initial course of action, if a student feels that s/he is being unlawfully discriminated/retaliated against and s/he is able and feels safe doing so, the individual should tell or otherwise inform the person who engaged in the allegedly discriminatory/retaliatory conduct that it is inappropriate and must stop. The complaining individual should address the alleged misconduct as soon after it occurs as possible. The COs are available to support and counsel individuals when taking this initial step or to intervene on behalf of the individual if requested to do so. An individual who is uncomfortable or unwilling to inform the person who allegedly engaged in the unlawful conduct of his/her concerns is not prohibited from otherwise filing an informal or a formal complaint. In addition, with regard to certain types of unlawful discrimination, such as sexual discrimination, the CO may advise against the use of the informal complaint process.

A student who believes s/he has been unlawfully discriminated/retaliated against may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one of the COs.

All informal complaints must be reported to one of the COs who will either facilitate an informal resolution as described below, or appoint another individual to facilitate an informal resolution.

The School District's informal complaint procedure is designed to provide students who believe they are being unlawfully discriminated/retaliated against with a range of options aimed at bringing about a prompt resolution of their concerns. Depending upon the nature of the complaint and the wishes of the student claiming unlawful discrimination/retaliation, informal resolution may involve, but not be limited to, one or more of the following:

  A. Advising the student about how to communicate his/her concerns to the person who allegedly engaged in the discriminatory/retaliatory behavior.

  B. Distributing a copy of Policy 2260 – Nondiscrimination as a reminder to the individuals in the school building or office where the individual whose behavior is being questioned works or attends.

  C. If both parties agree, the CO may arrange and facilitate a meeting between the student claiming discrimination/retaliation and the individual accused of engaging in the misconduct to work out a mutual resolution.

While there are no set time limits within which an informal complaint must be resolved, the CO or designee will exercise his/her authority to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. Parties who are dissatisfied with the results of the informal complaint process may proceed to file a formal complaint. And, as stated above, parties may request that the informal process be terminated at any time to move to the formal complaint process.

### Formal Complaint Procedure

If a complaint is not resolved through the informal complaint process, if one of the parties requested that the informal complaint process be terminated to move to the formal complaint process, or if the student elects to file a formal complaint initially, the formal complaint process shall be implemented.

A student who believes s/he has been subjected to unlawful discrimination/retaliation (hereinafter referred to as the "Complainant") may file a formal complaint, either orally or in writing, with a teacher, Principal, or other District employee at the student's school, the CO, Superintendent, or another District employee who works at another school or at the District level. Due to the sensitivity surrounding complaints of unlawful discrimination, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs. If a Complainant informs a teacher, Principal, or other District employee at the student's school, Superintendent, or other District employee, either orally or in writing, about any complaint of discrimination/retaliation, that employee must report such information to the CO within two (2) business days.

Throughout the course of the process, the CO should keep the parties informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent it is available: the identity of the individual believed to have engaged in, or be engaging in; the discriminatory/retaliatory conduct; a detailed description of the facts upon which the complaint is based; a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the CO shall ask for such details in an oral interview. Thereafter, the CO will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the

BOE 77

reported charge by signing the document.

Upon receiving a formal complaint, the CO will consider whether any action should be taken in the investigatory phase to protect the Complainant from further discrimination or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the person alleged to have engaged in the misconduct. In making such a determination, the CO should consult the Complainant to assess his/her agreement to the proposed action. If the Complainant is unwilling to consent to the proposed change, the CO may still take whatever actions s/he deems appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the CO or designee will initiate a formal investigation to determine whether the Complainant has been subjected to unlawful discrimination/retaliation.

Simultaneously, the CO will inform the individual alleged to have engaged in the discriminatory or retaliatory conduct (hereinafter referred to as the "Respondent") that a complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant policies and/or administrative guidelines, including Policy 2260 - Nondiscrimination. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the CO or designee will attempt to complete an investigation into the allegations of discrimination/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

   A. interviews with the Complainant;

   B. interviews with the Respondent;

   C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

   D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the CO or designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful discrimination/retaliation as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful discrimination/retaliation. The CO's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if unlawful discrimination or retaliation occurred, a preponderance of evidence standard will be used. The CO may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within five (5) business days of receiving the report of the CO or designee, the Superintendent must either issue a final decision regarding whether the charges have been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within five (5) days. At the conclusion of the additional investigation, the Superintendent shall issue a final written decision as described above.

If the Superintendent determines the Complainant was subjected to unlawful discrimination/retaliation, s/he must identify what corrective action will be taken to stop, remedy, and prevent the recurrence of the discrimination/retaliation. The corrective action should be reasonable, timely, age-appropriate and effective, and tailored to the specific situation.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful discrimination/retaliation regardless of whether the student alleging the unlawful discrimination/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

The Complainant may be represented, at his/her own cost, at any of the above described meetings/hearings.

The right of a person to a prompt and equitable resolution of the complaint shall not be impaired by the person's pursuit of other remedies such as the filing of a Complaint with the Office for Civil Rights or the filing of a court case. Use of this internal complaint procedure is not a prerequisite to the pursuit of other remedies.

**Privacy/Confidentiality**

The School District will employ all reasonable efforts to protect the rights of the Complainant, the Respondent(s), and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. All Complainants proceeding through the formal investigation process will be advised that their identities may be disclosed to the Respondent(s).

During the course of a formal investigation, the CO or designee will instruct each person who is interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of an investigation is expected not to disclose to third parties any information that s/he learns and/or provides during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful discrimination/retaliation by taking appropriate action reasonably calculated to stop and prevent further misconduct. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the

BOE 78

terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful discrimination/retaliation is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful discrimination, or participates as a witness in an investigation is prohibited. Specifically, the Board will not retaliate against, coerce, intimidate, threaten or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under those laws, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws.

**Education and Training**

In support of this policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent or designee shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and discrimination in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

All individuals charged with conducting investigations under this policy must retain all information, documents, electronically stored information, and electronic media (as defined in Policy 8315) created and received as part of an investigation, which may include, but not be limited to:

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any interim measures offered and/or provided to complainants and/or the alleged perpetrators, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student and/or Employee Handbooks or Codes of Conduct);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment;

N. documentation of any training provided to District personnel related to this policy, including but not limited to, notification of the prohibitions and expectations of staff set forth in this policy and the role and responsibility of all District personnel involved in enforcing this policy, including their duty to report alleged violations of this policy and/or conducting an investigation of an alleged violation of this policy;

O. documentation that any rights or opportunities that the District made available to one party during the investigation were made available to the other party on equal terms;

P. copies of any notices sent to the alleged perpetrator/responding party of the allegations constituting a potential violation of this policy;

Q. copies of any notices sent to the complainant and alleged perpetrator in advance of any interview or hearing;

BOE 79

R. copies of any documentation or evidence used during informal and formal disciplinary meetings and hearings, including the investigation report, and any written responses submitted by the complainant or the alleged perpetrator.

The information, documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal and/or State law (e.g., student records).

These investigative records and materials created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 4/11/11
Revised 3/9/15

© Neola 2018

Legal     A.C. 3301-35-02(A)

       R.C. 3301.0711, 3302.01, 3302.03, 3313.61, 3313.611, 3313.612, 3317.03

       Fourteenth Amendment, U.S. Constitution

       20 U.S.C. Section 1681, Title IX of Education Amendment Act

       20 U.S.C. Section 1701 et seq., Equal Educational Opportunities Act of 1974

       20 U.S.C. Section 7905, Boy Scouts of America Equal Access Act

       29 U.S.C. Section 794, Rehabilitation Act of 1973, as amended

       42 U.S.C. Section 2000 et seq., Civil Rights Act of 1964

       42 U.S.C. Section 2000ff et seq., The Genetic Information Nondiscrimination Act

       42 U.S.C. 6101 et seq., Age Discrimination Act of 1975

       42 U.S.C. 12101 et seq., The Americans with Disabilities Act of 1990, as amended

       29 C.F.R. Part 1635

       34 C.F.R. Part 110 (7/27/93)

       Vocational Education Program Guidelines for Eliminating Discrimination and Denial of Services, Department of Education, Office of Civil Rights, March 1979

**Last Modified by Kayla Reichley on October 21, 2019**

BOE 80



| Book | Policy Manual |
|---|---|
| Section | 2000 Program |
| Title | NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES |
| Code | po2266 |
| Status | Retired |
| Adopted | January 11, 2021 |
| Last Revised | May 10, 2021 |
| Retired | March 1, 2022 |

**2266 - NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES**

**Introduction**

The Board of Education of the Bethel Local School District (hereinafter referred to as "the Board" or "the District") does not discriminate on the basis of sex (including sexual orientation or gender identity), in its education programs or activities, and is required by Title IX of the Education Amendments Act of 1972, and its implementing regulations, not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The Board is committed to maintaining an education and work environment that is free from discrimination based on sex, including sexual harassment.

The Board prohibits Sexual Harassment that occurs within its education programs and activities. When the District has actual knowledge of Sexual Harassment in its education program or activity against a person in the United States, it shall promptly respond in a manner that is not deliberately indifferent.

Pursuant to its Title IX obligations, the Board is committed to eliminating Sexual Harassment and will take appropriate action when an individual is determined responsible for violating this policy. Board employees, students, Third Party vendors and contractors, guests, and other members of the School District community who commit Sexual Harassment are subject to the full range of disciplinary sanctions set forth in this policy. The Board will provide persons who have experienced Sexual Harassment ongoing remedies as reasonably necessary to restore or preserve access to the District's education programs and activities.

**Coverage**

This policy applies to Sexual Harassment that occurs within the District's education programs and activities and that is committed by a member of the School District community or a Third Party.

This policy does not apply to Sexual Harassment that occurs off school grounds, in a private setting, and outside the scope of the District's education programs and activities; such Sexual Misconduct/Sexual Activity may be prohibited by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws if committed by a Board employee.

Consistent with the U.S. Department of Education's implementing regulations for Title IX, this policy does not apply to Sexual Harassment that occurs outside the geographic boundaries of the United States, even if the Sexual Harassment occurs in the District's education programs or activities. Sexual Harassment that occurs outside the geographic boundaries of the United States is governed by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws if committed by a Board employee.

**Definitions**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Sexual Harassment:** "Sexual Harassment" means conduct on the basis of sex that satisfies one or more of the following:

A. A Board employee conditioning the provision of an aid, benefit, or service of the District on an individual's participation in unwelcome sexual conduct (often called "*quid pro quo*" harassment);

B. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, **and** objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

C. "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)A(v), or "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

BOE 81

"Sexual assault" means any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent, and the "nonforcible" sex offenses of Incest and Statutory Rape. Sexual assault includes rape, sodomy, sexual assault with an object, fondling, incest, and statutory rape.

1. *Rape* is the carnal knowledge of a person (i.e., penetration, no matter how slight, of the genital or anal opening of a person), without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

2. *Sodomy* is oral or anal sexual intercourse with another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

3. *Sexual Assault with an Object* is using an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. An "object" or "instrument" is anything used by the offender other than the offender's genitalia.

4. *Fondling* is the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

5. *Incest* is nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by State law.

6. *Statutory Rape* is nonforcible sexual intercourse with a person who is under the statutory age of consent as defined by State law.

7. *Consent* refers to words or actions that a reasonable person would understand as agreement to engage in the sexual conduct at issue. A person may be incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. A person who is incapacitated is not capable of giving consent.

8. *Incapacitated* refers to the state where a person does not understand and/or appreciate the nature or fact of sexual activity due to the effect of drugs or alcohol consumption, medical condition, disability, or due to a state of unconsciousness or sleep.

D. "Domestic violence" includes felony or misdemeanor crimes of violence committed by:

1. a current or former spouse or intimate partner of the victim;

2. a person with whom the victim shares a child in common;

3. a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner;

4. a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime occurred; or

5. any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime occurred.

E. "Dating violence" means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

F. "Stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to – 1) fear for the person's safety or the safety of others; or 2) suffer substantial emotional distress.

**Complainant: "**Complainant" means an individual who is alleged to be the victim of conduct that could constitute Sexual Harassment.

**Respondent:** "Respondent" means an individual who has been reported to be the perpetrator of conduct that could constitute Sexual Harassment.

**Formal Complaint:** "Formal Complaint" means a document filed by a Complainant or signed by the Title IX Coordinator alleging Sexual Harassment against a Respondent and requesting that the District investigate the allegation(s) of Sexual Harassment. At the time of filing a Formal Complaint with the District, a Complainant must be participating in or attempting to participate in the District's education program or activity. A "document filed by a complainant" means a document or electronic submission (such as by electronic mail or through an online portal that the Board provides for this purpose) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Complainant or a party to the Formal Complaint and must not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

**Actual Knowledge:** "Actual knowledge" means notice of Sexual Harassment or allegations of Sexual Harassment to the District's Title IX Coordinator, or any District official who has authority to institute corrective measures on behalf of the Board, or any Board employee. The mere ability or obligation to report Sexual Harassment or to inform a student about how to report Sexual Harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the District. "Notice" includes, but is not limited to, a report of Sexual Harassment to the Title IX Coordinator. This standard is not met when the only District official with actual knowledge is the Respondent.

**Supportive Measures:** "Supportive measures" means non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Formal Complaint or where no Formal Complaint has been filed. Such measures are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment, or deter Sexual Harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules,

BOE 82

school/campus escort services, mutual restrictions of contact between the parties, changes in work locations), leaves of absence, increased security and monitoring of certain areas of the campus (including school buildings and facilities), referral to Employee Assistance Program, and other similar measures.

**Education Program or Activity:** "Education program or activity" refers to all operations of the District, including but not limited to in-person and online educational instruction, employment, extracurricular activities, athletics, performances, and community engagement and outreach programs. The term applies to all activity that occurs on school grounds or on other property owned or occupied by the Board. It also includes locations, events and circumstances that take place off-school property/grounds over which the Board exercises substantial control over both the Respondent and the context in which the Sexual Harassment occurs.

**School District community:** "School District community" refers to students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties:** "Third Parties" include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Inculpatory Evidence:** "Inculpatory evidence" is evidence that tends to establish a Respondent's responsibility for alleged Sexual Harassment.

**Exculpatory Evidence:** "Exculpatory evidence" is evidence that tends to clear or excuse a Respondent from allegations of Sexual Harassment.

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

**Eligible Student:** "Eligible Student" means a student who has reached eighteen (18) years of age or is attending an institution of postsecondary education.

### Title IX Coordinator(s)

The Board designates and authorizes the following individual(s) to oversee and coordinate its efforts to comply with Title IX and its implementing regulations:

High School Principal
Barrett Swope
(937) 845-9487
swopeb@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Elementary Principal
Jodi Petty
(937) 845-9439
pettyj@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The Title IX Coordinator shall report directly to the Superintendent. Questions about this policy should be directed to the Title IX Coordinator.

The Superintendent shall notify applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements with the Board of the following information:

> The Board of the Bethel Local School District does not discriminate on the basis of sex in its education program or activity, and is required by Title IX and its implementing regulations not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The District's Title IX Coordinator(s) is/are:

> High School Principal
> Barrett Swope
> (937) 845-9487
> swopeb@bethelk12.org
> 7490 St. Rt. 201
> Tipp City, OH 45371

> Elementary Principal
> Jodi Petty
> (937) 845-9439
> pettyj@bethelk12.org
> 7490 St. Rt. 201
> Tipp City, OH 45371

> Any inquiries about the application of Title IX and its implementing regulations to the District may be referred to the Title IX Coordinator(s), the Assistant Secretary for the U.S. Department of Education's Office for Civil Rights, or both.

> The Board has adopted a grievance process and procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that is prohibited by Title IX and/or its implementing regulations. The grievance process and procedures are included in Policy 2266 – Nondiscrimination on the Basis of Sex in Education Programs or Activities. The grievance process and procedures specifically address how to report or file a complaint of sex discrimination, how to report or file a formal complaint of Sexual Harassment, and how the District will respond.

BOE 83

The Superintendent shall also prominently display the Title IX Coordinator's(s') contact information – including name(s) and/or title(s), phone number(s), office address(es), and e-mail address(es) – and this policy on the District's website and in each handbook or catalog that the Board makes available to applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements.

**Grievance Process and Procedures**

The Board is committed to promptly and equitably resolving student and employee complaints alleging Sexual Harassment. The District's response to allegations of Sexual Harassment will treat Complainants and Respondents equitably, including providing supportive measures to the Complainant and Respondent, as appropriate, and following this Grievance Process before imposition of any disciplinary sanctions or other actions, other than supportive measures, against the Respondent.

The Title IX Coordinator(s), along with any investigator(s), decision-maker(s), or any person(s) designated to facilitate an informal resolution process, shall not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

If a determination of responsibility for Sexual Harassment is made against the Respondent, the Board will provide remedies to the Complainant. The remedies will be designed to restore or preserve equal access to the District's education program or activity. Potential remedies include, but are not limited to, individualized services that constitute supportive measures. Remedies may also be disciplinary or punitive in nature and may burden the Respondent.

**Report of Sexual Discrimination/Harassment**

Any person may report sex discrimination, including Sexual Harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or Sexual Harassment), in person, by mail, by telephone, or by electronic mail, using the Title IX Coordinator's(s') contact information listed above, or by any other means that results in the Title IX Coordinator receiving the person's oral or written report. Reports may be made at any time (including during non-business hours), by using the telephone number(s) or electronic mail address(es), or by mail to the office address(es), listed for the Title IX Coordinator(s).

Students, Board members, and Board employees are required, and other members of the School District community, and Third Parties) are encouraged, to report allegations of sex discrimination or Sexual Harassment promptly to the/a Title IX Coordinator or to any Board employee, who will, in turn, notify the/a Title IX Coordinator. Reports can be made orally or in writing and should be as specific as possible. The person making the report should, to the extent known, identify the alleged victim(s), perpetrator(s), and witness(es), and describe in detail what occurred, including date(s), time(s), and location(s).

If a report involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the person making the report should submit it to the Superintendent, or another Board employee who, in turn, will notify the Superintendent of the report. The Superintendent will then serve in place of the Title IX Coordinator for purposes of addressing that report of Sexual Harassment.

The Board does business with various vendors, contractors, and other Third Parties who are not students or employees of the Board. Notwithstanding any rights that a given vendor, contractor, or Third Party Respondent may have under this policy, the Board retains the right to limit any vendor's, contractor's, or Third Party's access to school grounds for any reason. The Board further retains all rights it enjoys by contract or law to terminate its relationship with any vendor, contractor, or Third Party irrespective of any process or outcome under this policy.

A person may file criminal charges simultaneously with filing a Formal Complaint. A person does not need to wait until the Title IX investigation is completed before filing a criminal complaint. Likewise, questions or complaints relating to Title IX may be filed with the U.S. Department of Education's Office for Civil Rights at any time.

Any allegations of Sexual Misconduct/Sexual Activity not involving Sexual Harassment will be addressed through the procedures outlined in Board policies and/or administrative guidelines, the applicable Student Code of Conduct, applicable collective bargaining agreement, and/or Employee/Administrator Handbook.

Because the Board is considered to have actual knowledge of Sexual Harassment or allegations of Sexual Harassment if any Board employee has such knowledge, and because the Board must take specific actions when it has notice of Sexual Harassment or allegations of Sexual Harassment, a Board employee who has independent knowledge of or receives a report involving allegations of sex discrimination and/or Sexual Harassment must notify the/a Title IX Coordinator within two (2) days of learning the information or receiving the report. The Board employee must also comply with mandatory reporting responsibilities pursuant to R.C. 2151.412 and Policy 8462 – Student Abuse and Neglect, if applicable. If the Board employee's knowledge is based on another individual bringing the information to the Board employee's attention and the reporting individual submitted a written complaint to the Board employee, the Board employee must provide the written complaint to the Title IX Coordinator.

If a Board employee fails to report an incident of Sexual Harassment of which the Board employee is aware, the Board employee may be subject to disciplinary action, up to and including termination.

When a report of Sexual Harassment is made, the Title IX Coordinator shall promptly (i.e., within two (2) days of the Title IX Coordinator's receipt of the report of Sexual Harassment) contact the Complainant (including the parent/guardian if the Complainant is under 18 years of age or under guardianship) to discuss the availability of supportive measures, consider the Complainant's wishes with respect to supportive measures, inform the Complainant of the availability of supportive measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures. Any supportive measures provided to the Complainant or Respondent shall be maintained as confidential, to the extent that maintaining such confidentiality will not impair the ability of the District to provide the supportive measures.

**Emergency Removal:** Subject to limitations and/or procedures imposed by State and/or Federal law, the District may remove a student Respondent from its education program or activity on an emergency basis after conducting an individualized safety and risk analysis. The purposes of the individualized safety and risk analysis is to determine whether the student Respondent poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment that justifies removal. If the District determines the student Respondent poses such a threat, it will so notify the student Respondent and the student Respondent will have an opportunity to challenge the decision immediately following the removal. See Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Student, Policy 5610.03 – Emergency Removal of Students, and Policy 5611 – Due Process Rights.

BOE 84

If the Respondent is a non-student employee, the District may place the Respondent on administrative leave during the pendency of the grievance process.

For all other Respondents, including other members of the School District community and Third Parties, the Board retains broad discretion to prohibit such persons from entering onto its school grounds and other properties at any time and for any reason, whether after receiving a report of Sexual Harassment or otherwise.

**Formal Complaint of Sexual Harassment**

A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information set forth above. If a Formal Complaint involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the Complainant should submit the Formal Complaint to the Superintendent, who will designate another person to serve in place of the Title IX Coordinator for the limited purpose of implementing the grievance process and procedures with respect to that Formal Complaint.

When the Title IX Coordinator receives a Formal Complaint or signs a Formal Complaint, the District will follow its Grievance Process and Procedures, as set forth herein. Specifically, the District will undertake an objective evaluation of all relevant evidence – including both inculpatory and exculpatory evidence – and provide that credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness.

It is a violation of this policy for a Complainant(s), Respondent(s), and/or witness(es) to knowingly making false statements or knowingly submitting false information during the grievance process, including intentionally making a false report of Sexual Harassment or submitting a false Formal Complaint. The Board will not tolerate such conduct, which is a violation of the Student Code of Conduct.

The Respondent is presumed not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

**Timeline**

The District will seek to conclude the grievance process, including resolving any appeals, within sixty (60) days of receipt of the Formal Complaint.

If the Title IX Coordinator offers informal resolution processes, the informal resolution processes may not be used by the Complainant or Respondent to unduly delay the investigation and determination of responsibility. The timeline, however, may be subject to a temporary delay of the grievance process or a limited extension for good cause with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action. Good cause may include considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; and the need for language assistance or accommodation of disabilities.

Upon receipt of a Formal Complaint, the Title IX Coordinator will provide written notice of the following to the parties who are known:

 A. Notice of the Board's grievance process, including any informal resolution processes;

 B. Notice of the allegations of misconduct that potentially constitutes Sexual Harassment as defined in this policy, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known. The written notice must:
  1. include a statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility will be made at the conclusion of the grievance process;
  2. inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence;
  3. inform the parties of any provision in the Student Code of Conduct, this policy, that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

If, during the course of the investigation, the investigator becomes aware of allegations about the Complainant or Respondent that are not included in the original notice provided to the parties, the investigator will notify the Title IX Coordinator and the Title IX Coordinator will decide whether the investigator should investigate the additional allegations; if the Title IX Coordinator decides to include the new allegations as part of the investigation, the Title IX Coordinator will provide notice of the additional allegations to the parties whose identities are known.

**Dismissal of a Formal Complaint**

The District shall investigate the allegations in a Formal Complaint, *unless* the conduct alleged in the Formal Complaint:

 A. would not constitute Sexual Harassment (as defined in this policy) even if proved;

 B. did not occur in the District's education program or activity; or

 C. did not occur against a person in the United States.

If one of the preceding circumstances exist, the Title IX Coordinator *shall* dismiss the Formal Complaint. If the Title IX Coordinator dismisses the Formal Complaint due to one of the preceding reasons, the District may still investigate and take action with respect to such alleged misconduct pursuant to another provision of an applicable code of conduct, Board policy, and/or Employee/Administrator Handbook.

The Title IX Coordinator *may* dismiss a Formal Complaint, or any allegations therein, if at any time during the investigation:

 A. a Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or any allegations therein;

BOE 85

B. the Respondent is no longer enrolled in the District or employed by the Board; or

C. specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

If the Title IX Coordinator dismisses a Formal Complaint or allegations therein, the Title IX Coordinator must promptly send written notice of the dismissal and the reason(s) therefore simultaneously to the parties.

**Consolidation of Formal Complaints**

The Title IX Coordinator may consolidate Formal Complaints as to allegations of Sexual Harassment against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Sexual Harassment arise out of the same facts or circumstances.

Where a grievance process involves more than one Complainant or more than one Respondent, references in this policy to the singular "party," "Complainant," or "Respondent" include the plural, as applicable.

**Informal Resolution Process**

Under no circumstances shall a Complainant be required as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, to waive any right to an investigation and adjudication of a Formal Complaint of Sexual Harassment. Similarly, no party shall be required to participate in an informal resolution process.

If a Formal Complaint is filed, the Title IX Coordinator may offer to the parties an informal resolution process. If the parties mutually agree to participate in the informal resolution process, the Title IX Coordinator shall designate a trained individual to facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication. The informal resolution process may be used at any time prior to the decision-maker(s) reaching a determination regarding responsibility.

If the Title IX Coordinator is going to propose an informal resolution process, the Title IX Coordinator shall provide to the parties a written notice disclosing:

A. the allegations;

B. the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations; and

C. any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

Any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the Formal Complaint.

Before commencing the informal resolution process, the Title IX Coordinator shall obtain from the parties their voluntary, written consent to the informal resolution process.

During the pendency of the informal resolution process, the investigation and adjudication processes that would otherwise occur have stayed and all related deadlines are suspended.

The informal resolution process is not available to resolve allegations that a Board employee or another adult member of the School District community or Third Party sexually harassed a student.

The informal resolution process is not available to resolve allegations involving a sexual assault involving a student Complainant and a student Respondent.

**Investigation of a Formal Complaint of Sexual Harassment**

In conducting the investigation of a Formal Complaint and throughout the grievance process, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility is on the District, not the parties.

In making the determination of responsibility, the decision-maker(s) is(are) directed to use the preponderance of the evidence standard. The decision-maker(s) is charged with considering the totality of all available evidence, from all relevant sources.

The District is not permitted to access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the party provides the District with voluntary, written consent to do so; if a student party is not an Eligible Student, the District must obtain the voluntary, written consent of a parent.

Similarly, the investigator(s) and decision-maker(s) may not require, allow, rely upon or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege in writing.

As part of the investigation, the parties have the right to:

A. present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence; and

B. have others present during any grievance proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney. The District may not limit the choice or presence of an advisor for either the Complainant or Respondent in any meeting or grievance proceeding.

BOE 86

Board Policy 2461 – Recording of District Meetings Involving Students and/or Parents controls whether a person is allowed to audio record or video record any meeting or grievance proceeding.

Neither party shall be restricted in their ability to discuss the allegations under investigation or to gather and present relevant evidence.

The District will provide to a party whose participation is invited or expected written notice of the date, time, location, participants, and purpose of all investigative interviews, or other meetings, with sufficient time for the party to prepare to participate. The investigator(s) and decision-maker(s) must provide a minimum of one days' notice with respect to investigative interviews and other meetings.

Both parties shall have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint, including the evidence upon which the District does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

Prior to completion of the investigative report, the Title IX Coordinator will send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have at least ten (10) calendar days to submit a written response, which the investigator will consider prior to completion of the investigative report.

At the conclusion of the investigation, the investigator shall create an investigative report that fairly summarizes relevant evidence and send the report to each party and the party's advisor, if any, for their review and written response. The investigator will send the investigative report in an electronic format or a hard copy, at least ten (10) calendar days prior to the decision-maker(s) issuing a determination regarding responsibility.

**Determination of Responsibility**

The Title IX Coordinator shall appoint a decision-maker(s) to issue a determination of responsibility. The decision-maker(s) cannot be the same person(s) as the Title IX Coordinator(s) or the investigator(s).

After the investigator sends the investigative report to the parties and the decision-maker(s), and before the decision-maker(s) reaches a determination regarding responsibility, the decision-maker(s) will afford each party the opportunity to submit written, relevant questions that a party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

**Determination regarding responsibility:** The decision-maker(s) will issue a written determination regarding responsibility. To reach this determination, the decision-maker(s) must apply the preponderance of the evidence standard.

The written determination will include the following content:

    A. identification of the allegations potentially constituting Sexual Harassment pursuant to this policy;

    B. a description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, [and] methods used to gather other evidence;

    C. findings of fact supporting the determination;

    D. conclusions regarding the application of the applicable code of conduct to the facts;

    E. a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the decision-maker(s) is recommending that the District impose on the Respondent(s), and whether remedies designed to restore or preserve equal access to the District's education program or activity should be provided by the District to the Complainant(s); and

    F. the procedures and permissible bases for the Complainant(s) and Respondent(s) to appeal.

The following disciplinary sanctions/consequences may be imposed on a student Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

    A. Informal Discipline

        1. writing assignments;

        2. changing of seating or location:

        3. pre-school, lunchtime, after-school detention;

        4. in-school discipline;

        5. Saturday school;

    B. Formal Discipline

        1. suspension of bus riding/transportation privileges;

BOE 87

2. removal from co-curricular and/or extra-curricular activity(ies), including athletics;

3. emergency removal;

4. suspension for up to ten (10) school days;

5. expulsion for up to eighty (80) school days or the number of school days remaining in a semester, whichever is greater;

6. expulsion for up to one (1) year;

7. permanent exclusion; and

8. any other sanction authorized by the Student Code of Conduct.

If the decision-maker(s) determines the student Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with Policy 5600 – Student Discipline, Policy 5605 – Suspension/Expulsion of Students with Disabilities, Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Students, Policy 5601.01 – Permanent Exclusion of Nondisabled Students, Policy 5610.02 – In-School Discipline, Policy 5610.03 – Emergency Removal of Students, Policy 5610.04 – Suspension of Bus Riding/Transportation Privileges, Policy 5610.05 – Prohibition from Extra-Curricular Activities, and Policy 5611 – Due Process Rights. Discipline of a student Respondent must comply with the applicable provisions of the Individuals with Disabilities Education Improvement Act (IDEA) and/or Section 504 of the Rehabilitation Act of 1972, and their respective implementing regulations.

The following disciplinary sanctions/consequences may be imposed on an employee Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. oral or written warning;

B. written reprimands;

C. performance improvement plan;

D. required counseling;

E. required training or education;

F. demotion;

G. suspension with pay;

H. suspension without pay;

I. termination, and any other sanction authorized by any applicable Employee/Administrator Handbook and/or collective bargaining agreement.

If the decision-maker(s) determines the employee Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with applicable due process procedures, whether statutory or contractual.

Discipline of an employee will be implemented in accordance with Federal and State law, Board policy, and applicable provisions of any relevant collective bargaining agreement.

The following disciplinary sanctions/consequences may be imposed on a non-student/non-employee member of the School District community or Third Party who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. oral or written warning;

B. suspension or termination/cancellation of the Board's contract with the Third Party vendor or contractor;

C. mandatory monitoring of the Third Party while on school property and/or while working/interacting with students;

D. restriction/prohibition on the Third Party's ability to be on school property; and

E. any combination of the same.

If the decision-maker(s) determines the Third Party Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including imposition of sanctions. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so appropriate action can be taken.

The decision-maker(s) will provide the written determination to the Title IX Coordinator who will provide the written determination to the parties simultaneously.

In ultimately, imposing a disciplinary sanction/consequence, the Superintendent will consider the severity of the incident, previous disciplinary violations (if any), and any mitigating circumstances.

BOE 88

The District's resolution of a Formal Complaint ordinarily will not be impacted by the fact that criminal charges involving the same incident have been filed or that charges have been dismissed or reduced.

At any point in the grievance process and procedures, the Superintendent may involve local law enforcement and/or file criminal charges related to allegations of Sexual Harassment that involve a sexual assault.

The Title IX Coordinator is responsible for effective implementation of any remedies.

### Appeal

Both parties have the right to file an appeal from a determination regarding responsibility, or from the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, on the following bases:

A. Procedural irregularity that affected the outcome of the matter (e.g., material deviation from established procedures);

B. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

C. The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant(s) or Respondent(s) that affected the outcome of the matter.

The Complainant(s) may not challenge the ultimate disciplinary sanction/consequence that is imposed.

Any party wishing to appeal the decision-maker(s)'s determination of responsibility, or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, must submit a written appeal to the Title IX Coordinator within three (3) days after receipt of the decision-maker(s)'s determination of responsibility or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein.

Nothing herein shall prevent the Superintendent from implementing appropriate remedies, however, excluding disciplinary sanction, while the appeal is pending.

As to all appeals, the Title IX Coordinator will notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

The decision-maker(s) for the appeal shall not be the same person(s) as the decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator(s). The decision-maker(s) for the appeal shall not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant(s) or Respondent(s) and shall receive the same training as required of other decision-makers.

Both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome.

The parties' written statements in support of, or challenging, the determination of responsibility must be submitted within five days after the Title IX Coordinator provides notice to the non-appealing party of the appeal.

The decision-maker(s) for the appeal shall issue a written decision describing the result of the appeal and the rationale for the result. The original decision-makers(s') determination of responsibility will stand if the appeal request is not filed in a timely manner or the appealing party fails to show clear error and/or a compelling rationale for overturning or modifying the original determination. The written decision will be provided to the Title IX Coordinator who will provide it simultaneously to both parties. The written decision will be issued within five days of when the parties' written statements were submitted.

The determination of responsibility associated with a Formal Complaint, including any recommendations for remedies/disciplinary sanctions, becomes final when the time for filing an appeal has passed or, if an appeal is filed, at the point when the decision-maker(s) for the appeal's decision is delivered to the Complainant and the Respondent. No further review beyond the appeal is permitted.

### Retaliation

Neither the Board nor any other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, or because the individual made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or Sexual Harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, constitutes retaliation. Retaliation against a person for making a report of Sexual Harassment, filing a Formal Complaint, or participating in an investigation, is a serious violation of this policy that can result in imposition of disciplinary sanctions/consequences and/or other appropriate remedies.

Complaints alleging retaliation may be filed according to the grievance procedures set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this policy shall not constitute retaliation, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

### Confidentiality

The District will keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment, any Complainant, any individual who has been reported to be the perpetrator of sex discrimination, any Respondent, and any witness, except as may be permitted by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.

1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of 34 CFR part 106, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder (i.e., the District's obligation to maintain confidentiality shall not impair or otherwise affect the Complainant's and Respondent's receipt of the information to which they are entitled related to the investigative record and determination of responsibility).

**Application of the First Amendment**

The Board will construe and apply this policy consistent with the First Amendment to the U.S. Constitution. In no case will a Respondent be found to have committed Sexual Harassment based on expressive conduct that is protected by the First Amendment.

**Training**

The District's Title IX Coordinator, along with any investigator(s), decision-maker(s), or person(s) designated to facilitate an informal resolution process, must receive training on:

    A. the definition of Sexual Harassment (as that term is used in this policy);

    B. the scope of the District's education program or activity;

    C. how to conduct an investigation and implement the grievance process appeals and informal resolution processes, as applicable; and

    D. how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interests, and bias.

All Board employees will be trained concerning their legal obligation to report Sexual Harassment to the Title IX Coordinator. This training will include practical information about how to identify and report Sexual Harassment.

**Recordkeeping**

As part of its response to alleged violations of this policy, the District shall create, and maintain for a period of seven (7) calendar years, records of any actions, including any supportive measures, taken in response to a report or Formal Complaint of Sexual Harassment. In each instance, the District shall document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the District's education program or activity. If the District does not provide a Complainant with supportive measures, then the District will document the reasons why such a response was not clearly unreasonable in light of the known circumstances. The documentation of certain bases or measures does not limit the District in the future from providing additional explanations or detailing additional measures taken.

The District shall maintain for a period of seven (7) calendar years the following records:

    A. each Sexual Harassment investigation including any determination regarding responsibility any disciplinary sanctions recommended and/or imposed on the Respondent(s), and any remedies provided to the Complainant(s) designed to restore or preserve equal access to the District's education program or activity;

    B. any appeal and the result therefrom;

    C. any informal resolution and the result therefrom; and

    D. all materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process.

The District will make its training materials publicly available on its website. If a person is unable to access the District's website, the Title IX Coordinator will make the training materials available upon request for inspection by members of the public.

**Outside Appointments, Dual Appointments, and Delegations**

The Board retains discretion to appoint suitably qualified persons who are not Board employees to fulfill any function of the Board under this policy, including, but not limited to, Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Board also retains discretion to appoint two or more persons to jointly fulfill the role of Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Superintendent may delegate functions assigned to a specific Board employee under this policy, including but not limited to the functions assigned to the Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor, to any suitably qualified individual and such delegation may be rescinded by the Superintendent at any time.

**Discretion in Application**

The Board retains discretion to interpret and apply this policy in a manner that is not clearly unreasonable, even if the Board's interpretation or application differs from the interpretation of any specific Complainant and/or Respondent.

Despite the Board's reasonable efforts to anticipate all eventualities in drafting this policy, it is possible unanticipated or extraordinary circumstances may not be specifically or reasonably addressed by the express policy language, in which case the Board retains discretion to respond to the unanticipated or extraordinary circumstance in a way that is not clearly unreasonable.

The provisions of this policy are not contractual in nature, whether in their own right, or as part of any other express or implied contract. Accordingly, the Board retains discretion to revise this policy at any time, and for any reason. The Board may apply policy revisions to an active case provided that doing so is not clearly unreasonable.

BOE 90

© Neola 2021

| Legal | R.C. 3313.207/208/209, 5104 |
|---|---|
| | 20 U.S.C. 1681 et seq., Title IX of the Education Amendments of 1972 (Title IX) |
| | 20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA) |
| | 42 U.S.C. 2000c et seq., Title IV of the Civil Rights Act of 1964 |
| | 42 U.S.C. 2000d et seq. |
| | 42 U.S.C. 2000e et seq. |
| | 42 U.S.C. 1983 |
| | 34 C.F.R. Part 106 |
| | OCR's Revised Sexual Harassment Guidance (2001) |
| | 20 U.S.C. 1092(F)(6)(A)(v) |
| | 34 U.S.C. 12291(a)(10) |
| | 34 U.S.C. 12291(a)(8) |
| | 34 U.S.C. 12291(a)(30) |

**Last Modified by Brittany Wiggins on March 14, 2022**

BOE 91



| Book | Policy Manual |
|------|---------------|
| Section | 2000 Program |
| Title | NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES |
| Code | po2266 |
| Status | Retired |
| Adopted | January 11, 2021 |
| Retired | May 10, 2021 |

## 2266 - NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES

### Introduction

The Board of Education of the Bethel Local School District (hereinafter referred to as "the Board" or "the District") does not discriminate on the basis of sex (including sexual orientation or gender identity), in its education programs or activities, and is required by Title IX of the Education Amendments Act of 1972, and its implementing regulations, not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The Board is committed to maintaining an education and work environment that is free from discrimination based on sex, including sexual harassment.

The Board prohibits Sexual Harassment that occurs within its education programs and activities. When the District has actual knowledge of Sexual Harassment in its education program or activity against a person in the United States, it shall promptly respond in a manner that is not deliberately indifferent.

Pursuant to its Title IX obligations, the Board is committed to eliminating Sexual Harassment and will take appropriate action when an individual is determined responsible for violating this policy. Board employees, students, third-party vendors and contractors, guests, and other members of the School District community who commit Sexual Harassment are subject to the full range of disciplinary sanctions set forth in this policy. The Board will provide persons who have experienced Sexual Harassment ongoing remedies as reasonably necessary to restore or preserve access to the District's education programs and activities.

### Coverage

This policy applies to Sexual Harassment that occurs within the District's education programs and activities and that is committed by a member of the School District community or a Third Party.

This policy does not apply to Sexual Harassment that occurs off school grounds, in a private setting, and outside the scope of the District's education programs and activities; such Sexual Misconduct/Sexual Activity may be prohibited by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws if committed by a Board employee.

Consistent with the U.S. Department of Education's implementing regulations for Title IX, this policy does not apply to Sexual Harassment that occurs outside the geographic boundaries of the United States, even if the Sexual Harassment occurs in the District's education programs or activities. Sexual Harassment that occurs outside the geographic boundaries of the United States is governed by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws if committed by a Board employee.

### Definitions

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Sexual Harassment: "**Sexual Harassment" means conduct on the basis of sex that satisfies one or more of the following:

    A. A Board employee conditioning the provision of an aid, benefit, or service of the District on an individual's participation in unwelcome sexual conduct (often called "*quid pro quo*" harassment);

    B. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, **and** objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

    C. "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)A(v), or "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

       "Sexual assault" means any sexual act directed against another person, without the consent of the victim, including instances where the victim is

BOE 92

incapable of giving consent. Sexual assault includes rape, sodomy, sexual assault with an object, fondling, incest, and statutory rape.

1. *(a) Rape* is penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. Attempted rape is included. (effective until the FBI retires the Summary Reporting System, which is scheduled for January 2021.)

   *(b) Rape* is the carnal knowledge of a person (i.e., penetration, no matter how slight, of the genita or anal opening of a person), without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. (effective upon retirement of the Summary Reporting System, which is scheduled for January 2021.)

2. *Sodomy* is oral or anal sexual intercourse with another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

3. *Sexual Assault with an Object* is using an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. An "object" or "instrument" is anything used by the offender other than the offender's genitalia.

4. *Fondling* is the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

5. *Incest* is sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by State law.

6. *Statutory Rape* is sexual intercourse with a person who is under the statutory age of consent as defined by State law.

7. *Consent* refers to words or actions that a reasonable person would understand as agreement to engage in the sexual conduct at issue. A person may be incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. A person who is incapacitated is not capable of giving consent.

8. *Incapacitated* refers to the state where a person does not understand and/or appreciate the nature or fact of sexual activity due to the effect of drugs or alcohol consumption, medical condition, disability, or due to a state of unconsciousness or sleep.

D. "Domestic violence" includes felony or misdemeanor crimes of violence committed by:

1. a current or former spouse or intimate partner of the victim;

2. a person with whom the victim shares a child in common;

3. a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner;

4. a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime occurred; or

5. any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime occurred.

E. "Dating violence" means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

F. "Stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to – 1) fear for the person's safety or the safety of others; or 2) suffer substantial emotional distress.

**Complainant: "**Complainant" means an individual who is alleged to be the victim of conduct that could constitute Sexual Harassment.

**Respondent:** "Respondent" means an individual who has been reported to be the perpetrator of conduct that could constitute Sexual Harassment.

**Formal Complaint:** "Formal Complaint" means a document filed by a Complainant or signed by the Title IX Coordinator alleging Sexual Harassment against a Respondent and requesting that the District investigate the allegation(s) of Sexual Harassment. At the time of filing a Formal Complaint with the District, a Complainant must be participating in or attempting to participate in the District's education program or activity. A "document filed by a complainant" means a document or electronic submission (such as by electronic mail or through an online portal that the Board provides for this purpose) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Complainant or a party to the Formal Complaint and must not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

**Actual Knowledge:** "Actual knowledge" means notice of Sexual Harassment or allegations of Sexual Harassment to the District's Title IX Coordinator, or any District official who has authority to institute corrective measures on behalf of the Board, or any Board employee. The mere ability or obligation to report Sexual Harassment or to inform a student about how to report Sexual Harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the District. "Notice" includes, but is not limited to, a report of Sexual Harassment to the Title IX Coordinator. This standard is not met when the only District official with actual knowledge is the Respondent.

**Supportive Measures:** "Supportive measures" means non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Formal Complaint or where no Formal Complaint has been

BOE 93

filed. Such measures are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment, or deter Sexual Harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, school/campus escort services, mutual restrictions of contact between the parties, changes in work locations), leaves of absence, increased security and monitoring of certain areas of the campus (including school buildings and facilities), referral to Employee Assistance Program, and other similar measures.

**Education Program or Activity:** "Education program or activity" refers to all operations of the District, including but not limited to in-person and online educational instruction, employment, extracurricular activities, athletics, performances, and community engagement and outreach programs. The term applies to all activity that occurs on school grounds or on other property owned or occupied by the Board. It also includes locations, events and circumstances that take place off-school property/grounds over which the Board exercises substantial control over both the Respondent and the context in which the Sexual Harassment occurs.

**School District community:** "School District community" refers to students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties:** "Third Parties" include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Inculpatory Evidence:** "Inculpatory evidence" is evidence that tends to establish a Respondent's responsibility for alleged Sexual Harassment.

**Exculpatory Evidence:** "Exculpatory evidence" is evidence that tends to clear or excuse a Respondent from allegations of Sexual Harassment.

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

**Eligible Student:** "Eligible Student" means a student who has reached eighteen (18) years of age or is attending an institution of postsecondary education.

### Title IX Coordinator(s)

The Board designates and authorizes the following individual(s) to oversee and coordinate its efforts to comply with Title IX and its implementing regulations:

High School Principal
Barrett Swope
(937) 845-9487
swopeb@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Elementary Principal
Jodi Petty
(937) 845-9439
pettyj@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The Title IX Coordinator shall report directly to the Superintendent. Questions about this policy should be directed to the Title IX Coordinator.

The Superintendent shall notify applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements with the Board of the following information:

 The Board of the Bethel Local School District does not discriminate on the basis of sex in its education program or activity, and is required by Title IX and its implementing regulations not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The District's Title IX Coordinator(s) is/are:

 High School Principal
 Barrett Swope
 (937) 845-9487
 swopeb@bethelk12.org
 7490 St. Rt. 201
 Tipp City, OH 45371

 Elementary Principal
 Jodi Petty
 (937) 845-9439
 pettyj@bethelk12.org
 7490 St. Rt. 201
 Tipp City, OH 45371

 Any inquiries about the application of Title IX and its implementing regulations to the District may be referred to the Title IX Coordinator(s), the Assistant Secretary for the U.S. Department of Education's Office for Civil Rights, or both.

 The Board has adopted a grievance process and procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that is prohibited by Title IX and/or its implementing regulations. The grievance process and procedures are included in Policy

BOE 94

2266 – Nondiscrimination on the Basis of Sex in Education Programs or Activities. The grievance process and procedures specifically address how to report or file a complaint of sex discrimination, how to report or file a formal complaint of Sexual Harassment, and how the District will respond.

The Superintendent shall also prominently display the Title IX Coordinator's(s') contact information – including name(s) and/or title(s), phone number(s), office address(es), and e-mail address(es) – and this policy on the District's website and in each handbook or catalog that the Board makes available to applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements.

**Grievance Process and Procedures**

The Board is committed to promptly and equitably resolving student and employee complaints alleging Sexual Harassment. The District's response to allegations of Sexual Harassment will treat Complainants and Respondents equitably, including providing supportive measures to the Complainant and Respondent, as appropriate, and following this Grievance Process before imposition of any disciplinary sanctions or other actions, other than supportive measures, against the Respondent.

The Title IX Coordinator(s), along with any investigator(s), decision-maker(s), or any person(s) designated to facilitate an informal resolution process, shall not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

If a determination of responsibility for Sexual Harassment is made against the Respondent, the Board will provide remedies to the Complainant. The remedies will be designed to restore or preserve equal access to the District's education program or activity. Potential remedies include, but are not limited to, individualized services that constitute supportive measures. Remedies may also be disciplinary or punitive in nature and may burden the Respondent.

**Report of Sexual Discrimination/Harassment**

Any person may report sex discrimination, including Sexual Harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or Sexual Harassment), in person, by mail, by telephone, or by electronic mail, using the Title IX Coordinator's(s') contact information listed above, or by any other means that results in the Title IX Coordinator receiving the person's oral or written report. Reports may be made at any time (including during non-business hours), by using the telephone number(s) or electronic mail address(es), or by mail to the office address(es), listed for the Title IX Coordinator(s).

Students, Board members, and Board employees are required, and other members of the School District community, and Third Parties) are encouraged, to report allegations of sex discrimination or Sexual Harassment promptly to the/a Title IX Coordinator or to any Board employee who will, in turn, notify the/a Title IX Coordinator. Reports can be made orally or in writing and should be as specific as possible. The person making the report should, to the extent known, identify the alleged victim(s), perpetrator(s), and witness(es), and describe in detail what occurred, including date(s), time(s), and location(s).

If a report involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the person making the report should submit it to the Superintendent, or another Board employee who, in turn, will notify the Superintendent of the report. The Superintendent will then serve in place of the Title IX Coordinator for purposes of addressing that report of Sexual Harassment.

The Board does business with various vendors, contractors, and other third-parties who are not students or employees of the Board. Notwithstanding any rights that a given vendor, contractor, or third-party Respondent may have under this policy, the Board retains the right to limit any vendor's, contractor's, or third-party's access to school grounds for any reason. The Board further retains all rights it enjoys by contract or law to terminate its relationship with any vendor, contractor, or third-party irrespective of any process or outcome under this policy.

A person may file criminal charges simultaneously with filing a Formal Complaint. A person does not need to wait until the Title IX investigation is completed before filing a criminal complaint. Likewise, questions or complaints relating to Title IX may be filed with the U.S. Department of Education's Office for Civil Rights at any time.

Any allegations of Sexual Misconduct/Sexual Activity not involving Sexual Harassment will be addressed through the procedures outlined in Board policies and/or administrative guidelines, the applicable Student Code of Conduct, applicable collective bargaining agreement, and/or Employee/Administrator Handbook.

Because the Board is considered to have actual knowledge of Sexual Harassment or allegations of Sexual Harassment if any Board employee has such knowledge, and because the Board must take specific actions when it has notice of Sexual Harassment or allegations of Sexual Harassment, a Board employee who has independent knowledge of or receives a report involving allegations of sex discrimination and/or Sexual Harassment must notify the/a Title IX Coordinator within two (2) days of learning the information or receiving the report. The Board employee must also comply with mandatory reporting responsibilities pursuant to R.C. 2151.412 and Policy 8462 – Student Abuse and Neglect, if applicable. If the Board employee's knowledge is based on another individual bringing the information to the Board employee's attention and the reporting individual submitted a written complaint to the Board employee, the Board employee must provide the written complaint to the Title IX Coordinator.

If a Board employee fails to report an incident of Sexual Harassment of which the Board employee is aware, the Board employee may be subject to disciplinary action, up to and including termination.

When a report of Sexual Harassment is made, the Title IX Coordinator shall promptly (i.e., within two (2) days of the Title IX Coordinator's receipt of the report of Sexual Harassment) contact the Complainant (including the parent/guardian if the Complainant is under 18 years of age or under guardianship) to discuss the availability of supportive measures, consider the Complainant's wishes with respect to supportive measures, inform the Complainant of the availability of supportive measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures. Any supportive measures provided to the Complainant or Respondent shall be maintained as confidential, to the extent that maintaining such confidentiality will not impair the ability of the District to provide the supportive measures.

**Emergency Removal:** Subject to limitations and/or procedures imposed by State and/or Federal law, the District may remove a student Respondent from its education program or activity on an emergency basis after conducting an individualized safety and risk analysis. The purposes of the individualized safety and risk analysis is to determine whether the student Respondent poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment that justifies removal. If the District determines the student Respondent poses such a threat, it

BOE 95

will so notify the student Respondent and the student Respondent will have an opportunity to challenge the decision immediately following the removal. See Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Student, Policy 5610.03 – Emergency Removal of Students, and Policy 5611 – Due Process Rights.

If the Respondent is a non-student employee, the District may place the Respondent on administrative leave during the pendency of the grievance process.

For all other Respondents, including other members of the School District community and Third Parties, the Board retains broad discretion to prohibit such persons from entering onto its school grounds and other properties at any time and for any reason, whether after receiving a report of Sexual Harassment or otherwise.

**Formal Complaint of Sexual Harassment**

A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information set forth above. If a Formal Complaint involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the Complainant should submit the Formal Complaint to the Superintendent, who will designate another person to serve in place of the Title IX Coordinator for the limited purpose of implementing the grievance process and procedures with respect to that Formal Complaint.

When the Title IX Coordinator receives a Formal Complaint or signs a Formal Complaint, the District will follow its Grievance Process and Procedures, as set forth herein. Specifically, the District will undertake an objective evaluation of all relevant evidence – including both inculpatory and exculpatory evidence – and provide that credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness.

It is a violation of this policy for a Complainant(s), Respondent(s), and/or witness(es) to knowingly making false statements or knowingly submitting false information during the grievance process, including intentionally making a false report of Sexual Harassment or submitting a false Formal Complaint. The Board will not tolerate such conduct, which is a violation of the Student Code of Conduct.

The Respondent is presumed not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

**Timeline**

The District will seek to conclude the grievance process, including resolving any appeals, within sixty (60) days of receipt of the Formal Complaint.

If the Title IX Coordinator offers informal resolution processes, the informal resolution processes may not be used by the Complainant or Respondent to unduly delay the investigation and determination of responsibility. The timeline, however, may be subject to a temporary delay of the grievance process or a limited extension for good cause with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action. Good cause may include considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; and the need for language assistance or accommodation of disabilities.

Upon receipt of a Formal Complaint, the Title IX Coordinator will provide written notice of the following to the parties who are known:

A. Notice of the Board's grievance process, including any informal resolution processes;

B. Notice of the allegations of misconduct that potentially constitutes Sexual Harassment as defined in this policy, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known. The written notice must:
   1. include a statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility will be made at the conclusion of the grievance process;

   2. inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence;

   3. inform the parties of any provision in the Student Code of Conduct, this policy, that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

If, during the course of the investigation, the investigator becomes aware of allegations about the Complainant or Respondent that are not included in the original notice provided to the parties, the investigator will notify the Title IX Coordinator and the Title IX Coordinator will decide whether the investigator should investigate the additional allegations; if the Title IX Coordinator decides to include the new allegations as part of the investigation, the Title IX Coordinator will provide notice of the additional allegations to the parties whose identities are known.

**Dismissal of a Formal Complaint**

The District shall investigate the allegations in a Formal Complaint, *unless* the conduct alleged in the Formal Complaint:

A. would not constitute Sexual Harassment (as defined in this policy) even if proved;

B. did not occur in the District's education program or activity; or

C. did not occur against a person in the United States.

If one of the preceding circumstances exist, the Title IX Coordinator *shall* dismiss the Formal Complaint. If the Title IX Coordinator dismisses the Formal Complaint due to one of the preceding reasons, the District may still investigate and take action with respect to such alleged misconduct pursuant to another provision of an applicable code of conduct, Board policy, and/or Employee/Administrator Handbook.

The Title IX Coordinator *may* dismiss a Formal Complaint, or any allegations therein, if at any time during the investigation:

BOE 96

A. a Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or any allegations therein;

B. the Respondent is no longer enrolled in the District or employed by the Board; or

C. specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

If the Title IX Coordinator dismisses a Formal Complaint or allegations therein, the Title IX Coordinator must promptly send written notice of the dismissal and the reason(s) therefore simultaneously to the parties.

**Consolidation of Formal Complaints**

The Title IX Coordinator may consolidate Formal Complaints as to allegations of Sexual Harassment against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Sexual Harassment arise out of the same facts or circumstances.

Where a grievance process involves more than one Complainant or more than one Respondent, references in this policy to the singular "party," "Complainant," or "Respondent" include the plural, as applicable.

**Informal Resolution Process**

Under no circumstances shall a Complainant be required as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, to waive any right to an investigation and adjudication of a Formal Complaint of Sexual Harassment. Similarly, no party shall be required to participate in an informal resolution process.

If a Formal Complaint is filed, the Title IX Coordinator may offer to the parties an informal resolution process. If the parties mutually agree to participate in the informal resolution process, the Title IX Coordinator shall designate a trained individual to facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication. The informal resolution process may be used at any time prior to the decision-maker(s) reaching a determination regarding responsibility.

If the Title IX Coordinator is going to propose an informal resolution process, the Title IX Coordinator shall provide to the parties a written notice disclosing:

A. the allegations;

B. the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations; and

C. any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

Any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the Formal Complaint.

Before commencing the informal resolution process, the Title IX Coordinator shall obtain from the parties their voluntary, written consent to the informal resolution process.

During the pendency of the informal resolution process, the investigation and adjudication processes that would otherwise occur have stayed and all related deadlines are suspended.

The informal resolution process is not available to resolve allegations that a Board employee or another adult member of the School District community or Third Party sexually harassed a student.

The informal resolution process is not available to resolve allegations involving a sexual assault involving a student Complainant and a student Respondent.

**Investigation of a Formal Complaint of Sexual Harassment**

In conducting the investigation of a Formal Complaint and throughout the grievance process, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility is on the District, not the parties.

In making the determination of responsibility, the decision-maker(s) is(are) directed to use the preponderance of the evidence standard. The decision-maker(s) is charged with considering the totality of all available evidence, from all relevant sources.

The District is not permitted to access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the party provides the District with voluntary, written consent to do so; if a student party is not an Eligible Student, the District must obtain the voluntary, written consent of a parent.

Similarly, the investigator(s) and decision-maker(s) may not require, allow, rely upon or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege in writing.

As part of the investigation, the parties have the right to:

A. present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence; and

B. have others present during any grievance proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney. The District may not limit the choice or presence of an advisor for either

**BOE 97**

the Complainant or Respondent in any meeting or grievance proceeding.

Board Policy 2461 – Recording of District Meetings Involving Students and/or Parents controls whether a person is allowed to audio record or video record any meeting or grievance proceeding.

Neither party shall be restricted in their ability to discuss the allegations under investigation or to gather and present relevant evidence.

The District will provide to a party whose participation is invited or expected written notice of the date, time, location, participants, and purpose of all investigative interviews, or other meetings, with sufficient time for the party to prepare to participate. The investigator(s) and decision-maker(s) must provide a minimum of one days' notice with respect to investigative interviews and other meetings.

Both parties shall have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint, including the evidence upon which the District does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

Prior to completion of the investigative report, the Title IX Coordinator will send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have at least ten (10) calendar days to submit a written response, which the investigator will consider prior to completion of the investigative report.

At the conclusion of the investigation, the investigator shall create an investigative report that fairly summarizes relevant evidence and send the report to each party and the party's advisor, if any, for their review and written response. The investigator will send the investigative report in an electronic format or a hard copy, at least ten (10) calendar days prior to the decision-maker(s) issuing a determination regarding responsibility.

**Determination of Responsibility**

The Title IX Coordinator shall appoint a decision-maker(s) to issue a determination of responsibility. The decision-maker(s) cannot be the same person(s) as the Title IX Coordinator(s) or the investigator(s).

After the investigator sends the investigative report to the parties and the decision-maker(s), and before the decision-maker(s) reaches a determination regarding responsibility, the decision-maker(s) will afford each party the opportunity to submit written, relevant questions that a party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

**Determination regarding responsibility:** The decision-maker(s) will issue a written determination regarding responsibility. To reach this determination, the decision-maker(s) must apply the preponderance of the evidence standard.

The written determination will include the following content:

A. identification of the allegations potentially constituting Sexual Harassment pursuant to this policy;

B. a description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, [and] methods used to gather other evidence;

C. findings of fact supporting the determination;

D. conclusions regarding the application of the applicable code of conduct to the facts;

E. a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the decision-maker(s) is recommending that the District impose on the Respondent(s), and whether remedies designed to restore or preserve equal access to the District's education program or activity should be provided by the District to the Complainant(s); and

F. the procedures and permissible bases for the Complainant(s) and Respondent(s) to appeal.

The following disciplinary sanctions/consequences may be imposed on a student Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. Informal Discipline

1. writing assignments;

2. changing of seating or location:

3. pre-school, lunchtime, after-school detention;

4. in-school discipline;

5. Saturday school;

B. Formal Discipline

BOE 98

1. suspension of bus riding/transportation privileges;

2. removal from co-curricular and/or extra-curricular activity(ies), including athletics;

3. emergency removal;

4. suspension for up to ten (10) school days;

5. expulsion for up to eighty (80) school days or the number of school days remaining in a semester, whichever is greater;

6. expulsion for up to one (1) year;

7. permanent exclusion; and

8. any other sanction authorized by the Student Code of Conduct.

If the decision-maker(s) determines the student Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with Policy 5600 – Student Discipline, Policy 5605 – Suspension/Expulsion of Students with Disabilities, Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Students, Policy 5601.01 – Permanent Exclusion of Nondisabled Students, Policy 5610.02 – In-School Discipline, Policy 5610.03 – Emergency Removal of Students, Policy 5610.04 – Suspension of Bus Riding/Transportation Privileges, Policy 5610.05 – Prohibition from Extra-Curricular Activities, and Policy 5611 – Due Process Rights. Discipline of a student Respondent must comply with the applicable provisions of the Individuals with Disabilities Education Improvement Act (IDEA) and/or Section 504 of the Rehabilitation Act of 1972, and their respective implementing regulations.

The following disciplinary sanctions/consequences may be imposed on an employee Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. oral or written warning;

B. written reprimands;

C. performance improvement plan;

D. required counseling;

E. required training or education;

F. demotion;

G. suspension with pay;

H. suspension without pay;

I. termination, and any other sanction authorized by any applicable Employee/Administrator Handbook and/or collective bargaining agreement.

If the decision-maker(s) determines the employee Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with applicable due process procedures, whether statutory or contractual.

Discipline of an employee will be implemented in accordance with Federal and State law, Board policy, and applicable provisions of any relevant collective bargaining agreement.

The following disciplinary sanctions/consequences may be imposed on a non-student/non-employee member of the School District community or Third Party who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. oral or written warning;

B. suspension or termination/cancellation of the Board's contract with the third-party vendor or contractor;

C. mandatory monitoring of the third-party while on school property and/or while working/interacting with students;

D. restriction/prohibition on the third-party's ability to be on school property; and

E. any combination of the same.

If the decision-maker(s) determines the third-party Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including imposition of sanctions. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so appropriate action can be taken.

The decision-maker(s) will provide the written determination to the Title IX Coordinator who will provide the written determination to the parties simultaneously.

In ultimately, imposing a disciplinary sanction/consequence, the Superintendent will consider the severity of the incident, previous disciplinary violations (if any), and any mitigating circumstances.

BOE 99

The District's resolution of a Formal Complaint ordinarily will not be impacted by the fact that criminal charges involving the same incident have been filed or that charges have been dismissed or reduced.

At any point in the grievance process and procedures, the Superintendent may involve local law enforcement and/or file criminal charges related to allegations of Sexual Harassment that involve a sexual assault.

The Title IX Coordinator is responsible for effective implementation of any remedies.

**Appeal**

Both parties have the right to file an appeal from a determination regarding responsibility, or from the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, on the following bases:

A. Procedural irregularity that affected the outcome of the matter (e.g., material deviation from established procedures);

B. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

C. The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant(s) or Respondent(s) that affected the outcome of the matter.

The Complainant(s) may not challenge the ultimate disciplinary sanction/consequence that is imposed.

Any party wishing to appeal the decision-maker(s)'s determination of responsibility, or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, must submit a written appeal to the Title IX Coordinator within three (3) days after receipt of the decision-maker(s)'s determination of responsibility or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein.

Nothing herein shall prevent the Superintendent from imposing any remedy, including disciplinary sanction, while the appeal is pending.

As to all appeals, the Title IX Coordinator will notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

The decision-maker(s) for the appeal shall not be the same person(s) as the decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator(s). The decision-maker(s) for the appeal shall not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant(s) or Respondent(s) and shall receive the same training as required of other decision-makers.

Both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome.

The parties' written statements in support of, or challenging, the determination of responsibility must be submitted within five days after the Title IX Coordinator provides notice to the non-appealing party of the appeal.

The decision-maker(s) for the appeal shall issue a written decision describing the result of the appeal and the rationale for the result. The original decision-makers(s') determination of responsibility will stand if the appeal request is not filed in a timely manner or the appealing party fails to show clear error and/or a compelling rationale for overturning or modifying the original determination. The written decision will be provided to the Title IX Coordinator who will provide it simultaneously to both parties. The written decision will be issued within five days of when the parties' written statements were submitted.

The determination of responsibility associated with a Formal Complaint, including any recommendations for remedies/disciplinary sanctions, becomes final when the time for filing an appeal has passed or, if an appeal is filed, at the point when the decision-maker(s) for the appeal's decision is delivered to the Complainant and the Respondent. No further review beyond the appeal is permitted.

**Retaliation**

Neither the Board nor any other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, or because the individual made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or Sexual Harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, constitutes retaliation. Retaliation against a person for making a report of Sexual Harassment, filing a Formal Complaint, or participating in an investigation, is a serious violation of this policy that can result in imposition of disciplinary sanctions/consequences and/or other appropriate remedies.

Complaints alleging retaliation may be filed according to the grievance procedures set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this policy shall not constitute retaliation, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

**Confidentiality**

The District will keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment, any Complainant, any individual who has been reported to be the perpetrator of sex discrimination, any Respondent, and any witness, except as may be permitted by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.

BOE 100

1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of 34 CFR part 106, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder (i.e., the District's obligation to maintain confidentiality shall not impair or otherwise affect the Complainant's and Respondent's receipt of the information to which they are entitled related to the investigative record and determination of responsibility).

**Application of the First Amendment**

The Board will construe and apply this policy consistent with the First Amendment to the U.S. Constitution. In no case will a Respondent be found to have committed Sexual Harassment based on expressive conduct that is protected by the First Amendment.

**Training**

The District's Title IX Coordinator, along with any investigator(s), decision-maker(s), or person(s) designated to facilitate an informal resolution process, must receive training on:

    A. the definition of Sexual Harassment (as that term is used in this policy);

    B. the scope of the District's education program or activity;

    C. how to conduct an investigation and implement the grievance process appeals and informal resolution processes, as applicable; and

    D. how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interests, and bias.

All Board employees will be trained concerning their legal obligation to report Sexual Harassment to the Title IX Coordinator. This training will include practical information about how to identify and report Sexual Harassment.

**Recordkeeping**

As part of its response to alleged violations of this policy, the District shall create, and maintain for a period of seven (7) calendar years, records of any actions, including any supportive measures, taken in response to a report or Formal Complaint of Sexual Harassment. In each instance, the District shall document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the District's education program or activity. If the District does not provide a Complainant with supportive measures, then the District will document the reasons why such a response was not clearly unreasonable in light of the known circumstances. The documentation of certain bases or measures does not limit the District in the future from providing additional explanations or detailing additional measures taken.

The District shall maintain for a period of seven (7) calendar years the following records:

    A. each Sexual Harassment investigation including any determination regarding responsibility any disciplinary sanctions recommended and/or imposed on the Respondent(s), and any remedies provided to the Complainant(s) designed to restore or preserve equal access to the District's education program or activity;

    B. any appeal and the result therefrom;

    C. any informal resolution and the result therefrom; and

    D. all materials used to train Title IX Coordinators, investigators, decisionmakers, and any person who facilitates an informal resolution process.

The District will make its training materials publicly available on its website. If a person is unable to access the District's website, the Title IX Coordinator will make the training materials available upon request for inspection by members of the public.

**Outside Appointments, Dual Appointments, and Delegations**

The Board retains discretion to appoint suitably qualified persons who are not Board employees to fulfill any function of the Board under this policy, including, but not limited to, Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Board also retains discretion to appoint two or more persons to jointly fulfill the role of Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Superintendent may delegate functions assigned to a specific Board employee under this policy, including but not limited to the functions assigned to the Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor, to any suitably qualified individual and such delegation may be rescinded by the Superintendent at any time.

**Discretion in Application**

The Board retains discretion to interpret and apply this policy in a manner that is not clearly unreasonable, even if the Board's interpretation or application differs from the interpretation of any specific Complainant and/or Respondent.

Despite the Board's reasonable efforts to anticipate all eventualities in drafting this policy, it is possible unanticipated or extraordinary circumstances may not be specifically or reasonably addressed by the express policy language, in which case the Board retains discretion to respond to the unanticipated or extraordinary circumstance in a way that is not clearly unreasonable.

The provisions of this policy are not contractual in nature, whether in their own right, or as part of any other express or implied contract. Accordingly, the Board retains discretion to revise this policy at any time, and for any reason. The Board may apply policy revisions to an active case provided that doing so is not clearly unreasonable.

BOE 101

© Neola 2020

Legal

R.C. 3313.207/208/209, 5104

20 U.S.C. 1681 et seq., Title IX of the Education Amendments of 1972 (Title IX)

20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

42 U.S.C. 2000c et seq., Title IV of the Civil Rights Act of 1964

42 U.S.C. 2000d et seq.

42 U.S.C. 2000e et seq.

42 U.S.C. 1983

34 C.F.R. Part 106

OCR's Revised Sexual Harassment Guidance (2001)

20 U.S.C. 1092(F)(6)(A)(v)

34 U.S.C. 12291(a)(10)

34 U.S.C. 12291(a)(8)

34 U.S.C. 12291(a)(30)

**Last Modified by Brittany Wiggins on May 20, 2021**

BOE 102



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | RELIGION IN THE CURRICULUM |
| Code | po2270 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

### 2270 - RELIGION IN THE CURRICULUM

Based on the First Amendment protection against the establishment of religion in the schools, no Board employee will promote religion in the classroom or in the District's curriculum, or compel or pressure any student to participate in devotional exercises. Displays of a religious character must conform with Policy 8800. Instructional activities shall not be permitted to advance or inhibit any particular religion or religion generally.

An understanding of religions and their effects on civilization is essential to the thorough education of young people and to their appreciation of a pluralistic society. To that end, curriculum may include as appropriate to the various ages and attainments of the students, instruction about the religions of the world.

The Board acknowledges the degree to which a religious consciousness has permeated the arts, literature, music, and issues of morality. The instructional and resource materials approved for use in the District's schools frequently contain religious references or concern moral issues that have traditionally been the focus of religious concern. That such materials may be religious in nature shall not, by itself, bar their use in the District. The Board directs that professional staff members employing such materials be neutral in their approach and avoid using them to advance or inhibit religion in any way.

The Board recognizes that religious traditions vary in their perceptions and doctrines regarding the natural world and its processes. The curriculum is chosen for its place in the education of the District's students, not for its conformity to religious principles. Students should receive unbiased instruction in the schools so they may privately accept or reject the knowledge thus gained, in accordance with their own religious tenets.

Accordingly, no student shall be exempted from attendance in a required course of study on the grounds that the instruction therein interferes with the free exercise of his/her religion. However, if after careful, personal review of the program's lessons and/or materials, a parent indicates to the school that either the content or activities conflict with his/her religious beliefs or value system, the school will honor a written request for his/her child to be excused from particular class periods for specified reasons. The student will be provided with alternate learning activities during the times of such parent requested absence.

No classroom teacher shall be prohibited from providing reasonable periods of time for activities of a moral, philosophical, or patriotic theme. No student shall be required to participate in such activities if they are contrary to the religious convictions of the student or his/her parents or guardians.

Students shall not be prohibited from engaging in religious expression in the completion of homework, artwork, or other written or oral assignments. Such assignments will be graded in the same manner as any other assignments. Students will neither be penalized nor rewarded based on the religious content of the student's work.

The Board acknowledges that it may not adopt any policy or rule respecting or promoting an establishment of religion or prohibiting any student from the free, individual, and voluntary exercise or expression of the student's religious beliefs.

See Reference: Policy 8800
See References: AGs 8800 A-C

Revised 2/9/15

© Neola 2020

| | |
|---|---|
| Legal | U.S. Const. Amend. 1 |
| | R.C. 3313.601, 3320.01, 3320.02, 3320.03 |

**Last Modified by Denise Gallagher on January 26, 2021**

BOE 103



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | STUDENT PRIVACY AND PARENTAL ACCESS TO INFORMATION |
| Code | po2416 |
| Status | Active |
| Adopted | March 10, 2008 |

**2416 - STUDENT PRIVACY AND PARENTAL ACCESS TO INFORMATION**

The Board of Education respects the privacy rights of parents and their children. No student shall be required, as a part of the school program or the District's curriculum, without prior written consent of the student (if an adult, or an emancipated minor) or, if an unemancipated minor, his/her parents, to submit to or participate in any survey, analysis, or evaluation that reveals information concerning:

    A. political affiliations or beliefs of the student or his/her parents;

    B. mental or psychological problems of the student or his/her family;

    C. sex behavior or attitudes;

    D. illegal, anti-social, self-incriminating or demeaning behavior;

    E. critical appraisals of other individuals with whom respondents have close family relationships;

    F. legally recognized privileged and analogous relationships, such as those of lawyers, physicians, and ministers;

    G. religious practices, affiliations, or beliefs of the student or his/her parents; or

    H. income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such a program).

The Superintendent shall require that procedures are established whereby parents may inspect any materials used in conjunction with any such survey, analysis, or evaluation.

Further, parents have the right to inspect, upon request, a survey or evaluation created by a third party before the survey/evaluation is administered or distributed by the school to the student. The parent will have access to the survey/evaluation within a reasonable period of time after the request is received by the building principal.

Additionally, parents have the right to inspect, upon request, any instructional material used as part of the educational curriculum of the student. The parent will have access to the instructional material within a reasonable period of time after the request is received by the building principal. The term instructional material means instructional content that is provided to a student, regardless of its format, including printed and representational materials, audio-visual materials, and materials in electronic or digital formats (such as materials accessible through the Internet). The term does not include academic tests or assessments.

The Board will not allow the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

The Superintendent is directed to provide notice directly to parents of students enrolled in the District of the substantive content of this policy at least annually at the beginning of the school year, and within a reasonable period of time after any substantive change in this policy. In addition, the Superintendent is directed to notify parents of students in the District, at least annually at the beginning of the school year, of the specific or approximate dates during the school year when the administration of any survey by a third party that contains one or more of the items described in A through H above are scheduled or expected to be scheduled.

For purposes of this policy, the term "parent" includes a legal guardian or other person standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child).

| | |
|---|---|
| Legal | A.C. 3301-35-02(C), 3301-35-01(D)(5) |
| | 20 U.S.C. 1232(g)(h) |

BOE 104



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | DISTRICT-SPONSORED CLUBS AND ACTIVITIES |
| Code | po2430 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |

**2430 - DISTRICT-SPONSORED CLUBS AND ACTIVITIES**

The Board of Education believes that the goals and objectives of this District are best achieved by a diversity of learning experiences, including those that are not conducted in a regular classroom but are directly related to the curriculum.

The purpose of curricular-related activities shall be to enable students to explore a wider range of individual interests than may be available in the District's courses of study but are still directly related to accomplishing the educational outcomes for students as adopted by the Board in Policy 2131.

For purposes of this policy, curricular-related activities are defined as those activities in which:

    A. the subject matter is actually taught or will be taught in a regularly offered course;

    B. the subject matter concerns the District's composite courses of study;

    C. participation is required for a particular course;

    D. participation results in academic credit.

No curricular-related activity shall be considered to be under the sponsorship of this Board unless it meets one or more of the criteria stated above and has been approved by the Superintendent.

Such activities, along with extra-curricular activities (not directly related to courses of study), may be conducted on or off school premises by clubs, associations, and organizations of students sponsored by the Board and directed by a staff advisor.

The Board shall allow nondistrict-sponsored, student clubs and activities during noninstructional time, in accordance with the provisions in Policy 5730 -- Equal Access For Nondistrict-Sponsored, Student Clubs and Activities.

Noncurricular student activities that are initiated by parents or other members of the community may be allowed under the provisions of Policy 7510 - Use of District Facilities. The Board, however will not:

    A. assume any responsibility for the planning, conducting, or evaluating of such activities;

    B. provide any funds or other resources;

    C. allow any member of the District's staff to assist in the planning, conducting, or evaluating of such an activity during the hours s/he is functioning as a member of the staff.

No nondistrict-sponsored organization may use the name of the School District or any other name which would associate an activity with the District.

In order to be eligible for any co-curricular, interscholastic and noninterscholastic extra-curricular activity, a student must have maintained at least a 2.0 grade-point average and must not have received more than one (1) failing grade in any course for the grading period prior to the grading period in which s/he wishes to participate. Students who are educated at home or enrolled in nonpublic schools are eligible to participate in accordance with Policy 9270. Students attending community or STEM schools may participate in extra-curricular activities in accordance with Policy 2430.02.

An exception may be made by the principal if the student has been participating in an intervention program and has shown satisfactory progress toward achieving the minimum grade-point average.

If a student who becomes ineligible under these standards improves his/her grade point average during the current grading period enough to meet the eligibility standard, s/he may be reinstated at the beginning of the next grading period.

Students identified as disabled under R.C. Chapter 3323 and the IDEA are subject to the eligibility standards established by this policy unless specifically exempted by the express terms of their individualized education program (IEP). An IEP can specify the criteria by which a grade will be determined for [a] course[s], given the individual student's disability.

Whenever a student becomes a member of a District-established student group or national organization such as National Honor Society, in order to remain a member, s/he must continue to meet all of the eligibility criteria and abide by the principles and practices established by the group or organization.

BOE 105

Case: 3:22-cv-00337-MJN-PBS Doc #: 16-3 Filed: 01/09/23 Page: 40 of 40  PAGEID #: 286

The Athletic Director and/or Principal shall require that each student athlete, who participates in either an interscholastic or intramural sport, submits Form 2431 F1 and Form 2431 F2 signed by the student and his/her parent or guardian, or by a person having care or charge of the student, affirming that each has received the Ohio Department of Health's concussion and head injury information sheet. The forms shall be signed and submitted on an annual basis. No student may practice or compete in interscholastic or intramural athletics until Form 2431 F1 and Form 2431 F2 are received by the Athletic Director or Principal. No student will be denied the opportunity to participate in interscholastic athletics offered by a school in the District because the student has or is participating in college credit plus program as long as the student fulfills all academic, nonacademic, and financial requirements.

Students shall be fully informed of the curricular-related and extra-curricular activities available to them and of the eligibility standards established for participation in these activities. Students will be further informed that participation in these activities is a privilege and not a right, and that they may be prohibited from all or part of their participation in such activities by authorized school personnel without further notice, hearing and/or appeal rights (See Policy 5610.05 - Prohibition from Extra-Curricular Activities). District- sponsored activities shall be available to all students who elect to participate and who meet eligibility standards.

The Superintendent shall prepare administrative guidelines to implement a program of curricular-related clubs and activities and of extra-curricular activities. Such guidelines should ensure that the needs and interests of the students are properly assessed and procedures are established for continuing evaluation of each club and activity.

Revised 12/8/14

**© Neola 2017**

Legal                          R.C. 3313.53, 3313.5341, 3313.537, 3313.539, 3313.664, 3315.062

                               A.C. 3301-35-03

BOE 106