Case: 3:22-cv-00337-MJN-PBS Doc #: 16-6 Filed: 01/09/23 Page: 1 of 51  PAGEID #: 376



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ENTRANCE REQUIREMENTS |
| Code | po5112 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | May 14, 2018 |

### 5112 - ENTRANCE REQUIREMENTS

The Board of Education establishes the following entrance age requirements for students, which are consistent with statute and sound educational practice, and directs that all eligible students be treated in an equitable manner.

**Kindergarten**

A child is eligible for entrance into kindergarten if s/he attains the age of five (5) on or before August 1st of the year in which s/he applies for entrance. The Board may admit a younger child to kindergarten if the child satisfies the Board's early entrance criteria. A child under age six (6) who is enrolled in kindergarten will be considered of compulsory school age.

The Board will admit to kindergarten any child who has not attained the entrance age requirement of this District, but who was properly enrolled in a public or chartered nonpublic school kindergarten before transferring to the District.

**First Grade**

A child is eligible for entrance into first grade if s/he attains the age of six (6) on or before August 1st of the year in which s/he applies for entrance. Any sutdent who has successfully completed kindergarten in accordance with R.C. 3321.019(B) shall b admitted to first grade.   The Board may admit to first grade a younger child if the child satisfies the Board's early entrance criteria.

**Required Documents**

The Superintendent shall require that each child who registers for entrance to school provide:

    A. his/her birth certificate or similar documentation authorized by law as proof of age and birthdate;

        Acceptable forms of documentation include: foreign birth certificate, religious, hospital, or physician's certificate showing date of birth, entry in family bible; baptismal record; adoption record, affidavit from a parent; previously verified school records, or other documents permitted by law.

    B. a certified copy of any custody order or decree together with any modification in such an order or decree.

If such documents are not provided, the child may be admitted under the Superintendent's guidelines. Appropriate law enforcement authorities shall be notified in the event that required documents are not provided in accordance with the provisions of R.C. 3313.672. However, a child who is placed in a foster home or residential facility (i.e., a group home for children, children's crisis care facility, children's residential center, residential parenting facility that provides twenty-four (24) hour child care, county children's home, or district children's home) will not be denied admission solely because the child does not present a birth certificate, comparable certification, or other comparable document upon registration. Such protected child will be admitted under temporary enrollment for a period of up to ninety (90) days to present the required documentation. The protected child and/or the child's parent, guardian, or custodian will be so informed at the time of the child's initial admission.

Each child entering the District's kindergarten or first grade program for the first time must be properly screened for any medical or health problems as well as those related to hearing, vision, speech and communications. The cost for such screenings shall be paid by the parents.

Any parent may provide the District with a written statement indicating that s/he does not wish to have his/her child screened.

**Early Entrance Criteria**

The District provides early admission to kindergarten and first grade for qualified students. Copies of the referral forms for evaluation for early entrance to kindergarten or first grade will be available in each school building. Any student residing in the District may be referred by an educator employed by the District, a preschool educator who knows the child, the child's parent or guardian, or a pediatrician or psychologist who knows the child. The referral shall be made to the principal of the school for evaluation for possible early admission.

Before a student is evaluated for early entrance, the principal (or his/her designee) of the school to which the child may be admitted shall obtain written permission from the child's parent/guardian.

Evaluations related to referrals submitted to the school principal between August 15th and April 15th, will ordinarily be completed and a written report issued within forty-five (45) calendar days of submission of the referral to the school principal. Evaluations related to referrals submitted to the school principal between April 16th and August 14th will ordinarily be completed and a written report issued within forty-five (45) days of the start of the school year.

BOE 196

(NOTE: To use the dates in this paragraph, your District's kindergarten sign up and screening process should occur between August 15th and April 15th. Be sure to consider whether these dates work in erms of your kindergarten sign up and screening process, and adjust the dates accordingly if necessary.)

Children referred for early entrance will be evaluated in a prompt manner. The principal of the school to which the child may be admitted shall convene an acceleration evaluation committee to determine whether early entrance is appropriate for that child. The acceleration evaluation committee shall include the following:

    A. a parent/legal guardian or a representative designated by the parent/guardian

    B. a gifted education coordinator or gifted education specialist, or, if neither is available, a school psychologist or a guidance counselor with expertise in the appropriate use of academic acceleration

    C. the principal or assistant principal of the school to which the child may be admitted

    D. a teacher at the grade level to which the student may be admitted

The acceleration evaluation committee shall be responsible for conducting a fair and thorough evaluation of the student. The acceleration evaluation committee will also consider the student's own thoughts on possible accelerated placement in its deliberations.

Children considered for early entrance shall be evaluated using an acceleration assessment process approved by the Ohio Department of Education.

A meeting will be conducted with the parent/guardian following the evaluation to inform him/her of the committee's decision and, if appropriate, to discuss the results of the evaluation and the nature of the kindergarten or first grade program.

The parent/guardian will be provided with a written summary of the outcome of the evaluation process. This notification shall include instructions for appealing the outcome of the evaluation process.

Appeals must be made in writing to the Superintendent within thirty (30) calendar days of the parent/guardian receiving the results of the evaluation. The Superintendent or his/her designee shall review the appeal and notify the parent/guardian of his/her decision  (not to exceed thirty (30)) calendar days of receiving the appeal. The Superintendent or his/her designee's decision will be final.

If a child is recommended for early entrance, the acceleration evaluation committee will develop a written acceleration plan for that child. The plan will specify:

    A. placement of the child in the accelerated setting;

    B. strategies to support successful early entrance; and

    C. an appropriate transition period for accelerated students.

A school staff member will be assigned to oversee the implementation of the acceleration plan and to monitor the child's adjustment to the early entrance.

At any time during the transition period, a parent/guardian of the child may request in writing that the child be withdrawn from the accelerated placement. In such cases, the principal shall remove the child without repercussions.

Also, at any time during the transition period, a parent/guardian may request in writing an alternative accelerated placement. In such cases, the principal shall direct the acceleration evaluation committee to consider other placement options and to issue a decision within(not to exceed  thirty (30)) calendar days of receiving the request. If the student will be placed in a different setting from that initially recommended, the acceleration plan shall be revised accordingly, and a new transition period shall be specified.

At the end of the transition period, the accelerated placement shall become permanent. The child's records shall be modified accordingly, and the acceleration plan shall become part of the student's permanent record to facilitate continuous progress through the curriculum.

Revised 4/12/10
Revised 6/10/13
Revised 2/9/15
Revised 3/14/16

**© Neola 2018**

Legal                        R.C. 3313.64, 3313.641, 3313.672, 3313.673, 3321.01 et seq., 3321.05, 3323.01

                                   R.C. 3324.10

BOE 197



| Book | Policy Manual |
| --- | --- |
| Section | 5000 Students |
| Title | ASSIGNMENT WITHIN DISTRICT |
| Code | po5120 |
| Status | Active |
| Adopted | March 10, 2008 |

**5120 - ASSIGNMENT WITHIN DISTRICT**

The Board of Education directs that the assignment of students to schools within this District be consistent with the best interests of students and the best use of the resources of this District.

The Board shall determine periodically the school attendance areas of the District and shall expect the students within each area to attend the school so designated.

The Superintendent shall periodically review existing attendance areas and recommend to the Board such changes as may be justified by:

    A. considerations of safe student transportation and travel;

    B. convenience of access to schools;

    C. financial and administrative efficiency;

    D. the effectiveness of the instructional program;

    E. a wholesome and educationally sound balance of student populations.

No assignment to schools or attendance schedules shall discriminate against students on the basis of gender, race, religion, disability, or national origin.

    A. The Superintendent may assign a student to a school other than that designated by the attendance area when such exception is justified by circumstances and is in the best interest of the student.

    B. The Superintendent shall assign incoming transfer students to such schools, grades, and classes as may afford each student the greatest likelihood of realizing fullest educational potential.

    C. The principal shall assign students in his/her school to appropriate grades, classes, or groups. This action shall be based on consideration of the needs of the student as well as the administration of the school.

| Legal | R.C. 3313.48, 3313.49, 3319.01 |
| --- | --- |

BOE 198



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | PERSONAL COMMUNICATION DEVICES |
| Code | po5136 |
| Status | Active |
| Adopted | March 10, 2008 |

### 5136 - PERSONAL COMMUNICATION DEVICES

While students may possess in school, on school property, during after school activities (e.g., extra-curricular activities) and at school-related functions, they must be powered completely off (i.e., not just placed into vibrate or silent mode) and stored out of sight during school hours.

Under certain circumstances, a student may keep his/her PCD "On" with prior approval from the building principal.

Except as authorized by a teacher, administrator or IEP team, students are prohibited from using PCDs during the school day, including while off-campus on a field trip, to capture, record and/or transmit the words or sounds (i.e., audio) and/or images (i.e., pictures/video) of any student, staff member or other person. Using a PCD to capture, record and/or transmit audio and/or pictures/video of an individual without proper consent is considered an invasion of privacy and is not permitted. Students who violate this provision and/or use a PCD to violate the privacy rights of another person may have their PCD confiscated and held until the end of the school day, or until a parent/guardian picks it up, and may be directed to delete the audio and/or picture/video file. If the violation involves potentially illegal activity the confiscated-PCD may be turned-over to law enforcement.

PCDs, including but not limited to those with cameras, may not be activated or utilized at any time in any school situation where a reasonable expectation of personal privacy exists. These locations and circumstances include, but are not limited to, classrooms, gymnasiums, locker rooms, shower facilities, rest/bathrooms, and any other areas where students or others may change clothes or be in any stage or degree of disrobing or changing clothes. The Superintendent and Principals are authorized to determine other specific locations and situations where use of a PCD is absolutely prohibited.

Students are expressly prohibited from using covert means to listen-in or make a recording (audio or video) of any meeting or activity at school.  This includes placing recording devices, or other devices with one- or two-way audio communication technology (i.e., technology that allows a person off-site to listen to live conversations and sounds taking place in the location where the device is located), within a student's book bag or on the student's person without express written consent of the Superintendent. Any requests to place a recording device or other device with one- or two-way audio communication technology within a student's book bag or on a student's person shall be submitted, in writing, to the Principal. The District representative shall notify the parent(s), in writing, whether such request is denied or granted within five (5) days.

Students shall have no expectation of confidentiality with respect to their use of PCDs on school premises/property.

Students may not use a PCD in any way that might reasonably create in the mind of another person an impression of being threatened, humiliated, harassed, embarrassed or intimidated. See Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using PCDs to: (1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, color, national origin, sex,**(including,** sexual orientation/transgender identity) , disability, age, religion, ancestry, or political beliefs: and (2) engage in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

Students are also prohibited from using a PCD to capture, record, and/or transmit test information or any other information in a manner constituting fraud, theft, cheating, or academic dishonesty. Likewise, students are prohibited from using PCDs to receive such information.

Possession of a PCD by a student at school during school hours and/ or during extra-curricular activities is a privilege that may be forfeited by any student who fails to abide by the terms of this policy, or otherwise abuses this privilege.

Violations of this policy may result in disciplinary action and/or confiscation of the PCD. The l Principal will also refer the matter to law enforcement or child services if the violation involves an illegal activity (e.g., child pornography, sexting). Discipline will be imposed on an escalating scale ranging from a warning to an expulsion based on the number of previous violations and/or the nature of or circumstances surrounding a particular violation. If the PCD is confiscated, it will be released/returned to the student's parent/guardian after the student complies with any other disciplinary consequences that are imposed, unless the violation involves potentially illegal activity in which case the PCD may be turned-over to law enforcement. A confiscated device will be marked in a removable manner with the student's name and held in a secure location in the building's central office until it is retrieved by the parent/guardian or turned-over to law enforcement. School officials will not search or otherwise tamper with PCDs in District custody unless they reasonably suspect that the search is required to discover evidence of a violation of the law or other school rules. Any search will be conducted in accordance with Policy 5771 – Search and Seizure. If multiple offenses occur, a student may lose his/her privilege to bring a PCD to school for a designated length of time or on a permanent basis.

A person who discovers a student using a PCD  recording device, or other device with one- or two-way audio communication technology in violation of this policy is required to report the violation to the Principal.

Students are personally and solely responsible for the care and security of their PCDs. The Board assumes no responsibility for theft, loss, or damage to, or misuse or unauthorized use of, PCDs brought onto its property.

Parents/Guardians are advised that the best way to get in touch with their child during the school day is by calling the school office.

BOE 199

Students may use school phones to contact parents/guardians during the school day.

Revised 7/13/09
Revised 6/10/13
Revised 2/9/15

**© Neola 2017**

BOE 200



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ELECTRONIC EQUIPMENT |
| Code | po5136.01 |
| Status | Active |
| Adopted | July 13, 2009 |
| Last Revised | November 6, 2017 |

**5136.01 - ELECTRONIC EQUIPMENT**

While in some instances that possession and use of electronic equipment or devices by a student at school may be appropriate, often the possession and use of such equipment or devices by students at school can have the effect of distracting, disrupting and/or intimidating others in the school environment and leading to opportunities for academic dishonesty and other disruptions of the educational process. Consequently, the Board of Education will supply any electronic equipment or devices necessary for participation in the educational program. Students shall not use or possess any electronic equipment or devices on school property or at any school-sponsored activity without the permission of the principal.

Examples of prohibited devices include, but are not limited to , laptops, tablets (e.g., iPad-like devices), e-readers (e.g., Kindle-like devices , lasers, laser pens or pointers, recording devices, or other devices with one- or two-way audio communication technology, or devices designed to capture the school's or another student's password or personal information.

Distracting behavior that creates an unsafe environment will not be tolerated.

The preceding prohibitions do not apply to Board-owned and issued laptops, tablets, e-readers, PDAs, or authorized assistive technology devices.

Students are prohibited from using electronic equipment or devices in a manner that may be physically harmful to another person (e.g. shining a laser in the eyes of another student). Further, at no time may any camera or other electronic equipment/device be utilized by a student in a way that might reasonably create in the mind of another person an impression of being threatened, humiliated, harassed, embarrassed, or intimidated. See Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using a camera or other electronic equipment/device to: 1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, national origin, sex, (including sexual orientation/transgender identity), age, disability, religion, or political beliefs: and 2) send, share, view or possess pictures, text messages, e-mails or other materials of a sexual nature (i.e., sexting) in electronic or any other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

Students are prohibited from using cameras and other electronic equipment/devices to capture record or transmit test, information or any other information in a manner constituting fraud, theft, or academic dishonesty. Similarly, students are prohibited from using cameras and other electronic equipment and devices to capture record or transmit the words (i.e. audio) and/or images (i.e. pictures/video) of any student, staff member or other person in the school or while attending a school-related activity, without express prior notice and explicit consent for the capture and/or recording of such words or images. Using a camera or other electronic equipment/devices to capture record or transmit audio and/or pictures/video of an individual without his/her consent is considered an invasion of privacy and is not permitted, unless authorized by the building principal. Cameras and electronic equipment/devices are expressly banned from and may not be possessed, activated, or utilized at any time in any school situation where a reasonable expectation of personal privacy exists. These locations and circumstances include but are not limited to locker rooms, shower facilities, restrooms, classrooms, and any other areas where students or others may change clothes or be in any stage or degree of disrobing or changing clothes. The building principal has authority to make determinations as to other specific locations and situations where possession of a camera or other electronic equipment/device is absolutely prohibited.

Unauthorized electronic equipment and devices will be confiscated from the student by school personnel and disciplinary action taken.

Any electronic equipment/device confiscated by District staff will be marked in a removable manner with the student's name and held in a secure location in the building's central office until it is retrieved by the parent/guardian. Electronic equipment/devices in District custody will not be searched or otherwise tampered with unless school officials reasonably suspect that the search is required to discover evidence of a violation of the law or other school rules (e.g. a student is observed using a camera in a prohibited area). Any search will be conducted in accordance with Policy 5771 - Search and Seizure.

Students are personally and solely responsible for the care and security of any electronic equipment or devices they bring to school. The Board assumes no responsibility for theft, loss, damage, or vandalism to electronic equipment and devices brought onto its property, or the unauthorized use of such devices.

**© Neola 2017**

BOE 201



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ATTENDANCE |
| Code | po5200 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 13, 2021 |

5200 - **ATTENDANCE**

The educational program offered by this District is predicated upon the presence of the student and requires continuity of instruction and classroom participation. Attendance shall be required of all students enrolled in the schools during the days and hours that the school is in session or during the attendance sessions to which s/he has been assigned.

A student in grades 9 through 12 may be considered a full-time equivalent student provided the student is enrolled in at least five (5) units of instruction, as defined by State law, per school year.

In accordance with statute, the Superintendent shall require, from the parent of each student of compulsory school age or from an adult student who has been absent from school or from class for any reason, a statement of the cause for such absence. The Board of Education reserves the right to verify such statements and to investigate the cause of each single absence or prolonged absence.

The Board considers the following factors to be reasonable excuses for time missed at school:

    A. personal illness (a written physician's statement verifying the illness may be required)

    B. appointment with a health care provider

    C. illness in the family necessitating the presence of the child

    D. quarantine of the home

    E. death in the family

    F. necessary work at home due to absence or incapacity of parent(s)/guardian(s)

    G. observation or celebration of a bona fide religious holiday

    H. out-of-state travel (up to a maximum twenty-four (24) hours per school year that the student's school is open for instruction) to participate in a District-approved enrichment or extracurricular activity

       Any classroom assignment missed due to the absence shall be completed by the student.

       If the student will be absent for twenty-four (24) or more consecutive hours that the student's school is open for instruction, a classroom teacher shall accompany the student during the travel period to provide the student with instructional assistance.

    I. such good cause as may be acceptable to the Superintendent

    J. medically necessary leave for a pregnant student in accordance with Policy 5751

    K. service as a precinct officer at a primary, special or general election in accordance with the program set forth in Policy 5725

    L. college visitation

    M. absences due to a student's placement in foster care or change in foster care placement or any court proceedings related to their foster care status

    N. absences due to a student being homeless

Attendance need not always be within the school facilities, but a student will be considered to be in attendance if present at any place where school is in session by authority of the Board.

The Board shall consider each student assigned to a program of other guided learning experiences to be in regular attendance for the program provided that s/he reports to such staff member s/he is assigned for guidance at the place in which s/he is conducting study, and regularly demonstrates progress toward the objectives of the course of study.

Attendance shall be taken at the beginning of every block/period in buildings with block/period-based scheduling. Absences from a class block/period shall be

accounted for to the nearest full hour.

Attendance shall be taken at the commencement of the school day in buildings with non-period-based schedules. Attendance for students arriving late or leaving early must be tracked and recorded to the nearest full hour.

**Contacting the Parent/Guardian of an Absent Student**

When a parent, guardian, or other person having care of a student has failed to initiate a telephone call or other communication notifying the school or building administration of the student's excused or unexcused absence within 120 minutes after the beginning of the school day, the attendance officer or designee for each school building shall make at least one (1) attempt to contact the parent, guardian, or other person having care of any student who is recorded as absent without legitimate excuse within 120 minutes after the beginning of each school day by a method designated by the Superintendent in accordance with Ohio law (see AG 5200).

**Excessive Absences**

When a student of compulsory school age is absent from school with combined nonmedical excused absences and unexcused absences in excess of thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year, that student is considered "excessively absent" from school. The District or school shall notify the child's parent or guardian of the child's absences, in writing, within seven (7) school days after the date of the absence that triggered the notice requirement. At the same time written notice is given, any appropriate intervention action listed herein may be taken.

The following "medical excuses" will not count toward a student's excessive absence hours: 1) personal illness; 2) illness in the family necessitating the presence of the child; 3) quarantine of the home; 4) health care provider appointments (doctor, dentist, mental health provider, etc.); 5) medically-necessary leave for a pregnant student in accordance with Policy 5751; 6) death in the family; or 7) other set of circumstances the Superintendent deems on a case-by-case basis to be a good and sufficient cause for medical absence from school.

A medically excused absence occurs any time a student is out of school due to illness or medical visit (physician, dentist, mental health, etc.). A medical excuse for personal illness will be accepted in the form of doctor's note within five (5) school days of the absence or parent call-in on the day of the absence due to illness or doctor's visit. A student may have up to ten (10) medically excused absences without a doctor's note, but with a phone call from a parent/guardian. Medical excuse absences will be accepted through this process for students participating both in-person and remotely. This policy will be extended beyond ten (10 ) days if the student or someone in the student's family is in quarantine due to recognized pandemic/epidemic (e.g., COVID-19) or experiencing symptoms of the pandemic/epidemic.

**Habitually Truant**

A student will be considered habitually truant if the student is of compulsory school age and absent without a legitimate excuse for thirty (30) or more consecutive hours, for forty-two (42) or more hours in one (1) school month, or for seventy-two (72) or more hours in one (1) school year.

Legitimate excuses for the absence of a student who is otherwise habitually truant include but are not limited to:

    A. the student was enrolled in another school district;

    B. the student was excused from attendance in accordance with R.C 3321.04; or

    C. the student has received an age and schooling certificate.

**Absence Intervention Team**

To the extent required by law as determined on an annual basis, within ten (10) days of a student becoming habitually truant, the Principal shall assign the student to an absence intervention team.

Within fourteen (14) school days after the assignment of a student to an absence intervention team, the team shall develop an intervention plan for that student in an effort to reduce or eliminate further absences. Each intervention plan shall vary based on the individual needs of the student, but the plan shall state that the attendance officer shall file a complaint not later than sixty-one (61) days after the date the plan was implemented, if the child has refused to participate in, or failed to make satisfactory progress on, the intervention plan. Within seven (7) school days after the development of the plan, reasonable efforts shall be made to provide the student's parent/guardian/custodian, with written notice of the plan.

Each absence intervention team may vary based on the needs of each individual student but shall include a representative from the child's building, another representative from the child's building who knows the child, and the child's parent or parent's designee, or the child's guardian, custodian, guardian ad litem, or temporary custodian. The team also may include a counselor.

The members of the absence intervention team shall be selected within seven (7) school days of the student meeting the habitually truant threshold. Within the same period of seven (7) school days, the Principal shall make at least three (3) meaningful, good faith attempts to secure the participation of the student's parent/guardian/custodian, guardian ad litem, or temporary custodian on that team. A good faith attempt to secure the participation of the parent shall include, but not be limited to, contacting (or attempting to contact) the parent by telephone, email, or regular mail. If the student's parent responds to any of those attempts but is unable to participate for any reason, the Principal shall inform the parent of the parent's right to appear by designee. If seven (7) school days elapse and the student's parent/guardian/custodian, guardian ad litem, or temporary custodian fails to respond to the attempts to secure participation, the attendance officer shall investigate whether the failure to respond triggers mandatory abuse or neglect reporting to the public children services agency. At the same time, the absence intervention team shall continue to develop an intervention plan for the child notwithstanding the absence of the child's parent/guardian/custodian, guardian ad litem, or temporary custodian.

In order to address the attendance practices of a student who is habitually truant, the intervention team may, as part of an intervention plan, to take any of the following intervention actions:

    A. provide counseling to the student

    B. request or require the student's parent to attend a parental involvement program

    C. request or require a parent to attend a truancy prevention mediation program

    D. notify the Registrar of Motor Vehicles of the student's absences

BOE 203

E. take appropriate legal action

F. assignment to an alternative school (Note: If the District has established an alternative school, it must appear as an alternative intervention strategy.)

In the event that a student becomes habitually truant within twenty-one (21) school days prior to the last day of instruction of a school year, the Principal may, in his/her discretion, assign Truancy Officer (one school official) to work with the child's parent/guardian/custodian, guardian ad litem, or temporary custodian to develop an absence intervention plan during the summer.

The absence intervention process shall commence upon the first day of instruction of the next school year.

**Reporting Requirements**

The attendance officer shall file a complaint in the juvenile court against a student on the sixty-first (61st) day after the implementation of an absence intervention plan or other intervention strategies, provided that all of the following apply:

A. the student is habitually truant.

B. the school district or school has made meaningful attempts to re-engage the student through the absence intervention plan, other intervention strategies, and any offered alternatives to adjudication, if applicable.

If the student, at any time during the implementation phase of the absence intervention plan or other intervention strategies, is absent without legitimate excuse for thirty (30) or more consecutive hours or forty-two (42) or more hours in one school month, the attendance officer shall file a complaint in juvenile court against that student, unless the absence intervention team has determined that the student has made substantial progress on the absence intervention plan.

In the event that the sixty-first (61st) day after the implementation of the absence intervention plan or other intervention strategies falls on a day during the summer months, the absence intervention team may extend the implementation of the plan and delay the filing of the complaint for an additional thirty (30) days from the first day of instruction of the next school year.

The Superintendent is authorized to establish an educational program for parents of truant students which is designed to encourage parents to ensure that their children attend school regularly. Any parent who does not complete the program is to be reported to law enforcement authorities for parental education neglect, a fourth class misdemeanor if found guilty.

Whenever any student of compulsory school age has sixty (60) consecutive hours in a single month or a total of ninety (90) hours of unexcused absence from school during the school year, s/he will be considered habitually absent under R.C. 3321.13(b)(2). The Board authorizes the Superintendent to inform the student and his/her parents, guardian, or custodian of the record of absences without a legitimate excuse as well as the District's intent to notify the Registrar of Motor Vehicles, if appropriate, and the Judge of the Juvenile Court of the student's unexcused absence and habitually absent status.

If a student who is habitually truant violates the order of a juvenile court regarding the student's prior adjudication as an unruly child for being a habitual truant, s/he may further be adjudicated as a delinquent child.

The District shall report to the Ohio Department of Education, as soon as practicable, and in a format and manner determined by the Department, any of the following occurrences:

A. when a notice that a student has been absent with or without legitimate excuse for thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year is submitted to a parent/guardian/or custodian;

B. when a child of compulsory school age has been absent without legitimate excuse from the public school the child is supposed to attend for thirty (30) or more consecutive hours, forty-two (42) or more hours in one school month, or seventy-two (72) or more hours in a school year;

C. when a child of compulsory school age who has been adjudicated an unruly child for being a habitual truant violates the court order regarding that adjudication;

D. when an absence intervention plan has been implemented for a child under this policy.

This policy was developed after consultation with the judge of the juvenile court of Miami County/Counties, with the parents, guardians, or other persons having care of the students attending school in the district, and with appropriate State and local agencies.

**Tracking Remote Attendance**

Consistent with the District's remote learning plan (e.g., Blended Learning, On-Line Learning, etc.), the District will provide a variety of instruction models, including both teacher-led remote learning and self-directed remote learning.

Student attendance in teacher-led remote learning (synchronous web-based instruction) shall be tracked in the same manner as hourly, in-person instruction. Teachers shall determine hourly attendance by evidence of student login and logoff data. Teachers are encouraged to verify meaningful attendance in a method selected by the teacher, such as an ungraded quiz at the close of a lesson, a survey or poll questions (unrelated to the lesson and unpredictable) at the end of the lesson, or asking students questions at random throughout a session.

In addition to the reasons listed at the beginning of this policy, absences from teacher-led remote learning (synchronous web-based instruction) may be considered excused under the following circumstances, with notice from a parent/guardian:

A. temporary internet outage for individual students or households;

B. unexpected technical difficulties for individual students or households, such as password resets or software upgrades occurring during a teacher-led remote learning lesson;

C. computer/device malfunction;

D. malfunction of a District-owned device for which the District is providing technical assistance, repair, or replacement.

Attendance in self-directed remote learning (asynchronous) shall be tracked by evidence of participation, which may include, but is not limited to:

BOE 204

A. daily logins to learning management systems:

B. daily interactions with the teacher to acknowledge attendance, which may include, but are not limited to, messages, emails, telephone calls, video chats, or other formats that enable teachers to engage with students; and

C. assignment completion.

The teacher will determine the number of hours a typical student would take to complete an assignment and report those hours of attendance when the assignment is completed. A teacher may adjust the number of hours of attendance based on the length of time the student actually spent on the assignment, as reported by the student, parent, or other person with knowledge.

Revised 4/12/10
Revised 6/30/11
Revised 3/14/16
Revised 4/10/17
Revised 11/6/17
Revised 1/4/18
Revised 11/26/19
Revised 1/11/21

**© Neola 2021**

Legal                    R.C. 2151.011, 3313.668, 3317.034, 3321.01 et seq., 3321.13(B)(2), 3321.19, 3321.191

                         R.C. 3321.22, 3321.38, 3323.041

                         A.C. 3301-35-03, 3301-47-01, 3301-69-02

BOE 205



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ATTENDANCE |
| Code | po5200 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |
| Retired | December 13, 2021 |

### 5200 - **ATTENDANCE**

The educational program offered by this District is predicated upon the presence of the student and requires continuity of instruction and classroom participation. Attendance shall be required of all students enrolled in the schools during the days and hours that the school is in session or during the attendance sessions to which s/he has been assigned.

A student in grades 9 through 12 may be considered a full-time equivalent student provided the student is enrolled in at least five (5) units of instruction, as defined by State law, per school year.

In accordance with statute, the Superintendent shall require, from the parent of each student of compulsory school age or from an adult student who has been absent from school or from class for any reason, a statement of the cause for such absence. The Board of Education reserves the right to verify such statements and to investigate the cause of each single absence or prolonged absence.

The Board considers the following factors to be reasonable excuses for time missed at school:

    A. personal illness (a written physician's statement verifying the illness may be required)

    B. appointment with a health care provider

    C. illness in the family necessitating the presence of the child

    D. quarantine of the home

    E. death in the family

    F. necessary work at home due to absence or incapacity of parent(s)/guardian(s)

    G. observation or celebration of a bona fide religious holiday

    H. out-of-state travel (up to a maximum twenty-four (24) hours per school year that the student's school is open for instruction) to participate in a District-approved enrichment or extracurricular activity

       Any classroom assignment missed due to the absence shall be completed by the student.

       If the student will be absent for twenty-four (24) or more consecutive hours that the student's school is open for instruction, a classroom teacher shall accompany the student during the travel period to provide the student with instructional assistance.

    I. such good cause as may be acceptable to the Superintendent

    J. medically necessary leave for a pregnant student in accordance with Policy 5751

    K. service as a precinct officer at a primary, special or general election in accordance with the program set forth in Policy 5725

Attendance need not always be within the school facilities, but a student will be considered to be in attendance if present at any place where school is in session by authority of the Board.

The Board shall consider each student assigned to a program of other guided learning experiences to be in regular attendance for the program provided that s/he reports to such staff member s/he is assigned for guidance at the place in which s/he is conducting study, and regularly demonstrates progress toward the objectives of the course of study.

BOE 206

1/9/23, 1:26 PM

boarddocs.com

Attendance shall be taken at the beginning of every block/period in buildings with block/period-based scheduling. Absences from a class block/period shall be accounted for to the nearest full hour.

Attendance shall be taken at the commencement of the school day in buildings with non-period-based schedules. Attendance for students arriving late or leaving early must be tracked and recorded to the nearest full hour.

**Contacting the Parent/Guardian of an Absent Student**

When a parent, guardian, or other person having care of a student has failed to initiate a telephone call or other communication notifying the school or building administration of the student's excused or unexcused absence within 120 minutes after the beginning of the school day, the attendance officer or designee for each school building shall make at least one (1) attempt to contact the parent, guardian, or other person having care of any student who is recorded as absent without legitimate excuse within 120 minutes after the beginning of each school day by a method designated by the Superintendent in accordance with Ohio law (see AG 5200).

**Excessive Absences**

When a student of compulsory school age is absent from school with combined nonmedical excused absences and unexcused absences in excess of thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year, that student is considered "excessively absent" from school. The District or school shall notify the child's parent or guardian of the child's absences, in writing, within seven (7) school days after the date of the absence that triggered the notice requirement. At the same time written notice is given, any appropriate intervention action listed herein may be taken.

The following "medical excuses" will not count toward a student's excessive absence hours: 1) personal illness; 2) illness in the family necessitating the presence of the child; 3) quarantine of the home; 4) health care provider appointments (doctor, dentist, mental health provider, etc.); 5) medically-necessary leave for a pregnant student in accordance with Policy 5751; 6) death in the family; or 7) other set of circumstances the Superintendent deems on a case-by-case basis to be a good and sufficient cause for medical absence from school.

A medically excused absence occurs any time a student is out of school due to illness or medical visit (physician, dentist, mental health, etc.). A medical excuse for personal illness will be accepted in the form of doctor's note within five (5) school days of the absence or parent call-in on the day of the absence due to illness or doctor's visit. A student may have up to ten (10) medically excused absences without a doctor's note, but with a phone call from a parent/guardian. For the 2020-2021, medical excuse absences will be accepted through this process for students participating both in-person and remotely. This policy will be extended beyond ten (10) days if the student or someone in the student's family is in quarantine due to recognized pandemic/epidemic (e.g., COVID-19) or experiencing symptoms of the pandemic/epidemic.

**Habitually Truant**

A student will be considered habitually truant if the student is of compulsory school age and absent without a legitimate excuse for thirty (30) or more consecutive hours, or for forty-two (42) or more hours in one (1) school month, or for seventy-two (72) or more hours in one (1) school year.

Legitimate excuses for the absence of a student who is otherwise habitually truant include but are not limited to:

    A. the student was enrolled in another school district;

    B. the student was excused from attendance in accordance with R.C 3321.04; or

    C. the student has received an age and schooling certificate.

**Absence Intervention Team**

To the extent required by law as determined on an annual basis, within ten (10) days of a student becoming habitually truant, the Principal shall assign the student to an absence intervention team.

Within fourteen (14) school days after the assignment of a student to an absence intervention team, the team shall develop an intervention plan for that student in an effort to reduce or eliminate further absences. Each intervention plan shall vary based on the individual needs of the student, but the plan shall state that the attendance officer shall file a complaint not later than sixty-one (61) days after the date the plan was implemented, if the child has refused to participate in, or failed to make satisfactory progress on, the intervention plan. Within seven (7) school days after the development of the plan, reasonable efforts shall be made to provide the student's parent/guardian/custodian, with written notice of the plan.

Each absence intervention team may vary based on the needs of each individual student but shall include a representative from the child's building, another representative from the child's building who knows the child, and the child's parent or parent's designee, or the child's guardian, custodian, guardian ad litem, or temporary custodian. The team also may include a counselor.

The members of the absence intervention team shall be selected within seven (7) school days of the student meeting the habitually truant threshold. Within the same period of seven (7) school days, the Principal shall make at least three (3) meaningful, good faith attempts to secure the participation of the student's parent/guardian/custodian, guardian ad litem, or temporary custodian on that team. A good faith attempt to secure the participation of the parent shall include, but not be limited to, contacting (or attempting to contact) the parent by telephone, email, or regular mail. If the student's parent responds to any of those attempts but is unable to participate for any reason, the Principal shall inform the parent of the parent's right to appear by designee. If seven (7) school days elapse and the student's parent/guardian/custodian, guardian ad litem, or temporary custodian fails to respond to the attempts to secure participation, the attendance officer shall investigate whether the failure to respond triggers mandatory abuse or neglect reporting to the public children services agency. At the same time, the absence intervention team shall continue to develop an intervention plan for the child notwithstanding the absence of the child's parent/guardian/custodian, guardian ad litem, or temporary custodian.

In order to address the attendance practices of a student who is habitually truant, the intervention team may, as part of an intervention plan, to take any of the following intervention actions:

    A. provide counseling to the student

BOE 207

B. request or require the student's parent to attend a parental involvement program

C. request or require a parent to attend a truancy prevention mediation program

D. notify the Registrar of Motor Vehicles of the student's absences

E. take appropriate legal action

F. assignment to an alternative school (Note: If the District has established an alternative school, it must appear as an alternative intervention strategy.)

In the event that a student becomes habitually truant within twenty-one (21) school days prior to the last day of instruction of a school year, the Principal may, in his/her discretion, assign Truancy Officer (one school official) to work with the child's parent/guardian/custodian, guardian ad litem, or temporary custodian to develop an absence intervention plan during the summer.

The absence intervention process shall commence upon the first day of instruction of the next school year.

**Reporting Requirements**

The attendance officer shall file a complaint in the juvenile court against a student on the sixty-first (61st) day after the implementation of an absence intervention plan or other intervention strategies, provided that all of the following apply:

A. the student is habitually truant.

B. the school district or school has made meaningful attempts to re-engage the student through the absence intervention plan, other intervention strategies, and any offered alternatives to adjudication, if applicable.

If the student, at any time during the implementation phase of the absence intervention plan or other intervention strategies, is absent without legitimate excuse for thirty (30) or more consecutive hours or forty-two (42) or more hours in one school month, the attendance officer shall file a complaint in juvenile court against that student, unless the absence intervention team has determined that the student has made substantial progress on the absence intervention plan.

In the event that the sixty-first (61st) day after the implementation of the absence intervention plan or other intervention strategies falls on a day during the summer months, the absence intervention team may extend the implementation of the plan and delay the filing of the complaint for an additional thirty (30) days from the first day of instruction of the next school year.

The Superintendent is authorized to establish an educational program for parents of truant students which is designed to encourage parents to ensure that their children attend school regularly. Any parent who does not complete the program is to be reported to law enforcement authorities for parental education neglect, a fourth class misdemeanor if found guilty.

Whenever any student of compulsory school age has sixty (60) consecutive hours in a single month or a total of ninety (90) hours of unexcused absence from school during the school year, s/he will be considered habitually absent under R.C. 3321.13(b)(2). The Board authorizes the Superintendent to inform the student and his/her parents, guardian, or custodian of the record of absences without a legitimate excuse as well as the District's intent to notify the Registrar of Motor Vehicles, if appropriate, and the Judge of the Juvenile Court of the student's unexcused absence and habitually absent status.

If a student who is habitually truant violates the order of a juvenile court regarding the student's prior adjudication as an unruly child for being a habitual truant, s/he may further be adjudicated as a delinquent child.

The District shall report to the Ohio Department of Education, as soon as practicable, and in a format and manner determined by the Department, any of the following occurrences:

A. when a notice that a student has been absent with or without legitimate excuse for thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year is submitted to a parent/guardian/or custodian;

B. when a child of compulsory school age has been absent without legitimate excuse from the public school the child is supposed to attend for thirty (30) or more consecutive hours, forty-two (42) or more hours in one school month, or seventy-two (72) or more hours in a school year;

C. when a child of compulsory school age who has been adjudicated an unruly child for being a habitual truant violates the court order regarding that adjudication;

D. when an absence intervention plan has been implemented for a child under this policy.

This policy was developed after consultation with the judge of the juvenile court of Miami County/Counties, with the parents, guardians, or other persons having care of the students attending school in the district, and with appropriate State and local agencies.

**Tracking Remote Attendance for the 2020-2021 School Year**

Consistent with the Remote Learning Plan submitted to the Ohio Department of Education, the District will provide a variety of instruction models, including both teacher-led remote learning and self-directed remote learning.

Student attendance in teacher-led remote learning (synchronous web-based instruction) shall be tracked in the same manner as hourly, in-person instruction. Teachers shall determine hourly attendance by evidence of student login and logoff data. Teachers are encouraged to verify meaningful attendance in a method selected by the teacher, such as an ungraded quiz at the close of a lesson, a survey or poll questions (unrelated to the lesson and unpredictable) at the end of the lesson, or asking students questions at random throughout a session.

BOE 208

In addition to the reasons listed at the beginning of this policy, absences from teacher-led remote learning (synchronous web-based instruction) may be considered excused under the following circumstances, with notice from a parent/guardian:

    A. temporary internet outage for individual students or households;

    B. unexpected technical difficulties for individual students or households, such as password resets or software upgrades occurring during a teacher-led remote learning lesson;

    C. computer/device malfunction;

    D. malfunction of a District-owned device for which the District is providing technical assistance, repair, or replacement.

Attendance in self-directed remote learning (asynchronous) shall be tracked by evidence of participation, which may include, but is not limited to:

    A. daily logins to learning management systems;

    B. daily interactions with the teacher to acknowledge attendance, which may include, but are not limited to, messages, emails, telephone calls, video chats, or other formats that enable teachers to engage with students; and

    C. assignment completion.

    The teacher will determine the number of hours a typical student would take to complete an assignment and report those hours of attendance when the assignment is completed. A teacher may adjust the number of hours of attendance based on the length of time the student actually spent on the assignment, as reported by the student, parent, or other person with knowledge.

Revised 4/12/10
Revised 6/30/11
Revised 3/14/16
Revised 4/10/17
Revised 11/6/17
Revised 11/26/19

**© Neola 2020**

Legal                R.C. 3313.664, 3313.668, 3317.034, 3321.01 et seq., 3321.13(B)(2), 3321.19, 3321.191

                      R.C. 3321.22, 3321.38, 3323.041, 3331.05

                      A.C. 3301-35-03(G), 3301-47-01, 3301-69-02

**Last Modified by Kayla Reichley on March 1, 2022**

BOE 209



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ATTENDANCE |
| Code | po5200 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | November 26, 2019 |
| Retired | January 11, 2021 |

### 5200 - **ATTENDANCE**

The educational program offered by this District is predicated upon the presence of the student and requires continuity of instruction and classroom participation. Attendance shall be required of all students enrolled in the schools during the days and hours that the school is in session or during the attendance sessions to which s/he has been assigned.

A student in grades 9 through 12 may be considered a full-time equivalent student provided the student is enrolled in at least five (5) units of instruction, as defined by State law, per school year.

In accordance with statute, the Superintendent shall require, from the parent of each student of compulsory school age or from an adult student who has been absent from school or from class for any reason, a statement of the cause for such absence. The Board of Education reserves the right to verify such statements and to investigate the cause of each single absence or prolonged absence.

The Board considers the following factors to be reasonable excuses for time missed at school:

    A. personal illness (a written physician's statement verifying the illness may be required)

    B. illness in the family (the absence under this condition shall not apply to children under fourteen (14) years of age)

    C. quarantine of the home

    D. death in the family

    E. necessary work at home due to absence or incapacity of parent(s)/guardian(s)

    F. observation or celebration of a bona fide religious holiday

    G. out-of-state travel (up to a maximum twenty-four (24) hours per school year that the student's school is open for instruction) to participate in a District-approved enrichment or extracurricular activity

       Any classroom assignment missed due to the absence shall be completed by the student.

       If the student will be absent for twenty-four (24) or more consecutive hours that the student's school is open for instruction, a classroom teacher shall accompany the student during the travel period to provide the student with instructional assistance.

    H. such good cause as may be acceptable to the Superintendent

    I. medically necessary leave for a pregnant student in accordance with Policy 5751

    J. service as a precinct officer at a primary, special or general election in accordance with the program set forth in Policy 5725

Attendance need not always be within the school facilities, but a student will be considered to be in attendance if present at any place where school is in session by authority of the Board.

The Board shall consider each student assigned to a program of other guided learning experiences to be in regular attendance for the program provided that s/he reports to such staff member s/he is assigned for guidance at the place in which s/he is conducting study, and regularly demonstrates progress toward the objectives of the course of study.

Attendance shall be taken at the beginning of every block/period in buildings with block/period-based scheduling. Absences from a class block/period shall be accounted for to the nearest full hour.

BOE 210

BoardDocs®

Attendance shall be taken at the commencement of the school day in buildings with non-period-based schedules. Attendance for students arriving late or leaving early must be tracked and recorded to the nearest full hour.

**Contacting the Parent/Guardian of an Absent Student**

When a parent, guardian, or other person having care of a student has failed to initiate a telephone call or other communication notifying the school or building administration of the student's excused or unexcused absence within 120 minutes after the beginning of the school day, the attendance officer or designee for each school building shall make at least one (1) attempt to contact the parent, guardian, or other person having care of any student who is recorded as absent without legitimate excuse within 120 minutes after the beginning of each school day by a method designated by the Superintendent in accordance with Ohio law (see AG 5200).

**Excessive Absences**

When a student of compulsory school age is absent from school with combined nonmedical excused absences and unexcused absences in excess of thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year, that student is considered "excessively absent" from school. The District or school shall notify the child's parent or guardian of the child's absences, in writing, within seven (7) school days after the date of the absence that triggered the notice requirement. At the same time written notice is given, any appropriate intervention action listed herein may be taken.

A student will be considered habitually truant if the student is of compulsory school age and absent without a legitimate excuse for thirty (30) or more consecutive hours, for forty-two (42) or more hours in one (1) school month, or for seventy-two (72) or more hours in one (1) school year.

Legitimate excuses for the absence of a student who is otherwise habitually truant include but are not limited to:

    A. the student was enrolled in another school district;

    B. the student was excused from attendance in accordance with R.C 3321.04; or

    C. the student has received an age and schooling certificate.

**Absence Intervention Team**

To the extent required by law as determined on an annual basis, within ten (10) days of a student becoming habitually truant, the Principal shall assign the student to an absence intervention team.

Within fourteen (14) school days after the assignment of a student to an absence intervention team, the team shall develop an intervention plan for that student in an effort to reduce or eliminate further absences. Each intervention plan shall vary based on the individual needs of the student, but the plan shall state that the attendance officer shall file a complaint not later than sixty-one (61) days after the date the plan was implemented, if the child has refused to participate in, or failed to make satisfactory progress on, the intervention plan. Within seven (7) school days after the development of the plan, reasonable efforts shall be made to provide the student's parent/guardian/custodian, with written notice of the plan.

Each absence intervention team may vary based on the needs of each individual student but shall include a representative from the child's building, another representative from the child's building who knows the child, and the child's parent or parent's designee, or the child's guardian, custodian, guardian ad litem, or temporary custodian. The team also may include a counselor.

The members of the absence intervention team shall be selected within seven (7) school days of the student meeting the habitually truant threshold. Within the same period of seven (7) school days, the Principal shall make at least three (3) meaningful, good faith attempts to secure the participation of the student's parent/guardian/custodian, guardian ad litem, or temporary custodian on that team. A good faith attempt to secure the participation of the parent shall include, but not be limited to, contacting (or attempting to contact) the parent by telephone, email, or regular mail. If the student's parent responds to any of those attempts but is unable to participate for any reason, the Principal shall inform the parent of the parent's right to appear by designee. If seven (7) school days elapse and the student's parent/guardian/custodian, guardian ad litem, or temporary custodian fails to respond to the attempts to secure participation, the attendance officer shall investigate whether the failure to respond triggers mandatory abuse or neglect reporting to the public children services agency. At the same time, the absence intervention team shall continue to develop an intervention plan for the child notwithstanding the absence of the child's parent/guardian/custodian, guardian ad litem, or temporary custodian.

In order to address the attendance practices of a student who is habitually truant, the intervention team may, as part of an intervention plan, to take any of the following intervention actions:

    A. provide counseling to the student

    B. request or require the student's parent to attend a parental involvement program

    C. request or require a parent to attend a truancy prevention mediation program

    D. notify the Registrar of Motor Vehicles of the student's absences

    E. take appropriate legal action

    F. assignment to an alternative school (Note: If the District has established an alternative school, it must appear as an alternative intervention strategy.)

In the event that a student becomes habitually truant within twenty-one (21) school days prior to the last day of instruction of a school year, the Principal may, in his/her discretion, assign Truancy Officer (one school official) to work with the child's parent/guardian/custodian, guardian ad litem, or temporary custodian to develop an absence intervention plan during the summer.

The absence intervention process shall commence upon the first day of instruction of the next school year.

BOE 211

**Reporting Requirements**

The attendance officer shall file a complaint in the juvenile court against a student on the sixty-first (61st) day after the implementation of an absence intervention plan or other intervention strategies, provided that all of the following apply:

  A. the student is habitually truant.

  B. the school district or school has made meaningful attempts to re-engage the student through the absence intervention plan, other intervention strategies, and any offered alternatives to adjudication, if applicable.

If the student, at any time during the implementation phase of the absence intervention plan or other intervention strategies, is absent without legitimate excuse for thirty (30) or more consecutive hours or forty-two (42) or more hours in one school month, the attendance officer shall file a complaint in juvenile court against that student, unless the absence intervention team has determined that the student has made substantial progress on the absence intervention plan.

In the event that the sixty-first (61st) day after the implementation of the absence intervention plan or other intervention strategies falls on a day during the summer months, the absence intervention team may extend the implementation of the plan and delay the filing of the complaint for an additional thirty (30) days from the first day of instruction of the next school year.

The Superintendent is authorized to establish an educational program for parents of truant students which is designed to encourage parents to ensure that their children attend school regularly. Any parent who does not complete the program is to be reported to law enforcement authorities for parental education neglect, a fourth class misdemeanor if found guilty.

Whenever any student of compulsory school age has sixty (60) consecutive hours in a single month or a total of ninety (90) hours of unexcused absence from school during the school year, s/he will be considered habitually absent under R.C. 3321.13(b)(2). The Board authorizes the Superintendent to inform the student and his/her parents, guardian, or custodian of the record of absences without a legitimate excuse as well as the District's intent to notify the Registrar of Motor Vehicles, if appropriate, and the Judge of the Juvenile Court of the student's unexcused absence and habitually absent status.
If a student who is habitually truant violates the order of a juvenile court regarding the student's prior adjudication as an unruly child for being a habitual truant, s/he may further be adjudicated as a delinquent child.

The District shall report to the Ohio Department of Education, as soon as practicable, and in a format and manner determined by the Department, any of the following occurrences:

  A. when a notice that a student has been absent with or without legitimate excuse for thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year is submitted to a parent/guardian/or custodian;

  B. when a child of compulsory school age has been absent without legitimate excuse from the public school the child is supposed to attend for thirty (30) or more consecutive hours, forty-two (42) or more hours in one school month, or seventy-two (72) or more hours in a school year;

  C. when a child of compulsory school age who has been adjudicated an unruly child for being a habitual truant violates the court order regarding that adjudication;

  D. when an absence intervention plan has been implemented for a child under this policy.

This policy was developed after consultation with the judge of the juvenile court of Miami County/Counties, with the parents, guardians, or other persons having care of the students attending school in the district, and with appropriate State and local agencies.

Revised 4/12/10
Revised 6/30/11
Revised 3/14/16
Revised 4/10/17
Revised 11/6/17

© Neola 2019

Legal                   R.C. 3313.664, 3313.668, 3317.034, 3321.01 et seq., 3321.13(B)(2), 3321.19, 3321.191

                        R.C. 3321.22, 3321.38, 3323.041, 3331.05

                        A.C. 3301-35-03(G), 3301-47-01, 3301-69-02


**Last Modified by Denise Gallagher on January 26, 2021**



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ATTENDANCE |
| Code | po5200 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | November 6, 2017 |
| Retired | November 26, 2019 |

### 5200 - **ATTENDANCE**

The educational program offered by this District is predicated upon the presence of the student and requires continuity of instruction and classroom participation. Attendance shall be required of all students enrolled in the schools during the days and hours that the school is in session or during the attendance sessions to which s/he has been assigned.

A student in grades 9 through 12 may be considered a full-time equivalent student provided the student is enrolled in at least five (5) units of instruction, as defined by State law, per school year.

In accordance with statute, the Superintendent shall require, from the parent of each student of compulsory school age or from an adult student who has been absent from school or from class for any reason, a statement of the cause for such absence. The Board of Education reserves the right to verify such statements and to investigate the cause of each single absence or prolonged absence.

The Board considers the following factors to be reasonable excuses for time missed at school:

  A. personal illness (a written physician's statement verifying the illness may be required)

  B. illness in the family (the absence under this condition shall not apply to children under fourteen (14) years of age)

  C. quarantine of the home

  D. death in the family

  E. necessary work at home due to absence or incapacity of parent(s)/guardian(s)

  F. observation or celebration of a bona fide religious holiday

  G. out-of-state travel (up to a maximum twenty-four (24) hours per school year that the student's school is open for instruction) to participate in a District-approved enrichment or extracurricular activity

    Any classroom assignment missed due to the absence shall be completed by the student.

    If the student will be absent for twenty-four (24) or more consecutive hours that the student's school is open for instruction, a classroom teacher shall accompany the student during the travel period to provide the student with instructional assistance.

  H. such good cause as may be acceptable to the Superintendent

  I. medically necessary leave for a pregnant student in accordance with Policy 5751

  J. service as a precinct officer at a primary, special or general election in accordance with the program set forth in Policy 5725

Attendance need not always be within the school facilities, but a student will be considered to be in attendance if present at any place where school is in session by authority of the Board.

The Board shall consider each student assigned to a program of other guided learning experiences to be in regular attendance for the program provided that s/he reports to such staff member s/he is assigned for guidance at the place in which s/he is conducting study, and regularly demonstrates progress toward the objectives of the course of study.

Attendance shall be taken at the beginning of every block/period in buildings with block/period-based scheduling. Absences from a class block/period shall be accounted for to the nearest full hour.

BOE 213

Attendance shall be taken at the commencement of the school day in buildings with non-period-based schedules. Attendance for students arriving late or leaving early must be tracked and recorded to the nearest full hour.

**Excessive Absences**

When a student of compulsory school age is absent from school with or without legitimate excuse for thirty-eight (38) or more hours in one school month, or sixty-five (65) or more hours in a school year, the attendance officer shall notify the child's parent or guardian of the child's absences, in writing, within seven (7) school days after the date of the absence that triggered the notice requirement. At the same time written notice is given, any appropriate intervention action listed herein may be taken.

A student will be considered habitually truant if the student is of compulsory school age and absent without a legitimate excuse for thirty (30) or more consecutive hours, for forty-two (42) or more hours in one (1) school month, or for seventy-two (72) or more hours in one (1) school year.

Legitimate excuses for the absence of a student who is otherwise habitually truant include but are not limited to:

    A. the student was enrolled in another school district;

    B. the student was excused from attendance in accordance with R.C 3321.04; or

    C. the student has received an age and schooling certificate.

**Absence Intervention Team**

To the extent required by law as determined on an annual basis, within ten (10) days of a student becoming habitually truant, the  Principal shall assign the student to an absence intervention team.

Within fourteen (14) school days after the assignment of a student to an absence intervention team, the team shall develop an intervention plan for that student in an effort to reduce or eliminate further absences. Each intervention plan shall vary based on the individual needs of the student, but the plan shall state that the attendance officer shall file a complaint not later than sixty-one (61) days after the date the plan was implemented, if the child has refused to participate in, or failed to make satisfactory progress on, the intervention plan. Within seven (7) school days after the development of the plan, reasonable efforts shall be made to provide the student's parent/guardian/custodian, with written notice of the plan.

Each absence intervention team may vary based on the needs of each individual student but shall include a representative from the child's building, another representative from the child's building who knows the child, and the child's parent or parent's designee, or the child's guardian, custodian, guardian ad litem, or temporary custodian. The team also may include a counselor.

The members of the absence intervention team shall be selected within seven (7) school days of the student meeting the habitually truant threshold. Within the same period of seven (7) school days, the Principal shall make at least three meaningful, good faith attempts to secure the participation of the student's parent/guardian/custodian, guardian ad litem, or temporary custodian on that team.  A good faith attempt to secure the participation of the parent shall include, but not be limited to, contacting (or attempting to contact) the parent by telephone, email, or regular mail. If the student's parent responds to any of those attempts, but is unable to participate for any reason, the  Principal shall inform the parent of the parent's right to appear by designee. If seven (7) school days elapse and the student's parent/guardian/custodian, guardian ad litem, or temporary custodian fails to respond to the attempts to secure participation, the attendance officer shall investigate whether the failure to respond triggers mandatory abuse or neglect reporting to the public children services agency. At the same time, the absence intervention team shall continue to develop an intervention plan for the child notwithstanding the absence of the child's parent/guardian/custodian, guardian ad litem, or temporary custodian.

In order to address the attendance practices of a student who is habitually truant, the intervention team may , as part of an intervention plan, to take any of the following intervention actions:

    A. provide counseling to the student

    B. request or require the student's parent to attend a parental involvement program

    C. request or require a parent to attend a truancy prevention mediation program

    D. notify the Registrar of Motor Vehicles of the student's absences

    E. take appropriate legal action

    F. assignment to an alternative school (Note: If the District has established an alternative school, it must appear as an alternative intervention strategy.)

In the event that a student becomes habitually truant within twenty-one (21) school days prior to the last day of instruction of a school year, the Principal may, in his/her discretion, assign Truancy Officer (one school official) to work with the child's parent/guardian/custodian, guardian ad litem, or temporary custodian to develop an absence intervention plan during the summer.

The absence intervention process shall commence upon the first day of instruction of the next school year.

**Reporting Requirements**

The attendance officer shall file a complaint in the juvenile court against a student on the sixty-first (61st) day after the implementation of an absence intervention plan or other intervention strategies, provided that all of the following apply:

    A. the student is habitually truant.

BOE 214

B. the school district or school has made meaningful attempts to re-engage the student through the absence intervention plan, other intervention strategies, and any offered alternatives to adjudication, if applicable.

If the student, at any time during the implementation phase of the absence intervention plan or other intervention strategies, is absent without legitimate excuse for thirty (30) or more consecutive hours or forty-two (42) or more hours in one school month, the attendance officer shall file a complaint in juvenile court against that student, unless the absence intervention team has determined that the student has made substantial progress on the absence intervention plan.

In the event that the sixty-first (61st) day after the implementation of the absence intervention plan or other intervention strategies falls on a day during the summer months, the absence intervention team may extend the implementation of the plan and delay the filing of the complaint for an additional thirty (30) days from the first day of instruction of the next school year.

The Superintendent is authorized to establish an educational program for parents of truant students which is designed to encourage parents to ensure that their children attend school regularly. Any parent who does not complete the program is to be reported to law enforcement authorities for parental education neglect, a fourth class misdemeanor if found guilty.

Whenever any student of compulsory school age has sixty (60) consecutive hours in a single month or a total of ninety (90) hours of unexcused absence from school during the school year, s/he will be considered habitually absent. The Board authorizes the Superintendent to inform the student and his/her parents, guardian, or custodian of the record of absences without a legitimate excuse  as well as the District's intent to notify the Registrar of Motor Vehicles, if appropriate, and the Judge of the Juvenile Court of the student's unexcused absence.
If a student who is habitually truant violates the order of a juvenile court regarding the student's prior adjudication as an unruly child for being a habitual truant, s/he may further be adjudicated as a delinquent child.

The District shall report to the Ohio Department of Education, as soon as practicable, and in a format and manner determined by the Department, any of the following occurrences:

A. when a notice that a student has been absent with or without legitimate excuse for thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year is submitted to a parent/guardian/or custodian;

B. when a child of compulsory school age has been absent without legitimate excuse from the public school the child is supposed to attend for thirty (30) or more consecutive hours, forty-two (42) or more hours in one school month, or seventy-two (72) or more hours in a school year;

C. when a child of compulsory school age who has been adjudicated an unruly child for being an habitual truant violates the court order regarding that adjudication;

D. when an absence intervention plan has been implemented for a child under this policy.

This policy was developed after consultation with the judge of the juvenile court of Miami County/Counties, with the parents, guardians, or other persons having care of the students attending school in the district, and with appropriate State and local agencies.

Revised 4/12/10
Revised 6/30/11
Revised 3/14/16
Revised 4/10/17

© Neola 2017

Legal                    R.C. 3313.664, 3317.034, 3321.01 et seq., 3321.13(B)(2), 3321.19, 3321.191

                         R.C. 3321.22, 3321.38, 3323.041, 3331.05

                         A.C. 3301-35-03(G), 3301-47-01, 3301-69-02

**Last Modified by Kayla Reichley on October 21, 2019**

BOE 215



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | RELEASED TIME FOR RELIGIOUS INSTRUCTION |
| Code | po5223 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 14, 2016 |

**5223 - RELEASED TIME FOR RELIGIOUS INSTRUCTION**

The Board of Education desires to cooperate with those parents who wish to provide for religious instruction for their children but also recognizes its responsibility to enforce the attendance requirements of the State.

Students may be provided "released time" from school to attend a course in religious instruction conducted by a private entity off District property, provided that the following requirements are met, such students will not be considered absent when the:

A. student's parent or guardian gives consent in writing;

B. sponsoring entity maintains attendance records and makes them available to the District;

C. sponsoring entity provides and assumes liability for the student; and

D. student assumes responsibility for any missed school work.

Transportation of students to and from Released Time instruction is the complete responsibility of the sponsoring entity, the parent, guardian, and/or student. The Board of Education, its members, and employees are immune from liability for any injuries arising from transportation to and from Released Time instruction. Further, no Board funds will be expended for, and no District personnel shall be involved in the provision of religious instruction.

Students shall not be excused from a core curriculum subject course to attend Released Time instruction.

The Board will evaluate the course based on secular criteria including, but not limited to:

A. the number of hours of instructional time;

B. a review of the course syllabus that reflects course requirements and materials used;

C. the assessment methods used in the course; and

D. the instructor's qualifications, which shall be similar to the qualification of other teachers in the District.

The decision as to whether to provide credit for a specific Released Time religious instruction course will be neutral as to religious content and will not involve any test for religious content or denominational affiliation.

Staff members shall not promote or discourage participation in release time programs for any religious instructional program.

Nothing herein shall constitute an endorsement of religion or infringe upon an individual's First Amendment rights.

**© Neola 2016**

| | |
|---|---|
| Legal | Attorney General's Opinion 88-001 |

BOE 216



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | IMMUNIZATION |
| Code | po5320 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 14, 2016 |

### 5320 - IMMUNIZATION

In order to safeguard the school community from the spread of certain communicable diseases and in recognition that prevention is a means of combating the spread of disease, the Board of Education requires all students to be immunized against poliomyelitis, measles, diphtheria, rubella (German measles), pertussis, tetanus, mumps, and others legally designated in accordance with State statutes, unless specifically exempt for medical or other reasons. The Board requires that students who start kindergarten during or after the school year beginning in 1999 be immunized against Hepatitis B or be in the process of being immunized. The Board also requires that students who start kindergarten during or after the school year beginning in 2006 be immunized against chicken pox. The Board further requires that students enrolled in grades 7 through 12 during or after the school year beginning in 2016 be immunized against meningococcal disease in accordance with the administration procedures prescribed by the Ohio Department of Health (see AG 5320). This policy pertains to both students who currently attend school in the District and those eligible to attend.

The Superintendent may exempt a student from being immunized against either or both measles and mumps if the student presents a signed statement from a parent or physician indicating s/he has had measles or mumps and does not need to be immunized. The student will be allowed to attend school only if a physician's statement indicates there is no danger of contagion. In case of an outbreak of the disease for which the student has not been immunized or an epidemic, the Superintendent shall not allow the student to attend school.

In the case of a chicken pox epidemic in the school's population, the Superintendent may deny admission to a student otherwise exempted from the chicken pox immunization requirement. The Superintendent shall prescribe methods whereby the academic standing of a student who is denied admission during a chicken pox epidemic is preserved.

The Superintendent may also exempt a student from immunization if a physician certifies in writing that immunization from a particular disease is medically contra-indicated.

A student may also be exempted from immunization if a parent or guardian objects for good cause, including religious conviction.

A student who has not completed immunization may not be admitted to school, except as is consistent with the law.

The Board believes that immunization is the primary responsibility of the parent(s). For those students who do not have ready access to private or public health services, immunizations shall be provided at public expense.

Any immunization program conducted by this District requires prior approval of the Board and can only extend to those immunizations provided for by statute and the guidelines of this Board.

© Neola 2016

| | |
|---|---|
| Legal | R.C. 3313.67, 3313.671, 3313.671(B) |



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | USE OF MEDICATIONS |
| Code | po5330 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | November 6, 2017 |

### 5330 - **USE OF MEDICATIONS**

The Board of Education shall not be responsible for the diagnosis and treatment of student illness. With the exception of diabetes care covered under Policy 5336, the administration of prescribed medication and/or medically-prescribed treatments to a student during school hours will be permitted only when failure to do so would jeopardize the health of the student, the student would not be able to attend school if the medication or treatment were not made available during school hours, or if the child is disabled and requires medication to benefit from his/her educational program.

For purposes of this policy, "medication" shall include all medicines including those prescribed by a licensed health professional authorized to prescribe drugs and any nonprescribed (over-the-counter) drugs, preparations, and/or remedies. "Treatment" refers both to the manner in which a medication is administered and to health-care procedures which require special training, such as catheterization.

Before any medication (i.e., a drug) or treatment may be administered to any student during school hours, the Board shall require a written statement from a licensed health professional authorized to prescribe drugs ("prescriber") accompanied by the written authorization of the parent (see Form 5330 F1, Form 5330 F1a, and Form 5330 F1b). These documents shall be kept on file in the office of the clinic, and made available to the persons designated by this policy as authorized to administer medication or treatment. A copy of the parent's written request and authorization and the prescriber's written statement must be given, by the next school day following the District's receipt of the documents, to the person authorized to administer drugs to the student for whom the authorization and statement have been received. No student is allowed to provide or sell any type of over-the-counter medication to another student. Violations of this rule will be considered violations of Policy 5530 - Drug Prevention and of the Student Code of Conduct/Discipline Code.

Only medication in its original container: labeled with the date, if a prescription; the student's name; and exact dosage will be administered. The Superintendent shall determine a location in each building where the medications to be administered under this policy shall be stored, which shall be a locked storage place, unless the medications require refrigeration in which case they shall be stored in a refrigerator in a place not commonly used by students, and unless the medication to be administered is diabetes medication, which must be kept in an easily accessible location pursuant to Policy 5336.

Parents may administer medication or treatment, with the exception of diabetes care covered under Policy 5336.

However, students shall be permitted to carry and use, as necessary, an asthma inhaler, provided the student has prior written permission from his/her parent and physician and has submitted Form 5330 F3, Authorization for the Possession and Use of Asthma Inhalers/Other Emergency Medication(s), to the principal and any school nurse assigned to the building.

Additionally, students shall be permitted to carry and use, as necessary, an epinephrine autoinjector to treat anaphylaxis, provided the student has prior written approval from the prescriber of the medication and his/her parent/guardian, if the student is a minor, and has submitted written approval (Form 5330 F4, Authorization for the Possession and Use of Epinephrine Autoinjector (epi-pen)) to the principal and any school nurse assigned to the building. The parent/guardian or the student shall provide a back-up dose of the medication to the principal or school nurse. This permission shall extend to any activity, event, or program sponsored by the school or in which the school participates. In the event epinephrine is administered by the student or a school employee at school or at any of the covered events, a school employee shall immediately request assistance from an emergency medical service provider (911). Students with diabetes authorized to attend to their diabetes care and management may do so in accordance with Policy 5336.

Students shall be permitted to possess and self-administer over-the-counter topical sunscreen products while on school property or at a school-sponsored event.

With the exception of diabetes care covered under Policy 5336, only employees of the Board who are licensed health professionals or who have completed a drug administration training program conducted by a licensed health professional and are designated by the Board may administer prescription drugs to students in school.

With the exception of diabetes care covered under Policy 5336, provided they have completed the requisite training, the following staff are authorized to administer medication and treatment to students:

    A. principal

    B. teacher

    C. school nurse

    D. building secretary

    E. aide

BOE 218

F. others as designated by student's IEP and/or 504 plan

No employee will be required to administer a drug to a student if the employee objects, on the basis of religious convictions, to administering the drug.

With the exception of diabetes care covered under Policy 5336, the Board shall permit the administration by a licensed nurse or other authorized staff member of any medication requiring intravenous or intramuscular injection or the insertion of a device into the body when both the medication and the procedure are prescribed by a licensed health professional authorized to prescribe drugs and the nurse/staff member has completed any and all necessary training.

Students who may require administration of an emergency medication may have such medication in their possession upon written authorization of their parent(s) or, such medication, upon being identified as aforenoted, may be stored in the building Principal office and administered in accord with this policy and Policy 5336.

All dental disease prevention programs, sponsored by the Ohio Department of Health and administered by school employees, parents, volunteers, employees of local health districts, or employees of the Ohio Department of Health, which utilize prescription drugs for the prevention of dental disease and which are conducted in accordance with the rules and regulations of the Ohio Department of Health are exempt from all requirements of this policy.

The Superintendent shall prepare administrative guidelines, as needed, to address the proper implementation of this policy.

Revised 4/12/10
Revised 7/12/10
Revised 12/8/14

**© Neola 2017**

Legal                              R.C. 3313.712, 3313.713, 3313.7110, 3313.716, 3313.718, 4729.01

BOE 219



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ANTI-HARASSMENT |
| Code | po5517 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 1, 2022 |

**5517 - ANTI-HARASSMENT**

**General Policy Statement**

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

**Other Violations of the Anti-Harassment Policy**

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

**Definitions**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Complainant** is the individual who alleges, or is alleged, to have been subjected to unlawful harassment, regardless of whether the person files a formal complaint or is pursuing an informal resolution to the alleged harassment.

BOE 220

**Respondent** is the individual who has been alleged to have engaged in unlawful harassment, regardless of whether the Reporting Party files a formal complaint or is seeking an informal resolution to the alleged harassment.

**School District community** means students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties** include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

## Bullying

Bullying rises to the level of unlawful harassment when one (1) or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:

    A. teasing;

    B. threats;

    C. intimidation;

    D. stalking;

    E. cyberstalking;

    F. cyberbullying;

    G. physical violence;

    H. theft;

    I. sexual, religious, or racial harassment;

    J. public humiliation; or

    K. destruction of property.

## Harassment

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

    A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

    B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

    C. has the effect of substantially disrupting the orderly operation of a school.

## Sexual Harassment

For purposes of this policy and consistent with Title VII of the Civil Rights Act of 1964, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

    A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or

BOE 221

status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of any gender against a person of the same or another gender.

Sexual Harassment covered by Policy 2266 - Nondiscrimination on the Basis of Sex Education Programs or Activities is not included in this policy. Allegations of such conduct shall be addressed solely by Policy 2266.

Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs, activities, or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings or literature, placed in the work or educational environment, that may reasonably embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. Asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities.

H. Speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Giving unwelcome personal gifts such as lingerie that suggests the desire for a romantic relationship.

J. Leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin.

K. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

L. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

M. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**Race/Color Harassment**

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

BOE 222

**Religious (Creed) Harassment**

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

**National Origin/Ancestry Harassment**

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

**Disability Harassment**

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disability, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

**Anti-Harassment Compliance Officers**

The following individual(s) shall serve as the District's Anti-Harassment Compliance Officer(s) (hereinafter, "the Compliance Officer(s)"):

High School Principal
Barrett Swope
(937) 845-9487
swopeb@blsk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Elementary Principal
Carrie Jones
(937) 845-9439
jonesc@blsk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The names, titles, and contact information of these individuals will be published annually on the School District's web site.

The Compliance Officer(s) are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding harassment.

The Compliance Officer(s) will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the individual in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept reports of unlawful harassment directly from any member of the School District community or a Third Party or receive reports that are initially filed with an administrator, supervisor, or other District-level official. Upon receipt of a report of alleged harassment, the Compliance Officer(s) will contact the Complainant and begin either an informal or formal complaint process (depending on the request of the Complainant or the nature of the alleged harassment), or the Compliance Officer(s) will designate a specific individual to conduct such a process. The Compliance Officer(s) will provide a copy of this policy to the Complainant and Respondent. In the case of a formal complaint, the Compliance Officer(s) will prepare recommendations for the Superintendent or will oversee the preparation of such recommendations by a designee. All Board

BOE 223

employees must report incidents of harassment that are reported to them to the Compliance Officer within two (2) days of learning of the incident.

Any Board employee who directly observes unlawful harassment is obligated, in accordance with this policy, to report such observations to the Compliance Officer(s) within two (2) days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer(s) or designee must contact the Complainant, if age eighteen (18) or older, or Complainant's parents/guardians if the Complainant is under the age eighteen (18), within two (2) days to advise of the Board's intent to investigate the alleged wrongdoing.

**Reports and Complaints of Harassing Conduct**

Students and all other members of the School District community along with Third Parties are encouraged to promptly report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor, or other District employee or official who receives such a report shall file it with the Compliance Officer within two (2) days of receiving the report of harassment.

Members of the School District community and Third Parties, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the Complainant's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints of harassment under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 - Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may have created a hostile work environment and may have constituted unlawful discriminatory harassment based on a Protected Class, the Principal shall report the act of bullying, aggressive behavior and/or harassment to the Compliance Officers who shall investigate the allegation in accordance with this policy. If the alleged harassment involves Sexual Harassment as defined by Policy 2266, the matter will be handled in accordance with the grievance process and procedures outlined in Policy 2266. While the Compliance Officer investigates the allegation, or the matter is being addressed pursuant to Policy 2266, the Principal shall suspend the Policy 5517.01 investigation to await the Compliance Officer's written report or the determination of responsibility pursuant to Policy 2266. The Compliance Officer shall keep the Principal informed of the status of the Policy 5517 investigation and provide the Principal with a copy of the resulting written report. Likewise, the Title IX Coordinator will provide the Principal with the determination of responsibility that results from the Policy 2266 grievance process.

**Investigation and Complaint Procedure**

Except for Sexual Harassment that is covered by Policy 2266 - Nondiscrimination on the Basis of Sex in Education Programs or Activities, any student who believes that they have been subjected to unlawful harassment may seek resolution of the complaint through the procedures described below. The formal complaint process involves an investigation of the Complainant's claims of harassment or retaliation and a process for rendering a decision regarding whether the charges are substantiated.

Due to the sensitivity surrounding complaints of unlawful harassment or retaliation, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) days after the conduct occurs while the facts are known and potential witnesses are available. Once the formal complaint process is begun, the investigation will be completed in a timely manner (ordinarily, within fifteen (15) business days of the complaint being received).

The procedures set forth below are not intended to interfere with the rights of a student to pursue a complaint of unlawful harassment or retaliation with the United States Department of Education Office for Civil Rights.

**Informal Complaint Procedure**

The goal of the informal complaint procedure is promptly to stop inappropriate behavior and to facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes s/he has been unlawfully harassed or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint. The informal process is only available in those circumstances where the Complainant and the Respondent mutually agree to participate in it.

Students who believe that they have been unlawfully harassed may initiate their complaint through this informal complaint process, but are not required to do so. The informal process is only available in those circumstances where the parties (alleged target of harassment and alleged harasser(s)) agree to participate in the informal process.

BOE 224

The Complainant may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

All complainants involving a District employee, any other adult member of the School District community, or a Third Party and a student will be formally investigated.

As an initial course of action, if a Complainant feels comfortable and safe in doing so, the individual should tell or otherwise inform the Respondent that the alleged harassing conduct is unwelcome and must stop. The Complainant should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the Complainant if requested to do so. A Complainant who is uncomfortable or unwilling to directly approach the Respondent about the alleged inappropriate conduct may file an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process.

A Complainant may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one of the Compliance Officers.

All informal complaints must be reported to one of the Compliance Officers who will either facilitate an informal resolution as described below, or appoint another individual to facilitate an informal resolution.

The Board's informal complaint procedure is designed to provide students who believe they are being unlawfully harassed with a range of options designed to bring about a resolution of their concerns. Depending upon the nature of the complaint and the wishes of the Complainant, informal resolution may involve, but not be limited to, one or more of the following:

A. Advising the Complainant about how to communicate the unwelcome nature of the behavior to the Respondent.

B. Distributing a copy of this anti-harassment policy as a reminder to the individuals in the school building or office where the Respondent works or attends.

C. If both parties agree, the Compliance Officer may arrange and facilitate a meeting or mediation between the Complainant and the Respondent to work out a mutual resolution.

While there are no set time limits within which an informal complaint must be resolved, the Compliance Officer/designee is directed to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. If the Complainant is dissatisfied with the informal complaint process, the Complainant may proceed to file a formal complaint. And, as stated above, either party may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

If a complaint is not resolved through the informal complaint process, if one of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or the Complainant, from the outset, elects to file a formal complaint, or the CO determines the allegations are not appropriate for resolution through the informal process, the formal complaint process shall be implemented.

The Complainant may file a formal complaint, either orally or in writing, with a teacher, principal, or other District employee at the student's school, the Compliance Officer, Superintendent, or another District official who works at another school or at the district level. Due to the sensitivity surrounding complaints of unlawful harassment, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a formal complaint within thirty (30) days after the conduct occurs while the facts are known and potential witnesses are available. If a Complainant informs a teacher, principal, or other District employee at the student's school, Superintendent, or other District official, either orally or in writing, about any complaint of harassment, that employee must report such information to the Compliance Officer within two (2) business days.

Throughout the course of the process, the Compliance Officer should keep the parties reasonably informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent known: the identity of the Respondent; a detailed description of the facts upon which the complaint is based (i.e., when, where, and what occurred); a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

BOE 225

Upon receiving a formal complaint, the Compliance Officer will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the Respondent. In making such a determination, the Compliance Officer should consult the Complainant to assess whether the individual agrees with the proposed action. If the Complainant is unwilling to consent to the proposed change, the Compliance Officer may still take whatever actions deemed appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the Compliance Officer/designee will initiate a formal investigation to determine whether the Complainant has been subjected to offensive conduct/harassment/retaliation. The Principal will not conduct an investigation unless directed to do so by the Compliance Officer.

Simultaneously, the Compliance Officer will inform the Respondent that a formal complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant policies and/or administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the Compliance Officer/designee will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

    A. interviews with the Complainant;

    B. interviews with the Respondent;

    C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

    D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the Compliance Officer or the designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment. The Compliance Officer's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if discriminatory harassment or retaliation occurred, a preponderance of evidence standard will be used. The Compliance Officer may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within ten (10) school days of receiving the report of the Compliance Officer/designee, the Superintendent must either issue a written decision regarding whether the complaint of harassment has been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days. At the conclusion of the additional investigation, the Superintendent shall issue a written decision as described above.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful harassment/retaliation regardless of whether the student alleging the unlawful harassment/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

The parties may be represented, at their own cost, at any of the above-described meetings/hearings.

The right of a person to a prompt and equitable resolution of the complaint shall not be impaired by the person's pursuit of other remedies such as the filing of a complaint with the Office for Civil Rights, the filing of charges with local law enforcement, or the filing of a civil action in court. Use of this internal complaint process is not a prerequisite to the pursuit of other remedies.

**Privacy/Confidentiality**

The District will employ all reasonable efforts to protect the rights of the Complainant, the Respondent, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy and related administrative guidelines

BOE 226

shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. Additionally, the Respondent must be provided the Complainant's identity.

During the course of a formal investigation, the Compliance Officer/designee will instruct all members of the School District community and third parties who are interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of a harassment investigation is expected not to disclose any information that is learned or provided during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful harassment/retaliation by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful harassment is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful harassment/retaliation or participates as a witness in an investigation is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a report, formal complaint testified, assisted or participated or refused to participate in any manner in an investigation, proceeding, or hearing under those laws and/or this policy, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws and/or this policy.

Retaliation against a person from making a report of discrimination, filing a formal complaint, or participating in an investigation or meeting is a serious violation of this policy that can result in imposition of disciplinary sanction/consequences and/or other appropriate remedies.

Formal complaints alleging retaliation may be filed according to the internal complaint process set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

**Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct**

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent.

**Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension**

The Superintendent will report to the Ohio Department of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend

BOE 227

such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

**Education and Training**

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

The Compliance Officer(s) is responsible for overseeing retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

    A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

    B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

    C. any documentation that memorializes the actions taken by District personnel or individuals contracted or appointed by the Board to fulfill its responsibilities related to the investigation and/or the District's response to the alleged violation of this policy;

    D. written witness statements;

    E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

    F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

    G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

    H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

    I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

    J. documentation of any supportive measures offered and/or provided to the Complainant and/or the Respondent, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

    K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

    L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student Code of Conduct and/or Employee Handbooks);

    M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be

BOE 228

retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 4/12/10
Revised 2/9/15
Revised 12/10/18
T.C. 8/10/20
Revised 5/10/21
T.C. 3/1/22

**© Neola 2021**

| Legal | R.C. 4112.02 |
|-------|--------------|
|       | 20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA) |
|       | 20 U.S.C. 1681 et seq. |
|       | 29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967 |
|       | 29 U.S.C. 794, Rehabilitation Act of 1973, as amended |
|       | 29 U.S.C. 6101, The Age Discrimination Act of 1975 |
|       | 42 U.S.C. 2000d et seq. |
|       | 42 U.S.C. 2000e et seq. |
|       | 42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended |
|       | 42 U.S.C. 1983 |
|       | National School Boards Association Inquiry and Analysis - May, 2008 |

BOE 229



| Book | Policy Manual |
| --- | --- |
| Section | 5000 Students |
| Title | ANTI-HARASSMENT |
| Code | po5517 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | August 10, 2020 |
| Retired | May 10, 2021 |

### 5517 - ANTI-HARASSMENT

**General Policy Statement**

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and transgender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as third parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

For purposes of this policy, "School District community" means students, administrators, and professional and classified staff, as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

For purposes of this policy, "third parties" include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off School District property).

**Other Violations of the Anti-Harassment Policy**

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

    A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

    B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

    C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

**Definitions**

**Bullying**

Bullying rises to the level of unlawful harassment when one or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:

    A. teasing;

    B. threats;

    C. intimidation;

BOE 230

D. stalking;

E. cyberstalking;

F. cyberbullying;

G. physical violence;

H. theft;

I. sexual, religious, or racial harassment;

J. public humiliation; or

K. destruction of property.

**Harassment**

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

C. has the effect of substantially disrupting the orderly operation of a school.

**Sexual Harassment**

Pursuant to Title VII of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of either gender against a person of the same or opposite gender.

Prohibited acts that constitute sexual harassment may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, videotapes, audio recordings or literature, placed in the work or educational environment, which may embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

H. Remarks speculating about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

J. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

BOE 231

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**NOTE: Sexual conduct/relationships with students by District employees or any other adult member of the School District community is prohibited, and any teacher, administrator, coach, or other school authority who engages in sexual conduct with a student may also be guilty of the criminal charge of "sexual battery" as set forth in R.C. 2907.03. The issue of consent is irrelevant in regard to such criminal charges and/or with respect to the application of this policy to District employees or other adult members of the School District community.**

### Race/Color Harassment

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

### Religious (Creed) Harassment

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

### National Origin/Ancestry Harassment

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

### Disability Harassment

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disabling condition, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

### Reports and Complaints of Harassing Conduct

Students and all other members of the School District community and third parties are encouraged to promptly report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor, or other District employee or official who receives such a complaint shall file it with the District's Anti-Harassment Compliance Officer at his/her first convenience.

Members of the School District community, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the complaining individual's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints of harassment under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may have created a hostile work environment and may have constituted unlawful discriminatory harassment based on a Protected Class, the Principal shall report the act of bullying, aggressive behavior and/or harassment to one of the Anti-Harassment Compliance Officers who shall investigate the allegation in accordance with this policy. While the Compliance Officer investigates the allegation, the Principal shall suspend his/her Policy 5517.01 investigation to await the Compliance Officer's written report. The Compliance Officer shall keep the Principal informed of the status of the Policy 5517 investigation and provide him/her with a copy of the resulting written report.

### Anti-Harassment Compliance Officers

The Board designates the following individuals to serve as "Anti-Harassment Compliance Officers" for the District. They are hereinafter referred to as the "Compliance Officers".

High School Principal
Barrett Swope
(937) 845-9487
swopeb@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Elementary Principal
Jodi Petty

BOE 232

(937)845-9439
pettyj@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The names, titles, and contact information of these individuals will be published annually in the parent and staff handbooks.

The Compliance Officers will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the student, other member of the School District community or third party in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept complaints of unlawful harassment directly from any member of the School District community or a visitor to the District, or receive complaints that are initially filed within a school building administrator. Upon receipt of a complaint either directly or through a school building administrator, a Compliance Officer will begin either an informal or formal process (depending on the request of the person alleging the harassment or the nature of the alleged harassment), or the Compliance Officer will designate a specific individual to conduct such a process. In the case of a formal complaint, the Compliance Officer will prepare recommendations for the Superintendent or will oversee the preparation of such recommendations by a designee. All members of the School District community must report incidents of harassment that are reported to them to the Compliance Officer within two (2) business days of learning of the incident.

Any Board employee who directly observes unlawful harassment of a student is obligated, in accordance with this policy, to report such observations to one of the Compliance Officers within two (2) business days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer or designee must contact the student, if age eighteen (18) or older, or the student's parents if under the age eighteen (18), within two (2) school days to advise s/he/them of the Board's intent to investigate the alleged misconduct, including the obligation of the Compliance Officer or designee to conduct an investigation following all the procedures outlined for a formal complaint.

### Investigation and Complaint Procedure

Any student who believes that s/he has been subjected to unlawful harassment may seek resolution of his/her complaint through either the informal or formal procedures as described below. Further, a process for investigating claims of harassment or retaliation and a process for rendering a decision regarding whether the claim of legally prohibited harassment or retaliation was substantiated are set forth below.

Due to the sensitivity surrounding complaints of unlawful harassment or retaliation, time lines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs while the facts are known and potential witnesses are available. Once the formal complaint process is begun, the investigation will be completed in a timely manner (ordinarily, within fifteen (15) business days of the complaint being received).

The informal and formal procedures set forth below are not intended to interfere with the rights of a student to pursue a complaint of unlawful harassment or retaliation with the United States Department of Education Office for Civil Rights.

### Informal Complaint Procedure

The goal of the informal complaint procedure is to stop inappropriate behavior and to investigate and facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes s/he has been unlawfully harassed or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint.

Students who believe that they have been unlawfully harassed may initiate their complaint through this informal complaint process, but are not required to do so. The informal process is only available in those circumstances where the parties (alleged target of harassment and alleged harasser(s)) agree to participate in the informal process.

Students who believe that they have been unlawfully harassed may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

However, all complaints of harassment involving a District employee or any other adult member of the School District community against a student will be formally investigated. Similarly, any allegations of sexual violence will be formally investigated.

As an initial course of action, if a student feels that s/he is being unlawfully harassed and s/he is able and feels safe doing so, the individual should tell or otherwise inform the harasser that the conduct is unwelcome and must stop. Such direct communication should not be utilized in circumstances involving sexual violence. The complaining individual should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the individual if requested to do so. An individual who is uncomfortable or unwilling to inform the harasser of his/her complaint is not prohibited from otherwise filing an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process.

A student who believes s/he has been unlawfully harassed may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one of the Compliance Officers.

All informal complaints must be reported to one of the Compliance Officers who will either facilitate an informal resolution as described below on his/her own, or appoint another individual to facilitate an informal resolution.

The School District's informal complaint procedure is designed to provide students who believe they are being unlawfully harassed with a range of options designed to bring about a resolution of their concerns. Depending upon the nature of the complaint and the wishes of the student claiming unlawful harassment, informal resolution may involve, but not be limited to, one or more of the following:

BOE 233

A. Advising the student about how to communicate the unwelcome nature of the behavior to the alleged harasser.

B. Distributing a copy of the anti-harassment policy as a reminder to the individuals in the school building or office where the individual whose behavior is being questioned works or attends.

C. If both parties agree, the Compliance Officer may arrange and facilitate a meeting between the student claiming harassment and the individual accused of harassment to work out a mutual resolution. Such a meeting is not appropriate in circumstances involving sexual violence.

While there are no set time limits within which an informal complaint must be resolved, the Compliance Officer or designee will exercise his/her authority to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. Parties who are dissatisfied with the results of the informal complaint process may proceed to file a formal complaint. And, as stated above, parties may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

If a complaint is not resolved through the informal complaint process, if one of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or if the student elects to file a formal complaint initially, the formal complaint process shall be implemented.

A student who believes s/he has been subjected to offensive conduct/harassment/retaliation hereinafter referred to as the "Complainant", may file a formal complaint, either orally or in writing, with a teacher, principal, or other District employee at the student's school, the Compliance Officer, Superintendent, or another District employee who works at another school or at the district level. Due to the sensitivity surrounding complaints of unlawful harassment, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs while the facts are known and potential witnesses are available. If a Complainant informs a teacher, principal, or other District employee at the student's school, Superintendent, or other District employee, either orally or in writing, about any complaint of harassment, that employee must report such information to the Compliance Officer or designee within two (2) business days.

Throughout the course of the process, the Compliance Officer should keep the parties informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent it is available: the identity of the individual believed to have engaged in, or be engaging in, offensive conduct/harassment/retaliation; a detailed description of the facts upon which the complaint is based; a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

Upon receiving a formal complaint, the Compliance Officer will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the alleged harasser. In making such a determination, the Compliance Officer should consult the Complainant to assess his/her agreement to the proposed action. If the Complainant is unwilling to consent to the proposed change, the Compliance Officer may still take whatever actions s/he deem appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the Compliance Officer or a designee will initiate a formal investigation to determine whether the Complainant has been subjected to offensive conduct/harassment/retaliation.

Simultaneously, the Compliance Officer will inform the individual alleged to have engaged in the harassing or retaliatory conduct, hereinafter referred to as the "Respondent", that a complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the Compliance Officer or a designee will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

A. interviews with the Complainant;

B. interviews with the Respondent;

C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the Compliance Officer or the designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment. The Compliance Officer's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if discriminatory harassment or retaliation occurred, a preponderance of evidence standard will be used. The Compliance Officer may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within ten (10) school days of receiving the report of the Compliance Officer or the designee, the Superintendent must either issue a final decision regarding whether the complaint of harassment has been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

BOE 234

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days. At the conclusion of the additional investigation, the Superintendent shall issue a final written decision as described above.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful harassment/retaliation regardless of whether the student alleging the unlawful harassment/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

**Privacy/Confidentiality**

The School District will employ all reasonable efforts to protect the rights of the Complainant, the individual(s) against whom the complaint is filed, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy and related administrative guidelines shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. All Complainants proceeding through the formal investigation process will be advised that their identities may be disclosed to the Respondent.

During the course of a formal investigation, the Compliance Officer or his/her designee will instruct all members of the School District community and third parties who are interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of a harassment investigation is expected not to disclose any information that s/he learns or that s/he provides during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful harassment by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful harassment is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Any act of retaliation against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation is prohibited.

**Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct**

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent.

**Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension**

The Superintendent will report to the Ohio Department of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

**Education and Training**

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent or designee shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

BOE 235

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any interim measures offered and/or provided to complainants and/or the alleged perpetrators, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student and/or Employee Handbooks or Codes of Conduct);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment;

N. documentation of any training provided to District personnel related to this policy, including but not limited to, notification of the prohibitions and expectations of staff set forth in this policy and the role and responsibility of all District personnel involved in enforcing this policy, including their duty to report alleged violations of this policy and/or conducting an investigation of an alleged violation of this policy;

O. documentation that any rights or opportunities that the District made available to one party during the investigation were made available to the other party on equal terms;

P. copies of any notices sent to the alleged perpetrator/responding party of the allegations constituting a potential violation of this policy;

Q. copies of any notices sent to the complainant and alleged perpetrator in advance of any interview or hearing;

R. copies of any documentation or evidence used during informal and formal disciplinary meetings and hearings, including the investigation report, and any written responses submitted by the complainant or the alleged perpetrator.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 4/12/10
Revised 2/9/15
Revised 12/10/18
TC 8/10/20

**© Neola 2018**

BOE 236

Legal

R.C. 4112.02

20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

20 U.S.C. 1681 et seq.

29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967

29 U.S.C. 794, Rehabilitation Act of 1973, as amended

29 U.S.C. 6101, The Age Discrimination Act of 1975

42 U.S.C. 2000d et seq.

42 U.S.C. 2000e et seq.

42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended

42 U.S.C. 1983

National School Boards Association Inquiry and Analysis – May, 2008

**Last Modified by Brittany Wiggins on May 20, 2021**

BOE 237



| Book | Policy Manual |
|---|---|
| Section | 5000 Students |
| Title | ANTI-HARASSMENT |
| Code | po5517 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | December 10, 2018 |
| Retired | August 10, 2020 |

## 5517 - ANTI-HARASSMENT

### General Policy Statement

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and transgender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as third parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

For purposes of this policy, "School District community" means students, administrators, and professional and classified staff, as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

For purposes of this policy, "third parties" include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off School District property).

### Other Violations of the Anti-Harassment Policy

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

    A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

    B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

    C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

### Definitions

### Bullying

Bullying rises to the level of unlawful harassment when one or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:

    A. teasing;

    B. threats;

    C. intimidation;

BOE 238

D. stalking;

E. cyberstalking;

F. cyberbullying;

G. physical violence;

H. theft;

I. sexual, religious, or racial harassment;

J. public humiliation; or

K. destruction of property.

**Harassment**

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

C. has the effect of substantially disrupting the orderly operation of a school.

**Sexual Harassment**

Pursuant to Title VII of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of either gender against a person of the same or opposite gender.

Prohibited acts that constitute sexual harassment may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, videotapes, audio recordings or literature, placed in the work or educational environment, which may embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

H. Remarks speculating about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

J. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

BOE 239

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**NOTE: Sexual conduct/relationships with students by District employees or any other adult member of the School District community is prohibited, and any teacher, administrator, coach, or other school authority who engages in sexual conduct with a student may also be guilty of the criminal charge of "sexual battery" as set forth in R.C. 2907.03. The issue of consent is irrelevant in regard to such criminal charge and/or with respect to the application of this policy to District employees or other adult members of the School District community.**

### Race/Color Harassment

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

### Religious (Creed) Harassment

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

### National Origin/Ancestry Harassment

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

### Disability Harassment

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disabling condition, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

### Reports and Complaints of Harassing Conduct

Students and all other members of the School District community and third parties are encouraged to promptly report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor, or other District employee or official who receives such a complaint shall file it with the District's Anti-Harassment Compliance Officer at his/her first convenience.

Members of the School District community, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the complaining individual's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints of harassment under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may have created a hostile work environment and may have constituted unlawful discriminatory harassment based on a Protected Class, the Principal shall report the act of bullying, aggressive behavior and/or harassment to one of the Anti-Harassment Compliance Officers who shall investigate the allegation in accordance with this policy. While the Compliance Officer investigates the allegation, the Principal shall suspend his/her Policy 5517.01 investigation to await the Compliance Officer's written report. The Compliance Officer shall keep the Principal informed of the status of the Policy 5517 investigation and provide him/her with a copy of the resulting written report.

### Anti-Harassment Compliance Officers

The Board designates the following individuals to serve as "Anti-Harassment Compliance Officers" for the District. They are hereinafter referred to as the "Compliance Officers".

High School Principal
Barrett Swope
(937) 845-9487
swopeb@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

Assistant Treasurer
Lynn Serra

BOE 240

(937) 845-9414
serral@bethelk12.org
7490 St. Rt. 201
Tipp City, OH 45371

The names, titles, and contact information of these individuals will be published annually in the parent and staff handbooks.

The Compliance Officers will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the student, other member of the School District community or third party in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept complaints of unlawful harassment directly from any member of the School District community or a visitor to the District, or receive complaints that are initially filed within a school building administrator. Upon receipt of a complaint either directly or through a school building administrator, a Compliance Officer will begin either an informal or formal process (depending on the request of the person alleging the harassment or the nature of the alleged harassment), or the Compliance Officer will designate a specific individual to conduct such a process. In the case of a formal complaint, the Compliance Officer will prepare recommendations for the Superintendent or will oversee the preparation of such recommendations by a designee. All members of the School District community must report incidents of harassment that are reported to them to the Compliance Officer within two (2) business days of learning of the incident.

Any Board employee who directly observes unlawful harassment of a student is obligated, in accordance with this policy, to report such observations to one of the Compliance Officers within two (2) business days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer or designee must contact the student, if age eighteen (18) or older, or the student's parents if under the age eighteen (18), within two (2) school days to advise s/he/them of the Board's intent to investigate the alleged misconduct, including the obligation of the Compliance Officer or designee to conduct an investigation following all the procedures outlined for a formal complaint.

### Investigation and Complaint Procedure

Any student who believes that s/he has been subjected to unlawful harassment may seek resolution of his/her complaint through either the informal or formal procedures as described below. Further, a process for investigating claims of harassment or retaliation and a process for rendering a decision regarding whether the claim of legally prohibited harassment or retaliation was substantiated are set forth below.

Due to the sensitivity surrounding complaints of unlawful harassment or retaliation, time lines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs while the facts are known and potential witnesses are available. Once the formal complaint process is begun, the investigation will be completed in a timely manner (ordinarily, within fifteen (15) business days of the complaint being received).

The informal and formal procedures set forth below are not intended to interfere with the rights of a student to pursue a complaint of unlawful harassment or retaliation with the United States Department of Education Office for Civil Rights.

### Informal Complaint Procedure

The goal of the informal complaint procedure is to stop inappropriate behavior and to investigate and facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes s/he has been unlawfully harassed or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint.

Students who believe that they have been unlawfully harassed may initiate their complaint through this informal complaint process, but are not required to do so. The informal process is only available in those circumstances where the parties (alleged target of harassment and alleged harasser(s)) agree to participate in the informal process.

Students who believe that they have been unlawfully harassed may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

However, all complaints of harassment involving a District employee or any other adult member of the School District community against a student will be formally investigated. Similarly, any allegations of sexual violence will be formally investigated.

As an initial course of action, if a student feels that s/he is being unlawfully harassed and s/he is able and feels safe doing so, the individual should tell or otherwise inform the harasser that the conduct is unwelcome and must stop. Such direct communication should not be utilized in circumstances involving sexual violence. The complaining individual should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the individual if requested to do so. An individual who is uncomfortable or unwilling to inform the harasser of his/her complaint is not prohibited from otherwise filing an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process.

A student who believes s/he has been unlawfully harassed may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one of the Compliance Officers.

All informal complaints must be reported to one of the Compliance Officers who will either facilitate an informal resolution as described below on his/her own, or appoint another individual to facilitate an informal resolution.

The School District's informal complaint procedure is designed to provide students who believe they are being unlawfully harassed with a range of options designed to bring about a resolution of their concerns. Depending upon the nature of the complaint and the wishes of the student claiming unlawful harassment, informal resolution may involve, but not be limited to, one or more of the following:

BOE 241

A. Advising the student about how to communicate the unwelcome nature of the behavior to the alleged harasser.

B. Distributing a copy of the anti-harassment policy as a reminder to the individuals in the school building or office where the individual whose behavior is being questioned works or attends.

C. If both parties agree, the Compliance Officer may arrange and facilitate a meeting between the student claiming harassment and the individual accused of harassment to work out a mutual resolution. Such a meeting is not appropriate in circumstances involving sexual violence.

While there are no set time limits within which an informal complaint must be resolved, the Compliance Officer or designee will exercise his/her authority to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. Parties who are dissatisfied with the results of the informal complaint process may proceed to file a formal complaint. And, as stated above, parties may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

If a complaint is not resolved through the informal complaint process, if one of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or if the student elects to file a formal complaint initially, the formal complaint process shall be implemented.

A student who believes s/he has been subjected to offensive conduct/harassment/retaliation hereinafter referred to as the "Complainant", may file a formal complaint, either orally or in writing, with a teacher, principal, or other District employee at the student's school, the Compliance Officer, Superintendent, or another District employee who works at another school or at the district level. Due to the sensitivity surrounding complaints of unlawful harassment, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a complaint within thirty (30) calendar days after the conduct occurs while the facts are known and potential witnesses are available. If a Complainant informs a teacher, principal, or other District employee at the student's school, Superintendent, or other District employee, either orally or in writing, about any complaint of harassment, that employee must report such information to the Compliance Officer or designee within two (2) business days.

Throughout the course of the process, the Compliance Officer should keep the parties informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent it is available: the identity of the individual believed to have engaged in, or be engaging in, offensive conduct/harassment/retaliation; a detailed description of the facts upon which the complaint is based; a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

Upon receiving a formal complaint, the Compliance Officer will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the alleged harasser. In making such a determination, the Compliance Officer should consult the Complainant to assess his/her agreement to the proposed action. If the Complainant is unwilling to consent to the proposed change, the Compliance Officer may still take whatever actions s/he deem appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the Compliance Officer or a designee will initiate a formal investigation to determine whether the Complainant has been subjected to offensive conduct/harassment/retaliation.

Simultaneously, the Compliance Officer will inform the individual alleged to have engaged in the harassing or retaliatory conduct, hereinafter referred to as the "Respondent", that a complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the Compliance Officer or a designee will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

A. interviews with the Complainant;

B. interviews with the Respondent;

C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the Compliance Officer or the designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment. The Compliance Officer's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if discriminatory harassment or retaliation occurred, a preponderance of evidence standard will be used. The Compliance Officer may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within ten (10) school days of receiving the report of the Compliance Officer or the designee, the Superintendent must either issue a final decision regarding whether the complaint of harassment has been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

BOE 242

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days. At the conclusion of the additional investigation, the Superintendent shall issue a final written decision as described above.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful harassment/retaliation regardless of whether the student alleging the unlawful harassment/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

**Privacy/Confidentiality**

The School District will employ all reasonable efforts to protect the rights of the Complainant, the individual(s) against whom the complaint is filed, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy and related administrative guidelines shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. All Complainants proceeding through the formal investigation process will be advised that their identities may be disclosed to the Respondent.

During the course of a formal investigation, the Compliance Officer or his/her designee will instruct all members of the School District community and third parties who are interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of a harassment investigation is expected not to disclose any information that s/he learns or that s/he provides during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful harassment by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful harassment is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Any act of retaliation against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation is prohibited.

**Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct**

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent.

**Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension**

The Superintendent will report to the Ohio Department of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

**Education and Training**

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent or designee shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

BOE 243

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any interim measures offered and/or provided to complainants and/or the alleged perpetrators, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student and/or Employee Handbooks or Codes of Conduct);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment;

N. documentation of any training provided to District personnel related to this policy, including but not limited to, notification of the prohibitions and expectations of staff set forth in this policy and the role and responsibility of all District personnel involved in enforcing this policy, including their duty to report alleged violations of this policy and/or conducting an investigation of an alleged violation of this policy;

O. documentation that any rights or opportunities that the District made available to one party during the investigation were made available to the other party on equal terms;

P. copies of any notices sent to the alleged perpetrator/responding party of the allegations constituting a potential violation of this policy;

Q. copies of any notices sent to the complainant and alleged perpetrator in advance of any interview or hearing;

R. copies of any documentation or evidence used during informal and formal disciplinary meetings and hearings, including the investigation report, and any written responses submitted by the complainant or the alleged perpetrator.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 4/12/10
Revised 2/9/15

**© Neola 2018**

BOE 244

Legal

R.C. 4112.02

20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

20 U.S.C. 1681 et seq.

29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967

29 U.S.C. 794, Rehabilitation Act of 1973, as amended

29 U.S.C. 6101, The Age Discrimination Act of 1975

42 U.S.C. 2000d et seq.

42 U.S.C. 2000e et seq.

42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended

42 U.S.C. 1983

National School Boards Association Inquiry and Analysis – May, 2008

**Last Modified by Kayla Reichley on October 21, 2019**

BOE 245



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | EQUAL ACCESS FOR NONDISTRICT-SPONSORED, STUDENT CLUBS AND ACTIVITIES |
| Code | po5730 |
| Status | Active |
| Adopted | March 10, 2008 |

**5730 - EQUAL ACCESS FOR NONDISTRICT-SPONSORED, STUDENT CLUBS AND ACTIVITIES**

The Board of Education will not permit the use of school facilities by nondistrict-sponsored student clubs and activities or District- sponsored, noncurriculum-related clubs and activities during instructional hours. During noninstructional time, however, no group of students, regardless of the size of the group, will be denied an opportunity to meet on the basis of the religious, political, philosophical, or other content of the activity.

An application for permission for nondistrict-sponsored student clubs and activities to meet on school premises shall be made to the Superintendent, who shall grant permission provided that s/he determines that:

    A. the activity has been initiated by students;

    B. attendance at the meeting is voluntary;

    C. no agent or employee of the District will promote, lead, or participate in the meeting;

    D. the meeting does not materially and substantially interfere with the orderly conduct of instructional activities in the school;

    E. nonschool persons do not direct, conduct, control, or regularly attend the activity.

A student-initiated group granted permission to meet on school premises shall be provided the same rights and access and shall be subject to the same administrative guidelines that govern the meetings of student organizations sponsored by this Board, except as provided by this policy. Participation in a student-initiated meeting must be available to all students who wish to attend and cannot be denied on the basis of a student's race, color, creed, religion, gender, national origin, disability, or social or economic status.

The Board will not permit the organization of a fraternity, sorority, or secret society. A student-initiated meeting may be attended by no more than two (2) outside resource persons. The Superintendent may exclude nonstudents from directing, controlling, or attending any such meetings of students.

A professional staff member may be assigned to attend a student-initiated meeting in a custodial capacity but shall not participate in the activity. No professional staff member shall be compelled to attend a student-initiated meeting if the content of the speech at the meeting is contrary to his/her beliefs.

The principal may take such actions as may be necessary to maintain order and discipline on school premises and to protect the safety and well-being of students and staff members.

| | |
|---|---|
| Legal | R.C. 3313.75, 3313.76, 3313.77 |
| | 20 U.S.C. 4071 et seq., Equal Access Act of 1984 |
| | 42 U.S.C. 12101, et seq., Americans with Disabilities Act of 1990 |
| | 42 U.S.C. 2000e, Civil Rights Act of 1964 |

BOE 246