

| | |
|---|---|
| Book | Policy Manual |
| Section | 7000 Property |
| Title | USE OF DISTRICT PREMISES |
| Code | po7510 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | October 12, 2015 |

#### 7510 - **USE OF DISTRICT PREMISES**

The Board of Education believes that school premises should be made available for community purposes, provided that such use does not infringe on the original and necessary purpose of the property or interfere with the educational program of the schools and is harmonious with the purposes of this District.

For purposes of this policy, the terms "school premises" or "premises" refers to all indoor and outdoor structures, facilities, and land owned, rented, or leased by the Board. The term "non-school hours" refers to times prior to and after regular classroom instruction on a day that school is in session, and any day that school is not in session, including weekends, holidays, and vacation breaks.

The Board will permit the use of school premises when such permission has been requested in writing by a responsible organization or a group of at least seven (7) citizens and has been approved by the Superintendent.

School premises shall be available for the below-listed uses. When there are competing interests, approval will be given according to the following priorities:

    A. uses directly related to the schools and the operations of the schools (including giving instructions in any branch of education, learning, or the arts)

    B. uses and groups indirectly related to the schools

    C. meetings of employee associations

    D. community organizations or groups of individuals primarily comprised of District residents/members of the community, including students (during non-school hours) and employees (when not working in the scope of their employment) formed or gathered for

        1. charitable,

        2. civic,

        3. social,

        4. religious,

        5. recreational (e.g., indoor or outdoor games or physical activities, either organized or unorganized, that are undertaken for exercise, relaxation, diversion, sport, or pleasure), and/or

        6. educational
        purposes, provided such meetings and/or entertainment is nonexclusive and open to the general public

School premises may be made available for commercial or profit-making organizations or individuals offering services for profit.

School premises shall also be made available to any certified candidate for public office and any recognized political party or organization for the purpose of conducting public discussions of public questions and issues. School premises shall be free of charge and available only during non-school hours. Users shall abide by all District policies, guidelines, and rules regarding the use of school premises and be liable for any damage incurred. Under no circumstances shall school premises be used to raise funds for political purposes.

The use of school premises shall not be granted for any purpose that is prohibited by law.

Should all or any part of the District's community be struck by a disaster, the Board shall make school premises available, at no charge, for the housing, feeding, and care of victims or potential victims when requested by local, State, or Federal authorities. The Superintendent should meet with the Miami County Sheriff and the Emergency Management Agency to establish a disaster preparedness plan in order to ensure that proper procedures are established to minimize confusion, inefficiency, and disruption of the educational program. (R.C. 5915.02-08)

The Superintendent shall develop administrative guidelines for the granting of permission to use school premises including a schedule of fees which, together with the costs used to determine such fees, must be approved by the Board. Such guidelines are to include the following:

    A. Each user may be required to present evidence of the purchase of organizational liability insurance to the limit prescribed by District administrative guidelines.

BOE 247

B. Use of school equipment in conjunction with the use of school premises must be requested specifically in writing, and may be granted by the procedure by which permission to use school premises is granted. The users of school equipment must accept liability for any damage or loss to such equipment that occurs while it is in their use. Where rules so specify, no item of equipment may be used except by a qualified operator.

C. Users shall be liable financially for damage to the facilities and for proper chaperonage.

No liability shall attach to this District, or any of its employees and officers, specifically as a consequence of permitting access to school premises.

**© Neola 2015**

Legal                         R.C. 3313.75 - .79, 3313.791, 3501.29

                              P.L. 98-377

BOE 248



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | PUBLIC RECORDS |
| Code | po8310 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |

8310 - **PUBLIC RECORDS**

The Board of Education is responsible for maintaining the public records of this District and to make such records available to residents of Ohio for inspection and reproduction.

The Board will utilize the following procedures regarding the availability of public records. "Public records" are defined as any document, device, or item, regardless of physical form or characteristic, including an electronic record created or received by or coming under the jurisdiction of the Board or its employees, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the District. "Electronic record" is defined as a record created, generated, sent, communicated, received, or stored by electronic means. "Public records" do not include medical records, documents containing genetic information, trial preparation records, confidential law enforcement investigatory records, records the release of which is prohibited by State or Federal law, and any other exceptions set forth in R.C. 149.43. Confidential law enforcement investigatory records, medical records, and trial preparation records are as defined in R.C. 149.43. No public records, including, but not limited to personnel records, personnel files, or staff directories or student records shall include the actual/confidential addresses of students, parents, or employees who are participating in the Safe at Home/Address Confidentiality Program administered by the Secretary of State. Such public records and student records shall only contain the address designated by the Secretary of State to serve as the student's, parent's or employee's address.

The District's public records shall be organized and maintained so that they are readily available for inspection and copying. As such, public records will be available for inspection during regular business hours, with the exception of published holidays. The District's public records shall be promptly prepared and made available for inspection. A reasonable period of time may be necessary due to the volume of records requested, the proximity of the location where the records are stored, and/or for the District to review and redact non-public/confidential information contained in the record. Upon request, a person may receive copies of public records, at cost, within a reasonable period of time.

Each request for public records shall be evaluated for a response at the time it is made. Although no specific language is required to make a request, the requester must minimally identify the record(s) requested with sufficient clarity to allow the District to identify, retrieve, and review the record(s). If a requestor makes an ambiguous or overly broad request or has difficulty in making a request for inspection or copies of public records such that the District's Record Officer cannot reasonably identify what public records are being requested, the District Record Officer or designee may deny the request but shall provide the requestor with an opportunity to revise the request by informing the requestor of the manner in which records are maintained by the District and accessed in the ordinary course of business. The request for records shall need not be in writing. The requestor shall not be required to provide his/her identity or the intended use of the requested public record(s).

At the time of the request, the records custodian shall inform the person making the request of the estimated length of time required to gather the records. All requests for public records shall be satisfied or acknowledged by the District promptly following the receipt of the request. If the request for records was in writing, the acknowledgement by the District shall also be in writing.

Any request deemed significantly beyond routine, such as seeking a voluminous number of copies and/or records, or requiring

BOE 249

extensive research, the acknowledgement shall include the following:

    A. an estimated number of business days necessary to satisfy the request

    B. an estimated cost if copies are requested

    C. any items within the request that may be exempt from disclosure

The Superintendent is authorized to grant or refuse access to the records of this District in accordance with the law. Any denial, in whole or in part, of a public records request must include an explanation, including legal authority. If portions of a record are public and portions are exempt, the exempt portions are to be redacted and the rest released. If there are redactions, the requester must be notified of the redaction and/or the redaction must be plainly visible, and each redaction must be accompanied by a supporting explanation, including legal authority. If the request for records was in writing, the explanation shall also be in writing.

A person may obtain copies of the District's public records upon payment of a fee. A person who requests a copy of a public record may request to have said record duplicated on paper, on the same medium on which the District keeps the record, or on any other medium in which the custodian of records determines that said record reasonably can be duplicated as an integral part of normal operations. A person who requests a copy of a public record may also choose to have that record sent to him/her by United States mail or by other means of delivery or transmission provided the person making the request pays in advance for said record as well as the costs for postage and the mailing supplies.

The number of records requested by a person that the District will transmit by U.S. mail shall be limited to ten (10) per month, unless the person certifies, in writing to the District, that the person does not intend to use or forward the requested records, or the information contained in them, for commercial purposes. "Commercial" shall be narrowly defined and does not include reporting or gathering news, reporting gathering information to assist citizen oversight or understanding of the operation or activities of the District, or nonprofit educational research. (R.C. 149.43(B)(7))

Those seeking public records will be charged only the actual cost of making copies.

Documents in electronic mail format are records as defined by the Ohio Revised Code when their content relates to the business of the District (i.e., they serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the District). E-mail shall be treated in the same fashion as records in other formats and shall follow the same retention schedule.

Records in private e-mail accounts are subject to disclosure if their content relates to public business, and all employees or representatives of the District are responsible for retaining e-mails that meet the definition of public records and copying them to their District e-mail account(s) and/or to the records custodian.

The records custodian shall treat such e-mail/records from private accounts as records of the District. These records shall be filed appropriately, retained in accordance with the established schedules, and made available for inspection and copying in accordance with the Public Records Act.

Private e-mail, electronic documents, and documents ("private records") that do not serve to document the District's organization, functions, policies, decisions, procedures, operations or other activities are not public records. Although private records do not fall under Policy 8310 or AG 8310A, they may fall under Policy 8315 – "Information Management" and/or AG 8315 – "Litigation Hold Procedure".

No public record may be removed from the office in which it is maintained except by a Board officer or employee in the course of the performance of his/her duties.

Nothing in this policy shall be construed as preventing a Board member, in the performance of his/her official duties, from inspecting any record of this District, except student records and certain confidential portions of personnel records.

A School District Records Commission shall be established consisting of the Board President, Treasurer, and Superintendent of Schools in accordance with law to judge the advisability of destroying District records. Record retention schedules shall be updated regularly and posted prominently. The Commission shall meet at least once every twelve (12) months.

The Superintendent shall provide for the inspection, reproduction, and release of public records in accordance with this policy and with the Public Records Law. Administrative guidelines shall be developed to provide guidance to District employees in responding to public records requests. The Superintendent shall require the posting and distribution of this policy in accordance with statute.

Revised 12/8/08
Revised 7/12/10

BOE 250

**© Neola 2017**

Legal                R.C. 9.01, 102.03(B), 111.41, 111.42,111.43, 111.46, 111.47, 111.99

R.C. 149.011, 149.41, 149.43, 1306.01, 1347 et seq., 3313.26

R.C. 3319.32, 3319.321

20 U.S.C. 1232g

42 U.S.C. 2000ff et seq., The Genetic Information Nondiscrimination Act

29 C.F.R. Part 1635

BOE 251



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | STUDENT RECORDS |
| Code | po8330 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 13, 2021 |

**8330 - STUDENT RECORDS**

Education must collect, retain, and use information about individual students. Simultaneously, the Board recognizes the need to safeguard students' privacy and restrict access to students' personally identifiable information.

Student "personally identifiable information" ("PII") includes, but is not limited to: the student's name; the name of the student's parent or other family members; the address of the student or student's family; a personal identifier, such as the student's social security number, student number, or biometric record; other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or information requested by a person who the District reasonably believes knows the identity of the student to whom the education record relates.

The Board is responsible for the records of all students who attend or have attended schools in this District. Only records mandated by the State or Federal government and/or necessary and relevant to the function of the School District or specifically permitted by this Board will be compiled by Board employees.

In all cases, permitted, narrative information in student records shall be objectively-based on the personal observation or knowledge of the originator.

Student records shall be available only to students and their parents, eligible students, designated school officials who have a legitimate educational interest in the information, or to other individuals or organizations as permitted by law.

The term "parents" includes legal guardians or other persons standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child). The term "eligible student" refers to a student who is eighteen (18) years of age or older, or a student of any age who is enrolled in a postsecondary institution.

Both parents shall have equal access to student records unless stipulated otherwise by court order or law. In the case of eligible students, parents may be allowed access to the records without the student's consent, provided the student is considered a dependent under section 152 of the Internal Revenue Code.

A school official is a person employed by the Board as an administrator, supervisor, teacher/instructor (including substitutes), or support staff member (including health or medical staff and law enforcement unit personnel); and a person serving on the Board. The Board further designates the following individuals and entities as "school officials" for the purpose of FERPA:

 A. persons or companies with whom the Board has contracted to perform a specific task (such as an attorney, auditor, insurance representative, or medical consultant), and

 B. contractors, consultants, volunteers or other parties to whom the Board has outsourced a service or function otherwise performed by the Board employees (e.g. a therapist, authorized information technology (IT) staff, and approved online educational service providers)

The above-identified outside parties must (a) perform institutional services or functions for which the Board would otherwise use it employees, (b) be under the direct control of the Board with respect to the use and maintenance of education records, and (c) be subject to the requirements of 34 C.F.R. 99.33(a) governing the use and re-disclosure of PII from education records.

Finally, a parent or student serving on an official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his/her tasks (including volunteers) is also considered a "school official" for purposes of FERPA provided s/he meets the above-referenced criteria applicable to other outside parties.

"Legitimate educational interest" is defined as a "direct or delegated responsibility for helping the student achieve one (1) or more of the educational goals of the District" or if the record is necessary in order for the school official to perform an administrative, supervisory, or instructional task or to perform a service or benefit for the student or the student's family. The Board directs that reasonable and appropriate methods (including but not limited to physical and/or technological access controls) are utilized to control access to student records and to make certain that school officials obtain access to only those education records in which they have legitimate educational interest.

The Board authorizes the administration to:

 A. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a private or public school or school district in which a student of this District is enrolled, seeks or intends to enroll, or is instructed to enroll, on a full-time or part-time basis, upon condition that:

**BOE 252**

1. a reasonable attempt is made to notify the student's parent or eligible student of the transfer (unless the disclosure is initiated by the parent or eligible student; or the Board's annual notification - Form 8330 F9 - includes a notice that the Board will forward education records to other agencies or institutions that have requested the records and in which the student seeks or intends to enroll or is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer);

2. the parent or eligible student, upon request, receives a copy of the record; and

3. the parent or eligible student, upon request, has an opportunity for a hearing to challenge the content of the record;

B. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a juvenile detention facility in which the student has been placed, or a juvenile court that has taken jurisdiction of the student;

C. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a public school or school district in which a student in foster care is enrolled. Such records shall be transferred within one (1) school day of the enrolling school's request;

D. provide "personally-identifiable" information to appropriate parties, including parents of an eligible student, whose knowledge of the information is necessary to protect the health or safety of the student or other individuals, if there is an articulable and significant threat to the health or safety of a student or other individuals, considering the totality of the circumstances;

E. report a crime committed by a child to appropriate authorities, and, with respect to reporting a crime committed by a student with a disability, to transmit copies of the student's special education and disciplinary records to the authorities for their consideration;

F. release de-identified records and information in accordance with Federal regulations;

G. disclose personally identifiable information from education records, without consent, to organizations conducting studies "for, or on behalf of" the District for purposes of developing, validating or administering predictive tests, administering student aid programs, or improving instruction;

Information disclosed under this exception must be protected so that students and parents cannot be personally identified by anyone other than representative of the organization conducting the study, and must be destroyed when no longer needed for the study. In order to release information under this provision, the District will enter into a written agreement with the recipient organization that specifies the purpose of the study. (See Form 8330 F14.) Further, the following personally identifiable information will not be disclosed to any entity: a student or his/her family member's social security number(s); religion; political party affiliation; voting history; or biometric information.

While the disclosure of personally identifiable information (other than social security numbers, religion, political party affiliation, voting record, or biometric information) is allowed under this exception, it is recommended that de-identified information be used whenever possible. This reduces the risk of unauthorized disclosure.

H. disclose personally identifiable information from education records without consent, to authorized representatives of the Comptroller General, the Attorney General, and the Secretary of Education, as well as State and local educational authorities;

The disclosed records must be used to audit or evaluate a Federal or State supported education program, or to enforce or comply with Federal requirements related to those education programs. A written agreement between the parties is required under this exception. (See Form 8330 F16)

This written agreement must include: (1) designation of the receiving entity as an authorized representative; (2) specification of the information to be disclosed; (3) specification that the purpose of the disclosure is to carry out an audit or evaluation of a government-supported educational program or to enforce or comply with the program's legal requirements; (4) a summary of the activity that includes a description of methodology and an explanation of why personally identifiable information is necessary to accomplish the activity; (5) a statement requiring the organization to destroy all personally identifiable information when it is no longer needed for the study, along with a specific time period in which the information must be destroyed; and (6) a statement of policies and procedures that will protect personally identifiable information from further disclosure or unauthorized use.

Under the audit exception, the District will use "reasonable methods" to verify that the authorized representative complies with FERPA regulations. Specifically, the District will verify, to the greatest extent practical, that the personally identifiable information is used only for the audit, evaluation or enforcement of a government-supported educational program. The District will also ascertain the legitimacy of the audit or evaluation and will only disclose the specific records that the authorized representative needs.

Further, the District will require the authorized representative to use the records only for the specified purpose and not to disclose the information any further, such as for another audit or evaluation. Finally, the District will verify that the information is destroyed when no longer needed for the audit, evaluation or compliance activity.

I. request each person or party requesting access to a student's record to abide by Federal regulations and State laws concerning the disclosure of information.

The Board will comply with a legitimate request for access to a student's records within a reasonable period of time but not more than forty-five (45) days after receiving the request or within such shorter period as may be applicable to students with disabilities. Upon the request of the viewer, a record shall be reproduced, unless said record is copyrighted, or otherwise restricted, and the viewer may be charged a fee equivalent to the cost of handling and reproduction. Based upon reasonable requests, viewers of education records will receive explanation and interpretation of the records.

The Board shall maintain a record of each request for access and each disclosure of personally identifiable information. Such disclosure records will indicate the student, person viewing the record, their legitimate interest in the information, information disclosed, date of disclosure, and date parental/eligible student consent was obtained (if required).

Only "directory information" regarding a student shall be released to any person or party, other than the student or his/her parent, without the written consent of the parent, or, if the student is an eligible student, without the written consent of the student, except to those persons or parties stipulated by the Board's policy and administrative guidelines and/or those specified in the law.

**DIRECTORY INFORMATION**

Each year the Superintendent shall provide public notice to students and their parents of the District's intent to make available, upon request, certain information known as "directory information." The Board designates as student "directory information": a student's name; address; telephone number; date and place of birth; major field of study; participation in officially-recognized activities and sports; height and weight, if a member of an athletic team; dates of attendance; date of graduation; or awards received.

BOE 253

The Board designates school-assigned e-mail accounts as "directory information" for the limited purpose of facilitating students' registration for access to various online educational services, including mobile applications/apps that will be utilized by the student for educational purposes and for inclusion in internal e-mail address books.

School-assigned e-mail accounts shall not be released as directory information beyond this/these limited purpose(s) and to any person or entity but the specific online educational service provider and internal users of the District's Education Technology.

Directory information shall not be provided to any organization for profit-making purposes.

Parents and eligible students may refuse to allow the Board to disclose any or all of such "directory information" upon written notification to the Board within five (5) days after receipt of the Superintendent's annual public notice.

In accordance with Federal and State law, the Board shall release the names, addresses, District-assigned e-mail addresses (if available), and telephone listings of secondary students to a recruiting officer for any branch of the United States Armed Forces or an institution of higher education who requests such information. A secondary school student or parent of the student may request in writing that the student's name, address, District-assigned e-mail addresses (if available), and telephone listing not be released without prior consent of the parent(s)/eligible student. The recruiting officer is to sign a form indicating that "any information received by the recruiting officer shall be used solely for the purpose of informing students about military service and shall not be released to any person other than individuals within the recruiting services of the Armed Forces." The Superintendent is authorized to charge mailing fees for providing this information to a recruiting officer.

Whenever consent of the parent(s)/eligible student is required for the inspection and/or release of a student's health or education records or for the release of "directory information," either parent may provide such consent unless agreed to otherwise in writing by both parents or specifically stated by court order. If the student is under the guardianship of an institution, the Superintendent shall appoint a person who has no conflicting interest to provide such written consent.

The Board may disclose "directory information," on former students without student or parental consent, unless the parent or eligible student previously submitted a request that such information not be disclosed without their prior written consent.

The Board shall not permit the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

**INSPECTION OF INFORMATION COLLECTION INSTRUMENT**

The parent of a student or an eligible student has the right to inspect upon request any instrument used in the collection of personal information before the instrument is administered or distributed to a student. Personal information for this section is defined as individually identifiable information including a student or parent's first and last name, a home or other physical address (including street name and the name of the city or town), a telephone number, or a Social Security identification number. In order to review the instrument, the parent or eligible student must submit a written request to the building principal at least six (6) business days before the scheduled date of the activity. The instrument will be provided to the parent or eligible student within five (5) business days of the principal receiving the request.

The Superintendent shall directly notify the parent(s) of a student and eligible students, at least annually at the beginning of the school year, of the specific or approximate dates during the school year when such activities are scheduled or expected to be scheduled.

This section does not apply to the collection, disclosure, or use of personal information collected from students for the exclusive purpose of developing, evaluating, or providing educational products or services for, or to, students or educational institutions, such as the following:

    A. college or other postsecondary education recruitment, or military recruitment

    B. book clubs, magazine, and programs providing access to low-cost literary products

    C. curriculum and instructional materials used by elementary and secondary schools

    D. tests and assessments used by elementary and secondary schools to provide cognitive, evaluative, diagnostic, clinical, aptitude, or achievement information about students (or to generate other statistically useful data for the purpose of securing such tests and assessments) and the subsequent analysis and public release of the aggregate data from such tests and assessments

    E. the sale by students of products or services to raise funds for school- related or education-related activities

    F. student recognition programs

The Superintendent is directed to prepare administrative guidelines so that students and parents are adequately informed each year regarding their rights to:

    A. inspect and review the student's education records;

    B. request amendments if the parent believes the record is inaccurate, misleading, or violates the student's privacy rights;

    C. consent to disclosures of personally-identifiable information contained in the student's education records, except to those disclosures allowed by the law;

    D. challenge Board noncompliance with a parent's request to amend the records through a hearing;

    E. file a complaint with the United States Department of Education;

    F. obtain a copy of the Board's policy and administrative guidelines on student records.

The Superintendent shall also develop procedural guidelines for:

    A. the proper storage and retention of records including a list of the type and location of records;

    B. informing Board employees of the Federal and State laws concerning student records.

The Board authorizes the use of the microfilm process or electromagnetic processes of reproduction for the recording, filing, maintaining, and preserving of

BOE 254

records.

No liability shall attach to any member, officer, or employee of this Board as a consequence of permitting access or furnishing student records in accordance with this policy and regulations.

Any entity receiving personally identifiable information pursuant to a study, audit, evaluation or enforcement/compliance activity must comply with all FERPA regulations. Further, such an entity must enter into a written contract with the Board of Education delineating its responsibilities in safeguarding the disclosed information. Specifically, the entity must demonstrate the existence of a sound data security plan or data stewardship program, and must also provide assurances that the personally identifiable information will not be redisclosed without prior authorization from the Board. Further, the entity conducting the study, audit, evaluation or enforcement/compliance activity is required to destroy the disclosed information once it is no longer needed or when the timeframe for the activity has ended, as specified in its written agreement with the Board of Education. See Form 8330 F14 and Form 8330 F16 for additional contract requirements.

**SAFE AT HOME/ADDRESS CONFIDENTIALITY PROGRAM**

If a parent (or adult student), presents information to the District certifying that the parent (or adult student), his/her child, or a member of the parent's household is a participant in the Safe at Home/Address Confidentiality Program administered by the Secretary of State, the Board shall refrain from including the student's actual/confidential residential address in any student records or files (including electronic records and files) or disclosing the student's actual/confidential residential address when releasing student records. Since student records are available to non-custodial parents, designated school officials who have a legitimate educational interest in the information, and other individuals or organizations as permitted by law (including the public in some situations), the Board shall only list the address designated by the Secretary of State to serve as the student's address in any student records or files, including electronic records and files. Further, the Board shall use the student's designated address for any and all communications and correspondence between the Board and the parent(s) of the student (or adult student). The student's actual/confidential residential address shall be maintained in a separate confidential file that is not accessible to the public or any employees without a legitimate purpose.

Although the student's actual/confidential address will not be available for release as directory information, the parent (or adult student) may also request that the student's name and telephone number be withheld from any release of directory information. Additionally, if applicable, the student's parent's school, institution of higher education, business, or place of employment (as specified on an application to be a program participant or on a notice of change of name or address) shall be maintained in a confidential manner.

If a non-custodial parent presents a subpoena or court order stating that s/he should be provided with copies or access to a student's records, the District will redact the student's actual/confidential address and telephone number from the student's records before complying with the order or subpoena. The District will also notify the custodial/residential parent of the release of student records in accordance with the order or subpoena.

The intentional disclosure of student's actual/confidential residential address is prohibited. Any violations could result in disciplinary action or criminal prosecution.

2021 Solomon Amendment: Subtitle C- General Service Authorities and Correction of Military Records SEC. 521.

Revised 7/13/09
Revised 7/9/12
Revised 12/8/14
Revised 10/10/16
Revised 4/10/17

**© Neola 2021**

| Legal | R.C. 9.01, 111.41, 111.42, 111.43, 111.46, 111.47, 111.99 |
|---|---|
| | R.C. 149.41, 149.43, 1347 et seq., 3313.33, 3319.321 |
| | 34 C.F.R. Part 99 |
| | 20 U.S.C., Section 1232f through 1232i (FERPA) |
| | 26 U.S.C. 152 |
| | 20 U.S.C. 1400 et seq., Individuals with Disabilities Education Improvement Act |
| | 20 U.S.C. 7165(b) |
| | 20 U.S.C. 7908 |

BOE 255



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | PROTECTIVE FACIAL COVERINGS DURING PANDEMIC/EPIDEMIC EVENTS |
| Code | po8450.01 |
| Status | Active |
| Adopted | January 11, 2021 |

**8450.01 - PROTECTIVE FACIAL COVERINGS DURING PANDEMIC/EPIDEMIC EVENTS**

During times of elevated communicable disease community spread (pandemic or epidemic), the Superintendent will issue periodic guidance through Board of Education plans/resolution(s) in alignment with public health officials and/or in accordance with government edicts and including any Pandemic Plan developed by the District's Pandemic Response Team under Policy 8420.01.

School settings can be a source of community spread. Wearing face masks/coverings is especially important during these times and can help mitigate the risk of exposure from person to person.

As such, during times of elevated communicable disease community spread, the Superintendent may activate this policy by notifying the school community, requiring all school staff, volunteers and visitors (including vendors) to wear appropriate face masks/coverings on school grounds unless it is unsafe to do so or where doing so would significantly interfere with the Districts educational or operational processes.

Face masks/shields will be provided by the District to employees. Alternatively, employees may elect to wear their own face coverings if they meet the requirements of this policy as well as any requirements issued by State or local health departments.

In addition, the Board may require that students shall wear a face mask unless they are unable to do so for a health or developmental reason. Efforts will be made to reduce any social stigma for a student who, for medical or developmental reasons, cannot and should not wear a mask.

If face masks/coverings are required, and no exception is applicable, students shall be subject to disciplinary action in accordance with the Student Code of Conduct/Student Discipline Code, and in accordance with policies of the Board and/or may be reassigned by the Superintendent to an online/virtual learning environment if the Superintendent determines that reassignment is necessary to protect the health and safety of the student or others.

During times of elevated communicable disease community spread as determined by the Board in consultation with health professionals, all students are required to wear masks while being transported on District school buses or other modes of school transportation or while waiting for a school bus outdoors and unable to maintain a distance of six (6) feet or more from individuals who are not members of their household.

**Use of Mask/Face Covering**

Face coverings/masks should:

    A. fully cover the mouth, nose, and chin;

    B. fit snugly against the side of the face so there are no gaps;

    C. not create difficulty breathing while worn; and

    D. be held securely through either a tie, elastic, etc. to prevent slipping.

Facial masks/coverings generally should not include surgical masks or respirators unless medically indicated (as those should be reserved for healthcare workers) or masks designed to be worn for costume purposes.

All employee facial masks/coverings shall meet the requirements of the appropriate dress/staff grooming policies (Policy 3216/4216). All student facial masks/coverings shall meet the requirements of the appropriate Student Code of Conduct/Student Discipline Code and Policy 5511 Dress and Grooming.

Any person may be required to temporarily remove a face mask or covering when instructed to do so for identification or security purposes. Failure to comply with such a request violates this policy and may lead to disciplinary or other action.

Exceptions to the use of masks/face coverings include when:

    A. facial masks/coverings in the school setting are prohibited by law or regulation;

    B. facial masks/coverings are in violation of documented industry standards;

    C. facial masks/coverings are not advisable for health reasons;

    D. facial masks/coverings are in violation of the school's documented safety policies;

    E. facial masks/coverings are not required when the individual works alone in an assigned work area;

**BOE 256**

F. there is a functional (practical) reason for a staff member or volunteer not to wear a facial mask/covering in the workplace;

G. settings where masks might present a safety hazard (i.e. science labs);

H. individuals have difficulty wearing a face covering;

I. the individual is communicating with students who are hearing impaired or otherwise disabled, where an accommodation is appropriate or necessary;

J. the individual is actively participating in outdoor recess and/or physical activity where students are able to maintain a distance of six (6) feet or more or athletic practice, scrimmage, or competition that is permitted under a separate Department of Health order;

K. the individual is seated and actively consuming food or beverage;

L. students and staff can maintain distancing of at least six (6) feet and removal of the facial covering is necessary for instructional purposes, including instruction in foreign language, English language for non-native speakers, and other subjects where wearing a facial covering would prohibit participation in normal classroom activities, such as playing an instrument;

M. students are able to maintain a distance of six (6) feet or more and a mask break is deemed necessary by the educator supervising the education setting;

N. an established sincerely held religious requirement exists that does not permit a facial covering.

The Board may be required to provide written justification to the local health officials upon request explaining why a staff member is not required to wear a facial covering in the school. Therefore, if any exceptions are made to the requirement for facial coverings, the request for such exception must be submitted in writing to the individual's supervisor with appropriate documentation provided. A decision on the request will be provided in writing.

**Use of Face Shields**

Face shields that wrap around the face and extend below the chin may be permitted as an alternative to face masks/coverings with permission of the Superintendent as the Board recognizes that face shields may be useful in some situations, including:

A. when interacting with students, such as those with disabilities, where communication could be impacted;

B. when interacting with English-language learners or when teaching a foreign language;

C. settings where masks might present a safety hazard (i.e. science labs); or

D. for individuals who have difficulty wearing a face covering.

If employees receive approval from the District administration after discussing their request not to wear a face mask/covering/shield due to a physical, mental, or developmental health condition, and/or if wearing a mask/covering/shield would lead to a medical emergency or would introduce significant safety concerns, the District administration may also discuss other possible accommodations for the staff member. Such discussion shall follow Board policies and guidelines under the ADA.

School nurses or staff who care for individuals with symptoms consistent with those of a communicable disease must use appropriate personal protective equipment (PPE), provided by the school, in accordance with OSHA standards.

When facial masks/coverings are required by the Board, and no exception has been applied, staff members who violate this policy shall be subject to disciplinary action in accordance with policies of the Board.

**© Neola 2020**

Legal                              R.C. 3313.20, 3313.60, 3313.661, 3313.665

BOE 257



| Book | Policy Manual |
|---|---|
| Section | 8000 Operations |
| Title | FOOD SERVICES |
| Code | po8500 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 14, 2022 |

**8500 - FOOD SERVICES**

The Board of Education shall provide cafeteria facilities in all school facilities where space and facilities permit and will provide food service for the purchase and consumption of meals for all students. The Board shall also provide a breakfast program in accordance with procedures established by the Department of Education. The Board shall annually encumber the funds needed to operate the program.

The food service program shall comply with Federal and State regulations pertaining to the selection, preparation, consumption, and disposal of food and beverages, including but not limited to the current USDA's school meal pattern requirements and the USDA Smart Snacks in School nutrition standards, as well as to the fiscal management of the program.

The Board does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or gender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities. Students and all other members of the School District community and third parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. See Policy 2260 – Nondiscrimination and Access to Equal Educational Opportunity.

The Board shall approve and implement nutrition standards governing the types of food and beverages that may be sold on the premises of its schools and shall specify the time and place each type of food or beverage may be sold. In adopting such standards, the Board shall:

    A. consider the nutritional value of each food or beverage;

    B. consult with a dietitian licensed under R.C. Chapter 4759, a dietetic technician registered by the commission on dietetic registration, or a school nutrition specialist certified or credentialed by the school nutrition association;

    C. consult and incorporate to the maximum extent possible the dietary guidelines for Americans jointly developed by the United States Department of Agriculture (USDA) and the United States Department of Health and Human Services; and

    D. consult and incorporate the USDA Smart Snacks in School nutrition guidelines.

No food or beverage may be sold on any school premises except in accordance with the standards approved by the Board.

In addition, as required by law, a food safety program that is based on the principles of the Hazard Analysis and Critical Control Point (HACCP) system shall be implemented with the intent of preventing food-borne illnesses. For added safety and security, access to the facility and the food stored and prepared therein shall be limited to food service program staff and other authorized persons.

The Board shall provide a Federal food service program for students during summer intervention programs that are mandated under Federal law. If the Board determines that it is unable to provide a Federal food service program during the summer, for financial reasons, the Board will communicate that decision to its residents in a manner it determines to be appropriate.

During all times while the food service program is operating and students are being served food, at least one (1) employee shall be present in the area in which the food is being consumed who has received instruction in methods to prevent choking and demonstrated an ability to perform the Heimlich maneuver.

**Substitutions**

If determined appropriate by a student's Section 504 team, substitutions to the standard meal requirements shall be made, at no additional charge, for students for whom a health care provider who has prescriptive authority in the State of Ohio has provided medical certification that the student has a disability that restricts his/her diet, in accordance with the criteria set forth in 7 CFR Part 15b. To qualify for such substitutions the medical certification must identify:

    A. the student's disability and the major life activity affected by the disability;

    B. an explanation of why the disability affects the student's diet; and

    C. the food(s) to be omitted from the student's diet and the food or choice of foods that must be substituted (e.g., caloric modifications or use of liquid nutritive formula).

If determined appropriate by a team of qualified individuals including, but not limited to, the Principal, school nurse, parent, Director of Food Services, and/or substitutions to the standard meal requirements may be made, at no additional charge, for a student who is not a "person with a disability," but has a

BOE 258

signed statement from a qualified medical authority that the student cannot consume certain food items due to medical or other special dietary needs. To qualify for such consideration and substitutions the medical statement must identify:

    A. the medical or dietary need that restricts the student's diet; and

    B. the food(s) to be omitted from the student's diet and the food(s) or choice of foods that may be substituted.

For students without disabilities who need a nutritionally equivalent milk substitute, only a signed request by a parent or guardian is required. While the request must specify the medical or other special dietary need that restricts the student's diet (i.e., precludes the student's consumption of cow's milk), medical certification may not be required.

Meals sold by the school may be purchased by students and staff members and community residents in accordance with administrative guidelines established by the Superintendent. Meals may be made available, free of charge, to senior citizens who are serving as volunteers to the District.

The operation and supervision of the food-service program shall be the responsibility of the Head Cook. In accordance with Federal law, the Head Cook shall take such actions as are necessary to obtain a minimum of two (2) food safety inspections per school year, which are conducted by the State or local governmental agency responsible for food safety inspections. The report of the most recent inspection will be posted in a publicly visible location, and a copy of the report will be available upon request.

A periodic review of the food-service accounts shall be made by the Treasurer. Any surplus funds from the National School Lunch Program or the Healthy, Hunger-Free Kids Act of 2010 (P.L. 111-296) shall be used to reduce the cost of the service to students or to purchase cafeteria equipment. Surplus funds from a-la-carte foods may accrue to the food-service program.

Bad debt incurred through the inability to collect meal payment from students is not an allowable cost chargeable to any Federal program. Any related collection cost, including legal cost, arising from such bad debt after they have been determined to be uncollectable are also unallowable.

The Superintendent is authorized to develop and implement an administrative guideline regarding meal charge procedures. This guideline will provide consistent directions for students who are eligible for reduced price or paid meals but do not have funds in their account or in hand to cover the cost of their meal at the time of service and shall also address feeding students with unpaid meal balances without stigmatizing them.

This guideline shall be provided in writing to all households at the start of each school year and to households transferring to the school or School District during the school year.

With regard to the operation of the school food service program, the Superintendent shall require:

    A. the maintenance of sanitary, neat premises free from fire and health hazards;

    B. the preparation of food that complies with Federal food safety regulations;

    C. the planning and execution of menus in compliance with USDA requirements;

    D. the purchase of food and supplies in accordance with State and Federal law, USDA regulations, and Board policy: (see Policy 1130, Policy 1200, Policy 3113, Policy 3210, Policy 3214, Policy 4113, Policy 4210, Policy 4214, and Policy 6460)

    E. complying with food holds and recalls in accordance with USDA regulations;

    F. the administration, accounting, and disposition of food-service funds pursuant to Federal and State law and USDA regulations;

    G. the safekeeping and storage of food and food equipment pursuant to State and Federal law and USDA regulations;

    H. the regular maintenance and replacement of equipment;

    I. all District employees whose salaries are paid for with USDA or non-Federal funds used to meet a match or cost share requirement must comply with the District's time and effort record-keeping policy (see Policy 6116).

In accordance with the nutritional standards adopted by the Board, the placement of vending machines in any classroom where students are provided instruction unless the classroom is also used to serve meals to students is prohibited.

The District shall serve only nutritious food in accordance with the nutritional standards adopted by the Board in compliance with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines. Foods and beverages in competition with the District's food service program must comply with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines, and may only be sold in accordance with Board Policy 8550.

The Superintendent will require that the food-service program serve foods in the schools of the District that are wholesome and nutritious and reinforce the concepts taught in the classroom.

The Superintendent is responsible for implementing the food-service program in accordance with the adopted nutrition standards and shall provide a report regarding the District's compliance with the standards at one of its regular meetings annually.

Revised 6/30/11
Revised 10/10/11
Revised 12/8/14
Revised 10/12/15
Revised 3/14/16
Revised 4/10/17
Revised 4/8/19
Revised 11/26/19
Revised 5/10/21

© Neola 2022

BOE 259

Legal

R.C. 3313.81, 3313.811-815

A.C. 3301-91

42 U.S.C. 1758

Healthy, Hunger-Free Kids Act of 2010 and Richard B. Russell National School Lunch Act, 42 U.S.C. 1751 et seq.

Child Nutrition Act of 1966, 42 U.S.C. 1771 et seq.

7 CFR Parts 15b, 210, 215, 220, 225, 226, 227, 235, 240, 245, 3015

OMB Circular No. A–87USDA Smart Snacks in School Food Guidelines (effective July 1, 2014)

SP 32-2015 Statements Supporting Accommodations for Children with Disabilities in the Child Nutrition Programs

BOE 260



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | FOOD SERVICES |
| Code | po8500 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | November 26, 2019 |
| Retired | May 10, 2021 |

## 8500 - **FOOD SERVICES**

The Board of Education shall provide cafeteria facilities in all school facilities where space and facilities permit and will provide food service for the purchase and consumption of meals for all students. The Board shall also provide a breakfast program in accordance with procedures established by the Department of Education. The Board shall annually encumber the funds needed to operate the program.

The food service program shall comply with Federal and State regulations pertaining to the selection, preparation, consumption, and disposal of food and beverages, including but not limited to the current USDA's school meal pattern requirements and the USDA Smart Snacks in School nutrition standards, as well as to the fiscal management of the program.

The Board does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or transgender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities. Students and all other members of the School District community and third parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. See Policy 2260 – Nondiscrimination and Access to Equal Educational Opportunity.

The Board shall approve and implement nutrition standards governing the types of food and beverages that may be sold on the premises of its schools and shall specify the time and place each type of food or beverage may be sold. In adopting such standards, the Board shall:

    A.  consider the nutritional value of each food or beverage;

    B.  consult with a dietitian licensed under R.C. Chapter 4759, a dietetic technician registered by the commission on dietetic registration, or a school nutrition specialist certified or credentialed by the school nutrition association;

    C.  consult and incorporate to the maximum extent possible the dietary guidelines for Americans jointly developed by the United States Department of Agriculture (USDA) and the United States Department of Health and Human Services; and

    D.  consult and incorporate the USDA Smart Snacks in School nutrition guidelines.

No food or beverage may be sold on any school premises except in accordance with the standards approved by the Board.

In addition, as required by law, a food safety program that is based on the principles of the Hazard Analysis and Critical Control Point (HACCP) system shall be implemented with the intent of preventing food-borne illnesses. For added safety and security, access to the facility and the food stored and prepared therein shall be limited to food service program staff and other authorized persons.

The Board shall provide a Federal food service program for students during summer intervention programs that are mandated under Federal law. If the Board determines that it is unable to provide a Federal food service program during the summer, for financial reasons, the Board will communicate that decision to its residents in a manner it determines to be appropriate.

During all times while the food service program is operating and students are being served food, at least one (1) employee shall be present in the area in which the food is being consumed who has received instruction in methods to prevent choking and demonstrated an ability to perform the Heimlich maneuver.

### **Substitutions**

If determined appropriate by a student's Section 504 team, substitutions to the standard meal requirements shall be made, at no additional charge, for students for whom a health care provider who has prescriptive authority in the State of Ohio has provided medical certification that the student has a disability that restricts his/her diet, in accordance with the criteria set forth in 7 CFR Part 15b. To qualify for such substitutions the medical certification must identify:

    the student's disability and the major life activity affected by the disability;

BOE 261

A. the student's disability and the major life activity affected by the disability;

B. an explanation of why the disability affects the student's diet; and

C. the food(s) to be omitted from the student's diet and the food or choice of foods that must be substituted (e.g., caloric modifications or use of liquid nutritive formula).

If determined appropriate by a team of qualified individuals including, but not limited to, the Principal, school nurse, parent, and/or Director of Food Services, substitutions to the standard meal requirements may be made, at no additional charge, for a students who is not a "disabled persons," but has a signed statement from a qualified medical authority that the student cannot consume certain food items due to medical or other special dietary needs. To qualify for such consideration and substitutions the medical statement must identify:

A. the medical or dietary need that restricts the student's diet; and

B. the food(s) to be omitted from the student's diet and the food(s) or choice of foods that may be substituted.

Meals sold by the school may be purchased by students and staff members and community residents in accordance with administrative guidelines established by the Superintendent. Meals may be made available, free of charge, to senior citizens who are serving as volunteers to the District.

The operation and supervision of the food-service program shall be the responsibility of the Head Cook. In accordance with Federal law, the Head Cook shall take such actions as are necessary to obtain a minimum of two (2) food safety inspections per school year, which are conducted by the State or local governmental agency responsible for food safety inspections. The report of the most recent inspection will be posted in a publicly visible location, and a copy of the report will be available upon request.

A periodic review of the food-service accounts shall be made by the Treasurer. Any surplus funds from the National School Lunch Program or the Healthy, Hunger-Free Kids Act of 2010 (P.L. 111-296) shall be used to reduce the cost of the service to students or to purchase cafeteria equipment. Surplus funds from a-la-carte foods may accrue to the food-service program.

Bad debt incurred through the inability to collect meal payment from students is not an allowable cost chargeable to any Federal program. Any related collection cost, including legal cost, arising from such bad debt after they have been determined to be uncollectable are also unallowable.

The Superintendent is authorized to develop and implement an administrative guideline regarding meal charge procedures. This guideline will provide consistent directions for students who are eligible for reduced price or paid meals but do not have funds in their account or in hand to cover the cost of their meal at the time of service.

This guideline shall be provided in writing to all households at the start of each school year and to households transferring to the school or School District during the school year.

With regard to the operation of the school food service program, the Superintendent shall require:

A. the maintenance of sanitary, neat premises free from fire and health hazards;

B. the preparation of food that complies with Federal food safety regulations;

C. the planning and execution of menus in compliance with USDA requirements;

D. the purchase of food and supplies in accordance with law State and Federal law, USDA regulations, and Board policy; (see Policy 1130, Policy 1214, Policy 3113, Policy 3214, Policy 4113, Policy 4214, and Policy 6460)

E. complying with food holds and recalls in accordance with USDA regulations;

F. the administration, accounting, and disposition of food-service funds pursuant to Federal and State law and USDA regulations;

G. the safekeeping and storage of food and food equipment pursuant to State and Federal law and USDA regulations;

H. the regular maintenance and replacement of equipment;

I. all District employees whose salaries are paid for with USDA or non-Federal funds used to meet a match or cost share requirement must comply with the District's time and effort record-keeping policy (see Policy 6116).

In accordance with the nutritional standards adopted by the Board, the placement of vending machines in any classroom where students are provided instruction unless the classroom is also used to serve meals to students is prohibited.

The District shall serve only nutritious food in accordance with the nutritional standards adopted by the Board in compliance with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines. Foods and beverages in competition with the District's food service program must comply with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines, and may only be sold in accordance with Board Policy 8550.

The Superintendent will require that the food-service program serve foods in the schools of the District that are wholesome and nutritious and reinforce the concepts taught in the classroom.

The Superintendent is responsible for implementing the food-service program in accordance with the adopted nutrition standards and shall provide a report regarding the District's compliance with the standards at one of its regular meetings annually.

Revised 6/30/11
Revised 10/10/11
Revised 12/8/14

BOE 262

Revised 10/12/15
Revised 3/14/16
Revised 4/10/17
Revised 4/8/19

**© Neola 2019**

Legal                       R.C. 3313.81, 3313.811-815

                            A.C. 3301-91

                            42 U.S.C. 1758

                            Healthy, Hunger-Free Kids Act of 2010 and Richard B. Russell National School Lunch Act, 42 U.S.C. 1751 et
                            seq.

                            Child Nutrition Act of 1966, 42 U.S.C. 1771 et seq.

                            7 CFR Parts 15b, 210, 215, 220, 225, 226, 227, 235, 240, 245, 3015

                            OMB Circular No. A–87USDA Smart Snacks in School Food Guidelines (effective July 1, 2014)

                            SP 32-2015 Statements Supporting Accommodations for Children with Disabilities in the Child Nutrition
                            Programs

**Last Modified by Brittany Wiggins on May 20, 2021**

BOE 263



| Book | Policy Manual |
|---|---|
| Section | 8000 Operations |
| Title | FOOD SERVICES |
| Code | po8500 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | April 8, 2019 |
| Retired | November 26, 2019 |

### 8500 - **FOOD SERVICES**

The Board of Education shall provide cafeteria facilities in all school facilities where space and facilities permit, and will provide food service for the purchase and consumption of lunch for all students. The Board shall annually encumber the funds needed to operate the program.

The food-service program shall comply with Federal and State regulations pertaining to the selection, preparation, consumption, and disposal of food and beverages, including but not limited to the current USDA's school meal pattern requirements and the USDA Smart Snacks in School nutrition standards, as well as to the fiscal management of the program.

The Board does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or transgender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities. Students and all other members of the School District community and third parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. See Policy 2260 – Nondiscrimination and Access to Equal Educational Opportunity.

The Board shall approve and implement nutrition standards governing the types of food and beverages that may be sold on the premises of its schools and shall specify the time and place each type of food or beverage may be sold. In adopting such standards, the Board shall:

    A. consider the nutritional value of each food or beverage;

    B. consult with a dietitian licensed under R.C. Chapter 4759, a dietetic technician registered by the commission on dietetic registration, or a school nutrition specialist certified or credentialed by the school nutrition association;

    C. consult and incorporate to the maximum extent possible the dietary guidelines for Americans jointly developed by the United States Department of Agriculture (USDA) and the United States Department of Health and Human Services; and

    D. consult and incorporate the USDA Smart Snacks in School nutrition guidelines.

No food or beverage may be sold on any school premises except in accordance with the standards approved by the Board.

In addition, as required by law, a food safety program that is based on the principles of the Hazard Analysis and Critical Control Point (HACCP) system shall be implemented with the intent of preventing food-borne illnesses. For added safety and security, access to the facility and the food stored and prepared therein shall be limited to food service program staff and other authorized persons.

The Board shall provide a Federal food service program for students during summer intervention programs that are mandated under Federal law. If the Board determines that it is unable to provide a Federal food service program during the summer, for financial reasons, the Board will communicate that decision to its residents in a manner it determines to be appropriate.

During all times while the food service program is operating and students are being served food, at least one (1) employee shall be present in the area in which the food is being consumed who has received instruction in methods to prevent choking and demonstrated an ability to perform the Heimlich maneuver.

### Substitutions

If determined appropriate by a student's Section 504 team, substitutions to the standard meal requirements shall be made, at no additional charge, for students for whom a health care provider who has prescriptive authority in the State of Ohio has provided medical certification that the student has a disability that restricts his/her diet, in accordance with the criteria set forth in 7 CFR Part 15b. To qualify for such substitutions the medical certification must identify:

    A. the student's disability and the major life activity affected by the disability;

BOE 264

B. an explanation of why the disability affects the student's diet; and

C. the food(s) to be omitted from the student's diet and the food or choice of foods that must be substituted (e.g., caloric modifications or use of liquid nutritive formula).

If determined appropriate by a team of qualified individuals including, but not limited to, the Principal, school nurse, parent, Director of Food Services, substitutions to the standard meal requirements may be made, at no additional charge, for a students who is not a "disabled persons," but has a signed statement from a qualified medical authority that the student cannot consume certain food items due to medical or other special dietary needs. To qualify for such consideration and substitutions the medical statement must identify:

A. the medical or dietary need that restricts the student's diet; and

B. the food(s) to be omitted from the student's diet and the food(s) or choice of foods that may be substituted.

Lunches sold by the school may be purchased by students and staff members and community residents in accordance with administrative guidelines established by the Superintendent. Lunches may be made available, free of charge, to senior citizens who are serving as volunteers to the District.

The operation and supervision of the food-service program shall be the responsibility of the Head Cook. In accordance with Federal law, the Head Cook shall take such actions as are necessary to obtain a minimum of two (2) food safety inspections per school year, which are conducted by the State or local governmental agency responsible for food safety inspections. The report of the most recent inspection will be posted in a publicly visible location, and a copy of the report will be available upon request.

A periodic review of the food-service accounts shall be made by the Treasurer. Any surplus funds from the National School Lunch Program shall be used to reduce the cost of the service to students or to purchase cafeteria equipment. Surplus funds from a-la-carte foods may accrue to the food-service program.

Bad debt incurred through the inability to collect lunch payment from students is not an allowable cost chargeable to any Federal program. Any related collection cost, including legal cost, arising from such bad debt after they have been determined to be uncollectable are also unallowable.

The Superintendent is authorized to develop and implement an administrative guideline regarding meal charge procedures. This guideline will provide consistent directions for students who are eligible for reduced price or paid meals but do not have funds in their account or in hand to cover the cost of their meal at the time of service.

This guideline shall be provided in writing to all households at the start of each school year and to households transferring to the school or School District during the school year.

With regard to the operation of the school food service program, the Superintendent shall require:

A. the maintenance of sanitary, neat premises free from fire and health hazards;

B. the preparation of food that complies with Federal food safety regulations;

C. the planning and execution of menus in compliance with USDA requirements;

D. the purchase of food and supplies in accordance with law State and Federal law, USDA regulations, and Board policy; (see Policy 1130, Policy 1214, Policy 3113, Policy 3214, Policy 4113, Policy 4214, and Policy 6460)

E. complying with food holds and recalls in accordance with USDA regulations;

F. the administration, accounting, and disposition of food-service funds pursuant to Federal and State law and USDA regulations;

G. the safekeeping and storage of food and food equipment pursuant to State and Federal law and USDA regulations;

H. the regular maintenance and replacement of equipment;

I. all District employees whose salaries are paid for with USDA or non- Federal funds used to meet a match or cost share requirement must comply with the District's time and effort record-keeping policy (see Policy 6116).

In accordance with the nutritional standards adopted by the Board, the placement of vending machines in any classroom where students are provided instruction, unless the classroom is also used to serve meals to students, is prohibited.

The District shall serve only nutritious food in accordance with the nutritional standards adopted by the Board in compliance with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines. Foods and beverages in competition with the District's food-service program must comply with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines, and may only be sold in accordance with Board Policy 8550.

The Superintendent will require that the food service program serve foods in the schools of the District that are wholesome and nutritious and reinforce the concepts taught in the classroom.

The Superintendent is responsible for implementing the food service program in accordance with the adopted nutrition standards and shall provide a report regarding the District's compliance with the standards at one of its regular meetings annually.

Revised 6/30/11
Revised 10/10/11
Revised 12/8/14
Revised 10/12/15

BOE 265

Revised 3/14/16
Revised 4/10/17

**© Neola 2019**

Legal                    R.C. 3313.81, 3313.811-815

                           A.C. 3301-91

                           42 U.S.C. 1758

                           Healthy, Hunger-Free Kids Act of 2010 and Richard B. Russell National School Lunch Act, 42 U.S.C. 1751 et seq.

                           Child Nutrition Act of 1966, 42 U.S.C. 1771 et seq.

                           7 CFR Parts 15b, 210, 215, 220, 225, 226, 227, 235, 240, 245, 3015

                           OMB Circular No. A–87USDA Smart Snacks in School Food Guidelines (effective July 1, 2014)

                           SP 32-2015 Statements Supporting Accommodations for Children with Disabilities in the Child Nutrition Programs

**Last Modified by Kayla Reichley on October 21, 2019**

BOE 266



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | FOOD SERVICES |
| Code | po8500 |
| Status | Retired |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |
| Last Reviewed | April 8, 2019 |

### 8500 - **FOOD SERVICES**

The Board of Education shall provide cafeteria facilities in all school facilities where space and facilities permit, and will provide food service for the purchase and consumption of lunch for all students. The Board shall annually encumber the funds needed to operate the program.

The food-service program shall comply with Federal and State regulations pertaining to the selection, preparation, consumption, and disposal of food and beverages, including but not limited to the current USDA's school meal pattern requirements and the USDA Smart Snacks in School nutrition standards, as well as to the fiscal management of the program.

The Board does not discriminate on the basis of race, color, national origin, sex (including sexual orientation or transgender identity), disability, age (except as authorized by law), religion, military status, ancestry, or genetic information (collectively, "Protected Classes") in its educational programs or activities. Students and all other members of the School District community and third parties are encouraged to promptly report incidents of unlawful discrimination and/or retaliation to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct. See Policy 2260 – Nondiscrimination and Access to Equal Educational Opportunity.

The Board shall approve and implement nutrition standards governing the types of food and beverages that may be sold on the premises of its schools and shall specify the time and place each type of food or beverage may be sold. In adopting such standards, the Board shall:

    A. consider the nutritional value of each food or beverage;

    B. consult with a dietitian licensed under R.C. Chapter 4759, a dietetic technician registered by the commission on dietetic registration, or a school nutrition specialist certified or credentialed by the school nutrition association;

    C. consult and incorporate to the maximum extent possible the dietary guidelines for Americans jointly developed by the United States Department of Agriculture (USDA) and the United States Department of Health and Human Services; and

    D. consult and incorporate the USDA Smart Snacks in School nutrition guidelines.

No food or beverage may be sold on any school premises except in accordance with the standards approved by the Board.

In addition, as required by law, a food safety program that is based on the principles of the Hazard Analysis and Critical Control Point (HACCP) system shall be implemented with the intent of preventing food-borne illnesses. For added safety and security, access to the facility and the food stored and prepared therein shall be limited to food service program staff and other authorized persons.

The Board shall provide a Federal food service program for students during summer intervention programs that are mandated under Federal law. If the Board determines that it is unable to provide a Federal food service program during the summer, for financial reasons, the Board will communicate that decision to its residents in a manner it determines to be appropriate.

During all times while the food service program is operating and students are being served food, at least one (1) employee shall be present in the area in which the food is being consumed who has received instruction in methods to prevent choking and demonstrated an ability to perform the Heimlich maneuver.

Substitutions to the standard meal requirements shall be made, at no additional charge, for students for whom a health care provider who has prescriptive authority in the State of Ohio has provided medical certification that the student has a disability that restricts his/her diet, in accordance with the criteria set forth in 7 CFR Part 15b. To qualify for such substitutions the medical certification must identify:

    A. the student's disability and the major life activity affected by the disability;

    B. an explanation of why the disability affects the student's diet; and

BOE 267

    C. the food(s) to be omitted from the student's diet and the food or choice of foods that must be substituted (e.g., caloric modifications or use of liquid nutritive formula).

Lunches sold by the school may be purchased by students and staff members and community residents in accordance with administrative guidelines established by the Superintendent. Lunches may be made available, free of charge, to senior citizens who are serving as volunteers to the District.

The operation and supervision of the food-service program shall be the responsibility of the Head Cook. In accordance with Federal law, the Head Cook shall take such actions as are necessary to obtain a minimum of two (2) food safety inspections per school year, which are conducted by the State or local governmental agency responsible for food safety inspections. The report of the most recent inspection will be posted in a publicly visible location, and a copy of the report will be available upon request.

A periodic review of the food-service accounts shall be made by the Treasurer. Any surplus funds from the National School Lunch Program shall be used to reduce the cost of the service to students or to purchase cafeteria equipment. Surplus funds from a-la-carte foods may accrue to the food-service program.

Bad debt incurred through the inability to collect lunch payment from students is not an allowable cost chargeable to any Federal program. Any related collection cost, including legal cost, arising from such bad debt after they have been determined to be uncollectable are also unallowable.

The Superintendent is authorized to develop and implement an administrative guideline regarding meal charge procedures. This guideline will provide consistent directions for students who are eligible for reduced price or paid meals but do not have funds in their account or in hand to cover the cost of their meal at the time of service.

This guideline shall be provided in writing to all households at the start of each school year and to households transferring to the school or School District during the school year.

With regard to the operation of the school food service program, the Superintendent shall require:

    A. the maintenance of sanitary, neat premises free from fire and health hazards;

    B. the preparation of food that complies with Federal food safety regulations;

    C. the planning and execution of menus in compliance with USDA requirements;

    D. the purchase of food and supplies in accordance with law State and Federal law, USDA regulations, and Board policy; (see Policy 1130, Policy 1214, Policy 3113, Policy 3214, Policy 4113, Policy 4214, and Policy 6460)

    E. complying with food holds and recalls in accordance with USDA regulations;

    F. the administration, accounting and disposition of food-service funds pursuant to Federal and State law and USDA regulations;

    G. the safekeeping and storage of food and food equipment pursuant to State and Federal law and USDA regulations;

    H. the regular maintenance and replacement of equipment;

    I. all District employees whose salaries are paid for with USDA or non- Federal funds used to meet a match or cost share requirement must comply with the District's time and effort record-keeping policy (see Policy 6116).

In accordance with the nutritional standards adopted by the Board, the placement of vending machines in any classroom where students are provided instruction, unless the classroom is also used to serve meals to students, is prohibited.

The District shall serve only nutritious food in accordance with the nutritional standards adopted by the Board in compliance with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines. Foods and beverages in competition with the District's food-service program must comply with the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition guidelines, and may only be sold in accordance with Board Policy 8550.

The Superintendent will require that the food service program serve foods in the schools of the District that are wholesome and nutritious and reinforce the concepts taught in the classroom.

The Superintendent is responsible for implementing the food service program in accordance with the adopted nutrition standards and shall provide a report regarding the District's compliance with the standards at one of its regular meetings annually.

Revised 6/30/11
Revised 10/10/11
Revised 12/8/14
Revised 10/12/15
Revised 3/14/16

**© Neola 2017**

BOE 268

Legal

R.C. 3313.81, 3313.811-815

A.C. 3301-91

42 U.S.C. 1758

Healthy, Hunger-Free Kids Act of 2010 and Richard B. Russell National School Lunch Act, 42 U.S.C. 1751 et seq.

Child Nutrition Act of 1966, 42 U.S.C. 1771 et seq.

7 CFR Parts 15b, 210, 215, 220, 225, 226, 227, 235, 240, 245, 3015

OMB Circular No. A–87USDA Smart Snacks in School Food Guidelines (effective July 1, 2014)

SP 32-2015 Statements Supporting Accommodations for Children with Disabilities in the Child Nutrition Programs

**Last Modified by Denise Gallagher on July 9, 2019**

BOE 269



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | RELIGIOUS/PATRIOTIC CEREMONIES AND OBSERVANCES |
| Code | po8800 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

## 8800 - RELIGIOUS/PATRIOTIC CEREMONIES AND OBSERVANCES

Decisions of the United States Supreme Court have made it clear that it is not the province of a public school to advance or inhibit religious beliefs or practices. Under the First and Fourteenth Amendments to the Constitution, this remains the inviolate province of the individual and the church of his/her choice. The rights of any minority, no matter how small, must be protected. No matter how well-intended, either official or unofficial sponsorship of religiously-oriented activities by the school are offensive to some and tend to supplant activities which should be the exclusive province of individual religious groups, churches, private organizations, or the family.

District staff members shall not use prayer, religious readings, or religious symbols as a devotional exercise or in an act of worship or celebration. The District shall not act as a disseminating agent for any person or outside agency for any religious or anti-religious document, book, or article. Distribution of such materials on District property by any party shall be in accordance with Policy 7510 and AG 7510A - Use of District Facilities and Policy 9700 and AG 9700 - Relations with Special Interest Groups.

The Board acknowledges that it is prohibited from adopting any policy or rule respecting or promoting an establishment of religion or prohibiting any student from the free, individual, and voluntary exercise or expression of the student's religious beliefs.

Any student enrolled in the District may choose to engage in religious expression before, during, or after school hours in the same manner and to the same extent that a student is permitted to engage in secular activities or expression. However, no student will be required to participate in any religious expression or activities.

Observance of religious holidays through devotional exercises or acts of worship is also prohibited. Acknowledgement of, explanation of, and teaching about religious holidays of various religions is encouraged. Celebration activities involving non-religious decorations and use of secular works are permitted, but it is the responsibility of all faculty members to ensure that such activities are strictly voluntary, do not place an atmosphere of social compulsion or ostracism on minority groups or individuals, and do not interfere with the regular school program.

The Board shall not conduct or sanction a baccalaureate service in conjunction with graduation ceremonies.

The Board shall not include religious invocations, benedictions, or formal prayer at any school-sponsored event.

At the discretion of the Superintendent, a moment of silence may be provided each school day for prayer, reflection, or meditation upon a moral, philosophical, or patriotic theme. However, under no circumstances shall students be compelled to participate.

The flag of the United States shall be raised above each school and/or at other appropriate places during all school sessions, weather permitting. The flag shall be raised before the opening of school and taken down at its close every day.

The mottoes of the United States of America ("In God We Trust") and the State of Ohio ("With God, All Things Are Possible") shall be displayed in an appropriate manner in a classroom, auditorium, or cafeteria of a school building of the District, if copies of the mottoes or money to purchase copies of the mottoes are donated to the District. The donated or purchased copies of the mottoes shall meet the applicable design requirements as provided by statute.

Furthermore, the Board requires that an observance be scheduled each year on or about Veterans Day to convey the meaning and significance of that day to all students and staff. The amount of time each school devotes to this observance shall be at least one (1) hour or, in schools that schedule class periods of less than one (1) hour, at least one (1) standard class period. The Board shall determine the specific activities to constitute observance in each school in the District after consulting with the school's administrators.

Districts are required to hold an educational program pertaining to the United States Constitution on September 17th of each year, Constitution Day. Whenever September 17th falls on a Saturday, Sunday, or holiday, the Constitution Day observance shall be held during the preceding or following week.

Professional staff members are authorized to lead students in the Pledge of Allegiance at an appropriate time each school day. However, no student shall be compelled/required to participate in the recitation of the Pledge. Additionally, the Board prohibits the intimidation of any student by other students or staff for the purposes of coercing participation. The Superintendent shall develop administrative guidelines that require any staff member who conducts this activity does it at an appropriate time, in an appropriate manner, and with due regard to the need to protect the rights and the privacy of a nonparticipating student. Wording of the Pledge of Allegiance as set forth in the United States Code shall not be altered.

BOE 270

Revised 4/12/10
Revised 6/10/13
Revised 2/9/15

© Neola 2020

Legal R.C. 3313.601, 3313.602, 3313.76, 3313.77, 3313.801, 3314.03, 3314.03(A)(11)(h), 3320.01, 3320.02, 3320.03

20 U.S.C. 4071 et seq.

Section 111 of Division J of Publ. L 108-447

Gregoire vs. Centennial School District, 907 F.2d 1366, (3rd Cir. 1990)

Lee vs. Weisman, 505 U.S. 577 (1992)

Last Modified by Denise Gallagher on January 26, 2021

BOE 271



| Book | Policy Manual |
|------|---------------|
| Section | 9000 Relations |
| Title | RELATIONS WITH SPECIAL INTEREST GROUPS |
| Code | po9700 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | October 10, 2016 |

## 9700 - **RELATIONS WITH SPECIAL INTEREST GROUPS**

Any request from civic institutions, charitable organizations, or special interest groups which involve such activities as patriotic functions, contests, exhibits, sales of products to and by students, sending promotional materials home with students, graduation prizes, fund raising, and free teaching materials must be carefully reviewed to ensure that such activities promote student interests.

It is the policy of the Board of Education that students, staff members, and District facilities not be used for promoting the interests of any nonschool agency or organization, public or private, without the approval of the Board or its designee; and any such approval, granted for whatever cause or group, shall not be construed as an endorsement of said cause or group by this Board.

### A. **Political Interests**

All materials or activities proposed by outside political sources for student or staff use or participation shall be reviewed by the principal on the basis of their educational contribution to part or all of the school program, benefit to students, and no such approval shall have the primary purpose of advancing the special interest of the proposing group.

The Board shall permit the use of educational materials, programs, and equipment which contains commercial messages providing the content of such messages and the manner of presentation has been approved by the Superintendent and is in compliance with the District's administrative guidelines.

In addition, the Board shall permit school organizations and/or school-affiliated groups to sell space in District facilities, on District property, or in District publications for the express purpose of advertising the products or services of a commercial organization, providing the content of such advertisements and the manner of their presentation has been approved by the Superintendent and is in compliance with the District's administrative guidelines.

Outside speakers representing commercial organizations will be welcome only when the commercial aspect is limited to naming the organization represented and the subject matter advances the educational aims of the District.

### B. **Contests/Exhibits**

The Board recognizes that contests, exhibits, and the like may benefit individual students or the District as a whole, but participation in such special activities may not:

1. have the primary effect of advancing a special product, group, or company;

2. make unreasonable demands upon the time and energies of staff or students or upon the resources of the District;

3. involve any direct cost to the District;

4. interrupt the regular school program, unless the student body as a whole derives benefit from such activities;

5. cause the participants to leave the School District, unless:

    a. the Board's Policy 2340 - Field and Other District-Sponsored Trips - has been complied with in all aspects;

    b. the Board has granted special permission;

    c. the parents of a minor student have granted their permission.

### C. **Distribution/Posting of Literature**

No outside organization or staff member or student representing an outside organization may distribute or post literature on that organization's behalf on District property either during or after school hours without the permission and prior review of the Superintendent.

The Superintendent shall develop administrative guidelines that:

1. establish criteria concerning distribution or posting of student materials;

2. address distribution or posting of materials employees wish to distribute on behalf of an employee organization in compliance with the terms of

BOE 272

negotiated collective bargaining agreements;

3. prohibit the use of the District or school mail system by the community, students or staff for distribution of nonschool-related materials unless authorized by the Superintendent;

4. prohibit distribution of materials from any profit-making organization to students to take home to their parents unless authorized by the Superintendent;

5. permit flyers and notices from outside non-profit organizations to be made available for students:

    a. the flyer/notice publicizes a specific community activity or event that is age-appropriate for the students that attend the school;

    b. if the event or activity is religious in nature, the flyer may not contain a proselytizing message (i.e., a message that promotes and/or advocates the benefits of the specific religion);

    c. the organization submits the number of copies of the flyer that it wants placed in the literature distribution rack/table;

    d. the organization shows the building principal its 501(C)(3) or other proof of non-profit status, and the principal confirms that the flyer/notice does not overtly advocate or entice support for any religious organization;
No student shall be required to take any of the flyers/notices placed in the literature/distribution rack/table, and the rack/table shall contain a clear notice that the Board does not support or endorse any of the organizations and/or activities/events identified in the flyers/notices.

6. establish and clearly communicate the time, place, and manner restrictions concerning the distribution of all nonschool-related materials.

D. **Solicitation of Funds**

Any outside organization or staff member representing an outside organization desiring to solicit funds on school property must receive permission to do so from the Superintendent.

Permission to solicit funds will be granted only to those organizations, individuals, or staff members who meet the permission criteria established in the District's administrative guidelines. Solicitation must take place at such times and places and in such a manner as specified in the administrative guidelines. In accordance with Board Policy 5830, no District student may participate in the solicitation without the Superintendent's approval.

1. The Board disclaims all responsibility for the protection of, or accounting for, such funds.

2. Solicited funds are not to be deposited in any regular or special accounts of the District.

3. A copy of this policy as well as the relevant administrative guidelines shall be given to any individual granted permission to solicit funds on District property.

4. This policy does not apply to the raising of funds for District-sponsored or school-sponsored activities.

5. Use of the name, logo, or any assets of the District, including, but not limited to facilities, technology, or communication networks, is prohibited without the specific permission of the Superintendent.

6. The Board of Education does not permit or sanction the use of crowdfunding for District or specific school programs or activities, including co-curricular or extracurricular activities.

E. **Prizes/Scholarship**

The Board of Education is appreciative of the generosity of organizations which offer scholarships or prizes to deserving students in this District. But, in accepting the offer of such scholarships or prizes, the Board directs that these guidelines be observed.

No information, either academic or personal, shall be released from the student's record for the purpose of selecting a scholarship or prize winner without the permission of the student who is eighteen (18), or the parents of a student who is younger in accordance with the Board's policy on student records.

F. **Sale of School Supplies**

In determining the appropriateness of the sale of school supplies by organizations other than the School District, the Board requires that:

1. the organization have a purpose which will benefit the School District and its students;

2. the organization's planned activities are clearly in the best interest of the School District and its students;

3. the organization has submitted the following information and assurances on the form provided by the District: a statement noting the purpose of the organization, financial accountability assurances, and use of facility assurances.
All funds generated by the sale of such school supplies shall be kept separate from other activity funds or other transactions of the Board.

G. **Surveys and Questionnaires**

Neither District-related nor nondistrict-related organizations shall be allowed to administer a survey or questionnaire to students or staff unless the instrument and the proposed plan is submitted, in advance, to the Superintendent. If approved, a copy of the results and the proposed manner of their communication are to be provided to him/her for review and approval before they are released.

Students shall not be required to complete surveys to provide marketing information to vendors, or distribute to vendors any personal information of students, including but not limited to names, addresses, and telephone numbers, except as may be required by law. In addition, the District shall not enter into any contract for products or services, including electronic media services, where personal information will be collected from the students by the providers of the services.

See also Policy 2416 and AG 2416.

Revised 2/9/15

© **Neola 2016**

BOE 273

Legal                              R.C. 3313.75-.78



| Book | Policy Manual |
|---|---|
| Section | 9000 Relations |
| Title | ADVERTISING AND COMMERCIAL ACTIVITIES |
| Code | po9700.01 |
| Status | Active |
| Adopted | March 10, 2008 |

**9700.01 - ADVERTISING AND COMMERCIAL ACTIVITIES**

The purpose of this policy is to provide guidelines for the appropriate and inappropriate use of advertising or promoting of commercial products or services to students and parents in the schools.

"Advertising" comes in many different categories and forums and is defined as an oral, written or graphic statement made by the producer, manufacturer, or seller of products, equipment, or services which calls for the public's attention to arouse a desire to buy, use or patronize the product, equipment, or services. This includes the visible promotion of product logos for other than identification purposes. Brand names, trademarks, logos or tags for product or service identification purposes are not considered advertising.

The Board of Education may permit advertising in school district facilities or on school district property in the following categories or forums in accordance with the guidelines set forth herein:

    A. Product Sales:

        1. product sales benefiting a district, school or student activity (e.g., the sale of beverages or food within schools);

        2. exclusive agreements between the District and businesses that provide the businesses with the exclusive right to sell or promote their products or services in the schools (e.g. pouring rights contracts with soda companies);

        3. fundraising activities (e.g., short term sales of gift wrap, cookies, candy, etc.) to benefit a specific student population, club or activity where the school receives a share of the profits;

    B. Direct Advertising/Appropriation of Space:

        1. signage and billboards in schools and school facilities;

        2. corporate logos or brand names on school equipment (e.g., marquees, message boards or score boards);

        3. ads, corporate logos, or brand names on book covers, student assignment books, or posters;

        4. ads in school publications (newspapers and yearbooks and event programs);

        5. media-based electronic advertising (e.g., Channel One or Internet or web-based sponsorship);

        6. free samples (e.g., of food or personal hygiene products).

    C. Indirect Advertising:

        1. corporate-sponsored instructional or educational materials, teacher training, contests, incentives, grants or gifts;

        2. the Board approves the use of instructional materials developed by commercial organizations such as films and videos only if the education value of the materials outweighs their commercial nature.
        The films or material shall be carefully evaluated by the school principal for classroom use to determine whether the films or materials contain undesirable propaganda and are in compliance with the guidelines as set forth above.

It is further the policy of the Board that its name, students, staff members and District facilities shall not be used for any commercial advertising or otherwise promoting the interests of any commercial, political, nonprofit or other non-school agency or organization, public or private, without the approval of the Board or its designee.

Any commercial advertising shall be structured in accordance with the General Advertising Guidelines set forth below.

**General Advertising Guidelines**

The following guidelines shall be followed with respect to any form of advertising on school grounds:

    A. When working together, schools and businesses must protect educational values. All commercial or corporate involvement should be consistent with the District's educational standards and goals.

BOE 275

B. Any advertising that may become a permanent or semi-permanent part of a school requires prior approval of the Board.

C. The Board reserves the right to consider requests for advertising in the schools on a case-by-case basis.

D. No advertisement shall promote or contain references to alcohol, tobacco, drugs, drug paraphernalia, weapons, or lewd, vulgar, obscene, pornographic or illegal materials or activities, gambling, violence, hatred, sexual conduct or sexually explicit material, X or R rated movies, or gambling aids.

E. No advertisement shall promote any specific religion or religious, ethnic or racial group, political candidate or ballot issue and shall be non-proselytizing.

F. No advertisement may contain libelous material.

G. No advertisement may be approved which would tend to create a substantial disruption in the school environment or inhibit the functioning of any school.

H. No advertisement shall be false, misleading or deceptive.

I. Each advertisement must be reviewed in advance for age appropriateness.

J. Advertisements may be rejected by the school district if determined to be inconsistent with the educational objectives of the school district, inappropriate, or inconsistent with the guidelines set forth in this policy.

K. All corporate support or activity must be consistent with the Board's policies prohibiting discrimination on the basis of race, color, national origin, religion, sex, disability, or age, and must be age-appropriate.

L. Students shall not be required to advertise a product, service, company or industry.

M. Advertising will not be permitted on the outside or the inside of school buses.

N. The Superintendent or designee is responsible for screening all advertising.

O. The Superintendent or designee may require that samples of advertising be made available for inspection.

P. The inclusion of advertisements in school district publications, in school district facilities, or on school district property does not constitute or imply approval and/or endorsement of any product, service, organization, or activity.

Q. Final discretion regarding whether to advertise and the content and value of the materials will be with the Superintendent.

In addition to the guidelines set forth in this policy, the Superintendent shall prepare administrative guidelines addressing the Criteria for Commercial Messages and the process by which advertising shall be accomplished. (See AG 9700B.)

**Accounting**

Advertising revenues must be properly reported and accounted for.

BOE 276