## DECLARATION OF LYDDA MANSFIELD

1. I, Lydda Mansfield, pursuant to 28 U.S.C. §1746, declare the following testimony is true and correct based upon my own personal knowledge.

2. I am a Defendant in *John and Jane Doe No. 1, et al. v. Bethel Local School District Board of Education, et al.*, U.S. District Court, S.D. Ohio Case No. 3:22-cv-00337, named in my official capacity only.

3. I serve the Bethel Local Schools Board of Education as an elected school board member from January 1, 2020 to present (term ending December 31, 2023). From January 2022 to January 9, 2023, I serve in the capacity of President / President Pro Tempore.

4. The Board of Education adopts policies to uphold state and federal law and constitutions.

5. A certified, true and correct copy of select policies adopted by the Board of Education are filed on record in this action through Fiscal Officer Tina Hageman. Some of these policies are referenced in this Declaration by their bates numbers, "BOE 1-276"

6. As an elected member of the Bethel Local Schools Board of Education, I swear or affirm through the administration of the oath of office to uphold state and federal law and constitutions consistent with Policy 142.1, BOE 4.

7. Ohio's Open Meeting Act, O.R.C. 121.22 ("OMA"), is enforced through Board of Education Policies 164, 165.1, 165.2, 165.3, 166, 167, 167.1, 167.2, 168, 169.1, 169.2, BOE 6-20.

8. In compliance with these policies, I have never attended a "secret meeting" with a quorum of other Board Members. A quorum is three members, per Board of Education Policy 162, BOE 5.

9. Specifically, I have not attended a "secret meeting" from September 13, 2021 and January 10, 2022, as alleged in Plaintiffs' Complaint in violation of the OMA or Board Policy.

10. All my Board of Education meeting attendance is recorded from September 13, 2021 and January 10, 2022, in the official written and recorded Meeting Minutes. All Board of Education meetings are noticed and open to the public consistent with the OMA, by the Fiscal Officer, as this is one of her assigned duties.

11. I have never deliberated or voted on a "new rule" regarding transgender use or prohibition of use of communal restrooms or any intimate facility between September 13, 2021 and January 10, 2022.

12. In discussing the agenda for the January 10, 2022 board meeting, I believe now former Superintendent, Jason Firks, is going to address the public to explain how policies contained in the Board Policy Manual are administratively being enforced regarding

requests by transgender students to use communal restrooms aligning with their sexual identity, an administrative decision made after receiving legal advice from the School District's legal counsel. Just before the start of this meeting, I learn he is declining to address the issue, an issue that has been heavily questioned recently in emails from members of the Bethel community and that had been raised by others at board meetings starting in the fall of 2021.

13. In light of this and wanting to start out my tenure as Board President with demonstrated transparency, I attempt to address the matter in his place without the benefit of any meaningful advance preparation. With a goal of telling the public the administration is accommodating requests of transgender students for use of communal restrooms aligning with their identity under the Board's Policy Manual because those policies enforce federal law and the federal constitution, I acknowledge my word choice did not clearly communicate the intended message. While I am not an attorney, I try my best to communicate as clearly as I can in my official capacity as a board member.

14. At the January 10, 2022 board meeting I state the following:

> The best introduction I can give to this, I guess. A change went into effect the beginning of the year, correct?
>
> So at the beginning of the year the district has adopted the stance I guess is the best way to put it that transgender students may use the restroom that aligns with their gender status upon advice received from our attorney.
>
> The statement our attorney gave to us follows: Several United States Courts of Appeals, including the Sixth Circuit Court of Appeals, in which Ohio is located, have determined that Title IX of the Educational Amendments of 1972 requires that transgender students be granted access to the restrooms and locker rooms of their sexual identification. This includes the Third Circuit, Sixth Circuit, and the Ninth Circuit. The Sixth Circuit case denied overturning a lower case ruling.
>
> The United States Supreme Court, while not yet issuing a ruling on transgender school students using bathrooms of their sexual identifications in 2020 issued a ruling determining that transgender status is protected by the federal law against sex discrimination in the workplace, or Title VII. Title VII and Title IX have similar prohibitions against discrimination. This ruling will have a significant impact on how the Supreme Court will rule on educational bathroom issues.
>
> So again, we have made this change within our district based upon the advice of our attorney that should there be a court case come before us, pending or otherwise, we would not be successful in any battle and would simply cost the district a lot of money that we simply cannot afford to spend.

> The change will be made. Our students are using bathrooms aligned with their identity at this time.
>
> (Multiple speakers. Unable to transcribe.)

January 10, 2022 Board Meeting Tr 2:7 – 3:23.

15. With the benefit of hindsight, "change" is a poor word choice because no request for accommodation is ever made before the one then being responded to by administration. Had I time to consider how to present this information to the public, a better way would have been to explain for the first time, a request to administration by a transgender student to use communal restrooms aligning with the student's sexual identity has been received and administration, under existing written board policy is accommodating the request. As of the students' return to school after the holiday break, this transgender student is using communal restrooms aligning with his or her sexual identity.

16. With the benefit of hindsight, when I state the "district has adopted the stance," it would have been clearer to state the administration has adopted the stance.

17. With the benefit of hindsight, when I state, "[s]o again, we have made this change within our district based upon the advice of our attorney," it would have been clearer to state the administration has granted the request for accommodation based upon the advice of our attorney.

18. At this January 10, 2022 board meeting when I make my comments, the transgender student's request for accommodation to use the communal restrooms aligned with his or her sexual identity is already granted by administration. My statement is my good faith effort to be transparent with the public on this then administratively handled sensitive issue. Any confusion my word selection may have created is unintentional. My intent in wanting to communicate on the status of the matter with the public is one of good faith. While I am not an attorney, I try my best to communicate as clearly as I can in my official capacity as a board member.

19. To assist the public's understanding on how the Board of Education develops its written Policy Manual, I provide an explanation of that process at the February 14, 2022 board meeting and Former Superintendent Firks adds to my comments. Feb. 14, 2022 Regular Board Meeting Tr, 2:3 – 12:1. Former Superintendent Firks and I also address the difference between the Policy Manual and the school board's adoption of a resolution, the latter of which signals the board's position on a matter. *Id.* at 8:12 – 10:19.

20. Two competing transgender restroom resolutions, as opposed to policies, are briefly discussed at the February 14, 2022, board meeting, with one side directing the administration revise administrative guidelines, create protocols and discipline for improper usage of communal restrooms as deemed necessary with regard to transgender students' rights to access communal restrooms consistent with their sexual identity and the

other side opposing transgender access to communal restrooms consistent with their sexual identity. *Id.* at 12:7 – 29:9. Because the public in attendance became disruptive when the agenda item is raised, no deliberation of the competing policies is conducted. Neither resolution receives a motion and, therefore, dies for lack of motion. BOE 339-346.

21. Transgender students' requests to use communal restrooms in alignment with their sexual identity is always and only enforced under the written Board of Education policies. The current Policy Manual is accessible at: https://go.boarddocs.com/oh/bethlsd/Board.nsf/Public?open&id=policies. All Board of Education adopted policy related to transgender students' rights to use communal restrooms is contained in the Policy Manual.

22. Never during my tenure to date as a board member is board policy changed to address any issue related to transgender students' rights.

23. All Board of Education policy is written and contained in the Board's Policy Manual.

24. The administration, not the Board of Education or any of its members, is always charged with enforcing the Board's policies contained in the Policy Manual. The administration, not the Board of Education or any of its members, always responds to all requests for accommodation made by transgender students under Board Policy.

25. At all times during my appointment as a Board of Education member, I know it is my responsibility to comply with the OMA and Board Policy, as well as state and federal law and constitutions. To perform my duties as an elected official in a reasonable and informed manner, I attend training on a regular basis. My training includes, but may not be limited to, Ohio School Board Association continuing education sessions including the 11+ hours provided at their annual Capital Conference; annual professional training through Public School Works in my capacity as a classroom educator (including Ohio Ethics training for educators); and various other continuing education opportunities necessary to keep my educator license current.

26. On or about June 27, 2022, I became aware of a post made on the Bethel Local Schools 2022 Restroom and Locker Room Policy! Facebook page which threatens litigation. A true and accurate copy of this Facebook post is attached to this Declaration as BOE 394-396.

27. Sometime between January 1, 2022 and April 30, 2022, I received in the mail a flyer titled "Join Our Fight for Student Safety at Bethel." A true and accurate copy of this flyer is attached to this Declaration as BOE 397-398.

I declare under penalty of perjury that the foregoing is true and correct.

*Lydda Mansfield*
Lydda Mansfield, Board President

1/9/2023
Date