UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

| | | |
|---|---|---|
| **JOHN AND JANE DOE NO. 1, et al** | : | **CASE NO: 3:22-cv-00337** |
| | : | |
| **PLAINTIFFS,** | : | **JUDGE MICHAEL J. NEWMAN** |
| | : | |
| vs. | : | |
| | : | |
| **BETHEL LOCAL SCHOOL DISTRICT** | : | |
| **BOARD OF EDUCATION, et al** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS (DOC. 5)**

## I.  INTRODUCTION

How an Ohio public school should enforce the federally recognized rights of its transgender students when free exercise of religion and other claimed rights are asserted by objecting legal guardians on behalf of their students remains unanswered.  Neither the United States Supreme Court, the Sixth Circuit, nor its District Courts have spoken on this question.  The School District's mission "is to provide a vision and an environment where all student and staff can explore and thrive in a safe, secure setting while showcasing district successes and community values."  The intersection of transgender students' rights to access bathrooms and intimate spaces with religious and non-religious students' asserted rights, for the Bethel Local Schools community, provokes contentious debate.  Look no further than the recorded video minutes of the School District's Board of Education meetings.  The School District Board of Education members who publicly acknowledge their responsibility to enforce current federal law are defending against the filing of

a second state court quasi-criminal removal from public office action.1 Mansfield Dec ¶ 27. A state court action asserting claims under Ohio's Meeting Act ("OMA"), O.R.C. 121.22, is pending.2 This action and the two state court actions form the trilogy opponents to transgender student rights promise to file in response to the School Districts' accommodation of transgender students' rights. *Id.* ¶ 26.

Because Plaintiffs perceive a presumably unwritten "new rule" is illegally adopted in secret on an unknown date between September 13, 2021 and January 10, 2022, in violation of Ohio's Meeting Act ("OMA"), O.R.C. 121.22, they request a preliminary injunction only on this state law claim, leaving the federal claims of first impression to be decided upon a fully developed factual record on dispositive motion practice or at trial, if necessary. Plaintiffs' inadmissible perception is wrong. A "new rule" is never adopted by the Board of Education. While the motion for preliminary injunction should be overruled, regardless of its outcome, the School District's administration enforces its written, lawfully adopted Board Policies to enforce transgender students' rights under Board Policy 5517 Anti Harassment (BOE 220-2453) in response to request for accommodation before, during and after the September 13, 2021 and January 10, 2022 window.

---

1 *In re: Removal of Lydda Mansfield, Lori Sebastian and Danny Elam, Jr. from office as elected officials and members of the Bd. of Edu. of the Bethel Local School Dist.,* Miami Cty. Common Pleas Court, Civil Div., Ohio, Case No. 22-429, filed Nov. 4, 2022.
2 *State ex rel Crowley v. Bethel Local Schools Dist. Board of Edu., et al.,* Miami Cty. Common Pleas Court, Civil Div., Ohio, Case No. 22-279, filed July 21, 2022.

3 Separately filed in support of this Memorandum is the Certificate of Bethel Local Schools Board of Education Treasurer/CFO, Tina K. Hageman, attaching certified, true and accurate exhibits marked BOE 1-393. This Certification includes relevant Board Policy for school years 2019-2020 through present (BOE 1-276), Meeting Minutes Approving Revisions to Board Policies From January 1, 2019 to the present (BOE 277-311), Resolutions and Related Meeting Minutes / Agendas related to the three public board meetings discussed herein (BOE 312-346), and Ohio's Learning Standards – Social Studies Adopted February 2018 (BOE 347-393) to demonstrate the School District teaches on the five major religions, fulling state mandates. Also separately filed in support of this Memorandum are Declarations (BOE Members Elam, King, Mansfield, Sebastian; Superintendent Chrispin; Principals Swope, Zigler, Jones, Schoch; and Certified Transcripts from Board of Education Meetings conducted on September 13, 2021, January 10, 2022, and February 14, 2022.

If Plaintiffs request the matter additionally proceed to evidentiary hearing, a decision they deferred until after reviewing this memorandum, because the primary issues to be decided are legal questions and the facts are not disputed or, where disputed, not material to the preliminary injunction sought, the matter should be decided on briefs only.

## II. LEGAL ANALYSIS

### A. The Relevant Law and Facts Do Not Support the Issuance of a Preliminary Injunction

#### 1. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (quoting *Munaf v. Geren*, 553 U.S. 674, 689, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008)). When considering a motion for preliminary injunction, the court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

The Plaintiffs must carry their burden of showing that such extraordinary relief is warranted to obtain a preliminary injunction. *Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The burden Plaintiffs bear to be granted a preliminary injunction is "a clear showing that [they are] entitled to such relief," *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). While Plaintiffs need not "prove [their] case in full at a preliminary injunction hearing," *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007) (citations omitted), "the proof required for the plaintiff to

3

obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Despite having, at minimum, one year to investigate their claims, and the ability to access all Board Policy, agenda, and written and recorded meeting minutes on-line, and the ability to make public records requests to the Board of Education, Plaintiffs fall woefully short of meeting their stringent burden to establish entitlement to a preliminary injunction because evidence to support the sought relief fails to exist. The motion for preliminary injunction is factually devoid and legally skeletal. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

    **2.** **First Factor:**    **Plaintiffs' Do Not Establish a Strong Likelihood of Success on the Merits of the OMA Claim**

The OMA, O.R.C. 121.22, prevents a quorum of elected officials serving public bodies from meeting in secret to deliberate or vote on public business. Public business under the OMA constitutes matters under the "purview of a public body's duties, functions and jurisdiction." *Bode v. Concord Twp.*, 2019-Ohio-5062, 137 N.E.3d 1245, ¶ 7 (11th Dist.). The Board of Education acknowledges it is a public body under the OMA and that it must comply with the OMA, as Board Policy proves. The OMA is enforced through Board of Education Policies 164, 165.1, 165.2, 165.3, 166, 167, 167.1, 167.2, 168, 169.1, 169.2. BOE 6-20.

Board Members Elam, King, Mansfield and Sebastian train on these important issues and are reasonably well-informed. Elam Dec ¶ 16; King Dec ¶ 19; Mansfield Dec ¶ 25; Sebastian Dec ¶ 16. Where the OMA is not triggered, however, no violation can occur. The OMA is not triggered here, as demonstrated by Plaintiffs' inability to bring forward admissible facts to meet their burden

4

of proof for this claim.

Last month the Ohio Supreme Court announced the liberal-construction clause in R.C. 121.22(A) regarding what official action must occur in open meetings versus executive session does not change or otherwise lessen the burden of proof in OMA actions.  *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 10-11.  Plaintiffs discuss the liberal construction clause in their motion and describe it contrary to *Hicks*, and they discuss no pre-*Hicks* law on evidentiary burden of proof.

> In *Hicks*, the Ohio Supreme Court holds:
>
> The "burden of proof" "'encompasses two different aspects of proof: the burden of going forward with evidence (or burden of production) and the burden of persuasion.'" *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 20, quoting *Chari v. Vore*, 91 Ohio St.3d 323, 2001-Ohio49, 744 N.E.2d 763 (2001); *see also State v. Robinson*, 47 Ohio St.2d 103, 107, 351 N.E.2d 88 (1976). "[T]he 'burden of persuasion' 'refers to the risk * * * borne by a party if the jury finds that the evidence is in equilibrium.'" (Ellipsis added in *Welsh-Huggins*.) *Welsh-Huggins* at ¶ 22, quoting *Robinson* at 107. And the burden of persuasion remains on one party throughout the entire case. *See id.* at ¶ 34. By contrast, the "burden of production" can shift between the parties. *See id.* at ¶ 33-35. The burden of production in a civil case requires that the plaintiff produce sufficient evidence to support his or her claims and that the defendant produce sufficient evidence of any affirmative defenses. *Id.* at ¶ 21.
>
> Furthermore, in accordance with common-law principles, the statutory provision authorizing citizens to sue public bodies for violations of the OMA clearly places the burden of proof, or at least the burden of persuasion, on the plaintiff. That provision states: "*Upon proof of a violation* or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions." (Emphasis added.) R.C. 121.22(I)(1). Therefore, to receive relief, the plaintiff must prove a violation of the OMA. There is no requirement for the public body to conversely prove that no violation occurred.

*State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 10-11.  Plaintiffs fail to meet this mandatory evidentiary burden as well as the high burden to obtain preliminary injunction relief.

*Hicks* mandates a "presumption of regularity" related to burden of proof because to hold otherwise would create a presumption of irregularity. *Id.*, at ¶ 21-23.  Even where a public body claims it discusses only permitted topics during executive session, this claim is not an affirmative defense, and the burden of proof remains with the plaintiff. *Id.*, at ¶ 14.  Plaintiffs' motion puts forth no evidence to disturb the presumption of regularity as they fail to even identify a date certain for the "secret meeting" and produce no names of any board member in attendance at the "secret meeting."  And, the composition of the elected officials serving the board changed from 2021 to 2022.

The Ohio Supreme Court even rejects the notion that the public body bears this evidentiary burden where a plaintiff claims no access to evidence because both parties have access to discovery, the public body may have no evidence either given that all it must note in minutes is the statutorily permitted reason for an executive session, and ultimately the General Assembly chooses to place the burden of proof on the plaintiff filing the OMA action. *Id.* at ¶ 18.  While this preliminary injunction motion is brought before access to discovery, Plaintiffs have had over a year to serve public records requests to investigate their OMA claim, and still have no evidence of an OMA violation.  Nowhere in Plaintiffs' motion for preliminary injunction do they acknowledge a burden of proof regarding their OMA claim.

Meeting is defined as "any prearranged discussion of the public business of the public body by a majority of its members."  O.R.C. 121.22 (B)(2).  "All meetings of any public body are declared to be public meetings open to the public at all times.  A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting."  O.R.C. 21.22 (C). O.R.C. 121.22 (F) requires the Board of Education to notify the public of the date, time, and

location of its regularly scheduled meetings. O.R.C. 121.22 (G) provides executive session exceptions. Plaintiffs articulate no claim to even suggest a violation of any of these sub-sections.

Here, Plaintiffs' purported OMA violation is only premised upon an inadmissible assumption. The assumption is this: "Bethel adopted a new rule that permitted biological males to use female intimate facilities and vice versa." Doc. 5-1, Page ID 56. The "new rule" is alleged to have occurred not on a date certain, but between September 13, 2021 and January 10, 2022, based upon public comments made by former Board President King and current Board president Mansfield respectively. Plaintiffs never state which board members attend the alleged secret meeting. They never state how many board members attend the secret meeting. Whether a quorum is even believed to be at the secret meeting is unknown. They never state the secret meeting is pre-arranged and by whom. They never state where the secret meeting occurs. They never state how long the secret meeting lasts. They never state if the "new rule" is written or unwritten. A copy of the "new rule" is never produced as evidence. Labeling the meeting "secret" does not buy Plaintiffs a pass on their evidentiary mandatory burden, as made clear by the Ohio Supreme Court in *Hicks*.

The Board of Education quorum is three board members. Policy 162, BOE 5. Board members Elam, King, Mansfield and Sebastian never attend a secret meeting between September 13, 2021 and January 10, 2022 and never deliberate or vote on a "new rule." Elam Dec ¶ 7-11; King Dec ¶ 7-11; Mansfield Dec ¶ 7-11; Sebastian Dec ¶ 7-11. Plaintiffs cannot refute this as their motion proves they have no evidence to the contrary.

What Bethel students have done in the past century is not relevant to proving a strong success on the merits the OMA claim, or any of the other three factors. Doc. 5-1, Page ID 56. No change to Board Policy is enacted in a lawful or secret meeting (no secret meeting occurred) between September 13, 2021 to January 10, 2022. Elam Dec ¶ 12-13; King Dec ¶ 8-9;

7

Mansfield Dec ¶ 21-22; Sebastian Dec ¶ 8-9; Chrispin Dec ¶ 5. Board members Elam, King, Mansfield and Sebastian acknowledge they are charged with upholding state and federal law and constitutions and Board Policy. Elam Dec ¶ 4-6; King Dec ¶ 4-6; Mansfield Dec ¶ 4-6; Sebastian Dec ¶ 4-6. They further acknowledge School District administration, not the Board of Education or its members, handle student accommodation requests under existing Board Policy, which is made available for the public to access on-line. Elam Dec ¶ 12-15; King Dec ¶ 16-18; Mansfield Dec ¶ 24; Sebastian Dec ¶ 12-15; Chrispin Dec ¶ 6, 15.

While the statements[4] made by former and current Board Presidents on September 13, 2021 and January 10, 2022 respectively (Doc. 5-1 Page ID 57-58) may inadvertently and in good faith create some confusion, they do not provide any direct evidence satisfying Plaintiffs' mandatory evidentiary burden under *Hicks* to state an OMA claim. And, Plaintiffs lack evidence to dispute these facts.

Before addressing former Board President King's comments, the stage must be set for proper context. President King's comments are made in response to Stormy Milewski's public comment at the September 13, 2021 board meeting. King Dec ¶ 12. Ms. Milewski addresses the Board of Education to express her opinions regarding rights owed to School District transgender students under the Fourteenth Amendment of the United States Constitution and Title IX, the Education Amendments Act of 1972, 20 U.S.C. §1681 *et seq*. to use the communal restroom aligning with their gender. Sept. 13, 2021 Board of Education Meeting Tr. 12:12-25. She states Ohio recognizes the rights of transgender people through its adoption of legislation to permit the change of gender on birth certificates to align with identity. *Id*. at 3:1-8.

---

[4] Certified transcripts contain these statements, including the public comment offered by School District staff member Stormy Milewski, are separately and contemporaneously filed in support of this memorandum.

Ms. Milewski states Bethel School District has "many transgender students" and that "the national ratio is one person to every 1,500 is transgender," or "1.6 million in the United States." Sept. 13, 2021 Board of Education Meeting Tr. 3:14-18. Despite the School District having many transgender students, Ms. Milewski expresses her concern that only one transgender student is requesting accommodation. Sept. 13, 2021 Board of Education Meeting Tr. 5:12-25; King Dec ¶ 13. Ms. Milewski explains it is dangerous and unfair for transgender students whose structure and look match the identity with which they align to be forced to use opposite sex communal restroom, especially for female transgender students. Sept. 13, 2021 Board of Education Meeting Tr. 3:3 – 5:8. She also states its uncomfortable for biological guys to see transgender girls and vice versa in the communal restroom. *Id.* at 4:7-11. She challenges the thinking of those who oppose acknowledging the legally protected rights of transgender people, but who acknowledge medical science has proven human beings experience genetic mutations. *Id.* at 2:6 - 5:8.

At that Board meeting, President King knows leading up to that meeting, one Bethel School District openly transgender student requests the administration accommodate a request to use the communal restrooms aligned with the student's sexual identity. King Dec. ¶ 12. It is this one student Ms. Milewski references in her public comment, making the point that she has knowledge of several transgender students attending the School District but only one student is openly transgender. King Dec ¶ 12.

President King states in response to Ms. Milewski's public comment:

Thank you for bringing that forward. We have heard and discussed this a little bit as well. We are still conferring with our legal counsel with regards to that. One of the biggest things that we know is if we are changing, if it is a middle school or a high school, whatever we are going to change, has to be levied across the entire school district. So from kindergarten to 12th grade. Otherwise it would be discrimination once we establish that as -- and the little bit of knowledge that I have with regards to that. And we will continue to consult and try and provide the most

9

appropriate answers.

Sept. 13, 2021 Board of Education Meeting Tr. 5:12-25.

In reference to his statement, President King states the issue of transgender student use of communal restrooms is a hotly debated and divisive issue at board meetings and in the Bethel ommunity starting in the fall of 2021 and he briefly comments on the issue in his official capacity as Board President. King Dec ¶ 12. With the benefit of hindsight, he realizes his word selection when he briefly discusses transgender students' rights in reference to use of communal restrooms which align with their sexual identity can be perceived as confusing by the public. *Id.*

At this September 13, 2021 board meeting when President King makes these comments, administration has yet to act upon the transgender student request to use the communal restrooms aligned with his or her sexual identity. King Dec ¶ 14. For this reason, he acknowledges his use of the word change, given the overall context of the matter, is confusing. *Id.* He makes the comments in good faith to be transparent with the public on this pending sensitive issue, while the School District obtained legal advice to ensure its proper handling. *Id.* Any confusion his word selection may have created is unintentional. *Id.* While he is not an attorney, he tries his best to communicate as clearly as he can in his official capacity as a board member. *Id.*

Regarding President Mansfield's January 10, 2022 board meeting comments, as she heads to that meeting, her first as President of the Board, she believes now former Superintendent, Jason Firks, is going to address the public to explain how policies contained in the Board Policy Manual are administratively being enforced regarding requests by transgender students to use communal restrooms aligning with their sexual identity, an administrative decision made after receiving legal advice from the School District's legal counsel. Mansfield Dec ¶ 12. Just before the start of this meeting, she learns he is declining to address the issue, an issue that has been heavily questioned

recently in emails from members of the Bethel community and that had been raised by others at board meetings starting in the fall of 2021. *Id.*

In light of this and wanting to start out her tenure as Board President with demonstrated transparency, she attempts to address the matter in Superintendent Firk's place without the benefit of any meaningful advance preparation and in good faith. *Id.* at ¶ 13, 18. She states:

> The best introduction I can give to this, I guess. A change went into effect the beginning of the year, correct?
>
> So at the beginning of the year the district has adopted the stance I guess is the best way to put it that transgender students may use the restroom that aligns with their gender status upon advice received from our attorney.
>
> The statement our attorney gave to us follows: Several United States Courts of Appeals, including the Sixth Circuit Court of Appeals, in which Ohio is located, have determined that Title IX of the Educational Amendments of 1972 requires that transgender students be granted access to the restrooms and locker rooms of their sexual identification. This includes the Third Circuit, Sixth Circuit, and the Ninth Circuit. The Sixth Circuit case denied overturning a lower case ruling.
>
> The United States Supreme Court, while not yet issuing a ruling on transgender school students using bathrooms of their sexual identifications in 2020 issued a ruling determining that transgender status is protected by the federal law against sex discrimination in the workplace, or Title VII. Title VII and Title IX have similar prohibitions against discrimination. This ruling will have a significant impact on how the Supreme Court will rule on educational bathroom issues.
>
> So again, we have made this change within our district based upon the advice of our attorney that should there be a court case come before us, pending or otherwise, we would not be successful in any battle and would simply cost the district a lot of money that we simply cannot afford to spend.
>
> The change will be made. Our students are using bathrooms aligned with their identity at this time.
>
> (Multiple speakers. Unable to transcribe.)

January 10, 2022 Board Meeting Tr 2:7 – 3:23.

With the benefit of hindsight, she acknowledges "change" is a poor word choice because no request for accommodation is ever made before the one then being responded to by administration. Mansfield Dec ¶ 15.  She states that had she had time to consider how to present this information to the public, a better way would have been to explain:

> For the first time, a request to administration by a transgender student to use communal restrooms aligning with the student's sexual identity has been received and administration, under existing written board policy is accommodating the request.  As of the students' return to school after the holiday break, this transgender student is using communal restrooms aligning with his or her sexual identity.

*Id.*  With the benefit of hindsight, she acknowledges it would have been clearer to state the administration has adopted the stance, instead of saying the "district has adopted the stance."  *Id*. ¶ 16.  With the benefit of hindsight, she acknowledges it would have been clearer to state the administration has granted the request for accommodation based upon the advice of our attorney, instead of saying "[s]o again, we have made this change within our district based upon the advice of our attorney".  *Id*. ¶ 17.

At this January 10, 2022 board meeting when she makes her comments, the transgender student's request for accommodation to use the communal restrooms aligned with his or her sexual identity is already granted by administration.  *Id.* ¶ 18; Joanne Row Dec ¶ 30-35 Doc. 13-2 Page ID 135-136.  While she is not an attorney, President Mansfield tries her best to communicate as clearly as she can in her official capacity as a board member.  Mansfield Dec ¶ 18.

The competing resolutions (as opposed to policies) regarding the transgender restroom issue which die for lack of motion discussed at the February 14, 2022 board meeting further evidence no "change" or "new rule" occurred.  Mansfield Dec ¶ 20; February 14, 2022 Board Meeting Tr. 12:7 – 29:9.  The explanation of how board policy is written and updated by a third-party contractor, and not written in house, coupled with the explanation on how board policy differs from a resolution,

12

further demonstrates Plaintiffs' lack of evidence. Mansfield Dec ¶ 19; February 14, 2022 Board Meeting Tr. 2:3 – 11:12.

With a goal of telling the public the administration is accommodating requests of transgender students for use of communal restrooms aligning with their identity under the Board's Policy Manual because those policies enforce federal law and the federal constitution, she acknowledges her word choice did not clearly communicate the intended message. Mansfield Dec ¶ 13. While she is not an attorney, she tries her best to communicate as clearly as she can in her official capacity as a board member. *Id.* at ¶ 13.

Never is Board Policy changed to address any issue related to transgender students' rights. Elam Dec ¶ 13; King Dec ¶ 15; Mansfield Dec ¶ 22; Sebastian Dec ¶ 13; Transgender students' requests to use communal restrooms in alignment with their sexual identity is always and only enforced by administration under the written Board of Education policies. Elam Dec ¶ 12; King Dec ¶ 16; Mansfield Dec ¶ 21; Sebastian Dec ¶ 12; Chrispin Dec ¶ 4-15. All Board of Education policy is written and contained in the Board's Policy Manual. Elam Dec ¶ 12; King Dec ¶ 17; Mansfield Dec ¶ 21; Sebastian Dec ¶ 14; Chrispin Dec ¶ 14.

The administration, not the Board of Education or any of its members, is always charged with enforcing the Board's policies contained in the Policy Manual. Elam Dec ¶ 15; King Dec ¶ 17; Mansfield Dec ¶ 24; Sebastian Dec ¶ 15; The administration, not the Board of Education or any of its members, always responds to all requests for accommodation made by transgender students under Board Policy. Elam Dec ¶ 15; King Dec ¶ 18; Mansfield Dec ¶ 24; Sebastian Dec ¶ 15.

What occurs here is School District administrators performing their jobs, enforcing existing written Board Policy, all contained in the Policy Manual, to accommodate a transgender student's request to use a communal restroom in alignment with the student's sexual identity.

13

Principal Zigler meets with Joanne and Anne Row on and accommodates their requests when Anne starts middle school. Zigler Dec ¶ 4. Then Joanne and Anne Row meet with Principal Triplett and obtain accommodation for Anne to use the girls' communal restroom in the middle school. Joanne Row Dec ¶ 30-35 Doc. 13-2 Page ID 135-136. Superintendent Chrispin and High School Principal Swope confirm for Joanne and Anne the accommodation will remain in place unless instructed otherwise by legal counsel. Chrispin Dec ¶ 6; Swope Dec ¶ 5. The OMA is not triggered by the administration's enforcement Board Policy 5517 Student Anti-Harassment.

    Plaintiffs' motion for preliminary injunction only references an unknown "new rule" regarding their OMA claim. Never do they claim Board Policy 5517 Student Anti-Harassment is the "new rule." For these reasons, even if a violation of the OMA is proven here, which is denied, R.C. 121.22 (H) and (I)(1) would not alter how the School District administratively accommodates requests of its transgender public school students regarding communal restrooms or other intimate space because they are accommodated under Board Policy 5517 Student Anti-Harassment and Plaintiffs do not challenge the Board's lawful enactment of this written policy always in force from 2019-2020 to the present.

    "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997)). The Court need not "make specific findings concerning each of the four factors . . . if fewer factors are dispositive of the issue." *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 542 (citations omitted). However, "it is generally useful for the district court to analyze all four of the preliminary injunction factors." *Id.* (quoting **Leary** *v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000)). Because Plaintiffs do not establish a strong likelihood of success on the

merits, and for this reason alone, the request for preliminary injunction should be denied.

### 3. Second Factor: Plaintiffs Do Not Establish They Would Suffer Irreparable Injury Without an Injunction

With no strong likelihood of an OMA violation, Plaintiffs are unable to claim presumed irreparable harm under O.R.C. 121.22 (I)(3). Plaintiffs fail to offer any evidence of a statutory OMA violation. Even if they did, Bethel School District Administrators are enforcing Board Policy 5517 Student Anti-Harassment (BOE 220-245) in response to request for accommodation made by transgender students to access communal restrooms aligning with their sexual identity, not a "new rule." See *Palmer v. Harris*, N.D.Ohio No. 1:18 CV 225, 2018 U.S. Dist. LEXIS 197837, at *17 (Nov. 20, 2018) ("With respect to the second factor, Plaintiff claims that he experiences chronic pain because he is not receiving the treatment of his choosing. However, this does not show that he will suffer irreparable harm if injunctive relief is not granted. *See Brown v. Mohr*, No. 2:13-CV-006, 2014 U.S. Dist. LEXIS 152356, 2014 WL 5446003, at *3 (S.D. Ohio Oct. 24, 2014) (plaintiff's contention that he is in pain and not receiving any pain medication "does not rise to the level that would warrant a preliminary injunction") (citing *Dearing v. Mahalma*, No. 1:11-CV-204, 2011 U.S. Dist. LEXIS 94824, 2011 WL 3739029 (S.D. Ohio Aug. 24, 2011))."). Because Plaintiffs do not establish they would suffer irreparable injury without an injunction, the request for preliminary injunction should be denied.

### 4. Third Factor: Plaintiffs Do Not Establish the Issuance of an Injunction Would Cause Substantial Harm to Others

With no presumed harm and the enforcement of a Board Policy unchallenged by Plaintiffs, Defendants are substantially harmed if a preliminary injunction issues here because School District administrators should be allowed to administer the operation of the School District serving all students. See *Palmer v. Harris*, N.D.Ohio No. 1:18 CV 225, 2018 U.S. Dist. LEXIS 197837, at

*17-18 (Nov. 20, 2018) ("With respect to the third factor, the balance of Plaintiff's interest in receiving the medical care of his choosing and the interest of the Defendants in prison administration and management of prisoners' medical needs weighs against injunctive relief. See *Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013).

With no complaints registered to administrators regarding transgender use of communal restrooms from students (Chrispin Dec ¶ 8; Swope Dec ¶ 7; Jones Dec ¶ 6; Schoch Dec ¶ 6), only one occurrence of a transgender male entering the boys' middle school communal restroom without incident (Zigler Dec ¶ 6), transgender students and their families will be substantially harmed if a preliminary injunction issues. Transgender students and their families will be harmed for the reasons cited herein by Bethel School District teacher Ms. Milewski. The harm to others factor is also meticulously detailed by the Proposed Intervenor-Defendant Anne Roe in her Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, Doc. 13-3, Page ID 120-136, 144-150. Any student wanting to use a single user restroom can do so upon request. Chrispin Dec ¶ 11-12; Swope Dec ¶ 9-11; Zigler Dec ¶ 8-10; Jones Dec ¶ 8-10, 12; Schoch Dec ¶ 8-10, 12. The communal restrooms in the School District have portioned stalls for privacy and the hallways are equipped with security cameras to aid in investigating any claims of people improperly entering communal restrooms. Chrispin Dec ¶ 7. The restrooms are crowded for all students, just like the library and cafeteria. Chrispin Dec ¶ 13. The student population increases dramatically yearly and the Bethel School District is working hard to serve its Ukrainian refugee population. Chrispin Dec ¶ 13. Transgender students should not be forced to solely use single use restrooms on account of the school facilities being over-crowded. Only eight students currently request use of single use restrooms, signaling no harm to students. Chrispin Dec ¶ 12. Because Plaintiffs do not establish the issuance of an injunction would cause

16

substantial harm to others, the request for preliminary injunction should be denied.

    **5.    Fourth Factor:    Plaintiffs Do Not Establish the Public Interest Would Be Served By the Injunction**

All students are entitled equal educational opportunities. Bethel School District offers school clubs, including the Fellowship of Christian Athletes and Gay-Straight Alliance, and lunch menu items in recognition of serving all students. Chrispin Dec ¶ 16, BOE 105-106. Board Policy enforced by the administration not only recognizes the rights of transgender students, it recognizes students' rights to free exercise of religion. Chrispin Dec ¶ 14-16. Learning on the five major religions is part of the School District's state compliant teaching curriculum. Chrispin Dec ¶ 16, BOE347-393. To issue an injunction here which would severely impact transgender students, when the School District is serving all students with its Board Policy, does not serve the public interest. Ms. Milewski's statements further support the public's interest is not served by Plaintiffs' request. The public interest factor is also meticulously detailed by the Proposed Intervenor-Defendant Anne Roe in her Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, Doc. 13-3, Page ID 120-136, 150-151. *Palmer v. Harris*, N.D.Ohio No. 1:18 CV 225, 2018 U.S. Dist. LEXIS 197837, at *17-18 (Nov. 20, 2018) ("Finally, Plaintiff has not shown that the public interest is served by an injunction. While there is a public interest in the enforcement of constitutional rights, in the absence of a strong likelihood of success on the merits, "[t]he public interest in leaving the administration of state prisons to state prison administrators" weighs against injunctive relief. See *id*."). Because Plaintiffs do not establish the public interest would be served by the injunction, the request for the preliminary injunction should be denied.

    **B.    This Motion Should be Decided on Briefing Only, Without an Evidentiary Hearing, Because the Issues to be Decided are Primarily Questions of Law and the Factual Issues are Not Disputed**

The Court conducted a telephone status conference during which a briefing schedule is set and during which Plaintiffs requested an evidentiary hearing date to be set to allow them to determine if an evidentiary hearing would be requested, a decision Plaintiffs asked to defer until after having the benefit of the School District's response. Doc. 9.

The primary issues to be decided are questions of law. The sparce, if any relevant facts, contained in the Motion for Preliminary Injunction are not contested by the School District at this juncture except for its denial that the Board of Education secretively adopted a "new rule." This denial is not material to the Court's determination of the primary questions of law because Plaintiffs are unable to prove an OMA violation. Plaintiffs bear the evidentiary burden in moving for a preliminary injunction. Plaintiffs also bear the evidentiary burden for the underlying OMA claim. Arguments and new evidence raised for the first time in a reply are deemed waived. *Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-cv-1268, 2009 U.S. Dist. LEXIS 45215, 2009 WL 1507415, *1 n.2 (W.D. Mich. May 29, 2009); *McGruder v. Metro. Govt. of Nashville & Davidson Cty.*, M.D.Tenn. No. 3:17-cv-01547, 2020 U.S. Dist. LEXIS 142666, at *7 (Aug. 10, 2020). Likewise, an evidentiary hearing after briefing should not be employed to cure the Plaintiffs' inability to satisfy their initial evidentiary burdens.

In *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir.2007), the Sixth Circuit adopts as its own the rule initially announced by the Eleventh Circuit in *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312-13 (11th Cir. 1998) and then by *SEC v. G. Weeks Secur., Inc.*, 678 F.2d 649 (6th Cir.1982):

> [W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.

147 F.3d 1301, 1312-13 (11th Cir. 1998).

*Certified Restoration Dry Cleaning Network, L.L.C.*, at 553. Federal Rule of Civil Procedure 65 does not explicitly require a court to conduct an evidentiary hearing, but instead protects the adverse party's right to notice and "a fair opportunity to oppose the application and to prepare for such opposition." *County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 484 (6th Cir. 2002) (quoting *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991))." *Certified Restoration Dry Cleaning Network, L.L.C.*, at 552. *Palmer v. Harris*, N.D.Ohio No. 1:18 CV 225, 2018 U.S. Dist. LEXIS 197837, at *16-17 (Nov. 20, 2018) (court rejects evidentiary hearing where preliminary injunction request fails on first factor – likelihood of success on the merits).

For the reasons argued above, it is respectfully requested the Court decline to conduct an evidentiary hearing if Plaintiffs' request one after review of this memorandum.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

s/ Lynnette Dinkler
Lynnette Dinkler (0065455)
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419
(937) 426-4200
(866) 831-0904 (fax)
*Attorney for Defendants Bethel Local Schools District Board of Education, and in their official capacities Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin*

                                               s/ John A. Podgurski
                                               John A. Podgurski (0020923)
                                               JP@johnpodgurski.com
                                               Law Offices of John A. Podgurski
                                               9155 Chillicothe Road
                                               Kirtland, OH 44094
                                               *Attorney for Defendant Bethel Local*
                                               *School District Board of Education*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 9th day of January, 2023, I served the foregoing, via the Court's CM/ECF E-filing System which will send notification to the following:

      Joseph P. Ashbrook
      jpashbrook@ashbrookbk.com
      Julie E. Byrne
      jebyrne@ashbrookbk.com
      Ashbrook Byrne Kresge, LLC
      P.O Box 8248
      Cincinnati, OH 45249

      Nicholas Barry (pro hac vice)
      Nicholas.barry@aflegal.org
      America First Legal
      611 Pennsylvania Ave, SE #231
      Washington, DC 20003
      *Attorneys for Plaintiffs*

                                                 s/ Lynnette Dinkler
                                                 Lynnette Dinkler 0065455