

| | |
|---|---|
| Book | Policy Manual |
| Section | 0000 Bylaws |
| Title | DEFINITIONS |
| Code | po0100 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | October 10, 2016 |

0100 - **DEFINITIONS**

Whenever the following items are used in these bylaws, policies and administrative guidelines, they shall have the meaning set forth below:

**Administrative Guideline**

A statement, based on policy, usually written, which outlines and/or describes the means by which a policy should be implemented and which provides for the management cycle of planning, action, and assessment or evaluation.

**Agreement**

A collectively negotiated contract with a recognized bargaining unit.

**Apps and Web Services**

Apps/web services are software (i.e., computer programs) that support the interaction of personal communication devices (as defined in Bylaw 0100, above) over a network, or client-server applications in which the user interface runs in a web browser. Apps/web services are used to communicate/transfer information/data that allow students to perform actions/tasks that assist them in attaining educational achievement goals/objectives, enable staff to monitor and assess their students' progress, and allow staff to perform other tasks related to their employment. Apps/web services also are used to facilitate communication to, from and among and between, staff, students, and parents.

**Board**

The Board of Education.

**Bylaw**

Rule of the Board for its own governance.

**Classified Employee**

An employee who provides support to the District's program and whose position does not require a professional license.

**Compulsory School Age**

A child between six (6) and eighteen (18) years of age or a child under six (6) years of age who has been enrolled in kindergarten unless at any time the child's parent or guardian, at the parent's or guardian's discretion and in consultation with the child's teacher and principal, formally withdraws the child from kindergarten.

BOE 413

**District**

The School District.

**Due Process**

The safeguards to which a person is entitled in order to protect his/her rights.

**Educational Service Center Superintendent**

The Superintendent of Schools for the Miami County Educational Service Center Schools.

**Full Board**

Authorized number of voting members entitled to govern the District.

**Information Resources**

The Board defines Information Resources to include any data/information in electronic, audio-visual or physical form, or any hardware or software that makes possible the storage and use of data/information. This definition includes but is not limited to electronic mail, voice mail, social media, text messages, databases, CD-ROMs/DVDs, web sites, motion picture film, recorded magnetic media, photographs, digitized information, or microfilm. This also includes any equipment, computer facilities, or online services used in accessing, storing, transmitting or retrieving electronic communications.

**May**

This word is used when an action by the Board or its designee is permitted but not required.

**Meeting**

Any prearranged discussion of the Board's public business by a majority of Board members.

**Parent**

The natural, adoptive, or surrogate parents or the party designated by the courts as the legal guardian or custodian of a student. Both parents will be considered to have equal rights unless a court of law decrees otherwise. When a student is the subject of a power of attorney or caretaker authorization affidavit executed by the student's grandparent(s), the term parents shall also refer to the grandparent designated as the attorney-in-fact under the power of attorney or the grandparent who executed the affidavit.

Although the grandparent shall have rights and responsibilities with regard to the care, physical custody, and control of the student, including the ability to enroll the student in school, to obtain from the District educational or behavioral information about the student, consent to all school related matters, and consent to medical, psychological, or dental treatment for the student, the power of attorney does not convey legal custody of the grandchild to the grandparent and does not affect the rights of the parent, guardian, or custodian of the student in any future proceeding concerning the custody of the student or allocation of parental rights and responsibilities for the care of the student.

Likewise, although the grandparent shall have rights and responsibilities with regard to the care, physical custody, and control of the student, including the ability to enroll the student in school, to discuss with the District the student's educational progress, consent to all school related matters, and consent to medical, psychological, or dental treatment for the student, the caretaker authorization affidavit does not convey legal custody of the grandchild to the grandparent and does not affect the rights of the student's parents, guardian or custodian regarding the care, physical custody, and control of the child.

R.C. 3313.64, 3109.52, 3109.65

**Personal Communication Devices**

Personal communication devices ("PCDs") include computers, laptops, tablets, e-readers, cellular/mobile phones, smartphones, telephone paging devices (e.g., beepers or pagers), and/or other web-enabled devices of any type.

**Policy**

A general, written statement by the governing board which defines its expectations or position on a particular matter and authorizes appropriate action that must or may be taken to establish and/or maintain those expectations.

BOE 414

**President**

The chief executive officer of the Board. (See Bylaw 0170)

**Principal**

The educational leader and head administrator of one (1) or more District schools. In policy and administrative guidelines, implies delegation of designated responsibilities to appropriate members of his/her staff.

**Professional Staff Member**

An employee who implements or supervises one (1) or more aspects of the District's program and whose position requires a professional credential from the Division of Teacher Education and Licensing.

**Relative**

The mother, father, sister, brother, spouse, parent of spouse, child, grandparents, grandchild, or dependent in the immediate household as defined in the negotiated, collectively-bargained agreement.

**Secretary**

The chief clerk of the Board of Education.

**Shall**

This word is used when an action by the Board or its designee is required. (The word "will" or "must" signifies a required action.)

**Student**

A person who is officially enrolled in a school or program of the District.

**Superintendent**

The chief executive officer of the School District. In policy, implies delegation of responsibilities to appropriate staff members.

**Technology Resources**

The Board defines Technology Resources to include computers, laptops, tablets, e-readers, cellular/mobile telephones, smartphones, web-enabled devices, video and/or audio recording equipment, SLR and DSLR cameras, projectors, software and operating systems that work on any device, copy machines, printers and scanners, information storage devices (including mobile/portable storage devices such as external hard drives, CDs/DVDs, USB thumb drives and memory chips), the computer network, Internet connection, and online educational services and apps.

**Textbook**

This word is used to describe the learning material duly adopted and required as standard work for the study of a particular subject. It may be bound and printed with a hard or soft cover, or it may be electronic, e.g., computer software, interactive videodisc, magnetic media, CD ROM, computer courseware, on-line service, electronic medium, or other means of conveying information.

**Treasurer**

The chief fiscal officer of the District.

**Vice-President**

The Vice-President of the Board of Education. (See Bylaw 0170)

**Voting**

A vote at a meeting of the Board of Education. The law requires that Board members must be physically present in order to have their vote officially recorded in the Board minutes. R.C. 3313.18, 3313.20 Citations to Ohio Statute are noted as R.C. (Revised Code). Citations to Rules of the State Board of Education are noted as A.C. (Administrative Code). Citations to the Federal Register are noted as FR, to the Code of Federal Regulations as C.F.R., and to the United States Code as U.S.C.

BOE 415

© Neola 2016

BOE 416



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | CHILDREN AND YOUTH IN FOSTER CARE |
| Code | po5111.03 |
| Status | Active |
| Adopted | April 10, 2017 |

### 5111.03 - CHILDREN AND YOUTH IN FOSTER CARE

The Board of Education recognizes the importance of educational stability for children and youth in foster care. Further, the Board recognizes these children and youth as a vulnerable subgroup of students in need of safeguards and supports in order to facilitate a successful transition through elementary and secondary education and into college and/or careers. To that end, the District will collaborate with the Ohio Department of Education (ODE), other schools and school districts, and the appropriate custodial agencies (child welfare agencies and/or local Title IV-E courts) to provide educational stability for children and youth in foster care.

**Definitions**

Children who meet the Federal definition of "in foster care", including those children who are awaiting foster care placement, will be provided a free appropriate public education (FAPE) in the same manner as all other students of the District. To that end, students in foster care will not be stigmatized or segregated on the basis of their status. The District shall establish safeguards that protect foster care students from discrimination on the basis of their foster care status or other of the recognized Protected Classes (Policy 2260). The District shall regularly review and revise its policies, including school discipline policies that may impact students in foster care.

Consistent with the Fostering Connections Act, "foster care" means twenty-four (24) hour substitute care for children placed away from their parents or guardians and for whom the custodial agency has placement and care responsibility. This includes, but is not limited to, placements in:

    A. foster family homes;

    B. foster homes of relatives;

    C. group homes;

    D. emergency shelters;

    E. residential facilities;

    F. child care institutions; and

    G. preadoptive homes.

A child is in foster care in accordance with this definition regardless of whether the foster care facility is licensed and payments are made by the State, tribal or local agency for the care of the child, whether adoption subsidy payments are being made prior to the finalization of an adoption, or whether there is Federal matching of any payments that are made. (45 C.F.R. 1355.20 (a)).

**School Stability**

BOE 417

The District shall remove barriers to the enrollment and retention of children and youth in foster care in schools in the District. Foster care students shall be enrolled immediately, even if they do not have the necessary enrollment documentation such as immunization and health records, proof of residency or guardianship, birth certificate, school records, and other documentation, in order to prevent educational discontinuity. Within twenty-four (24) hours of a student's enrollment in school, the District shall contact the school last attended by the student and request that it send all appropriate records and documentation concerning the student.

The District shall meet the Title I requirements for educational stability for children and youth in foster care, including those awaiting foster care placement. The District shall identify which students are in foster care and shall collaborate with State and tribal custodial agencies to provide educational stability for these children and youth. District staff will work closely with custodial agency personnel to develop and implement processes and procedures that include these enrollment safeguards:

    A. a child/youth in foster care shall remain in his/her school of origin, unless it is determined that remaining in the school of origin is not in that child's best interest;

    B. if it is not in the child's best interest to stay in his/her school of origin, the child shall be immediately enrolled in the determined new school even if the child is unable to produce records normally required for enrollment; and

    C. the new (enrolling) school shall immediately contact the school of origin to obtain relevant academic and other records, including the student's Individualized Education Program (IEP) if applicable.  (ESEA Section 1111(g)(1)(E)(i)-(iii)).

**School of Origin**

The school of origin is the school in which a student is enrolled at the time of placement in foster care.  If a student's foster care placement changes, the school of origin would then be considered the school in which the child is enrolled at the time of the placement change. A student in foster care shall remain in his/her school of origin, if it is determined to be in the student's best interest, for the duration of the student's placement in foster care.

When a student exits foster care, the District will continue to prioritize the student's educational stability in determining placement, supports, and services deemed to be in the child's best interests.

A student who has exited foster care shall not be permitted to remain in the school of origin, unless there are extenuating circumstances and documentation to demonstrate that the child should remain in the school of origin through the end of the school year.

**Best Interest Determination**

In making the best interest determination, the District will follow the guidelines established by ODE and the State or tribal custodial agencies. The District shall utilize the prescribed process in conjunction with local custodial agencies in making best interest determinations, and shall make such determination within five (5) school days of the child's placement in foster care or change in child's living arrangement. Once a determination is made the District shall provide the decision in writing to all relevant parties, in collaboration with the appropriate custodial agency. When making decisions regarding educational placement of students with disabilities under IDEA and Section 504, the District shall provide all required special educational and related services and supports provided in the least restrictive placement where the child's unique needs, as described in the student's IEP or Section 504 plan, can be met.

**Dispute Resolution**

If there is a dispute regarding whether the educational placement of a child in foster care is in the best interest of that child, the dispute resolution process established by the Ohio Department of Education (ODE) shall be used.

The District's representatives shall collaborate fully in this process, considering relevant information regarding academic programming and related service needs of the child, and advocating for what the District believes is in the best interest of the child.

To the extent feasible and appropriate, the child will remain in his/her school of origin while disputes are being resolved in order to minimize disruption and reduce the possible number of moves between schools. (ESEA Section 1111(g)(1)(E)(i)).

Since the custodial agency holds ultimate legal responsibility for making the best interest determination for the foster child in their care, if the dispute cannot be resolved the dispute, the custodial agency will make the final determination.  Such final determination will be made within five (5) school days of the child's placement in foster care or change in the child's living arrangement.

All notifications and reports regarding foster care placement, changes in school enrollment, transportation services, and changes in the child's living arrangements shall be provided to the affected parties, in writing, in accordance with the forms, procedures,

BOE 418

and requirements of the ODE and the State or tribal custodial agencies.

**Local Point of Contact**

The Superintendent shall designate and make public a local point of contact who will perform the duties as assigned by the Superintendent. The point of contact shall serve as a liaison to coordinate with child protection agencies, lead the development of a process for making the best determination for a student, facilitate the transfer of records, and oversee the enrollment and regular school attendance of students in foster care.

**Records**

The District shall provide privacy protections for children and families and shall facilitate appropriate data-sharing pertaining to children in foster care between custodial and educational agencies, in accordance with the Family Educational Rights and Privacy Act (FERPA) and Policy 8330 – Student Records.

**Services to Children and Youth in Foster Care**

Foster care children and their families shall be provided equal access to the educational services for which they are eligible comparable to other students in the District including:

A. educational services for which the student in foster care meets eligibility criteria including services provided under Title I of the Elementary and Secondary Education Act or similar State and local programs, educational programs for children with disabilities, and educational programs for students with limited English proficiency;

B. preschool programs;

C. programs in career and technical education;

D. programs for gifted and talented students;

E. school nutrition programs; and

F. before - and after-school programs.

**Transportation Services**

The District shall provide that transportation services for children in foster care consistent with the procedures developed by the District in collaboration with the State or local custodial agency. These requirements apply whether or not the LEA already provides transportation for children who are not in foster care.

In order for a student in foster care to remain in his/her school of origin, when in his/her best interest, transportation services shall be provided, arranged, and funded for the duration of the child's placement in foster care. The District's transportation services will provide that:

A. Children in foster care needing transportation to their schools of origin will promptly receive that transportation in a cost effective manner and in accordance with Section 475(4)(A) of the Social Security Act; and

B. If there are additional costs incurred in providing transportation to the school of origin, the District shall provide such transportation if 1) the local custodial agency agrees to reimburse the District for the cost of such transportation; 2) the District agrees to pay for the cost; or 3) the District and the local custodial agency agree to share the cost. (ESEA 1112(c) (5)(B)).

The District will collaborate with the SEA, other LEAs, and custodial agencies to pursue possible funding sources and arrangements to deal with transportation costs.

**Coordination of Service**

Since foster care placements may occur across district, county, or State boundary lines, coordination among multiple agencies may be necessary. The District will work with appropriate State and local agencies to address such placement and transportation issues that arise. The District shall provide or arrange for adequate and appropriate transportation to and from the school of origin while any disputes are being resolved.

No Board policy, administrative procedure, or practice will be interpreted or applied in such a way as to inhibit the enrollment, attendance, or school success of children and youth in foster care.

BOE 419

**© Neola 2017**

Legal                    45 C.F.R. 1355.20



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | PARENT AND FAMILY MEMBER PARTICIPATION IN TITLE I PROGRAMS |
| Code | po2261.01 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 10, 2018 |

**2261.01 - PARENT AND FAMILY MEMBER PARTICIPATION IN TITLE I PROGRAMS**

In accordance with the requirements of Federal law, programs supported by Title I funds must be planned and implemented in meaningful consultation with parents and family members of the students being served.

Each year the Superintendent shall work with parents and family members of children served in Title I Programs in order to jointly develop and agree upon a proposed written parent and family engagement policy to establish expectations for the involvement of such parents and family members in the education of their children. The proposed policy shall be reviewed and approved annually by the Board of Education and distributed to parents and family members of children receiving Title I services. The proposed policy must establish the District's expectations and objectives for meaningful parent and family involvement, and describe how the School District will:

A. involve parents and family members in the development of the School District's Title I plans and any State-mandated comprehensive support and improvement plans;

B. provide coordination, technical assistance, and other support necessary to assist and build the capacity of all participating schools in planning and implementing effective parent involvement activities to improve student achievement and school performance, which may include meaningful consultation with employers, business leaders, and philanthropic organizations, or individuals with expertise in effectively engaging parents and family members in education;

C. coordinate and integrate parent and family engagement strategies, to the extent feasible and appropriate, with other Federal, State, and local laws and programs;

D. with meaningful involvement of parents and family members, annually evaluate the content and effectiveness of the parent and family engagement policy in improving the academic quality of schools, including:

    1. identifying barriers to greater parent participation (with particular attention to parents who are economically disadvantaged, are disabled, have limited English proficiency, have limited literacy, or are of any racial or ethnic minority background);

    2. the needs of parents and family members to assist with the learning of their children, including engaging with school personnel and teachers; and

    3. strategies to support successful school and family interactions.

E. use the findings of the above-referenced evaluation to:

    1. design evidence-based strategies for more effective parental involvement; and,

    2. revise the parent and family engagement policy, if necessary;

BOE 421

F. involve parents in the activities of the District's Title I schools, which may include establishing a parent advisory board that may be charged with developing, revising and reviewing the parent and family engagement policy;

G. provide opportunities for the informed participation of parents and family members (including parents and family members who have limited English proficiency and/or disabilities, and parents and family members of migratory children, including providing information and school reports in a format, and to the extent practicable in a language, such parents can understand;

H. conduct meetings with parents including provisions for flexible scheduling and assistance to parents to better assure their attendance at meetings;

I. develop agendas for parent meetings to include review and explanation of the curriculum, means of assessments, and the proficiency levels students are expected to achieve and maintain;

J. provide opportunities for parents to formulate suggestions, interact and share experiences with other parents, and participate appropriately in the decision-making about the program and revisions in the plan;

K. involve parents in the planning, review, and improvement of the Title I program;

L. communicate information concerning school performance profiles and their child's individual performance to parents;

M. assist parents in helping their children in achieving the objectives of the program by such means as ensuring regular attendance, monitoring television-watching, providing adequate time and the proper environment for homework; guiding nutritional and health practices, and the like;

N. provide timely responses to parental questions, concerns, and recommendations;

O. coordinate and provide technical assistance and other support necessary to assist Title I schools to develop effective parent participation activities to improve academic achievement;

P. conduct other activities as appropriate to the Title I plan and State and Federal requirements.

The Board will reserve the requisite percent of its allocation of Federal Title I funds to carry out the above-described activities. Parents and family members of children receiving Title I services shall be involved in the decisions regarding how the reserved funds are allotted for parent involvement activities. Reserved funds shall be used to carry out activities and strategies consistent with the Board's parent and family engagement policy (Policy 2111), including at least one (1) of the following:

A. Supporting schools and nonprofit organizations in providing professional development for the District and school personnel regarding parent and family engagement strategies, which may be provided jointly to teachers, principals, other school leaders, specialized instructional support personnel, paraprofessionals, early childhood educators, and parents and family members.

B. Supporting programs that reach parents and family members at home, in the community, and at school.

C. Disseminating information on best practices focused on parent and family engagement, especially best practices for increasing the engagement of economically disadvantaged parents and family members.

D. Collaborating, or providing subgrants to schools to enable such schools to collaborate, with community-based or other organizations or employers with a record of success in improving and increasing parent and family engagement.

E. Engaging in any other activities and strategies that the Board determines are appropriate and consistent with its parent and family engagement policy.

The Superintendent must also assure that each Title I participating school develops a specific written plan, with parental involvement and agreement, which includes provisions regarding the following:

A. Each principal must convene an annual meeting at a convenient time to which all parents of participating children are invited and encouraged to attend to explain the parents' rights to be involved and the school's obligations to develop a parent and family engagement policy.

B. Meetings with parents of children receiving Title I services must be scheduled at flexible times with assistance such as child care, transportation, home visits, or similar aid offered to parents to encourage their involvement.

C. Parents must be involved in an organized, on-going and timely way in the development, review, and improvement of

BOE 422

parent involvement activities, including the planning, review and improvement of the school parent and family engagement policy, and the joint development of the schoolwide program plan, if appropriate.

D.  Parents of participating students must be provided with:

    1.  timely information about the Title I program and the school's parent and family engagement policy;

    2.  a description and explanation of the curriculum in use at the school, the forms of academic assessment used to measure student progress, and the achievement levels expected;

    3.  regular meetings, upon request, for parents to make suggestions, and to participate as appropriate, in decisions relating to the education of their children, and receive responses regarding the parents' suggestions about their student's education as soon as practicably possible.

E.  If the written plan is not satisfactory to the parents of participating children, the school must submit any parents' comments when it presents the plan to the Superintendent.

F.  As a component of the school-level parent and family engagement policy, the principal for each school shall coordinate the development of a school-parent compact jointly with parents of children served under Title I which outlines how the school staff, the parents, and the student will share responsibility for improved student academic achievement and the means by which the school and parents will build and develop a partnership to help students achieve the State's high standards. The compact must:

    1.  describe the school's responsibility to provide a high quality curriculum and instruction in a supportive, effective learning environment;

    2.  describe the ways in which each parent is responsible for supporting their child's learning environment such as monitoring attendance, homework, extra-curricular activities and excessive television watching; volunteering in the classroom; and participating, as appropriate, in decisions relating to the education of their children and their positive use of extra-curricular time;

    3.  address the importance of parent/teacher communication on an on-going basis through at least annual parent-teacher conferences to discuss the child's achievement and the compact; frequent progress reports to the parents on their child's progress; reasonable access to the staff and to observe and participate in classroom activities and regular two-way, meaningful communication between family members and school staff, and, to the extent practicable, in a language that family members can understand.

G.  Parents of children receiving Title I services must be notified about their school's parent and family engagement policy in an understandable and uniform format, and to the extent practicable, in a language the parents can understand. These policies must also be made available to the community.

H.  School-level parent and family engagement policies must be updated periodically to meet the changing needs of parents and the schools.

In order to involve parents in the education of their children and to support a partnership among the school, parents and the community for improving student academic achievement, the Superintendent and building principals must include provisions in the School District and school-level parent and family engagement policies regarding:

A.  assisting parents of children served under Title I in understanding such topics as the State academic standards, State and local academic assessments, Title I, and how to monitor their child's progress and how to work with educators to improve their child's achievement;

B.  providing materials and training to help parents work with their children to improve achievement, such as literacy training and using technology (including education about the harms of copyright privacy);

C.  educating teachers, specialized instructional support personnel, school leaders (including principals), and other staff, with the assistance of parents, about the value and utility of contributions of parents, how to reach out to, communicate with, and work with parents as equal partners, how to implement and coordinate parent programs, and how to build ties between parents and the school;

D.  to the extent feasible and appropriate, coordination and integration of parent involvement programs and activities with other Federal, State and local programs (including public preschool programs), and conducting other activities that encourage and support parents more fully participating in the education of their children (e.g., parent resource centers);

E.  providing information related to school and parent programs, meetings, and other activities to parents of participating

BOE 423

children in a format, and, to the extent practicable, in a language the parents can understand;

F. providing such reasonable support for parent involvement activities as parents may request.

In order to build the School District's capacity for parent involvement, the Superintendent and building principals may also:

A. involve parents in the development of training for teachers and administrators and other educators to improve the effectiveness of such training;

B. provide necessary literacy training from Title I funds if the District has exhausted all other reasonably available sources of funding for such training;

C. pay reasonable and necessary expenses associated with parental involvement activities to enable parents to participate in school-related meetings and training sessions, including transportation and child care costs;

D. train parents to enhance the involvement of other parents;

E. arrange school meetings at a variety of times, or conduct in-house conferences between teachers or other educators who work directly with participating children, with parents who are unable to attend such conferences at school, in order to maximize parental involvement and participation;

F. adopt and implement model approaches to improving parental involvement in Title I programs;

G. establish a District-wide parent advisory council to provide advice on all matters related to parental involvement programs;

H. develop appropriate roles for community-based organizations and businesses in parental involvement activities.

**© Neola 2018**

Legal           20 U.S.C. 6318 et seq.

                 34 C.F.R. Part 200 et seq.

BOE 424



| Book | Policy Manual |
|---|---|
| Section | 2000 Program |
| Title | STUDENT PRIVACY AND PARENTAL ACCESS TO INFORMATION |
| Code | po2416 |
| Status | Active |
| Adopted | March 10, 2008 |

**2416 - STUDENT PRIVACY AND PARENTAL ACCESS TO INFORMATION**

The Board of Education respects the privacy rights of parents and their children. No student shall be required, as a part of the school program or the District's curriculum, without prior written consent of the student (if an adult, or an emancipated minor) or, if an unemancipated minor, his/her parents, to submit to or participate in any survey, analysis, or evaluation that reveals information concerning:

    A. political affiliations or beliefs of the student or his/her parents;

    B. mental or psychological problems of the student or his/her family;

    C. sex behavior or attitudes;

    D. illegal, anti-social, self-incriminating or demeaning behavior;

    E. critical appraisals of other individuals with whom respondents have close family relationships;

    F. legally recognized privileged and analogous relationships, such as those of lawyers, physicians, and ministers;

    G. religious practices, affiliations, or beliefs of the student or his/her parents; or

    H. income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such a program).

The Superintendent shall require that procedures are established whereby parents may inspect any materials used in conjunction with any such survey, analysis, or evaluation.

Further, parents have the right to inspect, upon request, a survey or evaluation created by a third party before the survey/evaluation is administered or distributed by the school to the student. The parent will have access to the survey/evaluation within a reasonable period of time after the request is received by the building principal.

Additionally, parents have the right to inspect, upon request, any instructional material used as part of the educational curriculum of the student. The parent will have access to the instructional material within a reasonable period of time after the request is received by the building principal. The term instructional material means instructional content that is provided to a student, regardless of its format, including printed and representational materials, audio-visual materials, and materials in electronic or digital formats (such as materials accessible through the Internet). The term does not include academic tests or assessments.

The Board will not allow the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

The Superintendent is directed to provide notice directly to parents of students enrolled in the District of the substantive content

BOE 425

Case: 3:22-cv-00337-MJN-PBS Doc #: 39-3 Filed: 01/27/23 Page: 14 of 38 PAGEID #: 883

of this policy at least annually at the beginning of the school year, and within a reasonable period of time after any substantive change in this policy. In addition, the Superintendent is directed to notify parents of students in the District, at least annually at the beginning of the school year, of the specific or approximate dates during the school year when the administration of any survey by a third party that contains one or more of the items described in A through H above are scheduled or expected to be scheduled.

For purposes of this policy, the term "parent" includes a legal guardian or other person standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child).

Legal          A.C. 3301-35-02(C), 3301-35-01(D)(5)

                  20 U.S.C. 1232(g)(h)

BOE 426



| | |
|---|---|
| Book | Policy Manual |
| Section | 2000 Program |
| Title | DISTRICT-SPONSORED CLUBS AND ACTIVITIES |
| Code | po2430 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |

2430 - **DISTRICT-SPONSORED CLUBS AND ACTIVITIES**

The Board of Education believes that the goals and objectives of this District are best achieved by a diversity of learning experiences, including those that are not conducted in a regular classroom but are directly related to the curriculum.

The purpose of curricular-related activities shall be to enable students to explore a wider range of individual interests than may be available in the District's courses of study but are still directly related to accomplishing the educational outcomes for students as adopted by the Board in Policy 2131.

For purposes of this policy, curricular-related activities are defined as those activities in which:

    A. the subject matter is actually taught or will be taught in a regularly offered course;

    B. the subject matter concerns the District's composite courses of study;

    C. participation is required for a particular course;

    D. participation results in academic credit.

No curricular-related activity shall be considered to be under the sponsorship of this Board unless it meets one or more of the criteria stated above and has been approved by the Superintendent.

Such activities, along with extra-curricular activities (not directly related to courses of study), may be conducted on or off school premises by clubs, associations, and organizations of students sponsored by the Board and directed by a staff advisor.

The Board shall allow nondistrict-sponsored, student clubs and activities during noninstructional time, in accordance with the provisions in Policy 5730 -- Equal Access For Nondistrict-Sponsored, Student Clubs and Activities.

Noncurricular student activities that are initiated by parents or other members of the community may be allowed under the provisions of Policy 7510 - Use of District Facilities. The Board, however will not:

    A. assume any responsibility for the planning, conducting, or evaluating of such activities;

    B. provide any funds or other resources;

    C. allow any member of the District's staff to assist in the planning, conducting, or evaluating of such an activity during the hours s/he is functioning as a member of the staff.

No nondistrict-sponsored organization may use the name of the School District or any other name which would associate an activity with the District.

BOE 427

In order to be eligible for any co-curricular, interscholastic and noninterscholastic extra-curricular activity, a student must have maintained at least a 2.0 grade-point average and must not have received more than one (1) failing grade in any course for the grading period prior to the grading period in which s/he wishes to participate. Students who are educated at home or enrolled in nonpublic schools are eligible to participate in accordance with Policy 9270. Students attending community or STEM schools may participate in extra-curricular activities in accordance with Policy 2430.02.

An exception may be made by the principal if the student has been participating in an intervention program and has shown satisfactory progress toward achieving the minimum grade-point average.

If a student who becomes ineligible under these standards improves his/her grade point average during the current grading period enough to meet the eligibility standard, s/he may be reinstated at the beginning of the next grading period.

Students identified as disabled under R.C. Chapter 3323 and the IDEA are subject to the eligibility standards established by this policy unless specifically exempted by the express terms of their individualized education program (IEP). An IEP can specify the criteria by which a grade will be determined for [a] course[s], given the individual student's disability.

Whenever a student becomes a member of a District-established student group or national organization such as National Honor Society, in order to remain a member, s/he must continue to meet all of the eligibility criteria and abide by the principles and practices established by the group or organization.

The Athletic Director and/or Principal shall require that each student athlete, who participates in either an interscholastic or intramural sport, submits Form 2431 F1 and Form 2431 F2 signed by the student and his/her parent or guardian, or by a person having care or charge of the student, affirming that each has received the Ohio Department of Health's concussion and head injury information sheet. The forms shall be signed and submitted on an annual basis. No student may practice or compete in interscholastic or intramural athletics until Form 2431 F1 and Form 2431 F2 are received by the Athletic Director or Principal. No student will be denied the opportunity to participate in interscholastic athletics offered by a school in the District because the student has or is participating in college credit plus program as long as the student fulfills all academic, nonacademic, and financial requirements.

Students shall be fully informed of the curricular-related and extra-curricular activities available to them and of the eligibility standards established for participation in these activities. Students will be further informed that participation in these activities is a privilege and not a right, and that they may be prohibited from all or part of their participation in such activities by authorized school personnel without further notice, hearing and/or appeal rights (See Policy 5610.05 - Prohibition from Extra-Curricular Activities). District- sponsored activities shall be available to all students who elect to participate and who meet eligibility standards.

The Superintendent shall prepare administrative guidelines to implement a program of curricular-related clubs and activities and of extra-curricular activities. Such guidelines should ensure that the needs and interests of the students are properly assessed and procedures are established for continuing evaluation of each club and activity.

Revised 12/8/14

**© Neola 2017**

| Legal | R.C. 3313.53, 3313.5341, 3313.537, 3313.539, 3313.664, 3315.062 |
|---|---|
|  | A.C. 3301-35-03 |

BOE 428



| Book | Policy Manual |
|---|---|
| Section | 2000 Program |
| Title | STUDENT ASSESSMENT AND ACADEMIC INTERVENTION SERVICES |
| Code | po2623 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |

2623 - **STUDENT ASSESSMENT AND ACADEMIC INTERVENTION SERVICES**

The Board of Education shall assess student achievement and needs in all program areas in compliance with State law and the rules adopted by the State Board of Education. The purpose of such assessments will be to determine the progress of students and to assist them in attaining student performance objectives and the educational achievement goals of this District.

The Board shall administer the State-mandated tests (e.g., diagnostic assessments, and achievement tests) to students at the times designated by the State Board of Education. The Board may, for medical reasons or other good cause, excuse a student from taking a State-mandated, test on the date scheduled, but any such test shall be administered to such excused student not later than nine (9) days following the scheduled date. The Board shall annually report, not later than June 30th, the number of students who have not taken one (1) or more of the State-mandated tests to the State Board of Education.

The District shall require that all appropriate staff have knowledge of the prescribed standards of ethical assessment practice and shall monitor the assessment practices for compliance with these standards. These duties shall include:

A. communicating standards of ethical assessment practice;

B. communicating security procedures for assessment;

C. establishing procedures for reviewing assessment materials and procedures and assessment preparation materials and procedures;

D. establishing channels of communication that allow teachers, other educators, students, parents, and other members of the community to voice concerns about assessment practices;

E. establishing written procedures for investigating complaints, allegations, and/or concerns about assessment practices, protecting the rights of an individual, the integrity of an assessment, and the results of an assessment.

The Board shall provide academic intervention services in pertinent subject areas to students who score below the proficient level in reading, writing, mathematics, social studies, or science achievement test, or who do not demonstrate academic performance at their grade level based on the results of a diagnostic assessment.

At least annually, staff members will assess the academic achievement and learning needs of each student. Procedures for such assessments may include, but need not be limited to, teacher observation techniques, cumulative student records, student performance data collected through standard testing programs, and physical examinations.

The Superintendent shall develop a program of testing that may include:

A. administration of State-mandated tests (e.g., diagnostic assessment and achievement tests), at no cost to students, in accordance with the provisions of A.C. 3301-13-02;

BOE 429

B. performance-based tests at appropriate grade levels to measure achievement of performance objectives in composition, mathematics, science, social studies, and reading;

C. District or teacher-made achievement or performance tests;

D. tests of mental ability;

E. norm referenced achievement tests.

"Achievement test" means "a test, aligned with the Ohio academic content standards and model curriculum, designed to measure a student's level of knowledge or skill in a specific subject area that is expected at the end of a designated grade and/or is required as part of the Ohio graduation requirement."

"Alternate assessment" means "the use of an assessment instrument, other than the Ohio achievement tests or diagnostic assessments, that meets the requirements of all applicable Federal and State laws and A.C. 3301-13-03."

"Diagnostic assessment" means "an assessment aligned with Ohio academic content standards and model curriculum, designed to measure student comprehension of academic content and mastery of related skills for a relevant subject area at each grade level, kindergarten through three, as defined in R.C. 3301.079."

"Ohio graduation tests" means "the achievement tests, aligned with academic content standards and model curriculum, designed to measure a student's level of academic achievement expected at the end of the tenth grade in writing, reading, mathematics, social studies, and science."

"Performance standards" means "a score adopted by the State Board of Education indicative of a particular level of academic achievement at a designated grade for each achievement test or alternate assessment."

"Statewide tests" means "any assessment that is provided by the Ohio Department of Education (ODE) for use in all participating schools in the State."

The Superintendent shall develop:

A. procedures for the regular collection of student performance data;

B. a plan for the design of classroom-based intervention services to meet the instructional needs of individual students as determined by the results of diagnostic assessments; and

C. procedures for using student performance data to evaluate the effectiveness of intervention services and, if necessary, to modify such services.

For any student who failed to demonstrate at least a score at the proficient level on an achievement test during the preceding school year, the Board shall provide appropriate intervention services commensurate with the student's test performance in each such test area, including intensive prevention, intervention, or remediation required under R.C. 3301.0711, 3301.0715, 3313.608, or R.C. 3313.6012.

The Board shall require that:

A. parents be informed of the testing program of the schools and of the special tests that are to be administered to their children;

B. data regarding individual test scores be entered on the student's cumulative record, where it will be subject to the Board's student records policy;

C. the aggregate results of each school-wide, program-wide, and District-wide test be made part of the public record.

Summer remediation services shall meet the following conditions:

A. the remediation methods are based on reliable educational research

B. testing will be conducted before and after students participate in the program to facilitate monitoring results of the remediation services

C. the parents of participating student will be involved in programming decisions

BOE 430

   D. the services will be conducted in a school building or community center and not on an at-home basis

The Board shall keep records for each student including the following:

   A. a unique State student identification code or a student data verification code as required in accordance with R.C. 3301.0714(D)(2)

   B. a list or designation of which tests are required and which tests are not required

   C. a list or designation of which tests, required or not required, are taken and which are not taken at each test administration period

   D. score for each test taken, required or not

   E. whether each student attained the requisite performance standard designated for each required test

   F. what if any tests must still be taken

   G. whether or not intervention must be provided

   H. for each test required for graduation, the date passed must be recorded on the student's transcript

      No information shall be on the student's transcript for a test not passed.

When a student who has taken State-mandated tests in one (1) school leaves that school to enroll in another school, the school previously attended shall provide, immediately upon request by a school official from the enrolling school, all applicable records set forth above.

For each student required to be offered intervention services, the Board shall involve the student's parent or guardian and classroom teacher in developing the intervention strategy, and shall offer to the parent or guardian the opportunity to be involved in the intervention services.

During the school year following the year in which the tests prescribed by R.C. 3301.0710(A)(1) are administered to any student, the Board shall provide appropriate intervention services, commensurate with the student's test performance, including any intensive prevention, intervention, or remediation required under R.C. 3301.0711, 3301.0715, 3313.608 or R.C. 3313.6012, in any skill in which the student failed to demonstrate at least a score of proficient level on an achievement test.

Except as authorized by State law, the Board shall not use any student's failure to attain a specified score on any State-mandated test as a factor in any decision to deny the student promotion to a higher grade level.

All identified students with disabilities in the School District shall be considered for participation in the State-mandated testing. The extent of the student's participation shall be determined by the IEP Team. Accordingly, the student's IEP shall require that s/he take:

   A. the required assessments in the same manner as other students;

   B. the required assessments with accommodations appropriate for his/her disability; or

   C. an alternate assessment that has been approved by the State Department of Education.

To the extent possible, and in accordance with law, a student with disabilities shall not be excused from taking a required assessment unless no reasonable accommodation can be made to enable the student to take the assessment.

The Superintendent shall implement administrative guidelines that comply with the State Department's regulations with regard to the administration of the State-mandated, tests, including the reporting of results.

Program evaluations will be reviewed and updated every five (5) years.  A schedule for such will be developed and implemented by the Superintendent.

After July 1, 2017, no student will spend more than two percent (2%) of the school year taking state assessments, including the Ohio graduation tests, college and work ready assessment systems and any District-wide assessment for all students in a specified subject area or grade level. Students will not spend more than one percent (1%) of the school year on diagnostic or practice assessments to prepare for the above assessments. Students with disabilities are exempt from this requirement, as are related diagnostic assessments for students who failed the English language arts achievement assessment, substitute examinations, or examinations to identify a gifted student.

BOE 431

This policy shall be reviewed and updated annually.

See Policy 2623.02 – Third Grade Reading Guarantee

Revised 12/8/08
Revised 2/9/15

**© Neola 2017**

Legal                 R.C. 3301.079, 0710, .0711, .0714, .0715, .0729, 313.608, 3313.608(D), 3313.6012

A.C. 3301-13, 3301-35

BOE 432



| | |
|---|---|
| Book | Policy Manual |
| Section | 3000 Professional Staff |
| Title | EMPLOYMENT OF PROFESSIONAL STAFF |
| Code | po3120 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | May 26, 2020 |

3120 - **EMPLOYMENT OF PROFESSIONAL STAFF**

The Board of Education recognizes that it is vital to the successful operation of the District that positions created by the Board be filled with highly qualified and competent personnel.

The Board shall approve the employment, and also, when not covered by the terms of a negotiated, collectively-bargained agreement, fix the compensation and establish the term of employment for each professional staff member employed by the Board.

The professional positions are listed in the negotiated agreement.

Such approval shall be given only to those candidates for employment recommended by the Superintendent or by another individual designated by the Board in the event that the Superintendent's nomination would be a violation of R.C. 2921.42.

Relatives of Board members may be employed by the Board, provided a member of the Board does not participate in any way in the discussion or vote on the employment when a conflict of interest is involved.

Relatives of staff members may be employed by the Board, provided the staff member being employed is not placed in a position in which s/he is supervised directly by the relative staff member.

Applications for employment will not be accepted from any current Board member. If a Board member wishes to apply for a position, his/her resignation must be accepted by the Board prior to submitting an application and the Board member must not use or attempt to use his/her official authority or influence to secure the employment position.

Any professional staff member's intentional misstatement of fact material to qualifications for employment or the determination of salary shall be considered by this Board to constitute grounds for dismissal.

The employment of professional staff members prior to approval by the Board is authorized when their employment is required to maintain continuity in the educational program. Employment shall be recommended to the Board at the next regular meeting.

No candidate for employment as a professional staff member shall receive recommendation for such employment without having proffered visual evidence of proper licensing or that application for such licensing is in process. Said licensing shall meet the minimum requirements of State law for the position for which s/he is being recommended.

The Superintendent may, however, recommend to the Board the employment of an unlicensed person if s/he holds a baccalaureate degree and is a veteran of the Armed Forces of the United States and has been honorably discharged within the last three (3) years, and while in the armed services, had meaningful experience as a teacher or instructor, and the right to teach without a license has not been revoked by the Superintendent of Public Instruction.

If such a person is employed, s/he shall be considered to be eligible for and must fulfill the professional development standards

BOE 433

required of other professional staff members.

If the Superintendent, after proper investigation, determines that the person no longer should have the right to teach, s/he may be terminated without regard to R.C. 3319.11 and R.C. 3319.16.

Professional staff must also pass a background check performed by the Bureau of Criminal Identification and Investigation and the Federal Bureau of Investigation (see Policy 3121).

The Superintendent shall prepare administrative guidelines for the recruitment and selection of all professional staff.

**REQUIREMENTS FOR TEACHERS**

Teachers must hold a valid license issued by the State to teach in all areas of assignment. Teachers who instruct in core subject areas must be properly certified/licensed by the Elementary and Secondary Education Act, as amended ("ESEA"), and State law. A properly licensed/certified teacher is defined as a teacher who has successfully completed all requirements for certification/license applicable to all grade levels and subject areas in which the teacher provides instruction and the students to whom the teacher provides the instruction. "Core subject areas" include reading, English Language Arts, Mathematics, Science, Social Studies, Foreign Language, and Fine Arts.

The following teacher license types may be considered eligible for proper certification/licensure in a core subject area:

    A. Resident Educator/Alternative Resident Educator License

    B. Professional Educator License

    C. Senior Professional Educator License

    D. Lead Professional Educator License

    E. One-Year Out-of-State License

    F. Supplemental License

    G. Visiting International Teacher License

The Superintendent shall report State certification and licensure status for every teacher at least annually in accordance with State and Federal law. At the start of the school year, the Superintendent shall notify parents/guardians of each student enrolled in the District that they may request information about the professional qualifications of each classroom teacher who provides instruction to the student. Upon request of the parent/guardian, the District will provide information about each teacher assigned to provide instruction to their student(s) in a timely manner. The information will include whether the teacher has satisfied all requirements for certification/licensure or whether the teacher provides instruction under a waiver.

**Confirmation of Licensure**

As a prerequisite to employee pay, the Superintendent must first issue to the Treasurer a written statement that confirms each teacher and/or professional employee has filed with the Superintendent both a copy of all valid licenses as well as copies of any reports required by the State Board or this Board to demonstrate his/her qualification to teach in all assigned subject and grade levels of instruction and/or a professional educator position. No professional staff member employed in a position for which licensure is required may be paid until evidence of such appropriate licensure for the subject area, grade level, or position, etc. has been received by the Superintendent and transmitted to the Treasurer.

Revised 12/8/08
Revised 6/10/13
Revised 2/9/15

**© Neola 2020**

BOE 434

Legal               R.C. 2921.01, 2921.42, 3319.02, 3319.07, 3319.074, 3319.11

                    R.C. 3319.23 - .28, 3319.283, 3319.301, 3319.36, 3319.39

                    20 U.S.C. 6319

                    20 U.S.C. 7801

                    A.C. 3301-24-05

                    ESEA 1112

                                                                      BOE 435

Case: 3:22-cv-00337-MJN-PBS Doc #: 39-3 Filed: 01/27/23 Page: 24 of 38 PAGEID #: 893



| | |
|---|---|
| Book | Policy Manual |
| Section | 4000 Classified Staff |
| Title | LEAVES AND ABSENCES |
| Code | po4430 |
| Status | Active |
| Adopted | May 19, 1990 |
| Last Revised | April 18, 2022 |

## 4430 - **LEAVES AND ABSENCES**

**General Rules Pertaining to Sick Leave**

    A. The total accumulated sick leave credit for classified personnel shall not exceed 260 days.

    B. For contract classified personnel, sick leave shall accumulate at a rate of fifteen (15) days per year. All such personnel shall receive credit for one and one-fourth (1-1/4) days of sick leave for each complete month of service.

    C. Each new full-time, classified person shall be credited with five (5) days of sick leave, which may be used as provided by law (R.C. 3319.141) after beginning employment, but before the employee has accumulated sick leave as provided above. If any of these five (5) days of leave are used, it shall be deducted from the total sick leave which may be accumulated during the first year of service.

    D. Sick leave for regular, classified personnel employed on other than a full- time basis shall be credited and deducted at a proportionate rate to their hours of employment.

    E. It shall be the responsibility of each employee to transfer any unused sick leave from a previous employer to the office of the Treasurer. When a former employee of the Board of Education or an employee on an approved leave of absence returns to the employment of the Board, unused accumulated sick leave shall be reinstated in full unless lost by prior conversion to pay upon retirement. In no case shall the accumulation of sick leave credit exceed the maximum allowed in this District at the time of such transfer.

**Sick Leave with Pay May Be Used for the Following Purposes:**

    A. An employee may draw against accumulated sick leave for absence resulting from person illness (including pregnancy, miscarriage, or abortion), injury, exposure to contagious diseases which could be communicated to others and for absence due to illness, injury or death in the employee's immediate family (spouse, children, father, or mother).

    B. An employee shall be allowed three (3) days of absence without loss of pay in the event of the death of a sister, brother, mother-in-law, father-in-law, or permanent resident in the employee's home.

    C. An employee shall be allowed one (1) day of absence without loss of pay to attend the funeral of any relative not previously mentioned.

    D. An additional day (or days) may be granted under items B and C above when the Superintendent's judgment indicates that such additional time is necessary.

The principal shall be notified by telephone as soon as possible by any employee who wishes to use sick leave in accordance with the above procedures. The Superintendent shall be notified by administrative employees.

BOE 436

No salary payment for days of absence under these provisions shall be made to any employee except upon presentation, to the Superintendent, of a certified statement of the period and cause of absence.

If medical attention is required, the employee's statement shall list the name and address of the attending physician and the date(s) when consulted. If the employee is absent for ten (10) or more working days, the attending physician or surgeon shall certify the employee's ability to return to work, if requested by the Superintendent.

### A. Days of Personal Leave

The Board shall grant to each classified employee a maximum of three (3) leave days per year. Personal leave days shall not accrue or be carried over to the following year.

Personal leave shall not be charged against the employee's sick leave.

### B. Use of Personal Leave

Personal leave may be granted for business transactions, family affairs, observance of religious holidays, professional-related reasons or for emergency reasons necessary for an employee to care for sudden conditions which call for immediate attention.

Except in unusual situations, as determined by the Superintendent. Personal leave shall not be granted for the purpose of extending a holiday or during the first and last fifteen (15) days of the school year.

Personal leave shall not be taken in less than one-half (1/2) day segments.

### C. Request for Personal Leave

Personal leave days shall be requested by the employee on an application form provided by the Board. Applications shall be made at least one (1) day prior to the request for leave, except for emergency reasons in which case the employee may request the leave at the time of the emergency or upon request for a substitute. In the case of emergency leave upon returning to the regular working position, the employee shall complete a formal leave request form.

### D. Approval or Denial

The right for approval or denial of personal leave lies with the employee's immediate supervisor. In case of denial by the immediate supervisor, the employee may appeal the decision to the Superintendent's office. The decision of the Superintendent is final.

### E. Reimbursement of Personal Leave

At the end of each school year, classified employees who have had perfect attendance shall be entitled to be paid for three (3) unused personal days at the rate of the current substitute rate for their position times the number of hours per day they work not to exceed sixty-five dollars ($65.00) per day. Employees who were absent or late less than three (3) times during the school year shall be entitled to be paid for up to two (2) unused personal days and those who were absent or late less than six (6) times during the school year shall be entitled to be paid for one (1) unused personal day, not to exceed sixty-five dollars ($65.00) per day.

**Leaves of Absence for Jury Duty**

The Board shall pay a full-time classified employee, including hourly and per diem employees, the difference between such employee's regular compensation and the remuneration received for serving as a juror.

**Disability Leave of Absence - Classified Personnel**

Upon the written request of a classified school employee, the Board shall grant a leave of absence for a period of not more than two (2) consecutive years where illness or other disability is the reason for the request.

**Military Leave - Classified Personnel**

Any regular, classified employee who may be conscripted or may enlist into the defense forces of the United States shall be granted a military leave in compliance with applicable Federal and State statutes.

**Parental Leave**

BOE 437

A classified employee may use parental leave in lieu of or in conjunction with sick leave.

### A. Maternity Leave

After twelve (12) consecutive months of employment in the District, the employee may request a maternity leave of absence (without pay) for reasons of pregnancy, miscarriage, abortion, or childbirth. The request shall be made on a form provided by the Board, indicating the anticipated delivery date and beginning and ending dates of the maternity leave.

An employee, prior to returning form the maternity leave of absence, must furnish a physician's certificate that s/he is able to perform his/her duties.

### B. Adoption Leave

After twelve (12) consecutive months of employment, a classified employee may request a leave of absence (without pay) for the adoption of a child of less than one (1) year of age. The request shall be made on a form provided by the Board, indicating the employee's assignment, date of adoption, and beginning and ending dates of the leave of absence.

### C. Paternity Leave

After twelve (12) consecutive months of employment, a classified employee may request a leave of absence (without pay) if, in the opinion of the attending physician, his/her spouse is in need of personal care as a result of pregnancy, miscarriage, abortion, or childbirth. Request for leave shall be made on a form provided by the Board, indicating the employee's assignment, nature of the spouse's illness and beginning and ending dates of the leave of absence.

### D. Length of Parental Leave

Parental leave shall be for not less than thirty (30) days, shall terminate at the end of a semester and shall not exceed two (2) semesters in length, unless an extension is mutually agreed upon.

An employee may withdraw an application for parental leave provided the date to commence said leave has not passed, and provided another employee has not been hired to replace the employee during the leave.

### E. Parental Leave Effect on Salary Schedules, Sick Leave and Fringe Benefits

1. Parental leave time shall not be used in the calculation of salary increments.

2. An employee on parental leave shall retain any unused accumulated sick leave.

3. An employee on parental leave may elect to continue fringe benefits in effect at the time of the commencement of the leave, provided said employee pays the Board the total cost of the benefits as computed by the Treasurer of the Board at least ten (10) days prior to the date Board payment must be made. Responsibility for arrangements with the Treasurer for continuation of fringe benefits and for proper reimbursement payment shall lie with the employee.

### F. Contract Status

Upon the return to service, at the expiration of a parental leave of absence, the employee shall resume the contract status held prior to such leave.

Revised 12/11/00
Revised 9/13/04
Readopted 5/11/09
Revised 7/12/10
Revised 6/10/19

BOE 438



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ELIGIBILITY OF RESIDENT/NONRESIDENT STUDENTS |
| Code | po5111 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 13, 2021 |

## 5111 - ELIGIBILITY OF RESIDENT/NONRESIDENT STUDENTS

The Board of Education establishes the following residency policy for determining eligibility to attend the schools of this District.

The Board shall provide tuition-free education for the benefit of children at least five (5) but under twenty-two (22) years of age whose parents reside in the District and such others as may be eligible pursuant to Federal and/or State law and the policies of the Board, including disabled preschool children who are at least three (3) years of age but not of compulsory school age and who are not currently enrolled in kindergarten, regardless of their citizenship or immigration status. The Board shall meaningfully communicate material information about enrollment requirements and procedures with parents, including parents who have limited proficiency in English. Access to information regarding enrollment requirements and procedures shall be available on the District's web site.

In addition, the Board shall provide tuition-free education for the benefit of a child whose grandparent(s) resides in the District and who is the subject of a:

A. power of attorney designating the grandparent as the attorney-in-fact; or

B. caretaker authorization affidavit executed by the grandparent that provides the grandparent with authority over the care, physical custody, and control of the child, including the ability to enroll the child in school, consent in all school related matters, and discuss with the District the child's educational progress.

In accordance with State law, the grandparent shall be considered the "parent" of the child who is the subject of the power of attorney (Form 5111 F7) or caretaker authorization affidavit (Form 5111 F8). The child may attend the schools of this District (Form 5111 F9) unless the power of attorney or caretaker authorization form was created for the sole purpose of enrolling the child in the District so that the child may participate in the academic or interscholastic programs of this District or another reason exists to exclude the child under State law. Additionally, the child may attend the schools of the District until the power of attorney or caretaker authorization affidavit terminates upon the occurrence of one (1) of the following events:

A. the child ceases to reside with the grandparent(s);

B. the document is terminated by court order; or

C. either the child who is the subject of the document or the grandparent dies.

Additionally, the power of attorney terminates if it is revoked in writing by the person who created it and that person gives written notice of the revocation to the grandparent and the juvenile court with which the power of attorney was filed. Further, the caretaker authorization affidavit terminates if the parent, guardian, or custodian of the child acts to negate, reverse, or otherwise disapprove of an action or decision of the grandparent(s) who signed the affidavit with respect to the child, and the grandparent either voluntarily returns the child to the physical custody of the parent, guardian or custodian or fails to file a complaint to seek custody within fourteen (14) days after delivery of the written notice of negation, revocation or other disapproval. It is the

BOE 439

responsibility of the grandparent(s) to notify the District within one (1) week of the termination of the power of attorney or caretaker authorization affidavit.

The Board reserves the right to verify each student's residency and other conditions of eligibility for tuition-free education as well as the validity of the claim of any student to an education in the District. In addition, if a student has recently been discharged or released from the custody of the Department of Youth Services (DYS) and is seeking admittance or re-admittance into the District, such students will not be admitted until the records required to be released by DYS to the Superintendent have been received (see AG 5111 for listing of required records). Within twenty-four (24) hours of admission into the District, the Superintendent shall request a copy of the student's school records from the school the student most recently attended.

**Nonresident Eligibility for Tuition-Free Education**

A student shall be entitled to attend school in this District free of any tuition obligation under the following circumstances:

A. A child whose parent has signed a contract to buy or build a house in this District and provides proper sworn statements shall be enrolled without payment of tuition for a period not to exceed ninety (90) days. The Superintendent is authorized to determine the number of days. The parent shall provide:

1. a sworn statement explaining the situation, the location of the house being purchased or built, and stating the parent's intention to reside there upon its completion; and

2. a statement from the builder that the house is being built for the parent and its location or a statement from a real estate broker or bank officer confirming that the parent has a contract to purchase, that the parent is waiting upon a closing date, and that the house is at the location identified in the parent's sworn statement.

Such child shall also be eligible to participate in interscholastic athletics, if released by formal action of the district of current residency and the OHSAA.

B. Children under a shared-parenting plan establishing both parents as "residential parents" when the child is residing with the parent, if one (1) parent resides in the District. If a student resides in another school district but attends school in this District (where one (1) parent resides), it is the obligation of the parents to provide transportation for that student from the home of the nonresident parent. Where a court has vested legal custody with only one (1) parent, the child is entitled to attend school tuition-free only in the district in which the custodial parent resides.

C. Children of active-duty uniformed services members who are subject to a transfer or relocation order and will be relocating to but do not yet reside in the District shall be permitted to apply for enrollment in the same manner and at the same time as resident students in accordance with the provisions of the Interstate Compact on Educational Opportunity for Military Children (see Policy 5111.02).

D. A child under the age of eighteen (18) years of age who is married and resides in the District.

E. Students between the ages of eighteen (18) and twenty-two (22) who support themselves by their own labor, live apart from their parents, reside in the District, and have not successfully completed the District's high school program or their I.E.P.

F. Students who are considered by Federal law to be illegal aliens, children or youth in foster care and/or homeless students who are required to be admitted by Federal law and in accordance with State guidelines.

G. A child with a medical condition that may require emergency medical attention providing a parent is employed in the District and submits the proper certification required by the Board, including a medical statement from the child's physician.

H. A child, living with a resident other than a parent and whose parent is in the armed services outside the State of Ohio, providing the child's parent submits the appropriate affidavit stating that the parent is in the armed forces outside the State of Ohio, intends to reside in the District upon return to the State, and provides the name and address of the person with whom the child will reside. The child may attend school in the District tuition-free for a period not to exceed twelve (12) months. If the parent does not intend to reside in the District, the child may attend school as a tuition student only.

I. A student who is living with a parent under the care of a shelter program for victims of domestic violence located in the District.

J. A nonresident child who has been or is currently being placed for adoption with a resident of this District, unless the adoption has been terminated or another district is required to educate the child.

K. Any student who enrolls in the District under the District's open enrollment policy.

BOE 440

**Optional Tuition Free Education**

The Board may admit students tuition-free under the following circumstances:

A. Foreign-exchange students participating in a bona fide foreign-exchange program or residents of foreign nations who request admission as foreign-exchange students or the student is a non-Ohio, U.S. resident admitted under an exchange program operated by a student exchange organization.

B. Any member of the District's classified staff who wishes to participate in a vocational education program related to his/her position that is offered by the District or the Miami Valley Career Technical Center JVS, providing s/he is authorized for admission by the Superintendent.

C. Any resident of the District who, although not otherwise eligible, meets the criteria for free admission as established by the State Board of Education.

D. Twelfth grade students whose parents move out of the District after the commencement of classes shall be allowed to attend school tuition-free for the remainder of the current year and one (1) additional semester.

E. A nonresident student under the age of twenty-two (22) is entitled to attend school in the District if the superintendent of the student's district of residence and the Superintendent enter into a written agreement consenting to the attendance and specifying that the purpose of the attendance is to protect the student's physical or mental well-being or to deal with other extenuating circumstances deemed appropriate by the superintendents.

F. If the student is not receiving special education, there shall be no requirement for either district to provide transportation for the student.

Any student admitted to the District under this provision shall be allowed to participate in all District student activities, including interscholastic athletics, on the same basis as any student who has attended the District's schools while of compulsory age.

G. A child may enroll free of any tuition obligation for a period not to exceed sixty (60) days, on the sworn statement of an adult resident of the District that s/he has initiated legal proceedings for custody of the child. If the court fails to grant the adult resident custody, continued enrollment beyond the sixty (60) days will be at the discretion of the Board. If enrollment continues, tuition shall be assessed in accordance with law. If the court awards custody to the adult resident, s/he shall produce the journal entry awarding custody and tuition shall be determined in accordance with State law and/or the court order.

H. A child who becomes a nonresident at the time of a parent's death may continue to attend school in the District on a nontuition basis for the remainder of the school year.

Any person or entity owing tuition to the District on behalf of the child at the end of the first full week in October, as provided in State law, shall continue to owe such tuition to the District for the child's attendance pursuant to this section for the lesser of the balance of the school year or the balance of the time that the child attends school in the District under this section. If the child's attendance was tuition-free prior to moving to his/her new district of residence, the child may continue to attend tuition-free for the remainder of the school year.

Transportation for a child attending school pursuant to this section shall be provided in accordance with any agreement regarding transportation that exists between this District and the student's new district of residence, or, if no such agreement exists, in the same manner as for students attending under open enrollment.

**Students Suspended or Expelled from Other District**

After offering an opportunity for a hearing, the Superintendent, at his/her discretion, may deny admission to a student who has been suspended or expelled from another public school within or outside the State, for the period of unexpired time of the suspension or expulsion. If the expulsion is from an out-of-state public school, the lesser of the period of such expulsion or the period of expulsion which would have been applied had the student committed the offense in this District will be imposed. When the suspension or expulsion from the other district has expired, the student is to be admitted providing all other eligibility requirements have been met. This provision also applies to a student who is the subject of power of attorney designating the child's grandparent as the attorney-in- fact or caretaker authorization affidavit executed by the child's grandparent.

**Mandatory Admission/Payment of Tuition**

The Board shall admit students who reside in the District but his/her parents do not reside in the District and tuition payments shall be assessed pursuant to State law if:

BOE 441

A. the student is in the legal or permanent custody of a governmental agency or a person other than his/her natural or adoptive parents;

B. the student resides in a home as defined by State law;

C. the student requires special education;

D. the child resides in the District and the child's parent is in a residential facility, correctional facility, or juvenile placement and the other parent, if living and not in such a facility or placement, is not known to reside in this State.

If the District admits a student to the District who is not otherwise entitled to attend or whose attendance tuition is not an obligation of another district, the Board shall collect tuition from the student's parents.

The Superintendent shall develop administrative guidelines for the enrollment of nonresident children which admit such children only on the proper application of the parent or guardian; release by the board of education of residency, if required; and the approval of the Board.

**Safe at Home/Address Confidentiality**

If a parent (or adult student), presents information to the District certifying that the parent (or adult student), his/her child, or a member of the parent's household is a participant in the Safe at Home/Address Confidentiality Program administered by the Secretary of State, the Board shall use the address designated by the Secretary of State to serve as the student's address for enrollment purposes. The District shall place a copy of any certification provided by the parent in the enrollment files.

Revised 6/10/13
Revised 2/9/15
Revised 4/10/17
Revised 5/14/18

**© Neola 2021**

Legal                 R.C. 111.41, 111.42, 111.43, 111.46, 111.99

R.C. 3313.48, 3313.64, 3313.645, 3313.649, 3313.65, 3313.66, 3313.90, 3313.97

R.C. 3313.98, 3317.08, 3317.081, 3321.01(B), 3321.03, 3323.141

R.C. 3327.04, 3327.05, 3327.06, 2152.18, 5139.05, 3313.672, 3313.533

A.C. 3301-42-01

42 U.S.C. 11431 et seq.

BOE 442



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | HOMELESS STUDENTS |
| Code | po5111.01 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 10, 2017 |

5111.01 - **HOMELESS STUDENTS**

**Definitions**

Children who are identified as meeting the Federal definition of "homeless" will be provided a free appropriate public education (FAPE) in the same manner as all other students of the District. To that end, homeless students will not be stigmatized or segregated on the basis of their status as homeless. The District shall establish safeguards that protect homeless students from discrimination on the basis of their homelessness. The District shall regularly review and revise its policies, including school discipline policies that impact homeless students or those who may be a member of any of the Protected Classes (Policy 2260).

Homeless children and youth are defined as individuals who lack a fixed, regular, and adequate nighttime residence, and include children and youth who meet any of the following criteria:

 A. share the housing of other persons due to loss of housing, economic hardship, or similar reason

 B. live in motels, hotels, trailer parks, or camping grounds due to a lack of alternative adequate accommodations

 C. live in emergency or transitional shelters

 D. are abandoned in hospitals

 E. have a primary night time residence that is a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings, or

 F. live in a car, park, public space, abandoned building, substandard housing[1], bus or train station, or similar setting

Pursuant to the McKinney-Vento Act, an unaccompanied youth includes a homeless child or youth not in the physical custody of a parent or guardian.

Additionally, pursuant to Federal and State law, migratory children who are living in circumstances described in A-F above are also considered homeless.

**Services to Homeless Children and Youth**

The District will provide services to homeless students that are comparable to other students in the District, including:

 A. transportation services;

 B. public preschool programs and other educational programs and services for which the homeless student meets eligibility criteria including:

BOE 443

1. programs for children with disabilities;

2. programs for English Learners (ELs) (i.e., students with Limited English Proficiency (LEP);

3. programs in career and technical education;

4. programs for gifted and talented students;

5. school nutrition programs; and

6. before - and after-school programs.

The Superintendent will appoint a Liaison for Homeless Children who will perform the duties as assigned by the Superintendent. Additionally, the Liaison will coordinate and collaborate with the State Coordinator for the Education of Homeless Children and Youth as well as with community and school personnel responsible for the provision of education and related services to homeless children and youths. For more information on the role of the Liaison, refer to AG 5111.01.

**School Stability**

Maintaining a stable school environment is crucial to a homeless student's success in school. To ensure stability, the District must make school placement determinations based on the "best interest" of the homeless child or youth based on student-centered factors. The District must:

A. continue the student's education in the school of origin for the duration of homelessness when a family becomes homeless between academic years or during an academic year; and for the remainder of the academic year even if the child or youth becomes permanently housed during an academic year; or

B. enroll the student in any public school that non-homeless students who live in the attendance area in which the child or youth is actually living are eligible to attend.

When determining a child or youth's best interest, the District must assume that keeping the homeless student in the school of origin is in that student's best interest, except when doing so is contrary to the request of the student's parent or guardian, or the student if he or she is an unaccompanied youth. The school of origin is the school the student attended or enrolled in when permanently housed, including a public preschool. The school of origin also includes the designated receiving school at the next level for feeder school patterns, when the student completes the final grade level at the school of origin.

When determining the student's best interest, the District must also consider student-centered factors, including the impact of mobility on achievement, education, health, and safety of homeless students and give priority to the request of the student's parent or guardian, or youth (if an unaccompanied youth). The District also considers the school placement of siblings when making this determination.

If the District finds that it is not in the student's best interest to attend the school of origin or the school requested by the parent or guardian, or unaccompanied youth, the District must provide the individual with a written explanation and reason for the determination in a manner and form understandable to the parent, guardian or unaccompanied youth. This written explanation will include appeal rights and be provided in a timely manner.

**Immediate Enrollment**

The District has an obligation to remove barriers to the enrollment and retention of homeless students. A school chosen on the basis of a best interest determination must immediately enroll the homeless student, even if the student does not have the documentation typically necessary for enrollment, such as immunization and other required health records, proof of residency, proof of guardianship, birth certificate or previous academic records. The homeless student must also be enrolled immediately regardless of whether the student missed application or enrollment deadlines during the period of homelessness or has outstanding fines or fees.

The enrolling school must immediately contact the school last attended by the homeless student to obtain relevant academic or other records. If the student needs immunization or other health records, the enrolling school must immediately refer the parent, guardian or unaccompanied youth to the local liaison, who will help obtain the immunizations, screenings or other required health records. Records usually maintained by the school must be kept so that they are available in a timely fashion if the child enters a new school or district. These records include immunization or other required health records, academic records, birth certificates, guardianship records, and evaluations for special services or programs. Procedures for inter-State records transfer between schools should be taken into account in order to facilitate immediate enrollment.

In addition, the District will also make sure that, once identified for services, the homeless student is attending classes and not

BOE 444

facing barriers to accessing academic and extracurricular activities, including magnet school, summer school, career and technical education, advanced placement, online learning, and charter school programs (if available).

**Transportation**

The District provides homeless students with transportation services that are comparable to those available to non-homeless students. The District also provides or arranges for transportation to and from the school of origin at the parent or guardian's request, or the liaison's request in the case of an unaccompanied youth. Transportation is arranged promptly to allow for immediate enrollment and will not create barriers to a homeless student's attendance, retention, and success.

    A. If the homeless student continues to live in the District, where the school of origin is located, transportation will be provided or arranged for the student's transportation to or from the school of origin.

    B. If the homeless student moves to an area served by another district, though continuing his/her education at the school of origin (which is in the District), the District and the district in which the student resides must agree upon a method to apportion responsibility and costs for transportation to the school of origin.  If the districts cannot agree upon such a method, the responsibility and costs will be shared equally.

    C. When the student obtains permanent housing, transportation shall be provided to and from the school of origin until the end of the school year.

The District determines the mode of transportation in consultation with the parent or guardian and based on the best interest of the student.

In accordance with Federal law, the above transportation requirements still apply during the resolution of any dispute. The District will work with the State to resolve transportation disputes with other districts. If the disputing district is in another State, the District will turn to the State for assistance as Federal guidance says that both States should try to arrange an agreement for the districts.

**Dispute Resolution**

Homeless families and youths have the right to challenge placement and enrollment decisions. If a dispute arises between a school and a parent, guardian or unaccompanied youth regarding eligibility, school selection, or enrollment of a homeless student, the District must follow its dispute resolution procedures, consistent with the State's procedures. If such a dispute occurs, the District will immediately enroll the homeless student in the school in which enrollment is sought pending final resolution of the dispute, including all appeals. The student will receive all services for which they are eligible until all disputes and appeals are resolved.

Pursuant to State, District and Board of Education policies, the District will provide the parent, guardian or unaccompanied youth with a written explanation of all decisions regarding school selection and enrollment made by the school, District, or State, along with a written explanation of appeal rights.

The District's notice and written explanation about the reason for its decision will include, at a minimum, an explanation of how the school reached its decision regarding eligibility, school selection, or enrollment, including 1) a description of the proposed or refused action by the school, 2) an explanation of why the action is proposed or refused, 3) a description of other options the school considered and why those options were rejected, 4) a description of any other relevant factors to the school's decision and information related to the eligibility or best interest determination such as the facts, witnesses, and evidence relied upon and their sources, and 5) an appropriate timeline to ensure deadlines are not missed. The District must also include contact information for the Liaison and the State Coordinator, and a brief description of their roles. The District will also refer the parent, guardian or unaccompanied youth to the Liaison, who will carry out the dispute resolution process.

The District ensures that all decisions and notices are drafted in a language and format appropriate for low-literacy, limited vision readers, and individuals with disabilities. For children and youth and/or parents or guardians who are English learners or whose dominate language is not English, the District will provide translation and interpretation services in connection with all phases of the dispute resolution process pursuant to federal laws. The District will also provide electronic notices via email if the parent, guardian or unaccompanied youth has access to email followed by a written notice provided in person or sent by mail.

**Homeless Children in Preschool**

Homeless preschool-aged children and their families shall be provided equal access to the educational services for which they are eligible, including preschool programs, including Head Start programs, administered by the District. Additionally, the homeless child must remain in the public preschool of origin, unless a determination is made that it is not in the child's best interest. When making such a decision on the student's best interest, the District takes into account the same factors as it does for any student, regardless of age. It also considers pre-school age specific factors, such as 1) the child's attachment to preschool teachers and staff; 2) the impact of school climate on the child, including school safety; the quality and availability of services to meet the

child's needs, including health, developmental, and social-emotional needs; and 3) travel time to and from school.

The District must also provide transportation services to the school of origin for a homeless child attending preschool. It is the District's responsibility to provide the child with transportation to the school of origin even if the homeless preschooler who is enrolled in a public preschool in the District moves to another district that does not provide widely available or universal preschool.

**Public Notice**

In addition to notifying the parent or guardian of the homeless student or the unaccompanied youth of the applicable rights described above, the District shall post public notice of educational rights of children and youth experiencing homelessness in each school. In addition, the District shall post public notice of the McKinney-Vento rights in places that homeless populations frequent, such as shelters, soup kitchens, and libraries in a manner and form understandable to the parents and guardians and unaccompanied youths.

**Records**

The local liaison will assist the homeless students and their parent(s) or guardian(s) or unaccompanied homeless students in their efforts to provide documentation to meet State and local requirements for entry into school.

All records for homeless students shall be maintained, subject to the protections of the Family Educational Rights and Privacy Act (FERPA) and Policy 8330, and in such a manner so that they are available in a timely fashion and can be transferred promptly to the appropriate parties, as required.  Pursuant to the McKinney-Vento Act, information regarding a homeless student's living situation is not considered directory information and must be provided the same protections as other non-directory personally identifiable information (PII) contained in student education records under FERPA. The District shall incorporate practices to protect student privacy as described in AG 5111.01, AG 8330, and in accordance with the provisions of the Violence Against Women Act (VAWA) and the Family Violence Prevention and Services Act (FVPSA).

No Board policy, administrative procedure, or practice will be interpreted or applied in such a way as to inhibit the enrollment, attendance, or school success of homeless children.

Note:

*Education for Homeless Children and Youth Programs, Non-Regulatory Guidance, U.S. Department of Education (ED), Title VII-B of the McKinney-Vento Homeless Assistance Act, as amended by the Every Student Succeeds Act,* at A-3 (July 27, 2016).

[1] According to nonregulatory guidance from the U.S. Department of Education (ED), standards for adequate housing may vary by locality.  Please see ED guidance for factors to consider when determining whether a child or youth is living in "substandard housing."

Revised 4/11/11

**© Neola 2017**

Legal                          42 U.S.C. 11431 et seq. (McKinney - Vento Homeless Act)

BOE 446



| Book | Policy Manual |
|------|---------------|
| Section | 5000 Students |
| Title | WITHDRAWAL FROM SCHOOL |
| Code | po5130 |
| Status | Active |
| Adopted | March 10, 2008 |

### 5130 - **WITHDRAWAL FROM SCHOOL**

The Board of Education affirms that, while statute requires attendance of each student from six (6) years of age, or five (5) years of age if enrolled in kindergarten, and not formally withdrawn, until eighteen (18) years of age, it is in the best interests of both students and the community that they complete the educational program that will equip them with skills and increase their chances for a successful and fulfilling life beyond the schools. A child enrolled in kindergarten is deemed to be of compulsory school age unless the child's parent or guardian, at the parent or guardian's discretion and in consultation with the child's teacher and principal, formally withdraws the child from kindergarten.

The Board directs that whenever a student wishes to withdraw, effort should be made to determine the underlying reason for such action and the resources of the District should be used to assist the student in reaching his/her career goals. No student under the age of eighteen (18) will be permitted to withdraw without the written consent of a parent and in compliance with State law.

Whenever a student under the age of eighteen (18), withdraws from school without moving out of State, transferring to another approved school, being granted an age and schooling certificate, or enrolling in and attending an approved program, the Superintendent shall notify the Registrar of Motor Vehicles and the Judge of the Juvenile Court.

Such notification is to be given within two (2) weeks after the Superintendent confirms the student is not properly enrolled in and attending another approved school or program or has moved out of State.

The Superintendent shall ensure, through administrative guidelines, that proper procedures are established so that such notification complies with the provisions of R.C. 3321.13 (B)(1).

The Superintendent shall develop administrative guidelines for withdrawal from school which:

    A. make counseling services available to any student who wishes to withdraw;

    B. help the student define his/her own educational life goals and help plan the realization of those goals;

    C. inform the student of alternative programs;

    D. advise students of their right to return prior to their twenty-second (22nd) birthday;

    E. assure the timely return of all District-owned supplies and equipment in the possession of the student.

In accordance with Policy 5610, the Superintendent shall initiate expulsion proceedings against a student who has committed an act that warrants expulsion under Board policy even if the student withdraws from school prior to the hearing or decision to impose the expulsion. Any resulting expulsion shall be imposed for the same duration it would have been had the student remained enrolled.

BOE 447

Legal

R.C. 3313.66, 3321.13

A.C. 3301-41-01, 3301-43-01, 3301-35-03 (F)

BOE 448



| Book | Policy Manual |
|------|---------------|
| Section | 5000 Students |
| Title | PERSONAL COMMUNICATION DEVICES |
| Code | po5136 |
| Status | Active |
| Adopted | March 10, 2008 |

5136 - **PERSONAL COMMUNICATION DEVICES**

While students may possess in school, on school property, during after school activities (e.g., extra-curricular activities) and at school-related functions, they must be powered completely off (i.e., not just placed into vibrate or silent mode) and stored out of sight during school hours.

Under certain circumstances, a student may keep his/her PCD "On" with prior approval from the building principal.

Except as authorized by a teacher, administrator or IEP team, students are prohibited from using PCDs during the school day, including while off-campus on a field trip, to capture, record and/or transmit the words or sounds (i.e., audio) and/or images (i.e., pictures/video) of any student, staff member or other person. Using a PCD to capture, record and/or transmit audio and/or pictures/video of an individual without proper consent is considered an invasion of privacy and is not permitted. Students who violate this provision and/or use a PCD to violate the privacy rights of another person may have their PCD confiscated and held until the end of the school day, or until a parent/guardian picks it up, and may be directed to delete the audio and/or picture/video file. If the violation involves potentially illegal activity the confiscated-PCD may be turned-over to law enforcement.

PCDs, including but not limited to those with cameras, may not be activated or utilized at any time in any school situation where a reasonable expectation of personal privacy exists. These locations and circumstances include, but are not limited to, classrooms, gymnasiums, locker rooms, shower facilities, rest/bathrooms, and any other areas where students or others may change clothes or be in any stage or degree of disrobing or changing clothes. The Superintendent and Principals are authorized to determine other specific locations and situations where use of a PCD is absolutely prohibited.

Students are expressly prohibited from using covert means to listen-in or make a recording (audio or video) of any meeting or activity at school.  This includes placing recording devices, or other devices with one - or two-way audio communication technology (i.e., technology that allows a person off-site to listen to live conversations and sounds taking place in the location where the device is located), within a student's book bag or on the student's person without express written consent of the Superintendent. Any requests to place a recording device or other device with one- or two-way audio communication technology within a student's book bag or on a student's person shall be submitted, in writing, to the Principal. The District representative shall notify the parent(s), in writing, whether such request is denied or granted within five (5) days.

Students shall have no expectation of confidentiality with respect to their use of PCDs on school premises/property.

Students may not use a PCD in any way that might reasonably create in the mind of another person an impression of being threatened, humiliated, harassed, embarrassed or intimidated. See Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using PCDs to: (1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, color, national origin, sex, **(including,** sexual orientation/transgender identity) , disability, age, religion, ancestry, or political beliefs; and (2) engage in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

Students are also prohibited from using a PCD to capture, record, and/or transmit test information or any other information in a

BOE 449

manner constituting fraud, theft, cheating, or academic dishonesty. Likewise, students are prohibited from using PCDs to receive such information.

Possession of a PCD by a student at school during school hours and/or during extra-curricular activities is a privilege that may be forfeited by any student who fails to abide by the terms of this policy, or otherwise abuses this privilege.

Violations of this policy may result in disciplinary action and/or confiscation of the PCD. The l Principal will also refer the matter to law enforcement or child services if the violation involves an illegal activity (e.g., child pornography, sexting). Discipline will be imposed on an escalating scale ranging from a warning to an expulsion based on the number of previous violations and/or the nature of or circumstances surrounding a particular violation. If the PCD is confiscated, it will be released/returned to the student's parent/guardian after the student complies with any other disciplinary consequences that are imposed, unless the violation involves potentially illegal activity in which case the PCD may be turned-over to law enforcement. A confiscated device will be marked in a removable manner with the student's name and held in a secure location in the building's central office until it is retrieved by the parent/guardian or turned-over to law enforcement. School officials will not search or otherwise tamper with PCDs in District custody unless they reasonably suspect that the search is required to discover evidence of a violation of the law or other school rules. Any search will be conducted in accordance with Policy 5771 – Search and Seizure. If multiple offenses occur, a student may lose his/her privilege to bring a PCD to school for a designated length of time or on a permanent basis.

A person who discovers a student using a PCD  recording device, or other device with one- or two-way audio communication technology in violation of this policy is required to report the violation to the Principal.

Students are personally and solely responsible for the care and security of their PCDs. The Board assumes no responsibility for theft, loss, or damage to, or misuse or unauthorized use of, PCDs brought onto its property.

Parents/Guardians are advised that the best way to get in touch with their child during the school day is by calling the school office.

Students may use school phones to contact parents/guardians during the school day.

Revised 7/13/09
Revised 6/10/13
Revised 2/9/15

**© Neola 2017**

BOE 450