

| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ATTENDANCE |
| Code | po5200 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 13, 2021 |

5200 - **ATTENDANCE**

The educational program offered by this District is predicated upon the presence of the student and requires continuity of instruction and classroom participation. Attendance shall be required of all students enrolled in the schools during the days and hours that the school is in session or during the attendance sessions to which s/he has been assigned.

A student in grades 9 through 12 may be considered a full-time equivalent student provided the student is enrolled in at least five (5) units of instruction, as defined by State law, per school year.

In accordance with statute, the Superintendent shall require, from the parent of each student of compulsory school age or from an adult student who has been absent from school or from class for any reason, a statement of the cause for such absence. The Board of Education reserves the right to verify such statements and to investigate the cause of each single absence or prolonged absence.

The Board considers the following factors to be reasonable excuses for time missed at school:

A. personal illness (a written physician's statement verifying the illness may be required)

B. appointment with a health care provider

C. illness in the family necessitating the presence of the child

D. quarantine of the home

E. death in the family

F. necessary work at home due to absence or incapacity of parent(s)/guardian(s)

G. observation or celebration of a bona fide religious holiday

H. out-of-state travel (up to a maximum twenty-four (24) hours per school year that the student's school is open for instruction) to participate in a District-approved enrichment or extracurricular activity

   Any classroom assignment missed due to the absence shall be completed by the student.

   If the student will be absent for twenty-four (24) or more consecutive hours that the student's school is open for instruction, a classroom teacher shall accompany the student during the travel period to provide the student with instructional assistance.

I. such good cause as may be acceptable to the Superintendent

BOE 451

J. medically necessary leave for a pregnant student in accordance with Policy 5751

K. service as a precinct officer at a primary, special or general election in accordance with the program set forth in Policy 5725

L. college visitation

M. absences due to a student's placement in foster care or change in foster care placement or any court proceedings related to their foster care status

N. absences due to a student being homeless

Attendance need not always be within the school facilities, but a student will be considered to be in attendance if present at any place where school is in session by authority of the Board.

The Board shall consider each student assigned to a program of other guided learning experiences to be in regular attendance for the program provided that s/he reports to such staff member s/he is assigned for guidance at the place in which s/he is conducting study, and regularly demonstrates progress toward the objectives of the course of study.

Attendance shall be taken at the beginning of every block/period in buildings with block/period-based scheduling. Absences from a class block/period shall be accounted for to the nearest full hour.

Attendance shall be taken at the commencement of the school day in buildings with non-period-based schedules. Attendance for students arriving late or leaving early must be tracked and recorded to the nearest full hour.

**Contacting the Parent/Guardian of an Absent Student**

When a parent, guardian, or other person having care of a student has failed to initiate a telephone call or other communication notifying the school or building administration of the student's excused or unexcused absence within 120 minutes after the beginning of the school day, the attendance officer or designee for each school building shall make at least one (1) attempt to contact the parent, guardian, or other person having care of any student who is recorded as absent without legitimate excuse within 120 minutes after the beginning of each school day by a method designated by the Superintendent in accordance with Ohio law (see AG 5200).

**Excessive Absences**

When a student of compulsory school age is absent from school with combined nonmedical excused absences and unexcused absences in excess of thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year, that student is considered "excessively absent" from school. The District or school shall notify the child's parent or guardian of the child's absences, in writing, within seven (7) school days after the date of the absence that triggered the notice requirement. At the same time written notice is given, any appropriate intervention action listed herein may be taken.

The following "medical excuses" will not count toward a student's excessive absence hours: 1) personal illness; 2) illness in the family necessitating the presence of the child; 3) quarantine of the home; 4) health care provider appointments (doctor, dentist, mental health provider, etc.); 5) medically-necessary leave for a pregnant student in accordance with Policy 5751; 6) death in the family; or 7) other set of circumstances the Superintendent deems on a case-by-case basis to be a good and sufficient cause for medical absence from school.

A medically excused absence occurs any time a student is out of school due to illness or medical visit (physician, dentist, mental health, etc.). A medical excuse for personal illness will be accepted in the form of doctor's note within five (5) school days of the absence or parent call-in on the day of the absence due to illness or doctor's visit. A student may have up to ten (10) medically excused absences without a doctor's note, but with a phone call from a parent/guardian. Medical excuse absences will be accepted through this process for students participating both in-person and remotely. This policy will be extended beyond ten (10 ) days if the student or someone in the student's family is in quarantine due to recognized pandemic/epidemic (e.g., COVID-19) or experiencing symptoms of the pandemic/epidemic.

**Habitually Truant**

A student will be considered habitually truant if the student is of compulsory school age and absent without a legitimate excuse for thirty (30) or more consecutive hours, for forty-two (42) or more hours in one (1) school month, or for seventy-two (72) or more hours in one (1) school year.

Legitimate excuses for the absence of a student who is otherwise habitually truant include but are not limited to:

BOE 452

A. the student was enrolled in another school district;

B. the student was excused from attendance in accordance with R.C 3321.04; or

C. the student has received an age and schooling certificate.

**Absence Intervention Team**

To the extent required by law as determined on an annual basis, within ten (10) days of a student becoming habitually truant, the Principal shall assign the student to an absence intervention team.

Within fourteen (14) school days after the assignment of a student to an absence intervention team, the team shall develop an intervention plan for that student in an effort to reduce or eliminate further absences. Each intervention plan shall vary based on the individual needs of the student, but the plan shall state that the attendance officer shall file a complaint not later than sixty-one (61) days after the date the plan was implemented, if the child has refused to participate in, or failed to make satisfactory progress on, the intervention plan. Within seven (7) school days after the development of the plan, reasonable efforts shall be made to provide the student's parent/guardian/custodian, with written notice of the plan.

Each absence intervention team may vary based on the needs of each individual student but shall include a representative from the child's building, another representative from the child's building who knows the child, and the child's parent or parent's designee, or the child's guardian, custodian, guardian ad litem, or temporary custodian. The team also may include a counselor.

The members of the absence intervention team shall be selected within seven (7) school days of the student meeting the habitually truant threshold. Within the same period of seven (7) school days, the Principal shall make at least three (3) meaningful, good faith attempts to secure the participation of the student's parent/guardian/custodian, guardian ad litem, or temporary custodian on that team. A good faith attempt to secure the participation of the parent shall include, but not be limited to, contacting (or attempting to contact) the parent by telephone, email, or regular mail. If the student's parent responds to any of those attempts but is unable to participate for any reason, the Principal shall inform the parent of the parent's right to appear by designee. If seven (7) school days elapse and the student's parent/guardian/custodian, guardian ad litem, or temporary custodian fails to respond to the attempts to secure participation, the attendance officer shall investigate whether the failure to respond triggers mandatory abuse or neglect reporting to the public children services agency. At the same time, the absence intervention team shall continue to develop an intervention plan for the child notwithstanding the absence of the child's parent/guardian/custodian, guardian ad litem, or temporary custodian.

In order to address the attendance practices of a student who is habitually truant, the intervention team may, as part of an intervention plan, to take any of the following intervention actions:

A. provide counseling to the student

B. request or require the student's parent to attend a parental involvement program

C. request or require a parent to attend a truancy prevention mediation program

D. notify the Registrar of Motor Vehicles of the student's absences

E. take appropriate legal action

F. assignment to an alternative school (Note: If the District has established an alternative school, it must appear as an alternative intervention strategy.)

In the event that a student becomes habitually truant within twenty-one (21) school days prior to the last day of instruction of a school year, the Principal may, in his/her discretion, assign Truancy Officer (one school official) to work with the child's parent/guardian/custodian, guardian ad litem, or temporary custodian to develop an absence intervention plan during the summer.

The absence intervention process shall commence upon the first day of instruction of the next school year.

**Reporting Requirements**

The attendance officer shall file a complaint in the juvenile court against a student on the sixty-first (61st) day after the implementation of an absence intervention plan or other intervention strategies, provided that all of the following apply:

A. the student is habitually truant.

B. the school district or school has made meaningful attempts to re-engage the student through the absence intervention

BOE 453

plan, other intervention strategies, and any offered alternatives to adjudication, if applicable.

If the student, at any time during the implementation phase of the absence intervention plan or other intervention strategies, is absent without legitimate excuse for thirty (30) or more consecutive hours or forty-two (42) or more hours in one school month, the attendance officer shall file a complaint in juvenile court against that student, unless the absence intervention team has determined that the student has made substantial progress on the absence intervention plan.

In the event that the sixty-first (61st) day after the implementation of the absence intervention plan or other intervention strategies falls on a day during the summer months, the absence intervention team may extend the implementation of the plan and delay the filing of the complaint for an additional thirty (30) days from the first day of instruction of the next school year.

The Superintendent is authorized to establish an educational program for parents of truant students which is designed to encourage parents to ensure that their children attend school regularly. Any parent who does not complete the program is to be reported to law enforcement authorities for parental education neglect, a fourth class misdemeanor if found guilty.

Whenever any student of compulsory school age has sixty (60) consecutive hours in a single month or a total of ninety (90) hours of unexcused absence from school during the school year, s/he will be considered habitually absent under R.C. 3321.13(b)(2). The Board authorizes the Superintendent to inform the student and his/her parents, guardian, or custodian of the record of absences without a legitimate excuse as well as the District's intent to notify the Registrar of Motor Vehicles, if appropriate, and the Judge of the Juvenile Court of the student's unexcused absence and habitually absent status.

If a student who is habitually truant violates the order of a juvenile court regarding the student's prior adjudication as an unruly child for being a habitual truant, s/he may further be adjudicated as a delinquent child.

The District shall report to the Ohio Department of Education, as soon as practicable, and in a format and manner determined by the Department, any of the following occurrences:

A. when a notice that a student has been absent with or without legitimate excuse for thirty-eight (38) or more hours in one (1) school month, or sixty-five (65) or more hours in a school year is submitted to a parent/guardian/or custodian;

B. when a child of compulsory school age has been absent without legitimate excuse from the public school the child is supposed to attend for thirty (30) or more consecutive hours, forty-two (42) or more hours in one school month, or seventy-two (72) or more hours in a school year;

C. when a child of compulsory school age who has been adjudicated an unruly child for being a habitual truant violates the court order regarding that adjudication;

D. when an absence intervention plan has been implemented for a child under this policy.

This policy was developed after consultation with the judge of the juvenile court of Miami County/Counties, with the parents, guardians, or other persons having care of the students attending school in the district, and with appropriate State and local agencies.

**Tracking Remote Attendance**

Consistent with the District's remote learning plan (e.g., Blended Learning, On-Line Learning, etc.), the District will provide a variety of instruction models, including both teacher-led remote learning and self-directed remote learning.

Student attendance in teacher-led remote learning (synchronous web-based instruction) shall be tracked in the same manner as hourly, in-person instruction. Teachers shall determine hourly attendance by evidence of student login and logoff data. Teachers are encouraged to verify meaningful attendance in a method selected by the teacher, such as an ungraded quiz at the close of a lesson, a survey or poll questions (unrelated to the lesson and unpredictable) at the end of the lesson, or asking students questions at random throughout a session.

In addition to the reasons listed at the beginning of this policy, absences from teacher-led remote learning (synchronous web-based instruction) may be considered excused under the following circumstances, with notice from a parent/guardian:

A. temporary internet outage for individual students or households;

B. unexpected technical difficulties for individual students or households, such as password resets or software upgrades occurring during a teacher-led remote learning lesson;

C. computer/device malfunction;

D. malfunction of a District-owned device for which the District is providing technical assistance, repair, or replacement.

BOE 454

Attendance in self-directed remote learning (asynchronous) shall be tracked by evidence of participation, which may include, but is not limited to:

A. daily logins to learning management systems;

B. daily interactions with the teacher to acknowledge attendance, which may include, but are not limited to, messages, emails, telephone calls, video chats, or other formats that enable teachers to engage with students; and

C. assignment completion.

The teacher will determine the number of hours a typical student would take to complete an assignment and report those hours of attendance when the assignment is completed. A teacher may adjust the number of hours of attendance based on the length of time the student actually spent on the assignment, as reported by the student, parent, or other person with knowledge.

Revised 4/12/10
Revised 6/30/11
Revised 3/14/16
Revised 4/10/17
Revised 11/6/17
Revised 1/4/18
Revised 11/26/19
Revised 1/11/21

**© Neola 2021**

Legal               R.C. 2151.011, 3313.668, 3317.034, 3321.01 et seq., 3321.13(B)(2), 3321.19, 3321.191

                    R.C. 3321.22, 3321.38, 3323.041

                    A.C. 3301-35-03, 3301-47-01, 3301-69-02

BOE 455



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | RELEASED TIME FOR RELIGIOUS INSTRUCTION |
| Code | po5223 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | March 14, 2016 |

**5223 - RELEASED TIME FOR RELIGIOUS INSTRUCTION**

The Board of Education desires to cooperate with those parents who wish to provide for religious instruction for their children but also recognizes its responsibility to enforce the attendance requirements of the State.

Students may be provided "released time" from school to attend a course in religious instruction conducted by a private entity off District property, provided that the following requirements are met, such students will not be considered absent when the:

 A. student's parent or guardian gives consent in writing;

 B. sponsoring entity maintains attendance records and makes them available to the District;

 C. sponsoring entity provides and assumes liability for the student; and

 D. student assumes responsibility for any missed school work.

Transportation of students to and from Released Time instruction is the complete responsibility of the sponsoring entity, the parent, guardian, and/or student. The Board of Education, its members, and employees are immune from liability for any injuries arising from transportation to and from Released Time instruction. Further, no Board funds will be expended for, and no District personnel shall be involved in the provision of religious instruction.

Students shall not be excused from a core curriculum subject course to attend Released Time instruction.

The Board will evaluate the course based on secular criteria including, but not limited to:

 A. the number of hours of instructional time;

 B. a review of the course syllabus that reflects course requirements and materials used;

 C. the assessment methods used in the course; and

 D. the instructor's qualifications, which shall be similar to the qualification of other teachers in the District.

The decision as to whether to provide credit for a specific Released Time religious instruction course will be neutral as to religious content and will not involve any test for religious content or denominational affiliation.

Staff members shall not promote or discourage participation in release time programs for any religious instructional program.

Nothing herein shall constitute an endorsement of religion or infringe upon an individual's First Amendment rights.

BOE 456

© Neola 2016

Legal                    Attorney General's Opinion 88-001



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | BULLYING AND OTHER FORMS OF AGGRESSIVE BEHAVIOR |
| Code | po5517.01 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | February 9, 2015 |

5517.01 - **BULLYING AND OTHER FORMS OF AGGRESSIVE BEHAVIOR**

The Board of Education is committed to providing a safe, positive, productive, and nurturing educational environment for all of its students. The Board encourages the promotion of positive interpersonal relations between members of the school community.

Harassment, intimidation, or bullying toward a student, whether by other students, staff, or third parties is strictly prohibited and will not be tolerated. This prohibition includes aggressive behavior, physical, verbal, and psychological abuse, and violence within a dating relationship. The Board will not tolerate any gestures, comments, threats, or actions which cause or threaten to cause bodily harm or personal degradation. This policy applies to all activities in the District, including activities on school property, on a school bus, or while enroute to or from school, and those occurring off school property if the student or employee is at any school-sponsored, school- approved or school-related activity or function, such as field trips or athletic events where students are under the school's control, in a school vehicle, or where an employee is engaged in school business.

This policy has been developed in consultation with parents, District employees, volunteers, students, and community members as prescribed in R.C. 3313.666 and the State Board of Education's Model Policy.

Harassment, intimidation, or bullying means:

 A. any intentional written, verbal, electronic, or physical act that a student or group of students exhibits toward another particular student(s) more than once and the behavior both causes mental or physical harm to the other student(s) and is sufficiently severe, persistent, or pervasive that it creates an intimidating, threatening, or abusive educational environment for the other student(s); or

 B. violence within a dating relationship.

"Electronic act" means an act committed through the use of a cellular telephone, computer, pager, personal communication device, or other electronic communication device.

Aggressive behavior is defined as inappropriate conduct that is repeated enough, or serious enough, to negatively impact a student's educational, physical, or emotional well being. This type of behavior is a form of intimidation and harassment, although it need not be based on any of the legally protected characteristics, such as sex, race, color, national origin, marital status, or disability. It would include, but not be limited to, such behaviors as stalking, bullying/cyberbullying, intimidating, menacing, coercion, name calling, taunting, making threats, and hazing.

Harassment, intimidation, or bullying also means cyberbullying through electronically transmitted acts (i.e., internet, e-mail, cellular telephone, personal digital assistance (PDA), or wireless hand-held device) that a student(s) or a group of students exhibits toward another particular student(s) more than once and the behavior both causes mental and physical harm to the other student and is sufficiently severe, persistent, or pervasive that it creates an intimidating, threatening, or abusive educational environment for the other student(s).

BOE 458

Any student or student's parent/guardian who believes s/he has been or is the victim of aggressive behavior should immediately report the situation to the Building Principal or assistant principal, or the Superintendent. The student may also report concerns to teachers and other school staff who will be responsible for notifying the appropriate administrator or Board official. Complaints against the Building Principal should be filed with the Superintendent. Complaints against the Superintendent should be filed with the Board President.

Every student is encouraged, and every staff member is required, to report any situation that they believe to be aggressive behavior directed toward a student. Reports may be made to those identified above.

All complaints about aggressive behavior that may violate this policy shall be promptly investigated. The Building Principal or appropriate administrator shall prepare a written report of the investigation upon completion. Such report shall include findings of fact, a determination of whether acts of harassment, intimidation, and/or bullying were verified, and, when prohibited acts are verified, a recommendation for intervention, including disciplinary action shall be included in the report. Where appropriate, written witness statements shall be attached to the report.

If the investigation finds an instance of harassment, intimidation, and/or bullying/cyberbullying by an electronic act or otherwise, has occurred, it will result in prompt and appropriate remedial and/or disciplinary action. This may include suspension or up to expulsion for students, up to discharge for employees, exclusion for parents, guests, volunteers, and contractors, and removal from any official position and/or a request to resign for Board members. Individuals may also be referred to law enforcement officials.

If, during an investigation of a reported act of harassment, intimidation and/or bullying/cyberbullying, the Principal or appropriate administrator believes that the reported misconduct may have created a hostile learning environment and may have constituted unlawful discriminatory harassment based on a Protected Class, the Principal will report the act of bullying and/or harassment to one of the Anti-Harassment Compliance Officers so that it may be investigated in accordance with the procedures set forth in Policy 5517 - Anti-Harassment.

Retaliation against any person who reports, is thought to have reported, files a complaint, or otherwise participates in an investigation or inquiry concerning allegations of aggressive behavior is prohibited and will not be tolerated. Such retaliation shall be considered a serious violation of Board policy and independent of whether a complaint is substantiated. Suspected retaliation should be reported in the same manner as aggressive behavior. Retaliation may result in disciplinary action as indicated above.

Deliberately making false reports about harassment, intimidation, bullying and/or other aggressive behavior for the purpose of getting someone in trouble is similarly prohibited and will not be tolerated. Deliberately making false reports may result in disciplinary action as indicated above.

If a student or other individual believes there has been aggressive behavior, regardless of whether it fits a particular definition, s/he should report it and allow the administration to determine the appropriate course of action.

The District shall implement intervention strategies (AG 5517.01) to protect a victim or other person from new or additional harassment, intimidation, or bullying and from retaliation following such a report.

This policy shall not be interpreted to infringe upon the First Amendment rights of students (i.e., to prohibit a reasoned and civil exchange of opinions, or debate, that is conducted at appropriate times and places during the school day and is protected by State or Federal law).

The complainant shall be notified of the findings of the investigation, and as appropriate, that remedial action has been taken. If after investigation, acts of bullying against a specific student are verified, the Building Director or appropriate administrator shall notify the custodial parent/guardian of the victim of such finding. In providing such notification care shall be taken to respect the statutory privacy rights of the perpetrator of such harassment, intimidation, and/or bullying.

If after investigation, acts of harassment, intimidation, and/or bullying by a specific student are verified, the Building Director or appropriate administrator shall notify in writing the custodial parent/guardian of the perpetrator of that finding. If disciplinary consequences are imposed against such student, a description of such discipline shall be included in the notification.

**Complaints**

Students and/or their parents/guardians may file reports regarding suspected harassment, intimidation, or bullying. Such reports shall be reasonably specific including person(s) involved, number of times and places of the alleged conduct, the target of suspected harassment, intimidation, and/or bullying, and the names of any potential student or staff witnesses. Such reports may be filed with any school staff member or administrator, and they shall be promptly forwarded to the Building Director for review, investigation, and action.

Students, parents/guardians, and school personnel may make informal or anonymous complaints of conduct that they consider to be harassment, intimidation, and/or bullying by verbal report to a teacher, school administrator, or other school personnel.

BOE 459

Such complaints shall be reasonably specific including person(s) involved, number of times and places of the alleged conduct, the target of suspected harassment, intimidation, and/or bullying, and the names of any potential student or staff witnesses. A school staff member or administrator who receives an informal or anonymous complaint shall promptly document the complaint in writing, including the information provided. This written report shall be promptly forwarded by the school staff member and/or administrator to the Building Director for review, investigation, and appropriate action.

Individuals who make informal complaints as provided above may request that their name be maintained in confidence by the school staff member(s) and administrator(s) who receive the complaint. Anonymous complaints shall be reviewed and reasonable action shall be taken to address the situation, to the extent such action may be taken that (1) does not disclose the source of the complaint, and (2) is consistent with the due process rights of the student(s) alleged to have committed acts of harassment, intimidation, and/or bullying.

When an individual making an informal complaint has requested anonymity, the investigation of such complaint shall be limited as is appropriate in view of the anonymity of the complaint. Such limitation of investigation may include restricting action to a simple review of the complaint subject to receipt of further information and/or the withdrawal by the complaining student of the condition that his/her report be anonymous.

**Privacy/Confidentiality**

The School District will respect the privacy of the complainant, the individual(s) against whom the complaint is filed, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under this policy and its related administrative guidelines shall be maintained as confidential to the extent permitted by law.

**Reporting Requirement**

At least semi-annually, the Superintendent shall provide to the President of the Board a written summary of all reported incidents and post the summary on the District web site (if one exists). The list shall be limited to the number of verified acts of harassment, intimidation, and/or bullying, whether in the classroom, on school property, to and from school, or at school-sponsored events.

Allegations of criminal misconduct and suspected child abuse will be reported to the appropriate law enforcement agency and/or to Child Protective Services in accordance with statute. District personnel shall cooperate with investigations by such agencies.

**Immunity**

A School District employee, student, or volunteer shall be individually immune from liability in a civil action for damages arising from reporting an incident in accordance with this policy and R.C. 3313.666 if that person reports an incident of harassment, intimidation, and/or bullying promptly, in good faith, and in compliance with the procedures specified in this policy. Such immunity from liability shall not apply to an employee, student, or volunteer determined to have made an intentionally false report about harassment, intimidation, and/or bullying.

**Notification**

Notice of this policy will be **annually** circulated to and posted in conspicuous locations in all school buildings and departments within the District and discussed with students, as well as incorporated into the teacher, student, and parent/guardian handbooks. At least once each school year a written statement describing the policy and consequences for violations of the policy shall be sent to each student's custodial parent or guardian.

The policy and an explanation of the seriousness of bullying by electronic means shall be made available to students in the District and to their custodial parents or guardians.

State and Federal rights posters on discrimination and harassment shall also be posted at each building. All new hires will be required to review and sign off on this policy and the related complaint procedures.

**Education and Training**

In support of this policy, the Board promotes preventative educational measures to create greater awareness of aggressive behavior, including bullying and violence within a dating relationship. The Superintendent or designee shall provide appropriate training to all members of the School District community related to the implementation of this policy and its accompanying administrative guidelines. All training regarding the Board's policy and administrative guidelines about aggressive behavior and bullying in general, will be age and content appropriate.

Annually, the District shall provide all students enrolled in the District with age-appropriate instruction regarding the Board's policy, including a written or verbal discussion of the consequences for violations of the policy ( ) to the extent that State or

BOE 460

Federal funds are appropriated for this purpose.

Students in grades seven (7) through twelve (12) shall receive age-appropriate instruction in dating violence prevention education, including instruction in recognizing dating violence warning signs and characteristics of healthy relationships. Parents, who submit a written request to the Building Director to examine the dating violence prevention instruction materials used in the school, will be afforded an opportunity to review the materials within a reasonable period of time.

The District shall provide training, workshops, and/or courses on this policy for school employees and volunteers who have direct contact with students, to the extent that State or Federal funds are appropriated for these purposes. Time spent by school staff in these training programs shall apply toward mandated continuing education requirements.

In accordance with Board Policy 8462, the Superintendent shall include a review of this policy on bullying and other forms of harassment in the required training in the prevention of child abuse, violence, and substance abuse and the promotion of positive youth development.

The Superintendent shall develop administrative guidelines to implement this policy. Guidelines shall include reporting and investigative procedures, as needed. The complaint procedure established by the Superintendent shall be followed.

Revised 4/11/11
Revised 6/10/13

**© Neola 2013**

Legal                    R.C. 3313.666, 3313.667

                         State Board of Education Model Policy (2007)

BOE 461



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | REMOVAL, SUSPENSION, EXPULSION, AND PERMANENT EXCLUSION OF STUDENTS |
| Code | po5610 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

**5610 - REMOVAL, SUSPENSION, EXPULSION, AND PERMANENT EXCLUSION OF STUDENTS**

The Board of Education recognizes that exclusion from the educational program of the schools, whether by emergency removal, out-of-school suspension, expulsion, or permanent exclusion, is the most severe sanction that can be imposed on a student in this District, and one that cannot be imposed without due process. However, the Board has zero-tolerance of violent, disruptive or inappropriate behavior by its students.

No student is to be removed, suspended out-of-school, expelled and/or permanently excluded unless his/her behavior represents misconduct as specified in the Student Code of Conduct/Student Discipline Code approved by the Board. The Code shall also specify the procedures to be followed by school officials when implementing such discipline. In determining whether a student is to be suspended or expelled, District Administrators shall use a preponderance of evidence standard. In addition to the procedural safeguards and definitions set forth in this policy and the student/parent handbook, additional procedures and considerations shall apply to students identified as disabled under the IDEA, ADA, and/or Section 504 of the Rehabilitation Act of 1973. (See Policy 5605 - Suspension/Expulsion of Students with Disabilities.)

Students may be subject to discipline for violation of the Student Code of Conduct/Student Discipline Code even if that conduct occurs on property not owned or controlled by the Board but where such conduct is connected to activities or incidents that have occurred on property owned or controlled by the Board, or conduct that, regardless of where it occurs, is directed at a District official or employee, or the property of such official or employee.

For purposes of this policy and the Student Code of Conduct/Student Discipline Code, the following shall apply:

A. "Emergency removal" shall be the exclusion of a student who poses a continuing danger to District property or persons in the District or whose behavior presents an on-going threat of disrupting the educational process provided by the District. (See Policy 5610.03 "Emergency Removal")

B. "Suspension" shall be the temporary exclusion of a student by the Superintendent, Principal, Assistant Principal, or any other administrator from the District's instructional program for a period not to exceed ten (10) school days. Suspension shall not extend beyond the current school year, if at the time a suspension is imposed, fewer than ten (10) days remain in the school year.

The Superintendent may instead require a student to participate in a community service program or another alternative consequence for a number of hours equal to the remaining part of the period of the suspension. The student shall be required to begin such community service program or alternative consequence during the first full week day of summer break.

In the event, the student fails to complete the required community service or the assigned alternative consequence, the Superintendent may determine the next course of action. Such course of action, however, shall not include requiring the student to serve the remaining time of the suspension at the beginning of the following year.

BOE 462

The procedures for suspension are set forth in the Student Code of Conduct/Student Discipline Code and Policy 5611 - Due Process Rights.

A student who is suspended shall be permitted to complete any classroom assignments missed because of the suspension.

C. "Expulsion" shall be the exclusion of a student from the schools of this District for a period not to exceed the greater of eighty (80) school days or the number of school days remaining in a semester or term in which the incident that gives rise to the expulsion takes place or for one (1) year as specifically provided in this policy and the Student Code of Conduct/Student Discipline Code. Only the Superintendent may expel a student. The procedures for expulsion are set forth in the Student Code of Conduct/Student Discipline Code and Board Policy 5611 "Due Process Rights".

When making a determination whether or not a student will be expelled or permanently excluded under this policy, the Superintendent shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315 - Information Management (i.e. "Litigation Hold")) created and/or received as part of an investigation.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

1. **Firearm or Knife**

   Unless a student is permanently excluded from school, the Superintendent shall expel a student from school for a period of one (1) year for bringing a firearm or knife capable of causing serious bodily injury to a school building or on to any other property (including a school vehicle) owned, controlled, or operated by the Board, to an interscholastic competition, an extra-curricular event, or to any other school program or activity that is not located in a school or on property that is owned or controlled by the Board, except that the Superintendent may reduce this period on a case-by-case basis in accordance with this policy. Similarly, the Superintendent shall expel a student from school for a period of one (1) year for possessing a firearm or knife capable of causing serious bodily injury at school or on any other property (including a school vehicle) owned, controlled, or operated by the Board, at interscholastic competition, an extra-curricular event, or at any other school program or activity that is not located in a school or on property that is owned or controlled by the Board, except the Superintendent may reduce this period on a case-by-case basis in accordance with this policy. The expulsion may extend, as necessary, into the school year following the school year in which the incident that gives rise to the expulsion takes place. The Superintendent shall refer any student expelled for bringing a firearm (as defined in 18 U.S.C. 921(a)(3)) or weapon to school to the criminal justice or juvenile delinquency system serving the District.

   A firearm is defined as any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon, any firearm muffler or silencer, or any destructive device. A destructive device, includes, but is not limited to any explosive, incendiary, or poison gas, bomb, grenade, rocket having a propellant charge of more than four (4) ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or other similar device.

   A knife capable of causing serious bodily injury is defined as any weapon or cutting instrument consisting of a blade fastened to a handle; a razor blade; or any similar device (including sharp, metal martial arts weapons such as ninja throwing stars) that is used for, or is readily capable of, causing death or serious bodily injury.

   The Superintendent may, in his/her sole judgment and discretion, modify or reduce such expulsion in writing, to a period of less than one (1) year, on a case-by-case basis, upon consideration of the following:

   a. Applicable State or Federal laws and regulations relating to students with disabilities (for example, where the incident involves a student with a disability and the misconduct is determined by a group of persons knowledgeable about the child to be a manifestation of the student's disability);

   b. The degree of culpability given the age of the student and its relevance to the misconduct and/or punishment and/or evidence regarding the probable danger posed to the health and safety of others, including evidence of the student's intent and awareness regarding possession of the firearm or knife; capable of causing serious bodily injury; and/or

   c. The academic and disciplinary history of the student, including the student's response to the imposition of

BOE 463

any prior discipline imposed for behavioral problems.

2. **Violent Conduct**

If a student commits an act at school, on other school property, at an interscholastic competition, extra-curricular event, or any other school program or activity and the act:

   a. would be a criminal offense if committed by an adult;

   and

   b. results in serious physical harm to person(s) as defined in R.C. 2901.01(A)(5), or to property as defined in R.C. 2901.01(A)(6).

the Superintendent may expel the student for a period of up to one (1) year. The Superintendent may extend the expulsion into the next school year or reduce the expulsion as necessary on a case-by-case basis as specified below. The student need not be prosecuted or convicted of any criminal act to be expelled under this provision.

The Superintendent may, in his/her sole judgment and discretion, reduce such expulsion to a period of less than one (1) year, on a case-by-case basis, upon consideration of the following:

   a. applicable State or Federal laws and regulations relating to students with disabilities (for example, where the incident involves a student with a disability and the misconduct is determined by a group of persons knowledgeable about the child to be a manifestation of the student's disability);

   or

   b. other extenuating circumstances, including, but not limited to, the academic and disciplinary history of the student, including the student's response to the imposition of any prior discipline imposed for behavioral problems.

If at the time of the expulsion, there are fewer days remaining in the school year than the number of days of the expulsion, the Superintendent may apply any or all of the remaining period to the following school year.

3. **Bomb Threats**

If a student makes a bomb threat to a school building or to any premises at which a school activity is occurring at the time of the threat, the Superintendent may expel the student for a period of up to one (1) year. The Superintendent may extend the expulsion into the next school year or reduce the expulsion as necessary on a case-by-case basis as specified below. The student need not be prosecuted or convicted of any criminal act to be expelled under this provision.

The Superintendent may, in his/her sole judgment and discretion, reduce such expulsion to a period of less than one (1) year, on a case-by-case basis, for the following reasons:

   a. for students identified as disabled under the IDEA, ADA, and Section 504 of the Rehabilitation Act of 1973, upon recommendation from the group of persons knowledgeable of the student's educational needs;

   or

   b. other extenuating circumstances, including, but not limited to, the academic and disciplinary history of the student, including the student's response to the imposition of any prior discipline imposed for behavioral problems.

If at the time of the expulsion, there are fewer days remaining in the school year than the number of days of the expulsion, the Superintendent may apply any or all of the remaining period to the following school year.

D. "Permanent exclusion" shall mean the student is banned forever from attending a public school in the State of Ohio. (See Policy 5610.01)

If a student is expelled for more than twenty (20) school days or for any period of time that extends into the next school year, the Superintendent shall provide the student and his/her parents with the names, addresses, and telephone numbers of those public or private agencies in the community which offer programs or services that help to rectify the student's behaviors and attitudes that contributed to the incident(s) that caused the expulsion.

**Suspension or Expulsion of Students in Grades Pre-Kindergarten through 3**

The phase-in works as follows to comply with Ohio law for the:

A. 2019-2020 school year, your District must reduce the number of out-of-school suspensions and expulsions issued to students in grades pre-K through 3 for offenses not listed in paragraphs A-D below by twenty-five percent (25%), using

BOE 464

the numbers reported for that category for the 2018-2019 school year as a baseline.

B. 2020-2021 school year, your District must reduce the number of out-of-school suspensions and expulsions issued to students in grades Pre-K through 3 for offenses not listed in paragraphs A-D below by fifty percent (50%), using the numbers reported for that category for the 2018-2019 school year as a baseline.

C. 2021-2022 school year and thereafter, your District may only issue out-of-school suspensions and expulsions to students in grades Pre-K through 3 for the offenses listed in paragraphs A-D below.

Beginning with the 2019-2020 school year, except as permitted by law, suspension or expulsion proceedings shall not be initiated against a student in any of grades Pre-kindergarten through three unless the student has committed the following acts:

A. The student brings a firearm or knife capable of causing serious bodily injury to a school building or on to any other property (including a school vehicle) owned, controlled, or operated by the Board, or to an interscholastic competition, an extra-curricular event, or to any other school program or activity that is not located in a school or on property that is owned or controlled by the Board, or possesses a firearm or knife capable of causing serious bodily injury at school or on any other property (including a school vehicle) owned, controlled, or operated by the Board, at interscholastic competition, an extra-curricular event, or at any other school program or activity that is not located in a school or on property that is owned or controlled by the Board.

B. The student commits an act at school, on other school property, at an interscholastic competition, extra-curricular event, or any other school program or activity and the act: 1) would be a criminal offense if committed by an adult; and 2) results in serious physical harm to person(s) as defined in R.C. 2901.01(A)(5), or to property as defined in R.C. 2901.01(A)(6).

C. The student makes a bomb threat to a school building or to any premises at which a school activity is occurring at the time of the threat.

D. The student engages in behavior of such a nature that suspension or expulsion is necessary to protect the immediate health and safety of the student, the student's fellow classmates, the classroom staff and teachers, or other school employees.

Prior to suspending or expelling a student in any of grades Pre-K through 3, the Principal shall, whenever possible, consult with a mental health professional under contract. If the events leading up to the student's suspension or expulsion from school indicate that the student is in need of additional mental health services, the student's Principal or the District's mental health professional shall assist the student's parent or guardian with locating providers or obtaining such services, including referral to an independent mental health professional, provided such assistance does not result in a financial burden to the District or the student's school.

If a student in any of grades Pre-K through 3 is suspended or expelled, the student shall be afforded the same notice and hearing, procedural, and educational opportunities as set forth in Board policy and the law. The suspension or expulsion of a student in any of grades Pre-K through 3 shall not limit the Board's responsibilities with respect to the provision of special education and related services to such student in accordance with Board policy and the law. Further, the Board shall not be limited in its authority to issue an in-school suspension to a student in any of grades Pre-K through 3, provided that the in-school suspension is served in a supervised learning environment.

If the Superintendent determines that a student's behavior on a school vehicle violates school rules, s/he may suspend the student from school bus-riding privileges for the length of time deemed appropriate for the violation and remediation of the behavior. Any such suspension must comply with due process and the Student Code of Conduct/Student Discipline Code.

The Board authorizes the Superintendent to provide for options to suspension/expulsion of a student from school which may include alternative educational options.

The Superintendent shall initiate expulsion proceedings against a student who has committed an act that warrants expulsion under Board policy even if the student withdraws from school prior to the hearing or decision to impose the expulsion. The expulsion must be imposed for the same duration it would have been had the student remained enrolled.

The Board may temporarily deny admittance to any student who has been expelled from the schools of another Ohio district or an out-of-state district, if the student's expulsion period set by the other district has not expired. The expelled student shall first be offered an opportunity for a hearing. This provision also applies to a student who is the subject of a power of attorney designating the child's grandparent as the attorney-in-fact or caretaker authorization affidavit executed by the child's grandparent and is seeking admittance into the schools of this District in accordance with Policy 5111.

The Board may temporarily deny admittance to any student who has been suspended from the schools of another Ohio district, if the student's suspension period set by the other district has not expired. The suspended student shall first be offered an

BOE 465

opportunity for a hearing before the Board.

When a student is expelled from this District, the Superintendent shall send written notice to any college in which the expelled student is enrolled under Postsecondary Enrollment Options at the time the expulsion is imposed. The written notice shall indicate the date the expulsion is scheduled to expire.

If the expulsion is extended, the Superintendent shall notify the college of the extension.

The Superintendent may require a student to perform community service in conjunction with or in place of a suspension or expulsion. The Board may adopt guidelines to permit the Superintendent to impose a community service requirement beyond the end of the school year in lieu of applying the expulsion into the following school year.

A copy of this policy is to be posted in a central location in each school and made available to students and parents upon request. Key provisions of the policy should also be included in the parent-student handbook.

Revised 4/10/17
Revised 12/10/18
Revised 4/8/19

**© Neola 2020**


Legal                    R.C. 2919.222, 3313.534, 3313.649, 3313.66, 3313.661, 3313.662, 3313.663

                         R.C. 3313.664, 3313.668, 3321.13 (B)(3) and (C), 3327.014

                         18 U.S.C. Section 921

                         20 U.S.C. 3351, 20 U.S.C. 7151, 20 U.S.C. 8921


                                                                                      BOE 466



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | EMERGENCY REMOVAL OF STUDENTS |
| Code | po5610.03 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | April 8, 2019 |

5610.03 - **EMERGENCY REMOVAL OF STUDENTS**

If a student's presence poses a continuing danger to persons or property, or an ongoing threat of disrupting the academic process taking place either in a classroom or elsewhere on school premises, then the Superintendent, Principal or assistant Principal may remove the student from curricular activities or from the school premises. A teacher may remove the student from curricular activities under the teacher's supervision, but not from the premises. If a teacher makes an emergency removal, the teacher will notify a building administrator of the circumstances surrounding the removal in writing, as soon as practicable. Because such removal is not subject to the normal suspension and expulsion procedures, no prior notice or hearing is required for any removal under this policy.

A due process hearing will be held on the next school day after the removal is ordered. Written notice of the hearing and the reason for the removal and any intended disciplinary action will be given to the student as soon as practical prior to the hearing. If the student is subject to out-of-school suspension, the student will have the opportunity to appear at an informal hearing before the Principal, Assistant Principal, Superintendent or designee and has the right to challenge the reasons for the intended suspension or otherwise explain his/her actions. Within one (1) school day of the decision to suspend, written notification will be given to the parent(s)/guardian(s) or custodian of the student. This notice will include the reasons for the suspension, the right of the student or parent(s)/guardian(s) to appeal to the Board or its designee and the student's right to be represented in all appeal proceedings. If it is probable that the student may be subject to expulsion, the hearing will take place on the next school day after the date of the initial removal and will be held in accordance with the procedures outlined in the Policy 5611 - Due Process Rights. The person who ordered or requested the removal will be present at the hearing.

A student in any of grades pre-kindergarten through 3 may be removed only for the remainder of the school day, and shall be permitted to return to any curricular and extra-curricular activities on the next school day (following the day in which the student was removed or excluded).  When a student in any of grades pre-kindergarten through 3 is removed and returned to his/her curricular and extra-curricular activities the next school day, the Principal is not required to hold a hearing (or provide written notice of same).

The Principal shall not initiate suspension or expulsion proceedings against a student in any grades pre-kindergarten through 3 who was removed unless the student has committed one (1) of the following acts:

A. The student brings a firearm or knife capable of causing serious bodily injury to a school building or on to any other property (including a school vehicle) owned, controlled, or operated by the Board, to an interscholastic competition, an extra-curricular event, or to any other school program or activity that is not located in a school or on property that is owned or controlled by the Board.  Similarly, the Principal can initiate suspension or expulsion proceedings if the student possesses a firearm or knife capable of causing serious bodily injury at school or on any other property (including a school vehicle) owned, controlled, or operated by the Board, at interscholastic competition, an extra-curricular event, or at any other school program or activity that is not located in a school or on property that is owned or controlled by the Board.

B. The student commits an act at school, on other school property, at an interscholastic competition, extra-curricular event, or any other school program or activity and the act:  1) would be a criminal offense if committed by an adult; and

BOE 467

    2) results in serious physical harm to person(s) as defined in R.C. 2901.01(A)(5), or to property as defined in R.C. 2901.01(A)(6).

C. The student makes a bomb threat to a school building or to any premises at which a school activity is occurring at the time of the threat.

D. The student engages in behavior of such a nature that suspension or expulsion is necessary to protect the immediate health and safety of the student, the student's fellow classmates, the classroom staff and teachers, or other school employees

If the Superintendent or Principal reinstates a student prior to the hearing for emergency removal, the teacher may request and will be given written reasons for the reinstatement. The teacher cannot refuse to reinstate the student.

In an emergency removal, a student can be kept from class until the matter of the misconduct is disposed of either by reinstatement, suspension or expulsion.

Revised 12/10/18

**© Neola 2019**

Legal                 R.C. Chapter 2506, 3313.66, 3313.661, 3313.662, 3313.668

BOE 468



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | DUE PROCESS RIGHTS |
| Code | po5611 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

5611 - **DUE PROCESS RIGHTS**

The Board of Education recognizes that students have limited constitutional rights when it comes to their education.

Accordingly, the Board establishes the following procedures which District Administrators shall use when dealing with students:

A. **Student subject to suspension:**

When a student is being considered for an out-of-school suspension by the Superintendent, principal, or other administrator:

1. The student will be informed in writing of the potential suspension and the reasons for the proposed action.

2. The student will be provided an opportunity for an informal hearing to challenge the reason for the intended suspension and to explain his/her actions.

3. An attempt will be made to notify parents or guardians by telephone if a suspension is issued.

4. Within one (1) school day of the suspension the Superintendent, principal, or other administrator will notify the parents, guardians, or custodians of the student. The notice will include the reasons for the suspension and the right of the student, parent, guardian, or custodian to appeal to the Board or its designee; the right to be represented at the appeal; and the right to request the hearing be held in executive session if before the Board. The notice shall also specify that if the student, parent, guardian, or custodian intends to appeal the suspension to the Board or its designee, such notice of appeal shall be filed, in writing, with the Treasurer of the Board or the Superintendent within three (3) calendar days after the date of the notice to suspend. If the offense is one for which the District may seek permanent exclusion, then the notice will contain that information.

5. Notice of this suspension will also be sent to the:

   a. Superintendent;

   b. student's school record (not for inclusion in the permanent record).

6. If a student leaves school property without permission immediately upon violation (or suspected violation) of a provision of the Student Code of Conduct/Student Discipline Code or prior to an administrator conducting an informal hearing as specified above, and the student fails to return to school on the following school day, the principal, assistant principal, Superintendent, or any other administrator, may send the student and his/her parent(s)/guardian(s) notice of the suspension, and offer to provide the student and/or his/her parents an informal hearing upon request to discuss the reasons for the suspension and to allow the student to challenge the reasons and to explain his/her actions, any time prior to the end of the suspension period.

BOE 469

**Appeal of Suspension to the Board or its designee**

The student who is eighteen (18) or older or the student's parent(s) or guardian(s) may appeal the suspension to the Board or its designee. They may be represented in all such appeal proceedings.

A verbatim record will be kept of the hearing which may be held in executive session at the request of the student, parent, or guardian, if held before the Board.

The procedure to pursue such appeal will be provided in regulations approved by the Superintendent. Notice of appeal must be filed, in writing, with the Treasurer or the Superintendent within three (3) calendar days after the date of the notice to suspend.

While a hearing before the Board may occur in executive session, the Board must act in public.

**Appeal to the Court**

Under Ohio law, appeal of the Board's or its designee's decision may be made to the Court of Common Pleas.

B. **Students subject to expulsion:**

When a student is being considered for expulsion by the Superintendent:

1. The Superintendent will give the student and parent, guardian, or custodian written notice of the intended expulsion, including reasons for the intended expulsion.

2. The student and parent or representative have the opportunity to appear before the Superintendent or designee to challenge the proposed action or to otherwise explain the student's actions. The written notice will state the time and place to appear, which must not be earlier than three (3) school days nor later than five (5) school days after the notice is given, unless the Superintendent grants an extension upon request of the student or parent.

3. Within one (1) school day of the expulsion, the Superintendent will notify the parents, guardians, or custodians of the student and Treasurer of the Board. The notice will include the reasons for the expulsion and the right of the student, parent, guardian, or custodian to appeal to the Board or its designee; the right to be represented at the appeal; and the right to request the hearing be held in executive session if before the Board. The notice shall also specify that if the student, parent, guardian, or custodian intends to appeal the expulsion to the Board or its designee, such notice of appeal shall be filed, in writing, with the Treasurer of the Board or the Superintendent within fourteen (14) calendar days after the date of the notice of expulsion. If the offense is one for which the District may seek permanent exclusion, then the notice will contain that information.

**Appeal of Expulsion to the Board**

A student who is eighteen (18) or older or a student's parent(s) or guardian(s) may appeal the expulsion by the Superintendent to the Board or its designee. They may be represented in all such appeal proceedings and will be granted a hearing before the Board or its designee.

A verbatim record will be kept of the hearing which may be held in executive session at the request of the student, parent, or guardian, if it is held before the Board.

The procedure to pursue such appeal will be in accordance with regulations approved by the Superintendent. Notice of appeal must be filed, in writing, within fourteen (14) calendar days after the date of the Superintendent's decision to expel with the Treasurer of the Board or the Superintendent.

While a hearing before the Board may occur in executive session, the Board must act in public.

**Appeal to the Court**

Under State law, the decision of the Board or its designee may be further appealed to the Court of Common Pleas.

C. **Students subject to emergency removal:**

Students whose conduct warrants emergency removal shall be dealt with in accordance with the rights and procedures outlined in Policy 5610.03 – Emergency Removal.

D. **Students subject to permanent exclusion:**

BOE 470

Students whose conduct is that for which permanent exclusion is warranted shall be dealt with in accordance with the rights and procedures outlined in Policy 5610.01 – Permanent Exclusion of Nondisabled Students.

E. **Students subject to suspension from bus riding/transportation privileges:**

Students whose conduct warrants suspension from bus riding and/or transportation services shall be dealt with in accordance with the rights and procedures outlined in Policy 5610.04 - Suspension of Bus Riding/Transportation Privileges.

In determining whether disciplinary action set forth in this policy is to be implemented, District Administrators shall use a preponderance of evidence standard. Further, any individual charged with making a disciplinary determination under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315 - Information Management (i.e. "Litigation Hold")) created and/or received as part of an investigation.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

In addition, this statement of due process rights is to be placed in all student handbooks in a manner that will facilitate understanding by students and their parents.

These procedures shall not apply to in-school disciplinary alternatives including in-school suspensions. An in-school suspension is one served entirely in a supervised learning environment within a school setting. Nor shall these disciplinary alternative procedures apply to students who are prohibited by authorized school personnel from all or part of their participation in co-curricular, interscholastic, and/or noninterscholastic extra-curricular activities.

Revised 12/10/18

**© Neola 2020**

Legal                    R.C. 3313.20, 3313.66, 3313.661

BOE 471



| Book | Policy Manual |
|------|---------------|
| Section | 5000 Students |
| Title | POSITIVE BEHAVIOR INTERVENTION AND SUPPORTS AND LIMITED USE OF RESTRAINT AND SECLUSION |
| Code | po5630.01 |
| Status | Active |
| Adopted | December 12, 2016 |
| Last Revised | December 13, 2021 |

**5630.01 - POSITIVE BEHAVIOR INTERVENTION AND SUPPORTS AND LIMITED USE OF RESTRAINT AND SECLUSION**

The Board of Education is committed to implementation of Positive Behavior Intervention and Supports (PBIS) framework on a District-wide basis and the establishment of a school environment focused on the care, safety, and welfare of all students and staff members. Staff are directed to work to prevent the use of physical restraint and/or seclusion. The PBIS framework shall serve as the foundation for the creation of a learning environment that promotes the use of evidence-based academic and behavioral practices aimed at enhancing academic, social and behavioral outcomes for all students. An emphasis shall be placed on promoting positive interventions and solutions to potential crises. If a student's behavior, however, presents a threat of immediate physical harm to the student or others, staff may, as a last resort (i.e., there is no other safe and effective intervention available) and in accordance with the terms of this policy, use approved physical restraint or seclusion to maintain a safe environment.

All physical restraint and seclusion shall only be done in accordance with this policy, which is based on the standards adopted by the State Board of Education regarding the use of student restraint and seclusion.

Training in methods of PBIS and the use of physical restraint and seclusion will be provided to all professional staff and support staff determined appropriate by the Superintendent. Training will be in accordance with the State's Standards. Absent an emergency, only school staff who are trained in permissible seclusion and physical restraint measures shall use such techniques.

Every use of restraint and seclusion shall be documented and reported in accordance with this policy.

The Board shall annually notify parents of this policy, which will be published on the District's website.

**DEFINITIONS**

**Aversive behavioral interventions** mean interventions that are intended to induce pain or discomfort to a student for the purpose of eliminating or reducing maladaptive behaviors, including such interventions as application of noxious, painful, and/or intrusive stimuli, including any form of noxious, painful, or intrusive spray, inhalant, or taste, or other sensory stimuli such as climate control, lighting, and sound.

Behavioral Intervention Plan ("BIP") means a comprehensive plan for managing problem behavior by changing or removing contextual factors that trigger or maintain it, by strengthening replacement skills, teaching new skills and by providing positive behavior intervention and supports and services to address behavior.

**Chemical restraint** means a drug or medication used to control a student's behavior or restrict freedom of movement that is not:

A. Prescribed by a licensed physician, or other qualified health professional acting under the scope of the professional's authority under Ohio law, for the standard treatment of a student's medical or psychiatric condition; and

BOE 472

B. Administered as prescribed by the licensed physician or other qualified health professional acting under the scope of the professional's authority under Ohio law.

**De-escalation techniques** are interventions that are used to prevent violent and aggressive behaviors and reduce the intensity of threatening, violent and disruptive incidents.

**Functional behavior assessment** (FBA) is a school-based process for students with disabilities and students without disabilities that includes the student's parent and, as appropriate, the child, to determine why a child engages in challenging behaviors and how the behavior relates to the child's environment.  Consent from the parent and, as appropriate, the child (eighteen (18) years of age or older), must be obtained at the initial Functional Behavior Assessment.

**Mechanical restraint** means any method of restricting a student's freedom of movement, physical activity, or normal use of the student's body, by using an appliance or device manufactured for this purpose. Mechanical restraint does *not* mean a device used by trained Student Personnel, or used by a student, for the specific and approved therapeutic or safety purposes for which the device was designed and, if applicable, prescribed, including:

A. restraints for medical immobilization;

B. adaptive devices or mechanical supports used to allow greater freedom of mobility than would be possible without the use of such devices or mechanical supports; or

C. vehicle safety restraints when used as intended during the transport of a student in a moving vehicle.

**Parent** means:

A. a biological or adoptive parent;

B. a guardian generally authorized to act as the child's parent, or authorized to make decisions for the child (but not the State if the child is a ward of the State);

C. an individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare;

D. a surrogate parent who has been appointed in accordance with Ohio Administrative Code 3301-51-05(E); or

E. any person identified in a judicial decree or order as the parent of a child or the person with authority to make educational decisions on behalf of the child.

**Physical escort** means the temporary touching or holding of the hand, wrist, arm, shoulder, waist, hip, or back for the purpose of inducing a student to move to a safe location.

**Physical restraint** means the use of physical contact that immobilizes or reduces the ability of a student to move the student's arms, legs, body, or head freely. Physical restraint does not include a physical escort, mechanical restraint, or chemical restraint. Physical restraint does not include brief physical contact for the following or similar purposes to:

A. break up a fight;

B. knock a weapon away from a student's possession;

C. calm or comfort;

D. assist a student in completing a task/response if the student does not resist the contact; or

E. prevent imminent risk of injury to the student or others.

**Positive Behavior Intervention and Supports** (PBIS) means a multi-tiered, school-wide, behavioral framework developed and implemented for the purpose of improving academic and social outcomes, and increasing learning for all students. PBIS includes a decision-making framework that guides selection, integration, and implementation of evidence-based academic and behavior practices for improving academic and behavior outcomes for all students. PBIS encompasses a range of systemic and individualized positive strategies to reinforce desired behaviors, diminish reoccurrences of challenging behaviors, and teach appropriate behaviors to students.

**PBIS Leadership Team** means the assigned team at the District and building level that plans, coaches and monitors PBIS implementation in the District and buildings. The PBIS Leadership Teams may include, but is not limited to, school

BOE 473

administrators, teacher representatives across grade level and programs, staff able to provide behavioral expertise, and other representatives identified by the District or school such as bus drivers, food service staff, custodial staff, and paraprofessionals.

**Prone restraint** means physical or mechanical restraint while the student is in the face-down position.

**Seclusion** means the involuntary isolation of a student in a room, enclosure, or space from which the student is prevented from leaving by physical restraint or by a closed door or other physical barrier.  It does not include a timeout.

**Student** means an individual enrolled in the District.

**Student Personnel** means teachers, principals, counselors, social workers, school resource officers, teachers' aides, psychologists, bus drivers, related service providers, nursing staff, or other District staff who interact directly with students.

**Timeout** means a behavioral intervention in which the student, for a limited and specified time, is separated from the class within the classroom or in a non-locked setting for the purpose of self-regulating and controlling his or her own behavior. In a timeout, the student is not physically restrained or prevented from leaving the area by physical barriers.

## POSITIVE BEHAVIOR INTERVENTION AND SUPPORTS FRAMEWORK

The District will implement PBIS on a system-wide basis in accordance with R.C. 3319.46 and A.C. 3301-35-15.  The District's PBIS framework involves comprehensive, school-wide data systems that enable monitoring of academic progress, behavioral incidents, attendance, and other critical indicators across classrooms. The administration is encouraged to use data-based decision making to select, monitor, and evaluate outcomes, practices, and systems. The PBIS framework further involves a school-wide investment in evidence-based curricula and effective instructional strategies, matched to students' needs, and data to support teachers' academic instruction. Evidence-based practices along a multi-tiered continuum of supports will be used. The District's PBIS framework will further focus on improving staff climate and culture regarding the role of discipline in the classroom, by using positive and proactive communication and staff recognition. Finally, classroom practices shall be linked to and aligned with the school-wide system so progress monitoring can occur with fidelity and target outcomes. The PBIS framework will strive to enable accurate and sustainable implementation of practices.

As part of its implementation of the PBIS framework, the District will provide Student Personnel with appropriate professional development, engage in explicit instruction of school-wide behavior expectation, employ consistent systems of acknowledging and correcting behavior, create teaching environments designed to eliminate behavior triggers, and promote family and community involvement.

The PBIS framework shall apply to all students and staff, and in all settings. It shall include:

A. school staff trained to identify conditions such as where, under what circumstances, with whom, and why specific behaviors occur;

B. functional behavior assessments that include:

1. review of existing data;

2. interviews with parents, family members, and students; and

3. examination of previous and existing behavior intervention plans.

C. development and implementation of positive behavior interventions and supports, and the teaching of appropriate behavior, including:

1. modification of environmental factors that escalate inappropriate behavior;

2. supporting the attainment of appropriate behavior; and

3. use of de-escalation techniques to defuse potentially violent dangerous behavior.

## PROFESSIONAL DEVELOPMENT FOR IMPLEMENTATION OF PBIS

In order to successfully implement the PBIS framework on a District-wide basis, the Board shall provide or Student Personnel shall receive professional development as follows:

A. the professional development will occur at least every three (3) years;

B. the professional development must be provided by a building or District PBIS Leadership Team or an appropriate State,

BOE 474

        regional, or national source in collaboration with the building or District PBIS Leadership Team;

C. the trained PBIS Leadership team will provide the professional development in accordance with the District-developed PBIS training plan, which the Superintendent will develop;

D. the Superintendent shall retain records of completion of the professional development; and

E. the professional development will include the following topics:

    1. an overview of PBIS;

    2. the process for teaching behavioral expectations;

    3. data collection;

    4. implementation of PBIS with fidelity;

    5. consistent systems of feedback to students for acknowledgment of appropriate behavior and corrections for behavior errors; and

    6. consistency in discipline and discipline referrals.

F. the training will be appropriately modified for the intended audience.

The Superintendent is charged with arranging for continuous training structures to be in place to provide ongoing coaching and implementation with fidelity.

**SECLUSION**

Seclusion may be used only when a student's behavior poses an immediate risk of physical harm to the student or others and no other safe or effective intervention is available. Seclusion may be used only as a last resort to provide the student with an opportunity to regain control of the student's actions. Seclusion must be used in a manner that is age and developmentally appropriate, for the minimum amount of time necessary for the purpose of protecting the student and/or others from physical harm, and otherwise in compliance with this policy and the Ohio Department of Education's (ODE) model policy.

Seclusion shall be implemented only by Student Personnel who are trained to protect the care, welfare, dignity, and safety of the student, including trained to detect indications of physical or mental distress that require removal and/or immediate medical assistance. Student Personnel must document their observations of the student during the seclusion.

**Additional requirements for the use of seclusion:**

If Student Personnel use seclusion, they must:

A. continually observe the student in seclusion for indications of physical or mental distress and seek immediate medical assistance if there is a concern;

B. use communication strategies and research-based de-escalation techniques in an effort to help the student regain control as quickly as possible;

C. remove the student from seclusion when the immediate risk of physical harm to the student and/or others has dissipated;

D. assess the student for injury or psychological distress after the use of seclusion, and monitor the student as needed following the incident;

E. conduct a debriefing including all involved staff to evaluate the trigger for the incident, staff response, and methods to address the student's behavioral needs; and

F. complete all required reports and document their observations of the student.

**Requirements for a room or area used for seclusion:**

A room or area used for seclusion must provide for adequate space, lighting, ventilation, and clear visibility in order to allow Student Personnel to observe the student.

A room or area used for seclusion *must not be locked* or otherwise prevent the student from exiting the area should staff become

                                                                      BOE 475

incapacitated or leave the area.

**Additional prohibited seclusion practices:**

Seclusion shall not be used:

    A. for the convenience of staff;

    B. as a substitute for an educational program;

    C. as a form of discipline or punishment;

    D. as a substitute for other less restrictive means of assisting a student in regaining control;

    E. as a substitute for inadequate staffing;

    F. as a substitute for staff training in positive behavior intervention and supports framework and crisis management; or

    G. as a means to coerce, retaliate, or in a manner that endangers a student.

Seclusion of preschool-age children is prohibited, except that a preschool-age child may be separated from classmates, either in the classroom or in a safe, lighted, and well-ventilated space, for an amount of time that is brief in duration and appropriate to the child's age and development, if the child is always within sight and hearing of a preschool staff member.

**PHYSICAL RESTRAINT**

Prone restraint, including any physical restraint that obstructs the airway of the student, or any physical restraint that impacts a student's primary mode of communication, is prohibited.  Student Personnel may use physical restraint only as a last resort and in accordance with this policy and the requirements of A.C. 3301-35-15.

Physical restraint may be used only when the student's behavior poses an immediate risk of physical harm to the student and/or others and no other safe or effective intervention is available. The physical restraint must be implemented in a manner that is age and developmentally appropriate, does not obstruct the student's ability to breathe, does not interfere with the student's ability to communicate in the student's primary language or mode of communication, and otherwise in compliance with this policy and the ODE's corresponding model policy.

Only Student Personnel trained in safe restraint techniques may implement physical restraint, except in the case of rare and unavoidable emergency situations when trained personnel are not immediately available. Student Personnel must be trained to protect the care, welfare, dignity, and safety of the student.

**Additional requirements for the use of physical restraint:**

If Student Personnel use physical restraint, they must:

    A. continually observe the student in restraint for indications of physical or mental distress and seek immediate medical assistance if there is a concern;

    B. use communication strategies and research-based de-escalation techniques in an effort to help the student regain control as quickly as possible;

    C. remove the student from physical restraint immediately when the immediate risk of physical harm to the student and/or others has dissipated;

    D. assess the student for injury or psychological distress after the use of physical restraint, and monitor the student as needed following the incident;

    E. conduct a debriefing including all involved staff to evaluate the trigger for the incident, staff response, and methods to address the student's behavioral needs; and

    F. complete all required reports and document their observations of the student;

Physical restraint shall not be used for punishment or discipline, or as a substitute for other less restrictive means of assisting a student in regaining control.

**Prohibited Practices**

BOE 476

The following practices are prohibited under all circumstances, including emergency safety situations:

A. prone restraint;

B. any form of physical restraint that involves the intentional, knowing, or reckless use of any technique that:

    1. involves the use of pinning down a student by placing knees to the torso, head, or neck of the student;

    2. uses pressure point, pain compliance, or joint manipulation techniques;

    3. otherwise involves techniques that are used to unnecessarily cause pain;

    4. causes loss of consciousness or harm to the neck or restricting respiration in any way;

    5. involves dragging or lifting of the student by the hair or ear or any type of mechanical restraint;

    6. uses other students or untrained staff to assist with the hold or restraint;

    7. involves securing a student to another student or fixed object;

C. corporal punishment as defined in R.C. 3319.41;

D. child endangerment as defined in R.C. 2919.22;

E. deprivation of basic needs;

F. seclusion or restraint of preschool-age students in violation of A.C. 3301-37-10(D) and A.C. 3301-35-15;

G. mechanical restraint;

H. chemical restraint;

I. aversive behavioral interventions; and

J. seclusion in a locked room or area.

**CONTACT LAW ENFORCEMENT AND/OR EMERGENCY RESPONSE PERSONNEL**

In accordance with the Board's Emergency Management Plan (see Policy 8400), District personnel shall contact law enforcement and/or appropriate emergency response personnel if at any point they determine that an intervention (either a physical restraint or seclusion) is insufficient to maintain the safety of all involved.

**MULTIPLE INCIDENTS OF RESTRAINT AND/OR SECLUSION — CONDUCTING A FUNCTIONAL BEHAVIORAL ASSESSMENT AND DEVELOPING A BEHAVIOR INTERVENTION PLAN**

After a student's third incident of physical restraint or seclusion in a school year, a meeting must occur within ten (10) school days of the third incident as follows:

A. For a student who has been found eligible for special education services or has a 504 plan, the student's individualized education program or 504 team must meet to consider the need to conduct or develop a FBA or BIP, or amend an existing FBA or BIP.

B. For all other students (i.e., students not described in the preceding paragraph), a team, consisting of the student's parent, an administrator or designee, a teacher of the student, a staff member involved in the incident (if not the teacher or administrator already invited), and other appropriate staff members must meet to discuss the need to conduct or review a FBA and/or develop a BIP.

C. Nothing in this section is meant to prevent the completion of a FBA or BIP for any student who might benefit from these measures, but has fewer than three (3) incidents of restraint or seclusion.

D. Nothing in this section is meant to prevent the District from conducting any evaluations or other obligations the staff feel are appropriate under the Individuals with Disabilities Education Improvement Act.

**TRAINING AND PROFESSIONAL DEVELOPMENT FOR USE OF CRISIS MANAGEMENT AND DE-ESCALATION**
BOE 477

**TECHNIQUES**

The District shall provide training and professional development for the use of crisis management and de-escalation techniques that includes the use of restraint and seclusion. Specifically, the District shall annually train an appropriate number of personnel in each building in evidence-based crisis management and de-escalation techniques, as well as the safe use of physical restraint and seclusion. At a minimum, the training will cover the following topics:

A. proactive measures to prevent the use of seclusion or restraint;

B. crisis management;

C. documentation and communication about the restraint or seclusion with appropriate parties;

D. the safe use of restraint and seclusion;

E. instruction and accommodation for age and body size diversity;

F. directions for monitoring signs of distress during and following physical control; and

G. debriefing practices and procedures.

The training will occur face-to-face and allow for a simulated experience of administering and receiving physical restraint so that participants can demonstrate proficiency in the topics identified above.

The Superintendent is charged with maintaining written or electronic documentation concerning the training provided that includes the following:

A. the name, position, and building assignment of each person who has completed training;

B. the name, position, and credentials of each person who has provided the training;

C. when the training was completed; and

D. what protocols, techniques, and materials were included in training.

As part of the required training, Student Personnel shall be trained to perform the following functions:

A. identify conditions such as: where, under what conditions, with whom and why specific inappropriate behavior may occur; and

B. use preventative assessments that include at least the following:

1. a review of existing data;

2. input from parents, family members, and students; and

3. examination of previous and existing behavior intervention plans.

Only individuals trained in accordance with this policy in the appropriate use of restraint and seclusion may use those techniques.

**MONITORING AND COMPLAINT PROCEDURES**

The Superintendent shall monitor the implementation of A.C. 3301-35-15 and this policy, and annually conduct a review of A.C. 3301-35-15 and this policy related to the use of PBIS, physical restraint, and seclusion. Additionally, the administration will annually notify parents of the District's policy and procedures related to the requirements of PBIS, physical restraint, and seclusion, including the following complaint process.

Any parent of a child enrolled in school in the District may submit a written complaint to the Superintendent regarding an incident of restraint or seclusion. The Superintendent shall investigate each written complaint and respond in writing to the parent's complaint within thirty (30) days of receipt of the complaint. The Superintendent will make reasonable efforts to have an in-person follow-up meeting with the parent.

A parent may also file a complaint with local law enforcement, the county department of job and family services, or the office of integrated student supports within the Ohio Department of Education.  The procedures and timeline for filing a complaint with the Ohio Department of Education are outlined in A.C. 3301-35-15(L).

BOE 478

Case: 3:22-cv-00337-MJN-PBS Doc #: 39-4 Filed: 01/27/23 Page: 29 of 29  PAGEID #: 936

**REQUIREMENTS FOLLOWING AN INCIDENT OF SECLUSION OR PHYSICAL RESTRAINT**

Each use of physical restraint or seclusion shall be:

    A. reported to the building administration immediately;

    B. reported to the parent immediately; and

    C. documented in a written report (see Ohio Department of Education's  Model Restraint and Seclusion Debriefing Form).

A copy of the written report shall be issued to the student's parent or guardian within twenty-four (24) hours of the use of restraint or seclusion. The District shall maintain the written report, including placing a copy of the written report in the student's file.

All written documentation of the use of restraint or seclusion are educational records pursuant to the Family Educational Right to Privacy Act (FERPA), and District personnel are prohibited from releasing any personally identifiable information to anyone other than the parent, in accordance with FERPA's requirements.

The Superintendent shall develop a process for the collection of data regarding the use of physical restraint and seclusion.

The administration shall develop a support plan for substitute teachers if they need assistance with PBIS or crisis management and de-escalation (including restraint and seclusion).

The Superintendent shall report information regarding the District's use of restraint and seclusion annually to the Ohio Department of Education in the form and manner prescribed by the Department as requested by that agency and make the District's records concerning PBIS, restraint and seclusion available to the staff of the Ohio Department of Education upon request.

* Adapted from the Ohio Department of Education's Positive Behavior Intervention and Supports and Restraint and Seclusion Model Policy and Procedures, issued July 2021.

Revised 4/10/17

**© Neola 2021**

BOE 479