

| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | EQUAL ACCESS FOR NONDISTRICT-SPONSORED, STUDENT CLUBS AND ACTIVITIES |
| Code | po5730 |
| Status | Active |
| Adopted | March 10, 2008 |

## 5730 - EQUAL ACCESS FOR NONDISTRICT-SPONSORED, STUDENT CLUBS AND ACTIVITIES

The Board of Education will not permit the use of school facilities by nondistrict-sponsored student clubs and activities or District-sponsored, noncurriculum-related clubs and activities during instructional hours. During noninstructional time, however, no group of students, regardless of the size of the group, will be denied an opportunity to meet on the basis of the religious, political, philosophical, or other content of the activity.

An application for permission for nondistrict-sponsored student clubs and activities to meet on school premises shall be made to the Superintendent, who shall grant permission provided that s/he determines that:

    A. the activity has been initiated by students;

    B. attendance at the meeting is voluntary;

    C. no agent or employee of the District will promote, lead, or participate in the meeting;

    D. the meeting does not materially and substantially interfere with the orderly conduct of instructional activities in the school;

    E. nonschool persons do not direct, conduct, control, or regularly attend the activity.

A student-initiated group granted permission to meet on school premises shall be provided the same rights and access and shall be subject to the same administrative guidelines that govern the meetings of student organizations sponsored by this Board, except as provided in this policy. Participation in a student-initiated meeting must be available to all students who wish to attend and cannot be denied on the basis of a student's race, color, creed, religion, gender, national origin, disability, or social or economic status.

The Board will not permit the organization of a fraternity, sorority, or secret society. A student-initiated meeting may be attended by no more than two (2) outside resource persons. The Superintendent may exclude nonstudents from directing, controlling, or attending any such meetings of students.

A professional staff member may be assigned to attend a student-initiated meeting in a custodial capacity but shall not participate in the activity. No professional staff member shall be compelled to attend a student-initiated meeting if the content of the speech at the meeting is contrary to his/her beliefs.

The principal may take such actions as may be necessary to maintain order and discipline on school premises and to protect the safety and well-being of students and staff members.

BOE 480

Case: 3:22-cv-00337-MJN-PBS Doc #: 39-5 Filed: 01/27/23 Page: 2 of 22  PAGEID #: 938

Legal                  R.C. 3313.75, 3313.76, 3313.77

20 U.S.C. 4071 et seq., Equal Access Act of 1984

42 U.S.C. 12101, et seq., Americans with Disabilities Act of 1990

42 U.S.C. 2000e, Civil Rights Act of 1964

BOE 481



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | PARENTAL STATUS OF STUDENTS |
| Code | po5751 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | June 30, 2011 |

**5751 - PARENTAL STATUS OF STUDENTS**

No student, whether married or unmarried, who is otherwise eligible to attend school in the District shall be denied an educational program solely because of pregnancy, childbirth, pregnancy-related disabilities, or actual or potential parenthood.

The Board of Education reserves the right to require as a prerequisite for attendance in the regular classes of the schools and the co- curricular and extra-curricular programs of the schools that each pregnant student present to the Superintendent her physician's written statement that such activity will not be injurious to her health nor jeopardize her pregnancy.

A pregnant student will be considered on an excused absence for so long a period as is deemed medically necessary by the student's physician. At the conclusion of the absence, the student shall be reinstated to the status she held when the absence began.

**© Neola 2011**

Legal                     R.C. 2151.85, 2505.073, 3321.01 et seq.

BOE 482



| Book | Policy Manual |
| --- | --- |
| Section | 5000 Students |
| Title | STUDENT/PARENT RIGHTS |
| Code | po5780 |
| Status | Active |
| Adopted | March 10, 2008 |

**5780 - STUDENT/PARENT RIGHTS**

The Board of Education recognizes that students possess not only the right to an education but many of the rights of citizenship as well.

In providing students the opportunity for an education to which they are entitled, the Board shall attempt to offer nurture, counsel, and custodial care appropriate to their age and maturity. At the same time, the Board recognizes that no student may be deprived of the basic right to equal access to the educational program, and his/her constitutional right to due process and free expression and association as appropriate for the school environment.

Attendant to the rights afforded to each student, however, are certain responsibilities, which include respect for the rights of others, obedience to properly constituted school authority, and compliance with the guidelines and rules of the District.

The Board realizes that as students differ in age and maturity, so they differ in ability to handle both the rights of citizens and the concomitant responsibilities. The exercise of each right shall be granted, therefore, with due regard for the degree of responsibility possessed by the student and the student's need for the continuing guidance and control of those responsible for his/her education.

Since a student who has reached the age of majority possesses the full rights of an adult, s/he may authorize those school matters previously handled by his/her parents, but s/he also assumes the responsibility for his/her performance in school, attendance, and compliance with school rules.

Parents also have rights in the school system to know about their student's educational experience. Specific rights are listed in topic areas of these policies.

In addition, parents have the right to inspect any instructional materials used as part of the educational curriculum for their student. Instructional materials means instructional content, regardless of format, that is provided to the student, including printed or representational materials, audio-visual materials, and materials available in electronic or digital formats (such as materials accessible through the Internet). Instructional material does not include academic tests or academic assessments.

The Superintendent shall, in consultation with parents, develop a procedure addressing the right of parents as described herein and procedures to assure timely response to parental requests to review instructional material. The procedure shall also address reasonable notification to parents and students of their rights to review these materials. See AG 9130A and Form 9130 F3.

This policy shall not supercede any rights under the Family Education Rights and Privacy Act.

| Legal | R.C. 3109.01 |
| --- | --- |
| | 20 U.S.C. 1232h |

BOE 483



| | |
|---|---|
| Book | Policy Manual |
| Section | 6000 Finances |
| Title | STUDENT FEES, FINES, AND CHARGES |
| Code | po6152 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

**6152 - STUDENT FEES, FINES, AND CHARGES**

The Board of Education will provide the necessary textbooks and/or electronic textbooks required by the course of study free of charge for its students. The Board may charge fees for any additional materials used in the course of instruction. The Board may furnish these additional materials free of charge to students determined to have a serious financial need. Any such waiver of these charges shall be made in accordance with Policy 6152.01.

The Board will not charge a fee to a student who is eligible for a free lunch under the National School Lunch Act and the Child Nutrition Act of 1966 for any materials needed to enable the student to participate in a course of instruction. However, the Board may nonetheless charge a fee for materials needed for a student to participate in extracurricular activities or student enrichment programs or tools, equipment, and materials that are necessary for workforce-readiness career-technical education training program that may be retained by the students after completion of the course.

**Fees**

For the purposes of this policy, "school fees" or "fees" means any monetary charge collected by the District from a student or the parent(s) or guardian of a student as a prerequisite for the student's participation in any curricular or extra-curricular program of the District.

    A. "School fees" include, but are not limited to, the following:

        1. all charges for required workbooks and instructional materials

        2. all charges and deposits collected by a school for use of school property (e.g., locks, towels, laboratory equipment)

        3. charges for field trips made during school hours, or made after school hours if the field trip is a required or customary part of a class or extra-curricular activity

        4. charges or deposits for uniforms or equipment related to varsity and intramural sports, or to fine arts programs

        5. charges may be assessed to participate in extra-curricular activities

        6. charges for supplies required for a particular class or for gym uniforms

        7. graduation fees

        8. school records fees

    B. "School fees" do not include:

BOE 484

1. library fines and other charges made for the loss, misuse, or destruction of school property;

2. charges for the purchase of class rings, yearbooks, pictures, diploma covers, or similar items;

3. charges for optional travel undertaken by a school club or group of students outside of school hours;

4. charges for admission to school dances, athletic events, or other social events;

5. optional community service programs for which fees are charged (e.g., preschool before and after-school child care, recreation programs).

A charge shall not exceed the combined cost of the material used, freight and/or handling charges, and nominal add-on for loss. Money received from resale of such material shall be returned to the Treasurer with an accurate accounting of all transactions.

**Fines**

When school property, equipment, or supplies are damaged, lost, or taken by a student, a fine will be assessed. The fine will be reasonable, seeking only to compensate the school for the expense or loss incurred.

The late return of borrowed books or materials from the school libraries will be subject to appropriate fines.

Any fees, fines, and/or other charges collected by members of the staff shall be turned in to the Treasurer within one (1) business day after collection.

In accordance with R.C. 3313.642, failure to pay fees and fines may result in the withholding of grades and credit. In the event the above course of action does not result in the fee being collected, the Board authorizes the Treasurer to take the student and/or his/her parents to Small Claims Court for collection. Under no circumstances will the Board withhold the grades, credits, official transcripts, diploma, IEPs, or Section 504 Plans of a student for nonpayment of fees for materials used in the course of instruction, if a complaint has been filed at any time in a juvenile court alleging that the student is an abused, neglected, or dependent child, or if the student has been adjudicated an abused, neglected, or dependent child. Further, the Board will transfer immediately the grades, credits, official transcripts, IEPs, or Section 504 Plans of a student upon the receipt of either another district's or school's request for those records pursuant to R.C. 3313.672, or a juvenile judge's order under R.C. 2151.272. The Superintendent may request a copy of any order regarding a child's custody or placement issued pursuant to a complaint filed under R.C. 2151.27. The Board, however, will not withhold records required to be transferred pursuant to this paragraph pending receipt of a copy of the order.

For convenience to families, the Board of Education may enter into an agreement with one or more credit card/online payment processing vendors to facilitate online payment of fees, fines, and charges. Parents/guardians or students may elect but are not required to make payments online. Vendors will comply with all Board policies and procedures related to confidentiality and security of information transmitted electronically. Payees will be notified of any processing or other nominal fees that may be charged for use of an online payment system before the transaction is completed.

Annually the District will report to the Ohio Department of Education the number of students for whom it sent transcripts pursuant to R.C. 3313.642(D), and the total amount of unpaid fees lost due to compliance with that provision.

Nothing in this policy restricts the right of access of a parent or student to school records or to receive copies of such records, as required by Federal and State laws.

Revised 2/9/15

**© Neola 2020**

Legal            R.C. 2151.272, 3313.642, 3329.06, 9.38

                  National School Lunch Act, 60 Stat. 230 (1946), 42 U.S.C. 1751 (as amended)

                  Child Nutrition Act of 1966, 80 Stat. 885, 42 U.S.C. 1771

BOE 485



| | |
|---|---|
| Book | Policy Manual |
| Section | 6000 Finances |
| Title | WAIVER OF SCHOOL FEES |
| Code | po6152.01 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | January 11, 2021 |

### 6152.01 - **WAIVER OF SCHOOL FEES**

The Bethel Local School District may waive fees assessed by the District for students who demonstrate a serious financial need. The Superintendent may, as deemed necessary, establish additional procedures to supplement the procedures established in this policy regarding the requests for the waiver of fees.

**Eligibility Standards**

Students eligible for a waiver of school fees include, but are not limited to, the following:

   A. Students who qualify for aid under Ohio Works First (R.C. 5107) or Disability Assistance (R.C. 5115).

   B. Students who qualify for free lunch under the National School Lunch Act and the Child Nutrition Act of 1966.

   C. Students who qualify for free lunches or breakfasts under the School Free Lunch Program Act.

   D. Students who are eligible to receive reduced-price lunch or breakfast.

   E. Students whose families have suffered very significant losses of income due to severe illness or injury in the family or unusual expenses including, but not limited to, fire, flood, or storm damage.

**Notification to Parents**

   A. Annually the substance of this policy shall be communicated in writing to the parent(s) or guardian of all students in the District.

   B. The first bill or notice sent to parents or guardians who owe fees shall state:

      1. The District will waive fees for persons unable to afford them in accordance with its policy.

      2. The procedure for applying for a fee waiver, and the name, address, and telephone number of the person to contact for information concerning a fee waiver.

**Procedures for Resolution of Disputes**

   A. A parent(s) or guardian who cannot pay school fees may write a letter requesting a waiver of fees to the Superintendent. The letter must contain the following:

      1. name(s) of student(s)

BOE 486

2. name of parent(s) or guardian(s)

3. address of parent(s) or guardian(s)

4. phone number of parent(s) or guardian(s)

5. school where child(ren) attend(s)

6. reason for request for waiver of fees

The Superintendent shall have the authority to review the waiver request and request such further information, if any, as s/he deems necessary in order to make a decision on that request.

B. No fee shall be collected from any parent(s) or guardian who is seeking a fee waiver in accordance with the District's policy until the District has acted on the initial request or appeal (if any is made), and the parent(s) or guardian have been notified of the decision.

C. If the Superintendent denies a request for fee waiver, then a copy of the decision shall be mailed to the parent(s) or guardian within fifteen (15) school days of receipt of the request. The decision shall state the reason for the denial and shall inform the parent(s) or guardian of the right to appeal, including the process and timelines for that action. The denial notice shall also include a statement informing the parent(s) or guardian that reapplication may be made for a waiver any time during the school year, if circumstances change. The decision of the Superintendent is final.

**Nondiscrimination**

The Board expects all staff members to exercise the utmost care to see that, as a result of their actions or comments, students cannot differentiate between those students whose parents are unable to purchase required instructional materials or pay required fees and those whose parents can.

Revised 4/12/10

**© Neola 2020**

Legal        R.C. 3313.642

National School Lunch Act, 60 Stat. 230 (1946), 42 U.S.C. 1751 (as amended)

Child Nutrition Act of 1966, 80 Stat. 885, 42 U.S.C. 1771

BOE 487



| | |
|---|---|
| Book | Policy Manual |
| Section | 7000 Property |
| Title | WEB ACCESSIBILITY, CONTENT, APPS, AND SERVICES |
| Code | po7540.02 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | May 10, 2021 |

7540.02 - **WEB ACCESSIBILITY, CONTENT, APPS, AND SERVICES**

  A. **Creating Content for Web Pages/Sites, Apps and Services**

The Board of Education authorizes staff members and students to create content, apps, and services (see Bylaw 0100 Definitions) that will be hosted by the Board on its servers or District-affiliated servers and/or published on the Internet.

The content, apps, and services must comply with State and Federal law (e.g., copyright laws, Children's Internet Protection Act (CIPA), Section 504 of the Rehabilitation Act of 1973 (Section 504), Americans with Disabilities Act (ADA), and Children's Online Privacy Protection Act (COPPA)), and reflect the professional image/brand of the District, its employees, and students. Content, apps, and services must be consistent with the Board's Mission Statement and staff-created content, apps, and services are subject to prior review and approval of the Superintendent before being published on the Internet and/or used with students.

Student-created content, apps, and services are subject to Policy 5722 - School-Sponsored Student Publications and Productions.

The creation of content, apps, and services by students must be done under the supervision of a professional staff member.

  B. **Purpose of Content of District Web Pages/Sites, Apps, and Services**

The purpose of content, apps, and services hosted by the Board on its servers or District-affiliated servers is to educate, inform, and communicate. The following criteria shall be used to guide the development of such content, apps, and services:

    1. **Educate**

Content should be suitable for and usable by students and teachers to support the curriculum and the Board's Objectives as listed in the Board's Strategic Plan.

    2. **Inform**

Content may inform the community about the school, teachers, students, or departments, including information about curriculum, events, class projects, student activities, and departmental policies.

    3. **Communicate**

Content may communicate information about the plans, policies, and operations of the District to members of the public and other persons who may be affected by District matters.

BOE 488

The information contained on the Board's website(s) should reflect and support the Board's Mission Statement, Educational Philosophy, and the School Improvement Process.

When the content includes a photograph or personally identifiable information relating to a student, the Board will abide by the provisions of Policy 8330 - Student Records.

Under no circumstances is District-created content, apps, and services, to be used for commercial purposes, advertising, political lobbying or to provide financial gains for any individual. Included in this prohibition is the fact no content contained on the District's web site may: (1) include statements or other items that support or oppose a candidate for public office, the investigation, prosecution or recall of a public official, or passage of a tax levy or bond issue; (2) link to a web site of another organization if the other web site includes such a message; or (3) communicate information that supports or opposes any labor organization or any action by, on behalf of, or against any labor organization.

Under no circumstances is staff member-created content, apps, and services,  including personal web pages/sites, to be used to post student progress reports, grades, class assignments, or any other similar class-related material. Employees are required to use the Board-specified website, apps, or service for the purpose of conveying information to students and/or parents.

Staff members are prohibited from requiring students to go to the staff member's personal web pages/sites (including, but not limited to, their Facebook, Instagram, or Pinterest pages) to check grades, obtain class assignments and/or class-related materials, and/or to turn in assignments.

If a staff member creates content, apps, and services related to his/her class, it must be hosted on the Board's server or a District-affiliated server.

Unless the content, apps, and services contains student personally identifiable information, Board websites, apps, and services that are created by students and/or staff members that are posted on the Internet should not be password protected or otherwise contain restricted access features, whereby only employees, student(s), or other limited groups of people can access the site. Community members, parents, employees, staff, students, and other web site users will generally be given full access to the Board's website(s), apps, and services.

Web content, apps, and services should reflect an understanding that both internal and external audiences will be viewing the information.

School web pages/sites, apps, and services must be located on Board-owned or District-affiliated servers.

The Superintendent shall prepare administrative guidelines defining the rules and standards applicable to the use of the Board's web site and the creation of content, apps, and services by staff and students.

The Board retains all proprietary rights related to the design of content, apps, and services that are hosted on Board-owned or District-affiliated servers, absent written agreement to the contrary.

Students who want their class work to be displayed on the Board's web site must have written parent permission and expressly license its display without cost to the Board.

Prior written parental permission is necessary for a student to be identified by name on the Board's web site.

C. **Website Accessibility**

The District is committed to providing persons with disabilities an opportunity equal to that of persons without disabilities to participate in the District's programs, benefits, and services, including those delivered through electronic and information technology, except where doing so would impose an undue burden or create a fundamental alteration. The District is further committed to ensuring persons with disabilities are able to acquire the same information, engage in the same interactions, and enjoy the same benefits and services within the same timeframe as persons without a disability, with substantially equivalent ease of use; that they are not excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in any District programs, services, and activities delivered online, as required by Section 504 and Title II of the ADA and their implementing regulations; and that they receive effective communication of the District's programs, services, and activities delivered online.

The District adopts this policy to fulfill this commitment and affirm its intention to comply with the requirements of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, 34 C.F.R. Part 104, Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. 12131, and 28 C.F.R. Part 35 in all respects.

1. **Technical Standards**

The District will adhere to the technical standards of compliance identified at www.bethelk12.org. The District

BOE 489

measures the accessibility of online content and functionality according to the World Wide Web Consortium's Web Content Accessibility Guidelines (WCAG) 2.0 Level AA, and the Web Accessibility Initiative - Accessible Rich Internet Applications Suite (WAI-ARIA 1.1) for web content.

2. **Web Accessibility Coordinator**

   The Board designates its Network Director as the District's web accessibility coordinator(s). That individual(s) is responsible for coordinating and implementing this policy.

   The Board commits to providing the Web Accessibility Coordinator with sufficient resources and authority to coordinate and implement this policy and any corresponding guideline(s) subject to oversight by the Superintendent and the Board.

   The District's web accessibility coordinator(s) can be reached at Jared Ratliff, Network Director, ratliffj@bethelk12.org or 937-845-9414.

3. **Third Party Content**

   Links included on the Board's website(s), services, and apps that pertain to its programs, benefits, and/or services must also meet the above criteria and comply with State and Federal law (e.g. copyright laws, CIPA, Section 504, ADA, and COPPA). While the District strives to provide access through its website to online content provided or developed by third parties (including vendors, video-sharing websites, and other sources of online content) that is in an accessible format, that is not always feasible. The District's administrators and staff, however, are aware of this requirement with respect to the selection of online content provided to students. The District's web accessibility coordinator or his/her designees will vet online content available on its website that is related to the District's programs, benefits, and/or services for compliance with this criteria for all new content placed on the District's website after adoption of this policy.

   Nothing in the preceding paragraph, however, shall prevent the District from including links on the Board's website(s) to:

   a. recognized news/media outlets (e.g., local newspapers' websites, local television stations' websites); or

   b. websites, services, and/or apps that are developed and hosted by outside vendors or organizations that are not part of the District's program, benefits, or services.
   The Board recognizes that such third party websites may not contain age-appropriate advertisements that are consistent with the requirements of Policy 9700.01, AG 9700B, and State and Federal law.

4. **Regular Audits**

   The District, under the direction of the web accessibility coordinator(s) or his/her/their designees, will, at regular intervals, audit the District's online content and measure this content against the technical standards adopted above.

   This audit will occur no less than once every two (2) years.

   If problems are identified through the audit, such problems will be documented, evaluated, and, if necessary, remediated within a reasonable period of time.

5. **Reporting Concerns or Possible Violations**

   If any student, prospective student, employee, guest, or visitor believes that the District has violated the technical standards in its online content, s/he may contact the web accessibility coordinator with any accessibility concerns. S/He may also file a formal complaint utilizing the procedures set out in Board Policy 2260 and Policy 2260.01 relating to Section 504 and Title II.

D. **Instructional Use of Apps and Services and Apps**

   The Board authorizes the use of apps and services to supplement and enhance learning opportunities for students either in the classroom or for extended learning outside the classroom.

   The Board requires the Curriculum Director pre-approve each app and/or service that a teacher intends to use to supplement and enhance student learning. To be approved, the app and/or service must have a FERPA-compliant privacy policy, as well as comply with all requirements of the COPPA and CIPA.

   The Board further requires the use of a Board-issued e-mail address in the login process.

BOE 490

E. **Training**

The District will provide periodic training for its employees who are responsible for creating or distributing information with online content so that these employees are aware of this Policy and understand their roles and responsibilities with respect to web design, documents and multimedia content.

Such training shall be facilitated by an individual with sufficient knowledge, skill and experience to understand and employ the technical standards set forth in Board policies and administrative guideline(s).

F. **One-Way Communication Using District Content, Apps, and Services**

The District is authorized to use web pages/sites, apps and services to promote school activities and inform stakeholders and the general public about District news and operations.

Such communications constitute public records that will be archived.

When the Board or Superintendent designates communications distributed via District web pages/sites, apps and services to be one-way communication, public comments are not solicited or desired, and the website, app or service is to be considered a nonpublic forum.

If unsolicited public comments can be automatically withheld, the District will retain the comments in accordance with its adopted record retention schedule (see AP 8310A – Requests for Public Records and AG 8310E - Record Retention and Disposal), but it will not review or consider those comments.

Revised 7/13/09
Revised 12/8/14
Revised 4/8/19

© **Neola 2019**


Legal                        R.C. 9.03

O.A.G. Opinion No. 2002-01

BOE 491



| | |
|---|---|
| Book | Policy Manual |
| Section | 7000 Property |
| Title | STAFF TECHNOLOGY ACCEPTABLE USE AND SAFETY |
| Code | po7540.04 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | November 6, 2017 |

### 7540.04 - **STAFF TECHNOLOGY ACCEPTABLE USE AND SAFETY**

Technology has fundamentally altered the ways in which information is accessed, communicated, and transferred in society. As a result, educators are continually adapting their means and methods of instruction, and the way they approach student learning, to incorporate the vast, diverse, and unique resources available through the Internet. The Board of Education provides Technology and Information Resources (as defined by Bylaw 0100) to support the educational and professional needs of its staff and students. The Board provides staff with access to the Internet for limited educational purposes only and utilizes online educational services/apps to enhance the instruction delivered to its students and to facilitate the staff's work. The District's Internet system does not serve as a public access service or a public forum, and the Board imposes reasonable restrictions on its use consistent with its limited educational purpose.

The Board regulates the use of District Technology and Information Resources by principles consistent with applicable local, State, and Federal laws, and the District's educational mission. This policy and its related administrative guidelines and any applicable employment contracts and collective bargaining agreements govern the staffs' use of the District's Technology and Information Resources and staff's personal communication devices when they are connected to the District's computer network, Internet connection and/or online educational services/apps, or when used while the staff member is on Board-owned property or at a Board-sponsored activity (see Policy 7530.02).

Users are required to refrain from actions that are illegal (such as libel, slander, vandalism, harassment, theft, plagiarism, inappropriate access, and the like) or unkind (such as personal attacks, invasion of privacy, injurious comment, and the like). Because its Technology Resources are not unlimited, the Board has also instituted restrictions aimed at preserving these resources, such as placing limits on use of bandwidth, storage space, and printers.

Users have no right or expectation to privacy when using District Technology and Information Resources (including, but not limited to, privacy in the content of their personal files, e-mails, and records of their online activity when using the District's computer network and/or Internet connection).

Staff members are expected to utilize District Technology and Information Resources to promote educational excellence in our schools by providing students with the opportunity to develop the resource sharing, innovation, and communication skills and tools that are essential to both life and work. The Board encourages the faculty to develop the appropriate skills necessary to effectively access, analyze, evaluate, and utilize these resources in enriching educational activities. The instructional use of the Internet and online educational services will be guided by Board' Policy 2520 - Selection of Instructional Materials and Equipment.

The Internet is a global information and communication network that brings incredible education and information resources to our students. The Internet connects computers and users in the District with computers and users worldwide. Through the Internet, students and staff can access relevant information that will enhance their learning and the education process. Further, District Technology Resources provide students and staff with the opportunity to communicate with other people from throughout the world. Access to such an incredible quantity of information and resources brings with it, however, certain unique challenges and responsibilities.

BOE 492

First, , the Board may not be able to technologically limit access, through its Technology Resources , to only those services and resources that have been authorized for the purpose of instruction, study and research related to the curriculum. Unlike in the past when educators and community members had the opportunity to review and screen materials to assess their appropriateness for supporting and enriching the curriculum according to adopted guidelines and reasonable selection criteria (taking into account the varied instructional needs, learning styles, abilities, and developmental levels of the students who would be exposed to them), access to the Internet, because it serves as a gateway to any publicly available file server in the world, opens classrooms and students to electronic information resources that may not have been screened by educators for use by students of various ages.

Pursuant to Federal law, the Board has implemented technology protection measures,  that protect against (e.g., filter or block) access to visual displays/depictions/materials that are obscene, constitute child pornography, and/or are harmful to minors, as defined by the Children's Internet Protection Act. At the discretion of the Board or Superintendent, the technology protection measures may also be configured to protect against access to other material considered inappropriate for students to access. The Board also utilizes software and/or hardware to monitor online activity of staff members to restrict access to child pornography and other material that is obscene, objectionable, inappropriate and/or harmful to minors. The technology protection measures, may not be disabled at any time that students may be using the District Technology Resources, if such disabling will cease to protect against access to materials that are prohibited under the Children's Internet Protection Act. Any staff member who attempts to disable the technology protection measures without express written consent of an appropriate administrator will be subject to disciplinary action, up to and including termination.

The Superintendent or Network Administrator may temporarily or permanently unblock access to websites  or online educational services/apps containing appropriate material, if access to such sites has been inappropriately blocked by the technology protection measures. The determination of whether material is appropriate or inappropriate shall be based on the content of the material and the intended use of the material, not on the protection actions of the technology protection measures. The Superintendent or Network Administrator may also disable the technology protection measures to enable access for bona fide research or other lawful purposes.

Staff members will participate in professional development programs in accordance with the provisions of law and this policy. Training shall include:

A. the safety and security of students while using e-mail, chat rooms, social media and other forms of direct electronic communications;

B. the inherent danger of students disclosing personally identifiable information online;

C. the consequences of unauthorized access (e.g., "hacking","harvesting", "digital piracy", "data mining", etc.), cyberbullying and other unlawful or inappropriate activities by students or staff online; and

D. unauthorized disclosure, use, and dissemination of personally-identifiablel information regarding minors.

Furthermore, staff members shall provide instruction for their students regarding the appropriate use of technology and online safety and security as specified above, and staff members will monitor students' online activities while at school.

Monitoring may include, but is not necessarily limited to, visual observations of online activities during class sessions; or use of specific monitoring tools to review browser history and network, server, and computer logs.

The disclosure of personally identifiable information about students online is prohibited.

Building principals are responsible for providing training so that Internet users under their supervision are knowledgeable about this policy and its accompanying guidelines. The Board expects that staff members will provide guidance and instruction to students in the appropriate use of the District Technology Resources. Such training shall include, but not be limited to, education concerning appropriate online behavior, including interacting with other individuals on social media including in chat rooms and cyberbullying awareness and response. All users of District Technology Resources are required to sign a written agreement to abide by the terms and conditions of this policy and its accompanying guidelines.

Staff will be assigned a school email address that they are required to utilize for all school-related electronic communications, including those to students, parents and other staff members.

With prior approval from the Superintendent or Principal, staff may direct students who have been issued school- assigned email accounts to use those accounts when signing-up/registering for access to various online educational services, including mobile applications/apps that will be utilized by the students for educational purposes under the teacher's supervision.

Staff members are responsible for good behavior when using the District Technology and Information Resources - i.e., behavior comparable to that expected when they are in classrooms, school hallways, and other school premises and school sponsored

BOE 493

events. Communications on the Internet are often public in nature. The Board does not approve any use of its Technology and Information Resources that is not authorized by or conducted strictly in compliance with this policy and its accompanying guidelines.

Staff members may only use District Technology Resources to access or use social media if it is done for educational or business-related purposes.

General school rules for behavior and communication apply.

Users who disregard this policy and its accompanying guidelines may have their use privileges suspended or revoked, and disciplinary action taken against them.  Users are personally responsible and liable, both civilly and criminally, for uses of District Technology and Information Resources that are not authorized by this policy and its accompanying guidelines.

The Board designates the Superintendent and Network Administrator as the administrators responsible for initiating, implementing, and enforcing this policy and its accompanying guidelines as they apply to staff members' use of District Technology and Information Resources.

**Social Media Use**

An employee's personal or private use of social media, may have unintended consequences. While the Board respects its employees' First Amendment rights, those rights do not include permission to post inflammatory comments that could compromise the District's mission, undermine staff relationships, or cause a substantial disruption to the school environment. This warning includes staff members' online conduct that occurs off school property including from the employee's private computer. Postings to social media should be done in a manner sensitive to the staff member's professional responsibilities.

In addition, Federal and State confidentiality laws forbid schools and their employees from using or disclosing student education records without parental consent. See Policy 8330. Education records include a wide variety of information; posting personally identifiable information about students is not permitted. Staff members who violate State and Federal confidentiality laws or privacy laws related to the disclosure of confidential student or employee information may be disciplined.

Staff members retain rights of communication for collective bargaining purposes and union organizational activities.

Revised 4/12/10
Revised 6/30/11
Revised 7/9/12
Revised 12/8/14

**© Neola 2017**

| Legal | P.L. 106-554, Children's Internet Protection Act of 2000 |
|---|---|
| | 47 U.S.C. 254(h), (1), Communications Act of 1934, as amended (2003) |
| | 20 U.S.C. 6801 et seq., Part F, Elementary and Secondary Education Act of 1965, as amended (2003) |
| | 18 U.S.C. 1460 |
| | 18 U.S.C. 2246 |
| | 18 U.S.C. 2256 |
| | 20 U.S.C. 6777, 9134 (2003) |
| | 76 F.R. 56295, 56303 |

BOE 494



| | |
|---|---|
| Book | Policy Manual |
| Section | 8000 Operations |
| Title | STUDENT RECORDS |
| Code | po8330 |
| Status | Active |
| Adopted | March 10, 2008 |
| Last Revised | December 13, 2021 |

**8330 - STUDENT RECORDS**

Education must collect, retain, and use information about individual students. Simultaneously, the Board recognizes the need to safeguard students' privacy and restrict access to students' personally identifiable information.

Student "personally identifiable information" ("PII") includes, but is not limited to: the student's name; the name of the student's parent or other family members; the address of the student or student's family; a personal identifier, such as the student's social security number, student number, or biometric record; other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or information requested by a person who the District reasonably believes knows the identity of the student to whom the education record relates.

The Board is responsible for the records of all students who attend or have attended schools in this District. Only records mandated by the State or Federal government and/or necessary and relevant to the function of the School District or specifically permitted by this Board will be compiled by Board employees.

In all cases, permitted, narrative information in student records shall be objectively-based on the personal observation or knowledge of the originator.

Student records shall be available only to students and their parents, eligible students, designated school officials who have a legitimate educational interest in the information, or to other individuals or organizations as permitted by law.

The term "parents" includes legal guardians or other persons standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child). The term "eligible student" refers to a student who is eighteen (18) years of age or older, or a student of any age who is enrolled in a postsecondary institution.

Both parents shall have equal access to student records unless stipulated otherwise by court order or law. In the case of eligible students, parents may be allowed access to the records without the student's consent, provided the student is considered a dependent under section 152 of the Internal Revenue Code.

A school official is a person employed by the Board as an administrator, supervisor, teacher/instructor (including substitutes), or support staff member (including health or medical staff and law enforcement unit personnel); and a person serving on the Board. The Board further designates the following individuals and entities as "school officials" for the purpose of FERPA:

    A. persons or companies with whom the Board has contracted to perform a specific task (such as an attorney, auditor, insurance representative, or medical consultant), and

    B. contractors, consultants, volunteers or other parties to whom the Board has outsourced a service or function otherwise performed by the Board employees (e.g. a therapist, authorized information technology (IT) staff, and approved online

BOE 495

educational service providers)

The above-identified outside parties must (a) perform institutional services or functions for which the Board would otherwise use it employees, (b) be under the direct control of the Board with respect to the use and maintenance of education records, and (c) be subject to the requirements of 34 C.F.R. 99.33(a) governing the use and re-disclosure of PII from education records.

Finally, a parent or student serving on an official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his/her tasks (including volunteers) is also considered a "school official" for purposes of FERPA provided s/he meets the above-referenced criteria applicable to other outside parties.

"Legitimate educational interest" is defined as a "direct or delegated responsibility for helping the student achieve one (1) or more of the educational goals of the District" or if the record is necessary in order for the school official to perform an administrative, supervisory, or instructional task or to perform a service or benefit for the student or the student's family. The Board directs that reasonable and appropriate methods (including but not limited to physical and/or technological access controls) are utilized to control access to student records and to make certain that school officials obtain access to only those education records in which they have legitimate educational interest.

The Board authorizes the administration to:

A. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a private or public school or school district in which a student of this District is enrolled, seeks or intends to enroll, or is instructed to enroll, on a full-time or part-time basis, upon condition that:

    1. a reasonable attempt is made to notify the student's parent or eligible student of the transfer (unless the disclosure is initiated by the parent or eligible student; or the Board's annual notification - Form 8330 F9 - includes a notice that the Board will forward education records to other agencies or institutions that have requested the records and in which the student seeks or intends to enroll or is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer);

    2. the parent or eligible student, upon request, receives a copy of the record; and

    3. the parent or eligible student, upon request, has an opportunity for a hearing to challenge the content of the record;

B. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a juvenile detention facility in which the student has been placed, or a juvenile court that has taken jurisdiction of the student;

C. forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a public school or school district in which a student in foster care is enrolled.  Such records shall be transferred within one (1) school day of the enrolling school's request;

D. provide "personally-identifiable" information to appropriate parties, including parents of an eligible student, whose knowledge of the information is necessary to protect the health or safety of the student or other individuals, if there is an articulable and significant threat to the health or safety of a student or other individuals, considering the totality of the circumstances;

E. report a crime committed by a child to appropriate authorities, and, with respect to reporting a crime committed by a student with a disability, to transmit copies of the student's special education and disciplinary records to the authorities for their consideration;

F. release de-identified records and information in accordance with Federal regulations;

G. disclose personally identifiable information from education records, without consent, to organizations conducting studies "for, or on behalf of" the District for purposes of developing, validating or administering predictive tests, administering student aid programs, or improving instruction;

Information disclosed under this exception must be protected so that students and parents cannot be personally identified by anyone other than representative of the organization conducting the study, and must be destroyed when no longer needed for the study. In order to release information under this provision, the District will enter into a written agreement with the recipient organization that specifies the purpose of the study. (See Form 8330 F14.) Further, the following personally identifiable information will not be disclosed to any entity: a student or his/her family member's social security number(s); religion; political party affiliation; voting history; or biometric information.

While the disclosure of personally identifiable information (other than social security numbers, religion, political party

BOE 496

affiliation, voting record, or biometric information) is allowed under this exception, it is recommended that de-identified information be used whenever possible. This reduces the risk of unauthorized disclosure.

H. disclose personally identifiable information from education records without consent, to authorized representatives of the Comptroller General, the Attorney General, and the Secretary of Education, as well as State and local educational authorities;

The disclosed records must be used to audit or evaluate a Federal or State supported education program, or to enforce or comply with Federal requirements related to those education programs. A written agreement between the parties is required under this exception. (See Form 8330 F16)

This written agreement must include: (1) designation of the receiving entity as an authorized representative; (2) specification of the information to be disclosed; (3) specification that the purpose of the disclosure is to carry out an audit or evaluation of a government-supported educational program or to enforce or comply with the program's legal requirements; (4) a summary of the activity that includes a description of methodology and an explanation of why personally identifiable information is necessary to accomplish the activity; (5) a statement requiring the organization to destroy all personally identifiable information when it is no longer needed for the study, along with a specific time period in which the information must be destroyed; and (6) a statement of policies and procedures that will protect personally identifiable information from further disclosure or unauthorized use.

Under the audit exception, the District will use "reasonable methods" to verify that the authorized representative complies with FERPA regulations. Specifically, the District will verify, to the greatest extent practical, that the personally identifiable information is used only for the audit, evaluation or enforcement of a government-supported educational program. The District will also ascertain the legitimacy of the audit or evaluation and will only disclose the specific records that the authorized representative needs.

Further, the District will require the authorized representative to use the records only for the specified purpose and not to disclose the information any further, such as for another audit or evaluation. Finally, the District will verify that the information is destroyed when no longer needed for the audit, evaluation or compliance activity.

I. request each person or party requesting access to a student's record to abide by Federal regulations and State laws concerning the disclosure of information.

The Board will comply with a legitimate request for access to a student's records within a reasonable period of time but not more than forty-five (45) days after receiving the request or within such shorter period as may be applicable to students with disabilities. Upon the request of the viewer, a record shall be reproduced, unless said record is copyrighted, or otherwise restricted, and the viewer may be charged a fee equivalent to the cost of handling and reproduction. Based upon reasonable requests, viewers of education records will receive explanation and interpretation of the records.

The Board shall maintain a record of each request for access and each disclosure of personally identifiable information. Such disclosure records will indicate the student, person viewing the record, their legitimate interest in the information, information disclosed, date of disclosure, and date parental/eligible student consent was obtained (if required).

Only "directory information" regarding a student shall be released to any person or party, other than the student or his/her parent, without the written consent of the parent, or, if the student is an eligible student, without the written consent of the student, except to those persons or parties stipulated by the Board's policy and administrative guidelines and/or those specified in the law.

**DIRECTORY INFORMATION**

Each year the Superintendent shall provide public notice to students and their parents of the District's intent to make available, upon request, certain information known as "directory information." The Board designates as student "directory information": a student's name; address; telephone number; date and place of birth; major field of study; participation in officially-recognized activities and sports; height and weight, if a member of an athletic team; dates of attendance; date of graduation; or awards received.

The Board designates school-assigned e-mail accounts as "directory information" for the limited purpose of facilitating students' registration for access to various online educational services, including mobile applications/apps that will be utilized by the student for educational purposes and for inclusion in internal e-mail address books.

School-assigned e-mail accounts shall not be released as directory information beyond this/these limited purpose(s) and to any person or entity but the specific online educational service provider and internal users of the District's Education Technology.

Directory information shall not be provided to any organization for profit-making purposes.

BOE 497

Parents and eligible students may refuse to allow the Board to disclose any or all of such "directory information" upon written notification to the Board within five (5) days after receipt of the Superintendent's annual public notice.

In accordance with Federal and State law, the Board shall release the names, addresses, District-assigned e-mail addresses (if available), and telephone listings of secondary students to a recruiting officer for any branch of the United States Armed Forces or an institution of higher education who requests such information. A secondary school student or parent of the student may request in writing that the student's name, address, District-assigned e-mail addresses (if available), and telephone listing not be released without prior consent of the parent(s)/eligible student. The recruiting officer is to sign a form indicating that "any information received by the recruiting officer shall be used solely for the purpose of informing students about military service and shall not be released to any person other than individuals within the recruiting services of the Armed Forces." The Superintendent is authorized to charge mailing fees for providing this information to a recruiting officer.

Whenever consent of the parent(s)/eligible student is required for the inspection and/or release of a student's health or education records or for the release of "directory information," either parent may provide such consent unless agreed to otherwise in writing by both parents or specifically stated by court order. If the student is under the guardianship of an institution, the Superintendent shall appoint a person who has no conflicting interest to provide such written consent.

The Board may disclose "directory information," on former students without student or parental consent, unless the parent or eligible student previously submitted a request that such information not be disclosed without their prior written consent.

The Board shall not permit the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

**INSPECTION OF INFORMATION COLLECTION INSTRUMENT**

The parent of a student or an eligible student has the right to inspect upon request any instrument used in the collection of personal information before the instrument is administered or distributed to a student. Personal information for this section is defined as individually identifiable information including a student or parent's first and last name, a home or other physical address (including street name and the name of the city or town), a telephone number, or a Social Security identification number. In order to review the instrument, the parent or eligible student must submit a written request to the building principal at least six (6) business days before the scheduled date of the activity. The instrument will be provided to the parent or eligible student within five (5) business days of the principal receiving the request.

The Superintendent shall directly notify the parent(s) of a student and eligible students, at least annually at the beginning of the school year, of the specific or approximate dates during the school year when such activities are scheduled or expected to be scheduled.

This section does not apply to the collection, disclosure, or use of personal information collected from students for the exclusive purpose of developing, evaluating, or providing educational products or services for, or to, students or educational institutions, such as the following:

    A. college or other postsecondary education recruitment, or military recruitment

    B. book clubs, magazine, and programs providing access to low-cost literary products

    C. curriculum and instructional materials used by elementary and secondary schools

    D. tests and assessments used by elementary and secondary schools to provide cognitive, evaluative, diagnostic, clinical, aptitude, or achievement information about students (or to generate other statistically useful data for the purpose of securing such tests and assessments) and the subsequent analysis and public release of the aggregate data from such tests and assessments

    E. the sale by students of products or services to raise funds for school- related or education-related activities

    F. student recognition programs

The Superintendent is directed to prepare administrative guidelines so that students and parents are adequately informed each year regarding their rights to:

    A. inspect and review the student's education records;

    B. request amendments if the parent believes the record is inaccurate, misleading, or violates the student's privacy rights;

    C. consent to disclosures of personally-identifiable information contained in the student's education records, except to those disclosures allowed by the law;

BOE 498

D. challenge Board noncompliance with a parent's request to amend the records through a hearing;

E. file a complaint with the United States Department of Education;

F. obtain a copy of the Board's policy and administrative guidelines on student records.

The Superintendent shall also develop procedural guidelines for:

A. the proper storage and retention of records including a list of the type and location of records;

B. informing Board employees of the Federal and State laws concerning student records.

The Board authorizes the use of the microfilm process or electromagnetic processes of reproduction for the recording, filing, maintaining, and preserving of records.

No liability shall attach to any member, officer, or employee of this Board as a consequence of permitting access or furnishing student records in accordance with this policy and regulations.

Any entity receiving personally identifiable information pursuant to a study, audit, evaluation or enforcement/compliance activity must comply with all FERPA regulations. Further, such an entity must enter into a written contract with the Board of Education delineating its responsibilities in safeguarding the disclosed information. Specifically, the entity must demonstrate the existence of a sound data security plan or data stewardship program, and must also provide assurances that the personally identifiable information will not be redisclosed without prior authorization from the Board. Further, the entity conducting the study, audit, evaluation or enforcement/compliance activity is required to destroy the disclosed information once it is no longer needed or when the timeframe for the activity has ended, as specified in its written agreement with the Board of Education. See Form 8330 F14 and Form 8330 F16 for additional contract requirements.

**SAFE AT HOME/ADDRESS CONFIDENTIALITY PROGRAM**

If a parent (or adult student), presents information to the District certifying that the parent (or adult student), his/her child, or a member of the parent's household is a participant in the Safe at Home/Address Confidentiality Program administered by the Secretary of State, the Board shall refrain from including the student's actual/confidential residential address in any student records or files (including electronic records and files) or disclosing the student's actual/confidential residential address when releasing student records. Since student records are available to non-custodial parents, designated school officials who have a legitimate educational interest in the information, and other individuals or organizations as permitted by law (including the public in some situations), the Board shall only list the address designated by the Secretary of State to serve as the student's address in any student records or files, including electronic records and files. Further, the Board shall use the student's designated address for any and all communications and correspondence between the Board and the parent(s) of the student (or adult student). The student's actual/confidential residential address shall be maintained in a separate confidential file that is not accessible to the public or any employees without a legitimate purpose.

Although the student's actual/confidential address will not be available for release as directory information, the parent (or adult student) may also request that the student's name and telephone number be withheld from any release of directory information. Additionally, if applicable, the student's parent's school, institution of higher education, business, or place of employment (as specified on an application to be a program participant or on a notice of change of name or address) shall be maintained in a confidential manner.

If a non-custodial parent presents a subpoena or court order stating that s/he should be provided with copies or access to a student's records, the District will redact the student's confidential address and telephone number from the student's records before complying with the order or subpoena. The District will also notify the custodial/residential parent of the release of student records in accordance with the order or subpoena.

The intentional disclosure of student's actual/confidential residential address is prohibited.  Any violations could result in disciplinary action or criminal prosecution.

2021 Solomon Amendment: Subtitle C- General Service Authorities and Correction of Military Records SEC. 521.

Revised 7/13/09
Revised 7/9/12
Revised 12/8/14
Revised 10/10/16
Revised 4/10/17

**© Neola 2021**

BOE 499

Legal            R.C. 9.01, 111.41, 111.42, 111.43, 111.46, 111.47, 111.99

                 R.C. 149.41, 149.43, 1347 et seq., 3313.33, 3319.321

                 34 C.F.R. Part 99

                 20 U.S.C., Section 1232f through 1232i (FERPA)

                 26 U.S.C. 152

                 20 U.S.C. 1400 et seq., Individuals with Disabilities Education Improvement Act

                 20 U.S.C. 7165(b)

                 20 U.S.C. 7908

BOE 500



| Book | Policy Manual |
|------|---------------|
| Section | 9000 Relations |
| Title | PARENT ORGANIZATIONS |
| Code | po9210 |
| Status | Active |
| Adopted | March 10, 2008 |

**9210 - PARENT ORGANIZATIONS**

The Board of Education supports all organizations of parents whose objectives are to promote the educational experiences of District students. However, in using the name of the District or its schools and in organizing a group whose identity derives from a school(s) of this District, the parental organization thereby shares responsibility with this Board for the welfare of participating students.

Any new parent organization desiring to use the name or good offices of the District must obtain the approval of the Board of Education as a prerequisite to organizing.

Representatives and members of approved school-related organizations shall in all circumstances be treated by District employees as interested friends of the schools and as supporters of public education in the School District.

    A. Staff members are encouraged to join such organization(s) in their related area(s) of specialization or interest.

    B. The Board will not tolerate any undue pressure, harassment, or intimidation designed to coerce parents or teachers into membership in one (1) organization as opposed to another.

The Board relies upon approved organizations to operate in a manner consistent with public expectations for the schools and reserves the right to withdraw sponsorship from organizations, which violate the bounds of community taste.

BOE 501