# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN AND JANE DOE NO. 1, et al.,** | : | **CASE NO. 3:22-cv-00337** |
| | : | |
| **Plaintiffs,** | : | **JUDGE MICHAEL J. NEWMAN** |
| | : | |
| **vs.** | : | |
| | : | **PLAINTIFFS' RESPONSE IN** |
| **BETHEL LOCAL SCHOOL** | : | **OPPOSITION TO DEFENDANTS'** |
| **DISTRICT BOARD OF EDUCATION,** | : | **MOTION IN LIMINE** |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## INTRODUCTION

Defendants[1] filed a motion in limine (the "<u>MIL</u>") just prior to the parties' oral argument on Plaintiffs' motion for a preliminary injunction on February 7, 2022 (the "<u>PI Motion</u>"). The MIL seeks to exclude the Declaration of Jessica Franz from consideration related to Plaintiffs' PI Motion.

Defendants make blanket assertions of privilege with no argument that either the attorney client privilege or executive session privilege applies in this case. Neither privilege applies here. Defendants also level ethical allegations against Jessica Franz and Plaintiffs' counsel while ignoring basic aspects of the dispute, failing to conduct reasonable due diligence, and without citing any law. Instead of argument or legal analysis of the relevant issues, Defendants rely on a declaration from an ethics lawyer, who also provides nearly no legal argument or analysis, and merely announces his legal conclusions. Finally, Defendants use their MIL and its declarations as an opportunity to essentially argue a sur-reply to Plaintiffs' PI Motion. The Court should find that

---

[1] Bethel Local School District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin.

no privilege applies, no ethical violations occurred because no privilege applies, and that Defendants are only "prejudiced" by the Ohio Open Meetings Act (the "OMA").

## **ARGUMENT**

### I. **The Franz Declaration Contains Proper Relevant Evidence And Should Not Be Excluded.**

In general, all relevant evidence is admissible unless specifically excluded under Rule 402. Fed. R. Evid. 402. Evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *Id.* at 401.

The evidence contained in the Franz Declaration is relevant. It rebuts Defendants' argument that the new rule is not cognizable under the OMA because it was the administration's decision rather than the Board's decision. Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 20 at 665, 670–72[2]; Defs.' Mot. In Lim., Doc. 48 at 1044–45; Decl. of Justin Firks, Doc. 48-1, [hereinafter "Firks Decl."] at 1052, ¶¶ 6–10. The evidence demonstrates that members of the Board argued for the policy announced by Lydda Mansfield on January 10, 2022, made their positions known to each other as well as to the superintendent, and reached a collective agreement on the same. Decl. of Jessica Franz, Doc. 37-3 [hereinafter "Franz Decl. 1"] at 816-17, ¶¶14–21. The evidence also demonstrates that Mr. Firks—who was largely quiet in the meeting—was not the one ultimately driving the decision; it was driven by the members of the Board. *Id.* In short, the evidence directly rebuts Defendants' main argument opposing Plaintiffs' PI Motion and is properly admitted as relevant.

Despite the relevance of the evidence contained in the Franz Declaration (or because of the relevance), Defendants seek a blanket exclusion of the entire Declaration on the basis of two

---

[2] All page citations to ECF documents ("Doc.") herein denote the "PageID" page number.

claimed privileges: the executive session privilege and the attorney-client privilege. Doc. 48 at 1045–48.[3] Neither privilege applies here.

### A. The Board's December 7, 2021 Executive Session was Improper under the OMA.

As an initial matter, Defendants argue that the federal rules governing privilege apply here. Doc. 48 at 146. The federal rules for privilege require the party asserting a privilege to bear the burden of establishing the privilege. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("The burden of establishing the existence of the privilege rests with the person asserting it."); *see also Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005) (attorney client privilege); *Kamenski v. Wellington Exempted Vill. Sch.*, No. 1:14-CV-01589, 2016 WL 1732872, at *2 (N.D. Ohio May 2, 2016) (executive session privilege). Defendants make no argument that either privilege applies here but instead simply assert that the privileges apply.

As the U.S. District Court for the Northern District of Ohio found, simply because a state statute creates a privilege does not mean federal law recognizes such a privilege. "Because claims of privilege in this case are governed by federal law, Defendants' contention that Plaintiff should be barred from discovering information about executive session discussions simply because state statutes may create a privilege applicable to executive sessions lacks merit." *Kamenski*, 2016 WL 1732872, at *2. A federal court may still consider state law privileges but the rule it adopts is a component of the federal common law. *Id.* at *3 (citing *Freed v. Grand Ct. Lifestyles, Inc.*, 100 F. Supp. 2d 610, 614 (S.D. Ohio 1998)). Additionally, the court recognized that O.R.C. §§ 102.03

---

[3] Defendants purport to assert two other bases arising from ethical accusations (discussed below) but Defendants do not cite any law to exclude relevant evidence on the basis of these arguments, and the arguments do not arise from the United States Constitution, federal statute, the Federal Rules of Evidence, or other rules prescribed by the United States Supreme Court as required by Federal Rule of Evidence 402.

and 121.22 do not create an absolute privilege and that discussions outside of the protected grounds would not be privileged. *Id.*

Likewise, the U.S. District Court for the Southern District of Ohio found that a properly constituted executive session barred discovery of confidential information. *Myers v. City of Centerville*, No. 3:20-CV-00402, 2023 WL 195427, at *3 (S.D. Ohio Jan. 17, 2023); *see also Talismanic Properties, LLC v. City of Tipp City, Ohio*, No. 3:16-CV-285, 2017 WL 2544086, at *4 (S.D. Ohio June 9, 2017) (finding that the "Defendant did not violate the OMA with regard to the [] executive session" and granting a protective order over confidential information from the executive session). This is in accord with *Humphries v. Chicarelli*, 554 F.App'x 401 (6th Cir. 2014), cited by Defendants, which found that a governmental entity that was "properly in executive session" could rely on the privilege created by state law. The above cases, while standing for the proposition that a federal executive session privilege exists, do not answer the question here because, as discussed further below, there was not a proper executive session under Ohio law.

Further, the Ohio Ethics Commission has issued an advisory opinion that clarifies confidentiality for executive sessions:

> The use of executive session does not by itself create confidentiality; however, if it is <u>clearly demonstrated</u> that a public body has met <u>all</u> of the legal requirements necessary to appropriately discuss a specific matter in executive session, <u>and</u> the information is confidential by statute, or has been clearly designated as confidential when such designation is <u>warranted and necessary</u>, then the information discussed <u>may</u> be considered legally confidential under R.C. 102.03(B)[.]

Ohio Ethics Comm'n, Advisory Op. No. 2020-02 (April 17, 2020) (emphasis added). Thus, failure to clearly demonstrate that the public body met all of the legal requirements and that the information is confidential by statute (not applicable here) or has been clearly designated confidential, when that designation is both warranted and necessary, results in no privilege attaching.

Here, the Defendants fail to articulate that any of the legal requirements were met (they were not, as discussed below). The information discussed is not confidential pursuant to any statute, and Defendants make no argument that the confidential designation is both warranted and necessary. In fact, the board president publicly disclosed the only potentially confidential information at the January 10, 2022 public meeting when she read the legal advice of counsel aloud to a public gathering:

> So at the beginning of the year the district has adopted the stance I guess is the best way to put it that transgender students may use the restroom that aligns with their gender status upon advice received from our attorney.

> The statement our attorney gave to us follows: [Proceeds to disclose attorney's advice and reasoning.]

Doc. 20 at 669. This advice was also disclosed through public records requests. Second Declaration of Julie E. Byrne (hereinafter "Byrne Decl. 2") ¶¶5-7 & Exh. A to Byrne Decl. 2. Attorney advice was the only potentially confidential information disclosed in the executive session, but that advice was made public, removing any potential confidentiality of the advice or need to preserve the privilege.[4]

Defendants' December 7, 2021 executive session was improper under Ohio law for two reasons: (1) the Board discussed matters outside of its noticed reasons for going into executive session; and (2) the Board made an improper decision during executive session. Both of these prohibitions are widely understood and provided to all Ohio public bodies by the State's Attorney General. *The Open Meetings Act: An Overview*, OPEN BOOK (Ohio Att'y Gen. Off., Columbus, Ohio), Aug. 10, 2021, https://www.ohioattorneygeneral.gov/Media/Newsletters/Open-Book/August-2021/The-Open-Meetings-Act-An-Overview (emphasizing that a public body must only discuss matters noticed in its motion to enter the executive session and cannot make any

---

[4] Attorney-client privilege is discussed further below.

decisions in the executive session); *see also* Pub. Records Unit, Ohio Attorney General Office, *Ohio Sunshine Laws 2022 An Open Government Resource Manual* 121-22 (2022) (explaining the proper procedure for holding an executive session).

> **i)** **The Board's Discussion Regarding the School's Intimate Facilities was not Noticed to the Public.**

For any executive session, the OMA requires the Board to provide the public with specific notice of the matters that will be discussed. O.R.C § 121.22(G)("If a public body holds an executive session [under] (G)(2) to (8) of this section, the motion and vote to hold that executive session shall state which one or more of the approved matters listed in those divisions are to be considered at the executive session."); O.R.C. § 121.22(G)(1) (requiring the same for executive sessions under (G)(1)). In this case, the Board's discussion did not comport with the safe harbors that it noticed.

The safe harbors provided by the Board were: (G)(1) (discipline or charges against individual employees), (G)(3) (conferencing with an attorney regarding pending or imminent court action), and (G)(6) (security arrangements and emergency response protocols for the public body) for the executive session on December 7, 2021. Decl. of Tina Hageman, Doc. 48-2 [hereinafter "Hageman Decl."] at 1092-93. The Board was in executive session for nearly an hour and a half. *Id.* at 1093. The discussion was dominated by the bathroom issue. Doc. 37-3, Franz Decl. 1, at 815, ¶10. And none of the Board's safe harbors apply to that discussion. *Id.* at 816, 817, ¶¶13, 24.

To oppose the Franz Declaration, Defendants submit a declaration from Justin Firks who was the school's superintendent at the time. Doc. 48-1. Defendants' own witness, Mr. Firks, admits that the (G)(3) safe harbor could not apply because no attorney was present for the discussion and that they were "mistaken" that it could apply. *Id.* at 1052, ¶7. Mr. Firks is left then to claim that the Board's discussions were covered by (G)(1). *Id.* But the Board's discussions do not satisfy the

plain language of that provision. *See, e.g, Vermillion Teachers' Ass'n. v. Vermillion Loc. Sch. Dist. Bd. of Educ.*, 648 N.E.2d 1384 (Ohio Ct. App. 1994) (school board violated OMA where school board moved to go into executive session utilizing (G)(1) "personnel compensation" but actually discussed an alleged confidential student's biology grade).

The text of subsection (G)(1) states that the exception applies to "the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints ***against*** a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing." O.R.C § 121.22(G)(1) (emphasis added). Mr. Firks points out that students are "regulated individual(s)" under the statute. Doc. 48-1, Firks Decl., at 1052, ¶8. But subsection (G)(1) is not a general provision for discussions related to students. And the Board was not investigating a charge or complaint "against" any student. Instead, the Board was addressing the "controversial" matter of "transgender access, including [for] Anne Roe, to communal restrooms with which they identify." Doc. 48 at 1045; *see also* Doc. 54-1 at 1166 (sealed). In sum, the Board's discussion was about permitting transgender students, including Anne Roe, to use non-biological restrooms generally—not the "investigation of charges or complaints" **against** any student. *Kamenski*, 2016 WL 1732872, at *3-4 (requiring proponent to satisfy the "against" requirement in (G)(1)). Therefore, Subsection (G)(1) does not apply to the Board's discussions.

Finally, (G)(6) relates to details relative to security arrangements and emergency response protocols that, if disclosed, could reasonably be expected to jeopardize the security of the public body or office. O.R.C. § 121.22(G)(6). This subsection is not relevant to discussion of the

Defendants' policy on intimate facilities nor were these matters actually discussed in relation to the Defendants' policy on intimate facilities. Doc. 37-3, Franz Decl. 1, at 817, ¶24.

In short, none of Defendants' safe harbors applied to what they discussed based on the text of the statute. Subsection (G)(1) is limited to complaints *against* a "regulated individual" (which can be a student). There was no complaint against any student discussed, thus this subsection is inapplicable. Defendants admit (G)(3) is not applicable because counsel was not present as required. Doc. 48-1, Firks Decl., at 1052, ¶7. (G)(3) states: "[c]onferences **with an attorney** for the public body…" O.R.C. § 121.22(G)(3) (emphasis added). With no attorney present, there is no conference with an attorney and (G)(3) is inapplicable. *Id.*; Doc. 48 at 1044-45 (agreeing no attorney was present). Finally, (G)(6) relates to security measures which are not applicable to the discussion of intimate facilities in this executive session. Doc. 37-3, Franz Decl. 1, at 817, ¶24. And no one has identified any security measures discussed in this executive session at all. It is not applicable either.

As the Supreme Court held, privileges must be "strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)). Such a strict rule is required because exclusionary rules and privileges harm the fundamental principal that "the public has a right to every man's evidence." *Id.* (cleaned up).

As the *Kamenski* court recognized, O.R.C. § 122.22(G) permits a public body to hold an executive session "for the sole purpose of the consideration of one of the enumerated exceptions under O.R.C. § 122.22(G)." 2016 WL 1732872, at *3 (cleaned up). Ultimately concluding that

because none of the exceptions applied, neither did the executive session privilege. *Id.* at *4. This follows from the strict limitations placed on privileges and their exclusionary effect. If the privilege is created by state law and recognized by federal common law, the privilege should be limited to those situations that support the purpose of the privilege. No purpose exists for an executive session privilege where the "sole purpose" of the executive session is for consideration of an enumerated exception that is not applicable. Because no proper purpose for entering into executive session existed, no privilege attaches. Otherwise, the privilege would be broadly construed and would harm the public good by preventing open and honest government. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998).

In sum, none of the Board's noticed safe harbors apply to its discussion about the school's intimate facilities. Doc. 37-3, Franz Decl. 1, at 816, 817, ¶¶13, 24; Doc. 48-1, Firks Decl., at 1052, ¶¶7–8. Therefore, the December 7, 2021 executive session violated the OMA. It was not a proper executive session and cannot be treated as confidential. Treating the December 7, 2021 executive session as confidential and privileged would harm the public good and impede open and honest government. Defendants offer no argument on the benefit the privilege would offer in this situation because there is no benefit that would outweigh the public harm. The Court should find that there was no executive privilege that attached to the December 7, 2021 "executive session."

      **ii)**      **The Board Improperly Made a Cognizable Decision Under the OMA.**

As detailed in the preliminary injunction briefing, the Board's adoption of a rule change was both a cognizable "rule" and "formal action" under the OMA. Pls.' Reply to Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 37 at 789–91. All of that analysis is expressly incorporated herein without the need for repeating.

All Board members were present at the executive session. Doc. 48-2, Hageman Decl., at 1093. Jessica Franz specifically observed Jacob King, Lydda Mansfield, and Lori Sebastian—a

majority of the Board—argue to let students use the communal restrooms in accordance with their gender identity. Doc. 37-3, Franz Decl., at 816, ¶¶14–20. Ms. Franz also observed the remaining two Board members consent to the same and the Board reached an overall agreement. *Id.* at 815, 816, ¶¶7, 14–16, 18–19 (testifying to all Board members either arguing for the outcome or consenting to the same in a consensus of agreement). The Board members made their views known to each other, argued for their preferred outcome, and reached a collective decision. That represents a cognizable decision under the law. *See* Doc. 37 at 789–91; *Mansfield City Council v. Richland Cnty. Council AFL-CIO*, No. 03 CA 55, 2003 WL 23652878, at \*5 (Ohio Ct. App. Dec. 24, 2003) (affirming the trial court that "[i]t is not necessary that there be a formal vote for there to be a formal action. Any mechanism by which council members make their view known in order to make a decision pending before them suffices") (citation omitted); *Keystone Comm. v. Switzerland of Ohio Sch. Dist. Bd. of Educ.*, 67 N.E.3d 1, 8 (Ohio Ct. App. 2016) (formal action includes "reaching any collective decision[] during an executive session"). Because the Board made a cognizable decision—that was both a new "rule" and a "formal action" under the OMA—during the December 7, 2021 executive session, the executive session was improper.

In the end, the OMA prevents the Board from discussing or deliberating controversial issues in secret unless the Board satisfies one of the limited exceptions in subsection (G)—which the Board did not do. The OMA also prevents the Board from ever deciding issues in secret. These limitations serve to preserve the important policy of open and honest government. Without a proper executive session, the entirety of the December 7, 2021 Board meeting—including the Board's discussions in executive session—is declared to have been open to the public at all times. O.R.C. § 121.22(C) ("All meetings of any public body are declared to be public meetings open to the

public at all times."). There is no proper executive session; thus, there can be no executive session privilege. Because there is no executive session privilege, *Humphries* does not apply.

### B. There are no Attorney-Client Privileged Communications in the Franz Declaration.

As a threshold matter, Defendants' improper executive session also disposes of their claims for attorney client privilege. The Sixth Circuit has instructed—in a case where attorneys actually participated in a closed session of the public body—that if the sessions were not properly closed "then the [otherwise privileged] communication[s] . . . at those sessions were not confidential and therefore not privileged." *In re Grand Jury Subpoena*, 886 F.2d 135, 138-39 (6th Cir. 1989). That is the proper result here as well.[5]

Additionally, Defendants bear the burden to show the existence of an attorney-client privilege, identify what materials are allegedly protected, and explain why those materials are privileged. Defendants' failure to do so here is fatal to their motion. *United States v. Lundergan*, No. 5:18-CR-00106-GFVT-MAS-1, 2019 WL 3503977, at *3 (E.D. Ky. Aug. 1, 2019) ("The Committee's unsupported accusations that the Government has, and plans to use, privileged materials, without identifying those materials or providing any explanation as to why those materials are privileged, is simply insufficient.") (citing *Dakota*, 197 F.3d at 825). The bare assertion of privilege, unsupported by evidence, analysis, or argument, does not suffice to shield materials from this Court's view.

---

[5] The OMA "declare[s]" that the default expectation for all discussions at the December 7, 2022 meeting was that those discussions were "open" to the public. O.R.C § 121.22(C). Therefore, without a proper executive session, Defendants' discussion is properly considered public under the OMA, *In re Grand Jury Subpoena*, 886 F.2d at 138-39, and consistent with Ohio state courts that require a waiver of privilege for meetings that fail to satisfy a proper safe harbor. *Ames v. Rootstown Twp. Bd. of Tr.*, 151 N.E.3d 37, 44 (Ohio Ct. App. 2019) (discussing waiver and requiring waiver for meetings outside the safe harbors of subsection (G)). This applies with equal force to the above discussion on the executive session privilege.

Nevertheless, temporarily setting aside *In re Grand Jury Subpoena,* and setting aside Defendants' failure to satisfy their burden, the attorney-client privilege should be confined to its purpose and narrowly construed to "protect[] only those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (cleaned up). In addition, the privilege protects communications with the attorney, **not facts**. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *United States v. Crane*, 840 F.2d 18, 1988 WL 12138, *2 (6th Cir. 1988) ("The attorney-client privilege extends to communications between the attorney and client but not to the underlying facts.").

The oft-repeated federal attorney-client privilege requirements are as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed*, 134 F.3d at 355–56. The privilege is based on two related principles: (1) loyalty, which is offended if the lawyer is subject to examination regarding the client's confidential disclosures; and (2) full disclosure from the client, which allows a lawyer to more effectively serve his client and promote the administration of justice. *Id.* at 356. Plaintiffs do not dispute that a governmental entity, such as the Board, can assert the attorney-client privilege. However, the privilege only protects "those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d at 294 (citation omitted).

Guided by the above principles, the Sixth Circuit has recognized that "courts and commentators have cautioned against broadly applying the privilege to governmental entities."

12

*Reed*, 134 F.3d at 356. The *Reed* court recognized the governmental attorney-client privilege has additional disadvantages even over a corporate privilege because the governmental privilege "stands squarely in conflict with the strong public interest in open and honest government." *Id.* This public interest is further disserved by attempts to inflate the privilege beyond its traditional and appropriate bounds.

With this background in mind, it is particularly clear that Defendants' MIL improperly makes a blanket claim of privilege without providing any analysis of the testimony contained in Jessica Franz's Declaration and identifies no attorney-client privileged communications in the Franz Declaration. Doc. 48 at 1045–48. The only specific assertion Defendants make is that the privilege "prohibits the disclosure of legal advice by Ms. Franz." *Id.* at 1047. And the only "advice" contained in the Declaration is that Defendants were required by law to allow intimate facility use in accordance with a student's self-professed gender identity. Doc 37-3, Franz Decl. 1, at 815, ¶12. That "legal" advice is public knowledge. Second Declaration of Jessica Franz (hereinafter "Franz Decl. 2") ¶17. Lydda Mansfield told the community that the reason for the decision to allow some students to use opposite sex intimate facilities was because of this "legal" advice and then read aloud the attorney's statement. Doc. 20 at 669 (*see supra*, Section A). And—as public knowledge and the proffered reason for the public body's decision—it is also found in a public record disclosed to counsel in the board's response to a public records request made before the commencement of this litigation. Byrne Decl. 2 ¶5-7 & Exh. A to Byrne Decl. 2 (Jacob King advising of Mr. Podgurski's opinion). This advice is neither confidential in a practical sense (since it is public knowledge) nor is it privileged.

Any claim of privilege regarding counsel's advice has been waived by the school's disclosure and announcement of the advice to justify and/or "sell" the decision to the community.

"Once the privacy for the sake of which the privilege was created is gone by the client's own consent, the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice." *In re Columbia/HCA Healthcare Corp. Biltoling Pracs. Litig.*, 293 F.3d at 302–03 (cleaned up). Defendants cannot disclose and promote counsel's advice to the community as the reason for their decision and then deny reference to, or examination of, that advice as privileged. Indeed, one cannot "invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Id.* at 303 (cleaned up). The Board decided to issue a statement at the January 10, 2022 public meeting disclosing the reason for their decision and the advice of their counsel. This was to benefit the Board and explain its decision. The Board cannot now claim such advice is protected by the attorney-client privilege.

Beyond the "disclosure of legal advice by Ms. Franz," Doc. 48 at 1047, Defendants do not argue for the privilege concerning any of the other particular testimony contained in the Franz Declaration. Defendants cannot therefore discharge their burden to prove the application of the privilege with respect to such testimony. But even if Defendants had provided particular analysis, none of the other testimony—beyond Paragraph 12 of the Franz Declaration—could be protected by the attorney-client privilege because those paragraphs testify to **the facts** of Ms. Franz's observations rather than communications with an attorney. *See Upjohn Co.*, 449 U.S. at 395. The facts regarding the Board's discussion and deliberation of the bathroom decision are not attorney communications properly excluded by the attorney-client privilege. *See* Doc. 37-3, Franz Decl. 1, at 815, 816, ¶¶7, 14–20.

For example, the Franz Declaration identifies who was present at the meeting. This is also in the public meeting notes. Doc. 48-2, Hageman Decl., at 1093. The fact that Mr. King controlled the discussion and Mr. Firks was quiet is not an attorney-client communication subject to privilege,

it is a fact. Lydda Mansfield and Lori Sebastian arguing for the outcome is a fact. The expression of agreement from other Board members is a fact. Facts such as these do not advance the two purposes of the governmental attorney-client privilege, do not meet the elements for privilege, and therefore, are not privileged. *See Upjohn Co.*, 449 U.S. at 389; *Reed*, 134 F.3d at 356.

Underlying facts are generally not protected anyway and the members of public bodies and their attorneys will not be less likely to share information with each other in proper confidence. But they will be more likely to comply with the OMA. This result is also not prejudicial or unfair.

In the end, there are no privileged communications in Franz Declaration. And Defendants fail to prove the contrary.

### C.    Defendants' Ethical Accusations Are Unfounded.

In addition to asserting executive session and attorney client privileges, Defendants level ethical accusations at Jessica Franz and Plaintiffs' counsel. Doc 48 at 1048–49. These arguments cite no law or rule of evidence that would require the Franz Declaration to be excluded. These allegations were also made without knowledge of the facts and without any attempt to determine the relevant facts.

Defendants accuse Jessica Franz of improperly disclosing information that they allege is protected by the attorney-client and executive session privilege. However, the information that Ms. Franz disclosed was not confidential. Ms. Franz attended the meeting when she was not yet a board member and, as discussed above, attended a meeting that was not a proper executive session in accordance with applicable Ohio law.[6] Still, out of an abundance of caution, Ms. Franz

---

[6] As discussed above, Defendants' counsel failed to cite a relevant 2020 Ohio Ethics Commission advisory opinion that finally clarified the confidentiality of executive session issue. *See* Ohio Ethics Comm'n, Advisory Op. No. 2020-02 (April 17, 2020). In the advisory opinion, the Ohio Ethics Commission reached the following conclusions (in relevant part):

- The use of executive session does not by itself create confidentiality, if it is <u>clearly demonstrated</u> that a public body has met <u>all</u> of the legal requirements necessary to appropriately discuss a specific matter in executive session, <u>and</u> the information is confidential by statute, or has been clearly

independently consulted multiple attorneys (none of which were Plaintiffs' counsel) about the Board's actions regarding the December 7, 2022 executive session. Franz Decl. 2 ¶19. In other words, Ms. Franz performed her own diligence in this matter and confirmed her independent understanding that the December 7, 2021 executive session violated the OMA. *Id.* ¶20. These efforts demonstrate she acted in good faith with regard to providing testimony to this Court. Defendants accuse Jessica Franz of disclosing information that the law and the record show was not confidential. Ultimately, Defendants seek to use false claims of confidentiality to cover up their unlawful behavior and silence Ms. Franz's whistleblowing.

Defendants also accuse Plaintiffs' counsel of speaking to Jessica Franz and using information she provided in this litigation in violation of various professional conduct rules, but Defendants' allegations are purely speculative. They are not based on anything in the record. Even more problematic, not only were Defendants' misconduct allegations made without knowledge of the facts, they were made without reasonable due diligence being conducted. Neither Defendants, nor their attorneys, nor their alleged "expert" spoke to Jessica Franz to confirm if any of the alleged facts were correct. Franz Decl. 2 ¶5. Instead, they simply assume wrongdoing and discuss their assumptions as if they were conclusively established facts.

Defendants could have easily discovered that Plaintiffs' counsel identified themselves to Jessica Franz, that at all times Ms. Franz knew and understood that Plaintiff's counsel represented clients adverse to the Bethel School Board, and that Plaintiffs' counsel did not endeavor to elicit information from Ms. Franz that the lawyers knew or reasonably knew to be protected by attorney-

---

designated as confidential when such designation is warranted and necessary, then the information discussed <u>may</u> be considered legally confidential under R.C. 102.03(B).

● If a document is a "public record" and is not otherwise exempt under one of the exemptions to the Public Records Act, the document may still be subject to public disclosure even if the public body appropriately discussed it in executive session.

*Id.* (emphasis added)

client privilege. Franz Decl. 2 ¶7-15. Additionally, as Ms. Franz testifies to in her declaration, she believes Plaintiffs' counsel did instruct her not to share attorney-client privileged information. *Id.* ¶15. Defendants could have called Plaintiffs' counsel and asked, or notified Plaintiffs' counsel that they believe confidential information had been improperly disclosed. But they neither contacted Ms. Franz nor Plaintiffs' counsel.

In other words, Defendants' counsel took no steps to verify if their factual allegations had any legitimate basis. Plaintiffs' counsel acted honorably and did not violate the Ohio Rules of Professional Conduct as alleged by Defendants. As discussed above, the alleged attorney-client information had already been publicly disclosed and the executive session was improper. As a result, the information discussed at the December 7, 2021 "executive session" was not considered legally confidential pursuant to O.R.C. §_102.03(B), the common law attorney-client privilege doctrine, or any other privilege. In order to claim otherwise, Defendants and their "expert" speculated about conversations with Jessica Franz of which they had no knowledge nor made any reasonable effort to learn about.

The Court should find that Defendants do not enjoy either the executive session privilege or the attorney-client privilege related to the December 7, 2022 executive session. Defendants failed to bear the burden of proof and show these privileges existed. Beyond that, based on the facts, the privileges do not exist. The Court should likewise find that because there are no privileges, Plaintiffs' counsel did not violate any ethical duties. Finally, because there are no privileges and no ethical violations, no reason exists to exclude the Franz Declaration, and the Court should deny Defendants' MIL.

## II.     Defendants Cannot Maintain Their Prejudice Arguments.

The MIL opens as a sur-reply and continues to argue issues from the PI Motion. *See* Doc. 48 at 1043–45. Their arguments and declarations attempt to discredit Jessica Franz while

introducing opposing testimony from Justin Firks regarding the executive session. *Id.; see also, e.g.*, Doc. 48-1, Firks Decl., at 1052, ¶¶4, 9-10. All while maintaining that they have been prejudiced without opportunity to address the executive session. *See* Doc. 48 at 1043. Defendants have not been prejudiced.

After Plaintiffs filed the PI Motion, the Court held a conference with the parties on December 13, 2022 pursuant to Local Rule 65.1(a). During the proceedings, Defendants' counsel represented to the Court, and to Plaintiffs, that properly opposing the PI Motion involved consideration of the "alleged rule" being ***"passed secretively in executive session."*** Status Conf., Dec. 13, 2022, Tr. of Proc., Doc. 53 at 1151-52, 5:24–6:4 (emphasis added). Counsel also requested more time to, *inter alia*, "fairly investigate the claims" and discuss the issues with "the superintendent of schools that was at the helm during the relevant time period" (Justin Firks). *Id.* at 1154, 8:10–11, 16–21; Doc. 48-1, Firks Decl., at 1052, ¶2 (serving as superintendent during the relevant time period). Defendants chose not to ultimately include this information in its Opposition.

Similarly, during the December 13, 2022 conference, Defendants expressly agreed to the idea of determining if an evidentiary hearing was necessary after filing their Opposition. Doc. 53 at 1149-51, 3:16–5:1 ("So possibly Oral Argument or possibly Evidentiary Hearing. The Defendants are in agreement with that approach."). But then, in Opposition, tried to use the potential evidentiary hearing dynamic against Plaintiffs. *See* Doc. 20 at 676–77. This type of move ignores the procedural posture of preliminary injunctions coming before discovery and the goal to provide "just, speedy, and inexpensive" determination of disputes as much as possible. Fed. R. Civ. P. 1.

Plaintiffs do not object to Defendants sur-reply. Plaintiffs want this issue resolved on the merits and are not looking to play procedural "gotcha." Plaintiffs fairly responded to Defendants' arguments in response. Defendants were not prejudiced by the process and have had ample opportunity to make their arguments to the Court. In the end, all of Plaintiffs' evidence is properly before the Court and the PI Motion should be decided on the merits alone.

## **CONCLUSION**

For all the foregoing reasons Defendants MIL should be denied in its entirety.

Dated: February 17, 2023

Respectfully submitted,

s/ Joseph P. Ashbrook
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge, LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of February, 2023, I served a copy of the foregoing

via the Court's ECF system, which notifies all counsel of record.


<u>s/ Joseph P. Ashbrook </u>
Joseph P. Ashbrook