UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, et al., | : | CASE NO. 3:22-cv-00337 |
| | : | |
| Plaintiffs, | : | JUDGE MICHAEL J. NEWMAN |
| | : | |
| vs. | : | |
| | : | PLAINTIFF'S BRIEF ON STANDING |
| BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : | FOR FEDERAL CLAIMS |
| | : | |
| Defendants. | : | |

## INTRODUCTION

Plaintiffs satisfy the standing requirements to assert their federal claims. Plaintiffs have asserted claims pursuant to Title IX, the Fourteenth Amendment, the Free Exercise Clause of the First Amendment, and 20 U.S.C. § 1232h as well as the Declaratory Judgment Act and 42 U.S.C. § 1983. Plaintiffs have actual, concrete, and particularized injuries that are not conjectural or hypothetical. The cause of these injuries is fairly traceable to Defendants'[1] actions, and it is likely that the injuries will be redressed by a favorable decision of the Court.

### I.  Background and Article III Standing

Plaintiffs are Bethel parents and students. All Plaintiff parents have students at Bethel schools. Some Plaintiff parents assert claims on their own behalf only. And all the guardian parents of the students in the suit are suing on their own behalf as well as on their student's behalf. *See generally* Pls.' Compl.*,* Doc. 1. The Plaintiff families can be broken down into a group of Muslim

---

[1] As used herein "Defendants" refers to defendants Bethel Local School District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin. "Intervenor-Defendant", "Anne Roe", or "Roe" refers to Intervenor-Defendant Anne Roe.

1

families, *id.* at 11, ¶66,[2] a group of Christian families, *id.* at 13, ¶79, and a family where the Plaintiff parent is not particularly religious, *id.* at 16, ¶93. The Court has ordered the parties to submit briefs that address Plaintiffs' Article III standing to assert their federal law claims. Order, Doc. 52.

Article III standing requires an "an actual or imminent injury that is traceable to the defendant and redressable by the court." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citation omitted). Injury requires "injury in fact", which means "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Traceability to the defendant looks for "a causal connection between the injury and the conduct complained of." *Id.* And redressability requires that the injury is likely to be redressed by a favorable decision from the Court. *Id.* at 561.

Finally, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Id.* And "[w]hen the suit is one challenging the legality of government action or inaction" if the "the plaintiff is himself an object of the action (or forgone action) at issue" then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62.

II. **Plaintiffs Have Standing To Bring Their Claims.**

   A. **Count II: Title IX**

Plaintiffs brought a claim for declaratory relief regarding the Board's interpretation and enforcement of Title IX. When parties seek relief under the Declaratory Judgment Act, the United

---

[2] All page citations to ECF documents ("Doc.") herein denote the "PageID" page number.

States Supreme Court has explained that standing exists where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (Scalia, J.) (citation omitted); *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014, 1021 (6th Cir. 2022) (citation omitted).

Here, Plaintiffs seek declaratory judgment on an issue of substantial controversy with present immediate impact and adverse legal interests between the parties. Defendants are enforcing Title IX in a manner that disregards the text of the statute and is causing Plaintiffs' injuries, including violations of Plaintiffs' Constitutional rights. The school claimed, and continues to claim, that it is required to do so in enforcing Title IX. *See* Doc. 1 at 3-4, 19, ¶¶3, 8, 108; Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 20 at 659, 666, 669, 671. Plaintiffs seek a declaration that Title IX permits a school to maintain biologically sex separated intimate facilities in conflict with Defendants' enforcement of Title IX, which they believe *requires, as a matter of law,* gender-identity separated intimate facilities.

This is a real controversy and the Court's declaration would resolve this immediate and real dispute. This is not a contrived attempt to obtain an advisory opinion. While counsel for Defendants represented at the PI hearing that they may refuse to heed a Declaratory Judgment anyway and continue in their present course, that does not make this dispute hypothetical or the Court's opinion a mere intellectual exercise. *See* Oral Arg., Feb. 7, 2023, Tr. of Proc., Doc. 56 at 1206, 38:16-20. Not only are Defendants violating Plaintiffs' Constitutional rights through their atextual enforcement of Title IX, but they also claim that Anne Roe (who is a defendant in this case as well) threatened legal action on this issue. Doc. 1 at 3, ¶; Doc. 20 at 669; Decl. of Justin Firks, Doc. 48-1 at 1052, ¶¶4-6. Therefore, Plaintiffs' and Defendants' legal interests are also

adverse to Intervenor-Defendant on this issue. If Plaintiffs' prevail on their free exercise claim and Defendants change the rule back to restrooms separated by biological sex, the school faces legal action from Roe regarding Title IX (which then affects the rights of Plaintiffs). Accordingly, there is a real and substantial controversy here with adverse legal interests among all the parties and declaratory judgment is both a proper and practical remedy.

In declaratory judgment cases, the prudential concern is that the judgment must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (alteration in original) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). But there is no hypothetical state of facts in this case. As discussed below, across claims, Defendants atextual enforcement of Title IX is violating Plaintiffs' Constitutional rights and causing other concrete and particularized harms; including dignity harms, anxiety and emotional distress, and has caused students to avoid the restroom and hold their urine. Doc. 1 at 12 ,14, ¶¶72, 81. Those harms directly relate to the actual and immediate violation of Plaintiffs' legal rights. In addition, those harms, and the violation of those legal rights, are directly traceable to Defendants' claimed enforcement of Title IX. And a declaratory judgment on Title IX that binds Plaintiffs, Defendants, and Intervenor-Defendant would redress this fundamental issue among the parties.

In the end, this is a real and concrete dispute among the parties, with facts established by sworn declarations, public statements, and the submission of policy documents. "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised." *Aetna Life Ins. Co.*, 300 U.S. at 241. Thus, Plaintiffs have standing to

request this Court resolve the dispute between Plaintiffs, Defendants, and Intervenor-Defendant by declaring Title IX's requirements relating to Defendants' intimate facilities.

Additionally, Plaintiffs move for a declaratory judgment related to their other claims. Each claim, likewise, meets the above standards: there is an actual controversy, the parties have adverse legal interests, it is sufficiently immediate (the violations are ongoing), and this Court can afford relief to the Plaintiffs. Thus, each claim satisfies the prudential requirements for declaratory judgment as well.

### B. Count III: Parental Rights – Fourteenth Amendment

All Plaintiff parents assert their fundamental right to "direct the upbringing and education of children under their control." *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (Due Process Clause provides "heightened protection against government interference" with a parent's right "to direct the education and upbringing of one's children") (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925)). This right applies to all parents but is particularly acute when the government's infringement involves "the rights of parents to direct the religious upbringing of their children." *Yoder*, 406 U.S. at 233; *Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 881 (1990) (distinguishing strict scrutiny of government action where free exercise involves parental rights). And Plaintiffs have standing to redress Defendants' infringement of this fundamental right.

#### i. Injury in Fact

The United States Supreme Court has explained that the infringement of Constitutional rights can give rise to intangible harm that satisfies standing. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021) (finding an injury inflicted by the abridgement of free speech rights); *Trinity*

*Lutheran Church of Colombia, Inc. v. Comer*, 137 S.Ct. 2012, 2022 (2017) (finding harm from infringement of Free Exercise rights); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (providing abridgement of free speech and infringement of free exercise as examples of concrete intangible harm). Parental rights fall in this category as well both because they are long rooted in our American tradition with historical analogues and the Constitution specifically protects that parental "liberty interest" itself. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality op. of O'Connor, J.) ("[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *Glucksberg*, 521 U.S. at 720 (finding that the Constitution protects the right "to direct the education and upbringing of one's children"). Put differently, the infringement of a "liberty interest" specifically protected by the Constitution is a harm that arises under the Constitution and the vindication of that interest properly presents a case or controversy arising under the same. U.S. CONST. art. III, § 2, cl. 1. By forcing the children of parent Plaintiffs to use communal intimate facilities with members of the opposite biological sex, Defendants are infringing on the Plaintiffs' fundamental right to direct the education and upbringing of their children in a sensitive area of safety, privacy, and religious upbringing.

In addition, Defendants are substantially burdening the parent Plaintiffs' exercise of their fundamental right by denying them access to the commonsense information the parent Plaintiffs want and need to make ultimate decisions about their children's education. The United States Supreme Court has provided, in this particular context, that burdening the right constitutes an infringement on the right. *See Espinoza v. Mont. Dep't of Revenue*, 140 S.Ct. 2246, 2261 (2020) (precluding the government from burdening a parent's potential choice of religious schools). And the Supreme Court has applied this concept for years. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374,

383 (1978) (substantially burdening the right to marry is an infringement of that right); *Williams v. Rhodes*, 393 U.S. 23, 31 (1968) (burdening the right to vote is an infringement of that right); *Maher v. Roe*, 432 U.S. 464, 473-74 (1977) (burdening the right to an abortion is an infringement of that right) (overruled on other grounds by *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022)). Therefore, Plaintiffs are injured both by Defendants' infringement on their fundamental right to control and direct the education and upbringing of their children (especially the religious upbringing) and by substantially burdening the exercise of their right to a choose different school by denying them the common sense information they need to make that informed decision. Doc. 1 at 8, 12, 14-17, ¶¶47, 68-69, 80, 85-86, 96-100.

Note that while these intangible harms to Plaintiffs' fundamental liberty interest are sufficiently concrete, the Muslim and Christian Plaintiff parents are experiencing other harm as well in the form of the dignity harm and substantial distress that arise in the parents over concern for their children and the interference with their duty to bring their children up in the faith. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020) (emotional and dignitary harm cognizable); Decl. of John Doe No. 2, Doc. 49-1 [hereinafter "John Doe No. 2 Decl."] at 1113, ¶8.

These harms also impact the Plaintiff parents in a personal and individual way. Not all families agree with Plaintiffs. *See e.g.*, Doc. 20 at 666. But, in raising their children, Plaintiffs have a fundamental conflict with their children sharing communal intimate facilities with members of the opposite biological sex—for a variety of individual concerns involving safety, privacy, modesty, religion, and/or traditional or biological views of sex. Doc. 1 at 8, ¶47.

7

Finally, Plaintiffs' injuries are actual and presently occurring. And Plaintiffs' injuries arise from the violation of their legally protected liberty interest in directing the education and upbringing of their children.

### ii. Traceability & Redressability.

Plaintiff parents' harm from the infringement of their fundamental right to direct the education and upbringing of their children is fairly traceable to Defendants because Defendants new rule, formal action, and/or new accommodations policy for gender identity (whatever one wants to call it) is causing their children to share communal intimate facilities with members of the opposite biological sex. Likewise, Defendants are withholding common-sense information—like how overnight field trips will be handled—that Plaintiff parents need to make the ultimate decision of where they send their child to school.

Likewise, the parents' injury would be redressed by an order of the Court requiring Defendants to provide the children with communal intimate facilities separated by biological sex and provide the requested information so that the parents can properly make the ultimate decisions regarding their child's education.

Because all three elements of the *Lujan* test are met, this court should find that Plaintiffs have standing to pursue this claim.

### C. Count IV: Equal Protection

The Muslim and Christian Plaintiffs also assert an Equal Protection claim against Defendants. Doc. 1 at 21, ¶125. These Plaintiffs have standing to bring this Equal Protection claim as well.

### i.     **Injury in Fact**

In equal protection claims, "injury in fact" arises from the denial of equal treatment; regardless of whether that denial comes in the form of unequal benefits or the imposition of unequal burdens or obstacles. *See Orr v. Orr*, 440 U.S. 268, 273 (1979) (finding that unequal "burden alone is sufficient to establish standing" for equal protection claim); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

Here, Defendants have provided an educational benefit to transgender students—communal intimate facilities that align with their core identity. At the same time Defendants are denying religious students an equal benefit—communal intimate facilities that align with religious students' core identity. Doc. 1 at 11, 14-16, 20-21 ¶¶67–69, 80, 85, 87–91, 117–23; Bethel Loc. Sch. Dist., FAQ About Transgender Students, Doc. 39-6 at 959, 963 ("core identity"). As a corollary to the same, Defendants are also unequally imposing a burden on the religious students that they must use communal intimate facilitates in contravention of their core identity that they are not imposing on transgender students.

The only apparent reason for this difference in treatment is the Board's decision to favor one group over another. This benefit is provided at the urging of parents of transgender students while denying the benefit to religious students and religious parents. Doc. 1 at 21, ¶124. As such, Defendants are treating the Muslim and Christian Plaintiffs worse than the transgender students and parents (including in the exercise of their parental rights to control the education and upbringing of their children)—despite guaranteeing them equal educational opportunities as a "Protected Class" under the Board's nondiscrimination policy, Policy 2260. *Id.* at 15, ¶¶88-89.

And this discriminatory treatment of one Protected Class in favor of another denies the Muslim and Christian Plaintiffs equal protection of the law as required by the Constitution.

Like with parental rights, the Plaintiffs are experiencing other harms as well because of the violation of their Equal Protection rights. The parents are experiencing harms to their dignity and the substantial distress that naturally arises in the parents over concern for their children; distress caused by the District's interference with their parental duty to bring their children up in the faith inextricably intertwined with their core identity. *See, e.g.*, Doc. 49-1, John Doe No. 2 Decl., at 1113, ¶8; Doc. 1 at 11, 15-16, ¶¶68, 85, 91; *Grimm*, 972 F.3d at 618. The students are experiencing further tangible and intangible harms by being made to avoid the restroom, having to hold their urine (which causes significant discomfort), increased anxiety, emotional distress, and profound dignitary harms. Doc. 1 at 12, 14, ¶¶72, 81-82. These intangible psychological and emotional harms are also severe and outrageous in the classical sense, transgressing the core identity of who these Christian and Muslim Plaintiffs are as people. For example, everyone would say that it is "extreme and outrageous" for the government to force Muslim families to eat pork. *Id.* at 12, ¶70. Yet the Board is forcing their children to share communal restrooms with members of the opposite biological sex, which equally violates their religion. And it stigmatizes them as people in their beliefs and core identity when the Board devalues them in favor of a preferred class. *See id.* at 12, ¶71. This injury is especially acute for the Ahiska Muslim Turkish Plaintiffs (eight of the fifteen Plaintiffs) who were subject to decades of discrimination and marginalization prior to coming to America. Doc. 49-1, John Doe No. 2 Decl., at 1114, ¶17.

The harm arising from Defendants' Equal Protection violation also impacts the Plaintiffs in a personal and individual way. Each and every one of the Muslim and Christian Plaintiffs are experiencing these harms individually. And the violation of the right to equal treatment under the

law does not apply evenly across the school because not everyone is being denied the equal right to have their core identity respected and not everyone falls within a Protected Class for purposes of the school's nondiscrimination policy. Indeed, one protected class is being favored above all others, and has been allowed to set this policy for the entire school system, despite numerous others who object.

Finally, Muslim and Christian Plaintiffs' injuries here are actually and presently occurring. Their injuries also arise directly from the violation of Plaintiffs' Constitutional right to equal protection under the law.

### ii. Traceability & Redressability

It is likewise clear that this harm flows directly from the conduct of the Defendants, as they have adopted the new intimate facilities policy that denies the Muslim and Christian families the educational benefit provided to others, and the Defendants have refused to accommodate the religious plaintiffs in a similar way to Roe.

Finally, this claim is redressable by a Court order that requires Defendants to provide communal intimate facilities for Muslim and Christian families based on biological sex. Therefore, all the standing requirements are satisfied for Plaintiffs' equal protection claim.

### D. Count V: Free Exercise

The Muslim and Christian Plaintiffs also assert a Free Exercise claim against Defendants. Doc. 1 at 21-22, ¶125. These Plaintiffs have standing under the Free Exercise claim.

### i. Injury in Fact

Infringement on free exercise of religion is a concrete harm. *Trinity Lutheran Church of Colombia, Inc.*, 137 S.Ct. at 2022 (finding harm from infringement of Free Exercise rights);

*TransUnion LLC*, 141 S. Ct. at 2204 (identifying infringement of free exercise as a concrete injury); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (same).

Maintaining modesty, especially and including for their children, is a key tenet of the Muslim and Christian faiths. Doc. 1 at 11-12, 15, ¶¶67–68 (Muslim Plaintiffs), 85 (Christian Plaintiffs). Many Muslim women and girls go so far as to always cover their hair in public, to protect it from exposure to the male gaze. Currently, because of the Defendants' policy, Muslim and Christian students are placed in a position where they must share the most intimate of spaces with the opposite biological sex. This not only burdens their modesty, but also the fundamental dignity of their sexual identity, a core part of who they are and how their Creator made them. *Id.* at 11, 14, ¶¶67, 80. The Board does all of this at a time when the Student Plaintiffs are still young and developing. Within the Muslim and Christian faiths, the unique differences between the biological sexes must be respected and not oversexualized. These children are taught to grow up with principles such as abstinence outside of marriage and avoidance of lust. Systematically exposing these students to the sexuality of the opposite biological sex in a private space deeply undermines those mores which may be disdainful or ossified to some; but are nonetheless sincerely held by many, including the Muslim and Christian Plaintiffs. The Muslim and Christian parent Plaintiffs are also denied the ability to exercise their good-faith religious beliefs in raising their children in that faith. *Id.* at 15, ¶85. And because modesty and protecting the privacy of each unique biological sex are a core aspect of both the Muslim and Christian faiths, forcing these students to share an intimate space with members of the opposite biological sex substantially burdens (and infringes on) their ability to practice their good-faith religious beliefs.

In addition, Plaintiffs allege that Defendants are improperly proselytizing LGBTQ+ beliefs and values to their children without consent (and while trying to hide it from parents). *Id.* at 11-

12

13, 23-24, ¶¶68, 75-78, 138-41. It substantially burdens the parent's right to raise their children in the faith when they have to compete with the school's active promotion of opposing messages, especially when the school attempts to hide that messaging from parents and thereby disadvantages those parents to the aims that the promotion seeks (in contravention of the faith).

In addition to the above infringement on their free exercise of religion, the Muslim and Christian Plaintiffs are also experiencing the other tangible and intangible harms discussed *supra* in Section II(C)(i), for Equal Protection. Furthermore, all these harms impact the Plaintiffs in a personal and individual way, as faith is a deeply personal aspect of their core identity and not everyone shares or understands the depth of that harm. Finally, the Muslim and Christian Plaintiffs' injuries here are actual and presently occurring. And these injuries arise from the violation of the Plaintiffs' legally protected Constitutional right to free exercise, a right which is violated when the government burdens free exercise.

### ii. Traceability & Redressability

The Muslim and Christian Plaintiffs' harms flow directly from the Defendants forcing them to share communal restrooms with members of the opposite biological sex and promoting LGBTQ+ beliefs to their children without their knowledge. Doc. 1 at 10-13, 16, ¶¶63-64, 68, 74-75, 97.

These claims are redressable by a Court order that requires Defendants to provide communal restrooms for Muslim and Christian families based on biological sex. They would also be redressed by a Court order requiring Defendants to respect the Muslim and Christian families' beliefs in not proselytizing LGBTQ+ beliefs to their students and to comply with federal law for notice and consent to Plaintiff parents before making the students engage with books, attitudinal surveys, and other nonacademic instruction that reveals information related to gender identity,

13

sexual behavior, and personal attitudes or that affects the behavioral, emotional, or attitudinal characteristics of the Plaintiffs' children related to sex and gender. In short, all the standing requirements are satisfied for Plaintiffs' free exercise claim.

### E. Count VI: Section 1983 (20 U.S.C. § 1232h)

Under the Protection of Pupil Rights Amendment, codified at 20 U.S.C. § 1232h, parents have the right to review any survey that touches upon a covered topic, before it is presented to their children. In fact, Defendants are required to seek, and obtain, parental consent before administering such a survey. Defendants have not done so, and have thus deprived parents of a federal statutory right to opt their children out of this material.

Because Plaintiff parents have a federal right to be notified in advance, and a federal right to refuse consent, Defendants failure to seek and obtain this consent injures their rights.

#### i. Injury in Fact

Defendants' alleged failure to comply with this law has unduly promoted LGBTQ+ beliefs and values to the children of all the Plaintiff parents. For the Muslim and Christian Plaintiff parents, these actions proselytize their children in those values and beliefs without the parent's knowledge which directly undermines and counteracts the parent's efforts to raise their children in the faith and infringes on their right to free exercise as a concrete harm. Doc. 1 at 3, 11-14, ¶¶6, 67-68, 74-77, 80. The same is true for all Plaintiff parents with respect to infringement on their fundamental right to direct the education and upbringing of their children and not have the school proselytize their children at all without their knowledge, whether that be proselytizing them in Islam, Christianity, or LGBTQ+ beliefs and values.

This is also causing other harm to the Muslim and Christian parents who experience the dignity harm and substantial distress that comes from having the school actively undermine their

efforts to raise their children in the faith that forms a core part of their cultural identity. *See, e.g.*, Doc. 49-1, John Doe No. 2 Decl., at 1113, ¶8; Doc. 1 at 11-12, 14, ¶¶68, 80-81.

This impacts the Plaintiff parents in a personal and individual way like the analysis in Sections II(b)(i) (Parental Rights) and II(d)(i) (Free exercise) *supra*. And, as Plaintiff parents allege, these injuries are actual and presently occurring. Doc. 1 at 23-24, ¶¶138–39. Finally, the injury arises from the parent Plaintiffs' legally protected interest for notice and consent under 20 U.S.C. § 1232h, as well as the parent Plaintiffs' legally protected parental rights and rights to free exercise.

### ii. Traceability & Redressability

Injury is clearly traceable to the conduct of the Defendants as its failure to abide by the statute and provide prior notice and obtain consent has caused the injury in fact identified in Section II.E.i *infra*. And the continued injury would be redressed by an order of the Court requiring Defendants to provide such notice and obtain such consent, thereby giving the parent Plaintiffs the ability to opt their children out of such promotion.

## CONCLUSION

For all the foregoing reasons Plaintiffs have standing for each claim they have brought.

Dated: February 17, 2023

                                      Respectfully submitted,

                                      s/ Joseph P. Ashbrook
                                      Joseph P. Ashbrook (0091279)
                                      Julie E. Byrne (0085174)
                                      Ashbrook Byrne Kresge, LLC
                                      PO Box 8248
                                      Cincinnati, Ohio 45249
                                      Tel: (513) 582-7424
                                      Fax: (513) 216-9882

jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of February, 2023, I served a copy of the foregoing via the Court's ECF system, which notifies all counsel of record.

s/ Joseph P. Ashbrook<br>Joseph P. Ashbrook