## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## DAYTON DIVISION

**JOHN AND JANE DOE NO. 1, et al** :  **CASE NO:  3:22-cv-00337**
           :
   **PLAINTIFFS,**    :   **JUDGE MICHAEL J. NEWMAN**
           :
**vs.**           :
           :
**BETHEL LOCAL SCHOOL DISTRICT** :
**BOARD OF EDUCATION, et al**  :
           :
   **Defendants.**    :

---

## REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE, TO STRIKE AND TO REMOVE FROM DOCKET BY PLACING UNDER SEAL
## FORMER BOARD OF EDUCATION MEMBER JESSICA FRANZ'S DECLARATION
## DOC. 37-3 PAGEID 814-817

---

## MEMORANDUM

### I. INTRODUCTION

   Defendants Bethel Local School District Board of Education, and Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin, in their official capacities only (collectively referenced as "Defendants BOE"), moved the Court in limine for an order:

   1. Prohibiting the use of the Jessica Franz Declaration (Doc. 37-3 PageID 814-817) as evidence for any reason in this proceeding;

   2. Striking the Jessica Franz Declaration from the record;

   3. Removing the Jessica Franz Declaration from the docket and placing it under seal to preserve the appellate record while limiting further prejudice to Defendants BOE.

The Motion is supported by its memorandum, all arguments still asserted, and its attached Declarations of Former Superintendent Justin Firks (Ex. A, PageID 1052-1079), Fiscal Officer/CEO Tina Hageman (Ex. B, PageID 1080-1093), and Alvin E. Mathews, Esq. (Ex. C, PageID 1094-1097), legal ethics and professional liability expert.  This reply memorandum additionally supports the motion, with its attachments, Declarations of Lynnette Dinkler, Esq. (Ex. A), Board Member Natalie Donahue (Ex. B), Tina Fiscal Officer/CEO Tina Hageman (Ex. C), Alvin E. Mathews, Esq., (Ex. D), and Former Board Member Julie Reese (Ex. E).

Defendants reject all legal arguments presented by Plaintiffs in opposition to their Motion in Limine and its requested relief.

## II.  LEGAL ANALYSIS

### A.  The Franz Declaration and the December 7, 2021, Board of Education Workshop Meeting Executive Session

Jessica Franz's Declaration, where she discloses attorney client and executive session privileged information belonging to the Board of Education, is not whistle blower evidence.  Now on record are declarations from all Board Members and Board Members Elect, and former Superintendent Firks.  These Board Members, of course, all have their own opinions on transgender access to communal restrooms.  Ms. Donahue's signature even appears on a purported petition seeking the removal of current Board Members Elam, Mansfield, and Sebastian.  *In Re: Removal of Lydda Mansfield, Lori Sebastian and Danny Elam, Jr. from Office as Elected Officials and members of the Board of Education of the Bethel Local School* District, Miami County Court of Common Pleas, Case No: 2022-CV-429.  Nevertheless, the executive session at issue here pertains to discussions that are exempted from public meeting requirements under the Ohio Meetings Act under O.R.C. 121.22 (G)(3).  Firks Dec, ¶ 7, Doc. 48-1, PageID 1052; Donahue Dec,

Ex. B, ¶ 6; Reese Dec, ¶ 6.

Ms. Franz, as part of her political campaign platform for her current office of Republican State Central Committee Woman, made public statements to the denouncing the rights of Bethel transgender students. Standing Up for Women and Children with Jessica Franz, https://www.youtube.com/watch?v=9X70O8sfod4. Her motivation appears to be one of undermining what is a student accommodation request because she, too, believes transgender students are not entitled to make such request to administration. Motivation is discussed only because Plaintiffs suggest she is a whistleblower. If that is true, wouldn't Ms. Franz have had an obligation to bring such to light in advance of now to best fulfill her oath of office taken to serve the Board of Education?

Board of Education members and member-elect and the former Superintendent agree attorney client privileged information was shared and discussed and that no deliberations or secret voting occurred during the December 7, 2021, executive session. Firks Dec, ¶9, Doc.48-1, PageID 1052; Donahue Dec, Ex. B, ¶ 7; Elam Dec, ¶ 8-9, Doc. 18-1, PageID 630; King Dec, ¶ 8-9, 11, Doc. 18-2, PageID 632; Mansfield Dec, ¶ 8-11, Doc. 18-3, PageID 635; Reese Dec, Ex. E, ¶7; Sebastian Dec, ¶ 8-9, 11, Doc. 18-4, PageID 639. Ms. Franz is the only one claiming otherwise. Ms. Franz is the only one with no public meeting training. Hageman Dec, Doc. 48-2, PageID 1080-1085, ¶5-9; Hageman Dec. Ex. C, ¶ 4-8; Elam Dec, ¶ 16, Doc. 18-1, PageID 631; King Dec, ¶ 19, Doc. 18-2, PageID 634; Mansfield Dec, ¶ 25, Doc. 18-3, PageID 638; Sebastian Dec, ¶ 16, Doc. 18-4, PageID 640. Board of Education members and member-elect and the former Superintendent agree the O.R.C. 122.21 (G)(3) exception, which was noticed, covers students with a complaint against the student. Firks Dec, ¶ 5-7, Doc. 48-1, PageID 1052; Donahue Dec, ¶ 6-7; Reese Dec, ¶ 6. There is a public complaint. Transcript Excerpt – September 13, 2021 Bethel

3

Board of Education, Regular Meeting, Doc. 17-1, PageID 582-591.  Plaintiffs' argument to the contrary lacks merit.

In their preliminary injunction motion, Plaintiffs focus on the window of September 13, 2021, to January 10, 2022, in claiming a new "rule" is adopted in violation of the Open Meetings Act.  Then, in their reply, they rely upon the Franz Declaration to state the purported new rule is adopted illegally in an executive session conducted at the December 7, 2021, Board workshop meeting.  No discussion is offered to explain why this argument is being made for the first time in their reply.  Plaintiffs again change their argument at the February 7, 2023, oral argument, *after* the instant motion in limine is filed.  Seemingly acknowledging no rule "change" exists here, Plaintiffs now suggest requests for accommodation by transgender students, and transgender students only, such as Anne Roe, must be decided by the public body, in an open meeting, so that members of the public, such as Plaintiffs, can be heard on the "custom," a 42 U.S.C. § 1983 concept, not an Ohio Open Meetings concept.  Hearing Tran., p 8:16-17, Doc. 56, PageID 1176; 12:11 – 13:22, PageID 1180-1181, 64:13-23, PageID 1232; see also Elam Dec, ¶ 12, Doc. 18-1, PageID 631; King Dec, ¶ 16-18, Doc.18-2, PageID 633; Mansfield Dec, ¶ 18, 21-24, Doc. 18-3, PageID 637-638; Sebastian Dec, ¶ 12-15, Doc. 18-4, PageID 640.  Why?  They state because "it's a contentious issue of public debate."  Id., p 63:9-10; 63:6-25, PageID 1231; 57:1-9, PageID 1225.  When the Board of Education explains such will violate Anne Roe's federal and state privacy rights secured by FERPA and that student accommodation requests will never be discussed on the public record at public meetings for Anne Roe or any student (Id., p 17:25 – 26:11, PageID 1185-1194), Plaintiffs continue to argue "controversy," standing alone, dictates transgender students' accommodation requests must be handled differently from all others, in the public eye, and decided not by administration but by the Board of Education (Id., p 63:9-10; 63:6-25, PageID 1231)  – a

violation of Board of Education Policy. Board – Superintendent Relationship, po1210, https://go.boarddocs.com/oh/bethlsd/Board.nsf/Public#, last visited Feb. 22, 2023. It is additionally submitted based upon the expansion of Plaintiffs' argument at hearing that federal and state FERPA additionally protect against disclosure of the communications at issue here.

### B. Franz Violates the Board of Education's Attorney Client Privilege by Supplying Plaintiffs with Confidential Information and Executing the Declaration

"'The fact that the privilege is invoked to protect communications made by employees of a governmental entity rather than a private party does not change the analysis.' *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2009)." *Myers v. City of Centerville*, S.D.Ohio No. 3:20-cv-00402, 2023 U.S. Dist. LEXIS 8297, at *10 (Jan. 17, 2023). Public officers have the right, duty and privilege in time of uncertainty to seek and receive advice and opinions from their duly constituted legal advisor. *State, ex rel. Reedes, v. Mun. Civ. Serv. Comm.* (C.P. 1958), 82 Ohio Law Abs. 225, 165 N.E.2d 490, affirmed (Franklin App. 1959), 166 N.E.2d 264. *Theile v. Harris*, 1st Dist. Hamilton No. C-860103, 1986 Ohio App. LEXIS 7096, at *16 (June 11, 1986). When given that advice, they are under moral or ethical, if not legal, obligation to act accordingly." 2 Oh Jur Administrative Law § 18.

Plaintiffs do not dispute that Ms. Franz is entitled as a member-elect to attend the executive session where attorney client privileged information is shared. Not only are members-elect entitled to attend executive session, but any person may be invited and required to maintain privilege. *Univ. Estates, Inc. v. City of Athens*, S.D.Ohio No. 2:09-cv-758, 2011 U.S. Dist. LEXIS 19262, at *9-10 (Feb. 25, 2011) (any argument that the executive session itself was invalid because of the presence of non-council members is without merit).

Instead, they argue the executive session is not properly noticed, the information is not privileged, and if privileged, the privilege is waived because President Mansfield makes a statement citing relevant law to educate the public on the controversial issue and because a legal white paper was released to the public in 2022. None of these arguments should be adopted to allow for disclosure of and admissibility of the Franz Declaration.

Neither the public records requested and received by Plaintiffs' counsel pre-suit nor the Mansfield statement disclose or waive privileged legal advice. Even if they did, that does not create an express waiver of the executive session and attorney client privileged and FERPA protected information shared within that executive session. Plaintiffs do not provide the Court with the enclosure letter served with the produced public records. The enclosure letter states the reasons for the redactions, to protect student privacy. Hageman Dec, Ex. C, ¶ 9. These records evidence the Board's transparency, that no rule "change" occurred here, and that the Board protects student privacy rights as required by federal and state law. Any legal white paper on Title IX produced to the public in the spring of 2022, likewise, does not waive executive session or attorney client privilege shielding disclosure for the December 7, 2021, executive session. *Univ. Estates, Inc. v. City of Athens*, S.D.Ohio No. 2:09-cv-758, 2011 U.S. Dist. LEXIS 19262, at *8-9 (Feb. 25, 2011) ("Plaintiffs also apparently argued previously that confidentiality ceased to exist upon execution of the memorandum in understanding. Plaintiffs have failed to direct this Court to any statutory basis supporting the proposition that memorialization of an agreement, or even an agreement to agree, provides a statutory exception to the ongoing preservation of confidentiality. Plaintiffs have also failed to cite any Ohio case law, and this Court has not uncovered any case law, holding that such memorialization vitiates confidentiality.")

Ultimately, there is no express waiver of the privilege by the Board of Education. In *Ross v. City of Memphis*, the Sixth Circuit held that a City did not waive its attorney-client privilege when an individual City official seemingly puts that privilege at issue by raising the defense of the reliance on assistance of counsel. The Sixth Circuit noted that "generally in conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client." *Id.* at 605; see also *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir.2001) ("The default assumption is that the attorney only represents the corporate entity, not the individuals within the corporate sphere ...."). Accordingly, under *Ross*, the attorney-client privilege in this case belongs to the Board of Education, and not Ms. Franz individually. The attorney client privilege prohibits the disclosure of legal advice by Ms. Franz. *Humphries v. Chicarelli*, 554 F.App'x 401, 401-402.

Acted upon advice of legal counsel is not raised as a defense here. No individual is sued in his/her individual capacity. Plaintiffs, when referencing the individually named defendants, do not make this clear. Plaintiffs' Memo Opp to Motion in Limine, at fn 1, Doc. 58, PageID 1266.

Just because Ms. Franz objected to the accommodation granted by the administration does not mean that she can decide on her own, as a former board member (or current board member) to waive the Board of Education's privilege. Only the Board of Education, through a motion and winning vote, can waive its privileges. Plaintiffs know by reviewing the public meetings that no such thing ever occurred.

## C. Franz Violates the Board of Education's Executive Session Privilege by Supplying Plaintiffs with Confidential Information and Executing the Declaration

*Myers v. City of Centerville*, S.D.Ohio No. 3:20-cv-00402, 2023 U.S. Dist. LEXIS 8297, at \*6-9 (Jan. 17, 2023) explains why the requested relief sought here should be granted, and

Plaintiffs' arguments rejected:

> Plaintiff seeks to compel Defendant Davis to testify about a City Council executive session that addressed the discipline of another employee, Brad Kavalunas. "Plaintiff seeks to know what information was raised in that session, what guidance on discipline was sought and/or received from the council, and whether that guidance was followed." (Doc. 48, PageID #1928.) Defendants argue that this information is privileged and non-discoverable under Ohio Revised Code Sections 102.03(B) and 121.22(G).

> Although Ohio city councils must usually hold meetings in public, Ohio law permits city councils to have private discussions about individual employees in executive session. Specifically, city councils may go into executive session "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee ... or the investigation of charges or complaints against a public employee ...." R.C. 121.22(G)(1). Current and former public officials and employees are prohibited from disclosing or using, "without appropriate authorization, any information acquired ... in the course of the [individual's] official duties that is confidential because of statutory [*7] provisions." R.C. 102.03(B). The Sixth Circuit has held that this "executive session privilege ... makes confidential any communications that occur during the executive sessions of political subdivisions." *Humphries v. Chicarelli*, 554 Fed. App'x 401, 401 (6th Cir. 2014).

> Citing *Humphries* and a decision from this Court, *University Estates, Inc. v. City of Athens, Ohio*, No. 2:09-cv-758, 2011 U.S. Dist. LEXIS 19262, 2011 WL 796789 (S.D. Ohio Feb. 25, 2011) (Frost, J.), Defendants argue that the individual Defendants, who are public employees, cannot be compelled to testify about their recollection of confidential discussions held during the City Council's executive session. (Doc. 51, PageID #1968-69.) The Court agrees.
> There is no dispute that Plaintiff seeks to compel the discovery of confidential information that is protected by the Ohio executive session privilege. Both the Sixth Circuit and this Court have held that such communications are privileged. *Humphries*, 554 Fed. App'x at 401; *University Estates*, 2011 U.S. Dist. LEXIS 19262, 2011 WL 796789; *Talismanic Properties, LLC v. City of Tipp City, Ohio*, No. 3:16-cv-285, 2017 U.S. Dist. LEXIS 90290, *6-8 (S.D. Ohio June 9, 2017) (Newman, J.). Thus, they are not discoverable.

> Seeking to forego this result, Plaintiff argues that R.C. 102.03(B) does not establish an "absolute" executive session privilege and that its existence requires "a fact dependent inquiry." (Doc. 56, PageID #2045.) Plaintiff's cited cases are not persuasive.

> First, Plaintiff cites *Springfield Local Sch. Dist. Bd. of Educ. v. Ohio Assoc. of Pub. Sch. Employees*, 106 Ohio App. 3d 855, 667 N.E.2d 458 (9th App. Dist. 1995). In

8

that case, an Ohio appellate court held that "there is no absolute privilege to be accorded discussions held in executive session." [*8] *Id.*, 106 Ohio App. 3d at 868. Without addressing the provision at issue here—namely, R.C. 102.03(B), which prohibits public employees from disclosing matters discussed during executive sessions—the appellate court held that Ohio law only protects against the disclosure of executive session communications to the general public, and not in litigation. *Id.* at 869. This holding is inconsistent with R.C. 102.03(B), which does not make an exception for litigation. Because the appellate court did not consider R.C. 102.03(B) in its analysis—and because this case pre-dates the Sixth Circuit's decision in *Humphries*—the undersigned does not find it persuasive.

Next, Plaintiff cites *Kamenski v. Wellington Exempted Village Schs.*, No. 1:14-cv-01589, 2016 U.S. Dist. LEXIS 58036 (N.D. Ohio May 2, 2016). In that case, the court held that the executive session privilege does not apply to "discussions occurring during an executive session that are unrelated to the topics properly discussed in executive session" pursuant to Ohio law. *2016 U.S. Dist. LEXIS 58036*, [WL] at *8. Here, however, Plaintiff does not contend that the information he seeks to compel was improperly considered during the City Council's executive session. Therefore, *Kamenski* does not aid the Plaintiff's arguments.

Finally, Plaintiff cites *McComas v. Hill Local Sch. Dist.*, No. 1:07-cv-573, 2009 U.S. Dist. LEXIS 151921 (S.D. Ohio May 11, 2009) (Dlott, J.). In that case, the Court held that there is no executive session privilege under R.C. 121.22(G), and further held [*9] that compelled disclosure is consistent with R.C. 102.03(B) if the Court authorizes the discovery. Because this case was decided before *Humphries v. Chicarelli*, 554 Fed. App'x 401 (6th Cir. 2014), which recognized the existence of the executive session privilege in litigation, the undersigned declines to follow it.

For all these reasons, Plaintiff's request to compel the production of information relating to discussions occurring during the City Council's executive session is DENIED.

*Myers v. City of Centerville*, S.D.Ohio No. 3:20-cv-00402, 2023 U.S. Dist. LEXIS 8297, at *6-9

(Jan. 17, 2023).  Unlike *Kamenski,* the record here is not limited to minutes which make no

reference to sharing of legal advice in executive session.

Board of Education members and member-elect and the former Superintendent agree

attorney client privileged information is shared and discussed and that no deliberations or secret

voting occurred during the December 7, 2021, executive session.  Firks Dec, ¶ 8, Doc. 48-1,

PageID 1052; Donahue Dec, Ex. B, ¶ 6-7; Elam Dec, ¶ 8-9, Doc. 18-1, PageID 630; King Dec, ¶ 8-9, 11, Doc. 18-2, PageID 632; Mansfield Dec, ¶ 8-9, 11, Doc. 18-3, PageID 635; Reese Dec, Ex. E, ¶ 7-8; Sebastian Dec, ¶ 8-9, 11, Doc. 18-4, PageID 639.  Ms. Franz is the only one claiming otherwise.  Franz Dec. ¶20, Doc. 37-3, PageID 816.  Ms. Franz is the only one with no public meeting training.  Hageman Dec, Doc. 48-2, PageID 1080-1085, ¶5-9; Hageman Dec., Ex. C, ¶5-8 Elam Dec, ¶ 16, Doc. 18-1, PageID 631; King Dec, ¶ 19, Doc. 18-2, PageID 634; Mansfield Dec, ¶ 25, Doc. 18-3, PageID 638; Sebastian Dec, ¶ 16, Doc. 18-4, PageID 640.

Board of Education member Reese, and member-elect Donahue, and the former Superintendent agree the O.R.C. 122.21 (G)(3) exception, which was noticed, covers students and that the public complained about transgender access to communal restrooms aligning with the students' sexual identity.  Firks Dec, Doc. 48-1, PageID 1052, ¶ 5-7; Donahue Dec, Ex. B, ¶ 6; Reese Dec, Ex. E, ¶ 6.

There is a public complaint.  Transcript Excerpt – September 13, 2021 Bethel Board of Education, Regular Meeting, Doc. 17-1, PageID 582-591.  Plaintiffs' argument to the contrary lacks merit.

Beyond the attorney-client privilege, Ohio law also forbids Ms. Franz or any other board member from testifying as to or otherwise disclosing the discussions that occurred in the context of the December 7, 2021, executive session.  O.R.C. 121.22(G).

### D.  Franz Violates Her Obligations Under Ohio Revised Code Chapter 102, Public Officers – Ethics,  by Supplying  Plaintiffs with Confidential Information and Executing the Declaration

BOE Defendants argue Ms. Franz violated her mandatory obligations under O.R.C. 102.03(B) and Plaintiffs disagree.  Plaintiffs' Memo Opp to Motion in Limine, Doc. 58, PageID 1280-1282.  Plaintiffs' argument is rejected by this Court.

### E. The Procurement and Filing of the Franz Declaration Violates Ohio Rules of Professional Conduct

Plaintiffs contend no prejudice exists by their breach of the attorney client and executive session privileges. The violation of the Ohio Prof.Cond.R. 4.2, 4.3, 1.6 and 4.4 prejudices and harms the Board of Education for the reasons opined to a reasonable degree of professional certainty by Alvin E. Mathews, Esq., legal ethics and professional liability expert. Mathews Dec. ¶ 1-10, Doc. 48-3, PageID 1094-1097.

The violation of the privileges here, as a matter of law, harm the Board of Education. *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 25-26. The primary purpose of the attorney client privilege is to encourage full and frank communication between the client and attorney, and "'thereby promot[ing] broader public interests in the observance of law and administration of justice.' *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)." *Id.* at ¶ 25. "In conjunction with the attorney-client privilege, the Rules of Professional Conduct not only encourage but require attorneys to engage in frank discussions with their clients regarding matters that may affect the legal affairs their clients have entrusted to them." *Id.* at ¶ 26.

When opposing counsel engages in ex parte communications with a former school board member and causes privileged communications to be filed on the public court docket the sanctity of privileged communications is harmed as a matter of law because the observance of law and administration of justice is ignored, chilling the free flow of information between the client and its attorney for fear of future disclosure.

No attorney explains to the Court what he or she said to Ms. Franz, when exactly such conversations occurred, and what Ms. Franz said in response, if anything. The record created by

Plaintiffs on this issue leaves one to wonder who spoke to Ms. Franz. Her declaration, which is fraught with unreliable, conclusory allegations, uses only the vague descriptor, "Plaintiffs' counsel." The Second Franz Declaration should either not be considered admissible evidence or afforded no or little evidentiary weight. *Sigmon v. Appalachian Coal Properties*, 400 F.App'x 43, 48-49 (6th Cir.2010) ("[T]he affidavits are of little value to the present inquiry. While an affidavit may certainly be sufficient to establish a genuine issue of material fact, *see Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir. 1994) ("The nonmoving party's own affidavit . . . can constitute affirmative evidence to defeat a summary judgment motion."), that is not the case if the affidavit contains only conclusory allegations and naked conclusions of law, *see Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985) ("[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." (citing C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2738 (1983))).)"

Plaintiffs argue their legal counsel are not obligated to demonstrate their compliance with Ohio Prof.Cond.R. 4.2, 4.3, 1.6 and 4.4 when tendering a declaration from former Board Member Franz. CITE. Instead, they insist their ex part contact with the former Board Member should be investigated, after their disclosure of privileged information belonging to the Board of Education Defendants, by the Board's legal counsel because their compliance should be assumed. The Board's legal counsel is not charged with such duty. Plaintiffs' counsel are charged as officers of the Court with demonstration of affirmative Rule compliance. Second Alvin Mathews, Esq. Dec., Ex. D, ¶ 6 and discussion of decisional law below.

One of the purposes of the Ohio Professional Conduct Rules is to prohibit lawyers from engaging in action that could improperly prejudice the outcome of a case or legal matter. Ohio

Prof.Cond.R. Preamble: A Lawyer's Responsibilities 5. Here, instead of contacting opposing counsel and/or the Court to provide notice regarding the desire to question Ms. Franz about communications occurring in executive session, the questioning occurred ex parte, and the Board of Education is deprived opportunity to move the Court for a protective order before the public filing is made which improperly discloses privileged communications. There is no question that the Board of Education is operated through the vote of its members. There is no question that the Board of Education, not any board member, is the holder of the Board's privileges. There is no question that the Board of Education has legal counsel at all times relevant through the undersigned, Mr. Podgurski. There is no question that Plaintiffs' counsel never contacted Mr. Podgurski (or Ms. Dinkler or any other lawyer serving the Board of Education) at any time to discuss their desire and intent to engage in ex parte communications with Ms. Franz. There is no question that Plaintiffs' counsel never notifies the Board's legal counsel that they engaged in ex parte communications with Ms. Franz. There is no question Plaintiffs' counsel never discloses to the Board's legal counsel that they secured a declaration from Ms. Franz disclosing executive session privilege and attorney client privileged communications from Ms. Franz, or, alternatively, to ask whether the Board would be claiming privilege over the executive session privilege and attorney client privileged communications from Ms. Franz *before* filing the communications with the Court on the public docket. The first time defense counsel learn of the Franz Declaration is upon its filing on the public docket.

To deflect attention away from this, Plaintiffs assert the Board's legal counsel violated Civ.R. 11, stating they failed to investigate before asserting ethics' violations and criticize the Board's ethics' expert. Given that Mr. Podgurski is never contacted, rule compliance is deficient.

Ms. Franz's contact with various attorneys to purportedly secure opinions, based upon an unknown unknown facts, does not protect the legal rights of the Board of Education at issue here.

As for ethics expert Mathews, his qualifications to serve as an ethics expert have never been questioned, but for by Plaintiffs here. Second Alvin Mathews, Esq. Dec., Ex. D, ¶ 3. He is qualified and his opinions are proper, as they are based upon disclosed facts which demonstrate Rule compliance could not have been properly achieved. *Id.* ¶ 2, 4-7.

The second Franz Declaration does not state the legal counsel with whom she consulted consents to her communicating with Plaintiffs' counsel.

Nothing in the second Franz Declaration addresses Plaintiffs' counsel's mandatory obligation to not use methods of obtaining evidence that violate the legal rights of the organization. A call to General Counsel Podgurski before the ex parte communication with Ms. Franz to address this issue was required. *Boatner v. Pushmataha Cty./Town of Antlers Hosp. Auth.*, E.D.Okla. No. CIV 2003-494(P), 2006 U.S. Dist. LEXIS 109198, at *10-12 (Jan. 5, 2006) (a deposition should be used over informal ex parte interviews where privileged information could be solicited and statements made by former executives could potentially bind entity, relying on, among other precedents, *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 745 F.Supp. 1037, 1040 (D.N.J.1990) (holding "any other person" category in Rule 4.2 extends to former employees, especially those who can bind entity).

Plaintiffs' inconsistent and after-the-fact argument that they determined the information to lack privilege or, alternatively, that privilege is waived, demonstrates the "anti-contact" Rule 4.2 violation. If Plaintiffs' counsel and/or Franz actually determine the communications disclosed in Franz's Declaration were not protected from disclosure by any privilege, then why warn Ms. Franz? Plaintiffs have not explained this to the Court.

Plaintiffs do not dispute that "[b]ecause this matter has been filed in Southern District of Ohio, the conduct of the attorneys in this matter is governed by the Ohio Rules of Professional Conduct." *Curatola v. American Elec. Power*, 2008 U.S. Dist. LEXIS 122153 at n 2 (S.D. Ohio) (May 19, 2008) (Dlott, J.).  Rule 4.2 of the Ohio Rules of Professional Conduct "governs an attorney's duties when communicating with someone who is represented by counsel." *Id.* at *6. Comment [7] to Rule 4.2, the anti-contact rule, states: "In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization."  All persons identified in Comment [7] are "protected by the anti-contact rule."  Ohio Sup. Ct. Bd. Comm'r Grievances & Discipline, Op. 2005-03 (Feb. 4, 2005) ("comment 7 to Model Rule 4.2 illuminate[s] which employees are protected by the anti-contact rule.") ("Op. 2005-03").  Plaintiffs do not contest that their contact with Ms. Franz is governed by Rule 4.2 and the other Rules cited by the Board of Education in moving for the Motion in Limine.

The rationale for the anti-contact rule is rooted in protecting privilege, because when privilege is violated, both the institutional entity, the Board of Education here, and the person being contacted, former Board Member Franz, are both harmed when disclosure of privileged information occurs. "The legal system in its broadest sense functions best when person in need of legal advice or assistance are represented by their own counsel."  . . . The "anti-contact rules provide protection of the represented person against overreaching by adverse counsel, safeguard the client-lawyer relationship from interference by adverse counsel, and reduce the likelihood that clients will disclose privilege or other information that might harm their interests."  Op. 2005-03 at 2 (citations omitted).  Comment [1] reminds lawyers they "not only represent clients but [have] a special responsibility for the quality of justice."  The Rule is absolute and protects interests far

15

broader than those of the parties, it protects the core of the adversarial system, as stated in *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1800 , 1804 (S.D.N.Y 1989) (quoting G. Hazard & Hodes, *The Law of Lawyering*, 434-35 (1988)):

> [Rule 4.2] guarantees fairness in the adversarial system.  It prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople.  It preserves the attorney-client relationship.  The Rule also protects "opposing lawyers as well as opposing parties.  Lawyer B may have two reasons for not wanting his client to speak to Lawyer A alone.  The obvious reason is that the client will damage his case by making unwise voluntary statements . . . Another reason is fear that the lawyer's own tactics will be compromised, and that his own reputation will suffer as a result."

The Rule violation is demonstrated by Plaintiffs' argument that O.R.C. 102.03 (B) does not apply to Ms. Franz when this Court recently held the opposite, as discussed above.  Had Mr. Podgurski, as Board general counsel, and/or Ms. Dinkler, Trial Counsel, been contacted before the disclosure to privileged communications belonging to the Board of Education occurred, Ms. Franz would have been properly cautioned, or she could have been properly cautioned by qualified personal counsel, *and* Defendants' counsel would have immediately moved for court intervention to allow the Court, not Plaintiffs or Ms. Franz, to determine the legal rights and remedies of the parties before the Board of Education suffered prejudice, through the filing of a motion for protective order.

Better yet, Plaintiffs' counsel could have and should have affirmatively first sought direction from the Court before contacting former Board of Education member Franz rather than risk an ethical violation.  *Summers v. Rockwell Internat'l Corp., Inc.,* 1993 U.S. Dist. LEXIS 21173 (S.D. Ohio April 9, 1993) (Kemp., J.) (Plaintiffs came to court before contacting either current or former employees); *Wasmer v. Ohio Dep't of Rehabilitation and Correction,* 2007 U.S. Dist. LEXIS 11881 (S.D. Ohio Feb. 21, 2007) (Kemp., J.) (Plaintiff came to court before ex parte contact

and sought direction); *Smith v. Kalamazoo Ophthalmology*, 322 F.Supp.2d 883, 891 (W.D.Mich.2004) ("Nonetheless, even if Salliotte did not disclose privileged information to Piper, Piper was aware of Defendant's concerns about the possibility that Salliotte would disclose such information, and the better course of action would have been for Piper to advise Thelen of his impending meeting with Salliotte to allow Defendant an opportunity to seek a protective order limiting Piper's communications with Salliotte to areas of non-privileged information."); See also *Smith v. Kalamazoo Ophthalmology*, 322 F.Supp.2d at 885-887, 890-891. And see *EEOC v. Honda of Am. Mfg., Inc.*, S.D.Ohio No. 2:06-cv-0233, 2008 U.S. Dist. LEXIS 15708, at *14-17 (Feb. 13, 2008) (under Model Rule 4.4 the attorney must not solicit privileged information ex parte and if received, the opposing counsel must be alerted, any privileged documents returned, and where parties disagree the court decides, not the party collecting the ex parte information).

While not the case here, even deprivation of discovery where party fails to identify names of its employees who had knowledge about the alleged negligence act does not constitute grounds to excuse compliance with Rule 4.2. *McCallum v. CSX Transp., Inc.,* 149 F.R.D. 104, 107 (M.D.N.C. 1993) (also holding "one can request permission from the company's attorney or seek permission from the court. . . . The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not act at his or her own peril." (Id. at 110)).

Instead of affirmatively ensuring compliance with their ethical obligations, Plaintiffs serve BOE Defendants' counsel with a Rule 11 safe harbor and demand all defense counsel provide immediate availability for a court conference, stating "[w]aiting until end of next week is potentially prejudicial to *our client*." Lynnette Dinkler Dec., ¶ 4-7; BOE 567 (emphasis added). Plaintiffs never offer an explanation to allow Defendants to understand the basis for claiming potential prejudice to their client. *Id.*

Ms. Dinkler and Mr. Podgurski will separately respond to any Rule 11 filing made, deny all wrongdoing, and will ask the Court to reject this tactic seemingly being imposed in an attempt to intimidate and/or harass where Plaintiffs own shortcomings are solely to blame for the filing of the Motion in Limine. See also Second Alvin Mathews Dec., ¶5.

Even where evidence is lacking to prove that legal counsel "intended to cause the inappropriate contact," and that legal counsel failed to "fully appreciate the full consequences" of their actions under Rule 4.2, a violation of Rule 4.2 still stands. *Curatola*, at *2-3, 6-10. A showing of intent by some courts is required only where the sanction of disqualification is sought (*Id.*, at *9-10). The Sixth Circuit approves disqualification of attorneys where a conflict of interest existed. *See, e.g., Dana Corp. v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882 (6th Cir. 1990); *Manning*, 849 F.2d 222; *Gordon v. Norman*, 788 F.2d 1194 (6th Cir. 1986); [**9] *General Mill Supply Co.*, 697 F.2d 704; *General Electric Co. v. Valeron Corp.*, 608 F.2d 265 (6th Cir. 1979), *cert. denied*, 445 U.S. 930, 63 L. Ed. 2d 763, 100 S. Ct. 1318 (1980); *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979). The BOE Defendants are not seeking to deprive Plaintiffs of their chosen legal counsel in making the instant motion. Defendants do demand, however, a fair and balanced playing field where the Board of Education's legal rights are acknowledged and preserved, and Plaintiffs are forbidden from using evidence improperly acquired.

The record still does not evidence Plaintiffs' counsel, before interviewing former Board Member Franz, disclose their identity as it remains unknown who spoke to Ms. Franz and what was actually said to her; or fully explain they represent clients adverse to the Board of Education and immediately inform her she is not to divulge any privileged communications the former elected office holder may have had with general counsel or other retained counsel as the second

Franz Declaration (Doc. 58-2, PageID 1292-1295) is vague and conclusory and no declarations are provided by Plaintiffs' legal counsel. *Id*.; Ohio Bd. Op. 2016-5 (Aug. 15, 2016), p 4. Plaintiffs' counsel may not provide former Board Member Franz with legal advice, either, such as potential waiver of any privilege. *Id*. As such, Plaintiffs' counsel are not entitled to elicit the privileged contents of Ms. Franz's Declaration and are not permitted to cause it to be evidence in this action.

## III. CONCLUSION

The Franz Declaration should be stricken because it violates attorney client privilege, Ohio's executive session privilege, Ohio Revised Code Chapter 102 Public Officers – Ethics, and Ohio Rules of Professional Conduct, and federal and state student privacy rights under FERPA. These grounds independently and collectively compel the requested relief. Defendants Bethel Local School District Board of Education, and Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin, in their official capacities, respectfully request this Court issue an order:

- Prohibiting the use of the Jessica Franz Declaration (Doc. 37-3 PageID 814-817) as evidence for any cause in this proceeding;

- Striking the Jessica Franz Declaration from the record;

- Removing the Jessica Franz Declaration from the docket and placing it under seal to preserve the appellate record while limiting further prejudice to Defendants BOE.

Respectfully submitted,

s/ Lynnette Dinkler
Lynnette Dinkler (0065455)
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419
(937) 426-4200
(866) 831-0904 (fax)

19

*Attorney for Defendants Bethel Local
Schools District Board of Education, and
in their official capacities Lydda Mansfield,
Lori Sebastian, Natalie Donahue, Danny
Elam, Jacob King, and Matthew Chrispin*

s/ John A. Podgurski
John A. Podgurski (0020923)
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
*Attorney for Defendant Bethel Local
School District Board of Education*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2023, I served the foregoing, via the Court's CM/ECF E-filing System which will send notification to the following:

Joseph P. Ashbrook
jpashbrook@ashbrookbk.com
Julie E. Byrne
jebyrne@ashbrookbk.com
Ashbrook Byrne Kresge, LLC
P.O Box 8248
Cincinnati, OH 45249
*Attorneys for Plaintiff*

Malita Picasso
mpicasso@aclu.org
Rose Saxe
rsaxe@aclu.org
Aditi Fruitwala
afruitwala@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
*Attorneys for Intervenor Defendant Anne Roe*

Nicholas Barry (pro hac vice)
Nicholas.barry@aflegal.org
America First Legal
611 Pennsylvania Ave, SE #231
Washington, DC 20003
*Attorneys for Plaintiffs*

Michael Meuti
mmeuti@beneschlaw.com
David M. Hopkins (0095285)
dhopkins@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
*Attorneys for Intervenor Defendant Anne Roe*

20

David Carey
dcarey@acluohio.org
ACLU of Ohio Foundation
1108 City Park Ave., Suite 203
Columbus, OH 43206

Freda Levenson
flevenson@aclueohio.org
ACLU of Ohio Foundation
4506 Chester Ave.
Cleveland, OH 44103
*Attorneys for Intervenor Defendant Anne Roe*

s/ Lynnette Dinkler
Lynnette Dinkler 0065455