UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN AND JANE DOE NO. 1, *et al.*, <br>     Plaintiffs, <br><br> v. <br><br> BETHEL LOCAL SCHOOL DISTRICT <br> BOARD OF EDUCATION, *et al.*, <br>     Defendants. | Case No. 3:22-cv-00337 <br><br> Judge: Michael J. Newman |

**DEFENDANT-INTERVENOR ANNE ROE'S BRIEF IN RESPONSE TO PLAINTIFFS' BRIEF ON STANDING TO BRING FEDERAL CLAIMS**

## INTRODUCTION

Plaintiffs fundamentally ignore the important purpose served by the standing requirements imposed by Article III of the U.S. Constitution. Federal courts are not legislatures. Though they interpret the law with binding effect, they do not do so preemptively or in a vacuum, but only to the extent necessary to resolve actual, live disputes with concrete stakes and specific, ripe fact patterns. Standing requirements exist, in short, to preserve the separation of powers.

Plaintiffs' Title IX claim (Count Two of the Complaint) asks this Court to do precisely what Article III forbids: to issue a declaration that advises the parties about what the law says based on a mere disagreement between them. Rather than challenging a policy, practice, action, or condition on the part of the Bethel Local School District (the "District"), the Title IX claim targets the District's analysis of the underlying law. Plaintiffs do not argue that Title IX itself entitles them to any relief, but merely that the District's decisions were motivated by reasoning that Plaintiffs dispute. That is an abstract question; even judgment in Plaintiffs' favor on that claim would not

1

actually afford them any relief on its own, nor would it actually require the District to change course. Rather, according to the Complaint, their purpose is merely to ascertain whether the District *could have* acted differently than it did—presumably, in order to lend support to Plaintiffs' efforts to persuade it to act differently in the future.

In other words, Plaintiffs' Title IX claim seeks an advisory opinion. As they admit in their brief, this claim is meant as a preemptive strike against possible future Title IX litigation by Anne Roe, which would mean prejudging a case that does not exist. Perhaps even more revealingly, Plaintiffs' counsel opined at oral argument that "Title IX needs [a federal judge's] opinion, and it needs the Sixth Circuit Court of Appeals' opinion. All the way up to the Supreme Court." Hearing Transcript, ECF No. 56 at 69:6–9. But Plaintiffs' desire to transform the law, and to contest the District's understanding of it, does not confer standing on its own. Defendant-Intervenor Anne Roe respectfully submits that Plaintiffs' Title IX claim should be dismissed for lack of standing.

Moreover, Plaintiffs have failed to allege facts that would support standing for the parent Plaintiffs' Equal Protection and Free Exercise claims. As to those claims, the Complaint alleges only that the student Plaintiffs' rights have been affected. Parents do not have their own, independent standing based on alleged constitutional injuries to their children, or based on mere disagreement with the District's policies. As to the parent Plaintiffs, those claims should also be dismissed.

At this time, Defendant-Intervenor does not dispute that the parent Plaintiffs have standing as to Count Three (Parental Rights). Nor does she dispute at this time that the student Plaintiffs have standing to pursue Count Four (Equal Protection) or Five (Free Exercise). As the Court's order is limited to standing on Plaintiffs' federal claims, *see* ECF No. 52, Defendant-Intervenor reserves the right to further challenge the validity of all claims on all applicable grounds in due

course. In addition, Defendant-Intervenor takes no position on Plaintiffs' claim under the federal Protection of Pupils Rights Amendment, including whether Plaintiffs have standing to assert such a claim, because that claim does not implicate the basis upon which she intervened in this matter.

## **LAW AND ARGUMENT**

In order to establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buchholz v. Meyer Njus Tanick, Pa.*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Each of these elements must be satisfied, in order to ensure that federal courts adhere to the bounds of their power to resolve actual "Cases" and "Controversies." *See* U.S. Const. art. III § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (the three elements are the "irreducible constitutional minimum of standing").

An injury in fact "must be both '(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical.'" *Buchholz*, 946 F.3d at 861 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A threatened future injury may qualify only if it is "imminent," *Saginaw Cty., Michigan v. STAT Emergency Medical Services, Inc.*, 946 F.3d 951, 954 (6th Cir. 2020), and "certainly impending," rather than speculative. *R.K. by and through J.K. v. Lee*, 53 F.4th 995, 999 (6th Cir. 2022) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

While the injury need not be pecuniary, "courts have recognized that there are, as there must be, limits on what kinds of allegations of intangible harm satisfy Article III." *Buccholz,* 946 F. 3d at 861. Thus, neither allegations of "psychological consequence . . . produced by observation of conduct with which one disagrees" nor "'general emotional harm,' no matter how deeply felt," constitute sufficient injury to satisfy the requirements of Article III. *See id.* (quoting *Valley Forge*

3

*Christian College v. Ams. Utd. for Separation of Church & State*, 454 U.S. 464, 485 (1982), and *Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995).

The burden of establishing each element of standing rests with the plaintiff, "and at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Buchholz*, 946 F.3d at 861 (citing *Spokeo*, 136 S. Ct. at 1547); *see also Huff v. TeleCheck Servs.*, 923 F.3d 458, 462 (6th Cir. 2019) ("The burden of establishing standing rests with [plaintiff], and he must provide the allegations or evidence required at each stage of the litigation." (citing *Lujan*, 504 U.S. at 561)).

I. **Plaintiffs Lack Standing for Their Title IX Claim, As They Have Failed to Allege a Case or Controversy as Required by Article III of the U.S. Constitution.**

Plaintiffs fail to assert a valid cause of action under Title IX,[1] but instead ask this Court to determine, in the abstract, whether Title IX requires Defendants to allow transgender students to use the communal restroom consistent with their gender identity. Complaint, ECF No. 1 at ¶ 108. Although they do generally allege that their constitutional rights have been infringed upon, neither the Complaint nor Plaintiffs' standing brief demonstrates that their purported injury arises directly from Title IX. Nor would judgment in their favor on their Title IX claim actually confer any cognizable relief on its own.

At bottom, Plaintiffs' Title IX claim confuses Defendants' alleged *practices, actions, or policies*, which Plaintiffs claim gave rise to constitutional injury, with Defendants' alleged *underlying reasons for taking actions*, which are not properly the subject of an independent claim. Even if it is true that Plaintiffs and Defendants have a profound difference of opinion on the

---

[1] Title IX of the Civil Rights Act of 1972 provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681.

4

requirements of Title IX, a declaratory judgment on that issue would not resolve any live controversy. If Plaintiffs' constitutional or statutory rights had been violated—which Anne Roe disputes—then they could seek relief based on the Constitution or statute. Instead, through their Title IX claim, they seek to preemptively adjudicate what they perceive as a claim that Anne Roe might someday make, and that depends entirely on a series of future events transpiring as Plaintiffs predict. *See* Standing Brief, ECF No. 59, at 3–4 ("If Plaintiffs' prevail on their free exercise claim and Defendants change the rule back to restrooms [that exclude transgender students], the school faces legal action from Roe regarding Title IX (which then affects the rights of Plaintiffs).").

Count Two of the Complaint should be dismissed for lack of standing.

> A. The Declaratory Judgment Act Does Not Eliminate Plaintiffs' Burden to Establish the Requirements of Article III.

A declaratory judgment claim does not relieve Plaintiffs of their burden to establish the standing requirements of Article III. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). "The Declaratory Judgment Act does not alter these [Article III] rules[,]" nor does it "change the essential requisites for the exercise of judicial power." *Saginaw Cty.*, 946 F.3d at 954. Federal courts are prohibited from delivering "an expression of opinion" about the law where doing so would not resolve a live controversy. *See id.* (quoting *Muskrat v. United States*, 219 U.S. 346, 361–63 (1911)).

Especially relevant here, "a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 n.7 (2007) (emphasis in original) (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)). Relatedly, "[t]he presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's

requirements." *Diamond v. Charles*, 476 U.S. 54, 62 (1986); *accord Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021).

Yet that is the nature of Plaintiffs' Title IX claim. In other legal claims, Plaintiffs allege that their constitutional or statutory rights have been violated, and assert that the Constitution or a statute provides a legal basis for them to receive relief. By contrast, their Title IX claim alleges only that Defendants' underlying understanding of a law is wrong. They do not argue that the District has violated, or will violate Plaintiffs' own Title IX rights by permitting transgender students to use the communal restroom consistent with their gender identity. Nor do they seek a declaration from this Court that Title IX bars the District from any specified course of action in the future. Instead, they allege that they are entitled to a judgment that Title IX does not require the District to do what it did, and they ask this Court to adjudicate whether the District may permissibly take action *that it has stated no intention to take*. *See* Compl. ¶ 108 ("Plaintiffs seek a declaration the law does not require this and that it is permissible for the Board to have biologically sex-segregated facilities"). In part, this is an attempt to preemptively undercut an argument they anticipate that other parties may make in this or other litigation, by way of a declaratory judgment claim.

The Supreme Court has rejected precisely that maneuver. *See MedImmune*, 549 U.S. at 127 n.7. Plaintiffs may well adamantly disagree with the District's reasoning in permitting Anne Roe to use the communal girls' restroom, but that disagreement alone does not entitle them to have the boundaries of Title IX adjudicated by a federal court.

B. <u>Plaintiffs Fail to Allege Any Injury That is Traceable to Title IX.</u>

In their briefing, Plaintiffs assert three injuries in connection with their Title IX claim. First, they argue that "Anne Roe (who is a defendant in this case as well) threatened legal action on this issue" and that if Plaintiffs prevail, "the school faces legal action from Roe regarding Title IX

6

(which then affects the rights of Plaintiffs)." Second, they claim that their constitutional rights have been violated. Third, they claim that they have suffered "dignitary harms, anxiety, and emotional distress," causing students to "avoid the restroom and hold their urine." Brief on Standing, ECF No. 59 at 3–4. Plaintiffs' first theory fails because it is speculative, and several steps removed from Plaintiffs themselves. Their other theories cannot support a Title IX claim, because the alleged injuries are traceable only to Defendants' actions, not their interpretation of Title IX.

The fact that a sequence of future events might conceivably lead Anne Roe to bring a Title IX action against the District, which might in turn affect Plaintiffs' rights, cannot constitute an "imminent" or "certainly impending" injury to the Plaintiffs. *See Saginaw Cty.*, 946 F.3d at 954–55; *R.K.*, 53 F.4th at 999. It constitutes a hypothetical. By Plaintiffs' own account, any such controversy is two steps removed from the world as it stands today. Plaintiffs' rights would be at stake only if (i) they prevail in this action, and (ii) Anne Roe brings a Title IX claim against the school. The Sixth Circuit has refused to recognize standing based on this type of threatened legal actions. *See Saginaw Cty.*, 946 F.3d at 955 ("[T]here is a world of difference between talking about potential legal claims and acting on them"). Permitting this to serve as a basis for establishing standing would be even more inappropriate here than in *Saginaw* because Anne Roe's potential litigation would be directed at the District, rather than the Plaintiffs, and still would have nothing to do with *Plaintiffs'* rights under Title IX, rather than Anne's own.

Whether Plaintiffs would have standing sufficient to intervene in that hypothetical and future matter would depend entirely on the specific facts and legal arguments presented in that case. In either event, those facts and claims are not before this Court at this time. Plaintiffs cannot preempt future litigation by asking this Court to decide it before it is ever brought.

Plaintiffs' alleged constitutional and dignitary injuries arise (if at all) from the *actions* of the District—permitting transgender students to use the communal restroom that is consistent with their gender identity—and not from the District's *internal interpretation* of Title IX. They assert that "Defendants are enforcing Title IX in a manner that […] is causing Plaintiffs injuries, including violations of Plaintiffs' Constitutional rights." Doc. 59 at 3. Even if the District's actions were based on an incorrect interpretation of Title IX, however, Plaintiffs would have demonstrated only that the actions had infringed on their constitutional rights, not their statutory rights. That might afford them standing to raise constitutional claims, but it does not provide a basis to bring a Title IX claim.

Put another way, if Plaintiffs intend to challenge only the District's actions for infringing on their constitutional rights, then they might articulate a live (though ultimately meritless) claim—but that claim would turn on an interpretation of the Constitution, not Title IX. If instead they are asking for a declaration about the District's beliefs about the law, then they are asking this Court to adjudicate an abstract issue that did not cause Plaintiffs' injury. And, as discussed below, even adjudication of that issue in Plaintiffs' favor would afford them no meaningful relief.

C. <u>The Relief Sought by Plaintiffs' Title IX Claim Cannot Redress Their Alleged Injuries</u>

Redressability requires the Plaintiffs to show that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted); *R.K.*, 53 F.4th at 1001 (citing *Lujan*). "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S.Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Plaintiffs argue that "a declaratory judgement on Title IX that binds Plaintiffs, Defendants, and Intervenor-Defendant would redress this fundamental issue

among the parties." ECF No. 59 at 4. But they fail to explain precisely how any of the parties would be "bound" by a judgment on their Title IX claim. On the contrary, they implicitly concede that such a judgment would change nothing, because it would not actually result in the District changing anything. *See id.* at 3.

Plaintiffs' inability to satisfy the redressability element of standing for the Title IX claim is unmistakable when one considers the outcome of a ruling on this claim, either favorable or unfavorable to Plaintiffs. If the Court were to grant Plaintiffs the judgment on Title IX that they seek—namely, a declaratory judgment that Title IX does not require the District to permit transgender students to use the communal restroom that aligns with their gender identity—it would not redress Plaintiffs' alleged injury because the District would retain its power to implement such a policy, on an individual or school-wide basis. Judicial remedies "do not simply operate on legal rules in the abstract." *California*, 141 S.Ct. at 2115.

Alternatively, if the Court were to find that Title IX does in fact require the District to permit transgender students to use the communal restroom that aligns with their gender identity, such a ruling would still have no effect. That alone would not prevent Plaintiffs from obtaining their ultimate desired relief pursuant to one of their constitutional claims, because compliance with a federal statute is no defense to a constitutional violation. In fact, this latter example further highlights that Plaintiffs' arguments on the merits of Title IX are irrelevant to their actual claims for relief.

D. <u>Plaintiffs' Title IX Claim Seeks an Advisory Opinion of the Type Expressly Forbidden by Article III.</u>

"[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968). "When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive

Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III." *Id*. As a result, courts must be cautious not to decide "abstract, hypothetical, or contingent questions" in the absence of a live dispute that presents a precisely framed issue. *Alabama State Fed'n of Lab., Loc. Union No. 103 v. McAdory,* 325 U.S. 450, 461 (1945); *see also United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (advisory opinions are "advance expressions of legal judgment" on issues that "remain unfocused" without a live controversy).

Plaintiffs' Title IX claim is a poorly-disguised request for this Court to issue such an opinion. As discussed above, a substantial part of Plaintiffs' expressly stated basis for their Title IX claim is to determine, in advance, the outcome of a possible future case that might be brought by Anne Roe. *See supra* Section I.B.; ECF No. 59 at 3–4. The remainder of their stated basis is for this Court to decide not whether the District's actions were lawful, but whether the District *could* have taken alternative action that it elected not to take. Delving into abstractions in this manner is the hallmark of an advisory opinion. *See Fruehauf*, 365 U.S. at 157.

Plaintiffs have conceded that this is their goal. At the hearing on their motion for a preliminary injunction, Plaintiffs' counsel noted that they have brought a Title IX claim to obtain "clear binding guidance" and "to know what's required" by Title IX. Hearing Transcript, ECF No. 56 at 62:16, 62:9. Plaintiffs were "disappoint[ed]" at the District's belief that "Title IX requires us to do it," and so ask this Court to resolve the meaning of the law in advance so that the District "can make decisions off of it." *Id.* at 62:13–19.

Such guidance in the absence of a live controversy is precisely the type of advisory opinion that Article III courts are prohibited from issuing under our three-branch system of government. The issue is not whether a ruling would provide some measure of "guidance," as Plaintiffs seek.

10

The issue is that the Constitution does not permit federal courts to be drawn into ruling on half-formed questions and background disputes. Doing so would usurp the authority expressly reserved for the other two branches of government.

## II. Parent Plaintiffs Lack Standing for Their Equal Protection and Free Exercise Claims, As They Fail to Allege Any Injury in Fact Sufficient to Satisfy Article III of the U.S. Constitution.[2]

### A. Parent Plaintiffs Assert Only a Vicarious Injury for Equal Protection, Which Is Insufficient to Confer Standing

Parent Plaintiffs lack standing with respect to their equal protection claim. To begin with, "the general rule is that 'a litigant may only assert his own constitutional rights or immunities.'" *McGowan v. State of Md.*, 366 U.S. 420, 429 (1961) (citation omitted); *see also Flast v. Cohen*, 392 U.S. 83, 99 (1968) ("when standing is placed at issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable."). "The rule against generalized grievances applies with as much force in the equal protection context as in any other." *United States. v. Hays*, 515 U.S. 737, 743 (1995). Each Plaintiff must show that they have "personally been denied equal treatment" in order to be able to bring an equal protection challenge in federal court. *See Allen v. Wright*, 468 U.S. 737, 755 (1984).

Plaintiffs make the conclusory allegation that "parents of religious students" are receiving unequal treatment relative to "parents of transgender students" in that the Board's policy aligns with the preferences of the latter and not the former, *see* Compl. ¶¶ 123–24, but they allege no

---

[2] Although the immediate scope of this matter is federal claims, *see* Order, ECF No. 52, Defendant-Intervenor respectfully submits that for the reasons stated herein, parent Plaintiffs lack standing for their state-law equal protection and free exercise claims.

11

actual injury to the parents aside from mere disagreement with the policy.[3] Plaintiffs frequently conflate parents and students in their pleadings, but for purposes of Article III standing, each Plaintiff must allege adequate injury in fact. Plaintiffs' repeated references to burdens placed on their "families," *see, e.g.*, Compl. ¶¶ 71, 74, 86, does not mean that this Court can transfer any alleged injuries to students onto their parents. *E.g., id.* at ¶ 87 (alleging communal facilities for transgender "students," contrasted with alleged denial of desired facilities to religious "families"), ¶ 91 (alleging that by providing purportedly different educational benefits to transgender and religious "students," the Board is denying equal opportunity to religious "families"). There is no basis in law to transfer an alleged injury from one plaintiff to another by virtue of a family relationship.

Having alleged no actual equal protection injury to the parents in the Complaint, Plaintiffs now state in their brief that "[t]he parents are experiencing harms to their dignity and the substantial distress that naturally arises in the parents over concern for their children." Plaintiffs' Brief on Standing, ECF No. 59 at 10. Such a claim, standing alone—as it is here, since Plaintiffs have alleged no supporting facts—is far too vague to satisfy Article III. *E.g.*, *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) ("Conclusory allegations do not satisfy the requirements of Article III."). Even had these facts been pled in the Complaint, the parent Plaintiffs have suggested nothing approaching the "extreme emotional distress" that courts have found sufficient to establish standing based on intangible injury. *Cf. Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021). Their logic is tantamount to claiming vicarious injury, and would open the door to any number of

---

[3] By contrast, Count Three of the Complaint alleges an injury to the parents' own "parental rights." Anne Roe maintains that Count Three is legally and/or factually meritless, but does not dispute the parent Plaintiffs' standing at this time.

suits in which litigants seek standing in federal court based on concern for others, precisely the type of phenomenon standing doctrine has developed to guard against.

The parent Plaintiffs' claims for injury can be reduced to disagreement with the Board's policy, and an unsupported theory of vicarious injury. This is plainly insufficient for purposes of Article III standing.

      B. <u>Parent Plaintiffs' Alleged Vicarious Injury is Insufficient for Their Free Exercise Claims</u>

The parent Plaintiffs also lack standing with respect to their free exercise of religion claims. Again, they cannot claim Article III standing based on alleged harms to their children. *See McGowan*, 366 U.S. at 429. Where a plaintiff fails to allege that the challenged conduct actually "inhibited the exercise of their religion in any way," they cannot satisfy Article III with respect to a free exercise claim. *See Bailey v. Carter*, 15 F. App'x. 245, 249 (6th Cir. 2001). Parent Plaintiffs allege that the Board's policy is inconsistent with their beliefs, *see* Compl. ¶¶ 66-67, 79-80, but it is not enough to "provide a detailed description of their religious beliefs"; they must also allege a "personal stake in the controversy." *Harris v. McCrae*, 448 U.S. 297, 320 (1980). The parent Plaintiffs never allege "that the Government is compelling [them] to violate personal religious beliefs," a requirement to satisfy Article III standing in the context of a free exercise claim. *New Doe Child #1 v. Congress of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018). The only allegation that even purports to state any coercive effect has nothing to do with the parent Plaintiffs. *See* Compl. ¶ 129 (alleging that "Plaintiffs must attend school and Plaintiffs are being pressured to violate their core beliefs for the use of communal intimate facilities").

Plaintiffs again attempt to transfer injury from children to their parents by stating that "[i]t is a fundamental part of the exercise of [the parents'] own faith to raise their children in the faith," *Id.* ¶ 85; *see also id.* ¶ 68, and that the Board's policy thus burdens their free exercise, but this fails

13

for two important reasons. First, this argument would essentially allow parents to claim their children's injuries as their own for standing purposes, conflating more narrow parental rights claims with a more general attempt to claim vicarious injury—a theory fundamentally at odds with Article III principles. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17 (2004) ("There is a vast difference between Newdow's right to communicate with his child—which both California law and the First Amendment recognize—and his claimed right to shield his daughter from influences to which she is exposed in school . . . ."). Second, simply alleging that some constitutional violation has occurred does not satisfy the injury-in-fact requirement of Article III unless the Plaintiffs can demonstrate that it is their own rights that have been violated. *See Valley Forge Christian College v. Ams. Utd. for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). The parents must themselves have been injured by the conduct at question. They allege no such injury. The notion that a public school acting in a way that does not comport with a particular religious belief harms parents' ability to raise their children in their faith not only cannot be reconciled with established standing doctrine, but also would likely run afoul of the Establishment Clause. *See id.*

Allegations that the Board's policy "directly contradicts their faith on a fundamental moral question" and burdens their faith by "promot[ing] LGBTQ+ beliefs to their children," Compl. ¶ 68, essentially amount to claiming harm on the basis of disagreement with the policy. But courts have repeatedly rejected an "offended observer" theory of standing. In *American Legion v. American Humanist Association*, the Supreme Court noted that it had "already rejected the notion that offense alone qualifies as a 'concrete and particularized' injury sufficient to confer standing. 139 S. Ct. 2067, 2067 (2019); *see also Valley Forge Christian College*, 454 U.S. at 485-86 ("[Respondents] fail to identify any personal injury suffered by them as a consequence of the

14

alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."). "Offended observer standing," the Court continued, "is deeply inconsistent . . . with many other longstanding principles and precedents," such as the rule against generalized grievances and the presumption against third-party standing. *Am. Legion*, 139 S. Ct. at 2067. Again, the parent Plaintiffs seem to assert injury on no basis other than disagreement with the Board's policy, and this falls well short of satisfying the requirements of Article III standing.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor Anne Roe submits that all Plaintiffs lack standing to bring Count Two of the Complaint (Title IX). Further, Anne Roe submits that the parent Plaintiffs lack standing as to Counts Four (Equal Protection) and Five (Free Exercise).

Respectfully submitted,

*/s/ David J. Carey*
David J. Carey (0088787)
ACLU OF OHIO FOUNDATION
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: 614-586-1972
Fax: 614-586-1974
dcarey@acluohio.org

Freda Levenson (0045916)
ACLU OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
Phone: 614-586-1972
Fax: 614-586-1974
flevenson@acluohio.org

Malita Picasso*
Aditi Fruitwala*
Rose Saxe*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

15

125 Broad Street, 18th Floor
New York, NY
Phone: 212-549-2500
Fax: 212-549-2650
mpicasso@aclu.org
afruitwala@aclu.org
rsaxe@aclu.org

Michael D. Meuti (0087233)
David M. Hopkins (0095285)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216-363-4500
Fax: 216-363-4588
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

*Admitted pro hac vice*

*Counsel for Intervenor-Defendant Anne Roe (a minor, by and through her legal guardian Joanne Roe)*

## CERTIFCATE OF SERVICE

     I, David J. Carey, hereby certify that on this 27th day of February, 2023, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio via the ECF system, which will send notification of such filing to all counsel of record.

*/s/ David J. Carey*