UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, et al., | : | CASE NO. 3:22-cv-00337 |
| | : | |
| Plaintiffs, | : | JUDGE MICHAEL J. NEWMAN |
| | : | |
| vs. | : | |
| | : | PLAINTIFF'S BRIEF ON |
| BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : | ADJUDICATING PLAINTIFFS' OPEN MEETINGS ACT CLAIM |
| | : | |
| Defendants. | : | |

## INTRODUCTION

Out of respect for Ohio state courts, the Court ordered briefing regarding the potential stay of Plaintiffs' Ohio Open Meetings Act ("OMA") claim pending disposition of a separate state court action in *State ex rel. Croley v. Bethel Local School District Board of Education*, No. 22 CV 00279 (Miami Ct. C.P. July 21, 2022) (herein "*Croley*"). Such a stay should not be entered in this particular case.

The parties in this case are different from the parties in *Croley*—including different plaintiffs, defendants, and the addition of an intervenor-defendant. The claims are also different. And the federal case is further along on the instant issue than the state case. These Plaintiffs should not have to stand aside on their claim for other parties and attorneys, who are not their attorneys, to litigate a law that protects Plaintiffs' rights.

Federal courts have a virtually unflagging obligation to exercise their jurisdiction. Plaintiffs acknowledge that underlying policy questions regarding sex,

1

gender, and intimate spaces are controversial. But the OMA is not. In the end, all Plaintiffs seek in this instance is for the Court to apply the plain text of a state law under the approach announced and applied by the highest court in the state. Federal courts do so regularly. And it is proper to do so here.

## ARGUMENT

### I. *Landis* and *Colorado River*.

Even in cases of parallel state and federal proceedings, "the general rule [is] that courts should allow cases touching the same subject matter in different courts to proceed." *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 875 (6th Cir. 2021) ("[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (cleaned up). *Landis* and *Colorado River* abstention are intertwined exceptions to that general rule but are limited to extraordinary cases not presented here.

In this case, Plaintiffs sued the Bethel Local School Board, the current members of the Board, and the Board's executive officer[1] (collectively the "Board" or "Defendants") for violating Plaintiffs' civil rights and, *inter alia*, adopting a new bathroom use policy for transgender students in violation of the OMA.[2] As discussed below, the *Croley* case is materially different than the instant case. But even if that

---

[1] Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Superintendent Matthew Chrispin.
[2] Plaintiffs specifically alleged violations of the Ohio Open Meetings Act, the Fourteenth Amendment of the United States Constitution, the Equal Protection Clauses of the United States Constitution and the Ohio Constitution, the Free Exercise Clause of the United States Constitution and the Ohio Constitution, and the Protection of Pupil Rights Amendment (enforced via 42 U.S.C. § 1983). The Court's Order, Doc. 64, and Plaintiffs' briefing, is limited to Plaintiffs' OMA claim and does not extend to Plaintiffs' free exercise and equal protection claims under the Ohio Constitution.

were not true, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). And, under *Landis*, the defendants have to demonstrate clear "hardship or inequity" to overcome the corresponding harm to Plaintiffs of staying their claim in this case. *Id.*

In the litigation surrounding *Landis*, forty-seven suits were brought in various district courts challenging the constitutionality of a utilities law passed by Congress. In *Landis*, a stay was issued, meant to last only while the selected test case worked its way to the Supreme Court (under a stipulation from the Attorney General that the test suit would be diligently prosecuted without delay by the government, and in the meantime no penalties would be enforced against the utilities, and upon completion of the litigation no penalties would ever be enforced retroactively). *Landis*, 299 U.S. at 250-51. Critically, to get the stay, the defendant agreed not to enforce its policy in the meantime, so as to ensure that the plaintiffs suffered no injury during the pendency of the stay. *Id.* at 252.

In *Colorado River*,[3] the Supreme Court was faced with a problem of water rights adjudication in the Southwest. The United States originally brought suit in the District Court for the District of Colorado, seeking a declaration of its rights as to waters located in one of Colorado's water districts (Division 7). *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 805 (1976). Shortly after the federal

---

[3] Although *Colorado River* is rooted in abstention, courts have applied its analysis with respect to stays as well. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13-14 (1983) (applying the *Colorado River* factors to the appeal of a district court stay in favor of a state court proceeding); *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998) (same).

3

suit was filed, some of the defendants in that suit brought suit in the Colorado state court for Division 7. *Id.* at 806. The federal District Court then decided to abstain from exercising jurisdiction in favor of the state court proceeding. *Id.* at 806. When analyzing the case, the Supreme Court found that the critical factor was the McCarran Amendment, which consented to state court jurisdiction over this type of claim, thus favoring state court adjudication. *Id.* at 819 ("[A] number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amendment itself. . . . The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.").

However, the *Colorado River* opinion also outlined a framework for abstention in cases where there is not such a clear expression of Federal policy, and that framework was further elaborated in *Romine v. Compuserve Corp.*, which collected Supreme Court case law and distilled an eight-factor test. 160 F.3d 337, 340-41 (6th Cir. 1998).

As a prerequisite to this eight-factor test, movants must show that the two cases are parallel, with substantially similar parties and claims. *See id.* at 340; *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) ("[I]n deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised.").

If this threshold is met, the court considers eight factors: 1) whether the state court has assumed jurisdiction over any real property, 2) the convenience of the federal forum for the parties, 3) interests in avoiding piecemeal litigation, 4) the order of jurisdiction, 5) whether the source of governing law is state or federal, 6) the adequacy of the state court action to protect the federal plaintiff's rights, 7) the relative progress of the state and federal proceedings, and 8) the presence or absence of concurrent jurisdiction. *Romine*, 160 F.3d at 340-41.

At every stage of the analysis, the burden for a court to refrain from exercising its jurisdiction is high. *See, e.g., Landis*, 299 U.S. at 256 ("[T]he burden . . . lay heavily on the petitioners, suppliants for relief."); *Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."); *Romine*, 160 F.3d at 339 (recognizing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them") (quoting *Colorado River*, 424 U.S. at 817)).

Here, Defendants cannot meet this burden.[4] They certainly cannot carry their heavy burden or show clear "hardship or inequity." *Landis*, 299 U.S. at 255. Tellingly, if such hardship or inequity truly existed, Defendants would have raised this issue immediately. They did not. While Defendants suffer no hardship or inequity from continuing this case, a stay would cause hardship and inequity to Plaintiffs by forcing them to "stand aside while a litigant in another [case] settles the rule of law" and Plaintiffs are forced to suffer further delays in the adjudication of their rights. *Id.* at

---

[4] While Defendants never moved for a stay, Plaintiffs anticipate that Defendants will now argue, for the first time, that a stay is appropriate.

5

255. Unlike the *Landis* defendants, Defendants here have done nothing to mitigate Plaintiffs' harms in order to secure a stay, though such measures are entirely within their power. Defendants could agree to put the challenged policy on hold while these issues are adjudicated and agree to revert to the status quo ante in the interim. They have not done so, and are unlike the *Landis* defendants for this reason.

## II. A Stay Is Not Warranted In This Case.

### A. A Stay is Not Warranted Under *Landis*

District courts have the inherent power to control their own docket, but that power is tempered by the Supreme Court's decision in *Landis*. "[N]o precise test has developed to guide district courts in deciding whether to grant" a stay under *Landis*. *Int'l Bhd. of Elec. Workers v. AT & T Network Sys.*, No. 88–3895, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)) (citing *Landis*, 299 U.S. at 255). But it is only in rare circumstances where "a litigant in one cause [should] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

The Northern District of Ohio has considered four factors on the question: 1) the potential dispositive effect of the state case, 2) the judicial economy to be saved by waiting, 3) the public welfare, and 4) the prejudice to the party opposing the stay. *Walker v. Cedar Fair*, 520 F. Supp. 3d 925, 931 (N.D. Ohio 2021); *see also Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2, 3 (6th Cir. Aug. 2, 2022) (citing *Walker*). But "[t]he most important consideration is the balance of hardships" between the parties—requiring consideration of whether Defendants "will suffer

irreparable injury if the case moves forward" and whether Plaintiffs "will not be injured by a stay." *Int'l Bhd. of Elec. Workers*, 1989 WL 78212, at *8.

### 1. Potential Dispositive Effect

*Croley* is not likely to have a dispositive effect on this case, because it deals with a different set of claims and does not request the same relief. The *Croley* complaint (attached as Exhibit A), seeks to invalidate all board actions taken at various meetings on a variety of topics, while Plaintiffs are only asking this Court for an injunction on one alleged Board policy, rule, and/or official action.

At the same time, Plaintiffs' arguments for their more narrow OMA Claim are broader in two respects. First, the *Croley* complaint seeks invalidation of alleged Board action to allow a single transgender student to use the restrooms of their choice. *See* Exhibit A at ¶¶15–21. In contrast, Plaintiffs here do not believe that the Board merely granted an individual accommodation like Defendants argue and the *Croley* complaint pleads; rather, Plaintiffs argue that a new district-wide policy was improperly adopted extending far beyond a single accommodation.[5] Plaintiffs seek an injunction of that policy, not an order regarding accommodations granted to a single student. These are fundamentally different legal theories; the success of one does not depend on the outcome of the other.

Second, the *Croley* complaint focuses on improper deliberations writ large (including deliberations on December 7, 2021) whereas Plaintiffs' arguments are broader than deliberations and also attack the rule itself as not having been adopted

---

[5] As discussed below in Section II(A)(2), this larger rule for transgender students is what Intervenor-Defendant intervened to protect.

in an open meeting of the public body. Further, the December 7, 2021 executive session itself was improper *inter alia* because the Board took official action cognizable under the statute when it reached collective agreement on an issue that falls directly within its mandatory responsibility under state law. Reply to Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 37 at 791.[6] All of these arguments arise from the plain language of the statute. And it would be extremely prejudicial for Plaintiffs to have to stand aside from the text of the statute for others who may choose to litigate the case differently.

### 2. Judicial Economy

On the issue of judicial economy, the balance again weighs against a stay. In *Walker,* the Northern District of Ohio wished to avoid unnecessary briefing and discovery where there was already a state court decision in the process of appeal, rendering litigation in the federal court truly wasteful. 520 F. Supp. 3d at 932 (staying state claims for federal class action plaintiffs where state class action plaintiffs were in the process of appealing the same claims). It was also likely that the issue would be resolved in state appellate court prior to resolution in the federal court. *Id.* at 931-32 ("It is reasonable to expect that the state appellate court will render a decision on plaintiffs' appeal before the parties litigate the statutory clams [sic] to final judgment here."). Here, the situation is reversed. The parties in *Croley* have not even begun briefing, and the next hearing is currently scheduled for the turn of 2024. *See* Exhibit B (*Croley* Docket). Plaintiffs also do not believe that there have

---

[6] All page citations to ECF documents ("Doc.") herein denote the "PageID" page number.

8

been any depositions taken in *Croley* nor any discovery produced yet—despite the case having been filed more than seven months ago. This case has consistently progressed at a faster pace and is likely to reach a judgment on this issue long before *Croley*.

In addition, Defense counsel is counsel in both cases. In December, Defense counsel requested additional time to respond to Plaintiffs' Preliminary Injunction motion because she had (or anticipated having) difficulty contacting her clients and witnesses over the Christmas break. Status Conf., Dec. 13, 2022, Tr. of Proc., Doc. 53 at 1154-55, 8:15-9:5 (attached as Exhibit C). Effectively, this means that in the state court litigation between its filing in the summer and the Plaintiffs' preliminary injunction motion in the winter, no merits movement had been accomplished. Otherwise, Defense counsel would have already been familiar with the underlying facts and would not have represented to the Court a need for additional time to develop those facts.

Plaintiffs recognize the importance of judicial economy, but the Court will not be wasting judicial resources by resolving the question at issue. The claims in *Croley* are different from the claims here. And even if the claims were the same, the Court will resolve the question long before the *Croley* court does. For whatever reason, that case is not moving forward as quickly as this one. And the Court, as well as the parties, have expended meaningful effort and expense on the issue in this Court. For all the foregoing reasons, judicial economy and the "just, speedy, and inexpensive

determination" of the issue favor the continued litigation of the issue in this Court. Fed. R. Civ. P. 1.

### 3. Public Welfare

The public welfare would also be disserved by issuing a stay in favor of *Croley* because the Plaintiffs' claims will not be answered in *Croley*. *See* Section II(A)(1), *supra*. Additionally, Intervenor-Defendant Anne Roe ("Roe") would be cut out of the litigation, despite an asserted interest in the issue's outcome. When intervening, Roe represented that "Defendants cannot adequately represent Roe's interests. She has a direct personal stake in the policy that is under attack, whereas Defendants have an obligation to all students and might elect to change their policies in the future." Roe's Mot. to Intervene as Def., Doc. 13 at 113–14. Roe also explained that the issues being litigated in this case extend beyond Roe to transgender students generally. *See id.* at 104, 115 (explaining that the instant dispute involves transgender students generally). Therefore, Roe also acknowledges that Plaintiffs' claim regarding the Board's new rule is broader than the *Croley* complaint.

The public welfare is best served by allowing this case to proceed in a forum where all parties are represented and can be heard on their unique claims and defenses.

### 4. Prejudice

If a stay were awarded here, the prejudice would fall entirely on the Plaintiffs because they and their counsel would be forced to stand aside and be cut out of the litigation after expending significant time, effort, and expense progressing this case.

Meanwhile, the *Croley* case does not appear to be moving at a pace even close to this one. *See* Exhibit B. Thus, Plaintiffs will be required to wait an undetermined amount of time to have their separate claim *potentially* litigated by others who did not plead Plaintiffs' claim or reliance on the text of the statute. In the meantime, they will have suffered the delay and injury to their rights during the stay. In contrast, Defendants will not be harmed if the issue moves forward in this Court, belied by the fact that Defendants did not request a stay and have actually been litigating the issue in this Court even though their attorneys are also litigating *Croley*. Because Defendants will not suffer an irreparable injury if this case moves forward and Plaintiffs will be harmed by a stay, the balance between prejudice and harm strongly favors Plaintiffs.

In sum, the relevant factors counsel that a stay is not warranted in this instance. Here, Plaintiffs seek application of the plain language of a state statute under the approach announced and applied by the highest court in the state. Mem. in Supp. of Pls.' Mot. for Prelim. Inj., Doc. 5-1 at 59-60; Doc. 37 at 788-89. To be sure, the underlying **policy** issues are controversial but the **legal** task is fundamentally unremarkable. To stay consideration of that issue for an undeveloped state court proceeding would swallow the general rule for adjudication of state law claims in federal court that "courts should allow cases touching the same subject matter in different courts to proceed[.]" *William Powell Co.*, 18 F.4th at 875. It would also ignore the strong presumption that federal courts should exercise their jurisdiction. *Romine*, 160 F.3d at 339 (recognizing the "virtually unflagging obligation of the federal courts

to exercise the jurisdiction given them") (citing *Colorado River*, 424 U.S. at 817)). Accordingly, a stay should not be granted in this case.

> **B.     A Stay is Not Warranted Under *Colorado River*.**
>
>> **1.     *Croley* and the Instant Case are not Parallel Actions.**

Before considering a stay under *Colorado River*, "the Court first must determine whether the concurrent state and federal actions are actually parallel. If not, the analysis ends, because the district court would have nothing in favor of which to abstain." *Titan Wrecking & Env't v. Vestige Redev. Grp.*, No. 1:15-CV-00577, 2016 WL 1028261, *3 (S.D. Ohio Mar. 15, 2016) (cleaned up). "Actions are parallel when there is an identity of parties and issues in the federal and state court actions." *Id.* Though exact identity of parties and claims is not required, substantial similarity is essential before a stay can be considered. *See Romine*, 160 F.3d at 340. Further, "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006) (cleaned up). At the same time, there is "significant Sixth Circuit precedent which makes clear that parallelism is not present simply because the state court action could be made parallel by joining additional claims." *Cass River Farms, LLC v. Hausbeck Pickle Co.*, No. 16-cv-12269, 2016 WL 5930493, at *4 (E.D. Mich. Oct. 12, 2016) (citing *Baskin*, 15 F.3d at 572; *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

Here, the parties are materially different from *Croley*. For instance, the plaintiffs and defendants are both different. As discussed above, Plaintiffs are not plaintiffs in *Croley* and would have to stand aside for other plaintiffs and lawyers to litigate Plaintiffs' rights. In addition, the defendants are different. In *Croley*, the Board members as of July 21, 2022 were sued. By the time the instant case was filed, the Board had different membership, with Jessica Franz leaving the Board and Jacob King joining it. The instant case was also filed against Matthew Chrispin in his official capacity as the Superintendent of Bethel Schools. He is not named in the *Croley* complaint. Further, Roe is not a party to *Croley*, but is a party to this case. Roe's intervention would be eliminated if this Court defers to the *Croley* court and enters a stay.

The fundamental claims between the two cases are also materially different. *Croley* is much broader in its OMA claims generally, but narrower on the particular OMA claim brought by Plaintiffs. *See* Section II(A)(1), *supra*. At the same time, Plaintiffs bring a number of federal claims. Plaintiffs continue to suffer ongoing harm under these federal claims and Defendants' OMA violation is tied to those harms and interests because, *inter alia*, Defendants did not consider Plaintiffs' needs when deliberating and deciding the issue. Pls.' Reply to Roe's Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 49 at 1109. But *Croley* does not plead the same OMA claim that Plaintiffs assert and Plaintiffs would be prejudiced by being forced to step aside.

In short, the parties and claims are materially different between the two cases, with different parties, different claims, different arguments, different injuries, and

13

different interests. The cases are not parallel and the entry of *Colorado River* stay would be improper. In addition, the *Romine* factors weigh against a stay.

### C. The *Romine* Factors Weigh Against a Stay.

As discussed above, the Sixth Circuit in *Romine* provided eight factors for courts to consider in balancing a potential stay. 160 F.3d at 340-41. In addition, the Supreme Court has instructed courts that the balance should be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

#### 1. Real Property

As to the first factor, there is no real property at issue here, eliminating the need to consider the effect of jurisdiction over real property. *See Colorado River*, 424 U.S. at 818, ("It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."); *Moses H. Cone*, 460 U.S. at 19 (finding that a lack of any property over which jurisdiction can be assumed counsels against a stay).

#### 2. Convenience of the Parties

The second factor, the convenience of the parties, also weighs against a stay. Unless considerations strongly favor defendants, "a plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (superseded by statute on other grounds). In this case, Defendants are physically located in and around the Court's location in the Dayton area. Defendants have also not requested a stay and have been voluntarily litigating the OMA issue in this Court. Roe also

14

voluntarily intervened to participate in this action, including Plaintiffs' motion for preliminary injunction on the OMA issue. And the parties have already expended significant time and resources on the issue. Therefore, the convenience of the parties weighs heavily against a stay in this case.

### 3. Avoidance of Piecemeal Litigation

The third factor, a federal court's interest in avoiding piecemeal litigation, also weighs against issuing a stay in this case. Addressing the court's interest in avoiding piecemeal litigation, the Supreme Court explained that federal court abstention may be warranted when "all the matters in controversy between the parties could be fully adjudicated" in the state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, (1942) (cited for this factor by *Colorado River*, 424 U.S. at 818). That is certainly not the case here, as Plaintiffs' claims go beyond those at issue in *Croley*. *See* Section II(A)(1), *supra*. The suits are fundamentally different and this factor is not satisfied in this case.

### 4. Order in which Jurisdiction was Obtained

Regarding the fourth factor, the Miami County Court of Common Pleas obtained jurisdiction before this Court. However, because the cases are not parallel, that court did not obtain jurisdiction over the same controversy. For this reason, the fourth factor provides this court with little guidance over whether it should issue a stay. This factor is also outweighed by the difference in progress between the cases. *See* Section II(C)(7), *infra*.

### 5. Source of Governing Law

15

As to the fifth factor, the source of governing law is mixed; there are both state and federal claims at issue, and either court has the power to hear all claims. Here, *Moses H. Cone* is instructive: "the federal courts' jurisdiction to enforce the [laws at issue] is concurrent with that of the state courts. But we emphasize that our task in cases such as this is . . . to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of that jurisdiction." 460 U.S. at 25-26. For this reason, "the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26. While Plaintiffs' OMA claim turns on the text of state law as instructed and applied by the highest court in the state, federal courts do that exercise all the time. And the general rule is that federal courts should exercise their jurisdiction to do so. *See* Section I, *supra*. Accordingly, there is nothing extraordinary about this factor to favor a stay in this particular case.

### 6. Adequacy of the State Court Action to Protect Plaintiffs

As to the sixth factor, the state court action is inadequate to protect the Plaintiffs' rights. Plaintiffs are not parties to that case, and the action fails to address most of Plaintiffs' claims. If forced to "stand aside while a litigant in another [case] settles the rule of law that will define the rights of both," Plaintiffs will be harmed by being forced to rely on counsel they did not pick, whose responsibility is to another plaintiff. *Landis*, 299 U.S. at 255. The *Croley* plaintiff did not assert Plaintiffs' federal claims and the *Croley* OMA claim is different than Plaintiffs' OMA claim. *See* Section

16

II(A)(1), *supra*. The state court action is not adequate to protect Plaintiffs' interests and this factor does not favor a stay.

### 7. Relative Progress of Litigation

As to the seventh factor, this litigation has proceeded further toward merits resolution than the proceedings in *Croley*. There, a complaint and answer have been filed. Here, the parties have spent considerable resources briefing the court on the propriety of a preliminary injunction, held a hearing, and have engaged in additional rounds of supplemental briefing. Additionally, the Supreme Court has instructed that when faced with a situation where the later-filed case is farther along, priority should be given to litigation progress over filing date. *Moses H. Cone*, 460 U.S. at 21 (1983) ("[P]riority should ***not*** be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.") (emphasis added). Therefore, this factor does not favor a stay and weighs heavily against it.

### 8. Presence of Concurrent Jurisdiction

The eighth and final factor asks the Court to consider whether there is concurrent jurisdiction over the claims generally, which there is in this case. This factor does not itself weigh in favor of a stay, or against one, but rather tells the Court how much significance to give factor five (the source of law factor). Because the courts have concurrent jurisdiction, the source of law holds less weight in the analysis. *See Romine*, 160 F.3d at 342; *Moses H. Cone*, 460 U.S. at 25 ("the source-of-law factor has less significance . . . [where] the federal courts' jurisdiction to enforce [the statutory

17

right in question] is concurrent with that of the state courts."). As such, this factor reinforces Plaintiffs' conclusion with respect to factor five.

In sum, the factors themselves weigh against a stay in this case. And that is true separate from the Supreme Court's instruction for the factors to be "heavily weighted in favor of the exercise of jurisdiction" generally. *Moses H. Cone*, 460 U.S. at 16. Accordingly, a stay is not warranted in this case.

## CONCLUSION

The Court has a virtually unflagging obligation to exercise its jurisdiction and the rare circumstances for a *Landis* or *Colorado River* stay are not present in this case. Therefore, a stay is not warranted and the Court is proper to proceed.

Dated:     March 17, 2023

Respectfully submitted,

s/ Joseph P. Ashbrook
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge, LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882

18

nicholas.barry@aflegal.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of March, 2023, I served a copy of the foregoing via the Court's ECF system, which notifies all counsel of record.

s/ Joseph P. Ashbrook
Joseph P. Ashbrook
