UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, et al., | : : : | CASE NO. 3:22-cv-00337 |
| Plaintiffs, | : : | JUDGE MICHAEL J. NEWMAN |
| vs. | : : : | PLAINTIFFS' AMENDED |
| BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : : : : | MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS |
| Defendants. | : | |

## INTRODUCTION

Litigation is not a joke, and allegations made in court are not to be made without some legitimate basis in law and/or fact. The federal courts are not a forum for parties to harass others by filing unfounded allegations which lack support under the existing law or facts. And attorneys are expected and required to conduct themselves before the Court with candor, and to conduct reasonable due diligence regarding the veracity of their filings to ensure that the Court may ascertain the truth. Such basic principles are foundational to the operation of the judicial branch.

Yet Defendants' Counsel filed a motion and a declaration with this Court that does not meet this basic understanding. Defendants made allegations of professional misconduct against Plaintiffs' counsel without conducting reasonable due diligence into their claims, and without citing to any applicable law to support the purported purpose for the allegations—thus, making allegations of impropriety against opposing counsel either while knowing the allegations to be

1

false or with reckless disregard of their truth or falsity. A simple phone call to the declarant or to Plaintiffs' counsel would have resolved the issue, but Defendants' Counsel did not undertake such a simple task. When Defendants' Counsel made these allegations, they did not have a *reasonable* belief that they were true.

Plaintiffs' counsel worked to resolve this issue without bringing it to the Court. However, Defendants' Counsel, inappropriately, filed the Rule 11 Motion with the Court attached to their Reply to their Motion in Limine ("MIL Reply"). Sadly, Defendants' Counsel doubles down on their improper ethical allegations against Plaintiffs' counsel and makes new argument related to Ohio Rule of Professional Conduct 4.2. This filing has forced Plaintiffs' counsel to serve an Amended Rule 11 Motion.

In Defendants' MIL Reply, they make arguments in contravention of the plain text of the rules as adopted by Ohio. Defendants also cite to support which has been withdrawn or superseded by regulation, without notice to Plaintiffs' counsel or, importantly, the Court. This is a failure to be candid with the tribunal and is a violation of Fed. R. Civ. P. 11(b)(2) which requires that "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Defendants' counsel do not identify any attempt to extend, modify, or reverse existing law.

Such behavior indicates a purposeful attempt to mislead the Court and suggests an improper motive for filing. Zealous advocacy does not justify filing and representing speculation as fact before a court or failing to identify negative treatment to cited support. Defendants' Counsel has made clear they will continue this improper behavior unless it is corrected. Accordingly, Rule 11 sanctions in this matter are appropriate to deter future abusive filings in this litigation that may

be contemplated by Defendants and their counsel, and to compensate Plaintiffs for the amounts they have incurred in responding to the instant matter.

## BACKGROUND

Defendants[1] filed a motion in limine (the "MIL") just prior to the parties' oral argument on Plaintiffs' motion for a preliminary injunction (the "PI Motion"). The timing of the filing was such that Plaintiffs' counsel did not have a meaningful opportunity to review the MIL prior to oral argument. Defendants' MIL sought to exclude the Declaration of Jessica Franz—filed by the Plaintiffs—in part because of allegations of ethical misconduct by Jessica Franz and Plaintiffs' counsel.  The MIL ignored basic facts of the dispute and did not cite any law justifying the exclusion of evidence on the basis of alleged professional misconduct.

In connection with the MIL, Defendants' attorneys Lynnette Dinkler ("Dinkler") and John A. Podgurski ("Podgurski") (collectively "Defendants' Counsel") recklessly—without regard of its truth or falsity—filed a Declaration of Alvin E. Mathews, Esq., which contained false or misleading statements as to material facts, which a simple, reasonable inquiry and a review of earlier and other submissions to the Court reveal that they must have known were false or misleading at the time they were made. Additionally, Defendants' Counsel, in their MIL Reply, have continued to allege improper ethical violations and have filed another declaration of their alleged ethical expert.

## ARGUMENT

**I.     The Court Has Authority to Impose Sanctions Under Rule 11 or the Court's Inherent Power**

Rule 11 states, in substantial part:

---

[1] Bethel Local School District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Matthew Chrispin

3

>**(a) Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. […]
>
>**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
>> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
>**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Rule 11 applies to all written, signed pleadings, motions, and *other papers* filed in court. *See Bus. Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 549-51 (1991) (finding that Rule 11 reaches a signed affidavit); *Eisenberg v. Univ. of N. M.*, 936 F.2d 1131, 1133-34 (10th Cir. 1991) (affirming impositions of sanctions for unsupported allegations contained in signed

affidavit attached to signed filing). It follows that an attorney's filing of a declaration (whether his own or another person's) that he knows to be false violates Rule 11.

Alternatively, even if Rule 11 did not apply, Defendants' Counsel's submission of false or misleading statements appears to have been in bad faith and, therefore, is punishable under the Court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41-43 (1991) (affirming the imposition of nearly $1 million in sanctions pursuant to the district court's inherent power, despite the fact that other, narrower sanctions provisions also regulated the conduct); *see also Roadway Express. Inc. v. Piper*, 447 U.S. 752, 764, 766-67 (1980) (affirming the award of sanctions, consisting of attorney fees, under the district court's inherent authority, after finding counsel acted in bad faith).

## II. Defendants' Counsel Did Not Conduct a Reasonable Inquiry.

Rule 11 was adopted to "require litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment. The focus of the rule is narrow, concerned only with whether at the time that the paper is signed the attorney believes "on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose." *Jackson v. L. Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224, 1229 (6th Cir. 1989).

In other words, Rule 11 imposes an affirmative duty on an attorney to certify that before filing, submitting, or later advocating to the court a signed document, the attorney has both:

- Conducted a reasonable inquiry.
- Determined that the document is:
    - well-grounded in fact;
    - legally tenable; and

- not presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase litigation costs).

FRCP 11(b); *Bus. Guides, Inc.*, 498 U.S. at 551; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

The standard for determining whether to impose sanctions is one of objective reasonableness. *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 517 (6th Cir. 2002) (recognizing that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct'") (quoting *United States v. Kouri–Perez,* 187 F.3d 1, 8 (1st Cir. 1999)); *Union Planters Bank v. L & J Dev. Co., Inc.,* 115 F.3d 378, 384 (6th Cir. 1997) (finding that the test for the imposition of Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances") (citation omitted); *see also Waste Mgmt. Inc. v. Danis Indus. Corp.,* No. 3:00–CV–256, 2014 WL 4559228, at *4 (S.D. Ohio Sept.12, 2014) (noting that to determine if a Rule 11 violation warrants sanctions the Court must determine "whether the attorney's conduct was reasonable under the circumstances") (citation omitted).

Relevant factors for determining whether an attorney acted reasonably include: " 'the time available to the signor for investigation; whether the signor had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether the signor depended on forwarding counsel or another member of the bar.' " *Zell v. Klingelhafer*, No. 2:13-CV-00458, 2015 WL 1299542, at *5 (S.D. Ohio Mar. 23, 2015) (quoting *Davis v. Crush,* 862 F.2d 84, 88 (6th Cir. 1988) (quoting *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250–51 (6th Cir. 1988)).

A. **Defendants' Counsel Used Unfounded Speculation as "Fact."**

Presumably, Defendants' Counsel provided information to Mathews to prepare a declaration.  Mathews testified that in order to provide his opinion, he "reviewed numerous documents including court filings and exhibits in this litigation." Decl. of Alvin E. Matthews, Esq., Doc. 48-3 [hereinafter "Matthews Decl. 1"] at 1095[2], ¶6.  He further testified that his opinions are based on his "experience and the following facts, . . . Ms. Franz was not cautioned by Plaintiffs' counsel herein and improperly shared this attorney-client and executive session privileged information in this litigation." *Id.* at 1095-96, ¶6. Yet nothing in any of the court filings and exhibits in this litigation addressed what specific conversations had taken place between Ms. Franz and Plaintiffs' counsel, and nothing established as "fact" that Ms. Franz was not cautioned by Plaintiff's counsel. Despite this glaring lack of evidence, Mr. Mathews testified to his legal opinion that Plaintiffs' counsel

> …did not follow professional standard of conduct applicable to Ohio lawyers, including Ohio Prof. Cond.R. 4.2, 4.3, 1.6, and 4.4 in that Plaintiff's counsel, before interviewing Ms. Franz, were required to disclose their identity, and fully explain that they represent clients adverse to School Board.  Moreover, counsel for Plaintiffs should have immediately informed the former organizational constituent, Ms. Franz, not to divulge any privileged communications that Ms. Franz may have had with or otherwise received from School Board's counsel.

*Id.* at 1096, ¶8.

### i)      Mathews Declaration Was Not Grounded In Fact.

Defendants' alleged "expert" opinion[3]  on its face lacks sufficient facts and data about the specific interaction on which it speculates. But it also lacks consideration of central facts, already

---

[2] All page citations to ECF documents ("Doc.") herein denote the "PageID" page number.
[3] Notably, the Defendants' alleged "expert" testified that he is "a former assistant disciplinary counsel, employed with the Office of Disciplinary Counsel from 1991 through 1997. As an assistant disciplinary counsel, [he] investigated and prosecuted lawyers and judges for violations of the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct." Doc. 48-3, Matthews Decl. 1, at 1095, ¶4.  This cannot be completely accurate because the Ohio Rules of Professional Conduct did not become effective until February 1, 2007. The Code of Professional

known to Defendants, that fundamentally impact the analysis of the supposedly protected advice in Paragraph 6 of the alleged expert's declaration. Doc. 48-3, Matthews Decl. 1, at 1095–96, ¶6. The expert states as a fact that "Ms. Franz was not cautioned by Plaintiffs' counsel herein and improperly shared this attorney-client and executive session privileged information in this litigation." *Id.* at 1096, ¶6(d). This "fact" has no basis from which it is made. It is wholly speculative as neither Defendants' Counsel nor the alleged expert attempted to speak to either Franz or Plaintiffs' counsel, the only people with knowledge on the matter. It also assumes that the information in the Franz Declaration was privileged. However, the fact that counsel's advice is public knowledge and that Defendants announced counsel's advice to the community as the reason for its decision was not considered. Second Decl. of Jessica Franz, Doc. 58-2 [hereinafter "Franz Decl. 2"] at 1294, ¶¶17-18; Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 20 at 669. Nor was the fact that Defendants provided public records responses to Plaintiffs reflecting the same information. Second Decl. of Julie E. Byrne, Doc. 58-1 at 1287-1291, ¶¶5-7 & Exh. A to Byrne Decl. 2. The public disclosure and promotion of the alleged attorney-client privileged information is such an obvious explanation for its inclusion in the Franz Declaration that it indicates the expert (or Defendants' Counsel) failed to conduct appropriate due diligence and were unaware of these facts. Or worse. *See infra* II.C.

**B.     Defendants' Counsel Did Not Talk to Franz.**

Neither Defendants, nor their attorneys, nor their alleged "expert" spoke to Ms. Franz. Doc. 58-2, Franz Decl. 2, at 1293, ¶5. Instead, they simply assumed wrongdoing and presented their assumptions as if they were facts—which they are not. By virtue of a simple phone call, Defendants

---

Responsibility was in effect from July 15, 1974-January 31, 2007. Perhaps the Defendants' alleged expert glossed over this difference to avoid confusion, but it is a relevant consideration that he identified the incorrect code and that Defendants' Counsel submitted false information to the Court.

8

could have easily discovered that Plaintiffs' counsel identified themselves to Franz, that at all times Franz knew and understood that Plaintiffs' counsel represented clients adverse to the Bethel School Board, and that Plaintiffs' counsel did not endeavor to elicit information from Franz that the lawyers knew or reasonably knew to be protected by attorney-client privilege. Doc. 58-2, Franz Decl. 2, at 1293-94, ¶¶7-15.

As discussed in Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine, Doc. 58, (all of which is expressly incorporated herein as if restated without the need for repeating), the alleged attorney-client information had already been publicly disclosed and the executive session was improper. As a result, the information discussed at the December 7, 2021 "executive session" was not considered legally confidential pursuant to O.R.C. § 102.03(B) or the common law attorney-client privilege doctrine. In order to claim otherwise, Defendants and their "expert" speculated about conversations with Ms. Franz of which they had no knowledge nor made any effort to learn about.

**C. Defendants' Counsels' Action Were Unreasonable and in Bad Faith.**

The blatant failure to conduct even minimal due diligence to determine any of the relevant facts is indicative of bad faith. Moreover, Defendants' Counsel then used this speculative, unfounded opinion to try to exclude relevant evidence in the instant litigation by mischaracterizing the testimony of Mr. Mathews. In the MIL, Defendants argue that the alleged professional misconduct "prejudices and harms the Board of Education for the reasons opined to a reasonable degree of professional certainty by Alvin E. Mathews, Esq." Doc. 48 at 1046. Yet Mathews does not opine about how the alleged misconduct prejudices and harms the Defendants; he testifies that it's his opinion that Plaintiffs' counsel violated professional conduct rules. He does not opine at all about how it affects Defendants. Defendants' Counsel attempts to justify their arguments by

saying that Franz did not explicitly state in her first declaration that Plaintiff's counsel identified themselves, explained they were adverse to the Board, or told her she shouldn't disclose privileged information. *Id.* at 1049. But there are a lot of things not explicitly stated in Franz's first declaration. Making assumptions about what actually occurred without taking reasonably objective steps to ascertain the truth and presenting it as though it is truth is sanctionable conduct.

Even if Defendants' Counsel's statements were technically true, they would still violate Rule 11 because they created the "misleading illusion" that Plaintiffs' Counsel acted unprofessionally and omitted the facts that would correct that illusion. *See Grove Fresh Distrib., Inc. v. John Labatt Ltd.,* 888 F. Supp. 1427, 1451 (N.D. Ill. 1995) (attorney's statement that he was "attorney or [counsel] of record," while literally true, created a "misleading illusion" because his client had discharged him, and the attorney failed to disclose that fact to the court, thus violating Rule 11), *aff'd,* 134 F.3d 374 (7th Cir. 1998). Here, Defendants' Counsel's argument creates the misleading illusion that Plaintiffs' counsel acted improperly and that such alleged improper conduct justifies the exclusion of relevant evidence.

Defendants leveled ethical accusations in the face of obvious explanations—*e.g.* the alleged attorney-client privileged information had already been shared with the public and the School Board did not properly go into executive session—while disregarding those explanations and failing to conduct a reasonable inquiry in investigating their claims. Defendants seek to use unjustified claims of confidentiality to cover up their unlawful behavior and silence Franz's whistleblowing. Combined with the fact that the accusations are completely unfounded, the most logical explanation is that this was done for improper litigation purposes in contravention of Rule 11. See, e.g. *Brand, Inc. v. I.O.B. Realty, Inc., Patsy's* , No. 99 Civ. 10175 (JSM), 2002 U.S. Dist.

LEXIS 491 at *2 (S.D.N.Y. Jan. 16, 2002) (sanctioning attorneys who "simply closed their eyes to the overwhelming evidence that statements in [their] client's affidavit were not true").

While Plaintiffs contend Defendants' Counsel acted in bad faith, an attorney need not act in bad faith to be sanctioned under FRCP 11. The primary determination under FRCP 11 is whether the signing attorney conducted an inquiry into the factual and legal basis of the challenged document that was objectively reasonable under the circumstances. *Bus. Guides, Inc.*, 498 U.S. at 548-51; *Cruz v. Don Pancho Mkt., LLC*, 171 F. Supp. 3d 657, 667-68 (W.D. Mich. 2016); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir.1985).) 84, 393 (1990). In order to find that Defendants' Counsel acted in an objectively reasonable manner, this Court would have to determine that in the approximately two weeks between when Plaintiffs filed their Reply (January 23, 2023) and the February 7, 2023 hearing—during which Defendants' Counsel found, hired, and received an "expert" legal opinion—they did not have the time or ability to call Jessica Franz—a person personally known to Podgurski—or opposing counsel to verify the underlying facts of Franz's interaction with Plaintiffs' counsel.

### III. Defendants' Counsel Has A Duty Of Candor To The Court.[4]

Ohio Rule of Professional Conduct 3.3(a)(3) requires that a lawyer who knowingly offers material evidence by the lawyer, the lawyer's client, or a witness called by the lawyer that the lawyer knows to be false or the lawyer comes to know of its falsity, the lawyer "shall take reasonable measures to remedy the situation, including, if necessary, disclosure to the tribunal." In light of the facts concerning the communications between Ms. Franz and Plaintiffs' counsel (as

---

[4] Plaintiffs acknowledge that the practice of law is hard; citations and legal arguments are not always perfect, and it is not Plaintiffs' intention to identify every flaw of Defendants' filings and make it a sanctionable action. But there is a difference between occasionally incorrectly signaling citations and misrepresenting authority and the applicable law to the court. When leveling accusations of unethical conduct upon opposing counsel—fellow officers of the court— Defendants' Counsel ought to be conscientious about ascertaining the applicable status of the law and representing the same before the court.

opposed to the pure speculation offered by Defendants), Defendants' Counsel should have immediately withdrawn its unfounded allegations against Plaintiffs' counsel and its "expert" declaration of Alvin E. Mathews. This would have demonstrated the respect for fellow officers of the Court that our system requires.[5]

Instead, Defendants doubled down on their course of conduct with a new Rule 4.2 accusation that is contradicted by the plain text of the Ohio Rules of Professional Conduct. Specifically, Defendants' Counsel relies on Rule 4.2 and Comment 7 to Rule 4.2 to accuse Plaintiffs' counsel of violating a supposed no-contact rule with Jessica Franz. But Jessica Franz is neither Defendants' employee nor a constituent of Defendant Board of Education; Ms. Franz is a former constituent of the Board. And Comment 7 to Rule 4.2 specifically states: "Consent of the organization's lawyer is not required for communication with a former constituent." As such, Counsels' attack on fellow officers of the Court is contradicted by the plan text of the Ohio Rules of Professional Conduct. Defendants' Counsel notably excluded this line when quoting from the same Comment 7 in their MIL Reply. Such conduct is wrong and deeply irresponsible.

Likewise, as part of its new Rule 4.2 accusation, counsel cites and relies on The Sup. Ct. of Ohio Bd. of Comm'rs Grievances & Discipline, Op. 2005-03 (Feb. 4, 2005) ("Op. 2005-3"). Defs.' Reply in Supp. Of Defs.' Mot. in Lim., Doc. 60 at 1327. But Op. 2005-3 has been expressly superseded and withdrawn by The Sup. Ct. of Ohio Bd. of Prof'l Conduct, Op. 2016-5 (Aug. 5, 2016) ("Op. 2016-5"). This is inexcusable since Op. 2005-3 specifically says at the top that it was "Withdrawn by Adv. Op. 2016-5 on August 6, 2016". Op. 2005-3 at 1.

---

[5] Right at the outset of the Ohio Rules of Professional Conduct, paragraph 5 of the Preamble states: "A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including [] other lawyers, . . ."

12

Consistent with Rule 4.2 Comment 7, Op. 2016-5 states that: "A lawyer may communicate on the subject matter of the representation with former employees of the corporation, without notification or consent of the corporation's lawyer, as long as the former employee is not represented by counsel." Op. 2016-5 at 1. The opinion also recognizes that this is in accord with federal courts in Ohio: "Federal courts are also in accord with the view that contact with all former unrepresented employees is permissible." *Id.* at 4 (citing *United States v. Beiersdorf-Jobst, Inc.*, 980 F. Supp. 257, 262 (N.D. Ohio 1997)).

Counsel is required to identify when support it relies on has negative treatment, such as being withdrawn or superseded by regulation. Defendants' Counsel did not do that with Op. 2005-3. Likewise, and in contravention of the Ohio Rules of Professional Conduct, Defendants' Counsel cites two cases from other jurisdictions for the proposition that "A call to General Counsel Podgurski before the ex parte communication with Ms. Franz to address this issue was required." Doc. 60 at 1326. In support of this contention Defendants' specifically cite *Boatner v. Pushmataha Cty./Town of Antlers Hosp. Auth.*, E.D.Okla. No. CIV 2003-494(P), 2006 U.S. Dist. LEXIS 109198, at *10-12 (Jan. 5, 2006) and note that *Boatner* relied on *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.* ("PSE&G"), 745 F. Supp. 1037 (D.N.J. 1990) as support. *Id.* But Defendants failed to note that PSE&G was superseded by regulation as stated in *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59 (D.N.J. 2000). In addition, *Boatner*, does not support Defendants' contention that Plaintiffs' counsel was required to call Podgurski before contacting Franz. It held, with respect to a different jurisdiction applying different text, that in balancing the interest of the parties a limitation on ex parte communication with former managers and officers was justified. *Boatner*, 2006 WL 8459201, at *5. This was a fact intensive inquiry and not a bright-line rule, and—relevant to the instant issue—one of the facts the court considered was

13

that Oklahoma did not adopt the Comments to the ABA Model Rule 4.2, including the comment about it not applying to former constituents. *Boatner*, 2006 WL 8459201, at *3 ("Although the February 2002 commentary to the ABA model rule more clearly states that '[c]onsent of the organization's lawyer is not required for communication with a former constituent,' this commentary has not been adopted in Oklahoma."). But even lacking support for Defendants' cited purpose, Defendants were required by Ohio Rule of Professional Conduct 3.3(a) and Fed. R. Civ. P. 11(b)(2) to identify to the Court that the cited cases did not directly state the proposition and that there was negative treatment, such as being superseded by regulation. Defendants did not do so.

Defendants' misuse of authority also appears to be a larger problem. For instance, without parenthetical, Defendants cite *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 25-26 for the proposition that: "The violation of the privileges here, as a matter of law, harm the Board of Education." Doc. 60 at 1323. But paragraphs 25 and 26 discuss the attorney-client privilege and its policy purposes, and the requirements surrounding informed consent of a client. The cited portion does not discuss anything about Rule 4.2 or that a violation of privileges, as a matter of law, causes harm.

Unfortunately, the problem extends to misrepresentation of material factual issues as well. In the MIL Reply, Defendants argue that "Board of Education members and members-elect and the former Superintendent agree attorney client privileged information was shared and discussed and that no deliberations or secret voting occurred during the December 7, 2021, executive session." *Id.* at 1315. And that "Ms. Franz is the only one claiming otherwise." *Id.* But Counsels' argument misrepresents the declarations and confuses legal conclusions with underlying facts. None of Defendants' declarations contradict the Franz Declaration or the facts that she observed.

14

*Compare* Decl. of Justin Firks, Doc.48-1 at 1052; Decl. of Natalie Donahue, Doc. 60-2, Exh. B; Decl. of Danny Elam, Doc. 18-1 at 630; Decl. of Jacob King, Doc. 18-2 at 632; Decl. of Lydda Mansfield, Doc. 18-3 at 635; Decl. of Julie Reese, Doc. 60-5 Exh. E; Decl. of Lori Sebastian, Doc. 18-4 at 639, *with* Decl. of Jessica Franz, Doc. 37-3 at 814-17. To the contrary, Julie Reese's testimony even corroborates the "discussion and agreement." Doc. 60-5 at 1407, ¶7. In the end, the real dispute between the parties is ***the legal consequence*** of the Board's discussion, deliberation, and collective agreement; and Counsels' pretend portrayal of conflicting, factual testimony is misleading when the declarations do not demonstrate any ***factual*** disagreement.

Defendants' continued ethical accusations in the face of the plain text of the Ohio Rules of Professional Conduct, intentional use of cases that do not support the propositions as cited, use of cases that have been superseded by regulation without notifying opposing counsel or the Court, and citation to ethics opinions which were withdrawn, again without noting it was withdrawn, are violations of the Ohio Rule of Professional Conduct 3.3(a) and Rule 11(b)(2). Making frivolous or misleading arguments, while hiding that the support relied on is not on point, has been superseded, or withdrawn, should not be permitted.

## IV.   Sanctions Are Appropriate.

While it is common for courts to award fees and expenses to the movant for sanctionable conduct, Rule 11 allows other sanctions in addition to or in the alternative of fees and expense. Subsection (c)(2) provides that "the sanction may consist of, or include, directives of a nonmonetary nature." The Advisory Committee Notes ("Notes") to the 1993 amendments to Rule 11 provide:

> The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or

>censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities.

The Notes also identify factors to consider in determining what sanctions, if any, should be imposed under Rule 11:

>Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Several of the factors cited by the Advisory Committee are applicable to Defendants' Counsel's actions. First, the conduct was in bad faith, as discussed above. Second, their conduct should be deemed as having been intended to injure. By making unfounded ethical allegations against Plaintiffs' counsel, Defendants' Counsel unjustly injured the professional reputations of Plaintiffs' counsel, and, at worse, attempted to chill Plaintiffs' counsel's advocacy on behalf of their clients. Defendants' Counsel's action in asserting new ethical allegations shows this is a continual tactic that will be employed. Plaintiffs' counsel was within their rights to investigate the Defendants' claims. Third, the false or misleading representation has consumed considerable time of Plaintiffs' counsel in challenging Defendants' Counsel's argument (in Plaintiffs' Memorandum in Opposition to the Defendants' MIL and in this motion). Fourth, Defendants' Counsel is trained in the law—both are attorneys and Dinkler in particular reminded the Court that she was a "federal practitioner." Oral Arg., Feb. 7, 2022, Tr. of Proc., Doc. 56 at 1208, 40:8. Fifth, it's possible that this litigation will continue into the foreseeable future, and there is a real need for sanctions to deter Defendants' frivolous

arguments in the MIL, MIL Reply, and submission of baseless allegations as fact from repeating in the future.

If left unaddressed, Defendants' Counsel's conduct in submitting a false or misleading declaration in connection with their MIL is likely to repeat itself and the misrepresentations are likely to become greater and bolder. Sufficient sanctions should be imposed to deter such conduct. Plaintiffs propose and request that the Court impose the following sanctions, in addition to any other sanctions that the Court deems appropriate. First, in order to establish for the record (and, if necessary, to lay the foundation for further, increasingly severe sanctions if such misconduct is repeated), Plaintiffs respectfully request that the Court enter a specific factual finding that Defendants' Counsel knowingly and in bad faith filed a false and misleading declaration. Second, Plaintiffs further ask that the Court order Defendants' Counsel to distribute a copy of the Court's findings and censure to each of the named Defendants, and distribute a copy to Alvin E. Mathews. This is necessary in order to ensure that Defendants are aware of this important development regarding their counsel and to minimize the professional reputational harm to Plaintiffs' counsel. Third, award Plaintiffs' counsel reasonable fees and costs incurred as a result of Defendants' Counsel's actions. Fourth, strike Mathews' First and Second Declaration and any portion of the Defendant's MIL and Reply that references allegations of misconduct by Plaintiffs' counsel from the record.

## CONCLUSION

For all the foregoing reasons Plaintiffs' Motion for Sanctions should be granted in its entirety. Specifically, Plaintiffs request that the Court enter an order (1) specifically finding that Defendants' Counsel filed a declaration in which they knowingly and in bad faith made

17

false or misleading statements of material fact; (2) requiring Defendants' Counsel to submit a copy of such finding to each of the named Defendants, and to distribute it to Alvin E. Mathews; (3) directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation; (4) striking Mathews' First and Second Declaration and any portion of the Defendant's MIL and Reply that references allegations of misconduct by Plaintiffs' counsel from the record; and (5) imposing such other sanctions as this Court deems appropriate.

Dated: February 27, 2023

                                                Respectfully submitted,

                                                s/ Joseph P. Ashbrook
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge, LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of February, 2023, I served a copy of the foregoing by e-mail and regular mail to the following:

Lynnette Dinkler
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419
(937) 426-4200
(866) 831-0904 (fax)
*Attorney for Defendants Bethel Local*
*Schools District Board of Education, and*
*in their official capacities Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam,*
*Jacob King, and Matthew Chrispin*

John A. Podgurski
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
*Attorney for Defendant Bethel Local*
*School District Board of Education*

David Carey
dcarey@acluohio.org
ACLU of Ohio Foundation
1108 City Park Ave., Suite 203
Columbus, OH 43206

Malita Picasso
mpicasso@aclu.org
Rose Saxe
rsaxe@aclu.org
Aditi Fruitwala
afruitwala@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
*Attorneys for Intervenor Defendant Anne Roe*

Michael Meuti
mmeuti@beneschlaw.com
David M. Hopkins (0095285)

dhopkins@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
*Attorneys for Intervenor Defendant Anne Roe*

Freda Levenson
flevenson@aclueohio.org
ACLU of Ohio Foundation
4506 Chester Ave.
Cleveland, OH 44103
*Attorneys for Intervenor Defendant Anne Roe*

                                                    s/ Julie E. Byrne
                                                    Julie E. Byrne