## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## DAYTON DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:22-cv-00337 |
| | ) | |
| v. | ) | Judge Michael J. Newman |
| | ) | |
| BETHEL LOCAL SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT-INTERVENOR ANNE ROE'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant-Intervenor Anne Roe, by her guardian Joanne Roe, respectfully moves this Court to dismiss Count Two for lack of subject matter jurisdiction, and to dismiss Counts Four and Five for lack of subject matter jurisdiction insofar as they are brought by the parent Plaintiffs. Additionally and in the alternative, pursuant to Federal Rule of Civil Procedure 12(c), Anne Roe moves for judgment on the pleadings on Counts Two, Three, Four, and Five of the Complaint in their entirety, to the extent that those claims are not dismissed for lack of standing. A brief in support of this motion is attached.

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU OF OHIO FOUNDATION
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: 614-586-1972
Fax: 614-586-1974
dcarey@acluohio.org

Freda Levenson (0045916)
ACLU OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
Phone: 614-586-1972
Fax: 614-586-1974
flevenson@acluohio.org

Malita Picasso*
Aditi Fruitwala*
Rose Saxe*
Arijeet Sensharma*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY
Phone: 212-549-2500
Fax: 212-549-2650
mpicasso@aclu.org
afruitwala@aclu.org
rsaxe@aclu.org
asensharma@aclu.org

Michael D. Meuti (0087233)
David M. Hopkins (0095285)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216-363-4500
Fax: 216-363-4588
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

*Admitted pro hac vice*

*Counsel for Defendant-Intervenor Anne Roe (a minor, by and through her legal guardian Joanne Roe)*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**DAYTON DIVISION**

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:22-cv-00337 |
| | ) | |
| v. | ) | Judge Michael J. Newman |
| | ) | |
| BETHEL LOCAL SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR ANNE ROE'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ viii

INTRODUCTION.............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    **I.**    **Legal Standard** ................................................................................................. 2

        A.    Rule 12(b)(1) Motion to Dismiss................................................................ 2

Federal Rule of Civil Procedure 12(b)(1) is the proper mechanism to demonstrate Plaintiffs' lack of standing. Accordingly, Defendant-Intervenor Anne Roe submits her standing arguments in that procedural posture. *Ogle v. Church of God*, 153 F. App'x 371, 374–75 (6th Cir. 2005).

        B.    Rule 12(c) Motion for Judgment on the Pleadings...................................... 3

Additionally—and in the alternative as to Count Two, and as to the parent Plaintiffs' portions of Counts Four and Five—Anne Roe submits under Federal Rule of Civil Procedure 12(c) that Plaintiffs have failed to allege facts that plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

    **II.**    **Count Two: Plaintiffs Lack Standing For Their Title IX Claim,**
        **And Alternatively, It Is Meritless** ............................................................ 4

        A.    Plaintiffs Lack Standing for their Title IX Claim, and This Court Should
        Dismiss It On That Basis ......................................................................... 4

As to Count Two, Anne Roe incorporates by reference the arguments in her brief on standing. *See* ECF No. 62. Plaintiffs have failed to allege the basic elements of a Title IX claim, including any exclusion from an educational program on the basis of sex. *See* 20 U.S.C. § 1681; *Bd. Of Educ. Of the highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 865 (S.D. Ohio 2016) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 680 & n.2 (1979)). As Plaintiffs lack standing for their Title IX claim, it should be dismissed on that basis. It would be error for this Court to reach the merits of any claim for which Plaintiffs lack standing. *E.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 9 F. App'x. 457, 460–61 (6th Cir. 2001).

        B.    In the Alternative, Plaintiffs' Hypothetical Analysis of Title IX is Incorrect ............. 6

Discrimination on the basis of transgender status is a form of sex discrimination, and so is prohibited by Title IX in schools receiving federal funding. The Sixth Circuit has ruled that a public school excluding only transgender students from communal restrooms matching their gender identity would violate Title IX. *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Highland*, 208 F. Supp. 3d at 865–71. Plaintiffs' hypothetical application of Title IX is therefore incorrect on the law.

**III.    Count Three: The Fundamental Parenting Right Does Not Grant the Powers Plaintiffs Assert in the Complaint** .......................................................................................... 9

    **A.    Plaintiffs Have No Constitutional Right to Demand Educational Information**............ 9

As it relates to education, the fundamental parenting right is limited to "the right to choose the school and if it is a private school to have a choice[.]" *Crowley v. McKinney*, 400 F.3d 965, 971 (7th Cir. 2005); *see also Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005). There is no constitutional parental right to demand a child's education information, nor one that would require a school to respond to questions as though they were interrogatories in litigation. That is true regardless of whether the parents deem the requested information subjectively important. *E.g.*, *Crowley*, 400 F.3d at 967–68, 971; *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 313–14 (11th Cir. 1989). All claims premised on the School District's alleged failure to answer Plaintiffs' questions therefore fail.

    **B.    Plaintiffs Have No Fundamental Right to Require that School Operations Conform to Their Moral or Religious Beliefs** ....................................................................... 14

The fundamental parenting right "does not extend beyond the threshold of the school door." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005) (citing *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005). It does not endow parents with the power to dictate public school policy, accommodations, curriculum, or practices, including restroom access. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020). Plaintiffs' remaining claims under the fundamental parenting right are premised on the existence of such a power, and therefore fail.

**IV.    Count Four: The School District's Accommodation Does Not Violate the Plaintiffs' Right to Equal Protection of Law** ............................................................... 16

The parent Plaintiffs' equal-protection claims should be dismissed for lack of standing, as noted in Anne Roe's earlier brief. *See* ECF No. 62 at 11–13; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1080 (Ohio 1999).

    **A.    Plaintiffs Fail to Plausibly Allege a Comparator Group That Is Similarly Situated in All Relevant Respects.** ....................................................................... 17

Plaintiffs have failed to allege a comparator class to which they are similarly situated "in all relevant respects," as is necessary for an equal-protection claim. *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). The sole shared characteristic that they allege—that they, and transgender students, are each part of a class protected by the School District from discrimination—is irrelevant.

    **B.    Plaintiffs Fail to Plausibly Allege That They Were Treated Differently as Compared to Others Similarly Situated.** .......................................................................... 19

Plaintiffs have failed to allege that they are being treated unequally compared to any comparator class. In fact, they demand that transgender students be treated unequally, by being excluded from restrooms matching their gender identities while other students are not. Plaintiffs

have also failed to allege that any purported disparate treatment is along the lines of religion, as all students are being treated equally regardless of religion.

C.    Plaintiffs Fail to Allege Any Facts Suggesting, Much Less Demonstrating, Discriminatory Intent. ..................................................................................................... 21

Plaintiffs asserting an equal-protection claim must allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 245–46 (1976); *Reform Am.*, 37 F.4th at 1152–53. Plaintiffs have failed to do so, which is fatal to their claim.

D.    Ohio's Equal Protection Clause Compels the Same Result on Count Four .............. 22

In this context, the Ohio Constitution's Equal Protection Clause is treated similarly to the Fourteenth Amendment. *See, e.g.*, *State v. Mole*, 74 N.E.3d 368, 376–77 (Ohio 2016). Under either provision, rational basis review applies, and the School District's accommodation easily clears that review.

**V.    Count Five: The School District's Actions Do Not Infringe on the Free Exercise of Religion**................................................................................................... 23

As with equal protection, the parent Plaintiffs' free-exercise claims should be dismissed for lack of standing. *See* Standing Br., ECF No. 62 at 13–15. That is also the case under Ohio law, which does not allow the parents to assert a vicarious injury.

A.    Plaintiffs Fail to Plausibly Allege a First Amendment Free-Exercise Violation. ...... 24

i.    *The School District's accommodation is neutral and generally applicable because it does not target religion, and the accommodation survives rational basis review because it is reasonably related to a legitimate government interest.*........................................... 25

Plaintiffs have failed to allege that the School District's accommodation is not neutral or generally applicable, as is necessary for a First Amendment free-exercise claim. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022); *Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990). Specifically, they do not allege that any school policy or accommodation is directed at religious practice, discriminates on its face, or has religious exercise as its object; nor do they allege that any policy or accommodation "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Kennedy*, 142 S. Ct. at 2422. The School District's accommodation therefore faces rational basis review. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). It clears that test easily, as it serves legitimate public interests in nondiscrimination and in avoiding the various harms that would result to transgender students. Plaintiffs' First Amendment claim therefore fails.

ii.    *Plaintiffs' religious rights are not substantially burdened*........................................ 27

Even if Plaintiffs had alleged that they were subject to a policy that is not neutral or generally applicable, which they have not, they have failed to allege that their religious practice is substantially burdened. No plaintiff has alleged that the School District's accommodation has

forced them to "affirm[] a repugnant belief," penalized them for their religious beliefs, or "impede[d] the observance" of an aspect of their religion. *Sherbert v. Verner*, 374 U.S. 398, 402, 404 (1963); *see also Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). Similar to their equal-protection claim, Plaintiffs' position here is tantamount to arguing that the School District is placing a burden on their religion merely by declining to discriminate against others. In fact, the School District is not compelling Plaintiffs to do or not do anything at all, particularly as all students are provided with alternative restroom accommodations. Nothing about the School District's accommodation permits behavior that would impermissibly intrude on the privacy or safety of students within these facilities.

B.    Plaintiffs Also Fail to State a Claim That Is Subject to Strict Scrutiny Under Ohio's Free-Exercise Clause .......................................................................................................... 29

Plaintiffs' free-exercise claims under the Ohio Constitution fail because they have not alleged a coercive effect against their religion. *See Humphrey v. Lane*, 728 N.E.2d 1039, 1045 (Ohio 2000). As noted above, they have not alleged that the School District is compelling them to any particular action or inaction. A religious objection to sharing a restroom with a transgender individual does not transform a generally applicable accommodation into a coercive action. *See, e.g.*, *State v. McKinley*, 66 N.E.3d 200, 205 (Ohio Ct. App. 2016).

C.    Even If Strict Scrutiny Applies, the School District's Accommodation Is Narrowly Tailored to the Compelling Governmental Interests of Health and Safety and Eliminating Discrimination .......................................................................................................... 31

Even if Plaintiffs had plausibly alleged a claim to which strict scrutiny applies, which they have not, the School District's accommodation would survive. Protecting student health and safety is a compelling government interest. *E.g.*, *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 735 (6th Cir. 2021); *Doe v. Snyder*, 101 F. Supp. 3d 672, 700 (E.D. Mich. 2015); *State v. Polk*, 78 N.E.3d 834, 844 (Ohio 2017). Similarly, eliminating discrimination and ensuring equal access to publicly available goods and services are also compelling interests "of the highest order." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624, 628 (1984); *accord, e.g.*, *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 n.5 (1988); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983). The School District's accommodation is as narrowly tailored as possible to serve these interests. Any alternative would perpetuate the very harms the School District has a compelling interest in avoiding.

**CONCLUSION** ...................................................................................................................... **34**

# TABLE OF AUTHORITIES

CASES

*Adams ex rel. Adams v. Baker*,
  919 F. Supp. 1496 (D. Kan. 1996) ........................................................................... 29
*Arceneaux v. Vanderbilt Univ.*,
  25 F.App'x 345 (6th Cir. 2001 ................................................................................. 7
*Armour v. City of Indianapolis*,
  566 U.S. 673 (2012) ................................................................................................ 27
*Arnold v. Bd. of Educ. of Escambia Cnty.*,
  880 F.2d 305 (11th Cir. 1989) ......................................................................... 11, 12
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 3, 4, 33
*Balcar v. Smith*,
  No. 3:16-cv-P428-DJH, 2017 WL 380931 (W.D. Ky. Jan. 26, 2017) .................... 19
*Bangura v. City of Philadelphia*,
  No. 07-127, 2008 WL 934438 (E.D. Pa. Apr. 1, 2008) .................................... 11, 12
*Bates v. Green Farms Condo. Ass'n*,
  958 F.3d 470 (6th Cir. 2020) .................................................................................... 4
*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
  481 U.S. 537 (1987) ................................................................................................ 31
*Bd. Of Educ. Of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
  208 F. Supp. 3d 850 (S.D. Ohio 2016) ............................................................ passim
*Beattie v. Line Mountain Sch. Dist.*,
  992 F. Supp. 2d 384 (M.D. Pa. 2014) ..................................................................... 29
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 3
*Blau v. Ft. Thomas Pub. Sch. Dist.*,
  401 F.3d 381 (6th Cir. 2005) ....................................................................... 9, 14, 16
*Bob Jones Univ. v. United States*,
  461 U.S. 574 (1983) ......................................................................................... 26, 31
*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) .............................................................................................. 7
*Brown v. Hot, Sexy and Safer Productions, Inc.*,
  68 F.3d 525 (1st Cir. 1995) ..................................................................................... 15
*Burnett v. Motorists Mut. Ins. Co.*,
  890 N.E.2d 307 (Ohio 2008) ................................................................................... 22
*Burwell v. Hobby Lobby Stores, Inc.*,
  134 S. Ct. 2751 (2014) ............................................................................................ 32
*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) .................................................................................................. 6
*Charlton-Perkins v. Univ. of Cincinnati*,
  35 F.4th 1053 (6th Cir. 2022) ................................................................................... 7
*Cherry v. LeDeoni*,
  No. 99 CV 6860, 2002 WL 519717 (E.D.N.Y. Mar. 31, 2002) ........................ 11, 12

*Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*,
    612 F. App'x 836 (6th Cir. 2015) ................................................................. 5
*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ............................................................................ 25, 26
*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ................................................................................. 16
*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ................................................................................. 15
*Crowley v. McKinney*,
    400 F.3d 965 (7th Cir. 2005); .......................................................... 9, 10, 12
*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) .................................................................... 17
*Dahl v. Bd. of Trs. of W. Mich. Univ.*,
    15 F.4th 728 (6th Cir. 2021) ..................................................................... 31
*Dodds v. U.S. Dep't of Educ.*,
    845 F.3d 217 (6th Cir. 2016) ........................................................ 6, 7, 8, 27
*Doe v. Snyder*,
    101 F. Supp. 3d 672 (E.D. Mich. 2015) ..................................................... 31
*EJS Props., LLC v. City of Toledo*,
    698 F.3d 845 (6th Cir. 2012) .................................................................... 18
*Embassy Realty Inv., LLC v. City of Cleveland*,
    877 F. Supp. 2d 564 (N.D. Ohio 2012) ........................................................ 4
*Employment Div., Dep't of Human Resources of Ore. v. Smith*,
    494 U.S. 872 (1990) ........................................................................ 24, 25, 26
*Espinoza v. Mont. Dep't of Revenue*,
    140 S. Ct. 2246 (2020) ....................................................................... 11, 13
*Felix v. Dow Chem. Co.*,
    No. 2:07-cv-971, 2008 WL 207857 (S.D. Ohio Jan. 23, 2008) ...................... 4
*Fields v. Palmdale Sch. Dist.*,
    427 F.3d 1197 (9th Cir. 2005) ......................................................... 9, 14, 16
*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ................................................................... 8
*Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*,
    89 F.3d 174 (4th Cir. 1996) ...................................................................... 15
*Humphrey v. Lane*,
    728 N.E.2d 1039 (Ohio 2000) ................................................................... 30
*In re Lewis*,
    398 F.3d 735 (6th Cir. 2005) ...................................................................... 3
*Jackson v. Prof'l Radiology Inc.*,
    864 F.3d 463 (6th Cir. 2017) ...................................................................... 3
*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
    No. 8:20-3552-PWG, 2022 WL 3544256 (D. Md. Aug. 18, 2022) ........... 11, 12
*Jones v. Boulder Valley Sch. Dist. RE-2*,
    No. 20-cv-03399-RM-NRN, 2021 WL 5264188 (D. Colo. Oct. 4, 2021) ......... 20
*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ....................................................................... 24, 25

*Kyle v. Skipper*,
No. 21-1632, 2022 WL 13638333 (6th Cir. Oct. 7, 2022) ..................................... 20

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
814 F. App'x 125 (6th Cir. 2020) ...................................................................... 27

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ...................................................................................... 11

*Leebaert v. Harrington*,
332 F.3d 134 (2d Cir. 2003) ............................................................................. 15

*Littlefield v. Forney Indep. Sch. Dist.*,
268 F.3d 275 (5th Cir. 2001) ....................................................................... 9, 15

*Living Water Church of God v. Charter Twp. of Meridian*,
258 F. App'x 729 (6th Cir. 2007) ..................................................................... 27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................... 3

*Luken v. Brigano*,
797 N.E.2d 1047 (Ohio Ct. App. 2003) ............................................................. 30

*McCrone v. Bank One Corp.*,
839 N.E.2d 1 (Ohio 2005) ............................................................................... 21

*Meyer v. Nebraska*,
262 U.S. 390 (1923) ........................................................................................ 9

*Mixon v. Ohio*,
193 F.3d 389 (6th Cir. 1999) ............................................................................. 4

*Moderwell v. Cuyahoga Cnty.*,
997 F.3d 653 (6th Cir. 2021) ............................................................................. 3

*Morrison v. Miller*,
690 F. App'x 380 (Mem.) (6th Cir. 2017) ........................................................... 3

*Mozert v Hawkins Cnty. Bd. of Educ.*,
827 F.2d 1058 (6th Cir. 1987) ......................................................................... 29

*Musarra v. Musarra*,
No. 1432, 1988 WL 118014 (Ohio Ct. App. Oct. 28, 1988) .................................. 24

*N.Y. State Club Ass'n, Inc. v. City of N.Y.*,
487 U.S. 1 (1988) .......................................................................................... 31

*Nelson v. Christian Brothers Univ.*,
226 F. App'x 448 (6th Cir. 2007 ........................................................................ 7

*Nordlinger v. Hahn*,
505 U.S. 1 (1992) ..................................................................................... 17, 18

*Obergefell v. Hodges*,
135 S. Ct. 2584 (2015) ................................................................................... 33

*Ogle v. Church of God*,
153 F. App'x 371 (6th Cir. 2005) ...................................................................... 3

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ......................................................................... 16

*Parker v. Hurley*,
514 F.3d 87 (1st Cir. 2008) ............................................................................. 29

*Pers. Adm'r v. Feeney*,
442 U.S. 256 (1979) ...................................................................................... 21

x

*Pickaway Cnty. Skilled Gaming, LLC., v. Cordray*,
   936 N.E.2d 944 (Ohio 2010)..................................................................... 22
*Pierce v. Soc'y of Sisters*,
   268 U.S. 510 (1925).................................................................................... 9
*Plyler v. Doe*,
   457 U.S. 202 (1982).................................................................................. 16
*Prince v. Massachusetts*,
   321 U.S. 158 (1944).................................................................................. 16
*Ray v. McCloud*,
   507 F. Supp. 3d 925 (S.D. Ohio 2020) ................................................... 21
*Reform Am. v. City of Detroit*,
   37 F.4th 1138 (6th Cir. 2022) ................................................... 17, 18, 21
*Ritchey Produce Co. v. Ohio Dep't of Adm. Servs.*,
   707 N.E. 2d 871 (Ohio 1999).................................................................. 31
*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984)............................................................................ 31, 32
*Robinson v. Jackson*,
   615 Fed. Appx. 310 (6th Cir. 2015)........................................................ 21
*Rogers v. Pike Road Bd. of Educ.*,
   No. 2:21cv455-MHT, 2022 WL 4563014 (M.D. Ala. Sept. 29, 2022) .......... 11
*Runyon v. McCrary*,
   427 U.S. 160 (1976)............................................................................ 15, 16
*Saginaw Cnty., Mich. v. STAT Emergency Med. Servs.*,
   946 F.3d 951 (6th Cir. 2020) .................................................................. 5, 8
*Sault Ste. Marie Tribe of Chippewa Indians v. United States*,
   9 F. App'x. 457 (6th Cir. 2001) ............................................................... 5, 6
*Schaffer ex rel. Schaffer v. Weast*,
   546 U.S. 49 (2005).................................................................................... 13
*Schmidt v. Des Moines Pub. Sch.*,
   4:08-CV-477, 2010 WL 11493827 (S.D. Iowa Sept. 23, 2010) ............. 11
*Sherbert v. Verner*,
   374 U.S. 398 (1963).................................................................................. 28
*Smith v. City of Salem*,
   378 F.3d 566 (6th Cir. 2004) ................................................................. 7, 21
*Stalley v. Methodist Healthcare*,
   517 F.3d 911 (6th Cir. 2008) ..................................................................... 3
*State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*,
   715 N.E.2d 1062 (Ohio 1999)................................................................. 17
*State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*,
   931 F.3d 499 (6th Cir. 2019) ..................................................................... 2
*State ex rel. Yost v. Church of Troy*,
   159 N.E. 3d 818 (Ohio Ct. App. 2020) .................................................. 30
*State v. Cook*,
   No. 5-19-26, 2020 WL 615076 (Ohio Ct. App. Feb. 10, 2020) ............. 30
*State v. McKinley*,
   66 N.E.3d 200 (Ohio Ct. App. 2016)...................................................... 30

*State v. Mole*,
  74 N.E.3d 368 (Ohio 2016) ........................................................................ 21, 22
*State v. Polk*,
  78 N.E.3d 834 (Ohio 2017) ............................................................................... 31
*State v. Wisener*,
  No. 22 MA 0025, 2022 WL 17747364 (Ohio Ct. App. Dec. 15, 2022) .................................. 30
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................ 5, 6
*Students and Parents for Privacy v. Sch. Dir. of Twp. High Sch. Dist. 211*,
  377 F. Supp. 3d 891 (D. Ill. 2019) ..................................................................... 16
*Swanson v. Guthrie Indep. Sch. Dist. No. I-L*,
  135 F.3d 694 (10th Cir. 1998) .......................................................................... 15
*Troxel v. Granville*,
  530 U.S. 57(2000) ............................................................................................ 9
*United Food & Commercial Workers, Local 1995 v. Kroger Co.*,
  51 F.4th 197 (6th Cir. 2022) .......................................................................... 4, 25
*Washington v. Davis*,
  426 U.S. 229 (1976) ...................................................................................... 17
*Zawahiri v. Alwattar*,
  No. 07AP-925, 2008 WL 2698679 (Ohio Ct. App. Jul. 10, 2008) .......................................... 22

STATUTES

20 U.S.C. § 1681 ............................................................................................ 5
Ohio Rev. Code § 149.43 .................................................................................. 14

RULES

Fed. R. Civ. P. 12(c) ....................................................................................... 3

CONSTITUTIONAL PROVISIONS

Ohio Const. Art. I Sec. 2 ................................................................................ 21
Ohio Const. Art. I Sec. 7 ................................................................................ 29

**INTRODUCTION**

The constitutional rights invoked in this case exist to protect individuals from unfair, coercive, and discriminatory treatment by their government. Yet through rhetorical sleight of hand and distortion of constitutional principles, Plaintiffs attempt to turn these fundamental protections on their heads. According to Plaintiffs' Complaint, a parent's freedom to raise their children means that the government must compel other parents' children to comply with Plaintiffs' beliefs, equal protection of the law requires that some students be treated unequally because they are transgender, and free exercise of religion requires that public schools adopt and enforce Plaintiffs' religious preferences. Plaintiffs' inverted narrative is wrong. The legal flaws in their various constitutional claims are myriad and diverse, but the common theme is this: The Constitution is not a vehicle to compel discrimination. Nothing in the constitutional guarantees of parenting rights, equal protection, or free exercise of religion mandates that transgender students be excluded from gender-appropriate communal restrooms.

Nearly a year before Plaintiffs filed this lawsuit, the Bethel Local School District (the "School District") allowed a transgender high school student, Defendant-Intervenor Anne Roe, to use the communal school restroom matching her gender identity. Even in Plaintiffs' account, this accommodation was reached only once the School District came to the conclusion that it was the only viable option for Anne Roe. School District faculty pointed out that to exclude transgender students from the gender-appropriate restrooms was unfair, and potentially harmful to students' wellbeing. Indeed, it is undisputed that the School District acted in order to prevent discrimination. It is also undisputed that, perhaps anticipating that some parents or students might still object, the school made private single-occupancy restrooms available upon request to any student, for any reason. Nonetheless, Plaintiffs—a collection of parents and students united by their insistence that

1

Anne Roe be excluded from the girls' restroom—claim that their constitutional rights are violated by the mere specter of her presence, or the simple fact that she is allowed to be there. Their claims are meritless, as discussed below.

This is a combined Rule 12(b)(1) motion to dismiss and Rule 12(c) motion for judgment on the pleadings. The former component applies to Plaintiffs' lack of standing; the latter applies to their failure to state a claim on multiple counts. In response to this Court's February 7, 2023 *sua sponte* briefing order, Anne Roe has already briefed the reasons why Count Two of the Complaint (Title IX) fails for lack of standing, and why Counts Four (Equal Protection) and Five (Free Exercise) also fail for lack of standing insofar as they assert claims by the parent Plaintiffs. *See* ECF No. 62. Anne Roe incorporates that brief by reference. As the Court's February 7 Order sought briefing as to federal claims specifically, however, Anne Roe further submits by this motion that the state-law portions of Counts Four and Five also fail for lack of standing.

As to the Rule 12(c) component, Count Three (Fundamental Parenting Right) fails to state a valid claim. The student Plaintiffs' portions of Counts Four and Five also fail to state a claim. Finally, if—and only if—this Court should find that Plaintiffs have standing for Count Two, or that the parent Plaintiffs have standing for Counts Four and Five, those counts should be dismissed for failure to state a claim. As previously noted, Anne Roe takes no position as to the merits of Counts One or Six of the Complaint.

## ARGUMENT

### I. Legal Standard

#### A. Rule 12(b)(1) Motion to Dismiss

Where a plaintiff lacks standing, a court lacks subject matter jurisdiction over that plaintiff's claims. *E.g.*, *State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, rather

than a Rule 12(c) motion for judgment on the pleadings, is therefore the proper vehicle for challenging a party's lack of standing. *Ogle v. Church of God*, 153 F. App'x 371, 374–75 (6th Cir. 2005) (finding that a trial court should have addressed standing arguments in the Rule 12(b)(1) posture rather than converting the motion to a Rule 12(c) motion). A defect in subject matter jurisdiction may be raised "at any time, at any party, or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). As the party invoking federal subject matter jurisdiction, Plaintiffs have the burden to demonstrate that they satisfy each element of Article III standing. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).

Anne Roe's brief in response to Plaintiffs' brief on standing states in full the applicable legal standards. *See* ECF No. 62 at 3–4.

### B. Rule 12(c) Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is to be adjudicated under the same standard as a Rule 12(b)(6) motion to dismiss. *E.g.*, *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)). The moving party prevails when "no material issue of fact exists and [they are] entitled to judgment as a matter of law." *Id.* (internal citation omitted). "[A] party can move for judgment on the pleadings any time '[a]fter the pleadings are closed,' so long as the motion does not 'delay trial.'" *Morrison v. Miller*, 690 F. App'x 380 (Mem.) (6th Cir. 2017) (quoting Fed. R. Civ. P. 12(c)); *accord Moderwell*, 997 F.3d at 659.

As with a motion to dismiss, courts are to apply the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under those

standards, this Court need not "blindly accept legal conclusions nor draw unwarranted factual inferences" from the pleadings. *United Food & Commercial Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022); *accord Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). It is not enough for pleaded facts merely to be "consistent with" a defendant's liability; rather, the pleaded facts must "plausibly give rise to an entitlement to relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678–69). Pleadings that "are no more than conclusions … are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In addition, this Court may consider documents attached to the answer if they are referred to in the complaint and are central to the plaintiff's claims, even if they were not expressly incorporated into the complaint. *See, e.g.*, *Felix v. Dow Chem. Co.*, No. 2:07-cv-971, 2008 WL 207857, at *1 (S.D. Ohio Jan. 23, 2008); *Embassy Realty Inv., LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 570 (N.D. Ohio 2012). For purposes of this motion, Defendant-Intervenor notes that the Complaint discusses—selectively, but centrally—a Frequently Asked Questions document issued by the School District. *See* Complaint, ECF No. 1, ¶ 62 (the "Bethel FAQ"). Two versions of the Bethel FAQ were attached to the School District's Answer, and are incorporated by reference. *See* Defendants' Answer, ECF No. 39-6 at 1.

## II. <u>Count Two: Plaintiffs Lack Standing For Their Title IX Claim, And Alternatively, It Is Meritless</u>

### A. <u>Plaintiffs Lack Standing for their Title IX Claim, and This Court Should Dismiss It On That Basis</u>

For all the reasons set forth in Defendant-Intervenor's Brief on Plaintiffs' Standing, ECF No. 62, Plaintiffs have failed to satisfy the requirements of Article III standing to pursue their Title IX claim. Therefore, that claim must be dismissed for lack of subject matter jurisdiction. *Saginaw*

4

*Cnty., Mich. v. STAT Emergency Med. Servs.*, 946 F.3d 951, 954 (6th Cir. 2020) ("Article III's bill of lading allows federal courts to deliver judgments on real disputes, not hypothetical ones, to resolve concrete disputes, not to pronounce judgments on theoretical disputes that may or may not materialize and, if they do, may appear in a variety of forms.").

In fact, assuming hypothetical jurisdiction in order to dismiss a claim on the merits is reversible error under settled Sixth Circuit law. *See, e.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 9 F. App'x. 457, 460–61 (6th Cir. 2001); *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*, 612 F. App'x 836 (Mem.) (6th Cir. 2015). The reason for so rigidly enforcing this important limitation, as Justice Scalia once noted, is that "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by [the U.S. Supreme] Court from the beginning." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). A plaintiff's lack of Article III standing not only deprives a district court of jurisdiction to consider the merits of the claim as a matter of law, but also makes it impossible for the court to review the merits of the claim as pleaded as a practical matter.

That is the case here, because a hypothetical legal question is all that Plaintiffs have pled. Title IX provides that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The statute "affords an implied private right of action *to victims of discrimination* [on the basis of sex]." *Bd. Of Educ. Of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 865 (S.D. Ohio 2016) (emphasis added). To prevail on a Title IX discrimination claim, a plaintiff must show: "(1) that she was excluded from participation in an education program because of her sex; (2) that the educational

institution received federal financial assistance at the time of the exclusion; and (3) that the discrimination harmed her." *Id.* (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 680 & n.2 (1979)).

Plaintiffs do not remotely attempt to make a claim that could satisfy those elements. Most obviously, they fail even to allege that they have been subjected to discrimination "on the basis of sex." They have not alleged, for example, that they are being singled out based on their sex, the fact that they are not transgender, or that they do or do not match sex stereotypes. That alone confirms that Plaintiffs are not actually asserting a Title IX claim. There is no dispute that the District receives federal financial assistance, but this Court cannot meaningfully evaluate the third element of the claim, because Plaintiffs allege no sex-based discrimination from which harm might have proceeded.

The substance of Plaintiffs' claim is not an objection that they (or even any students) have received different or worse treatment than others "on the basis of sex," but an objection to their receiving *equal* treatment that they argue is not required by Title IX. Thus, the Plaintiffs' Title IX claim asks this Court to consider hypothetical legal issues in the abstract and issue a "hypothetical judgment[.]" *Steel Co.*, 523 U.S. at 101. Sixth Circuit precedent forbids adjudicating the merits of a phantom claim of this nature. *Sault Ste. Marie Tribe*, 9 F. App'x. at 460–61.

B.  <u>In the Alternative, Plaintiffs' Hypothetical Analysis of Title IX is Incorrect</u>

Were the Court to be faced with a case where a Title IX claim was properly before it—for example, if a transgender student had challenged her exclusion from school restrooms as sex discrimination in violation of Title IX—it is settled in this Circuit that Title IX protects the right of transgender students to access the communal school restrooms that align with their gender identity. *See Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Highland*, 208 F. Supp. 3d at 865–71.

6

First, denying a transgender student access to the communal restroom matching their gender identity necessarily denies them an educational benefit on the basis of sex, and subjects them to discrimination on the basis of sex in violation of Title IX. *Highland*, 208 F. Supp. 3d at 865–69. For the purposes of Title IX, discrimination means treating an individual worse than others who are similarly situated. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740 (2020).[1] A policy permitting students to use the communal restroom consistent with their gender identity only if their gender identity aligns with their sex assigned at birth, while prohibiting transgender students from using the communal restroom consistent with their gender identity only because their gender identity does not align with their sex assigned at birth, falls squarely within the scope of this definition of discrimination. As the Supreme Court has made clear, "it is impossible to discriminate against a person for being … transgender without discriminating against that individual on the basis of sex." *Id.* at 1741. Discrimination based on transgender status is sex-based discrimination because it amounts to "penaliz[ing] a person identified as [a particular sex] at birth for traits or actions" that would be tolerated in a person identified as another sex at birth. *Id*.

Second, under settled Sixth Circuit law, sex-stereotyping discrimination based on a person's gender non-conforming behavior—including the person's "failure to act and/or identify with his or her gender"—is sex-based discrimination and therefore prohibited by Title IX. *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (quoting *Smith v. City of Salem*, 378 F.3d

---

[1] Although *Bostock* concerned a Title VII claim, the Sixth Circuit has repeatedly acknowledged that courts can and do look "to Title VII, 42 U.S.C. § 2000e, as an analog for the legal standards in both Title IX discrimination and retaliation claims." *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1058, n. 2 (6th Cir. 2022) (quoting *Nelson v. Christian Brothers Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007)); *see also Arceneaux v. Vanderbilt Univ.*, 25 F.App'x 345, 347 (6th Cir. 2001); *Smith v. City of Salem*, 378 F.3d 566, 576-577 (6th Cir. 2004).

566, 575 (6th Cir. 2004)). Discrimination based on a person's transgender status is a form of prohibited sex-stereotyping discrimination because "[a] person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." *Id.* (quoting *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)). In light of this settled law, a theoretical school policy that prohibited transgender students from using the communal restroom in accordance with their gender identity, while permitting cisgender students to do so, would necessarily discriminate based on transgender status, and therefore would violate Title IX under a theory of sex stereotyping discrimination.

Once the Court determines that discrimination on the basis of sex has occurred, all that remains is to determine whether the sex discrimination has harmed the party asserting the claim. *See, e.g.*, *Highland*, 208 F. Supp. 3d at 871. Again, while Plaintiffs have alleged various injuries which they claim are caused by the District's decision to permit Anne Roe to use the communal girls' restroom on equal terms as other students, they have not alleged that sex discrimination is the basis of their hypothetical claim. *See* Defendant-Intervenor's Brief on Standing, ECF No. 62 at 6–8. Anne Roe has not asserted a Title IX claim because she is not now being excluded from the restrooms on the basis of her sex, and the Plaintiffs cannot ask the Court to make such an important determination on her behalf, or to adjudicate the merits of a claim that she has not brought. *Id.* at 7 (discussing *Saginaw Cnty.*).

Plaintiffs' Title IX claim should be dismissed for lack of standing; and absent a finding that they have established standing, this Court may not properly adjudicate the merits of their Title IX claim. But even were it somehow to reach the merits, Plaintiffs are wrong on the law. Controlling law in this Circuit provides that denying transgender students access to the communal

restrooms that are consistent with their gender identity—while permitting cisgender students such access—is sex discrimination in violation of Title IX.

## III.   Count Three: The Fundamental Parenting Right Does Not Grant the Powers Plaintiffs Assert in the Complaint

The parent Plaintiffs allege that the School District violated their Fourteenth Amendment rights to direct the education and upbringing of their children, by (a) having not yet answered some of Plaintiffs' questions about the School District's restroom access practices or policies; and (b) allowing Anne Roe, and possibly other students who are transgender, to use communal restrooms matching their gender identities. *See* Compl. ¶¶ 109–115; Plaintiffs' Br. on Standing, ECF No. 59 at 6 (describing these two categories of alleged injury).

Both aspects of Plaintiffs' claim fail as a matter of law. It is true that the Fourteenth Amendment guarantees parents a right to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). This is sometimes referred to as the *Meyer–Pierce* right. *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). Critically, the right does not reach into public schools to allow parents to control the schools' day-to-day operations. *E.g.*, *Fields*, 427 F.3d at 1207. It provides neither of the specific powers that Plaintiffs attempt to claim here: neither a parental power to demand particularized information that might inform the parent's choice of school, nor a parental power to control school operations and policy on the basis of personal values. *See, e.g.*, *Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005); *Crowley v. McKinney*, 400 F.3d 965, 971 (7th Cir. 2005); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001). Plaintiffs' claims therefore fail as a matter of law.

A.   Plaintiffs Have No Constitutional Right to Demand Educational Information

Plaintiffs assert, first, that the Fourteenth Amendment requires the School District to furnish them with "the information needed to have a full picture of the Board's actions and the non-academic instruction of their children." Compl., ECF No. 1, ¶ 111. Specifically, they allege that they have "raised" as-yet unanswered questions regarding School District policies.[2] *Id.* at ¶¶ 97–100. These questions include demands that the School District explain how it would resolve hypothetical scenarios that Plaintiffs do not allege have actually arisen, *see id.* at ¶ 97 (questions regarding locker room use, transgender adult use of restrooms, and overnight trips), as well as an apparent demand that the School District make plans to suppress viewpoints that Plaintiffs find disagreeable. *Id.* (asking "[h]ow Bethel is addressing the promotion of LGBTQ+ beliefs among students"). Plaintiffs contend—incorrectly—that the school is constitutionally required to disclose this information, on the basis that Plaintiffs personally consider it important in deciding whether "to remove their children from the public school system." *See id.*

Plaintiffs' claim fails because the Fourteenth Amendment does not endow parents with a right to be furnished information on demand about their children's education, nor about the daily operations of the school—much less about accommodations that the school has granted other students. No matter how important the parents may personally find a particular piece of information, the school is under no constitutional duty to disclose it, and parents have no constitutional entitlement to it. The "only federal constitutional right vis-à-vis the education of one's children … is the right to choose the school and if it is a private school to have a choice[.]"

---

[2] The Complaint is ambiguous as to whether Plaintiffs have actually posed these questions to the School District directly—and if so, by what means—or whether they simply have questions that they believe have not been answered by the School District's communications to date. *See* ECF No. 1 at ¶¶ 97 ("Plaintiffs, and other Bethel parents, have raised numerous common sense questions"), 98 ("the Board has not answered these questions"). Either version of their claim fails, as explained in this section.

*Crowley*, 400 F.3d at 971. Accordingly, federal courts regularly reject claims like Plaintiffs' here. *See, e.g.*, *id.* at 967–68, 971 (rejecting claim asserting a constitutional right to be informed about school events, injuries suffered at school, or other incidents); *Bangura v. City of Philadelphia*, No. 07-127, 2008 WL 934438, at *4 (E.D. Pa. Apr. 1, 2008) ("a parent simply has no *constitutional* right to obtain information regarding her child's education") (emphasis in original); *Schmidt v. Des Moines Pub. Sch.*, 4:08-CV-477, 2010 WL 11493827, at *6 (S.D. Iowa Sept. 23, 2010) (similar, citing *Bangura* and *Crowley*); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 8:20-3552-PWG, 2022 WL 3544256, at *14 (D. Md. Aug. 18, 2022) (rejecting a constitutional parental right to have school officials disclose their transgender child's gender identity); *Cherry v. LeDeoni*, No. 99 CV 6860, 2002 WL 519717, at *7 (E.D.N.Y. Mar. 31, 2002) (rejecting parent's right to educational records); *cf. Rogers v. Pike Road Bd. of Educ.*, No. 2:21cv455-MHT, 2022 WL 4563014 (M.D. Ala. Sept. 29, 2022) (finding no clearly established right to "comprehensive parental notification"); *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 313–14 (11th Cir. 1989), *abrogated in part by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). While schools may choose to provide this information, that does not make it a constitutional right.

Plaintiffs characterize their claim as seeking "vital information necessary to exercise their rights with full information," ECF No. 1 at ¶ 100, and have since argued that the School District is "substantially burdening" their parental rights by not providing this information. Pls.' Br. on Standing, ECF No. 59 at 6–7 (citing *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, (2020)). That argument is no more than an attempt to circumvent the well-established limits on the *Meyer–Pierce* right using rhetoric; Plaintiffs cannot salvage a facially invalid claim merely by rephrasing it. Parents have a right to select their children's school, and to be free of undue government

interference in their own actions in child-rearing. The School District has no obligation to affirmatively facilitate the exercise of that right to the fullest possible degree, any more than it would be required to provide parents with a bullhorn to exercise their First Amendment rights. *See, e.g., Cherry*, 2002 WL 519717, at \*7 (school was not "constitutionally obligated to remove every obstacle, regardless of its size, that prevents Plaintiff from fully exercising his right to control the upbringing of his child").

Were it otherwise, any parent could obtain any information from a school—regardless of the nature of the information or the burden imposed on the school—merely by declaring it to be subjectively important to them. As noted above, the Constitution does not offer that relief, even when the information is important enough to a parent to cause them to seek relief in federal court. *E.g.*, *Crowley*, 400 F.3d at 971; *Bangura*, 2008 WL 934438, at \*4; *John & Jane Parents 1*, 2022 WL 3544256, at \*14. Such a right would be particularly unwieldy where, as here, parents' requested information is as unintelligibly vague as, "[h]ow Bethel is addressing the promotion of LGBTQ+ beliefs among students." Compl., ECF No. 1, ¶ 97.

In *Arnold v. Board of Education of Escambia County*, the Eleventh Circuit explained the key distinction that Plaintiffs fail to observe here. The *Arnold* plaintiffs alleged that public school officials violated their parental rights by coercing their children into obtaining an abortion without consulting the parents. 880 F.2d at 312. The Eleventh Circuit found that by forcing the minors to refrain from speaking with their parents, the school had "interfere[d] with parental authority in the household" and "depriv[ed] the parents of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children." *Id.* at 313. That is to say, the right was violated where the school *reached into the home* to interfere, coercively, with parents' relationship with their children. The Eleventh Circuit expressly declined

12

to hold that school staff had any constitutional obligation to notify parents about a student who simply sought counseling regarding pregnancy. *Id.* at 314 ("We hold merely that counselors must not coerce minors to refrain from communicating with their parents. The decision whether to seek parental guidance, absent law to the contrary, should rest within the discretion of the minor.").

The parent Plaintiffs here fall on the wrong side of the *Arnold* divide. They do not allege that the school has in any way acted to prevent their children from sharing information with them, but instead seek to constitutionally compel the school to disclose information, either unsolicited or on demand. That is exactly the purported right that *Arnold*, *Crowley*, and other cases have rejected.

*Espinoza v. Mont. Dep't of Revenue*, the case on which Plaintiffs appear to rely in their standing brief, is consistent with these limitations. *Espinoza* is a free exercise decision, not a fundamental parenting rights one. The Supreme Court noted in passing only that the parenting right was impermissibly burdened where the state withheld funding only from religious schools, because the Court found that doing so effectively penalized parents for exercising their right to choose a different school. *See* 140 S. Ct. 2246, 2261 (2020) ("the no-aid provision penalizes that decision by cutting families off from otherwise available benefits"). Nothing remotely of the sort is alleged here; Plaintiffs do not allege that the School District has done anything to penalize them for their choice of school, or to impede them from removing their children from public school if they so desire. The other cases Plaintiffs cite in their standing brief, *see* ECF No. 59 at 6–7, address different rights, and stand only for the general proposition that rights may be infringed where they are burdened. That general proposition may be true where the right is actually burdened, as was found in *Espinoza*, but it does not support Plaintiffs' ambitious attempt to expand the School District's obligations here.

To be sure, parents may have federal or state *statutory* rights to some specified categories of documents. *See generally, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (discussing a statutory "right to review all records that the school possesses in relation to their child"); Ohio Rev. C. § 149.43 (Open Records Act). But nothing in *constitutional* jurisprudence requires the School District to, in effect, respond to questions from parents as though they were interrogatories in litigation.

    B.  <u>Plaintiffs Have No Fundamental Right to Require that School Operations Conform to Their Moral or Religious Beliefs</u>

Next, the parent Plaintiffs claim that their right to "inculcat[e] moral and religious values" in their children implies a right to require the School District to conform its practices and policies to those values: here, with regard to restroom access. Compl., ECF No. 1 at ¶ 112. Even assuming *arguendo* that the School District had run afoul of the parents' religious values—which it has not in any constitutionally cognizable way, *see infra* Section V (free exercise)—the Sixth Circuit has squarely rejected the notion that Fourteenth Amendment parental rights confer any right of control over school practices:

> The critical point is this: While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally committed to the control of state and local authorities.

*Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) (internal citations and quotation marks omitted). As the Ninth Circuit stated even more succinctly: "the *Meyer–Pierce* right does not extend beyond the threshold of the school door." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005) (citing *Blau*).

14

The *Meyer–Pierce* right is a shield against government intrusion, not a sword. It prevents the government, including public schools, from blocking parents' efforts to inculcate their chosen values in their children, including by choosing whether to go to public school at all. *See supra* (discussing *Arnold*). But parents may not use the right to conscript schools into furthering the parents' own personal religious or moral values, either through the school curriculum or through other school policies and practices. *See also, e.g.*, *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) (rejecting parental challenge to school uniform policy); *Leebaert v. Harrington*, 332 F.3d 134, 142 (2d Cir. 2003) (rejecting a parental "right to tell public schools what to teach or what not to teach"); *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699-700 (10th Cir. 1998) (rejecting a right to "pick and choose which courses their children will take from the public school," noting that "parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject"); *Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 176–79 (4th Cir. 1996) (high school community-service requirement did not violate parental rights). As with the other baseless aspect of Plaintiffs' *Meyer–Pierce* claim, *supra* Section III.A, the right that they assert here would be impracticable. "If all parents had a fundamental constitutional right to dictate individually what the schools teach their children, the schools would be forced to cater a curriculum for each student whose parents had genuine moral disagreements with the school's choice of subject matter." *Brown v. Hot, Sexy and Safer Productions, Inc*., 68 F.3d 525, 534 (1st Cir. 1995) (holding that "[w]e cannot see that the Constitution imposes such a burden on state educational systems."), *abrogated on other grounds by Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). Any question of school policy, curriculum, or practice on which any two parents

15

disagreed—which, especially in today's political climate, could be nearly any possible question—would create an irreconcilable constitutional conflict. This plainly cannot be the rule.

*Runyon v. McCrary*, 427 U.S. 160 (1976), demonstrates this point. As the Supreme Court observed, the Constitution protects a parent's right to inculcate "whatever values and standards they deem desirable" in their children—including, in that case, favoring racially segregated schools. *Id.* at 177. But parents do not have a constitutional right to require that public schools actually engage in racial segregation in order to conform with the parents' personal values. *Id.* Relatedly, the state's authority to guard children's well-being "is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

Multiple federal courts have applied these principles in the particular context of restroom access for transgender students, holding that the parental-rights doctrine does not provide a basis to intrude on school policies and practices. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020) (citing *Fields* and *Blau* to reject a parental right to direct school restroom and locker room policies); *Students and Parents for Privacy v. Sch. Dir. of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 903–04 (D. Ill. 2019) (rejecting a purported "right to determine whether their children will be exposed to opposite-sex children in restrooms and locker rooms"). Nothing in the particular context of restroom use—or for that matter, in any of the School District's policies pertaining to students who are transgender—warrants an exception to the established boundaries of parental rights as set by *Runyon*, *Blau*, and their progeny.

Plaintiffs' *Meyer–Pierce* claim is incompatible with the overwhelming weight of case law on this subject. Defendants are entitled to judgment as a matter of law.

**IV.  Count Four: The School District's Accommodation Does Not Violate the Plaintiffs' Right to Equal Protection of Law.**

"The Equal Protection Clause of the Fourteenth Amendment … is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A valid equal-protection claim must show that a government actor or entity treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Plaintiffs asserting an equal-protection claim must also demonstrate discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 245–46 (1976).

To begin with, as discussed in Anne Roe's brief on standing, the parent Plaintiffs' equal-protection claims should be dismissed for lack of standing. *See* ECF No. 62 at 11–13. *E.g.*, *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*, 612 F. App'x 836 (Mem.) (6th Cir. 2015) (standing must be assessed before the merits). As noted below, Ohio's equal protection clause operates similarly to federal equal protection for purposes of this case, *see infra* Section IV.D. Thus, the parent Plaintiffs' state-law equal-protection claims should also be dismissed for lack of standing. See *State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1080 (Ohio 1999) ("It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue").

As for the student Plaintiffs, while they may have standing, they have failed to plausibly allege that they were treated "disparately as compared to similarly situated persons," *Reform Am.*, 37 F.4th at 1152, and have also failed to allege discriminatory intent, and thus fail to state a plausible equal-protection claim under either the federal or state constitutions.

A.  <u>Plaintiffs Fail to Plausibly Allege a Comparator Group That Is Similarly Situated in All Relevant Respects.</u>

17

"To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Reform Am.*, 37 F.4th at 1152 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). To satisfy this requirement, Plaintiffs must allege facts sufficient to show that there were no material differences between them and a comparator class, with materiality of differences determined by "whether disparate treatment would be justified based on these attributes." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012); *see also Reform Am.*, 37 F. 4th at 1152 (finding that plaintiffs asserting differential treatment with respect to political speech were not similarly situated to the comparator group because the comparator group had tickets to the event in question while the plaintiffs did not).

Plaintiffs allege that because the School District "has adopted an anti-discrimination policy that expressly creates protected classes," Compl. ¶ 117, and both religion and "gender identity and transgender status" are among these protected classes, *id.* ¶¶ 118, 119, they are similarly situated "for purposes of the Board's actions in providing educational opportunities." *Id.* ¶ 120. Plaintiffs' conclusion simply does not follow. The existence of a policy that includes protections for both religious students and transgender students does not render them similarly situated for any and all purposes. It means only that neither may be subject to discriminatory treatment on the basis of the protected characteristic.

Plaintiffs have alleged merely that they share one common, albeit irrelevant, characteristic with transgender students—each is a member of a class that is protected from discrimination by school policy—but have not plausibly alleged that the groups are alike "in all relevant respects." *Reform Am.*, 37 F.4th at 1152 (quoting *Nordlinger*, 505 U.S. at 10). It is not the case that prior to the School District's accommodation, both groups were excluded from access to communal restrooms in accordance with their gender identity; only transgender students were excluded, and

18

this distinction is the obvious basis for accommodating transgender students. *Cf. Reform Am.*, 37 F.4th at 1152.

   B.  <u>Plaintiffs Fail to Plausibly Allege That They Were Treated Differently as Compared to Others Similarly Situated.</u>

Even if the religious student Plaintiffs could be said to be similarly situated to transgender students, they would nonetheless fail to plausibly allege an equal-protection claim because the School District's accommodation does not treat religious individuals differently from other students. Plaintiffs assert that "[t]he Board is providing transgender students with communal intimate facilities in accordance with those students' self-declared core identity but not providing religious students, including the Plaintiffs, with intimate facilities based on biological sex in accordance with the Plaintiffs' self-declared core identity," Compl. ¶ 123, and is "providing a long-standing educational benefit—communal intimate facilities—to one of its protected classes (transgender students) in accordance with that student's believed core identity but not providing the same educational opportunity for the Muslim or Christian students." *Id.* ¶ 91; *see also id.* ¶ 123.

Plaintiffs' claim inverts the principles of equal protection. They do not and cannot allege that they are denied access to communal restrooms consistent with their gender identity. Rather, they claim that equal treatment means accommodating their preference *that Anne Roe be treated unequally*. In effect, what Plaintiffs object to is the fact that under the School District's accommodation, they are treated the *same* as others; that transgender students now receive the *same* educational benefits as Plaintiffs. *See Balcar v. Smith*, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *6 (W.D. Ky. Jan. 26, 2017) (dismissing Plaintiff's equal-protection claim where Plaintiff did not allege he received different treatment but rather "seemingly objects to being treated the same as all other inmates"). Plaintiffs have and will continue to have access to

19

"communal intimate facilities in accordance with [their] self-declared core [gender] identity"—and transgender students now enjoy this access as well. Further, to state a claim for discriminatory treatment, Plaintiffs must allege that any differential treatment is in fact along lines of religion. They have not done so; they do not claim, for example, that the School District adjusted its practices or policies for non-religious parents or students with similar objections, but not for Plaintiffs. *See Kyle v. Skipper*, No. 21-1632, 2022 WL 13638333, at *2 (6th Cir. Oct. 7, 2022) (affirming summary judgment against plaintiff because they failed to demonstrate that their religion was the basis for the differential treatment alleged).

A federal district court in Colorado recently faced a similar claim, with plaintiffs asserting that a school district's "transgender programming and curriculum, and the way they are carried out, 'deny equal protection' to the Parents, 'who, for religious or other reasons, wish to exclude their children from the teachings.'" *Jones v. Boulder Valley Sch. Dist. RE-2*, No. 20-cv-03399-RM-NRN, 2021 WL 5264188, at *17 (D. Colo. Oct. 4, 2021). The court found that the plaintiffs' allegations—similar to those stated here, that the school district "favors some parents because of their beliefs while disfavoring others because of their beliefs"—"do not state an equal protection violation." *Id.* The court continued:

> Plaintiffs' claims about supposed discrimination makes little sense in terms of a denial of equal protection. Plaintiffs are allegedly being denied the option to opt out of transgender programming in contradiction to certain District policies. But in this regard, they are being treated just like all other parents, religious or non-religious, whether they find the transgender programming offensive or not. All families were allegedly not being told about the details of the curriculum and no one is given the opt-out option. It is not as if non-religious parents were being told about the offensive programming and being given the opt-out option, while the Plaintiffs were being kept in the dark. In sum, there is no plausible denial of equal protection or religious discrimination alleged here and Plaintiffs cite no case that would recognize an equal protection claim under remotely similar circumstances.

*Id.* at 18. The same conclusion is appropriate in this case.

C. Plaintiffs Fail to Allege Any Facts Suggesting, Much Less Demonstrating, Discriminatory Intent.

Even if Plaintiffs had alleged that they were similarly situated to a comparator class, or that they faced differential treatment on the basis of their religion—both of which they have failed to do—they would nevertheless fail to state an equal-protection claim because nowhere in their complaint do they allege facts plausibly showing discriminatory intent.

Specifically, Plaintiffs allege no facts showing that the School District's accommodation was motivated by a desire to treat religious students or parents differently, or to treat students or parents with certain religious beliefs differently. Such a showing is a necessary component of an equal-protection claim. *See Reform Am. v. City of Detroit, Mich.*, 37 F.4th 1138, 1152–53 (6th Cir. 2022) (citing, e.g., *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." (footnote and citation omitted))); *see also Robinson v. Jackson*, 615 Fed. Appx. 310, 314 (6th Cir. 2015) ("Thus, to prevail on an equal protection claim, Robinson must demonstrate that the ODRC's provision of Kosher, but not Halal, meals constitutes disparate treatment of similarly-situated individuals. He must further prove that the disparate treatment in question is the result of intentional and purposeful discrimination." (internal citations omitted)).[3]

---

[3] Although this case does not present this issue, it is worth noting that Plaintiffs' preferred policy—barring any transgender student from the communal restroom matching their gender identity—likely would be *prohibited* by the Equal Protection Clause, not mandated by it. As noted above, discrimination against transgender people is sex-based discrimination, *see supra* Section II.B., and sex-based governmental classifications are subject to heightened scrutiny. *Smith v. City of Salem*, 378 F.3d 566, 576–77 (6th Cir. 2004); *see also Ray v. McCloud*, 507 F. Supp. 3d 925, 937 (S.D. Ohio 2020) ("transgender individuals are a quasi-suspect class entitled to heightened scrutiny"); *Highland*, 208 F. Supp. 3d at 873–74 (similar). At least one other judge of this Court has struck such a policy on that basis. *See, e.g.*, *Highland* at 874–76 ("At bottom, Highland cannot show that its refusal to let Jane use the girls' restroom is substantially related to its interest in student privacy.").

D. <u>Ohio's Equal Protection Clause Compels the Same Result on Count Four</u>

Ohio's Equal Protection Clause does nothing to salvage Plaintiffs' claims. *See* Ohio Const. Art. I Sec. 2. It has at times been recognized as virtually coextensive with the federal Equal Protection Clause, *see McCrone v. Bank One Corp.*, 839 N.E.2d 1, 4 (Ohio 2005), and the contexts where it has been found more protective than the Fourteenth Amendment have no bearing on this case. *See, e.g., State v. Mole,* 74 N.E.3d 368, 376 (Ohio 2016) (finding that regardless of what federal equal protection requires, state equal-protection doctrine independently forbids disparate treatment of police officers through a scheme that removes due process protections).

The Ohio Constitution, like the federal Constitution, does not "forbid classifications"; both "simply keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Pickaway Cnty. Skilled Gaming, LLC., v. Cordray*, 936 N.E.2d 944, 951 (Ohio 2010) (quoting *Burnett v. Motorists Mut. Ins. Co.*, 890 N.E.2d 307, 312 (Ohio 2008)) (internal quotation marks omitted) (brackets in original). The government's mere refusal to enforce a particular religious code is not cognizable as an equal-protection violation under the Ohio Constitution. *See Zawahiri v. Alwattar,* No. 07AP-925, 2008 WL 2698679, at *6 (Ohio Ct. App. Jul. 10, 2008) (finding that refusal to enforce a religious contract did not constitute an equal-protection violation, and was in fact prohibited by the Establishment Clause). As discussed above, the fact that the School District has designated protections for both religious and transgender individuals does not mean that the two groups are similarly situated for the purposes of an Ohio Equal Protection Clause analysis. For the same reasons as the analysis above, Plaintiffs have not alleged a comparator group that is similarly situated in all relevant respects, nor have they alleged discriminatory treatment between two groups. Finally, Plaintiffs have not alleged any facts demonstrating discriminatory intent.

Accordingly, only rational basis review applies. *Mole*, 74 N.E. 3d at 378. Under the Ohio Constitution, "[t]he rational-basis test involves a two-step analysis. [The Court] must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational." *Mole*, 74 N.E.3d at 378 (quoting *Pickaway Cnty. Skilled Gaming, L.L.C.*, 936 N.E.2d at 951–52) (internal quotation marks omitted). As discussed further below in the context of free exercise, *see infra* Section V.A.i., the School District's actions here easily clear the low bar of rational basis review.

For these reasons, Plaintiffs cannot demonstrate a violation of the Ohio Equal Protection Clause as a matter of law. That count of the Complaint should be dismissed.

## V. Count Five: The School District's Actions Do Not Infringe on the Free Exercise of Religion

Plaintiffs next allege that the School District's accommodation to transgender students violates their right to free exercise of religion. Specifically, the Muslim student Plaintiffs allege that "forcing" them to "use intimate facilities with members of the opposite biological sex is like forcing them to eat pork," *see* Compl. ¶ 67, while the Christian student Plaintiffs allege that the presence of transgender students "impos[es] on" their religious dignity. *Id.* ¶ 80. The Muslim Plaintiffs go on to allege that allowing transgender students access to gender-appropriate communal restrooms at Bethel High School—what Plaintiffs describe as "intimate facilities"— violates Plaintiffs' religious rights. *See id.* at ¶¶ 68–69.[4]

---

[4] It is unclear exactly how the Christian Plaintiffs' beliefs are violated by the School District's actions. They appear to allege that transgender individuals inherently "impose on" religious dignity as a general matter, and allege that the individual Plaintiff students experience anxiety and emotional distress, but do not specifically allege that sharing a communal restroom with a transgender student runs afoul of a particular belief. *See generally* Compl. ¶¶ 80–81. In any event, even assuming *arguendo* that the Complaint should be read to allege as much, such a claim fails for the reasons stated herein.

As with Equal Protection, Anne Roe incorporates by reference the arguments presented in her standing brief. The parent Plaintiffs' free-exercise claims should be dismissed for lack of standing. *See* ECF No. 62 at 13–15. The arguments presented in Defendant-Intervenor's standing brief as to federal free exercise apply with equal force to Plaintiffs' state free-exercise claims; nothing in Ohio law allows parents to assert what amounts to a vicarious injury. *See Musarra v. Musarra*, No. 1432, 1988 WL 118014, at *5 (Ohio Ct. App. Oct. 28, 1988) (parent failed to show the requisite "coercive effect" as it applied against him, rather than his child).

Further, as discussed below, Plaintiffs' allegations fail to rise to the level of plausible infringement on their observation of their religious beliefs. First, under longstanding First Amendment jurisprudence, the School District's accommodation is both neutral and generally applicable, and so is subject only to rational basis review—which it easily survives. Second, even if it were otherwise, Plaintiffs have failed to allege a substantial burden on their religious exercise. Third, Plaintiffs have failed to allege the requisite coercive effect required to invoke the free-exercise provision of Article I, Section 7 of the Ohio Constitution. And finally, even if the School District's accommodation were somehow subjected to strict scrutiny under either federal or state constitutional principles, it would survive that scrutiny because it is narrowly tailored to serve the compelling government interests of protecting student health and safety and combatting discrimination.

A. <u>Plaintiffs Fail to Plausibly Allege a First Amendment Free-Exercise Violation.</u>

To state a claim for violation of the Free Exercise Clause of the First Amendment, a plaintiff must allege that a government entity has substantially "burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022) (quoting *Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)). Plaintiffs have failed on both counts: They have

24

alleged only that the School District has implemented a neutral and generally applicable accommodation, and they have failed to allege facts sufficient to demonstrate that it burdens their religious practice.

> i. *The School District's accommodation is neutral and generally applicable because it does not target religion, and the accommodation survives rational basis review because it is reasonably related to a legitimate government interest.*

As the Supreme Court explained in *Employment Division v. Smith*, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." 494 U.S. 872, 879 (1990) (internal quotation marks omitted). A policy fails the first prong—neutrality—where it is "specifically directed at . . . religious practice," "discriminates on its face," or "if a religious exercise is otherwise its object." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (internal citations and editing marks omitted). A law or policy fails the general applicability requirement if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (internal citations and editing marks omitted). To make that determination, the Supreme Court has also looked at whether the government enforces a law "in a selective manner" to "impose burdens only on conduct motivated by religious belief" and not on similar conduct motivated by other reasons. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

Plaintiffs never allege that the School District's accommodation is not neutral and generally applicable. Instead, they complain merely that "[t]he Board's actions have placed a substantial burden on the Plaintiffs' free exercise of religion . . . [and] had a coercive effect on the same, as Plaintiffs must attend school and Plaintiffs are being pressured to violate their core beliefs for the use of communal intimate facilities." Compl. ¶ 129. *But see United Food & Commercial*

*Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (courts need not "blindly accept legal conclusions" from the complaint). Nor have they alleged facts that could plausibly support a claim that the School District's accommodation targets any particular religious group or religious practice, that it has been enforced selectively against people engaging in religiously motivated conduct, or that it has as its "object" the "suppression" of anyone's free exercise of religion. *Employment Division*, 494 U.S. at 878. No facts alleged suggest that the School District implemented any policy in order to infringe on religious practices or beliefs. Certainly, the mere fact that Plaintiffs' religious preference would be to exclude transgender students from the gender-appropriate restroom cannot establish that the School District acted out of religious discrimination. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 604 n.30 (1983) (finding that IRS policy barring racial discrimination does not "prefer[] religions whose tenets do not require racial discrimination over those which believe racial intermixing is forbidden").

On the contrary, the School District's accommodation applies to all students evenhandedly, allowing all students to use communal restrooms in accordance with their gender identity—and allowing all students to use single-occupancy restrooms for any reason as an alternative. Compl. ¶ 62; *see also* Bethel FAQ, ECF No. 39-6 at 1 ("Any student who has a need or desire for increased privacy, regardless of the underlying reason, may request access to a private restroom."). All students, regardless of their religious beliefs or lack thereof, are subject to and entitled to the benefits of this accommodation. Unlike in *Lukumi*, where "almost the only conduct subject to [the challenged ordinances was] the religious exercise of Santeria church members," 508 U.S. at 535, the School District's accommodation has no exceptions or carve-outs that indicate its provisions are actually intended to apply solely to members of one or more religious group.

The School District's accommodation is generally applicable and neutral. A law that is neutral and generally applicable faces only rational basis review; it is constitutionally permissible if it is rationally related to a legitimate government interest. *See Lukumi*, 508 U.S. at 531. Under that test, the plaintiff has the burden to negate "every conceivable basis which might support" the government's action, regardless of whether those bases were actually part of the government's reasoning. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012); *accord League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 128 (6th Cir. 2020). Indeed, review is so deferential that even "rational speculation unsupported by evidence or empirical data" suffices. *League of Indep. Fitness Facilities*, 814 F. App'x at 128 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (2020)).

The School District's restroom accommodation easily clears the very low bar of rational basis review. At its most basic level, the accommodation serves the public interest of preventing discrimination. *See, e.g.*, *Dodds*, 845 F.3d at 222 (6th Cir. 2016) (noting strong public interest against discrimination). More specifically, it addresses the various harms that would result to transgender students if they were subjected to such discrimination, including social stigma, invasion of privacy, risk of emotional or physical harm, and limitations on school participation. *See generally* Defendant-Intervenor's Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 31 at 8–12.

Plaintiffs' First Amendment free-exercise claim therefore fails.

ii. *Plaintiffs' religious rights are not substantially burdened*

Even if they had alleged that the School District's restroom accommodation was not neutral and generally applicable, which they have not, Plaintiffs would still fail to state a First Amendment claim because they have not alleged facts sufficient to demonstrate that the School District's accommodation substantially burdens their freedom to practice their religion. As the Sixth Circuit has noted, "[i]n the 'Free Exercise' context, the Supreme Court has made clear that the "substantial

burden" hurdle is high and that determining its existence is fact intensive. . . . [I]t has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).

Yet no plaintiff has alleged that the accommodation has forced them to "affirm[] a repugnant belief," penalized them for their religious beliefs, or "impede[d] the observance" of an aspect of their religion. *Sherbert v. Verner*, 374 U.S. 398, 402, 404 (1963). In this respect, the Muslim student Plaintiffs mischaracterize their harm: they are not "forced" to use the communal restrooms. It is undisputed that the School District's accommodation permits all students—including the Muslim student Plaintiffs—to use single-occupancy restrooms for any reason, if they choose not to use the communal restrooms. Compl. ¶ 62; *see also* Bethel FAQ, ECF No. 39-6 at 1 ("Any student who has a need or desire for increased privacy, regardless of the underlying reason, may request access to a private restroom."). No plaintiffs have alleged that they have ever been compelled to do anything against their religious beliefs or prevented from doing something required by their religious beliefs.

Rather, the thrust of Plaintiffs' allegations is that their religion should compel the school to provide them an "accommodation" of excluding others from a communal space—that is, that the presence of transgender students in communal restrooms matching their gender identity imposes a substantial burden on Plaintiffs' free exercise of religion. *See* Compl. ¶¶ 67, 68, 80. The only purported burden allegedly imposed on Plaintiffs is that some students Plaintiffs avoid using the communal restroom at school so as to avoid the potential for sharing a communal facility with a transgender student. *See* Compl. ¶¶ 72, 73, 81, 82, 83, 84. Plaintiffs admit that they—like all students—have had access to private facilities. See Compl. ¶ 62.

Similar to their equal-protection claim, Plaintiffs' position here is tantamount to arguing that the School District is placing a burden on their religion merely by declining to discriminate against others. *See supra* Section IV.B. That is not the case. Indeed, the School District is not compelling Plaintiffs to do or not do anything at all; it is not compelling them to use any particular restroom, as they and all students are provided with an alternative. *See* Compl. ¶ 62. The mere fact that the student Plaintiffs may encounter beliefs or conditions at school that differ from their own religious or moral beliefs is not a cognizable burden within the contours of free-exercise doctrine. "[T]he mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently." *Parker v. Hurley*, 514 F.3d 87, 105 (1st Cir. 2008); *see also Mozert v Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058 (6th Cir. 1987) (public school requiring study of evolution does not burden objecting family's free exercise rights); *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 394 (M.D. Pa. 2014) (female student could not be excluded from wrestling team to protect students against "the perceived psychological and moral degradation accompanying coeducational wrestling"); *Adams ex rel. Adams v. Baker*, 919 F. Supp. 1496, 1504 (D. Kan. 1996) (female student could not be excluded from wrestling team based on "student and parent objections based on moral beliefs").

Moreover, nothing about the School District's accommodation alters what conduct is permissible within communal facilities; behavior that would impermissibly intrude on the privacy or safety of students within these facilities was, and remains, proscribed. The only change is allowing access on an equal basis for students to use the communal facilities that correspond to their gender identity. Plaintiffs have failed to allege any actual burden on their free exercise of religion, and their claim thus fails as a matter of law.

B.  <u>Plaintiffs Also Fail to State a Claim That Is Subject to Strict Scrutiny Under Ohio's Free-Exercise Clause</u>

Ohio's Constitution provides no more support for Plaintiff's claims than the federal Constitution does. While the Ohio Constitution's Free Exercise Clause, *see* Ohio Const. Art. I Sec. 7, is somewhat broader than that of the federal Constitution, Ohio does not recognize a "general right of conscience." *State v. Wisener*, No. 22 MA 0025, 2022 WL 17747364, at *8 (Ohio Ct. App. Dec. 15, 2022) (quoting *Luken v. Brigano*, 797 N.E.2d 1047, 1050–51 (Ohio Ct. App. 2003)) (internal quotation marks omitted). "To state a prima facie free exercise claim [in Ohio], the plaintiff must show that his religious beliefs are truly held and that the governmental enactment has a coercive affect [sic] against him in the practice of his religion." *Id.* (quoting *Humphrey v. Lane*, 728 N.E.2d 1039, 1045 (Ohio 2000)).

Plaintiffs have failed to demonstrate that the School District's decision to allow Anne Roe to use a restroom corresponding to her gender identity has any coercive effect on any individual, let alone Plaintiffs. Again, nothing in any of Plaintiffs' pleadings suggests that the School District's accommodation coerces Plaintiffs into any particular action or inaction—and on the contrary, they concede that the School District has provided them with an alternative. *See supra* Section V.A.ii. A religious objection to sharing a restroom with a transgender individual does not transform a generally applicable accommodation into a coercive action. *See, e.g.*, *State v. McKinley*, 66 N.E.3d 200, 205 (Ohio Ct. App. 2016) (finding no coercive effect resulting from a general ordinance that demolition work not continue on Sundays); *State ex rel. Yost v. Church of Troy*, 159 N.E. 3d 818, 841 (Ohio Ct. App. 2020) (Lynch, J., concurring in part and dissenting in part) (observing that government regulation of a church watering system did not constitute a "coercive" effect); *State v. Cook*, No. 5-19-26, 2020 WL 615076, at *6 (Ohio Ct. App. Feb. 10, 2020) (questioning whether a prison's policy against magic mushrooms had a "coercive" effect). This is the exact reason that

30

the coercive effect requirement exists. Otherwise, any religious objection could overrule any policy, regardless of its direct effect. That is not only unworkable, it is not what the law requires.

C. Even If Strict Scrutiny Applies, the School District's Accommodation Is Narrowly Tailored to the Compelling Governmental Interests of Health and Safety and Eliminating Discrimination.

Even assuming *arguendo* that Plaintiffs had successfully alleged that their religious exercise is somehow impeded by the School District's accommodation, and that the accommodation is subject to strict scrutiny under either the federal Free-Exercise Clause or the Ohio Constitution, the accommodation would nevertheless survive. As discussed in Section V(A)(i), *supra* it is narrowly tailored to the compelling governmental interests of protecting student health and safety and eliminating discrimination on the basis of sex and transgender status. Indeed, Plaintiffs concede in their Complaint that these compelling interests were the impetus behind the School District's actions. *See, e.g.*, Compl. ¶ 49 (noting a faculty complaint about the unfairness of barring transgender students from restrooms matching their gender identity); ¶¶ 3, 52 (claiming that the School District made the change to comply with nondiscrimination law).

Protecting student health and safety constitutes a compelling governmental interest. *See, e.g.*, *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 735 (6th Cir. 2021) (recognizing a compelling interest in protecting students from COVID-19); *Doe v. Snyder*, 101 F. Supp. 3d 672, 700 (E.D. Mich. 2015) (recognizing a compelling interest in protecting the safety of minors); *State v. Polk*, 78 N.E.3d 834, 844 (Ohio 2017) (recognizing a "compelling governmental interest in protecting public-school students from physical harm"). Likewise, the Supreme Court has recognized repeatedly that the government has a compelling interest "of the highest order" in "eliminating discrimination and assuring … citizens equal access to publicly available goods and services." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984); *see also id.* at 628 (discrimination "cause[s] unique evils that government has a compelling interest to prevent"); *N.Y. State Club*

31

*Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 n.5 (1988) (recognizing the "State's 'compelling interest' in combating invidious discrimination"); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983); *cf. Ritchey Produce Co. v. Ohio Dep't of Adm. Servs.*, 707 N.E. 2d 871, 913 (Ohio 1999) (government has a compelling interest in remedying its own past discrimination). Likewise, anti-discrimination laws and policies ensure "society the benefits of wide participation in political, economic and cultural life." *Roberts*, 468 U.S. at 625.

Here, the School District's accommodation is as narrowly tailored as possible to accommodate all of its students while advancing the compelling interest in preventing discrimination and protecting student safety. The School District's accommodation simply allows students to use restrooms corresponding to their gender identity. All students, regardless of their religious beliefs or lack thereof, are entitled to the benefits of this accommodation. The only alternative—excluding Anne from facilities with other girls solely because she is transgender—would perpetrate the very harms the School District sought to avoid. It would compromise her safety and well-being, and it would discriminate against her on the basis of sex and transgender status. Avoiding this harm to transgender students furthers the government's compelling interest in ending the "stigmatizing injury" of discrimination as well as "the denial of equal opportunities that accompanies it." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2783 (2014) ("The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal.").

The School District's accommodation is also narrowly tailored because it allows all students, including Plaintiffs, not only to continue to use multi-occupancy restrooms and locker

rooms precisely as they had always done, but also to use single-occupancy facilities if they prefer. Indeed, as the Complaint explicitly concedes, the Bethel FAQ provides that "transgender students would be permitted to use the communal intimate facilities of their gender identity and, if other students did not want to use those intimate facilities, they could use a single person private restroom—including the new sex-neutral restroom provided by the Muslim community." Compl. ¶ 62. Religious objections can be accommodated by providing additional privacy options to those who seek them, such as access to private restrooms, but to mandate that Plaintiffs' "sincere, personal opposition" to sharing common areas with transgender people become official school policy, "the necessary consequence [would be] to put the imprimatur of the [school] itself on an exclusion that soon demeans or stigmatizes those whose own liberty is then denied." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015).

Plaintiffs allege that "[p]rivate restroom access is limited and not truly workable for large religious communities like the religious communities in Bethel." Compl. ¶ 64. Notably, Plaintiffs do not allege that they have tried and been routinely unable to use single-occupancy restrooms. They do not even allege that private restroom access is insufficient for the named Plaintiffs in this litigation. *See id.* Rather—although this is not a class action—they attempt to raise the bar, suggesting that no accommodation is sufficient unless "large religious communities" who are not parties to this action may be accommodated. *Id.* This is a conclusory allegation that cannot demonstrate a lack of narrow tailoring. *See Iqbal*, 556 U.S. at 679 (conclusory allegations need not be accepted as true).

The School District thus adopted the most narrowly tailored accommodation to advance its compelling interests in the safety, health, and dignity of all students. Even if strict scrutiny applies, the School District's actions are constitutional.

## **CONCLUSION**

For the foregoing reasons, Defendant-Intervenor Anne Roe respectfully submits that Counts Two through Five of the Complaint should be dispensed with as follows:

- Count Two should be dismissed for lack of standing. In the alternative, and only if this Court should find that Plaintiffs have sufficiently demonstrated standing, Defendants are entitled to judgment on the pleadings.

- Defendants are entitled to judgment on the pleadings on Count Three.

- On Counts Four and Five, the parent Plaintiffs' federal and state claims should be dismissed for lack of standing. As to the student Plaintiffs' federal and state claims—and the parent Plaintiffs' claims, only if the Court should find that they have demonstrated standing—Defendants are entitled to judgment on the pleadings.

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU OF OHIO FOUNDATION
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: 614-586-1972
Fax: 614-586-1974
dcarey@acluohio.org

Freda Levenson (0045916)
ACLU OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
Phone: 614-586-1972
Fax: 614-586-1974
flevenson@acluohio.org

Malita Picasso*
Aditi Fruitwala**
Rose Saxe*
Arijeet Sensharma*

34

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY
Phone: 212-549-2500
Fax: 212-549-2650
mpicasso@aclu.org
afruitwala@aclu.org
rsaxe@aclu.org
asensharma@aclu.org

Michael D. Meuti (0087233)
David M. Hopkins (0095285)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216-363-4500
Fax: 216-363-4588
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

*Admitted pro hac vice*

*Counsel for Defendant-Intervenor Anne Roe (a
minor, by and through her legal guardian Joanne
Roe)*

**CERTIFCATE OF SERVICE**

I, David J. Carey, hereby certify that on this 27th day of March, 2023, I electronically

filed the foregoing with the Clerk of Court for the United States District Court for the Southern

District of Ohio via the ECF system, which will send notification of such filing to all counsel of

record.

*/s/ David J. Carey*