**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN AND JANE DOE NO. 1, *et al*.,     )
     Plaintiffs,     )
     )     Case No. 3:22-cv-00337
v.     )
     )     Judge: Michael J. Newman
BETHEL LOCAL SCHOOL DISTRICT     )
BOARD OF EDUCATION, *et al*.,     )
     Defendants.     )
     )
     )

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND**
**MOTION FOR JUDGMENT ON THE PLEADINGS**
**FOR**
**DEFENDANTS BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION,**
**AND LYDDA MANSFIELD, LORI SEBASTIAN, NATALIE DONAHUE,**
**DANNY ELAM, JACOB KING AND MATTHEW CHRISPIN,**
**IN THEIR OFFICIAL CAPACITIES**

---

## <u>MOTION</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants respectfully move this Court to dismiss Count Two for lack of subject matter jurisdiction, and to dismiss Counts Four, Five and Six for lack of subject matter jurisdiction.

Additionally and in the alternative, pursuant to Federal Rule of Civil Procedure 12(c), BOE Defendants move for judgment on the pleadings on Counts One, Two, Three, Four, Five and Six of the Complaint in their entirety, to the extent that those claims are not dismissed for lack of standing. The following memorandum supports this motion.

s/ Lynnette Dinkler
Lynnette Dinkler (0065455)
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive

Dayton, OH 45419
(937) 426-4200          (866) 831-0904 (fax)
*Attorney for Defendants Bethel Local*
*Schools District Board of Education, and in*
*their official capacities Lydda Mansfield,*
*Lori Sebastian, Natalie Donahue, Danny*
*Elam Jacob King and Matthew Chrispin*

s/ John A. Podgurski
John A. Podgurski (0020923)
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
(440) 256-2990
*Attorney for Defendant Bethel Local*
*School District Board of Education*

## MEMORANDUM

To avoid needless repetition and streamline a responsive memorandum for Plaintiffs, Defendants Bethel Local School District Board of Education, and Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King and Matthew Chrispin, in their official capacities only (collectively referenced as "BOE Defendants"), incorporate by reference Defendant-Intervenor Anne Roe's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings (Doc. 75) in its entirety.

As Plaintiffs argue some of BOE Defendants arguments are merit arguments, BOE Defendants incorporate by reference its Brief on Standing to Bring Federal Claims (Doc. 63).

## LAW AND ARGUMENT

**I.     Count One:  The Ohio Open Meetings Act Fails to State an Actionable Claim**

Count One of Plaintiffs' Complaint attempts to plead a violation of Ohio's Open Meetings Act ("OMA") as it purportedly relates "to [a] change [of] rule in secret" related to communal bathroom use by a transgender student, Anne Roe.  Compl. ¶ 5.  The Complaint also attempts to

plead a violation of the OMA in so far as a secret rule change is alleged related to "intimate facilities based on biological sex," but no actual allegation is plead that any transgender person is accessing any other intimate space. Compl. ¶ 4. Anne Roe, a high school female transgender student, is the only transgender student who has requested accommodation and the accommodation is limited to access to the girls' communal restrooms.

Absent from the Complaint is a date certain, time, place and names of board members who allegedly met in violation of the OMA. Compl. ¶ 53. It is unknown how many board members allegedly attend the secret meeting. It is unknown if the secret meeting is pre-arranged and by whom. It is unknown how long the secret meeting allegedly lasts. It is unknown if the "new rule" is written or unwritten. Other than making a conclusory allegation that the "Board took official action to change the school's rules for intimate facilities at the beginning of January 2022," Plaintiffs' Complaint is devoid of identifying the purported Board legislative action they request to be invalidated under O.R.C. 121.22(H). Compl. ¶ 55-57. Count One offers no details to substantiate the elements of an actionable OMA claim. Compl. ¶ 101-105.

The Ohio Supreme Court announced the liberal-construction clause in R.C. 121.22(A) regarding what official action must occur in open meetings versus executive session does not change or otherwise lessen the burden of proof in OMA actions. *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 10-11. In *Hicks*, the Ohio Supreme Court holds:

> The "burden of proof" "'encompasses two different aspects of proof: the burden of going forward with evidence (or burden of production) and the burden of persuasion.'" *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 20, quoting *Chari v. Vore*, 91 Ohio St.3d 323, 2001-Ohio49, 744 N.E.2d 763 (2001); *see also State v. Robinson*, 47 Ohio St.2d 103, 107, 351 N.E.2d 88 (1976). "[T]he 'burden of persuasion' 'refers to the risk * * * borne by a party if the jury finds that the evidence is in equilibrium.'" (Ellipsis added in *Welsh-Huggins*.) *Welsh-Huggins* at ¶ 22, quoting *Robinson* at 107. And the burden of persuasion remains on one party throughout the entire case. *See id.* at ¶ 34. By contrast, the "burden of production" can shift between the

parties. *See id.* at ¶ 33-35. The burden of production in a civil case requires that the plaintiff produce sufficient evidence to support his or her claims and that the defendant produce sufficient evidence of any affirmative defenses. *Id.* at ¶ 21.

Furthermore, in accordance with common-law principles, the statutory provision authorizing citizens to sue public bodies for violations of the OMA clearly places the burden of proof, or at least the burden of persuasion, on the plaintiff. That provision states: "*Upon proof of a violation* or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions." (Emphasis added.) R.C. 121.22(I)(1). Therefore, to receive relief, the plaintiff must prove a violation of the OMA. There is no requirement for the public body to conversely prove that no violation occurred.

*State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 10-11.

*Hicks* mandates a "presumption of regularity" related to burden of proof because to hold otherwise would create a presumption of irregularity. *Id.*, at ¶ 21-23. Even where a public body claims it discusses only permitted topics during executive session, this claim is not an affirmative defense, and the burden of proof remains with the plaintiff. *Id.*, at ¶ 14. Plaintiffs' Complaint pleads no allegations to disturb the presumption of regularity.

The Ohio Supreme Court even rejects the notion that the public body bears this evidentiary burden where a plaintiff claims no access to evidence because both parties have access to discovery, the public body may have no evidence either given that all it must note in minutes is the statutorily permitted reason for an executive session, and ultimately the General Assembly chooses to place the burden of proof on the plaintiff filing the OMA action. *Id.* at ¶ 18.

Meeting is defined as "any prearranged discussion of the public business of the public body by a majority of its members." O.R.C. 121.22 (B)(2). "All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting." O.R.C. 21.22 (C). O.R.C.

4

121.22 (F) requires the Board of Education to notify the public of the date, time, and location of its regularly scheduled meetings. O.R.C. 121.22 (G) provides executive session exceptions. Plaintiffs articulate no claim to even suggest a violation of any of these sub-sections.

The comments made by Board Presidents during open public meetings do not fulfill Plaintiffs' obligation to plead the elements of an OMA claim. The OMA is not triggered by the administration's enforcement Board Policy 5517 Student Anti-Harassment.

Plaintiffs fail to plead the elements of an OMA claim and a motion to amend the Complaint cannot cure the fatal defect. The proceedings in this action make clear Plaintiffs are not challenging legislative board action. Plaintiffs are challenging the administration's accommodation for Anne Roe's communal restroom use. The OMA does not empower Plaintiffs with a legal or other right to be heard, in any capacity, about a student's request for accommodation to School District administration under any law, Title IX included. To the contrary, federal and mirroring state law prohibit the School District from disclosing such information to the public for all students, such as the Family Educational Rights and Privacy Act and the Health Insurance Portability and Accountability act of 1996.

For these reasons, Count One should be dismissed with prejudice.

## II. Plaintiffs Lack Standing for All Their Federal and State[1] Claims Because No Plaintiff Suffered an Injury in Fact Traceable to BOE Defendant and Redressable by the Court

While the *Reynolds v. Talberg*, W.D.Mich. No. 1:18-cv-69, 2020 U.S. Dist. LEXIS 202418 (Oct. 30, 2020), Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, the decision illustrates why both the federal and state law claims fail on standing because

---

[1] Except Plaintiffs' OMA claim alleged as Count One.

no Plaintiff suffered a redressable injury in fact traceable to BOE Defendants. The constitutional

challenges include the alleged violation of Title IX, free exercise of religion, and rights to privacy

In *Reynolds*, like here, parents sue on behalf of their children to challenge public school

district policies which "either clarify or newly prohibit discrimination against individuals on

account of sexual orientation, gender identity, or gender expression."

*Reynolds*, at *3. Challenged policies include a transgender student's use of showers, locker rooms,

bathrooms and other facilities of the opposite sex. *Id*., at *17. The Christian plaintiffs, who claim

the challenged policies "force their children to disregard their sincerely held religious beliefs and

to "affirm[] . . . alternative sexual lifestyles" or else face punishment," (*id*. at *4), assert ten counts,

six federal and five state, where Count III alleges both federal and state violations:

> Count I alleges that Defendants lacked legal authority to adopt the Challenged
> Policies. (*Id.* ¶¶ 47-63.) Count II alleges violation of a state statute governing school
> anti-bullying policies. (*Id.* ¶¶ 64-68.) Count III argues violations of state and federal
> constitutional rights to parenting because the Challenged Policies allegedly permit
> the school to keep a student's sexual orientation or gender identity a secret from
> their parents and force students to refrain from expressing their religious beliefs.
> (*Id.* ¶¶ 69-79.) Count IV alleges violations of Plaintiffs' federal constitutional rights
> to privacy, personal [*6] autonomy, and personal identity. (*Id.* ¶¶ 80-91.) Counts
> V-VI claim that the Challenged Policies unconstitutionally restrain Plaintiffs' First
> Amendment rights to free speech and exercise of religion. (*Id.* ¶¶ 92-117.) Count
> VII alleges that the Challenged Policies violate various provisions of the Michigan
> Constitution. (*Id.* ¶¶ 118-22.) Count VIII claims that the Challenged Policies
> violate Title IX, 20 U.S.C. § 1681 *et seq.*, by reducing students' athletic
> opportunities through permitting students to join teams that accord with their
> gender identity, thereby increasing competition to make it onto single-sex teams.
> (*Id.* ¶¶ 123-31.) Count IX alleges that the Challenged Policies are
> unconstitutionally vague because the terms "sexual orientation, gender identity,
> gender expression, transgender, harassment, aggressive behavior, and bullying" are
> insufficiently defined in the policies. (*Id.* ¶¶ 132-39.) Finally, Count X claims the
> Challenged Policies violate a state civil rights statute. (*Id.* ¶¶ 140-145.) Plaintiffs
> seek declaratory and injunctive relief, nominal damages, and attorney fees. *Id.*

*Id.*, at *5-6. The Reynolds parents even withdrew their two students in response to the challenged

policies, choosing to enroll them in private school, which the court rejected as an injury because a

plaintiff cannot create an injury out of a non-injury, citing *Clapper v. Amnesty Internatl. USA*, 568 U.S. 398, 416, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).  *Reynolds*, at *6-7, 32-33; see also *ACLU v. NSA*, 493 F.3d 644, 656-657 (6th Cir.2007) (opinion of Batchelder, J.) (dismissal for lack of standing where harm is speculative).

Like here, the school district there contends its policies, among other things, "do not explicitly mandate gender-affirming use of facilities, and do not prevent students from expressing their sincerely held religious beliefs, much less impose any kind of affirmative duty to say anything that contradicts their religious beliefs."  *Id*., at *7. The school district also argues, like here, that "Plaintiffs appear to be suing over potential, hypothetical injuries."  *Id*.

No policy prohibited any plaintiff from engaging in their sincerely held beliefs "that they have a duty and obligation to live out their faith in all areas of life, including defending their faith in public."  *Id*., at *12 (internal quotes removed).  The claims related to a transgender student's use of showers, locker rooms, bathrooms and other facilities of the opposite sex are dismissed for these reasons:

> Plaintiffs further contend that Policy 8011 "requires the School District to allow students and other individuals to use the showers, locker rooms, bathrooms and other facilities of the opposite sex." (Compl. ¶ 85.) This is by far their most specific allegation. It is insufficient all the same. Setting aside whether Plaintiffs' rights would be violated *if* the school permitted transgender students to use facilities in accordance with their gender identity, Plaintiffs have failed to provide sufficiently specific allegations [*18] to satisfy the imminence requirement of injury in fact. On this point, Defendants cite to *Students & Parents for Privacy v. U.S. Dep't of Ed., et. al.*, 2017 U.S. Dist. LEXIS 213091, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017), which the Court finds persuasive. The plaintiffs in *Students & Parents for Privacy* brought various claims, some of which related to a transgender student's ("Student A") permission to use school facilities in accordance with her gender identity. 2017 U.S. Dist. LEXIS 213091, [WL] at *1. However, Student A graduated over the course of the litigation. 2017 U.S. Dist. LEXIS 213091, [WL] at *2. The court thus determined that the plaintiffs' claim was no longer live. 2017 U.S. Dist. LEXIS 213091, [WL] at *3. It did not matter to the court that a second transgender student, Student B, was contemplating availing himself of the challenged school policy so that he could use facilities consistent

7

with his gender identity: "[t]he fact that other transgender students want or might
want to use sex-segregated facilities consistent with their gender identity, however,
neither suggests that the injury of which [p]laintiffs complained is continuing or
that the injury complained of will be repeated." *Id.*

That logic is applicable here. If a real student actively contemplating invoking
a school policy to use facilities in accordance with their gender identity was
insufficient to make out a justiciable claim, then a *hypothetical* student invoking a
policy that *hypothetically* permits them to use facilities consistent with their gender
identity cannot be a sufficiently concrete and imminent harm to confer standing.
Plaintiffs have not made allegations sufficient to sue over Policy 8011.

*Reynolds,* at *17-19. The Court, in specifically addressing this policy under the free exercise

challenge, rejected the claim again, stating, "As discussed earlier, imminent harm is not established

where Plaintiffs merely allege that a hypothetical transgender student might attempt to use

facilities or join sports teams consistent with their gender identity, to the extent

such accommodations constitute a harm at all. *See Students & Parents for Privacy*, 2017 U.S. Dist.

LEXIS 213091, 2017 WL 6629520 at *3. *Reynolds,* at *29.

The decision dismisses the Title IX challenge for these reasons:

Plaintiffs infer additional requirements on Williamston public schools through
School Board Policy 8010. Policy 8010 relates to equal educational opportunity
and compliance with Title IX of the Education Amendments, Pub. L. No. 92-318,
86 Stat. 235 (June 23, 1972). (Compl. Ex. C.) In relevant part, the policy states that:
Every child, regardless of . . . sexual orientation, gender identity, [or] gender
expression . . . is entitled to equal opportunity for educational development.
No student will be excluded from participating in, denied the benefits of, or
subjected to discrimination under any educational program or activity conducted
by the district. [Defendants] shall treat its students without discrimination as this
pertains to course offerings, athletics, counseling, employment assistance, and
extracurricular activities.

No district employee or student enrolled in the district, on the basis of sex, shall be
excluded from participation in, be denied the benefits or, or be subjected to
discrimination under any educational program or activity receiving federal
financial assistance.
(Compl. Ex. C.)

Plaintiffs allege that this policy "requires the School District to allow students to
participate in athletics, extracurricular activities and other educational programs of

8

the opposite sex" in violation of both "parents' constitutional right to control and direct the upbringing and education of their children" and "parents' and students' constitutional right to privacy, personal identity, and personal autonomy." (Compl. ¶¶ 74, 86.) Yet again, there are no allegations that any sort of violative "participat[ion]" has actually happened, nor are there allegations regarding what, specifically, Williamston public schools will do under Policy 8010 or how those impending acts will violate Plaintiffs' rights. The vagueness of these allegations reveal the hypothetical nature of Plaintiffs' claimed injuries and serve no basis for standing. *Lujan*, 504 U.S. at 560-61.

*Reynolds,* at \*14-15.  The Reynolds Court noted actual injury is required to allege standing for a Title IX claim, which fails to exist there as it does here.  *Id.*, at \*30.

While no standing exists for any Plaintiff for any claim alleged in their Complaint, as the BOE Defendants argue, there is only one high school female student Plaintiff, ninth grader Child No. 3B, one junior high female student Plaintiff, seventh grader Child No. 1A, and one female transgender student, Anne Roe, with one accommodation, use of the girls' communal restroom. While neither Plaintiff Child No. 3B nor Child No. 1A  assert cognizable harm for standing for any claim, they are the only student Plaintiffs who *could possibly* use the communal restroom with Anne Roe, and remembering that all student Plaintiffs, like all School District students, have access to single user restrooms[2] if they choose. All other Plaintiffs fail to allege harm under *Reynolds* and the authority cited therein.  Further, all claims by all Plaintiffs beyond Anne Roe's use of communal bathrooms are speculative.

All federal and state law claims (excepting the OMA claim) fail for lack of standing and should be dismissed with prejudice.

### III.    Plaintiffs Lack Standing for Their Protection of Pupil Rights Amendment Claim and it Fails on the Merits

---

[2] "[P]ractical solution" is not a legal standard for any asserted claim.  Doc. 67, Page ID 1476, 1477.  The Complaint, and record as a whole, demonstrate the School District administration treats all students the same regarding access to any restroom, communal or single user.  Student Plaintiffs are not entitled under the law to additional accommodations regarding restrooms based upon their asserted "large religious communit[y]" membership. Doc. 67, Page ID 1477.

BOE Defendants challenge Plaintiffs' Protection of Pupil Rights Amendment (PPRA) claim as they allege no injury in fact, that is traceable to BOE Defendants, which is redressable by this Court.  See Doc. 59, Page ID 1309-1310; Doc. 63, Page ID 1444-1446.  Plaintiffs' Complaint alleges, without stating when, to which students, or providing any detail whatsoever, that the District is "administering attitudinal surveys with students."  Compl. ¶ 1, Doc. 1, Page ID 24.  Paragraph G of the Wherefore Clause seeks declaratory judgment "concerning the school's surveys and other nonacademic requirements regarding transgender ideology."  Compl. ¶ 1, Doc. 1, Page ID 26.

Plaintiff characterizes the standing challenge as a merit challenge, even though *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.,* 572 U.S. 118, 125 (2014) takes up the legal question of standing.  To the extent the Court finds proper standing, which BOE Defendants argue does not exist, Plaintiffs still fail to state an actionable claim under the PPRA under *Lexmark* and other authority.   And, BOE Defendants have not contested Plaintiffs assert this claim under 42 U.S.C. § 1983.  This makes no difference under the controlling test announced in *Lexmark*.

The PPRA contains no private right of action. *See Lexmark Int'l, Inc.* v. *Static Control Components, Inc.,* 572 U.S. 118, 128 (2014) (explaining that a plaintiff must have a right of action to enforce federal law).  A plaintiff must demonstrate "a cause of action under the statute" in other words, that the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue." *Lexmark,* 572 U.S. at 128. A private right of action exists under a federal statute only if created by Congress. *Comcast Corp.* v. *Nat'l Ass 'n of African Am.-Owned Media,* 140 S. Ct. 1009, 1015 (2020). The statue interpreted in *Lexmark* allowed for certain affected persons to bring an action, but as the opinion makes clear,

that right is exceptionally limited.

Here, Plaintiffs refuse to acknowledge the PPRA on its face contains no private cause of action. 20 U.S.C. 1232h(e) – "Enforcement," provides only:

> The Secretary shall take such action as the Secretary determines appropriate to enforce this section, except that action to terminate assistance provided under an applicable program shall be taken only if the Secretary determines that-- (1) there has been a failure to comply with such section; and (2) compliance with such section cannot be secured by voluntary means.

Plaintiffs have failed to identify in their Complaint or otherwise what protected statutory right they possess to enforce under 42 U.S.C. § 1983.

They dispute with no authority that on the rare occasions that courts have been asked to enforce a private cause of action under the PPRA, they have declined. Doc. 67, Page ID 14711472. *Ashby v. Isle of Wight Cnty. School Bd.,* states in its entirety:

> Plaintiff also cites 20 U.S.C. § 1232g and 20 U.S.C. § 1232h(b) as grounds for her claims. These statutes do not create private causes of action, but might serve as the basis for an action pursuant to 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 285-87, 153 L. Ed. 2d 309, 122 S. Ct. 2268 (2002); *Nat'l Home Equity Mortgage Ass'n v. Face,* 322 F.3d 802, 804 (2003)(per curiam). However, Plaintiff presents her claims as ones for violations of her constitutional rights, and nothing in the facts Plaintiff has alleged would constitute a violation of these statutes. Therefore, the Court does not address the relevancy of these statutes to Plaintiff's § 1983 claim.

*Ashby v. Isle of Wight Cty. School Bd.*, 354 F.Supp.2d 616, 623 (E.D.Va.2004), fn. 9. Both *Gonzaga Univ.* and *Nat'l Home Equity Mortgage Ass'n* are decided before *Lexmark*.

*Gonzaga Univ.* holds FERPA confers no private cause of action under 42 U.S.C. § 1983. *Gonzaga Univ.*, 287-290. All reasons pronounced by the Supreme Court for denying a private cause of action under FERPA apply to deny a private cause of action under the PPRA. The Supreme Court summarized, "In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms -- no less and no more than what is required

11

for Congress to create new rights enforceable under an implied private right of action. FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions. They therefore create no rights enforceable under § 1983." *Gonzaga Univ.*, 290.

*Natl. Home Equity Mtge. Assn. v. Face*, 322 F.3d 802, 803 (4th Cir.2003) was remanded by the Supreme Court for further consideration in light of the *Gonzaga Univ.* decision. The Fourth Circuit re-adopted its previously issued decision that "NHEMA was not a prevailing party on a claim brought under 42 U.S.C. § 1983 because the Supremacy Clause is not a source of substantive individual rights and we never concluded that NHEMA had a private right of action under the Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. § 3801 *et seq*. (the "Parity Act")." *Natl. Home Equity Mtge. Assn. v. Face*, 322 F.3d 802, 803 (4th Cir.2003)

Neither authority breathes life into a PPRA claim here for Plaintiff.

Plaintiffs further dispute *C.N. v. Ridgewood Bd. of Educ.* (Doc. 67, Page ID 1471-1472), cited by BOE Defendants, which states in its entirety:

> Plaintiffs concede that the question of whether the PPRA or the FERPA provide a private right of action is irrelevant because 42 U.S.C. § 1983 may be used to enforce such rights. Nonetheless, it must be noted that indeed neither the PPRA nor
> the FERPA provide a private right of action. See *Altman v. Bedford Cent. Sch. Dist.*, 45 F. Supp. 2d 368, 390 (S.D.N.Y. 1999) (no implied private right of action in PPRA); *Herbert v. Reinstein*, 976 F. Supp. 331, 339 (E.D.Pa. 1997) (same); *Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir. 1989), cert. denied, 494 U.S. 1080, 108 L. Ed. 2d 940, 110 S. Ct. 1809 (1990) (no implied private right of action under FERPA); *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 33 (2d Cir. 1986) (same); *Girardier v. Webster College*, 563 F.2d 1267, 1276-77 (8th Cir. 1977)(same); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1264 (W.D.Mich. 1997) (same); *Doe v. Knox County Bd. Of Educ.*, 918 F. Supp. 181, 184 (E.D.Ky. 1996) (same); *Odom v. Columbia Univ.*, 906 F. Supp. 188, 195 (S.D.N.Y. 1995) (same); *Belanger v. Nashua, New Hampshire, Sch. Dist.*, 856 F. Supp. 40, 43 n.4 (D.N.H. 1994) (same); *Rothman v.*

*Emory Univ.*, 828 F. Supp. 537, 542 (N.D.Ill. 1993) (same); *Norris by Norris v. Bd. of Educ. Of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452, 1462 (S.D.Ind. 1992) (same); *Norwood v. Slammons*, 788 F. Supp. 1020, 1026 (W.D.Ark. 1991) (same); *Smith v. Duquesne Univ.*, 612 F. Supp. 72, 80 (W.D.Pa. 1985), aff'd, 787 F.2d 583 (3d Cir. 1986) (same).

*C.N. v. Ridgewood Bd. of Edn.*, 146 F.Supp.2d 528, 535 (D.N.J.2001), fn. 7.  While the district court chooses to engage in a merit review, as well as acknowledging no private cause of action exists under the PPRA, Plaintiff are wrong to suggest the district court held a private cause of action to exist under the PPRA.  The analysis of the decision demonstrates Plaintiffs' Complaint fails to plead a PPRA claim, assuming one exists as a matter of law, and it does not.  *C.N.*, at 535-538.  The Complaint does not allege federal funds were used for any of the impermissibly vague allegations regarding unnamed books, un-identified nonacademic instruction, and attitudinal surveys.  One cannot discern if these purported activities occurred within a two-year statute of limitations.   No allegation is made that student Plaintiffs were compelled to complete any such activity.  See Compl. ¶ 133-141.

No standing exists for a PPRA claim as it does not exist as a matter of law.  Congress did not provide for Plaintiffs to have a private cause of action to enforce the statute, which is only enforceable by the designated department of the federal government.  For these reasons, Count Six should be dismissed with prejudice.

**IV.   Plaintiffs Lack Standing for Their Federal Claims against the Individually Named Defendants in their Official Capacities Only and Fail to State Non-Equitable Claims Against Them**

BOE Defendants moved to dismiss, for lack of standing, Individual Defendants Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King and Matthew Chrispin, in their official capacities only. Doc. 63, Page ID 1446-1447. Plaintiffs do not dispute that "[i]t is well-established that a suit against a person in his official capacity is construed as a suit against

the governmental entity which he represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent")(quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))." *Wilson v. Trumbull Cty. Dept. of Job & Family Servs.*, N.D.Ohio No. 4:12CV2163, 2013 U.S. Dist. LEXIS 154925, at *22-25 (Oct. 7, 2013).

After refusing to informally discuss the matter, Plaintiffs now state they only sue the Individual Defendants named in official capacity only for prospective relief, limiting the claims against the Individual Defendants to injunctive and declaratory relief only. Doc. 67, Page ID 1474-1475. Plaintiffs silently concede the claims against "Defendants" in their Complaint are over-stated and that no legal basis exists in the Prayer for Relief against the Individual Defendants for sections H, I and J, monetary damages, an award of costs and reasonable attorneys' fees, and "other relief."

While all counts against all Defendants should be dismissed with prejudice, alternatively, any surviving claims may only be prosecuted against the Individual Defendants named in Official Capacity Only for prospective relief, here, injunctive and declaratory relief exclusively.

## CONCLUSION

For the foregoing reasons, Defendants Bethel Local School District Board of Education, and Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King and Matthew Chrispin, in their official capacities only, respectfully requests all Plaintiffs lack standing to bring Counts Two (Title IX), Three (Parental Rights), Four (Equal Protection), Five (Free Exercise) and Six (Protection of Pupil Rights Amendment) of the Complaint and Counts One through Six fail on

the merits against all Defendants. BOE Defendants respectfully request an order dismissing the Complaint with prejudice.

<div style="margin-left:50%;">

s/ Lynnette Dinkler
Lynnette Dinkler (0065455)
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419
(937) 426-4200        (866) 831-0904 (fax)
*Attorney for Defendants Bethel Local Schools District Board of Education, and in their official capacities Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam Jacob King and Matthew Chrispin*

s/ John A. Podgurski
John A. Podgurski (0020923)
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
(440) 256-2990
*Attorney for Defendant Bethel Local School District Board of Education*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2023, I served the foregoing, via the Court's CM/ECF E-filing System which will send notification to the following:

Joseph P. Ashbrook
jpashbrook@ashbrookbk.com
Julie E. Byrne
jebyrne@ashbrookbk.com
Ashbrook Byrne Kresge, LLC
P.O Box 8248
Cincinnati, OH 45249
*Attorneys for Plaintiff*

Nicholas Barry (pro hac vice)
Nicholas.barry@aflegal.org

Malita Picasso
mpicasso@aclu.org
Rose Saxe
rsaxe@aclu.org
Aditi Fruitwala
afruitwala@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
*Attorneys for Intervenor Defendant Anne Roe*

15

America First Legal
611 Pennsylvania Ave, SE #231
Washington, DC 20003
*Attorneys for Plaintiffs*

David Carey
dcarey@acluohio.org
ACLU of Ohio Foundation
1108 City Park Ave., Suite 203
Columbus, OH 43206

Michael Meuti
mmeuti@beneschlaw.com
David M. Hopkins (0095285)
dhopkins@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
*Attorneys for Intervenor Defendant Anne Roe*

Freda Levenson
flevenson@acluohio.org
ACLU of Ohio Foundation
4506 Chester Ave.
Cleveland, OH 44103
*Attorneys for Intervenor Defendant Anne Roe*

s/ Lynnette Dinkler
Lynnette Dinkler 0065455