## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN AND JANE DOE NO. 1, et al.,** | : | **CASE NO. 3:22-cv-00337** |
| | : | |
| | : | |
| **Plaintiffs,** | : | **JUDGE MICHAEL J. NEWMAN** |
| | : | |
| **vs.** | : | |
| | : | |
| **BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

---

## INTRODUCTION

The Defendants[1] argue little new ground in their Motion to Dismiss. It is primarily re-hashed arguments already made in their prior briefings. The simple facts still remain: Bethel schools used to have a rule requiring sex-separated intimate facilities; Bethel schools now have a rule requiring gender-identity separated intimate facilities. Previously, only biological males could use boy intimate facilities and only biological females could use girl intimate facilities. This is no longer the case; now biological boys can use girl facilities and biological girls can use boy facilities. Only the Bethel Local School District Board of Education, through its members, could make such a change. This change was not made at a public hearing and was not adopted according to Ohio's Open Meetings Act ("OMA").

Plaintiffs are currently suffering actual injury from this rule change as well as the Defendants' discrimination and infringement on the Plaintiffs' civil rights. The Complaint alleges current injuries to the Plaintiffs. For example, the Plaintiff children holding their urine all day; the Plaintiff parents being unable to competently exercise their parental rights; the school failing to obtain parental consent before requiring nonacademic assignments meant to affect the Plaintiffs' attitudes towards LGBTQ+ ideology; discrimination against religious parents and students for unequal treatment and benefits and all of the other injuries detailed in the Complaint. Ignoring this, the Defendants just assert that the Plaintiffs have suffered no injury.

---

[1] Bethel Local School District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Superintendent Matthew Chrispin.

Finally, Plaintiffs have made out a PPRA claim. The analysis is straightforward: There is a federal right (*Blessing* tells us this) and 42 U.S.C. § 1983 provides a cause of action for the violation of that federal right (*Gonzaga*, and a plethora of Supreme Court cases, confirm this). The idea that a Lanham Act case on standing has anything to do with establishing Plaintiffs' PPRA cause of action is a distraction. The Complaint has sufficient facts establishing a violation of the PPRA. Accordingly, the Defendants' motion should be dismissed in its entirety.

## ARGUMENT

The Defendants' instant motion raises no new material arguments but nonetheless reinforces the propriety of the Plaintiffs' claims.[2]

## I. The Defendants Violated the OMA and the Plaintiffs Properly Pled the Same.

The Defendants have now argued the OMA issue at least four times: (1) the Defendants' opposition to the Preliminary Injunction Motion ("PI Motion"), Doc. 20; (2) the PI Motion oral argument on February 7, 2023, Doc. 56; (3) the Defendants' reply in support of their motion in limine, Doc. 60; and (4) the Defendants' motion to dismiss the OMA claim, Doc. 79. Tellingly, at no point have the Defendants been able to grapple with the plain language of the statute or the law cited by the Plaintiffs. This confirms that the plain language of the statute means what it says.

---

[2] The Defendants adopt all of Roe's arguments and positions in their entirety. Defs.' Mot. to Dismiss, Doc. 79 at 1652. Accordingly, the Plaintiffs incorporate their response in opposition to Roe's contemporaneous motion in its entirety. Pls.' Resp. in Opp'n to Roe's Mot. to Dismiss, Doc. 81. The Defendants also incorporate their previous standing briefing. Doc 79 at 1652. The Plaintiffs likewise incorporate all of their previous standing briefing herein. Pls.' Br. on Standing for Fed. Claims, Doc. 59 at 1296–1312; Pls.' Reply Br. on Standing for Fed. Claims, Doc. 67 at 1459–79.

In the instant motion, the Defendants argue that the "Plaintiffs fail to plead the elements of an OMA claim[.]" Doc. 79 at 1655. But the Defendants similarly cite no law for their assertion. And the only case they cite is once again *Hicks*—a case about burdens of proof, not the substance of an OMA claim. *Id.* at 1653–54 (arguing *State ex rel. Hicks v. Clermont Cnty. Bd. of Comm'rs*, 2022-Ohio-4237, — N.E.3d — (Ohio 2022)).[3] The law does not require the Plaintiffs to identify all the details of exactly how the Defendants violated the OMA; that is the purpose of discovery. The Plaintiffs discharged their duty by pleading the cause of action provided in the OMA and alleging sufficient facts to support the plausibility that the Plaintiffs were entitled to relief under the same.

The Plaintiffs' claim satisfies the statute. The only requirement that the General Assembly included in the cause of action is that a plaintiff plead "a violation or threatened violation" of the statute:

> Any person may bring an action to enforce this section. An action under [this subsection] shall be brought within two years after the date of ***the alleged violation or threatened violation***. ***Upon proof of a violation or threatened violation of this section*** in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

---

[3] The Defendants also argue that "[t]he OMA is not triggered by the administration's enforcement [of] Board Policy 5517 Student Anti-Harassment." Doc. 79 at 1655. But that is the Defendants' *post hoc* argument, not the Plaintiffs' claims. The OMA prevents school boards from taking official action and adopting rules in secret outside of open meetings, and the OMA invalidates those actions and rules. Even under *Hicks*, the burden is to prove that a violation occurred. The Plaintiffs alleged that the violation occurred by the Defendants' taking official action and adopting a new rule in secret. *E.g.*, Compl., Doc. 1 at 4, 9, 18, ¶¶ 7, 52, 55, 104. The law imposes no "trigger" for the right of action other than a violation or threatened violation of the statute. O.R.C. § 121.22(I)(1); *see also* Doc. 37 at 793-94 (explaining that the text of the OMA does not impose any trigger on a plaintiff's claims under the statute).

3

O.R.C. § 121.22(I)(1) (emphasis added). That is the whole point of the Plaintiffs' claim: the Defendants violated the OMA by adopting a new rule and taking official action in secret. The Plaintiffs sued to enforce the OMA and require the Defendants to change Bethel's long-standing bathroom policy in an open meeting should the Defendants desire to do so.

The Plaintiffs specifically pled that Bethel has had a longstanding rule of separating intimate facilities by biological sex. Doc. 1 at 3, 7-8, ¶¶ 1, 41-46. Under Ohio law, this is the Defendants' rule to make. O.R.C. § 3313.20(A) (requiring that the Board "shall" make the rules governing the students). The Defendants violated the OMA by changing that rule in secret—which included taking official action and failing to adopt the new rule in an open meeting of the public. Doc. 1 at 3, 4, 8-9, 18, ¶¶ 2, 3, 5, 7, 48–58, 101–05. The plain reading of subsection (I)(1) explicitly grants the Plaintiffs a cause of action to enforce the invalidation of that rule and to require the Defendants to take official action in an open meeting. O.R.C. § 121.22(I)(1) ("Any person may bring an action to enforce this section, [§ 121.22.]"); O.R.C. § 121.22(H) ("A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body.").

The Plaintiffs also provided the Court with allegations corroborating the plausibility—indeed, the certainty—of the Defendants' violation. The Defendants' Board meetings are public record. Multiple Board Presidents admitted at public meetings and on record that moving to restrooms separated by gender identity would constitute a "change" for the district. *See, e.g.*, Doc. 1 at 9, ¶¶ 50, 52, 55. And the

public record demonstrates that the Defendants did not adopt (or deliberate) that change in an open meeting of the public. *Id.*, ¶¶ 53, 55.

On January 10, 2022, when Lydda Mansfield announced to the community that the Board adopted the "change" that "transgender students may use the restroom that aligns with their gender status," she specifically explained that "students are using bathrooms aligned with their identity at this time." Doc. 20 at 669; Board Education, *Regular BOE Meeting*, YOUTUBE (Jan. 10, 2022), https://www.youtube.com/watch?v=36ndGc1Ge-8&list=PPSV [hereinafter "BOE Meeting, January 10, 2022"], at 1:17:40–1:17:50; *see also* Doc. 20 at 669 ("So again, we have made this change within our district based upon the advice of our attorney[.]"). Even setting aside that the Defendants are currently denying the religious Plaintiffs access to "bathrooms aligned with their [religious] identity at this time," the Defendants' new bathroom rule had already been adopted and implemented at that point. And the public record reflects that the Defendants did not adopt their new rule in an open meeting. *See generally* Board Education, YOUTUBE, https://www.youtube.com/c/bethelboardmeetings (last visited Apr. 26, 2023); BOE Meeting, January 10, 2022, at 1:16:00–1:17:50, 1:29:17; Board Education, *Bethel Schools's Personal Meeting Room*, YOUTUBE (Sept. 13, 2021), https://www.youtube.com/watch?v=9xxrRDef_G0&list=PPSV, at 1:22:10–1:23:14. As such, the Defendants' "violation" of the OMA was not only plausible from the Complaint, but virtually certain. *See* O.R.C. § 121.22(I)(1); Doc. 1 at 3, 8-10, 18, ¶¶ 2, 48–58, 62, 102–04.

The proceedings thus far have proven that to be true. "Rule" and "formal action" are not defined in the statute. But the Ohio Supreme Court has explained that if terms are not defined in the OMA, courts should apply the ordinary meaning of the words. *State ex rel. More Bratenahl v. Vill. of Bratenahl*, 136 N.E.3d 447, 450–51 (Ohio 2019). The definition of "rule" specifically includes a "custom." *Webster's Seventh New Collegiate Dictionary* 752 (1971) (defining rule as "an accepted procedure, custom, or habit"). An "action" is "a thing done" or "the bringing about of an alteration by force or through a natural agency[.]" *Id.* at 9. And "formal" includes the idea of a decision being made "according with established form, custom, or rule[.]" *Id.* at 328. In applying the ordinary meaning of those terms, the parties do not dispute that Bethel has had a long-standing custom of separating intimate facilities based on biological sex. Doc. 20 at 665. Bethel then attempted to adopt a new rule ("custom") for intimate facilities but the Defendants did not do so in an open meeting, invalidating the rule. Furthermore, it was quite conventional (according to "an accepted procedure, custom, or habit") to take action ("a thing done") and change ("alter[]") that rule with the Defendants' direct involvement and approval because Ohio mandatorily tasks the Board—and no one else—to make the rules governing the school.

There is no way around this for the government. The Defendants told the community that it was necessary to change the bathroom rule to enforce Title IX. And Ohio law mandates that ***the Board*** "shall make any rules [] necessary for . . . its employees, pupils of its schools, and all other persons entering upon its school

grounds or premises." O.R.C. § 3313.20(A); *see also* O.R.C. § 3313.47 (the Board "***shall***" have management responsibility for the school and "***shall***" make the rules governing the students, employees, and other persons at the school); Reply in Supp. of Pls.' Motion for Prelim. Inj., Doc. 37 at 788-94. Accordingly, when the Board announced on January 10, 2022 that it had changed the rule, that was correct because under the law, it was the Board's decision. Doc. 1 at 9-10, ¶¶ 52, 60; BOE Meeting, January 10, 2022, at 1:16:00–1:17:50, 1:29:17 (Lydda Mansfield admitting: "So again, ***we*** have made this change within our district based upon the advice of our attorney") (emphasis added).

In spite of this, the Defendants argued that the administration changed the rule, not the Defendants. But the preliminary injunction proceedings demonstrated that the Defendants reached agreement and approved the change at an improper executive session on December 7, 2021. Doc. 37 at 792-93. To be sure, the improper executive session raises additional violations of the OMA. But that does not change the fundamental allegations in the Complaint that the Defendants took official action and adopted a rule change in secret. *See, e.g.*, Doc. 1 at 4, 9, 18, ¶¶ 7, 55, 104.[4]

---

[4] The Plaintiffs initially thought that the Defendants adopted the rule change at the beginning of January 2022 because that is what Lydda Mansfield suggested in response to a question on January 10, 2022. BOE Meeting, January 10, 2022, at 1:29:17; *see also* Doc. 1 at 9, ¶ 55; Mem. in Supp. of Pls.' Mot. for Prelim. Inj., Doc. 5-1 at 57–58. But subsequent efforts after the Defendants argued "it was not us; it was the administration" made clear that the Defendants took official action on December 7, 2021 under Ohio law. *Mansfield City Council v. Richland Cnty. Council AFL-CIO*, No. 03 CA 55, 2003 WL 23652878, at *5 (Ohio Ct. App. Dec. 24, 2003) (affirming the trial court that "[i]t is not necessary that there be a formal vote for there to be a formal action. Any mechanism by which council members make their view known in order to make a decision pending before them suffices"); *Keystone Comm. v. Switzerland of Ohio Sch. Dist. Bd. of Educ.*, 67 N.E.3d 1, 8 (Ohio Ct. App. 2016) (formal action includes "reaching any collective decision[] during an executive session").

Despite having argued this issue at least four times now, the Defendants have failed to provide any law in contravention of the foregoing or the analysis in the Plaintiffs' briefing. Doc. 20; Doc. 56; Doc. 60; Doc. 79. In addition to the law, the Defendants' OMA arguments in their motion in limine reply brief did not set forth any material disagreement of facts regarding the December 7, 2021 executive session. Doc. 60 at 1314-18. Indeed, the Defendants' declaration from Julie Reese even corroborated the discussion and agreement. Doc. 60-5 at 1407, ¶ 7. The problem for the Defendants is that they do not need to take a roll call vote in order to take cognizable action under the statute. Ohio courts have explained that their collective agreement was a formal action under the statute. *Mansfield City Council*, 2003 WL 23652878, at *5; *Keystone Comm.*, 67 N.E.3d at 8. And the OMA further makes clear that a rule or formal action "*of any kind*" is invalid unless adopted in an open meeting of the Board. O.R.C. § 121.22(H) (emphasis added); *see also* Doc. 37 at 791. In short, the straightforward application of the law as explained by a unanimous Ohio Supreme Court in *More Bratenahl* invalidates the Defendants' rule change and formal action. 136 N.E.3d at 451-52. Defendants have offered no law to the contrary, despite having numerous attempts now to do so.

The Defendants' argument that the "Plaintiffs are not challenging legislative board action" is also patently incorrect. Doc. 79 at 1655. Likewise, the Defendants' attempt to recharacterize their actions as the grant of a single accommodation protected by the Family Educational Rights and Privacy Act ("FERPA") is also incorrect. *Id*. The Defendants made a policy decision to change the school's long-term

rule of separating communal restrooms based on biological sex and grant transgender students the benefit of communal restrooms based on gender identity.

Jacob King and Lydda Mansfield's statements communicate that larger policy decision, and so do the Defendants' FAQs issued after the change. Bethel Loc. Sch. Dist., FAQ About Transgender Students, Doc. 39-6 at 960, 962–63. Despite an attempt to soften her admission, Ms. Mansfield's declaration in opposition to the preliminary injunction still reinforces the generality of Defendants' decision by confirming that she supposedly meant to say the school was "accommodating requests of transgender students for use of communal restrooms aligning with their identity [because Board policies] enforce federal law and the federal constitution." Decl. of Lydda Mansfield, Doc. 18-3 at 636, ¶ 13 (plural); *see also* Doc. 18-3 at 635-38, ¶¶ 12, 20-21, 24 (students plural). The Defendants even argued this in their briefing: Bethel is "enforcing Board Policy 5517 Student Anti-Harassment (BOE 220-245) in response to request for accommodation made by transgender ***students*** to access communal restrooms aligning with their sexual identity, not a 'new rule.'" Doc. 20 at 673 (plural). By the Defendants' own admission, the decision was larger than any single student or single accommodation. Therefore, notwithstanding the Defendants' continued attempt to reinvent their actions *post hoc*, they absolutely made a policy decision regarding school restrooms generally.

Finally, the Defendants' current attempt to argue that this is just about Anne Roe's accommodation presents the Court with a false choice about protecting kids and FERPA. *See* Doc. 79 at 1655. If the Defendants want to properly adopt a rule change

or an accommodations policy that changes Bethel's long-standing rule for communal restrooms, then the Board can do that in an open meeting without violating the OMA or discussing anyone individually. But the Defendants did not do that. Under the ordinary plain language of the OMA, the Defendants cannot change their longstanding rule of separating communal restrooms by biological sex without doing so in an open meeting. And that holds true regardless of whether an Ohio school board makes that decision as a larger policy decision—as was the case here— or under the auspices of an "accommodation" to someone in the first instance. The plain language of the OMA invalidates the new rule unless adopted in an open meeting of the public. *Cf. Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1753 (2020) ("[T]he same judicial humility that requires [courts] to refrain from adding to statutes requires [courts] to refrain from diminishing them.").

In sum, the Complaint contains a short and plain statement of the Plaintiffs' claim entitling them to relief and the Defendants motion to dismiss should be denied. However, the Defendants' motion also underscores that the parties simply disagree on the law for this issue. And despite the Defendants' numerous attempts now to argue the issue, they have not been able to provide any law on the substance of the OMA to support their position. The Plaintiffs are therefore substantially likely to succeed on the merits and their motion for preliminary injunction should be granted.

## II. The Plaintiffs Have Standing to Assert All of their Federal and State Claims.

In the instant briefing, the Defendants emphasize *Reynolds v. Talberg* for the proposition that the Plaintiffs do not have standing to bring their claims. No. 1:18-

CV-69, 2020 WL 6375396, at *5 (W.D. Mich. Oct. 30, 2020). But *Reynolds* is inapplicable on its face and the Defendants' arguments underscore the troubling inconsistency that pervades their actions.

As an initial matter, the Plaintiffs' claims in this case are materially different from the claims in *Reynolds* generally. *Compare* Doc. 1 at 18-24, ¶¶ 101-41; Doc. 81, *with* Doc. 79 at 1656. *Reynolds* was a pre-enforcement suit. In addition, the *Reynolds* plaintiffs argued that the school's rules chilled their free speech and reduced their childrens' athletics opportunities. *Reynolds*, 2020 WL 6375396, at *2. Whereas here, the Defendants are actively discriminating against the Plaintiffs; denying them an educational benefit that they are providing to Roe and the families of other transgender students; irregularly and improperly burdening their free exercise; improperly promoting LGBTQ+ beliefs and values to the Plaintiffs' children; and denying the Plaintiffs common sense information required by federal law to exercise the parents' rights under the PPRA and the United States Constitution. Notably, not even the *Reynolds* defendants argued that they had the power to withhold and hide commonsense information that falls within the core of the parental domain. *Reynolds*, 2020 WL 6375396, at *4 ("Defendants expressly disclaim the power to refuse to inform parents of their child's asserted gender identity or sexual orientation."). In addition to actually withholding information from parents, the Defendants are improperly enforcing Title IX against the Plaintiffs to their injury (including the infringement of their Constitutional rights) and permitting the parents of transgender students to direct the education of their children in accordance with their

11

child's asserted identity but denying the Plaintiff parents the same for their child's identity.

Further underscoring *Reynolds*' inapplicability, the *Reynolds* court emphasized there were no actual transgender students using the school's facilities. *Reynolds*, 2020 WL 6375396, at *5, 8 (emphasizing that the absence of actual students using the facilities of the opposite biological sex made the plaintiffs' claims hypothetical). But in this case, no one disputes that Roe is using the communal girls' restroom. To be sure, the Defendants have started to argue that Roe is the only student using the restroom for members of the opposite biological sex. But the Defendants' argument is a red herring for purposes of subject matter jurisdiction because federal courts have subject matter jurisdiction where any plaintiff has standing. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Mays v. LaRose*, 951 F.3d 775, 781-82 (6th Cir. 2020); *Am. C.L. Union of Ky. v. Grayson Cnty.*, 591 F.3d 837, 843 (6th Cir. 2010). Therefore, the Court's subject matter jurisdiction properly arises from the pleadings and the Defendants' arguments regarding Roe being the only student (and so the issue is speculative for male students) are properly suited for summary judgment.[5]

---

[5] The Defendants' arguments are also contradicted in the record by the statements and Declaration of Lydda Mansfield. Doc. 67 at 1475–76. In addition, Lydda Mansfield's announcement on January 10, 2022 said nothing about families seeking accommodations; she just announced the rule that "transgender students may use the restroom that aligns with their gender status." Doc. 20 at 669. And the Defendants only put the FAQs up for a finite period of time and have since taken them down. Defs.' Answer, Doc. 39 at 841, ¶ 62. Therefore, there is no school notice requiring transgender students to request an accommodation and any other transgender students would not have been expected to do so given Ms. Mansfield's announcement about the rule. But again, that issue is suited for discovery and argument on summary judgment rather than the pleadings where the argument does not extend to all

Finally, and unbelievably, the Defendants now argue: "[l]ike here, the school district [in *Reynolds*] contends its policies, among other things, do not explicitly mandate gender-affirming use of facilities[.]" Doc. 79 at 1657 (cleaned up). But the Defendants told the community that they had to make the "change" to enforce Title IX and that they had a nondiscrimination policy that was consistent with Title IX. Doc. 20 at 669; Doc. 39-6 at 960, 962–63; BOE Meeting, January 10, 2022, at 1:16:00– 1:17:50, 1:29:17. Furthermore, in opposition to the preliminary injunction, Lydda Mansfield specifically testified regarding her January 10, 2022 announcement:

> [W]anting to start out my tenure as Board President with demonstrated transparency, I attempt to address the matter. . . . With a goal of telling the public the administration is accommodating requests of transgender students for use of communal restrooms aligning with their identity under the Board's Policy Manual ***because those policies enforce federal law and the federal constitution***, I acknowledge my word choice did not clearly communicate the intended message. While I am not an attorney, I try my best to communicate as clearly as I can in my official capacity as a board member.

Decl. of Lydda Mansfield, Doc. 18-3 at 636, ¶ 13 (emphasis added). The Defendants current argument is deeply inconsistent with what they told the community and with their earlier arguments in this proceeding. *Id.*; *see also* Doc. 20 at 675 (arguing "Board Policy enforced by the administration not only recognizes the rights of transgender students, it recognizes students' rights to free exercise of religion").

Put differently, the Defendants' position was that they had no choice but to comply with Title IX under their nondiscrimination policy when adopting the new bathroom rule. Now their position is that the Plaintiffs lack standing to challenge the

---

the Plaintiffs, is controverted in the record, and the Court has subject matter jurisdiction based on the claims and parties outside of the argument.

Defendants' open discrimination because the Defendants' nondiscrimination policy—which the Defendants' claim was designed to enforce federal law—does not actually require their gender identity bathroom rule (and the Plaintiffs' claims are therefore speculative). The continued moving target of the Defendants' policies and positions is both irregular and problematic. "[C]ourts have an obligation to meticulously scrutinize irregularities to determine whether a law is being used to suppress religious beliefs." *Meriwether v. Hartop*, 992 F.3d 492, 514 (6th Cir. 2021) (noting the moving target of the government's positions and policies in closely scrutinizing the government's actions). This is yet another example of the Defendants' shifting policies and positions and why the Court should meticulously scrutinize the Defendants' actions for their departure from neutrality and potential religious hostility. *See* Doc. 81 at 1725–28.

In short, *Reynolds* is inapplicable on its face. The Plaintiffs here allege multiple actual ongoing injuries. And the Defendants' continued inconsistency reinforces the propriety of the Plaintiffs' claims.

## III. The Plaintiffs Have Standing to Assert their PPRA Claim and have Properly Pled the Same.

The Plaintiffs have standing to assert their PPRA claim, as explained in greater detail in the Plaintiffs' brief on standing, and have properly pled the same. *See* Doc. 59 at 1309-10. However, in the interest of clarity, the Plaintiffs briefly reiterate the foundation for their cause of action and their factual allegations. *See* Doc. 67 at 1470.

A. *Blessing* and *Gonzaga* Provide a Cause of Action to the Plaintiffs.

42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities" secured by the federal Constitution and laws. This section safeguards, *inter alia*, rights conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (plurality) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (cleaned up); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *Baker v. McCollan*, 443 U.S. 137, 143, 144 n.3 (1979).

To obtain redress under Section 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing*, 520 U.S. at 340 (cleaned up). A three-factor test applies. *First*, Congress must have intended that the provision in question benefit the Plaintiff. *Id. Second*, the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement strains judicial competence. *Id.* at 340-41. *Third*, the statute must unambiguously impose a binding obligation on a State or local government. *Id.* at 341. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* at 341. If a plaintiff demonstrates that a statute confers an individual right, then that right is presumptively enforceable through Section 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).

*Gonzaga* supports the proposition that the PPRA is enforceable through Section 1983. While the *Gonzaga* Court denied those plaintiffs relief under FERPA

through Section 1983, the standards the Court applied clearly demonstrate why the result would be quite different under the PPRA. *Id.* at 287-90. The *Gonzaga* Court explained that FERPA creates no private rights because the language of that statute is general, instead of focusing on the individual. *Id.* at 288. In contrast, the PPRA's language is specific, and refers to individual rights holders repeatedly. *See e.g.*, 20 U.S.C. § 1232h(a) ("All instructional materials … shall be available ***for inspection by the parents*** or guardians of the children.") (emphasis added); 20 U.S.C. § 1232h(c)(1)(A)(i) ("***The right of a parent*** of a student to inspect…") (emphasis added); 20 U.S.C. § 1232h(c)(1)(C)(i) (same); 20 U.S.C. § 1232h(c)(1)(F)(i) (same); 20 U.S.C. § 1232h(c)(2)(B) ("The local educational agency ***shall directly notify the parent of a student*** … when activities described in subparagraph (C)[, activities requiring notification,] are scheduled, or expected to be scheduled.") (emphasis added); 20 U.S.C. § 1232h(d) ("Educational agencies and institutions ***shall give parents and students effective notice of their rights*** under [§ 1232h].") (emphasis added). Section 12332h(c)(5)(B) specifically provides that "[t]he rights ***provided to parents under this section*** transfer to the student when the student turns 18 years old[.]" (emphasis added). This language clearly states that the PPRA provides rights to the individual parents. FERPA does not contain such rights creating language, and for that reason the *Gonzaga* Court denied a Section 1983 claim under FERPA.

Defendants completely ignore Plaintiffs' argument that the PPRA is distinct from FERPA and that, under *Gonzaga* and *Blessing*, Plaintiffs have a federal right enforceable through Section 1983. Put another way, Section 1983 provides the cause

of action, and the PPRA provides the federally enforceable right. This is how Section 1983 has been traditionally understood, as providing a cause of action to remedy violations of federal rights found elsewhere. Oddly, Defendants point to *C.N. v. Ridgewood Board. of Education*, 146 F. Supp. 2d 528, 535 (D.N.J. 2001), fn. 7 as support for their position. Doc. 79 at 1662-63. However, the New Jersey district court there acknowledged that even if the PPRA does not have a private right of action, Section 1983 may be used to enforce the Plaintiffs' PPRA rights. *C.N.*, 146 F. Supp. 2d at 535 n.7 ("Plaintiffs concede that . . . whether the PPRA or the FERPA provide a private right of action is irrelevant because ***42 U.S.C. § 1983 may be used to enforce such rights***.") (emphasis added).

## B.     The Plaintiffs Made Sufficient Factual Allegations.

The District receives federal funds. *See* Ex. BOE 401-412 - Fed. Funding, Doc. 39-2. Accordingly, it is subject to the requirements of 20 U.S.C. § 1232h (Protection of Pupil Rights Amendment or "<u>PPRA</u>") and its implementing regulations, including 34 C.F.R. § 98.4(a). Section 1232h(b) provides, in relevant part, that no student shall be required to submit to a survey, analysis, or evaluation that reveals, *inter alia*, information concerning mental or psychological problems of the student or the student's family; sex behavior or attitudes; or critical appraisals of other individuals with whom respondents have close family relationships without prior parental notice and consent. 20 U.S.C. § 1232h(b)(2), (3), (5). In addition, the regulations provide that no student shall be required to submit without prior parental consent to "an activity involving the planned, systematic use of methods or techniques that are not directly

related to academic instruction and that is [sic] designed to affect behavioral, emotional, or attitudinal characteristics of an individual or group." 34 C.F.R. § 98.4(c)(2). Here, the Defendants have required students to complete assignments promoting LGBTQ+ beliefs that deal with sexuality. *See* Doc. 1 at 13, ¶¶ 75, 76. The goal of such assignments is to affect the behavioral, emotional, or attitudinal characteristics of the Bethel students and is a nonacademic requirement. By exposing students to these materials, with the goal of changing their attitudes towards them, (and without prior parental consent), the Defendants have violated the PPRA and its implementing regulations. This failure to provide parental notice and to obtain parental consent is an injury in fact. The Defendants exposed the Plaintiffs' children to materials that the Plaintiff parents would not have consented to, where the Plaintiffs had the legal right to prevent such exposure.

The Defendants argue that there is no injury in fact here because the allegations are not sufficiently particular. Doc. 79 at 1660. However, this misframes the issue at this stage of litigation. On a Rule 12 motion to dismiss, the Plaintiffs need only allege a plausible set of facts; they need not prove them with specific evidence. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up). The Plaintiffs have done so, and done so repeatedly.

Lastly, the Defendants argue that the Plaintiffs fail to allege "that student Plaintiffs were compelled to complete any such activity." Doc. 79 at 1663. However,

students do not hold the rights secured by the PPRA, parents do. If the students' consent was all that was required, the entire PPRA would be worthless, and 20 U.S.C. § 12332h(c)(5)(B) would be surplusage, as rights would not transfer to the student on their 18th birthday; the student would have held them all along. This is simply not the case. Parents hold the rights secured by the PPRA, as is made clear by the text of the law itself. The Plaintiff parents were never asked for consent, and thus the PPRA was violated. Doc 1 at 13, ¶ 77. The Plaintiffs do not need to allege that students were compelled to participate in any activity to sustain a claim under the PPRA.

## IV.  The Individual Defendants in their Official Capacities are Proper Parties in this Litigation.

In their standing briefing, the Plaintiffs explained that the individual Defendants in their official capacities are proper defendants for purposes of declaratory and injunctive relief. Doc. 67 at 1474. The Defendants do not appear to dispute this in their current briefing. *See* Doc. 79 at 1663–64. Accordingly, the Plaintiffs have standing to assert their claims against these individual Defendants in their official capacity for declaratory and injunctive relief (as the Defendants now seem to admit) and the same are proper parties in the suit.[6] The Plaintiffs have

---

[6] Beyond the substance of the law that makes the individual Defendants proper parties to this action, the Defendants take an unfair shot at the Plaintiffs that they refused "to informally discuss the matter." Doc. 79 at 1664. That is simply not true. The Plaintiffs discussed the matter at the outset of the case, explained their belief that the individual Defendants were proper parties, and expressed a willingness to discuss as the case progressed but that it was too early to dismiss anyone. The Defendants then filed to dismiss the individual Defendants on their own which, as explained in the briefing, is not correct under the law. Doc. 67 at 1474. The Defendants do not get to control the Plaintiffs' claims. And trying to use attorney discussions for narrative before the Court is wrong and undermines the collegiality of the profession.

explained they are not seeking damages against the individual Defendants named in their official capacity. Doc. 67 at 1474-75.

## **CONCLUSION**

For all the foregoing reasons the Defendants' motion should be denied in its entirety.

Dated:        April 26, 2023

Respectfully submitted,

<u>s/ Joseph P. Ashbrook</u>
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge, LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of April, 2023, I served a copy of the

foregoing via the Court's ECF system, which notifies all counsel of record.


<u>s/ Joseph P. Ashbrook</u>
Joseph P. Ashbrook