**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**DAYTON DIVISION**

| | | |
|---|---|---|
| **JOHN AND JANE DOE NO. 1, et al** | : | **CASE NO: 3:22-cv-00337** |
| **PLAINTIFFS** | : | **JUDGE MICHAEL J. NEWMAN** |
| vs. | : | |
| **BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al** | : | |
| **DEFENDANTS.** | : | |

**DEFENDANTS BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, AND LYDDA MANSFIELD, LORI SEBASTIAN, NATALIE DONAHUE, DANNY ELAM, JACOB KING AND MATTHEW CHRISPIN, IN THEIR OFFICIAL CAPACITIES, MEMORANDUM IN OPPOSTIION TO PLAINTIFFS' AMENDED MOTION FOR SANCTIONS (DOC. 74)**

## I.  INTRODUCTION

Plaintiffs seek sanctions under Civ.R. 11 against Legal Counsel for BOE Defendants ("Legal Counsel") because, in response to Plaintiffs' filing of the declaration of now Former Board of Education Member Jessica Franz, in support of their request for preliminary injunction on a state law Ohio Open Meetings Act claim only, BOE Defendants assert violation of the Ohio Rules of Professional Conduct.  Plaintiffs' counsel call the Motion in Limine "unnecessary" as it pertains to the asserted violation of the Ohio Rules of Professional Conduct.

Had Plaintiffs affirmatively addressed the issue of Rule 4.2 compliance with Legal Counsel before obtaining privileged information, a court ruling could have been obtained.  They did not.

Had Plaintiffs affirmatively addressed the issue of Rule 4.2 compliance with Legal Counsel before filing the Franz Declaration on the public docket, a court ruling could have been obtained.  They did not.

These choices Legal Counsel has no control over.  The Motion for Sanctions is an attempt to chill vigorous advocacy.  Legal Counsel are left to defend the rights owed to their client as supported by rule and law *after* Plaintiffs choose to file the Franz Declaration secured through ex parte contact.  That is what Legal Counsel is doing here.  A call to Plaintiffs' counsel before filing the Motion in Limine would have resulted in no different of an approach for the reasons argued in the Motion in Limine and Reply Memorandum in support, including the declarations of ethics expert Attorney Alvin Mathews, all of which is fully incorporated herein by reference as grounds for denying the Rule 11 Motion.

Because Legal Counsel adequately investigated under the circumstances here, before requesting a Motion in Limine asserting violations of the Ohio Rules of Professional Conduct, because Legal Counsel exercises proper candor with the Court, and because no evidence exists that Legal Counsel have engaged in unreasonable or bad faith conduct, it is respectfully requested Plaintiffs' motion be overruled.

## II.     LEGAL ANALYSIS

### A.  Standard Governing Rule 11

In denying a motion for Rule 11 sanctions, Judge Rice recently described the standard governing such motion as follows:

> The Supreme Court has observed that "the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). "Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, [ ] any interpretation must give effect to the Rule's central goal of deterrence." *Id.* The test for whether a Rule 11 violation warrants sanctions is "whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir.1997). "In determining whether a violation of Rule 11 has occurred, the district court is not to use the benefit of hindsight but 'should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading,

motion, or other paper was submitted.'" *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 93 (6th Cir.1991) (quoting *INVST Fin. Group, Inc. v. Chem—Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir.1987)).

*AT&T Corp. v. J&J Schlaegel, Inc.*, S.D.Ohio No. 3:19-cv-192, 2020 U.S. Dist. LEXIS 239093, at *8-9 (Dec. 18, 2020) (sanctions denied based upon two reasons, insufficient evidence and for a failure to comply with safe harbor provision). Legal Counsel acts reasonably at all times based upon this legal standard as demonstrated by the Motion in Limine proceedings and the record as a whole.

### B. Legal Counsel Acted Reasonably Under the Circumstances Here at All Times in Presenting the Motion in Limine to Protect the Rights of Privilege Owed to the Board of Education

Legal Counsel demonstrated reserve in forgoing a motion to disqualify Plaintiffs' counsel despite Sixth Circuit precedent identifying such procedure as the appropriate mechanism in acknowledgment of Sixth Circuit precedent providing for disqualification under limited instances. Motion in Limine Reply, Doc. 60. Further, Legal Counsel engaged in due diligence by having the matter reviewed and opined on by a highly regarded legal ethics expert, who Plaintiffs discard as a purported expert. Motion in Limine, Doc. 48; Motion in Limine Reply, Doc. 60; Motion for Sanctions, Doc. 74-1, Page ID. 1570.

The declarations on file with this Court from former and present Board of Education members and the former superintendent demonstrate Legal Counsel engaged in investigation in presenting the Motion in Limine and in continuing to argue its grounds in the Reply.

The allegation of sanctionable conduct related to Legal Counsel's choice to have no off record contact with Ms. Franz does not form the basis of alleged sanctionable conduct. Legal Counsel believe Ms. Franz is breaching her duty to preserve the attorney client privilege and executive session privilege, is breaching her duty to uphold fiduciary duties owed to a political

3

subdivision, here the Board of Education, and is misrepresenting fact. She is not a whistle blower as Plaintiffs' inaccurately claim. There are often good reasons for avoiding off record contact with certain individuals.

Plaintiffs claim the Legal Counsel violate Rule 11 when they did not call Plaintiffs' counsel to question them on their compliance with Ohio's Rules of Professional Conduct. Legal Counsel is not charged with such duty under the specific facts here. Plaintiffs filed the Franz Declaration with no advance warning of their intention to do so, believing the Franz Declaration exposed "whistle blower" activity and its attorney client and executive session privileged content could and should be made public as evidence in support of Plaintiffs' motion seeking preliminary injunction relief. Motion for Preliminary Injunction Reply, Doc. 37.

Plaintiffs' "have your cake and eat it too" approach proves the basis of Expert Alvin Mathew's opinions that compliance cannot be demonstrated here. If waiver is being argued, then Ms. Franz shared privileged information. If Ms. Franz shared privileged information, then Plaintiffs' counsel did not warn or inadequately warned under Rule 4.2. If Ms. Franz is being advised by separate legal counsel, who is it? No one knows. Plaintiffs are not sharing this information. And, even if Ms. Franz was advised by some unknown legal counsel on the issue of privilege, the competency of such advice must be questioned given she is mandated to comply with Ohio Ethics laws governing public officials. Moreover, Legal Counsel, the Board of Education's general counsel, Mr. Podgurski, whose legal career has been spent representing Ohio's public schools, including Bethel Local School District for the last thirty uninterrupted years, and Ms. Dinkler, who has served Ohio political subdivision clients for all but the first eighteen months (spent serving the community as an assistant public defender) of her twenty-eight year legal career,

4

disagree with any such purported legal advice. This is why this Court, not Plaintiffs or their counsel, is charged with deciding the good faith issues presented in the Motion in Limine.

Every day in this country, the most highly revered and respected judges disagree on the application of law to facts. Attorneys are no different. While Legal Counsel do not sway from the request sought from this Court regarding the Franz Declaration made in protection and defense of the rights held by and owed to the Board of Education, even if this Court were to disagree with any asserted argument, all arguments are reasonably made in good faith and with full candor to the Court, as demonstrated by the record here taken as a whole.

Plaintiffs' claim the argument directed at Plaintiffs' counsel was "unnecessary" and, separately claim unsupported by "legal citation to make them relevant." March 23, 2023 Ashbrook Letter, Exhibit A. "Unnecessary" is not a synonym for "unwarranted." Unnecessary, not needed (https://www.google.com/search?client=safari&rls=en&q=definition+unnecessary&ie=UTF-8&oe=UTF-8 (last visited April 28, 2023)), acknowledges and seemingly concedes Ms. Franz's conduct independently demonstrates it was improper – violates attorney client and executive session privilege, without further evidence or legal argument, like the non-compliance of Plaintiffs' counsel with the Rules of Professional Conduct. Plaintiffs' acknowledgement and stipulation after the close of Motion of Limine briefing demonstrates a lack of good faith basis for the Rule 11 motion and concession on the Motion in Limine motion.

Recognizing Plaintiffs' counsel will argue otherwise despite their clear and unambiguous acknowledgment, the Board of Education has not waived either its attorney client or executive session privilege by vote, the only way it can waive a privilege. Therefore, taking immediate action to enforce its privileges is necessary and warranted under Rule 11. The motion practice on the matter cites the legal authority supporting the requested relief. There is no basis to claim no

relevant legal authority exists. There is no basis to claim the arguments were changed, either. March 23, 2023 Ashbrook Letter, Exhibit A. The reply expounds upon the issues raised by Plaintiffs in their memorandum in opposition. Notably, Plaintiffs did not move to strike any portion of the Reply.

Plaintiffs are critical of the timing of the relief sought in response to the Franz Declaration. Legal Counsel is of the opinion the timing of when the motion is filed would be criticized regardless of when it was filed, because Plaintiffs' counsel will continue to argue it was "unnecessary." The motion is filed immediately following Legal Counsel's possession of all attachments, as shared with the Court during the oral argument Plaintiffs requested on their motion for preliminary injunction.

Legal Counsel have been accused of engaging in "egregious" conduct by offering their observations in response to allegations of failure to conduct reasonable due diligence. Exhibit A. Plaintiffs now disagree with Legal Counsel's recollection regarding the discussion threatening disqualification of Mr. Podgurski. March 23, 2023 Ashbrook Letter, Exhibit A in response to March 20, 2023 Dinkler Letter, Exhibit B. While it is true Plaintiffs' have not re-initiated discussion regarding intent to disqualify Mr. Podgurski, Plaintiffs' have no basis to challenge how Legal Counsel perceived that discussion, and it was reasonably perceived. The anti-transgender group in Bethel has demanded Mr. Podgurski be replaced with new general counsel who will provide a legal opinion consistent with their political and religious views, and are discontent that this has not occurred.

Attached as Exhibit C is a true and accurate text message exchange between Former Superintendent Justin Firks and Plaintiffs' counsel, Mr. Ashbrook, which Mr. Firks immediately supplied to Legal Counsel. Mr. Firks only communicated with Mr. Ashbrook by text message, the

entirety of which is contained in Exhibit C. In response to this exchange, Mr. Ashbrook emailed Legal Counsel the following day claiming a perception that Mr. Firks "didn't really know whether he was represented or not." See Exhibit D, January 13, 2023 Email Exchange between Counsel. Legal Counsel do not read the text message from Mr. Firks to support this reasonable perception. Legal Counsel find the tactics, while not unethical, to be overly aggressive.

While Plaintiffs' counsel complain Legal Counsel should be sanctioned for not contacting them regarding whether or not they complied with the Rules of Professional Conduct with regard to the Franz Declaration and *ex parte* leading up to it, Legal Counsel points out as a secondary point that requests for explanation go unmet. Legal Counsel asked, in writing, for an explanation regarding the claimed prejudice supporting the request to expedite Rule 11 proceedings. Contrary to the representation otherwise (Exhibit A), no writing or other communication *explains* what "potential prejudice" *Plaintiffs* would encounter. The underlying issues related to the Rule 11 Motion proceedings pertain to Plaintiffs' counsel, not Plaintiffs. Doc. 61, 74. Legal Counsel is not charged with ensuring Plaintiffs' counsel's compliance with the Rules of Professional Conduct and is further not charged with making follow-up calls to a simple request for explanation which is never provided to Legal Counsel or the Court. The expedited proceeding request is ultimately ruled moot. Doc. 64. Despite this, Plaintiffs' counsel continue to complain, asserting charges of Rule 11 conduct.

To date, this Court has not heard from Plaintiffs' Counsel as to what they did or did not do regarding compliance with the Professional Rules of Conduct. Only a declaration from Ms. Franz is provided which provides scant detail at best, as addressed in the underlying Motion in Limine briefing. Legal Counsel's compliance with Rule 11 and Plaintiffs' counsel's lack of adequately detailed compliance evidence is demonstrated by Magistrate Judge Ovington's decision in *Hobart*

*Corp. v. Waste Mgmt. of Ohio, Inc*., 2012 U.S. Dist. LEXIS 39841, 2012 WL 996525 (S.D. Ohio March 23, 2012). There, the current employee ex-parte contact issue came to defense counsel's attention upon the issuance of a subpoena for the employee's deposition. *Id*., at *8. No disclosure of privileged information obtained *ex parte* is filed with the Court without advance notice to defense counsel.

At the outset of the Court's analysis, Judge Ovington acknowledges the importance of the duty to preserve the attorney client privilege within the context of an attorney's responsibly under Rule 4.2, citing a decision written by Magistrate Judge Kemp:

> As to the purpose of Rule 4.2, *Wasmer v. Ohio Dept. Of Rehabilitation and Corrections* explains:
>
> As the courts have consistently held, the purpose of a prohibition against ex parte communications such as that embodies in Rule 4.2 is to protect an organization from improper disclosures of attorney-client communications or untoward intrusions into the attorney-client relationship in the context of an organization's ability to prosecute and defend litigation. It is not designed to protect an organization against disclosure of facts which may be prejudicial to its litigation position. . . . "[T]he purposes of the rule are best served when it prohibits communication with those employees closely identified with the organization in the dispute . . . . those employees empowered to make litigation decisions, and those employees whose acts or omissions are at issue in the case." 2007 U.S. Dist. LEXIS 11881, 2007 WL 593564 at *4 (S.D. Ohio, Feb. 21, 2007) (Kemp, M.J.)(internal citations omitted [sic]

*Hobart Corp*., at *10-11, see also *16-17. In analyzing the fact pattern there, Judge Ovington concludes the record is inadequately developed for the Court to fully evaluate Rule 4.2 compliance. *Id*. at *15-17. That said, the decision makes clear the concern was justified because the scant evidence in record points to the conclusion of a violation of Rule 4.2 by the attorney who engaged in the ex parte communication and is described as a "close question." *Id*., at *15. Ultimately, because the relief sought by the motion for protective order there is an order prohibiting Plaintiffs from deposing the employee, the motion for

8

protective order is overruled as inappropriate relief for the charged conduct. *Id.* This decision supports the conclusion that Legal Counsel here engaged in no violation of Rule 11 by asserting and refusing to withdrawal the Motion in Limine, including the expert declarations of Mr. Mathews.

Legal Counsel does not violate Rule 11 by prosecuting the Motion in Limine on behalf of the Board of Education under the facts presented here.

### C. Legal Counsel Acted Reasonably Under the Circumstances Here at All Times in Presenting Law and Evidence with Candor the Motion in Limine to Protect the Rights of Privilege Owed to the Board of Education

As for the lack of candor to the court accusation, even after Legal Counsel provides Plaintiffs with the following detailed explanation, Plaintiffs still seek sanctions claiming lack of candor:

> Regarding candor the Court and citation of authority, please consider the following:
>
> **Ohio Sup. Ct. Bd. Comm'r Grievances & Discipline, Op. 2005-03 (Feb. 4, 2005)**
>
> Thank you for pointing out "withdrawn by adv. Op. 2016-5" is absent from the citation. It will be amended.[1] The court has not been misled as Op. 2016-5 is also relied upon by Defendants and cited by Mr. Mathews in his Declaration, which is filed with the Court. The law is unchanged by the more current opinion, Op. 2016-5, which holds:
>
> Before interviewing a former employee, a lawyer should disclose his or her identity, and fully explain that he or she represents a client adverse to the corporation. The lawyer also must immediately inform the former employee not to divulge any privileged communications that the former employee may have had with corporate or other retained counsel. Prof.Cond.R. 1.6, 4.4 (lawyers may not use methods to obtain evidence that violate the legal rights of third parties.) Consequently, a lawyer must endeavor not to solicit information from former employees that the lawyer knows or reasonably knows to be protected by the attorney-client privilege. See D.C. Bar Op. 287. Nor may a lawyer communicate ex parte with a former employee who is represented by independent counsel, or if the corporation's lawyer has agreed to provide representation in the matter. See Davis v. Creditors Interchange Receivable Mgmt., LLC, 585 F. Supp. 2d 968 (N.D. Ohio 2008).

---

[1] See Notice of Amendment to Legal Citation, Doc. 60.

9

The analysis in the earlier 2005 opinion is unchanged by the 2016.[2]

***Boatner v. Pushmataha Cty./Town of Antlers Hosp. Auth.*, E.D.Okla. No. CIV 2003-494(P), 2006 U.S. Dist. LEXIS 109198, at \*10-12 (Jan. 5, 2006) and *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F. Supp. 1037, 1042 (D.N.J. 1990)**

Citation to *Boatner v. Pushmataha Cty./Town of Antlers Hosp. Auth.*, E.D.Okla. No. CIV 2003-494(P), 2006 U.S. Dist. LEXIS 109198, at \*10-12 (Jan. 5, 2006) and *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F. Supp. 1037, 1042 (D.N.J. 1990) is proper. *Pub. Serv. Elec. & Gas Co.* is discussed by federal courts within the Sixth Circuit. None of the Court opinions listed below find it necessary or relevant to mention the New Jersey Supreme Court's re-evaluation and regulatory response which do not apply to any state within the Sixth Circuit. Otherwise, Plaintiffs' cited authority, *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 82 (D.N.J.2000), acknowledges privileged information shall not be solicited during ex parte interviews and warns:

"This Court would strongly recommend that attorneys proceed with caution and, being mindful at all times of the ethical responsibilities surrounding <u>ex parte</u> contacts, err on the side of caution.

*Andrews*, 191 F.R.D. 59, 82 (D.N.J.2000).

In *Smith v. Kalamazoo Ophthalmology*, 322 F.Supp.2d 883, 891 (W.D.Mich.2004), the Court writes:

A few courts have taken an even more restrictive view of the rule, holding that it precludes *ex parte* contact with *all* former employees. *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F. Supp. 1037, 1042 (D.N.J. 1990).

The *Smith* Court also holds:

The Court notes that although *ex parte* contact with former employees is not subject to Rule 4.2, former employees "are 'barred from discussing privileged information to which they are privy.'" *In re Bank of La./Kenwin Shops Inc., Contract Litig.,* 1998 U.S. Dist. LEXIS 17812, No. CIV.A.97MDL No. 1193, 1998 WL 788776, at \*3 (E.D. La. Nov. 10, 1998) (quoting *Orlowski v. Dominick's Finer Foods, Inc.,* 937 F. Supp. 723, 728 (N.D. Ill. 1996)). Attorneys also have a responsibility to refrain from inquiring into areas that may be [\*891] subject to the attorney-client privilege or the work product doctrine. <u>Cram,</u> 148 F.R.D. at 266. Therefore, an attorney may have *ex parte* contact with an unrepresented

---

[2] The Supreme Court of Ohio adopts the Ohio Rules of Professional Conduct, effective February 1, 2007 and as amended April 1, 2015. These rules supersede and replace the Ohio Code of Professional Responsibility to govern the conduct of Ohio lawyers occurring on or after February 1, 2007.

former employee of an organizational party, subject to the limitation that the attorney may not inquire into areas subject to the attorney-client privilege or work product doctrine. *See Palmer v. Pioneer Hotel & Casino,* 19 F. Supp. 2d 1157, 1167 (D. Nev. 1998); *Breedlove v. Tele-Trip Co.,* 1992 U.S. Dist. LEXIS 12149, No. 91 C 5702, 1992 WL 202147, at *2 (N.D. Ill. Aug. 14, 1992).

*Smith*, 322 F.Supp.2d at 890-891.

In *United States v. Beiersdorf-Jobst, Inc.*, 980 F.Supp. 257, 260 (N.D.Ohio 1997), the court writes:

Some courts have placed restrictions on interviews of former employees. *See, e.g., Public Serv. Elec. and Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 745 F. Supp. 1037 (D.N.J. 1990); *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J. 1991); *PPG Indus., Inc. v. BASF Corp.*, 134 F.R.D. [**7] 118 (W.D. Pa. 1990).

The *Beiersdorf-Jobst, Inc.*, Court also holds:

After considering the case law construing Dr 7-104(A)(1) and its counterpart, Model Rules Rule 4.2, the purposes of these ethical standards, and the policies of modern-day adversarial litigation, I hold that attorneys practicing in the Northern District of Ohio are not barred from *ex parte* communications with former employees of adverse corporations.

In so holding, I recognize that at the heart of Jobst's argument is its concern that statements made by former employees will be admissible against it as party admissions. I have already found that such statements cannot be party admissions if made by an employee who is no longer employed by and has no continuing relationship with Jobst. However, should the government attempt to [**15] admit such statements against Jobst as party admissions, Jobst can then move for exclusion of such statements.

*Beiersdorf-Jobst, Inc.*, 980 F.Supp. at 262.

The *Huther v. Tools*, S.D.Ohio Case No. C2-92-373, Case No. C2-92-453, Case No. C2-92-455, Case No. C2-92-456, Case No. C2-92-458, Case No. C2-92-461, Case No. C2-92-463, Case No. C2-92-464, Case No. C2-92-473, Case No. C2-92-474, Case No. C2-92-475, Case No. C2-92-476, Case No. C2-92-547, Case No. C2-92-912, Case No. C2-92-914, Case No. C2-92-1041, Case No. C2-92-1042, Case No. C2-92-1047, Case No. C2-92-1052, Case No. C2-93-61, Case No. C-93-65, Case No. C2-93-81, Case No. C2-93-176, Case No. C2-93-198, 1993 U.S. Dist. LEXIS 21234, at *5-6 (Aug. 11, 1993), court writes:

The parties have done a commendable job of citing to the Court practically every decision, ethics opinion, and law review article written on this subject over the past five years. The Court is independently familiar with these legal authorities, and does not believe that an extended discussion of any particular decision is necessary. Briefly stated, there are decisions from other jurisdictions which support each side's position, from cases which would appear to prohibit any *ex parte* contact with any former employee of a represented corporate opponent, *see Public Service Gas* [*6] *Electric v. Associated Electric & Gas Insurance Services, Ltd.*, 745 F. Supp. 1037 (D. N.J. 1990), to cases that hold that former employees can be interviewed *ex parte* under most, if not all, circumstances. *See Valassis v. Samelson*, 143 F.R.D. 118 (E.D. Mich. 1992) (*ex parte* interviews permitted subject to restrictions on inquiries into privileged information or confidential information which might be a trade secret). The parties also rely on conflicting ethical opinions, with Mac stressing heavily the conclusion reached in Opinion 90-20, and plaintiffs, in turn, relying heavily upon ABA Formal Opinion No. 91-359 (March 22, 1991), which, in interpreting Model Rule 4.2, appears to state unequivocally that the rule is not intended to reach *ex parte* contact with former corporate employees.

The *Huther* Court also holds:

For the foregoing reasons, Mac Tools' motion for a protective order prohibiting *ex parte* contact with former district sales managers is denied. In contacting such persons, however, plaintiffs' counsel shall insure, by appropriate disclosures and admonitions, that the interviewee understands the nature of the litigation, the interests being represented by plaintiffs' counsel, the potential, if it exists, of suit being brought against the witness and the witness' right to seek independent legal advice, and that the witness should not disclose any attorney-client communication or confidential or privileged business information during the course of the interview.

*Huther,* at *17.

The *Summers v. Rockwell Internatl. Corp.*, S.D.Ohio Case No. C2-92-301, 1993 U.S. Dist. LEXIS 21173, at *6-7 (Apr. 9, 1993), court writes:

Rockwell has asked this Court to impose a "bright-line" test prohibiting all contact with former employees. At least one court appears to have adopted this approach. *Public Service Gas & Electric v. Associated Electric & Gas Insurance Services, Ltd.,* 745 F. Supp. 1037 (D.N.J. 1990). That Court held both that former employees were persons described by Model Rule 4.2, and that the difficulty of determining [*7] the extent to which statements by those former employees could form the basis of liability or otherwise be injurious to the litigation position of their former employer justified a prophylactic rule against any contact. The Court believed that the potential for harm to the former employer, coupled with the desirability of a clear rule preventing additional litigation over the issue of which former employees tell within the scope of the rule, outweighed the opposing party's

potential benefit from being able to conduct informal interviews and eliminating the cost and expense of deposing all former employees.

The *Summers* Court also holds:

Based upon the foregoing, it is ordered that plaintiffs may, under the circumstances described in this order, conduct *ex parte* interviews with current or former Rockwell employees. In addition to using the form submitted to the Court, and publicizing their intent to interview former employees in the manner approved by the Court, counsel are specifically directed to emphasize to each employee interviewed that no information learned by that employee as a result of communications with counsel for Rockwell should be disclosed, and to refrain both from asking questions concerning such communications or pursuing information if it appears that the source of such information is a communication with counsel. The plaintiffs are further cautioned that interviews which do not conform with the procedures set forth above may result in the imposition of sanctions, which could include preventing counsel from using the interviewee as a witness, from using any information provided by the interviewee [*14] at the trial of this case, or, in an extreme case, dismissal of some or all of plaintiffs' claims with prejudice.

*Summers*, at *13-14.

In *Valassis v. Samelson*, 143 F.R.D. 118, 121 (E.D.Mich.1992), fn. 4, the court writes:

One court, *Public Service Electric and Gas Co. v. Associated Electric & Gas Ins. Services, Ltd.*, 745 F. Supp. 1037 (D.N.J. 1990) ("*PSE&G*"), held that Rule 4.2 prohibited all contact with *any* former employee. This decision, however, was not only issued prior to the March 1991 ABA Formal Opinion, it has not been followed by other courts and was expressly criticized by two other decisions out of the New Jersey District Court, *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J. 1991) and *Hanntz v. Shiley, Inc.*, 766 F. Supp. 258 (D.N.J. 1991).

The *Valassis* court also holds:

Ms. Baer may speak informally with the attorneys for Valassis and may aid them in reviewing the documents supplied by Samelson during discovery. As a former employee, she is no longer a party of Samelson [**25] and consequently does not fall under the rubric of Rule 4.2. However, Ms. Baer is proscribed from communicating to Valassis's attorneys any information that is protected by the attorney-client privilege. Similarly, Valassis's attorneys are forbidden from asking about this privileged information.

*Valassis*, 143 F.R.D. at 126.

13

> ***Cincinnati Bar Assn. v. Wiest**, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621*
>
> The citation to *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 25-26, proves, as a matter of law, an attorney's obligation to preserve the attorney client privilege is one of his or her most fundamental obligations.
>
> No facts are mis-represented, and all matters were properly investigated to best represent the Defendants' interests.

March 20, 2023 Dinkler Letter, Exhibit B. Legal Counsel has not breached their duty of candor to the Court in this matter.

Plaintiffs seek to re-litigate the Motion in Limine in the Rule 11 Motion by discussing the declarations related to it. Motion for Sanctions, Doc. 74, Page ID 1581-82. One could argue the Motion for Sanctions is largely a sur-reply to the Motion in Limine. Legal Counsel do not misrepresent any declaration, as proven by the briefing and record as a whole. The parties disagree on how the law should be decided. Plaintiffs choose to force Legal Counsel to address the matter *after the fact*. Regardless of how the Court decides the underlying matter, no basis exists to support a finding of sanctionable conduct against Legal Counsel for its use of an expert witness, citation to law, and provision of declarations to the Court, in candor, without waiving the Board's legal privileges, to best inform the Court on the matter to allow for a *judicial ruling*. Plaintiffs are not entitled to prejudice the Board's legal rights as an advocate prosecuting claims.

As for the lack of candor to the court claim, Legal Counsel misrepresent no law. The record as a whole demonstrates and will demonstrate upon the filing of reply memoranda in support of the motion to dismiss briefing that Plaintiffs have taken great liberties with citation of law and arguing matters beyond a motion to dismiss legal standard.

This supports a conclusion the instant motion is being prosecuted for the purpose of chilling advocacy.

### III.  CONCLUSION

Legal Counsel have not and do not abuse the litigation process, no evidence whatsoever exists to prove they treat this litigation as "a joke,"[3] and they have not violated Rule 11 by advocating for the preservation of their client's attorney-client and executive session privileges. Plaintiffs concede the Motion in Limine is warranted by arguing only the argument related to the Rules of Professional Conduct are "unnecessary."  Exhibit A.  For the reasons stated in the Motion in Limine and its Reply Memoranda and their attachments, Legal Counsel's responsive safe harbor letter, and this Memorandum, it is respectfully requested Plaintiffs' Motion for Sanctions be overruled in its entirety.

Respectfully submitted,

s/ Lynnette Dinkler
Lynnette Dinkler (0065455)
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419
(937) 426-4200
(866) 831-0904 (fax)
*Attorney for Defendants Bethel Local Schools District Board of Education, and in their official capacities Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam Jacob King and Matthew Chrispin*

s/ John A. Podgurski
John A. Podgurski (0020923)
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
(440) 256-2990

---

[3] Rule 11 Motion, Doc. 74, Page ID 1568.

*Attorney for Defendant Bethel Local
School District Board of Education*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 28th day of April, 2023, I served the foregoing, via the Court's CM/ECF E-filing System which will send notification to the following:

Joseph P. Ashbrook
jpashbrook@ashbrookbk.com
Julie E. Byrne
jebyrne@ashbrookbk.com
Ashbrook Byrne Kresge, LLC
P.O Box 8248
Cincinnati, OH 45249
*Attorneys for Plaintiff*

Malita Picasso
mpicasso@aclu.org
Rose Saxe
rsaxe@aclu.org
Aditi Fruitwala
afruitwala@aclu.org
Arijeet Sensharma
asensharma@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
*Attorneys for Intervenor Defendant Anne Roe*

Nicholas Barry (pro hac vice)
Nicholas.barry@aflegal.org
America First Legal
611 Pennsylvania Ave, SE #231
Washington, DC 20003
*Attorneys for Plaintiffs*

Michael Meuti
mmeuti@beneschlaw.com
David M. Hopkins (0095285)
dhopkins@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
*Attorneys for Intervenor Defendant Anne Roe*

David Carey
dcarey@acluohio.org
ACLU of Ohio Foundation
1108 City Park Ave., Suite 203
Columbus, OH 43206

Freda Levenson
flevenson@aclueohio.org
ACLU of Ohio Foundation
4506 Chester Ave.
Cleveland, OH 44103
*Attorneys for Intervenor Defendant Anne Roe*

                        s/ Lynnette Dinkler
                        Lynnette Dinkler 0065455