**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**DAYTON DIVISION**

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:22-cv-00337 |
| | ) | |
| v. | ) | Judge Michael J. Newman |
| | ) | |
| BETHEL LOCAL SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

---

**REPLY IN SUPPORT OF DEFENDANT-INTERVENOR ANNE ROE'S**
**MOTION TO DISMISS  FOR LACK OF SUBJECT MATTER JURISDICTION AND**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. vii

INTRODUCTION............................................................................................................... 1

ARGUMENT...................................................................................................................... 2

    **I.**   **Count Two: Plaintiffs Have Not Pled a Title IX Violation, and Even If They Had, It Would Fail on Its Face**.................................................................................................. 2

        A.    Plaintiffs Did Not Plead a Title IX Violation ............................................................. 2

As Plaintiffs repeatedly concede, their Title IX claim asks this Court to resolve whether Title IX "permits" their preferred resolution, rather than whether it requires it. Even if Plaintiffs prevailed on that claim, nothing would change. Contrary to Plaintiffs' Opposition Brief, Anne Roe has never disputed that Title IX provides a private right of action. Rather, she disputes that Plaintiffs have stated a claim. This Court should reject Plaintiffs' invitation to exercise "hypothetical jurisdiction," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and should dismiss Plaintiffs' Title IX claim.

        B.    Even in Their Newly Raised Arguments, Plaintiffs Do Not Describe a Plausible Title IX Violation ............................................................................................................... 4

For the first time, Plaintiffs argue that the School District has discriminated against them on the basis of sex. They did not plead this theory in their Complaint, and cannot do so now. See *Russell v. Tenn. Dep't. of Corr.*, 99 F. App'x. 575, 577 (6th Cir. 2004); Bishop v. Lucent Tech., 520 F.3d 516, 521 (6th Cir. 2008); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even if they had included such a claim, it would fail, as they have not explained how they are treated differently from others on the basis of sex. Even if Title IX was being enforced against them, as Plaintiffs suggest, they would only have alleged a constitutional claim about the constitutionality of Title IX, not a claim to relief under Title IX itself. See *Steffel v. Thompson,* 415 U.S. 452, 454 n.1 (1974).

        C.    Plaintiffs Are Incorrect on the Merits of Title IX....................................................... 7

Even if Plaintiffs had stated a claim, Sixth Circuit precedent would resolve it. See *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 865–71 (S.D. Ohio 2016). Plaintiffs are incorrect that Dodds is "not even law of the case," as it resolved the discrete issue of transgender students' right to access restrooms matching their gender. *Dodds*, 845 F.3d at 221. Numerous federal district courts have correctly treated this issue as settled by, or even prior to, Dodds.

    **II.**   **Count Three: The Fundamental Parenting Right Cannot Be Used to Coerce Plaintiffs' Desired Actions by the School District** ................................................... 9

Plaintiffs selectively quote Sixth Circuit precedent, leading to a misinterpretation of the law. See *Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005). *Blau* does not leave room for the parent Plaintiffs' attempt to manage school policy, including on the basis of their right to impart religious beliefs to their children

A.    Plaintiffs Point to No Authority Supporting a Parental Right to Information on Demand ................................................................................................................................. 10

Plaintiffs cite no precedent that supports their claimed constitutional right to demand information from public schools. Invoking religious interests does not radically expand the boundaries of the fundamental parenting right, as Plaintiffs imply. See, e.g., *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 700 (10th Cir. 1998). Unlike the school in the out-of-circuit district court case on which Plaintiffs rely, the School District here did not affirmatively conceal any information. Even where parents invoke religious interests, courts diligently protect families from government interference, but do not allow parents to control school policy. *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 314 (11th Cir. 1989). Moreover, Plaintiffs' "questions" to the School District are not mere requests for information, but demands to resolve hypothetical situations, or are simply argumentative.

B.    Plaintiffs' Religion Provides No Basis to Direct School Restroom Policy ............... 15

Plaintiffs ignore the great majority of the case law cited in Anne Roe's motion to dismiss on this point. Many of those cases involved similar religious parental-rights objections to public school practices or curricula, and such claims have been uniformly rejected. See, e.g., *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020); *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699–700 (10th Cir. 1998); *Leebaert v. Harrington*, 332 F.3d 134, 137–38 (2d Cir. 2003); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288–94 (5th Cir. 2001); *Brown v. Hot, Sexy and Safer Prods., Inc.,* 68 F.3d 525, 529, 534 (1st Cir. 1995). Plaintiffs rely on an unsupportable "hybrid rights" interpretation of *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and dicta from *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990), which speculates that a parenting-rights claim could combine with a free exercise claim to require strict scrutiny. The Sixth Circuit has rejected that theory. *Watchtower Bible & Tract Soc. of New York v. Vill. of Stratton, Ohio*, 240 F.3d 553, 561 (6th Cir. 2001); *Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5.3d 177, 180 (6th Cir. 1993); see also *Swanson*, 135 F.3d at 700; *Leebaert*, 332 F.3d at 144.

C.    Plaintiffs' Objection to Unspecified "LGBTQ+ Beliefs and Values" Are Not the Basis of Any Plausible Parenting-Rights Claim ................................................................. 17

Plaintiffs fail to state a valid parenting-rights claim for the School District's alleged, but unspecified, endorsement of "LGBTQ+ beliefs and values." Their claim is impermissibly vague and conclusory. See *United Food & Com. Workers, Loc. 1995 v. Kroger Co.,* 51 F.4th 197, 202 (6th Cir. 2022). If it is cognizable as a fundamental parenting rights claim, it fails under the same body of precedent as their related claims.

**III.    Count Four: Plaintiffs Fail to Allege Any Element of an Equal Protection Claim.** 20

Plaintiffs have failed to plausibly allege that they were treated "disparately as compared to similarly situated persons," *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)), and ignore the Supreme Court's instruction that discriminatory intent is a necessary element of an

equal-protection claim. See *Washington v. Davis*, 426 U.S. 229, 245–46 (1976). On each necessary element of an equal-protection claim, Plaintiffs' allegations fail.

A.    Two Protected Classes Are Not Similarly Situated in All Relevant Respects Merely Because They Are Protected. ............................................................................................. 20

"To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). The fact that both religious students and transgender students are members of protected classes does not render members of each respective class similarly situated to each other for any and all purposes. The material dissimilarity between the Plaintiffs and Anne is that prior to the School District's accommodation, only Anne was subject to differential treatment, and the accommodation thus constituted a step toward equal treatment.

B.    Plaintiffs Demand Unequal Treatment, Not Equal Treatment. .................................. 22

Plaintiffs fail to allege differential treatment of religious students. Plaintiffs have and will continue to have equal access to the benefit in question, all students are equally able to use communal restrooms in accordance with their gender identity. Plaintiffs are actually objecting not to disparate treatment, but to "being treated the same." See *Balcar v. Smith*, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *6 (W.D. Ky. Jan. 26, 2017) (emphasis added). The fact that Plaintiffs' preferred school policy was rejected does not support an equal-protection claim, not least because they do not allege differential treatment on the basis of religion. See *Kyle v. Skipper*, No. 21-1632, 2022 WL 13638333, at *2 (6th Cir. Oct. 7, 2022).

C.    Plaintiffs Must Plead Discriminatory Intent, But Have Failed to Do So. .................. 23

Plaintiffs fail to state an equal-protection claim because they nowhere allege facts that would demonstrate discriminatory intent. See, e.g., *Washington v. Davis*, 426 U.S. 229, 245–46 (1976); *Reform Am. v. City of Detroit, Mich.*, 37 F.4th 1138, 1152–53 (6th Cir. 2022). Alleged intentional discrimination is a required element, particularly as Plaintiffs have not alleged a facially discriminatory distinction on the basis of religion. See *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019); *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020).

**IV.    Count Five: The School District's Actions Do Not Infringe on the Free Exercise of Religion** ......................................................................................................................... 25

A.    Plaintiffs' Religious Rights Are Not Substantially Burdened .................................... 25

Plaintiffs have not plausibly alleged that the School District's accommodation substantially burdens their freedom to practice their religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). Plaintiffs are entitled to their beliefs regarding biological sex; they are not being forced to "affirm[] a repugnant belief," penalized for their religious beliefs, or "impede[d] [in] the observance" of a religious exercise. See S*herbert v. Verner*, 374 U.S. 398, 402, 404 (1963). They do not allege that they have ever been compelled to do anything against their religious beliefs. Nor does any of Plaintiffs' cited case law support their claimed right to control other students' actions or deny them accommodations.

B.    The School District's Accommodation Is Neutral and Generally Applicable ........... 27

Plaintiffs fail to plausibly allege that the School District's accommodation is not neutral and generally applicable. See *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990). It is true that the Free Exercise Clause "prohibits government officials from treating religious exercises worse than comparable secular activities." *Monclova Christian Acad. V. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 480 (6th Cir. 2020). But the distinction here is not between religious identity and secular identity, but between an accommodation request for equal access to communal restrooms, and a request to bar restroom access for others. The School District's policy is clearly neutral because it is not "specifically directed at . . . religious practice," does not "discriminate[] on its face," and "religious exercise is [not] otherwise its object." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (internal citations and editing marks omitted).

C.    Plaintiffs Have Neither Pled Nor Identified Any Indicia of Religious Hostility ........ 28

The alleged "irregularities" here are not irregular, and do not suggest that "a law is being used to suppress religious beliefs." *Meriwether v. Hartop*, 992 F.3d 492, 514 (6th Cir. 2021). First, Plaintiffs argue that the School District's stated basis for granting the accommodation has changed over time, and that the accommodation itself lacks consistency, but they have pled no facts that might support this conclusion. Second, Plaintiffs argue that the administration's investigation into a purported incident involving Anne Roe was supposedly insufficient. That incident was not alleged in the Complaint, see *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021), and in any event did not pertain to Plaintiffs or to religion. Animus cannot simply be assumed by the presence of a condition, event, or outcome that Plaintiffs did not prefer.

D.    Strict Scrutiny Is Also Not Warranted Under the Ohio Constitution ......................... 32

Coercive impact is required for strict scrutiny to apply, and Plaintiffs have not pled such impact. *State v. Wisener*, 204 N.E.3d 124, 137 (Ohio 2022). Plaintiffs' case law is inapposite. They have not alleged that the School District's accommodation allows them to do, or not do, anything.

**V.    Even If Strict Scrutiny Applies, the School District's Accommodation Is Narrowly Tailored to the Compelling Governmental Interests of Health and Safety and Eliminating Discrimination** ................................................................................................. 33

The School District's accommodation was in furtherance of several compelling interests. Student health and safety have been deemed compelling governmental interests. E.g., Dahl v. *Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 735 (6th Cir. 2021); *State v. Polk*, 78 N.E.3d 834, 844 (Ohio 2017), and the School District's accommodation was justified in seeking to protect these interests for Anne Roe. The Supreme Court has made clear that combatting discrimination is a compelling interest "of the highest order." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984); see also *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983). The accommodation was narrowly tailored to these ends. Plaintiffs' arguments to the contrary are unpersuasive, as other

possibilities do not achieve the requisite ends or simply reinstitute the discrimination that is sought to be avoided.

**CONCLUSION** ................................................................................................................... **35**

# TABLE OF AUTHORITIES

**Cases**

*Am. Coll. of Pediatricians v. Becerra*,
    No. 1:21-CV-195, 2022 WL 17084365 (E.D. Tenn. Nov. 18, 2022) ........................................ 8
*Andrews v. City of Mentor*,
    11 F.4th 462 (6th Cir. 2021) ................................................................................ 20, 21, 24
*Arnold v. Bd. of Educ. of Escambia Cnty.*,
    880 F.2d 305 (11th Cir. 1989) ................................................................................... 13
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 4
*Balcar v. Smith*,
    No. 3:16-cv-P428-DJH, 2017 WL 380931 (W.D. Ky. Jan. 26, 2017) .................................. 22
*Bangura v. City of Phila.*,
    No. 07-127, 2008 WL 934438 (E.D. Pa. Apr. 1, 2008) ....................................................... 13
*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
    481 U.S. 537 (1987) .................................................................................................. 34
*Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*,
    208 F. Supp. 3d 850 (S.D. Ohio 2016) ...................................................................... 7
*Bishop v. Lucent Tech.*,
    520 F.3d 516 (6th Cir. 2008) ..................................................................................... 4
*Blau v. Ft. Thomas Pub. Sch. Dist.*,
    401 F.3d 381 (6th Cir. 2005) ........................................................................... passim
*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1983) .............................................................................................. 32, 34
*Brown v. Hot, Sexy and Safer Prods., Inc.*,
    68 F.3d 525 (1st Cir. 1995) ................................................................................... 16, 20
*Cherry v. LeDeoni*,
    No. 99 CV 6860, 2002 WL 519717 (E.D.N.Y. Mar. 31, 2002) ............................................. 13
*Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*,
    612 F. App'x 836 (6th Cir. 2015) .............................................................................. 3, 20
*Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*,
    492 U.S. 573 (1989) .................................................................................................. 7
*Crawford v. Medina Gen. Hosp.*,
    96 F.3d 830 (6th Cir. 1996) ...................................................................................... 30
*Crowley v. McKinney*,
    400 F.3d 965 (7th Cir. 2005) ................................................................................. 13, 17
*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ..................................................................................... 20
*Dahl v. Bd. of Trs. of W. Mich. Univ.*,
    15 F.4th 728 (6th Cir. 2021) .................................................................................. 27, 34
*Dodds v. U.S. Dep't of Educ.*,
    845 F.3d 217 (6th Cir. 2016) ...................................................................................... 7
*Doe v. Snyder*,
    101 F. Supp. 3d 672 (E.D. Mich. 2015) ....................................................................... 34

*Edwards v. Aguillard,*
    482 U.S. 578 (1987)........................................................................................... 19
*EJS Props., LLC v. City of Toledo,*
    698 F.3d 845 (6th Cir. 2012) ............................................................................ 21
*Emp. Div., Dep't of Hum. Res. of Or. v. Smith,*
    494 U.S. 872 (1990).................................................................................... 17, 25
*Evancho v. Pine-Richland Sch. Dist.,*
    237 F. Supp. 3d 267 (W.D. Pa. 2017) ................................................................ 9
*Fields v. Palmdale Sch. Dist.,*
    447 F.3d 1187 (9th Cir. 2006) .......................................................................... 16
*Grimm v. Gloucester Cnty. Sch. Bd.,*
    302 F. Supp. 3d 730 (E.D. Va. 2018) ................................................................. 8
*Hanover Ins. Co. v. American Engineering Co.,*
    105 F.3d 306 (6th Cir. 1997) .............................................................................. 7
*Humphrey v. Lane,*
    728 N.E.2d 1039 (Ohio 2000).......................................................................... 32
*J&R Mktg., SEP v. Gen. Motors Corp.,*
    549 F.3d 384 (6th Cir. 2008) ............................................................................ 15
*Jackson v. Birmingham Bd. Of Educ.,*
    544 U.S. 167 (2005)............................................................................................ 3
*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.,*
    No. 8:20-3552-PWG, 2022 WL 3544256 (D. Md. Aug. 18, 2022)........................ 12
*Jones v. Boulder Valley Sch. Dist. RE-2,*
    No. 20-cv-03399-RM-NRN, 2021 WL 5264188 (D. Colo. Oct. 4, 2021)................ 23
*Kennedy v. Bremerton Sch. Dist.,*
    142 S. Ct. 2407 (2022).................................................................................. 25, 28
*Kissinger v. Bd. of Tr. of Ohio State Univ.,*
    5 F.3d 177 (6th Cir. 1993) .......................................................................... 16, 17
*Koger v. Mohr,*
    964 F.3d 532 (6th Cir. 2020) ............................................................................ 24
*Kyle v. Skipper,*
    No. 21-1632, 2022 WL 13638333 (6th Cir. Oct. 7, 2022) ................................ 23
*Leebaert v. Harrington,*
    332 F.3d 134 (2d Cir. 2003)................................................................ 15, 16, 17, 20
*Littlefield v. Forney Indep. Sch. Dist.,*
    268 F.3d 275 (5th Cir. 2001) ...................................................................... 16, 20
*Living Water Church of God v. Charter Twp. of Meridian,*
    258 F. App'x 729 (6th Cir. 2007) ..................................................................... 25
*Maye v. Klee,*
    915 F.3d 1076 (6th Cir. 2019) .......................................................................... 24
*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ................................................................ 29, 30, 31
*Moderwell v. Cuyahoga Cnty.,*
    997 F.3d 653 (6th Cir. 2021) ............................................................................ 30
*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't,*
    984 F.3d 477 (6th Cir. 2020) ............................................................................ 28

*Mounla-Sakkal v. Youngstown Hosp. Ass'n*,
  No. 4:98CV2251, 2000 WL 33911296 (N.D. Ohio May 18, 2000) ........................................ 31
*Mozert v Hawkins Cnty. Bd. of Educ.*,
  827 F.2d 1058 (6th Cir. 1987) ...................................................................................................... 27
*Nordlinger v. Hahn*,
  505 U.S. 1 (1992) ............................................................................................................................ 21
*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ........................................................................................... 15, 16, 20
*Pleasant View Baptist Church v. Beshear*,
  838 F. App'x 936 (6th Cir. 2020) ................................................................................................ 17
*Prater v. City of Burnside, Ky.*,
  289 F.3d 417 (6th Cir. 2002) ........................................................................................................ 17
*Reform Am. v. City of Detroit*,
  37 F.4th 1138 (6th Cir. 2022) .................................................................................................. 21, 24
*Ricard v. USD 475 Geary Cnty., Kan. Sch. Bd.*,
  No. 522-cv-04015-HLT-GEB, 2022 WL 1471372 (D. Kan. May 9, 2022) ..................... 11, 12
*Russell v. Tenn. Dep't. of Corr.*,
  99 F. App'x. 575 (6th Cir. 2004) .................................................................................................. 4
*Sault Ste. Marie Tribe of Chippewa Indians v. United States*,
  9 F. App'x. 457 (6th Cir. 2001) .................................................................................................... 3
*Schmidt v. Des Moines Pub. Sch.*, 4:08-CV-477, 2010 WL 11493827 (S.D. Iowa Sept. 23, 2010)
  .......................................................................................................................................................... 13
*Sherbert v. Verner*,
  374 U.S. 398 (1963) ........................................................................................................................ 26
*Soule by Stanescu v. Connecticut Ass'n of Sch., Inc.*,
  No. 3:20-CV-00201 (RNC), 2021 WL 1617206 (D. Conn. Apr. 25, 2021), *aff'd*, 57 F.4th 43
  (2d Cir. 2022) .................................................................................................................................... 8
*State v. Cook*,
  No. 5-19-26, 2020 WL 615076 (Ohio Ct. App. Feb. 10. 2020) ............................................. 32
*State v. Polk*,
  78 N.E.3d 834 (Ohio 2017) ........................................................................................................... 34
*State v. Whisner*,
  351 N.E.2d 750 (Ohio 1976) ......................................................................................................... 33
*State v. Wisener*,
  204 N.E.3d 124 (Ohio 2022) ......................................................................................................... 32
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................................................ 3
*Steffel v. Thompson*,
  415 U.S. 452 (1974) .......................................................................................................................... 6
*Swanson v. Guthrie Indep. Sch. Dist. No. I-L*,
  135 F.3d 694 (10th Cir. 1998) ........................................................................................... 11, 17, 20
*Tatel v. Mt. Lebanon Sch. Dist.*,
  No. CV 22-837, 2022 WL 15523185, (W.D. Pa. Oct. 27, 2022) ........................................... 14
*Troxel v. Granville*,
  530 U.S. 57 (2000) ................................................................................................................ 10, 11, 12
*United Food & Com. Workers, Loc. 1995 v. Kroger Co.*,

51 F.4th 197 (6th Cir. 2022) ................................................................................................ 19

*Veoh Networks v. UMG Recordings*,
 522 F. Supp. 2d 1265 (S.D. Cal. 2007) ............................................................................... 6

*Washington v. Davis*,
 426 U.S. 229 (1976) .................................................................................................... 20, 24

*Watchtower Bible & Tract Soc. of New York v. Vill. of Stratton, Ohio*,
 240 F.3d 553 (6th Cir. 2001) ...................................................................................... 11, 17

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
 485 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................................... 8

*William G. Wilcox, D.O., P.C. Emps.' Defined Ben. Pension Tr. v. United States*,
 888 F.2d 1111 (6th Cir. 1989) ............................................................................................. 7

*Wilson v. Williams*,
 No. 4:20-cv-00794, 2020 WL 2308441 (N.D. Ohio May 8, 2020) .......................................... 7

*Wisconsin v. Yoder*,
 406 U.S. 205 (1972) .................................................................................................... 11, 16

*Yaacov v. Mohr*,
 No. 16-4361, 2018 WL 6333604 (6th Cir. Jun. 5, 2018) ...................................................... 27

*Yerkes v. Ohio State Highway Patrol*,
 455 F. Supp. 3d 523 (S.D. Ohio 2020) ................................................................................. 8

## Other Authorities

Antonin Scalia, *The Rule of Law as a Law of Rules*,
 56 U. Chi. L. Rev. 1175 (1989) ........................................................................................... 9

## **INTRODUCTION**

Plaintiffs open their response brief with a series of non sequiturs, couched in the rather apocalyptic rhetoric that marks much of their brief. Anne Roe has never argued that she has standing to bring a Title IX claim when Plaintiffs do not, nor has she brought such a claim. Anne's parents have not asserted parenting-rights claims, much less suggested that they "get to direct [her] education and upbringing but Plaintiffs' parents do not." Anne simply maintains that the parent Plaintiffs do not have the right to direct *Anne's* education. Certainly no one has come close to suggesting that "schools are permitted to discriminate against those who disagree with [Anne]."

Although Plaintiffs denounce at great length the School District's understanding of Title IX—which happens to align with the Sixth Circuit's and the Southern District of Ohio's interpretations in the only pertinent case law from either court—and although they insist that Anne would not be able to prevail in a hypothetical Title IX claim of her own under different circumstances, this case is not about either of those things. It is about whether any of the constitutional protections that Plaintiffs invoke grant them the affirmative power to require that a public school categorically exclude transgender students from communal restrooms matching their gender.

None of the array of constitutional rights raised in this case functions that way, leaving Plaintiffs with no valid constitutional claim. The fundamental parenting right does not give parents a right to manage schools, nor to interrogate them. Equal protection does not require that Plaintiffs obtain their preferred policy outcomes—regardless of how coercive their preferred outcomes may be on other students—merely because someone else obtained an accommodation. And free exercise of religion does not grant Plaintiffs a license to compel other students' conduct and accommodations in order to comport with Plaintiffs' religious beliefs.

1

Plaintiffs' Title IX claim remains fatally hollow. As Plaintiffs have conceded before, their Complaint does not lay claim to any relief that is *provided by* Title IX. Rather, they would like this Court to weigh in on a hypothetical dispute *about* Title IX: if the School District had refused Anne Roe's restroom accommodation, and if she had sued under Title IX—neither of which has happened or appears likely to happen—who would have prevailed? Even were this Court to disregard Sixth Circuit precedent and answer that question in Plaintiffs' favor, it would change nothing. At most, it would hand Plaintiffs a bargaining chip to use in the efforts to persuade the School District to change its mind. Federal courts do not issue advisory opinions, especially not for that purpose.

Plaintiffs' Title IX claim should be dismissed for lack of standing, as should the parent Plaintiffs' state and federal equal-protection and free exercise claims. The Court should enter judgment for Defendants on the merits of Plaintiffs' parenting rights claim, the student Plaintiffs' federal and state equal-protection claims, and the student Plaintiffs' federal and state free exercise claims.

## **ARGUMENT**

### I. **Count Two: Plaintiffs Have Not Pled a Title IX Violation, and Even If They Had, It Would Fail on Its Face**

#### A. Plaintiffs Did Not Plead a Title IX Violation

Once again, Plaintiffs argue that this Court should issue a declaratory judgment that would abstractly opine on what Title IX permits or does not permit a school district to do, but that would in no way redress Plaintiffs' alleged injury. Even now, Plaintiffs repeatedly concede that they are asking this Court to resolve whether Title IX "permits" their preferred resolution, rather than what it requires. ECF No. 81 at 14, 17, 18, 51. Critically, the Complaint does not allege that the School District has actually violated Title IX; rather, it merely seeks to attach the imprimatur of this

2

Court's authority to an opinion about what *would not* violate it. Delivering an advisory opinion of this nature would be reversible error, regardless of whether the opinion was correct on the abstract legal question. *See, e.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 9 F. App'x. 457, 460–61 (6th Cir. 2001); *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*, 612 F. App'x 836 (Mem.) (6th Cir. 2015). This Court should reject Plaintiffs' invitation to exercise "hypothetical jurisdiction," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and should dismiss Plaintiffs' Title IX claim for lack of standing for all the reasons set forth in in Anne Roe's Standing Brief, ECF No. 62, and her Motion for Judgment on the Pleadings, ECF No. 75.

Plaintiffs' brief simply reaffirms the fatally flawed nature of their claim. They seek an order that Title IX *permits* the School District to "maintain separate intimate facilities based on biological sex." ECF No. 81 at 19. But even if Plaintiffs prevailed on that claim, nothing would change. The School District would be entitled to continue to allow Anne Roe to use the girls' communal restroom. Alternatively, if Plaintiffs lost on their Title IX claim, nothing would change. The School District would be entitled to continue to allow Anne Roe to use the girl's communal restroom. For this reason, Plaintiffs' Complaint does not assert a Title IX claim that would redress the injuries that they have alleged and grant them the relief they seek.

Plaintiffs mischaracterize Anne Roe's arguments in favor of dismissal of Plaintiffs' Title IX claim. Anne does not dispute that Title IX creates a private right of action for those who actually allege that they have been subjected to discrimination on the basis of sex. *See Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 173 (2005) ("Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination."). The problem for Plaintiffs is that they have pled no such claim. Nowhere in Plaintiffs' complaint do they allege that they have been

subjected to discrimination on the basis of sex, nor have they pled any facts to support such an allegation. Instead, Plaintiffs claim that they are entitled to relief and that Title IX does not bar such relief. This is not a cause of action under Title IX.

      B.  <u>Even in Their Newly Raised Arguments, Plaintiffs Do Not Describe a Plausible Title IX Violation</u>

Plaintiffs' Opposition Brief attempts, for the first time and almost in passing, to articulate an argument that the School District has discriminated against them on the basis of sex. ECF No. 81, at 12 ("[T]he Board cannot deny the Plaintiffs the same benefit of safe and private intimate facilities that others enjoy, on the basis of sex."). But these theories are not pled in the Complaint, and even before *Ashcroft v. Iqbal*, this Court would not have been "required to either guess the nature of or a create a litigant's claim." *Russell v. Tenn. Dep't. of Corr.*, 99 F. App'x. 575, 577 (6th Cir. 2004) ("A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory") (quotations omitted and emphasis in original); *see also Bishop v. Lucent Tech.*, 520 F.3d 516, 521 (6th Cir. 2008) (the appropriate method for adding new allegations is not in an opposition brief, but by seeking to amend the complaint); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must clear the bar of "facial plausibility," including factual content allowing a court to draw a reasonable inference of the defendant's liability, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Count Two of Plaintiffs' Complaint alleges that they seek "a declaratory judgment that Title IX does not require Bethel to implement an intimate facility policy based on gender identity." ECF No. 1 at ¶ 107. Nowhere in this section of the Complaint do Plaintiffs allege that the School District has violated Title IX by discriminating against Plaintiffs on the basis of sex. Similarly, in their Brief in Support of Standing, Plaintiffs explain that they "seek a declaration that Title IX

permits a school to maintain biological sex separated intimate facilities" because, they allege, "Defendants are enforcing Title IX in a manner that disregards the text of the statute and is causing Plaintiffs' injuries, including violations of Plaintiffs' *Constitutional* rights." ECF No. 59 at 3 (emphasis added). Plaintiffs' Standing Brief did not argue that Defendants' are violating Title IX or discriminating against Plaintiffs on the basis of sex in violation of their rights under Title IX. Plaintiffs state in no uncertain terms, "Defendants (sic) atextual enforcement of Title IX is violating Plaintiffs' Constitutional rights, and causing other concrete and particularized harms." *Id.* at 4. Plaintiffs' Reply Brief in Support of Standing, again, did not allege a violation of Plaintiffs Title IX rights. ECF No. 67 at 2–5.

Even setting aside the fatal deficiencies in Plaintiffs' Complaint, Plaintiffs' new argument still fails to explain how they are treated differently from others of a different sex (or of the same sex), because of their sex. The student Plaintiffs and Anne Roe all have access to the communal facilities that align with their gender, and all have access to private facilities if they choose. Instead, all Plaintiffs demand is that the School District accept and enforce their preferred interpretation of what "sex" should mean for purposes of Title IX and to exclude Anne Roe and other transgender students from the restrooms on that basis; they do not allege any injuries arising from discrimination against them on the basis of sex. All of the injuries that Plaintiffs allege in support of their Title IX standing argument arise from their other constitutional claims. In other words, Plaintiffs continue to argue that the Defendants' *interpretation* of Title IX gives rise to constitutional injuries, not that the District has discriminated against them in violation of Title IX. While Plaintiffs correctly point out that violation of one's constitutional rights can establish Article III standing to *challenge* a statute whose enforcement is causing the constitutional violation, they

have brought no such challenge. They cite no case that supports their assertion that the alleged violations of their constitutional rights afford them standing *to assert a claim under* a statute.

Plaintiffs claim, for example, that they have standing to assert a Title IX claim because the School District is "enforcing Title IX" against them, citing *Steffel v. Thompson*. 415 U.S. 452, 454 n.1 (1974). However, *Steffel* involved a plaintiff's direct challenge to a criminal statute, the violation of which subjected the plaintiff to repeated threats of criminal prosecution. The plaintiff sought declaratory and injunctive relief under the federal constitution—*not* under the criminal statute itself—challenging the statute and its application to him that resulted in his being threatened with criminal prosecution for constitutionally protected activities. The plaintiff had standing because his constitutional rights were threatened by "threats of prosecution that cannot be characterized as 'imaginary or speculative.'" *Id.* at 459–60 (internal citation omitted). He had standing for constitutional claims, not a claim under the criminal statute; further, it required an immediate threat to his rights.

As Plaintiffs acknowledged at the February 7 hearing in this matter, they believe that the School District should elect to change its course. To persuade it to do so, they want this Court to preemptively adjudicate any litigation that might be brought against the School District by Anne Roe or a similarly situated person, to bolster support for Plaintiffs' political position. *See* Hearing Transcript, ECF No. 56, at 62:9–63:1 (criticizing the School District for purportedly not "want[ing] clarity so that they act—so that they could make decisions off of it"). That is an improper use of declaratory judgment actions. *See Veoh Networks v. UMG Recordings*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (dismissing a declaratory judgment claim where "[b]ecause Plaintiff's action, jurisdictionally and on the merits, is so ill-defined, the Court suspects its use is more a bargaining chip than a sincere prayer for relief").

6

C.  Plaintiffs Are Incorrect on the Merits of Title IX

Finally, even if this issue were before this Court, which it is not, this circuit has already recognized that discrimination against transgender people is a form of sex-based discrimination prohibited by Title IX. *See Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 865–71 (S.D. Ohio 2016).

Plaintiffs argue that *Dodds* was "not even the law of the case." ECF No. 81 at 22. That is plainly overstated. The law of the case doctrine stops a court from reconsidering issues identical to those already considered, whether the issue was explicitly or implicitly decided. The *Dodds* court found that, even on the extensive fact record before it, the school board had failed to establish likelihood of success. That ruling necessitated a finding on a discrete legal issue, that "transgender students are entitled to access restrooms for their identified gender." 845 F.3d at 221. The district court would not have been free simply to disregard that ruling in later proceedings. *E.g.*, *Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 2308441, at *1 (N.D. Ohio May 8, 2020) (citing *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997)); *see also Wilson*, 2020 WL 2308441, at *1 ("[T]he Sixth Circuit necessarily decided the legal issues underpinning a stay determination."). Plaintiffs' case law does not provide otherwise; it merely provides that a party's entire case is not permanently foreclosed at the preliminary injunction phase, as they have the opportunity to gather and present evidence at later stages. *See William G. Wilcox, D.O., P.C. Emps.' Defined Ben. Pension Tr. v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989).

Moreover, it is axiomatic that lower courts are bound not only by direct holdings of appellate courts, but by their "mode of analysis." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989); *see also Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) ("As a general rule, the principle of stare decisis

7

directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.") (Kennedy, J., concurring in part and dissenting in part). The overwhelming weight of existing caselaw strongly supports the recognition that *Dodds* is the law that would govern and resolve a Title IX claim if Plaintiffs had standing to assert it.

Applying those principles, numerous federal district courts both within and beyond the Sixth Circuit have recognized that the decision in *Dodds* resolved this question based on settled law: Discrimination against a transgender person for failure to conform to gender-stereotypes associated with their sex assigned at birth is sex-based discrimination. *Am. Coll. of Pediatricians v. Becerra*, No. 1:21-CV-195, 2022 WL 17084365, at *13 n.3 (E.D. Tenn. Nov. 18, 2022) ("[The Sixth Circuit] held the school district did not show a likelihood of success on appeal because 'settled law in this Circuit' reflected that '[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination.'"); *Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 540–41 (S.D. Ohio 2020) (recognizing that "the Sixth Circuit referred to this law as 'settled'" in a case of discrimination based on transgender status); *Soule by Stanescu v. Connecticut Ass'n of Sch., Inc.*, No. 3:20-CV-00201 (RNC), 2021 WL 1617206 at *10 (D. Conn. Apr. 25, 2021), *aff'd*, 57 F.4th 43 (2d Cir. 2022) ("Courts across the country have consistently held that Title IX requires schools to treat transgender students consistent with their gender identity."); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 42 (D.D.C. 2020) (observing that the Sixth Circuit has "concluded that Title IX prohibits discrimination based on sex stereotyping or gender identity"); *Grimm v. Gloucester Cnty. Sch. Bd.*, 302 F. Supp. 3d 730, 741 (E.D. Va. 2018) ("The Sixth and Seventh Circuits have since held that excluding boys and girls who are transgender from the restrooms that align with their gender identity may subject them to discrimination on the basis of sex under Title IX, the Equal Protection Clause, or both.");

8

*Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 285–86 (W.D. Pa. 2017) (the Sixth Circuit "recently concluded, for these analytical purposes, that discrimination based on transgender status in these circumstances is essentially the epitome of discrimination based on gender nonconformity, making differentiation based on transgender status akin to discrimination based on sex for these purposes").

## II.  Count Three: The Fundamental Parenting Right Cannot Be Used to Coerce Plaintiffs' Desired Actions by the School District

Naturally, Anne Roe does not dispute that the Constitution guarantees the parent Plaintiffs a fundamental parenting right. *See* ECF No. 75 at 9. Nor does Anne Roe dispute the unremarkable proposition that it is possible for fundamental rights to be burdened to an impermissible degree. These are hardly the revealing concessions that Plaintiffs tout them to be in their Opposition Brief. More to the point, simply declaring a right to be burdened does not make it so. Plaintiffs have cited no authority applying the parenting right to compel responses to argumentative and hypothetical questions or to create a parental veto over school accommodations or curriculum. Indeed, they have cited no authority even *suggesting* that those things might be encompassed by the parenting right.

Plaintiffs' argument on this claim turns substantially on their choice not to quote a full sentence, to strikingly misleading effect. It is true, as Plaintiffs stress four times and with emphasis, that the Sixth Circuit in *Blau* stated that the parenting right "plainly extends to the public school setting[.]" *Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005); *see* Opposition, ECF No. 81 at ii, 20, 27. Plaintiffs neglect to mention that the full sentence reads: "*And while this right* plainly extends to the public school setting, *it is not an unqualified right*." *Blau,* 401 F. 3d 381. (emphasis added). The opinion immediately goes on to add: "The critical point is this: While parents may have a fundamental right to decide whether to send their child to a public school, they

do not have a fundamental right generally to direct how a public school teaches their child." *Id.* And the next sentence after that reinforces that this principle extends to all manner of operations, including "the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code." *Id.* at 395–96.

Plaintiffs are splitting hairs to no meaningful purpose. Anne Roe has never disputed that the parenting right may extend to the public school context. Rather, the right simply does not operate in the manner that Plaintiffs claim. It does not allow Plaintiffs to reach into the school to dictate educational policies, control day-to-day operations, or compel responses to interrogatories. That is true whether or not Plaintiffs' demands arise from their religious beliefs.

### A. Plaintiffs Point to No Authority Supporting a Parental Right to Information on Demand

Although Plaintiffs deny that they are asserting an "unmoored Constitutional right to information from schools," ECF No. 81 at 23, they offer no precedent to which it could be tethered. Their position remains just as was addressed in Anne Roe's motion: they claim that because parents have a right to choose not to send their children to public school, the school is somehow required to affirmatively facilitate their exercise of that right, including—but presumably not limited to—furnishing on demand whatever information Plaintiffs deem important to their choice of school. That theory has no grounding in law. *See* Motion, ECF No. 75 at 12.

No authority that Plaintiffs offer even gestures to their theory. *Troxel v. Granville*, for example, was a case about child visitation rights. The Court upheld an as-applied challenge to a state child custody statute, where the statute unduly interfered with a parent's custodial decisions. *See Troxel*, 530 U.S. 57, 66–67 (2000). The plurality noted the legal presumption that "fit parents act in the best interests of their children," and held that so long as a parent remains fit, "there will

normally be no reason for the State to inject itself into the private realm of the family" at the parent's expense. *Id.* at 68. *Wisconsin v. Yoder* was a free exercise decision, in which the Court held that the state could not compel Amish children to attend traditional public or private schools for formal education after eighth grade, against their and their parents' wishes—where doing so not only violated core religious precepts, but literally threatened the existence of the entire Amish community's way of life, and utterly prevented parents from "direct[ing] the religious upbringing of their children." 406 U.S. 205, 233 (1972). Neither case suggests a parental right to demand information from a school.

Simultaneously invoking religious interests does not somehow radically expand the basic boundaries of the fundamental parenting right, as Plaintiffs argue. "[I]t cannot be true that a plaintiff can simply invoke the parental rights doctrine, combine it with a claimed free-exercise right, and thereby force the government to demonstrate the presence of a compelling state interest." *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 700 (10th Cir. 1998); *Watchtower Bible & Tract Soc. of New York v. Vill. of Stratton, Ohio*, 240 F.3d 553, 561 (6th Cir. 2001) ("we do not believe the Court … [has] ever held[] that a different level of scrutiny applies to laws that potentially affect hybrid rights"), *rev'd on other grounds*, 536 U.S. 150 (2002); *see also infra* at 16–17 (further discussing Plaintiffs' incorrect interpretation of *Yoder* and the rejected "hybrid" rights theory). Plaintiffs point to an out-of-circuit free-exercise decision in a preliminary injunction posture, where a district court opined that a school did not have a compelling interest supporting its policy that staff conceal information about students from their parents. *See Ricard v. USD 475 Geary Cnty., Kan. Sch. Bd.*, No. 522-cv-04015-HLT-GEB, 2022 WL 1471372, at *7–8 (D. Kan. May 9, 2022). But that case is inapposite here, for the simple reason that the fundamental parenting

right is not burdened in this case, where the school has done nothing to interfere with the parent Plaintiffs' relationship with their children.

At the most basic level, Plaintiffs' claim of a burdened parental right fails because they do not allege that the School District has actually *done* anything that could conceivably constitute "inject[ing] itself into the private realm of the family[.]" *Troxel*, 530 U.S. at 68. Plaintiffs have alleged no policy even requiring, for example, that school staff go out of its way to conceal any particular information. Though their brief employs rhetorical flourishes to describe the School District as "withholding" or "hiding" something, *see* ECF No. 81 at 23, 24 n.5, they have alleged no such action. They claim only that the School District has not yet responded to a collection of questions that may or may not have even been asked. *See* Complaint, ECF No. 1 at ¶ 98 ("Thus far, the Board has not answered these questions"); *but see* Motion, ECF No. 75 at 10 n.2 (noting that Plaintiffs do not clarify whether these questions have actually been posed). Even in *Ricard*, unlike here, the school policy affirmatively required its staff to "withhold or conceal" information—transgender students' preferred names and pronouns—that the court found would ordinarily be disclosed in passing in any conversation with parents. *See* 2022 WL 1471372, at *1 (noting the teacher's religious belief that "the Bible prohibits dishonesty and lying"), *id.* at *7–8; *see also John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 8:20-3552-PWG, 2022 WL 3544256, at *14 n.14 (D. Md. Aug. 18, 2022) (distinguishing *Ricard*).

*Ricard* is an outlier case, and moreover, unlike the situation here, it involved policies forbidding disclosures of information. In that respect it much more closely resembles the school's coercive action in *Arnold v. Board of Education of Escambia County* than Plaintiffs' claim here does. *See* Motion, ECF No. 75 at 12 (discussing *Arnold*). Plaintiffs here are seeking not freedom from coercion, but a right to demand answers to questions, which *Arnold* declined to provide. 880

F.2d 305, 314 (11th Cir. 1989). As Plaintiffs do here, the parents in *Arnold* claimed that the school's actions had run afoul of the "fundamental values and religious beliefs parents wish to instill in their children," a claim that still did not constitutionally entitle them to demand information from staff. *Id.* at 312. Plaintiffs attempt to sidestep *Arnold* on the basis that it was "not creating a global rule," *see* ECF No. 81 at 24 n.5, which rather misses the point. As noted in Anne Roe's Motion, numerous federal courts have examined fundamental parental rights to information, and have followed the same distinction. None has found that a parent has a constitutional right to demand information from schools, on a religious basis or otherwise, and many have found that such a right does not exist.[1]

Indeed, Plaintiffs' particular claim is even farther afield from *Ricard* or *Arnold* than a general right to information would be, because the "common sense questions" Plaintiffs raise are a mixture of hypothetical questions and thinly veiled protestations. *See e.g.*, Compl. ¶ 97(i) (asking "How Bethel is addressing the promotion of LGBTQ+ beliefs among students."). Plaintiffs do not allege that any transgender student is actually using a communal locker room, that any transgender adult is using communal restrooms matching their gender identity, that any transgender adult or

---

[1] Plaintiffs' other attempts to distinguish the ample precedent in this area also fail. For example, the Seventh Circuit in *Crowley* expressly stated that even assuming noncustodial parents held equal rights to custodial parents, the plaintiff's claim would fail because no general right to information was recognized. *Crowley v. McKinney*, 400 F.3d 965 (7th Cir. 2005). *Bangura v. City of Philadelphia* drew no distinction between custodial or noncustodial parents, holding that *no* parent had a "*constitutional* right to obtain information regarding her child's education[.]" No. 07-127, 2008 WL 934438, at *4 (E.D. Pa. Apr. 1, 2008) (emphasis original). *Schmidt v. Des Moines Public Schools* goes even further, expressly noting that its ruling would extend to custodial parents. 4:08-CV-477, 2010 WL 11493827, at *6 (S.D. Iowa Sept. 23, 2010) ("plaintiff has identified no authority recognizing that these rights are protected by the Constitution … even for a parent with full custodial rights"). *Cherry v. LeDeoni* does not turn on custodial or carceral status, but on the fact that mere denial of information was not "injection by Defendants into the private realm of the family," in the way that *Yoder*'s schooling requirement or *Meyer*'s language restrictions were. No. 99 CV 6860, 2002 WL 519717, at *7 (E.D.N.Y. Mar. 31, 2002).

student is using communal restrooms matching their gender identity at sporting events, or that high school students are using elementary school restrooms. *See* Compl. ¶ 97(a)-(d). They also do not allege that the School District actually has policies, or preexisting interpretations of policies, that govern any of these matters but that it is refusing to disclose. They nonetheless demand that the school speak to each of these matters: in effect, demanding that the school devise policies on request, or provide advance answers as to how it would resolve incomplete hypothetical scenarios.

The remainder of Plaintiffs' "questions" are also no mere requests for information: They imply that a novel "safety plan" is now needed for restrooms; that faculty, staff, and students need unspecified additional clarity on "who is allowed" in restrooms; that overnight trips require special rules; and that the purported "promotion of LGBTQ+ beliefs among students" needs to be "address[ed]." *Id.* ¶ 97(e)-(i). These questions are hypothetical, argumentative, or both. Plaintiffs insist that they are "not trying to micromanage the Defendants," ECF No. 81 at 24 n.5, but their claim belies that. They are not requesting information, but arguing policy, and claiming a constitutional right to an answer that satisfies them.[2]

Plaintiffs' claim here is not a demand that the School District refrain from interfering in parental efforts to instill values in their children. Rather, they demand that the School District be enlisted through constitutional mandate to assist parents in instilling those values, in every manner that parents desire. To require the School District to respond to Plaintiffs' demands would upend a considerable body of jurisprudence, with no limiting principle.

---

[2] Plaintiffs' brief further tips their hand in this respect. They first claim that they need information on demand in order to "choose the school that is in the best interest of their child." *Id.* at 23. A page later, they suggest that private or home schooling is infeasible for them. *Id.* at 24 (citing *Tatel v. Mt. Lebanon Sch. Dist.*, No. CV 22-837, 2022 WL 15523185, at *21 (W.D. Pa. Oct. 27, 2022)). In full context, their implication is not that they require information to make a choice, but that the *Meyer-Pierce* right entitles them to mold public schools to their liking. As discussed in the next section, that is patently not the case.

14

### B. Plaintiffs' Religion Provides No Basis to Direct School Restroom Policy

Next, Plaintiffs argue that despite the overwhelming authority denying a constitutional right for parents to control school administration, Plaintiffs' faiths afford them a particular right to control school policy with regard to restroom accommodation.

"The plaintiffs' expansive notion of the law comes from selective quotations from one of [the Sixth Circuit's] prior cases[.]." *J&R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 394 (6th Cir. 2008). As noted above, Plaintiffs deploy *Blau* in a deeply misguided fashion. The Sixth Circuit did not leave room for a constitutional parental right to direct how public schools educate the parents' children, but in fact held the opposite. *See supra* at 9-10. Plaintiffs argue that their religious beliefs—or in John Doe No. 9's case, his nonreligious desire to "instill in [his children] the traditional understanding of gender," ECF No. 81 at 30—create an exception to *Blau*'s rule. But *Blau* did not remotely suggest that religious beliefs created an exception, as Plaintiffs claim; it made only a passing mention in the course of recounting the facts that the plaintiffs had not made a religious claim, and did not touch on the matter again. *See* 401 F.3d at 386.

Plaintiffs simply ignore the great majority of the case law cited in Anne Roe's motion on this point, likely because many of those cases involved religious objections to public school practices or curricula, just like Plaintiffs' claim here. *See, e.g.*, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020) (rejecting parenting-rights challenge to school policy regarding transgender students' access to school restrooms and locker rooms, which the parents claimed interfered with their ability to impart their religious values and beliefs to their children); *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699–700 (10th Cir. 1998) (similar, as to school attendance policy); *Leebaert v. Harrington*, 332 F.3d 134, 137–38 (2d Cir. 2003) (similar, with religious objections to a health and family planning curriculum); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288–94 (5th Cir. 2001) (similar, as to a school uniform policy); *Brown v. Hot,*

15

*Sexy and Safer Prods., Inc.*, 68 F.3d 525, 529, 534 (1st Cir. 1995) (similar, as to an AIDS awareness program with sexually explicit content).[3]

      In lieu of addressing precedent, Plaintiffs attempt to bypass it with a flawed interpretation of *Wisconsin v. Yoder*, arguing that their religious interests allow them to exceed the boundaries of a fundamental parenting rights claim. Their argument fails for three reasons. First, *Yoder* involved a unique claim "that few other religious groups or sects could make," that compulsory school attendance after eighth grade posed an existential threat to the Amish community's way of life. *Leebaert*, 332 F.3d at 144 (quoting *Yoder*); *see also Swanson*, 135 F.3d at 700; *Brown*, 68 F.3d at 539. Second, *Yoder* provided limited relief: that the state could not compel students to go to school against their and their parents' will. 406 U.S. at 234–35. The Court most certainly did *not* hold that parents had a fundamental right to send their child to a public school and then require that school to adopt their preferred curriculum or policies. *See Kissinger v. Bd. of Tr. of Ohio State Univ.*, 5 F.3d 177, 180–81 (6th Cir. 1993) (distinguishing *Yoder* on that basis).

      Third, nothing in *Yoder* provides any plaintiff with license to combine a free-exercise claim with a parenting-rights claim in a manner that somehow mandates a higher degree of protection than either right would offer on its own. Plaintiffs are not the first to argue this "hybrid" theory; it finds its roots in an erroneous reading of *Yoder* and dicta from *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990). The Sixth Circuit has squarely rejected it on at least four

---

[3] Plaintiffs make much of the Ninth Circuit's clarification to *Fields v. Palmdale Sch. Dist.*, a case briefly mentioned in Anne Roe's motion to dismiss. *Compare* 401 F.3d 381 (6th Cir. 2005) *with* 447 F.3d 1187 (9th Cir. 2006). Their point is irrelevant. After a petition for rehearing *en banc*, the panel in *Fields* reaffirmed its decision with small amendments to "make our holding more precise." 447 F.3d at 1190. It refined rather than disclaimed its language that "the *Meyer-Pierce* right does not extend beyond the threshold of the school door." *Id.* at 1191. And *Parents for Privacy* reaffirms the relevant holding of *Fields*, "that parents not only lack a constitutional right to direct the curriculum that is taught to their children, but that they also lack constitutionally protected rights to direct school administration more generally." *Parents for Privacy*, 949 F.3d at 1231.

occasions. *Watchtower*, 240 F.3d at 561; *Kissinger*, 5 F.3d at 180 (calling the theory "completely illogical"); *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 940–41 (6th Cir. 2020) ("the Constitution is not a mixing bowl for rights that when considered in the aggregate are entitled to a higher level of scrutiny compared to when those exact same rights are viewed in isolation"); *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 430 (6th Cir. 2002) (quoting *Watchtower*); *see also Swanson*, 135 F.3d at 700; *Leebaert*, 332 F.3d at 144 (the court "can think of no good reason for the standard of review to vary simply with the number of constitutional rights that the plaintiff asserts have been violated").

The School District need not claim an "absolute fiefdom" to prevail, as Plaintiffs argue. There are obviously constitutional limits on any public institution's actions. But here, the parent Plaintiffs are refashioning a shield into a sword: asking this Court to find that their fundamental parenting right allows them to impose their preferences on other parents' children by way of the state, because anything else would purportedly inhibit the parent Plaintiffs' ability to impart their religious beliefs to their children to the fullest degree. That is a disturbing overapplication of the fundamental parenting right, categorically exceeding even what was provided in the extraordinary circumstances of *Yoder*. The Seventh Circuit dispensed with that idea in *Crowley v. McKinney*, holding that the parenting right "is not a right to participate in the school's management—a right inconsistent with preserving the autonomy of educational institutions, which is itself, as we have noted, an interest of constitutional dignity." 400 F.3d 965, 971 (7th Cir. 2005).

C. Plaintiffs' Objection to Unspecified "LGBTQ+ Beliefs and Values" Are Not the Basis of Any Plausible Parenting-Rights Claim

Plaintiffs next argue that the School District is interfering with their parental rights by "improperly promoting LGBTQ+ beliefs and values to their children." Opposition Brief, ECF No. 81 at 31–32.

17

Plaintiffs' claim here is conclusory and hopelessly muddled. Count Three of the Complaint makes no mention of "LGBTQ+ beliefs" or "values," except perhaps insofar as Plaintiffs mean to suggest that the School District's restroom accommodation is tantamount to imposing "values." Elsewhere in the Complaint, Plaintiffs allege that the School District "promote[s] LGBTQ+ beliefs to their children," though it is unclear whether that allegation connects with restrooms. *See* Compl. ¶ 68, 74. Their Opposition Brief cites Count Six of the Complaint—their claim under the Protection of Pupil Rights Amendment—rather than Count Three. *See* Opposition, ECF No. 81 at 32 (citing to Complaint ¶¶ 138, 140–41). They also argue that the School District assigns "required reading and surveys that . . . are designed to affect the children's behavioral, emotional, and attitudinal characteristics," which is language drawn from their PPRA claim, not their parenting-rights claim. *Id.*

The substance of Plaintiffs' concern is also extremely vague. They do not explain what the relevant "LGBTQ+ beliefs" or "values" entail, except that they are advanced by a "story about a queen who wanted to be a king." Compl. ¶ 75. In their Opposition, they make note of "required assignments lauding gender transitions[,]" but it is unclear whether this refers to the "queen who wanted to be a king," as it is unclear whether the queen in question undergoes any form of transition, or wants to, or is lauded for it. ECF No. 81 at 33. Plaintiffs categorize the alleged "LGBTQ+ beliefs" in some places as part of the curriculum, *see id.* at 32 ("required reading and surveys"), and elsewhere as expressly *not* part of the curriculum, *see* Compl. ¶ 68 ("LGBTQ+ beliefs . . . that are not related to the school curriculum"). Perhaps resolving this discrepancy, Plaintiffs describe these beliefs as outside of what they deem a "proper curriculum." *Id.* at 31.

Whatever may be included in this category of "LGBTQ+ beliefs and values," the Muslim Plaintiffs argue that exposure to it is not materially different from being "forc[ed] . . . to listen to

18

lectures about the divinity of Jesus Christ." *Id.* at 32. They couple this analogy with a quote from *Edwards v. Aguillard*, an Establishment Clause decision, though they have not pled an Establishment Clause violation. *See id.* (citing *Edwards*, 482 U.S. 578, 584 (1987)); *see also* ECF No. 81. at 33 (decrying "views . . . that have an undeniable tie to religious questions"). Rather dramatically, Plaintiffs elsewhere declare that by allegedly espousing beliefs to which Plaintiffs object, the School District has descended to the status of an ancient Spartan *agoge*, with students in figurative "barracks" under the eye of figurative "official guardians." *Id.* at 28.

Perplexingly given the degree of harm they claim to have suffered, Plaintiffs hasten to add that they will add clarity only after a "developed record" and "discovery." *Id.* at 31, 33. In the meantime, they rely on an outright up-is-down argument: that the very absence of any offending curricular or extracurricular materials from the School District, or any relevant policies governing "the promotion of LGBTQ+ beliefs among students," somehow indicates that such materials plausibly exist, because "people tend to want to hide improper behavior." *Id.* at 33.

Plaintiffs have not come close to alleging a plausible parenting-rights claim here. *See United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (courts need not "blindly accept legal conclusions"). To the extent that they are confusing Count Six (PPRA) with Count Three (Parenting Rights), Anne Roe has taken no position on the former, and does not do so now. To the extent that Plaintiffs are arguing that the School District's restroom accommodation constitutes advancing unwanted "beliefs" or "values," that claim fails for the same reasons as noted above for restroom accommodations generally. *See, e.g.*, *Blau*, 401 F.3d at 395; *Swanson*, 135 F.3d at 699–700; *Leebaert*, 332 F.3d at 137–38; *Littlefield*, 268 F.3d at 288–94; *Brown*, 68 F.3d at 534; *Parents for Privacy*, 949 F.3d at 1217. Finally, to the extent that Plaintiffs

argue that their religious objections to a secular school curriculum mean that the school curriculum is violating their parental rights, that claim fails for the same reason, under the same case law.

## III. <u>Count Four: Plaintiffs Fail to Allege Any Element of an Equal Protection Claim.</u>

Plaintiffs have failed to plausibly allege an equal-protection violation, and none of their arguments to the contrary hold water.[45] As Plaintiffs recite, "[t]o state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). But Plaintiffs have failed to plausibly allege that they were treated "disparately as compared to similarly situated persons," *id.*, and ignore the Supreme Court's instruction that discriminatory intent is a necessary element of an equal-protection claim. *See Washington v. Davis*, 426 U.S. 229, 245–46 (1976). On each element of the claim, Plaintiffs' allegations fail.

### A. <u>Two Protected Classes Are Not Similarly Situated in All Relevant Respects Merely Because They Are Protected.</u>

"To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). No one disputes the point that "courts should not demand exact correlation, but should instead seek relevant similarity,"

---

[4] As discussed in earlier briefing, the parent Plaintiffs' equal-protection claims should be dismissed for lack of standing. *See* ECF No. 62 at 11–13; ECF No. 75 at 17. *E.g.*, *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology*, 612 F. App'x 836 (Mem.) (6th Cir. 2015) (standing must be assessed before the merits).

[5] Plaintiffs do not dispute that their equal protection claims under the Ohio Constitution are subject to the same analysis in this context as their federal equal protection claims. *See* ECF No. 81 at 34.

*see* ECF No. 81 at 37 (quoting *Andrews*, 11 F.4th at 474), but Plaintiffs fail to even plausibly allege *relevant* similarity.

The basic theory Plaintiffs advance continues to be that religious students and transgender students are "all students at Bethel schools, eligible for the use of communal restroom facilities provided by the Defendants," and entitled to "equal educational opportunities as protected classes under" the school's nondiscrimination policy. Opposition Brief, ECF No. 81 at 38. None of these points are disputed. They simply fail to amount to anything even vaguely resembling groups that are similarly situated for purposes of Plaintiffs' equal-protection claims. The fact that both religious students and transgender students are members of classes protected from discrimination simply means that neither may be subject to discriminatory treatment *on the basis of* their membership in that protected class. It does not render members of each respective class similarly situated *to each other* for any and all purposes.

The purpose of the "similarly situated" inquiry is to assess whether there are material differences between groups that could justify differential treatment, or whether such differential treatment is based on group membership itself. *See, e.g.*, *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012); *Reform Am.*, 37 F. 4th at 1152. The clear material difference between groups here is that, had the School District declined to accommodate Anne Roe or any other transgender student, *only* transgender students would be excluded from access to communal restrooms in accordance with their gender identity. It is not the case that both groups were being denied such access, and the School District chose to grant access to only one group.

Plaintiffs' suggestion that "[t]he only real dissimilarity between the Plaintiffs and Roe in this case is that the Defendants and Roe want the law to apply differently to them," ECF No. 81 at 38, entirely inverts the facts before this Court. The plain material dissimilarity between the

Plaintiffs and Anne is that absent the School District's accommodation, only Anne would have been subject to differential treatment, and the accommodation thus constituted a step toward *equal* treatment. Indeed, Plaintiffs are the only parties to this litigation who seek to exclude a class of student from any particular setting or benefit on the basis of a protected characteristic.

B. Plaintiffs Demand Unequal Treatment, Not Equal Treatment.

Not only do Plaintiffs fail to plausibly allege a comparator group that is similarly situated for purposes of their claims, but they also fail to allege differential treatment of religious students. Plaintiffs argue that they have been subjected to differential treatment "because the school has chosen to selectively administer its nondiscrimination policy against the religious community, in favor of a different protected group." ECF No. 81 at 35. The basis for this assertion is the notion that the school district has provided some educational benefit to transgender students that it has denied to Plaintiffs. This is simply unsupported by their factual allegations.

The alleged disparate treatment is that the School District is "providing [communal restrooms] to transgender students in accordance with their perceived identity while denying the same to the religious students." *Id.* This is a truly baffling claim, given that Plaintiffs have and will continue to have access to this benefit: all students are equally able to use communal restrooms in accordance with their gender identity. What plaintiffs actually object to here is not disparate treatment—they instead "seemingly object[] to being treated the *same*." *See Balcar v. Smith*, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *6 (W.D. Ky. Jan. 26, 2017) (dismissing equal protection claim) (emphasis added). The fact that Plaintiffs couch their demand to exclude Anne in terms of Plaintiffs' own "identity" does not change the analysis.

Plaintiffs press the point that their preferences as to school policy were rejected, whereas the preferences of transgender students and their parents were adopted, as if this were enough to demonstrate differential treatment. *See* ECF No. 81 at 36. First, they provide no authority to

support the dubious—and staggeringly broad—implicit proposition that all classes of individuals are entitled to have their policy preferences implemented by the government to equivalent degrees, regardless of merits or substance. Second, Plaintiffs again ignore the critical difference between the requests made: Anne Roe has only ever sought equal access to communal restrooms, while Plaintiffs seek to impose restrictions on others by barring them from equal access. Third, Plaintiffs have failed to allege that the School District has treated them differently on the basis of religion, as is required to state an equal protection claim. *See Kyle v. Skipper*, No. 21-1632, 2022 WL 13638333, at *2 (6th Cir. Oct. 7, 2022). Plaintiffs do not allege that the School District adjusted its practices or policies for non-religious parents or students with similar objections, but not for Plaintiffs.

The argument that a school district "favors some parents because of their beliefs while disfavoring others because of their beliefs," where there is no allegation that non-religious parents with similar beliefs are receiving favorable treatment as compared to Plaintiffs, "makes little sense in terms of a denial of equal protection." *See Jones v. Boulder Valley Sch. Dist. RE-2*, No. 20-cv-03399-RM-NRN, 2021 WL 5264188, at *17–18 (D. Colo. Oct. 4, 2021). Plaintiffs' logic would support an equal protection claim anytime a governmental entity adopted a policy that is not the preferred policy of any member of any protected class—this cannot be the law. Equal protection is a vital tool for combatting discrimination; Plaintiffs invert every basic principle of equal protection law in arguing that they somehow have a right to compel the unequal treatment of others.

### C. Plaintiffs Must Plead Discriminatory Intent, But Have Failed to Do So.

Even aside from their failure to plausibly allege differential treatment as compared to a similarly situated group on the basis of religion, Plaintiffs fail to state an equal-protection claim because they nowhere allege facts that would demonstrate discriminatory intent. *See, e.g.*,

*Washington v. Davis*, 426 U.S. 229, 245–46 (1976); *Reform Am. v. City of Detroit, Mich.*, 37 F.4th 1138, 1152–53 (6th Cir. 2022). They do not plausibly allege that the School District's accommodation was motivated by a desire to treat religious students or parents differently, or to treat students or parents with certain religious beliefs differently. Instead, they seem to imply that alleging a burden on their fundamental rights somehow dispenses with the intent requirement of an equal-protection claim and automatically garners strict scrutiny. *See* ECF No. 81 at 38–39.

Plaintiffs have failed to plausibly allege a burden on any fundamental right. But even if they had, such an allegation would not negate the requirement of showing discriminatory intent. The cases Plaintiffs cite reveal that Plaintiffs' view of the law is completely unfounded. *Andrews v. City of Mentor* did not actually involve an argument that the City burdened a fundamental right, 11 F.4th 462, 473 (6th Cir. 2021), and both *Maye v. Klee* and *Koger v. Mohr* explicitly affirm the requirement of "invidious purpose." *See Maye*, 915 F.3d 1076, 1085 (6th Cir. 2019) ("Of course, to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required."); *Koger*, 964 F.3d 532, 544 (6th Cir. 2020) (same). As with claims alleging discrimination against a suspect class, a "*facially* discriminatory distinction" burdening religion can give rise to an inference of invidious purpose. *Maye*, 915 F.3d at 1086 ("[A] facially discriminatory distinction between the Nation of Islam and Al-Islam sects would burden Maye's fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred."); *Koger*, 964 F.3d at 545 (same). Here, Plaintiffs do not and cannot allege anything that could remotely be construed as a facially discriminatory distinction on the basis of religion; again, they do not allege any distinction at all on the basis of religion. Discriminatory intent thus must be pleaded, and Plaintiffs fail to do so.

## IV. **Count Five: The School District's Actions Do Not Infringe on the Free Exercise of Religion**

Next, Plaintiffs argue that their right to free exercise of religion has been infringed upon. Again, their allegations are insufficient to state a claim. The School District's accommodation does not substantially burden Plaintiffs' religious exercise and, in any event, is neutral and generally applicable, and thus is subject to rational basis review. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022) (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990). Plaintiffs also still fail to allege or describe any coercive effect, as would be required to invoke the free-exercise provision of the Ohio Constitution.

### A. Plaintiffs' Religious Rights Are Not Substantially Burdened

Plaintiffs have not plausibly alleged that the School District's accommodation substantially burdens their freedom to practice their religion. As the Sixth Circuit has noted, "[i]n the 'Free Exercise' context, the Supreme Court has made clear that the 'substantial burden' hurdle is high . . . [I]t has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).

Plaintiffs argue that the accommodation burdens their sincere religious beliefs because "it is incompatible with the Plaintiffs' sincerely held religious beliefs for the students to share intimate facilities with members of the opposite biological sex for reasons of modesty, privacy, and maintaining separateness between the biological sexes." ECF No. 81 at 41. But Plaintiffs are entitled to their beliefs regarding biological sex; they are not being forced to "affirm[] a repugnant belief," penalized for their religious beliefs, or "impede[d] [in] the observance" of a religious exercise. *See Sherbert v. Verner*, 374 U.S. 398, 402, 404 (1963). What they are not entitled to is to commandeer a public school to force those around them to conduct themselves according to

25

Plaintiffs' religious beliefs. Fundamentally that is the gravamen of Plaintiffs' free exercise claim—that the School District is substantially burdening their religious exercise by declining to exclude transgender students from equal access to communal restrooms consistent with their gender identity.

Plaintiffs argue that "[w]ithout any viable alternative, the Plaintiffs are being forced to share communal intimate facilities with members of the opposite biological sex" and allege a "coercive effect" in that "the Plaintiffs must adhere to LGBTQ+ orthodoxy or forego a long-standing educational benefit." Br. in Opp. 41–43. Even setting aside their failure to explain the meaning of "LGBTQ+ orthodoxy," *see supra* Section II.C, Plaintiffs have the same rights as all other students to use single-occupancy restrooms for any reason, should they elect to not use the communal restrooms. *See* Compl. ¶ 62; Bethel FAQ, ECF No. 39-6 at 1.[6] They do not allege that they have ever been compelled to do anything against their religious beliefs—only that they are in an environment where *others* are acting or existing contrary to Plaintiffs' religious beliefs. *See* Motion, ECF No. 75, at 41 (citing cases). Nor does any of Plaintiffs' cited case law support their claimed right to control other students' actions or deny them accommodations. In *Yaacov v. Mohr*,

---

[6] Plaintiffs have repeatedly assumed the mantle of speaking for a community of hundreds of students, claiming not only that each and every one of them shares Plaintiffs' views, but in the latest briefing that Plaintiffs are able to plausibly describe that entire community's restroom habits. *See, e.g.*, Opposition Brief, ECF No. 81 at 16–17. First, declaration testimony is immaterial for this motion, as it is not part of the pleadings. Second, this is not a class action, and Plaintiffs have no status or foundation that would allow them to speak for the interests or viewpoints of an entire community. Third, Plaintiffs do not allege that they themselves have routinely been unable to use single-occupancy restrooms, have experienced regular problems doing so, have any particular reason to think they *might* individually experience regular problems doing so, or even that they have *attempted* to do so. They allege, in conclusory fashion, only that the entire "large religious communit[y]" for which they claim to speak would find this accommodation "not truly workable." Compl. ¶ 64. It is worth noting that in Plaintiffs' own account, the status quo has been in effect for over a year, but they offer no more specific allegation. Fourth, and perhaps most telling for their free-exercise claim, Plaintiffs do not seek the relief of improved or additional single-occupancy restrooms. They seek the relief of excluding transgender students from the communal restrooms.

for example, an incarcerated plaintiff sought a kosher meal option; he did not seek to compel the prison to provide *only* kosher meals. *See* No. 16-4361, 2018 WL 6333604, at *1 (6th Cir. Jun. 5, 2018). *Dahl v. Bd. of Trs. of W. Mich. Univ.* provided that a mandatory intercollegiate sports vaccination policy burdened the plaintiffs' religious exercise, but nowhere did the Sixth Circuit suggest that plaintiffs had a right to determine others' vaccination status on the basis of religion. 15 F.4th 728, 732 (6th Cir. 2021).

Again, Plaintiffs' claim that "[t]his problem extends to the parents as well because raising their children in the faith is a fundamental part of the exercise of their own faith," ECF No. 81 at 41, cannot reasonably be entertained, as it would support an unprecedented form of vicarious standing. *See* ECF No. 62 at 13–15; ECF No. 75 at 24. And the substance underlying their theory of a substantial burden on Plaintiff parents' free exercise of religion similarly cannot be entertained. Their argument would permit a parent whose religious beliefs reject evolution to claim that it substantially burdens their free exercise right for a public school to teach evolution. That cannot be the law, and the Sixth Circuit has held as much. *See Mozert v Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058 (6th Cir. 1987) (public school requiring study of evolution does not burden objecting family's free exercise rights). Plaintiffs have failed to allege any actual burden on their free exercise of religion, and their claim thus fails as a matter of law.

B.  The School District's Accommodation Is Neutral and Generally Applicable

Even if they could satisfy the "substantial burden" prong of the free exercise inquiry, which they cannot, Plaintiffs would nonetheless fail to state a free exercise claim because they fail to plausibly allege that the School District's accommodation is not neutral and generally applicable. *See Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion

27

prescribes (or proscribes)." (internal quotation marks omitted)). Plaintiffs argue that the School District's accommodation is not neutral because "Defendants are providing some parents and students with important benefits in conformance with their proffered core identity while denying the same to the religious Plaintiffs" and "are treating the Plaintiffs' religious identity as less than Roe's gender identity." ECF No. 81 at 44–45.

It is true that the Free Exercise Clause "prohibits government officials from treating religious exercises worse than comparable secular activities." *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 480 (6th Cir. 2020). But the distinction here is simply not between religious identity and secular identity, or between religious preferences and secular preferences. Rather, it is between an accommodation request on the one hand for transgender students to have access on equal terms to communal restrooms—not to the exclusion of any other students—and a request on the other hand by Plaintiffs that seeks to bar restroom access for others. The School District's policy is neutral because it is not "specifically directed at . . . religious practice," does not "discriminate[] on its face," and "religious exercise is [not] otherwise its object." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (internal citations and editing marks omitted). Nor does it "prohibit[] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (internal citations and editing marks omitted). As discussed in the above analysis of Plaintiffs' equal protection claims, there is no allegation here that non-religious students or parents objecting to the School District's accommodation received any different treatment.

### C. Plaintiffs Have Neither Pled Nor Identified Any Indicia of Religious Hostility

Presumably recognizing that they have no plausible argument that the accommodation is not neutral or generally applicable, Plaintiffs turn to a haphazardly constructed argument that "this case bears the hallmarks of irregularity and indicia of religious hostility." *See* ECF No. 81 at 46.

28

This argument fails to salvage their claims. None of the allegations of "irregularity" that they identify in any way imply or give rise to an inference of religious hostility. Plaintiffs attempt to follow the argument structure of one case that they repeatedly cite in this section of their brief, *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), but the issues here simply are not analogous. None of the alleged "irregularities" here are in fact irregular, let alone a basis to infer that "a law is being used to suppress religious beliefs." *Meriwether*, 992 F.3d at 514.

First, Plaintiffs argue that the School District's stated basis for the accommodation has changed over time, and that the accommodation itself is inconsistent. But they have pled no facts that might support this conclusion. Unlike in *Meriwether*, the various justifications Plaintiffs point to here do not indicate any sort of pretext because they are perfectly consistent—all point toward the School District's motivation being to allow transgender students equal access to educational benefits. *See* ECF No. 81 at 46–47. It is even more difficult to understand how Plaintiffs can conceive of the accommodation itself as a "Moving Target" when it has never changed. *Id.* at 47.

*Meriwether* is indeed instructive—not in the manner that Plaintiffs suggest, but instead as a stark contrast to this case. In *Meriwether*, both the university's policy and the basis for enforcing it changed over time, making possible the inference that it was pretextual. The plaintiff was initially told that the policy prohibited refusals to use a student's preferred pronouns, *see* 992 F.3d at 498, but later was told he could comply by declining to use any "sex-based references" with regard to a transgender student, *id.* at 499, after which the school reversed course and told him that the policy *required* him to use the student's preferred pronouns and salutations. *Id.* at 500. The defendant's Title IX report initially claimed that the plaintiff had created a hostile educational environment for a student, then the school later conceded that he had not but had instead engaged in "disparate treatment," then it disavowed that claim at oral argument and stated that "this really

29

is a hostile-environment case." 992 F.3d at 514–15. There have been no such changes here. Plaintiffs repeatedly argue variations on the theme that the School District's accommodation "lacks consistency" because it is "provid[ing] communal restrooms in conformity with the transgender students' core identity" but "not providing them with communal restroom accommodations in support of their dignity or compatible with their core identity." ECF No. 81 at 47–48. This argument itself is flawed in numerous ways, *see supra* Section III.A–III.B, but to the point at hand here, it does not indicate irregularity or inconsistency. It indicates only that Plaintiffs disagree with the School District's interpretation and application of its policies.

Second, Plaintiffs argue that the administration's investigation into a purported incident involving Anne Roe was, in Plaintiffs' opinion, insufficient. Presumably they offer this claim again in an effort to mimic *Meriwether*. At the outset, nothing about that supposed incident was alleged in the Complaint, rendering it inappropriate for consideration in the present motion. *See Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (the "well-pleaded material allegations of the pleadings of the opposing party must be taken as true"). Further, the investigation analyzed in *Meriwether* pertained directly to the decision to discipline the employee; the investigation Plaintiffs reference had nothing to do with the School District's accommodation decision, nor did the investigation directly involve Plaintiffs themselves in any way. Animus cannot simply be assumed by the presence of a condition, event, or outcome that Plaintiffs did not prefer. *See, e.g.*, *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996) (dismissing age discrimination complaint brought by a plaintiff who "simply assumes, without objectively articulable support, that when she was insulted with age-neutral insults, it was because of her age"); *Mounla-Sakkal v. Youngstown Hosp. Ass'n*, No. 4:98CV2251, 2000 WL 33911296, at *15 (N.D. Ohio May 18, 2000) (applying *Crawford* similarly in the context of religious animus).

Plaintiffs argue that the School District's accommodation to Anne Roe violated the Open Meetings Act. They provide no authority to suggest that this would demonstrate animus towards religion, and their Complaint does not allege that it did. But even if they had, and even if their Open Meetings Act claim were plausible, Plaintiffs' theory here calls for a similar degree of assumption as with the school's investigation. It requires assuming that even in the complete absence of any nexus between the alleged Open Meetings Act violation and religion, the School District's actions inherently exhibit bias against religion. The law does not support such a leap.

Finally, while none of Plaintiffs' allegations of irregularity hold water, even if any did, none imply religious hostility. The objective of "meticulously scrutinize[ing] irregularities" in the free exercise context is "to determine whether a law is being used to suppress religious beliefs." *Meriwether*, 992 F.3d at 514. Nothing in Plaintiffs' argumentation suggests that the School District's accommodation was adopted "to suppress religious beliefs." Here again, *Meriwether* serves as a useful contrast. The finding of religious hostility in *Meriwether* was based in part on overtly biased alleged statements by school officials, including that Christians were "primarily motivated out of fear," that "Christian doctrines . . . should not be taught" but "should be banned" at the university level, that religion "oppresses students," and that its "presence" at the university was "counterproductive." 992 F.3d at 512–13. Nothing remotely of that kind is alleged here.

Plaintiffs have failed to plausibly allege that the School District's accommodation targets any particular religious group or religious practice, that it has been enforced selectively against people engaging in religiously motivated conduct, or that it has as its "object" the "suppression" of anyone's free exercise of religion. *Smith*, 494 U.S. at 878. The accommodation applies neutrally to all students, regardless of their religious beliefs or lack thereof. And again, it bears emphasis that Plaintiffs' religiously-based desire to exclude transgender students from gender-appropriate

restrooms cannot give rise to an inference that the School District targeted religion. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 604 n.30 (1983). The School District's accommodation is subject only to rational basis review, and easily satisfies it. *See* ECF No. 75 at 27.

### D. Strict Scrutiny Is Also Not Warranted Under the Ohio Constitution

The Ohio Constitution does nothing to salvage Plaintiffs' claims. Ohio law does not require strict scrutiny where a plaintiff's own pleadings show no coercive impact on their religion. In fact, such a coercive impact is required for strict scrutiny to apply. *State v. Wisener*, 204 N.E.3d 124, 137 (Ohio 2022), *appeal not allowed*, 206 N.E.3d 743 (Ohio 2023). Even in their most favorable light, the facts in Plaintiffs' Complaint show no coercive effect on their religion. Strict scrutiny accordingly does not apply.

Nothing in Plaintiffs' briefing, least of all their cited case law, moves their claim forward on this point. They cite *State v. Cook* for the simple proposition that a "coercive effect" is necessary under Ohio free exercise law to invoke strict scrutiny, but fail to note the court's skepticism on the presence of a coercive effect in that case. The trial court in *Cook* found that a ban on "magic mushrooms" "may not have [constituted] a coercive impact," and in any event found the question moot in light of the government's compelling interest. *See* No. 5-19-26, 2020 WL 615076, at *6 (Ohio Ct. App. Feb. 10. 2020). The appellate court affirmed. Here, even the School District's restroom policy places no coercive burden on Plaintiffs, least of all the burden of imprisonment. *Humphrey v. Lane* concerned a policy forbidding a prison guard from wearing long hair in expression of his religious beliefs. 728 N.E.2d 1039, 1045 (Ohio 2000). As discussed above, there is no similar effect from the School District's policy. *Humphrey* is therefore not on point. Similarly, *State v. Whisner* involved the criminal prosecution of two religious parents. 351 N.E.2d 750, 764 (Ohio 1976). This followed their decision to send their children to a religious school that did not

32

meet the state's minimum educational standards. *Id.* As with the above cases, the state policy directly punished claimed religious exercise. That is not the case here.

The School District's policy allowing Anne Roe to use the restroom corresponding to her gender identity requires nothing of Plaintiffs. It does not punish them. It does not force them to do anything or refrain from doing anything. All it does is permit Anne Roe to use the restroom associated with her gender identity. The mere fact that the school does not coerce Anne in a manner that Plaintiffs would prefer does not mean that Plaintiffs are themselves coerced.

## V. Even If Strict Scrutiny Applies, the School District's Accommodation Is Narrowly Tailored to the Compelling Governmental Interests of Health and Safety and Eliminating Discrimination

Finally, even if the School District's accommodation were somehow subjected to strict scrutiny under either federal or state constitutional principles, it would survive that scrutiny because it is narrowly tailored to serve the compelling government interests of protecting student health and safety and combatting discrimination. Plaintiffs spend a great deal of energy claiming that these asserted interests were not in fact the genuine reasons underlying the School District's actions, *see* ECF No. 81 at 50–51, but all of the alternative interests that they point to as being the real reasons for the accommodation in fact center on the same point: protecting transgender students from the harms—physical and dignitary—of being denied equal access to communal restrooms consistent with their gender identity.

The School District's accommodation was in furtherance of several compelling interests. Plaintiffs suggest without elaboration that protecting student health and safety are not compelling interests in this case because they do not understand how those interests apply here—they seem to argue that lack of prior caselaw grappling with these interests in the precise context of restroom access for transgender students render them inapplicable. *See id.* at 52 & n.11. Student health and safety have been deemed compelling governmental interests, *see, e.g.*, *Dahl v. Bd. of Trs. of W.*

*Mich. Univ.*, 15 F.4th 728, 735 (6th Cir. 2021); *Doe v. Snyder*, 101 F. Supp. 3d 672, 700 (E.D. Mich. 2015); *State v. Polk*, 78 N.E.3d 834, 844 (Ohio 2017), and the School District's accommodation was justified in seeking to protect these interests for transgender students.

Plaintiffs also argue that combatting discrimination cannot be a compelling interest in this case because "there was never any 'gender identity discrimination' to begin with," and because "two wrongs do not make a right" and the School District thus cannot discriminate against Plaintiffs in order to ameliorate discrimination against transgender students. ECF No. 81 at 52–53. These arguments require no further rebuttal, as they are simply restatements of arguments set forth—and rebutted—elsewhere in the briefing. *See supra* Sections I, III, IV. And the Supreme Court has made clear that combatting discrimination is a compelling interest "of the highest order." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984); *see also Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983).

The accommodation was narrowly tailored to these ends. Plaintiffs' arguments that "there are plenty of less restrictive ways to combat discrimination" are unpersuasive. ECF No. 81 at 54. Limiting transgender students to use of only the single occupancy restrooms does not combat discrimination; it is the very discrimination the School District sought to correct. "Address[ing] discrimination through civic education," *Id.* at 55, is an admirable goal, but hardly practical, and it would not be a substitute to the accommodation at hand here because it would not remedy the issue of unequal restroom access for transgender students. These are not more narrowly tailored alternatives to the School District's accommodation; they are not alternatives at all. As elaborated in earlier briefing, the accommodation is narrowly tailored because it allows all students—Plaintiffs included—to continue using communal restrooms as before, or to use single-occupancy

restrooms if they prefer to do so. *See* ECF No. 75 at 31–33. The accommodation merely ensures that transgender students have the same options as all other students.

The School District thus adopted the most narrowly tailored accommodation to respect all students and advance its compelling interests in preventing discrimination and protecting student health and safety. Even if strict scrutiny applies, the School District's actions are constitutional.

## **CONCLUSION**

For the foregoing reasons, Defendant-Intervenor Anne Roe respectfully submits that Counts Two through Five of the Complaint should be dispensed with as previously noted in her Motion:

- Count Two should be dismissed for lack of standing. In the alternative, and only if this Court should find that Plaintiffs have sufficiently demonstrated standing, Defendants are entitled to judgment on the pleadings.

- Defendants are entitled to judgment on the pleadings on Count Three.

- On Counts Four and Five, the parent Plaintiffs' federal and state claims should be dismissed for lack of standing. As to the student Plaintiffs' federal and state claims—and the parent Plaintiffs' claims, only if the Court should find that they have demonstrated standing— Defendants are entitled to judgment on the pleadings.

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU OF OHIO FOUNDATION
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: 614-586-1972
Fax: 614-586-1974
dcarey@acluohio.org

35

Freda Levenson (0045916)
ACLU OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
Phone: 614-586-1972
Fax: 614-586-1974
flevenson@acluohio.org

Malita Picasso*
Aditi Fruitwala*
Rose Saxe*
Arijeet Sensharma*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY
Phone: 212-549-2500
Fax: 212-549-2650
mpicasso@aclu.org
afruitwala@aclu.org
rsaxe@aclu.org
asensharma@aclu.org

Michael D. Meuti (0087233)
David M. Hopkins (0095285)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216-363-4500
Fax: 216-363-4588
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

*Admitted pro hac vice

Counsel for Defendant-Intervenor Anne Roe (a minor, by and through her legal guardian Joanne Roe)

**CERTIFCATE OF SERVICE**

I, David J. Carey, hereby certify that on this 1st day of May, 2023, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio via the ECF system, which will send notification of such filing to all counsel of record.

*/s/ David J. Carey*