UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE NO. 1, et al., | : | CASE NO. 3:22-cv-00337 |
| Plaintiffs, | : | JUDGE MICHAEL J. NEWMAN |
| vs. | : | |
| BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : | PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR SANCTIONS |
| Defendants. | : | |

# INTRODUCTION

Defendants'[1] attorneys Lynnette Dinkler ("Dinkler") and John A. Podgurski ("Podgurski") (collectively "Defendants' Counsel" or "Counsel") recklessly—without regard to its truth or falsity—filed a Declaration of Alvin E. Mathews, Esq., (the "Mathews Decl." or "Mathews Declaration") containing false or misleading statements as to material facts, which a simple, reasonable, factual inquiry would have corrected. When confronted with the falsity of the statements, Defendants' Counsel refused to correct their error. And in filing their Memorandum in Opposition to Plaintiffs' Amended Motion for Sanctions ("Memorandum in Opposition"), Defendants' Counsel made additional false or misleading statements to the Court.

---

[1] Bethel Local School District Board of Education, Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King, and Superintendent Matthew Chrispin.

1

Accordingly, Rule 11 sanctions are appropriate in the instant case. Sanctions will also ensure such behavior does not continue throughout the litigation.

## ARGUMENT

I. **Rule 11 Sanctions are Appropriate in this Case.**

    A. **Defendants' Counsel Failed to Conduct a Reasonable Inquiry.**

Plaintiffs agree that the standard for determining whether a Rule11 violation has occurred is to look at the signor's conduct by "inquiring what was [objectively] reasonable to believe *at the time of the pleading, motion, or other paper was submitted*." Defs.' Mem. in Opp'n to Pls.' Am. Mot. for Sanctions, Doc. 86 at 1765-66 (quoting *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 93 (6th Cir.1991)) (emphasis added). At the heart of this Rule 11 dispute is that Defendants' Counsel alleged an ethics violation against the undersigned counsel and Jessica Franz (the "Ethics Allegations") in the Defendants' Motion in Limine ("MIL"), Doc. 48, and the associated filing of the Mathews Declaration, Doc. 48-3. Thus, the question before the Court is: did the Defendants' Counsel conduct an objectively reasonable inquiry regarding the Ethics Allegations prior to filing the MIL and Mathews Declaration? The record demonstrates that the answer is: "no."

Specifically, Defendants' Counsel alleged that Plaintiffs' counsel violated "Ohio Prof.Cond.R.[sic] 4.2 [Communication with Person Represented by Counsel], 4.3 [Dealing with Unrepresented Person], 1.6 [Confidentiality of Information] and 4.4 [Respect for Rights of Third Persons]" and asserted the following:

> The Franz Declaration does not evidence Plaintiffs' counsel, before interviewing former Board Member Franz, disclos[ing] their identity,

2

> fully explain[ing that] they represent clients adverse to the Board of Education, immediately inform[ing] her she is not to divulge any privileged communications the former elected office holder may have had with general counsel or other retained counsel. … As such, Plaintiffs' counsel are not entitled to elicit the privileged contents of Ms. Franz's Declaration and are not permitted to cause it to be evidence in this action.

Defs.' Mot. In Lim., Doc. 48 at 1049.[2] They concurrently filed the declaration of an alleged legal ethics expert who testified Ms. Franz "was not cautioned by Plaintiffs' counsel herein and improperly shared this attorney-client and executive session privileged information in this litigation."[3] Decl. of Alvin E. Mathews, Esq., Doc. 48-3 at 1096, ¶6(d).

Notably, Defendants' Counsel admit they did not conduct a factual inquiry into whether the statements they asserted about Plaintiffs' counsel's interaction with Ms. Franz in the MIL and through the Mathews Decl. are true; specifically, they admit they did not speak to or communicate with the undersigned counsel for Plaintiffs[4] nor to Ms. Franz. *See* Doc. 86 at 1766-67. Indeed, Defendants' Counsel repeatedly bemoans the fact that they *still* do not know who talked to Ms. Franz. *See* Reply in Supp. of Defs.' Mot. in Lim., Doc. 60 at 1323-24 ("[L]eaves one to wonder who spoke to Ms. Franz"); Dinkler Law Letter, Doc. 86-2 at 1785 ("It remains unknown who spoke with Ms. Franz from Plaintiffs' team, what words were used, and when these

---

[2] All page citations to ECF documents ("Doc.") herein denote the "PageID" page number.
[3] Defendants make a blanket claim of privilege without providing any analysis of the specific testimony contained in Jessica Franz's Declaration and identify no specific attorney-client privileged communications in Jessica Franz's Declaration.
[4] Defendants' Counsel—without any legal citation—appears to disclaim the need to have contacted Plaintiffs' Counsel, stating that they are "not charged with such duty under the specific facts here." Doc. 86 at 1767. But that is actually at the heart of this briefing. Defendants' Counsel did not know who spoke to Ms. Franz or what was said at the time they filed the Ethics Allegations. Rule 11 requires a reasonable factual inquiry. Such inquiry was clearly not conducted.

3

purported conversations occurred."); Doc. 86 at 1767. Astonishingly, they blame Plaintiffs for not sharing this information after the fact, Doc. 86 at 1767, and complain of the "scant detail" provided in Ms. Franz's second declaration, *id.* at 1770. Yet, this only underscores the lack of a reasonable inquiry on their part at the time of the original filing. They have the burden of proof, not the Plaintiffs. They do not even know who spoke to Ms. Franz, yet alleged specific Ethics Allegations against all the undersigned counsel—Ethics Allegations that are false and disparage officers of the court.

Again, a simple phone call prior to filing the MIL and Mathews Declaration to either Plaintiffs' counsel and/or Ms. Franz would have allowed Defendants' Counsel to ascertain that Plaintiffs' counsel identified themselves to Ms. Franz, that at all times Ms. Franz knew and understood that Plaintiffs' counsel represented clients adverse to the Bethel School Board, and that Plaintiffs' counsel did not endeavor to elicit information from Ms. Franz that the lawyers knew or reasonably knew to be protected by attorney-client privilege. Second Decl. of Jessica Franz, Doc. 58-2 [hereinafter "Franz Decl. 2"] at 1293-94, ¶¶7-15. They ignored that Defendants previously disclosed the alleged privileged information and that the executive session was entered into impermissibly—a fact supported by declarations filed by the Defendants themselves at the time of the MIL filing. *See* Doc. 20 at 669; Decl. of Tina Hageman, Doc. 48-2 [hereinafter "Hageman Decl."] at 1092-93. And, when confronted with Ms. Franz's Second Declaration, which clarified that their Ethics Allegations

4

were not true, Defendants' Counsel refused to correct the record without having any evidence to the contrary.

Instead, they rely on the fact that they engaged an attorney to prepare a legal opinion, which they argue is itself a reasonable inquiry. However, the alleged legal expert did not conduct a factual investigation. If the input data is not complete and accurate, then the resulting output is unreliable and of no use. More colloquially, this is known as "garbage in, garbage out." Defendants' Counsel cannot cover up their failure to conduct a reasonable inquiry into the facts they allege simply by paying another attorney to opine on the situation in order to give their allegations the imprimatur of veracity.[5] The issue was not remedied by seeking a legal opinion from an ethics expert, because the issue was ultimately a lack of factual due diligence. And Defendants have not even claimed to have done a factual investigation into what was communicated to Ms. Franz.

Defendants' Counsel also contend that "[t]he declarations on file with this Court from former and present Board of Education members and the former superintendent demonstrate [they] engaged in [an] investigation in presenting the Motion in Limine and in continuing to argue its grounds in the Reply." Doc. 86 at 1766. This argument is meritless. First, Plaintiffs did not file the instant Motion

---

[5] Defendants' Counsel now has the beginnings of a pattern of making unfounded allegations and attempting to justify the allegation by asserting some sort of legal expertise. After admitting they do not know who Ms. Franz consulted regarding her sharing the alleged privileged information, Defendants' Counsel appeared to proffer their own legal opinion as expert legal testimony. *See e.g.,* Doc. 86 at 1767. A party's attorney cannot win their case by declaring themselves to be a legal expert to justify an asserted argument or claim. Defendants' Counsel can make arguments in their brief, but the citation to Mr. Podgurski and Ms. Dinkler's legal experience and opinion does not make any such arguments persuasive nor qualify them as experts.

because the Defendants' Counsel filed the MIL; Plaintiffs are not filing the instant Motion to chill vigorous advocacy. Plaintiffs have never sought to chill Defendants' Counsel's advocacy for their clients. Plaintiffs filed the instant Motion because Defendants' Counsel chose to make serious Ethical Allegations in the MIL without any evidence or due diligence. Second, at the time Defendants' Counsel filed the MIL and made the Ethical Allegations, they had only filed, in relevant part, a declaration from former superintendent Justin Firks, Doc. 48-1, and a declaration from the school district's treasurer, Doc. 48-2. Neither Mr. Firks's Declaration nor the Hageman Declaration demonstrate a reasonable inquiry into the factual statements about any conversation Plaintiffs' counsel had with Ms. Franz; and they support Plaintiffs' point that the executive session was improper. Firks Decl. at 1052, ¶¶7-8 (stating that an attorney was not actually present during the executive session and the attendees discussed a regulated student as opposed to what is allowed under O.R.C. (G)(1) ("consider[ing] the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of an employee or official, or the investigation of charges or complaints against an employee, official, licensee or student, unless the employee, official, licensee or student requests a public hearing")); Doc. 48-2, Hageman Decl. (making no mention of any conversation between Plaintiffs' Counsel and Ms. Franz and noting the reason for the executive session in the minutes).

  In the end, Defendants' Counsel failed to conduct an objectively reasonable inquiry into their Ethics Allegations prior to filing the MIL and Mathews Declaration.

### B. Defendants' Counsel's Inappropriate Conduct is Continuing.

As stated with the instant Motion: "If left unaddressed, Defendants' Counsel's conduct in submitting a false or misleading declaration in connection with their MIL is likely to repeat itself and the misrepresentations are likely to become greater and bolder." Doc. 74-1 at 1584. Sadly, this statement has proven true with Defendants' Memorandum in Opposition, Doc. 86, in which Defendants distort facts to mislead the Court.

#### i) Defendants Misconstrue Plaintiffs' Counsel's Communications.[6]

In a confusingly worded paragraph, Defendants seem to argue that when Mr. Ashbrook, in a communication to Defendants' Counsel regarding the Rule 11 motion, wrote that the Ethics Allegations in the MIL were "unnecessary," he admitted the privilege violations were true because he could have instead used the word "unwarranted." Doc. 86 at 1768. This argument is not even colorable. It cherry picks one word in a letter and disregards the context and obvious usage of the word.[7] Mr. Ashbrook did not "clear[ly] and unambiguous[ly]" acknowledge that Defendants' privilege allegations were true. Doc. 86-1 at 1780. And Mr. Ashbrook never acknowledged or conceded a violation of attorney-client and/or executive session

---

[6] Defendants' Counsel attaches documents to the Memorandum in Opposition without providing any declaration or affidavit regarding the completeness or accuracy of the documents.

[7] The facts contained in the first Franz Declaration were relevant to consideration of the preliminary injunction. Relevant evidence is generally admissible due to the importance of finding truth in litigation. Just before the preliminary injunction hearing, Defendants filed the MIL to exclude that otherwise relevant evidence as privileged. But that evidence was either privileged or not. Defendants' Ethics Allegations had no bearing on that question, which made them unnecessary. And Defendants cited no legal authority to make them relevant to the exclusion of evidence which was, at least ostensibly, the point of the MIL.

privilege. Any tortured reading arguing otherwise should be ignored. Plaintiffs concede nothing on this issue and reassert all arguments and analysis from Plaintiffs' Response in Opposition to Defendants' Motion in Limine, Doc. 58, as if fully re-stated herein.

### ii) Defendants Mislead the Court Regarding Plaintiffs' Counsel's Communications Regarding Mr. Firks.

Defendants also allege that Mr. Ashbrook emailed Defendants' Counsel regarding whether or not they represented Mr. Firks "the following day" after he contacted Mr. Firks. That is a selective mischaracterization of what occurred. And the selective mischaracterization served Defendants' Counsels' purpose for this briefing because it obfuscated that Mr. Ashbrook was both prompt and conscientious in addressing Mr. Firks with Counsel.

The last text message in the exchange between Mr. Ashbrook and Mr. Firks is time stamped 10:15 AM on January 12, 2023. Doc. 86-3 at 1797. Mr. Ashbrook then emailed Defendants' Counsel shortly thereafter at 11:17 AM on the *same* day. First Declaration of Joseph P. Ashbrook [hereinafter "Ashbrook Decl."] ¶4 & Exh. A to Ashbrook Decl. Mr. Ashbrook followed up again with Defendants' Counsel multiple times the following day by phone and email after not getting a response. Ashbrook Decl. ¶¶4-5; Joseph P. Ashbrook Emails, Doc. 86-4 at 1798. Thus, even if Defendants' Counsel's statements were technically true—Mr. Ashbrook did email them the following day—they created the "misleading illusion" that Plaintiffs' Counsel did not email them sooner and omitted the facts that would correct that illusion. *See generally, Grove Fresh Distribs., Inc. v. John Labatt Ltd.,* 888 F. Supp. 1427, 1450-51

8

(N.D. Ill. 1995) (holding that a technically true statement that is a misleading illusion is a violation of Rule 11).

Instead of exhibiting candor, Defendants' Counsel chose to selectively mislead. This is particularly problematic here because the specific issue for decision is whether Counsel's speculative Ethics Allegations were objectively reasonable at the time. Not only did Counsel decline to conduct any diligence regarding the Ethics Allegations, but their Ethics Allegations were also deeply inconsistent with the conscientiousness displayed by Plaintiffs' counsel in addressing Mr. Firks. This makes it all the more unreasonable for Defendants' Counsel to not have reached out to Plaintiffs' counsel or Ms. Franz regarding the matter.

### iii) Defendants' Counsel Mislead the Court about Counsel Communications Regarding the Rule 11 Safe Harbor Motion.

In another confusingly worded paragraph, Defendants seem to allege that because Plaintiffs' counsel did not provide Defendants' Counsel with an explanation regarding the potential prejudice to Plaintiffs underlying Plaintiffs' request to expedite Rule 11 proceedings, it is somehow wrong of Plaintiffs to allege Rule 11 violations against Defendants' Counsel for failing to investigate the facts before making Ethical Allegations in the MIL. Doc. 86 at 1770. The problem here is that this argument is based on two false premises and has no law cited in support.

First, Plaintiffs' counsel actually provided a copy of the entire motion and memorandum in support on the issue to Defendants' Counsel prior to filing it with the Court. Plaintiff's Counsel did this after Defendants' Counsel requested an explanation; Plaintiffs' counsel also asked that the motion be unopposed. Third

9

Declaration of Julie E. Byrne [hereinafter "Byrne Decl. 3"] ¶5 & Exh. A to Byrne Decl. 3. Defendants' Counsel never responded (which is their prerogative), but they cannot honestly represent to the Court that Plaintiffs failed to provide an explanation, when in fact Plaintiffs provided the entire motion and the memorandum in support before it was filed.

Second, Defendants do not appear to understand what Rule 11 requires of counsel. Rule 11 does not broadly require counsel to explain their legal theories to opposing counsel upon request. Rather, Rule 11 requires that at the time that a paper is signed, the attorney must believe "on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose." *Jackson v. L. Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224, 1229 (6th Cir. 1989). Asking the Court to change the safe harbor timing for a Rule 11 motion is grounded in the law and the facts of this case, because Plaintiffs would not have been permitted to file a motion for sanctions with the Court if the Court dispensed with the underlying motion first (in this case the MIL). At the time of filing, the Court could have conceivably ruled on the MIL before the 21-day safe harbor period would have expired; thus prejudicing Plaintiffs by preventing the Court from hearing their motion. This stands in stark contrast to Defendants' conduct of filing mere speculation as fact.

### iv) Defendants Mislead the Court Regarding Counsel's Communications Regarding Mr. Podgurski.

For reasons unknown to Plaintiffs, Defendants' Counsel, in response to Plaintiffs' allegations of sanctionable conduct regarding Defendants' filing the MIL

10

and Mathews Decl., notes "[w]e also know Plaintiffs have threatened to move to disqualify Mr. Podgurski as trial counsel claiming he is a witness because he issued a legal opinion." Doc. 86-2 at 1785. This allegation has nothing to do with the Rule 11 allegations, but Defendants' Counsel raised the issue and even addressed it in Defendants' Memorandum in Opposition, claiming—without any evidentiary support—the "anti-transgender group in Bethel has demanded Mr. Podgurski be replaced with new general counsel who will provide a legal opinion consistent with their political and religious views." Doc. 86 at 1769. This information is without foundation and appears to try to impute such reasoning to Plaintiffs and Plaintiffs' counsel. It should be ignored as another misleading illusion. Plaintiffs' counsel has never sought to disqualify Mr. Podgurski, even in the instant Motion.

### v) Defendants Misrepresent Plaintiffs' Request for Relief.

Defendants state that "Plaintiffs did not move to strike any portion of the Reply." Doc. 86 at 1769. But in the instant Motion the Plaintiffs did ask this Court to strike "Mathews' First and Second Declaration and any portion of the Defendant's MIL and Reply that references allegations of misconduct by Plaintiffs' counsel from the record." Doc. 74 at 1564.

### C. Defendants' own Citations to the Case Law Support the Imposition of Sanctions.

Plaintiffs concede that Defendants filed a Notice of Amendment to Legal Citation, but that notice only addressed one citation identified by Plaintiffs. *See* Doc. 73. None of the cases cited by Defendants in the Memorandum in Opposition change Plaintiffs' argument that Defendants misrepresented holdings of the cases they cited

11

to the Court at the time they cited them. Doc. 86 at 1773-77. Moreover, the citations ultimately underscore that Plaintiffs' arguments of the law are correct. Namely, *ex parte* contact with former constituents is not prohibited by Rule 4.2 and does not require a "call to General Counsel Podgurski before the ex parte communication with Ms. Franz." Doc. 60 at 1326. Plaintiffs' counsel never endeavored to elicit information from Ms. Franz that the lawyers knew or reasonably knew to be protected by the attorney-client privilege. *See* Sup. Ct. of Ohio Bd. of Prof'l Conduct, Op. 2016-5 (Aug. 5, 2016); Doc. 58-2 at 1293-94, ¶¶12-15.

None of Defendant's remaining arguments warrant serious scrutiny in light of the actual question before the Court.

## **CONCLUSION**

Rule 11 does not deal with the theoretical or speculative; Rule 11 provides that Defendants cannot claim as fact that which is mere speculation. Yet Defendants did just that, and impugned the reputations of Plaintiffs' counsel in the process. In the process of filing a document accusing Plaintiffs' counsel of behaving unethically, Defendants' counsel managed to violate Rule 11 by presenting bare speculation as fact, and then doubling down and refusing to correct their filings. After that, Defendants' Counsel proceeded to repeatedly mislead the Court in attempting to avoid sanctions.

The record demonstrates that the Defendants, prior to filing the MIL, did not conduct a reasonable inquiry into their factual allegations. Ultimately, the question before the Court is whether Defendants conducted an appropriate factual

investigation such that their factual assertions had a reasonable basis before its attorneys affixed their signatures to the MIL and filed the associated Mathews Decl., and the Defendants admit they did not conduct any factual inquiry related to Plaintiffs' counsel's interaction with Ms. Franz (they just made the allegations).

For all the foregoing reasons Plaintiffs' Motion for Sanctions should be granted in its entirety. Specifically, Plaintiffs request that the Court enter an order (1) specifically finding that Defendants' Counsel filed a declaration in which they knowingly and in bad faith made false or misleading statements of material fact; (2) requiring Defendants' Counsel to submit a copy of such finding to each of the named Defendants, and to distribute it to Alvin E. Mathews; (3) directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation; (4) striking Mathews' First and Second Declaration and any portion of the Defendant's MIL and Reply that references allegations of misconduct by Plaintiffs' counsel from the record; and (5) imposing such other sanctions as this Court deems appropriate.

Dated: May 19, 2023

Respectfully submitted,

s/ Julie E. Byrne
Joseph P. Ashbrook (0091279)
Julie E. Byrne (0085174)
Ashbrook Byrne Kresge LLC
PO Box 8248
Cincinnati, Ohio 45249

Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com

Nicholas Barry
(*pro hac vice*)
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 19th day of May, 2023, I served a copy of the foregoing via the Court's ECF system, which notifies all counsel of record.

                                                       s/ Julie E. Byrne
                                                         Attorney for Plaintiffs